| | |
|---|---|
| MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>KARA J. JANSSEN – 274762<br>GINGER JACKSON-GLEICH – 324454<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California  94105-1738<br>Telephone:     (415) 433-6830<br>Email:            mbien@rbgg.com<br>                      egalvan@rbgg.com<br>                      kjanssen@rbgg.com<br>                      gjackson-gleich@rbgg.com | OREN NIMNI*<br>  Mass. Bar No. 691821<br>AMARIS MONTES*<br>  Md. Bar No. 2112150205<br>D DANGARAN*<br>  Mass. Bar No. 708195<br>RIGHTS BEHIND BARS<br>416 Florida Avenue N.W. #26152<br>Washington, D.C.  20001-0506<br>Telephone:     (202) 455-4399<br>Email:            oren@rightsbehindbars.org<br>                      amaris@rightsbehindbars.org<br>                      d@rightsbehindbars.org |
| SUSAN M. BEATY – 324048<br>CALIFORNIA COLLABORATIVE FOR<br>IMMIGRANT JUSTICE<br>1999 Harrison Street, Suite 1800<br>Oakland, California  94612-4700<br>Telephone:     (510) 679-3674<br>Email:            susan@ccijustice.org | *Pro hac vice* applications pending |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>          Defendants. | Case No. 4:23-cv-04155<br><br>**DECLARATION OF J███████ T███████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |

[4340012.1]

I, J███████ T███████, declare:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification.

2. I am incarcerated in federal prison and have been incarcerated at FCI Dublin from 2011 to present. In the future BOP may transfer me to other BOP facilities including but at any point I could be transferred back to FCI Dublin.

3. FCI Dublin's inadequate systems for preventing, detecting, and responding to sexual abuse have caused actual harm to myself and others incarcerated at FCI Dublin and put myself and other incarcerated persons at substantial risk of serious harm from sexual assault, harassment, and retaliation from staff.

4. While at FCI Dublin, I experienced sexual harassment by Officer Jones. This started when I worked in Food Service from 2020 to 2021, where Officer Jones would harass me. Officer Jones had a smart watch, and he would often show me pictures of his penis on this smart watch. He did this about three times. The first time, he asked if I wanted to see pictures of his dog and children. He showed me these pictures and then swiped to another photo of his penis. I told him that I did not want to see his penis. He said, "Don't play, you know that you do." The second time, he did the same thing and said, "You know you want to see that again." After the third time he showed me his penis, he asked me if I wanted him to "stick it in." He also brought me gifts such as chocolates, breakfast from fast-food restaurants, and nonalcoholic drinks. He often did this on days before he would show me pictures. I think he did this so that I would more easily give in to his harassment.

5. Officer Jones also made sexual comments about me. He once instructed me to sit on the salad bar in the facility and, as I recall, said that I was "all you could eat." I often responded to his advances clarifying that I do not like men, I only like women, but he responded, "You just haven't been with the right man."

6. I started to be more aggressive in refusing his advancements and gifts, but

1

DECLARATION OF J███████ T███████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

Officer Jones did not accept my refusals. He would often yell at me that I was worthless and yelled at me to get out of the kitchen. He also said insulting things like that I looked like raw chicken. I was really affected by this because I like my job working in the kitchen and felt very committed to food service, but he made my work unbearable. I felt sick from his harassment every day.

7. In January 2022, I was fired from my kitchen job because it was easier for the facility to fire me than to deal with my reports about Officer Jones. I know this was directly a result of Officer Jones because once he was walked off the job, I was asked to return to food service.

8. I know that Officer Jones had physical relationships with other women because they told me they were having sex with him. There were about four women I knew were having sex with him. I saw Officer Jones give gifts to these women all the time, such as special COVID-19 masks, MP3 players, energy drinks, and food from outside restaurants. I know he brought in alcohol for one of these women, J.H., because it was her birthday. He allowed her and her friends to drink together and listen to music on speakers he brought in for her.

9. Officer Jones tried to pit the other women he was abusing or harassing against each other by spreading rumors that other women were saying bad things about each other or he would say bad things about those women so we would think negative things about them. Then we wouldn't talk to each other about it because we thought those women did not like us, and vice versa. Looking back at it now, it was an effective way to keep us all quiet and make sure we weren't sharing information about his abuse or reporting him. He also did this because he wanted all the women to feel insecure.

10. When I arrived at FCI Dublin in 2011 I was not provided adequate training and information about how to respond to sexual abuse. I was never given any training when I entered the facility. They only told us to not have sex with other prisoners.

11. There is no effective way to confidentially report sexual assault and abuse by staff at FCI Dublin. I tried to report Officer Jones' verbal abuse to my supervisor, Mr.

Fracker. When my supervisor confronted Officer Jones while I was with him, Officer Jones said that he would beat Mr. Fracker up in the parking lot. Officer Jones was always physically intimidating everyone, even the staff. I felt very uncomfortable in this situation, and it showed that even superiors who knew about abuse in the prison could not intervene to stop it and protect me.

12. I also told Ms. Tobin, who came to the facility as part of the task force from BOP regional. Ms. Tobin told me she put in a report, but nothing was done.

13. Staff at FCI Dublin prevent people from reporting sexual assault and abuse by staff and retaliate against people who do report. I have seen two women be put into the SHU for reporting, so I was always fearful of retaliation and didn't trust anyone. Lieutenant Jones also has threatened us for reporting. In the past few months, she has come into our unit and yelled that we were "going to learn" if we "wanted to play the write up game." I understood this to mean that if we report Lieutenant Jones or other staff, Lieutenant Jones will write us up with a disciplinary ticket which could lead to time in the SHU or another negative consequence. She will find anything in our room to write us up for as retaliation.

14. I also used to be able to speak to my adult son and my dad through email and video visits for years, but now I am being told that I am not able to. I believe this is in retaliation for my reporting. Since December 2021, I have not been able to have calls or video visits and this still continues to this day. I have filed an administrative remedy request about Officer Jones, which went unanswered, and have also filed it to the regional BOP office; this also went unanswered.

15. When incarcerated persons report sexual abuse by staff, FCI Dublin and BOP do not seriously investigate the reports. Investigations are frequently delayed and overseen by staff who know and work with the offending staff member. Generally nothing happens as a result. I reported Officer Jones to SIS, Ms. Strack, and officers who work in the kitchen, but nothing was ever done. I know that grievance forms never receive an official response. Officers sometimes provide a verbal update, but the grievance process is

3

DECLARATION OF J█████ T██████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

not followed.  Appeals never reach regional even when we submit them.  Incident reports are also never provided.

16.   There is little to no medical care available to survivors of sexual abuse and assault at FCI Dublin.  I have a heart condition that requires my blood pressure to be checked but I have had to beg medical officers to check it for me, even though it should be a routine check.  I have had to submit sick call requests for it, which causes me to pay out of pocket, even though the checks are required for my chronic care.  I put in a sick call request, and they never responded as of three months ago.  The officers do nothing to monitor my condition.

17.   The camera system at FCI Dublin is inadequate.  There are some cameras installed in fixed locations in the facility, but it is well known that there are no cameras in the religious room and officer's offices. Staff at FCI Dublin have never worn body-worn cameras in the facility.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  I declare under penalty of perjury under the laws of the United States of America
2  that the foregoing is true and correct to the best of my knowledge, and that this declaration
3  is executed at Dublin, California this /5 day of August, 2023.



[4201615.1]