| | |
|---|---|
| MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>KARA J. JANSSEN – 274762<br>GINGER JACKSON-GLEICH – 324454<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California  94105-1738<br>Telephone:  (415) 433-6830<br>Email:      mbien@rbgg.com<br>            egalvan@rbgg.com<br>            kjanssen@rbgg.com<br>            gjackson-gleich@rbgg.com | OREN NIMNI*<br>  Mass. Bar No. 691821<br>AMARIS MONTES*<br>  Md. Bar No. 2112150205<br>D DANGARAN*<br>  Mass. Bar No. 708195<br>RIGHTS BEHIND BARS<br>416 Florida Avenue N.W. #26152<br>Washington, D.C.  20001-0506<br>Telephone:  (202) 455-4399<br>Email:      oren@rightsbehindbars.org<br>            amaris@rightsbehindbars.org<br>            d@rightsbehindbars.org |
| SUSAN M. BEATY – 324048<br>CALIFORNIA COLLABORATIVE FOR<br>IMMIGRANT JUSTICE<br>1999 Harrison Street, Suite 1800<br>Oakland, California  94612-4700<br>Telephone:  (510) 679-3674<br>Email:      susan@ccijustice.org | *Pro hac vice* applications pending |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>Defendants. | Case No. 4:23-cv-04155<br><br>**DECLARATION OF Z▓▓▓ T▓▓▓ S▓▓▓ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |

[4334030.1]

DECLARATION OF Z▓▓▓ T▓▓▓ S▓▓▓ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

I, Z▇▇▇ T▇▇▇ S▇▇▇, declare:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification.

2. I was incarcerated at FCI Dublin from September 2019 to November 2022. In November 2022, I was transferred to the Northwest ICE Processing Center in Tacoma, Washington, where I am currently detained.

3. FCI Dublin's inadequate systems for preventing, detecting, and responding to sexual abuse have caused actual harm to myself and others incarcerated at FCI Dublin and put myself and other incarcerated persons at substantial risk of serious harm from sexual assault, harassment, and retaliation from staff.

4. While at FCI Dublin, I experienced sexual abuse by Officer St. Clair and witnessed sexual abuse by Officer Chavez, Officer Jones, and other officers.

5. I was assaulted and harassed by Officer St. Clair while working in the kitchen.

6. I worked in the kitchen beginning when I entered the facility in September 2019 until the end of 2021. Officer St. Clair was an officer in charge of the prison kitchen.

7. Officer St. Clair began his sexual harassment by repeatedly attempting to convince me to go to the back room of the kitchen, where there are no cameras, to "show me his tattoos." I understood this to mean that he wanted to expose himself to me and engage in sexual activities with me. Everyone who worked in the kitchen knew that the back room was a main area where guards took incarcerated women to engage in sexual activities.

8. Several times Officer St. Clair also rubbed his hands and arms on my shoulders and back and motioned for me to follow him to the back room.

9. One day when I was working in the kitchen, Officer St. Clair began ordering me to do various things for him. He told me, "Get down on your knees" and "bend over,"

like I was a sexual object. When I said no, he got frustrated, and came from behind me and forcefully grabbed my buttocks.

10. In early 2021, I again refused Officer St. Clair's prompts to "go to the back" with him to engage in sexual conduct. This time, after I told him "No," he began verbally abusing me. He called me a "bitch" in front of other officers, including Officer Poole. Eventually Officer St. Clair realized I was not going to give him the attention he wanted, and he moved on to sexually abuse and harass another incarcerated woman who worked in the kitchen.

11. Officer Poole later told me that Officer St. Clair called me a "bitch" on a number of occasions.

12. During my time at FCI Dublin, I also witnessed many officers sexually abuse incarcerated women, and faced retaliation because I was a witness.

13. For example, I saw Officer Chavez and another incarcerated woman have sex in the warehouse of the prison in December 2019.

14. When he learned that I saw him have sex, Officer Chavez retaliated against me. One day while I was working in the kitchen, Officer Chavez grabbed me by my shirt and shoved me against the wall. He violently shook me by my work uniform while my coworkers watched. This attack was unprompted, and I was afraid of what else he could do to me.

15. I also witnessed Officer Jones have a sexual relationship with my cellmate.

16. After Officer Jones stopped having sex with my cellmate, he started acting cruelly and abusively towards both my cellmate and me. For example, he pushed my cellmate against a hot oven, and she was burned as a result.

17. Because he was aware that I knew about their relationship, Officer Jones often screamed at me to demean me, calling me "a fucking wetback," which is a reference to the fact that I am a longtime Legal Permanent Resident and not a U.S. Citizen.

18. Officer Jones also threatened me, saying, "I will slap the shit out of you if you ever say anything."

19. After Officer Jones ceased having sex with my cellmate, Officers Jones, St. Clair, and Poole fired my cellmate and me from our jobs in the kitchen. Even when another officer reinstated my position in the kitchen, Officers Chavez and Jones told me, "You're not allowed here, get the fuck out."

20. Officer Jones also told another woman he was engaging in sexual acts with to "Do whatever you need to put Z▇▇ in the SHU," referring to the Special Housing Unit (SHU), which is treated like solitary confinement in the facility.

21. As a result, this woman told officers that I got in a fight with her. That fight never occurred. Nevertheless, I was put in the SHU for a month.

22. Lieutenant Putnam finally checked the camera footage and found that I was never in the room where the alleged fight occurred.

23. I was also bunkmates with a different incarcerated woman who Officer Smith was sexually harassing. One day, Officer Smith locked me and my bunkmate in the cell and said he would not open the door until my cellmate showed him her breasts. She finally showed him her breasts and he unlocked the door and let us both out.

24. When I arrived at FCI Dublin in September 2019, I was not provided adequate training and information about how to respond to staff sexual abuse.

25. There is no effective way to confidentially report sexual assault and abuse by staff at FCI Dublin. I was fearful to report my experiences because of all the retaliation I already faced as a result of refusing Officer St. Clair's advances and as a result of witnessing other officers engaged in sexual activities with incarcerated women.

26. As described above, I was physically assaulted by Officer Chavez, called racial epithets and physically threatened by Officer Jones, verbally assaulted by Officer St. Clair, fired from my job, and put in the SHU as retaliation.

27. I was terrified of what else these officers could do to me if I reported all of the abuse and harassment I experienced and witnessed. I also knew there was a rampant culture of protecting abusive officers at all levels of the prison so I could not trust any officers. I believed all means of reporting abuse were not confidential, and the retaliation I

experienced bolstered that belief.

28. Staff at FCI Dublin prevent people from reporting sexual assault and abuse by staff and retaliate against people who do report.

29. In early 2022, Lieutenant Putnam, the Special Investigative Specialist (SIS), called me to speak with him about my experience with sexual harassment. I was scared to speak with him because I knew Lieutenant Putnam and Officer Poole were friends. I told Lieutenant Putnam a few details but did not feel comfortable telling him everything I experienced.

30. A month later, I also spoke to the FBI.

31. After I spoke to Lieutenant Putnam, Officers Poole, Jones, and St. Clair began calling me a "snitch" whenever I walked past them.

32. This only strengthened my belief that reporting at any level of the BOP was never safe.

33. When incarcerated persons report sexual abuse by staff, FCI Dublin and BOP do not seriously investigate the reports. Investigations are frequently delayed and overseen by staff who know and work with the offending staff member. Generally nothing happens as a result.

34. The camera system at FCI Dublin is inadequate. There are some cameras installed in fixed locations in the facility, but it is well known that there are no cameras in the back room of the kitchen. The back room was known to be a location where guards often took women to engage in sexual activities. While I was working in the kitchen, Officer St. Clair repeatedly tried to get me to go to the backroom with him, presumably because he knew there were no cameras there. Staff at FCI Dublin have never worn body-worn cameras in the facility.

/ / /

/ / /

/ / /

/ / /

1  I declare under penalty of perjury under the laws of the United States of America
2  that the foregoing is true and correct to the best of my knowledge, and that this declaration
3  is executed at Tacoma, Washington this 1 day of August, 2023.



[4201615.1]