| | |
|---|---|
| MICHAEL W. BIEN – 096891 | OREN NIMNI* |
| ERNEST GALVAN – 196065 |   Mass. Bar No. 691821 |
| KARA J. JANSSEN – 274762 | AMARIS MONTES* |
| GINGER JACKSON-GLEICH – 324454 |   Md. Bar No. 2112150205 |
| ROSEN BIEN | D DANGARAN* |
| GALVAN & GRUNFELD LLP |   Mass. Bar No. 708195 |
| 101 Mission Street, Sixth Floor | RIGHTS BEHIND BARS |
| San Francisco, California 94105-1738 | 416 Florida Avenue N.W. #26152 |
| Telephone: (415) 433-6830 | Washington, D.C. 20001-0506 |
| Email: mbien@rbgg.com | Telephone: (202) 455-4399 |
|     egalvan@rbgg.com | Email: oren@rightsbehindbars.org |
|     kjanssen@rbgg.com |     amaris@rightsbehindbars.org |
|     gjackson-gleich@rbgg.com |     d@rightsbehindbars.org |
| SUSAN M. BEATY – 324048 | *Pro hac vice* applications pending |
| CALIFORNIA COLLABORATIVE FOR | |
| IMMIGRANT JUSTICE | |
| 1999 Harrison Street, Suite 1800 | |
| Oakland, California 94612-4700 | |
| Telephone: (510) 679-3674 | |
| Email: susan@ccijustice.org | |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity, <br><br> Defendants. | Case No. 4:23-cv-04155 <br><br> **DECLARATION OF A███ J█████ F██████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |

[4340000.1]

I, A████ J████ F██████, declare:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification.

2. I was incarcerated at FCI Dublin for approximately seven years, from 2016 until June 2023.

3. FCI Dublin's inadequate systems for preventing, detecting, and responding to sexual abuse have caused actual harm to myself and others incarcerated at FCI Dublin and put other incarcerated persons at substantial risk of serious harm from sexual assault, harassment, and retaliation from staff.

4. While at FCI Dublin, Officer Smith sexually harassed me and many other incarcerated women in my housing unit. When I arrived at Dublin, Officer Smith worked in my housing unit. I started hearing rumors that he sexually harassed and abused women in the dorm, and I heard lots of people refer to him as "Dirty Dick Smith." At the time I couldn't imagine prison guards having sexual contact with incarcerated women, but now I know better.

5. For years, Officer Smith terrorized me. He would enter my room when I was changing or using the bathroom and stare at me while I was naked or on the toilet. We would block our cell windows with a towel when we were changing or using the bathroom, which officers understood meant we needed privacy and they should not enter, but Smith would intentionally enter when our cell window was blocked. When the window was not blocked, he would stand outside my cell and stare at me for long periods of time. When I told him to go away, he would just laugh at me.

6. Many times, Officer Smith entered my cell and went through my belongings without my permission. By Dublin policy, male officers were not supposed to come into your cell while you were inside, and they were supposed to ask you to leave your cell in order to search the cell. Smith didn't care, and he would enter my cell and go through my

1

DECLARATION OF A██ J█████ F███████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

underwear and bras and comment on them.

7. Smith would often withhold mail from me and then call me over the speaker to come down and get the mail from him in his office. When I arrived at his office he would suggest that I "do something" in exchange for the mail, and one time he looked up and down between me and his crotch while telling me to "do something." I understood this to mean that he wanted me to perform sexual favors in order to get my mail.

8. Smith harassed many women in my dorm, and specifically targeted Mexican immigrant women. Once, I saw a woman who lived in my dorm crying as she was leaving his office. I asked her what was wrong, and she told me that Officer Smith told her that if she did not perform sexual favors for him, he would make sure that she did not get released to the halfway house.

9. While at FCI Dublin, I also witnessed Officer Luna flirting and passing notes with my friend. They passed notes to each other almost every day for months. My friend told me that Officer Luna made plans for them to be together when she got out. At one point, Officer Luna stopped coming to work for several months, but eventually returned. We all assumed that he was suspended for being inappropriate with incarcerated women. While he was out of work, my friend would ask other officers "Where's Luna?" and ask them to tell him "hi" and "I miss you" for her. My friend spoke openly about her relationship with Luna to other officers.

10. While Officer Smith was harassing me, I told my roommate, but did not tell anyone else out of fear of retaliation. I had seen other women report staff for sexual abuse, and those women were punished by being taken to the SHU, or transferred, or constantly harassed by staff. I also knew that when women did report staff, the reports were not kept confidential, and other staff knew immediately. Around 2021 my roommate filed a grievance against an officer who yelled at her and humiliated her. After that, the officer didn't face any consequences, but staff started constantly searching our room, making mean comments to her, and calling her a "snitch" in public. I knew that if I reported Smith they would send me to the SHU, and they wouldn't do a real investigation, and officers

2

DECLARATION OF A███ J█████ F████████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

would make my life even more difficult.

11. A few months before my release date, after Officer Smith had been walked off and I was certain he would not return, I finally told my family about the abuse. Around February 2023, I sent my sister an email message describing what Officer Smith did to me. She contacted the authorities, and the FBI came to interview me. No one at FCI Dublin or in the BOP ever interviewed me about my experiences of sexual abuse.

12. While at FCI Dublin, I also experienced a culture of mistreatment by prison staff. Staff were very cruel and disrespectful to incarcerated women. My supervisor would force me to do work that was not assigned to me simply because he didn't like me. The unit manager would scream at us and force us to wake up early in the morning to re-do work that we have already completed.

13. When I arrived at FCI Dublin around 2016, I was not provided adequate training and information about how to respond to sexual abuse. Sometime around 2020 prison staff showed us a video about PREA, in English, but I don't remember much about the video.

14. There is no effective way to confidentially report sexual assault and abuse by staff at FCI Dublin. Everyone at FCI Dublin knows that if you report staff misconduct, your report will not be kept confidential, and will be shared with other staff and incarcerated people. Everyone also knows that once you report, staff will retaliate against you by sending you to SHU, or transferring you, or otherwise making your life hell. When my roommate reported a staff person for yelling at her and humiliating her, the staff person did not suffer any consequences, but my roommate did.

15. There is little to no confidential mental health care available to survivors of sexual abuse and assault at FCI Dublin. The sexual harassment that I was experiencing brought up a lot of childhood trauma, but I was unable to receive mental health care when I needed it the most. I asked for medication to help with the anxiety, panic attacks, and insomnia that I experienced but never got any. I also asked for medication for chest pains that I suffered from, but I was turned down on the basis that I would get addicted to the

1  medication. I also never got any counseling or therapy for trauma while at FCI Dublin.

2  16. There is little to no medical care available to survivors of sexual abuse and
3  assault at FCI Dublin. It's widely known that multiple medical staff sexually abused
4  women, and a lot of people do not feel comfortable getting medical care from FCI Dublin
5  as a result. One of my friends worked in the medical unit and she was abused by a medical
6  provider named Avalos. I needed medical care multiple times and did not get it. I had a
7  painful cyst that grew for nearly two years. FCI Dublin staff refused to treat it and told me
8  it was "cosmetic," and I eventually had to drain it myself with a razor to stop the pain.
9  There was also a period of time when I was sick and experiencing throat pains to the
10 degree of being unable to eat. I did not receive any medical care to help me through that
11 period of time.

12 17. It's also very difficult to access legal counsel at FCI Dublin. Staff take a very
13 long time to set up legal visits, and staff often open and read legal mail. FCI Dublin
14 recently created a pilot legal phone program, but it only operates during certain hours, and
15 staff delay or even refuse to add attorneys' phone numbers to the line. The phones are also
16 in locked rooms, and we had to ask staff to open the rooms in order to use the phones,
17 which meant telling staff that we were communicating with outside lawyers.

18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

4
DECLARATION OF A███ J█████ F█████████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

1 | I declare under penalty of perjury under the laws of the United States of America
2 | that the foregoing is true and correct to the best of my knowledge, and that this declaration
3 | is executed at Compton, California this 11 day of August, 2023.

