| | |
|---|---|
| MICHAEL W. BIEN – 096891 | OREN NIMNI* |
| ERNEST GALVAN – 196065 |   Mass. Bar No. 691821 |
| KARA J. JANSSEN – 274762 | AMARIS MONTES* |
| GINGER JACKSON-GLEICH – 324454 |   Md. Bar No. 2112150205 |
| ROSEN BIEN | D DANGARAN* |
| GALVAN & GRUNFELD LLP |   Mass. Bar No. 708195 |
| 101 Mission Street, Sixth Floor | RIGHTS BEHIND BARS |
| San Francisco, California 94105-1738 | 416 Florida Avenue N.W. #26152 |
| Telephone: (415) 433-6830 | Washington, D.C. 20001-0506 |
| Email: mbien@rbgg.com | Telephone: (202) 455-4399 |
|       egalvan@rbgg.com | Email: oren@rightsbehindbars.org |
|       kjanssen@rbgg.com |       amaris@rightsbehindbars.org |
|       gjackson-gleich@rbgg.com |       d@rightsbehindbars.org |

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 679-3674
Email: susan@ccijustice.org

*Pro hac vice* applications pending

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>        Defendants. | Case No. 4:23-cv-04155<br><br>**DECLARATION OF F▇▇▇ G▇▇▇▇ A▇▇▇ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |

[4339998.1]

I, F███ G███ A██ declare:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification.

2. I was incarcerated in federal prison and was incarcerated at FCI Dublin from April 2022 until I was released on February 10, 2023. I am currently residing in Arizona.

3. FCI Dublin's inadequate systems for preventing, detecting, and responding to sexual abuse have caused actual harm to myself and others incarcerated at FCI Dublin and put myself and other incarcerated persons at substantial risk of serious harm from sexual assault, harassment, and retaliation from staff.

4. While at FCI Dublin, I experienced sexual abuse by Medical Officer Cohen when he inappropriately touched my breasts during an examination.

5. I experience severe depression and anxiety and have asthma attacks.

6. Somewhere around 9:30 AM to 11 AM, on or around June 8, 2022, I was having severe anxiety.

7. I went to the pill line and was given 75 mg of Venlafaxine. I felt drowsy but remained coherent.

8. I got dizzy and felt tightness in my chest. My bunkmate contacted medical because she was scared that I was having a heart attack.

9. The medical staff did not come to my unit, as per the policy, but made me walk to the medical unit. I was unable to walk unassisted, so my bunkmate and one other person from my housing unit walked me to the medical unit.

10. Medical Officer Cohen was staffing the medical unit when I arrived.

11. My bunkmate and the other cellmate said they could wait to walk me back, but Cohen said he could have someone escort me back later and asked them to leave.

12. Cohen closed the door to the medical examining area and was alone with me.

13. I reported the drug I had taken to Cohen and let him know my symptoms.

14. Cohen said he wanted to check my heart. My hair was in a ponytail in front

1

DECLARATION OF F███ G███ A██ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

of my left breast. Cohen grabbed my right breast, "cupped it up," and swiped it from right to left.

15. Cohen did not prescribe me with anything, but told me I needed to relax, so I stayed there to rest until later on that evening. Cohen was monitoring me throughout my medical visit.

16. After the incident, when I had asthma attacks that triggered my anxiety and I returned to the medical unit, I was reminded of what happened in that room. I have had nightmares following the incident, one of which led me to falling off the bottom bunk.

17. When I arrived at FCI Dublin in April 2022 I was not provided adequate training and information about how to respond to sexual abuse.

18. There is no effective way to confidentially report sexual assault and abuse by staff at FCI Dublin. Additionally, when incarcerated persons report sexual abuse by staff, FCI Dublin and BOP do not seriously investigate the reports. Investigations are frequently delayed and overseen by staff who know and work with the offending staff member. Generally nothing happens as a result.

19. I spoke with SIS Lt. Putnam about Cohen's abuse. I told him the entire incident as I described it above. I believe Putnam documented my report. Putnam said he would share it with his higher ups and conduct a follow-up investigation. Putnam also told me that a psychiatrist would be speaking with me.

20. Two weeks later, I still had not heard back from Putnam, nor had I heard from anyone. I tried to speak with Putnam again after my bunkmate told me that they had swept it under the rug.

21. Putnam refused to speak with me again, saying someone else was going to speak with me. Putnam said he would "take care of it," but there is no documentation of what he did. I believed that telling Putnam, as a reporting officer, would be sufficient.

22. Putnam did not tell me to file anything. I was never told the process of what I should do.

23. I reported the incident to Assistant Warden Robles after Putnam refused to

speak with me again. Assistant Warden Robles did not know that it had happened, but said, "I assure you, they didn't sweep it under the rug."

24. Yet, no one reached out to me during my entire period of incarceration. I have not received any documentation of my report. None of Putnam's superiors reached out to talk to me.

25. I tried to speak with Counseling Manager Campos. Campos told me that if it's concerning what happened, my bunkmate already reported it. Campos did not provide me with any resources, listen to my story, or tell me what to do next. Campos said she had "already sent the paperwork." I was very confused about why Campos would not want to hear the story directly from me.

26. Staff at FCI Dublin prevent people from reporting sexual assault and abuse by staff and retaliate against people who do report.

27. I have experienced retaliation, including medical neglect, for reporting Cohen's abuse.

28. After the incident with Cohen, I received subpar medical care. My symptoms (anxiety, headaches, depression, and asthma) have continued, but I did not receive consistent treatment.

29. For example, a female officer who escorted me to medical asked to speak with the medical staff outside and warned the medical staff that "she's the one concerning Cohen," to "be careful" because "she put the PREA on him." When the medical staff returned to the room, they spoke with me awkwardly.

30. In other moments, when I arrived seeking care at the medical unit, the practitioners did not see me, turning me away and telling me they're too backed up with insufficient medical staff to see me.

31. As explained below, it was only when I exhibited signs of a kidney stone in December 2022 that the medical staff finally sent me to the hospital.

32. I have been prescribed medication for my migraines, but the medical unit did not provide me with the medication.

3

DECLARATION OF ███ G███ A███ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

33. I also had issues with accessing my asthma medication during my first five weeks at Dublin (before the incident). Dublin would say they did not have my medical records. After a couple of months, they gave me medication, but not the right amount.

34. In October 2022, I had been suffering from migraines for about a month or so. I spoke with Captain Valero about my symptoms, and he told me to let the medical unit know that I talked to him. This made no difference, and I was denied medication.

35. As another showing of retaliation, I remained in the same housing unit, but had to change rooms numerous times.

36. There is little to no confidential mental health care available to survivors of sexual abuse and assault at FCI Dublin. I was able to speak with the psychologist only a small handful of times. I had spoken with him twice four months after Cohen left. I tried repeatedly to speak with him further but was not allowed. He said he would call me to make an appointment and didn't reach out again for over a month.

37. More frequent access to mental health care would have limited the physical manifestations of my mental health complications – but it was not provided.

38. There is little to no medical care available to survivors of sexual abuse and assault at FCI Dublin.

39. I had kidney stones while incarcerated in Dublin, which medical officials discovered. Yet, Dublin officials prevented me from getting a surgery that would have removed the kidney stones and ended the pain I was in. I told Dublin about the pain on December 22, learned the pain was caused by kidney stones on December 29, 2022, but was not able to get a surgery until March 22, 2023, after getting released, because Dublin officials refused to allow me to get the surgery. This led to an additional three months of agonizing pain.

40. Dr. Wilson was my treating physician. I informed him that I had kidney and back problems since 1997 and told them that a kidney stone was blocking passage for my kidney.

41. Dr. Wilson told Mr. Simms, a Dublin administrator, that if Simms didn't

4

DECLARATION OF ██████ G██████ A██████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

send me to medical, I needed to be released. Simms didn't want to send me to medical for the kidney stone removal surgery. Dr. Wilson told Simms that he needed to do this—that it would just take three hours for my pain to end. But Simms said he "didn't want to do the paperwork, which would take three hours." Dr. Wilson said, "I don't care for shit how long it takes—you're going to be responsible. I'm not going to take responsibility, so I am telling you what you need to do."

42. The facility took me to the hospital to get checked out. The doctor ordered a Computed Tomography (CT) scan and found a kidney stone that was nine centimeters large blocking my passage. The urologist could see me in the hospital and remove it immediately. But the Dublin officials present denied it.

43. I was brought back to the facility without relief. I continually returned to medical for the pain. Every time I went, they asked me how much pain I was in on a scale of 1 to 10, and I said 10. But I saw my medical records, and they indicated that my pain level was only 3.

44. I was finally able to get the kidney stone removed and stints inserted on March 22, 2023.

45. I experienced bouts of extreme pain from December 22 through March 22 that were entirely avoidable if Dublin officials had upheld their obligations and provided me with medically necessary care.

46. The camera system at FCI Dublin is inadequate. There are some cameras installed in fixed locations in the facility, but it is well known that there are no cameras in certain areas. Staff at FCI Dublin have never worn body-worn cameras in the facility.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5

DECLARATION OF ██████ G████ A████ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

I, F███ G███ A███, declare that D Dangaran and other individuals in their organization spoke with me on numerous occasions, most recently on August 7th, 2023. Due to time constraints and technological inabilities, I could not personally sign this declaration. On this day, August 7th, 2023, D Dangaran corresponded with me via phone and I authorized them to sign it on my behalf if I was unable to provide it by the time of filing.

Executed on this 14th day of August, 2023.

*D Dangaran*

Signed by D Dangaran,
Rights Behind Bars

[4201615.1]