| | |
|---|---|
| MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>KARA J. JANSSEN – 274762<br>GINGER JACKSON-GLEICH – 324454<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830<br>Email: mbien@rbgg.com<br>egalvan@rbgg.com<br>kjanssen@rbgg.com<br>gjackson-gleich@rbgg.com | OREN NIMNI*<br>  Mass. Bar No. 691821<br>AMARIS MONTES*<br>  Md. Bar No. 2112150205<br>D DANGARAN*<br>  Mass. Bar No. 708195<br>RIGHTS BEHIND BARS<br>416 Florida Avenue N.W. #26152<br>Washington, D.C. 20001-0506<br>Telephone: (202) 455-4399<br>Email: oren@rightsbehindbars.org<br>amaris@rightsbehindbars.org<br>d@rightsbehindbars.org |
| SUSAN M. BEATY – 324048<br>CALIFORNIA COLLABORATIVE FOR<br>IMMIGRANT JUSTICE<br>1999 Harrison Street, Suite 1800<br>Oakland, California 94612-4700<br>Telephone: (510) 679-3674<br>Email: susan@ccijustice.org | *Pro hac vice* applications pending |

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>    Defendants. | Case No. 4:23-cv-04155<br><br>**DECLARATION OF H▇▇▇ G▇▇▇▇▇▇▇ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |

[4334004.1]

DECLARATION OF H▇▇▇ G▇▇▇▇▇▇▇ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

I, H▮▮▮▮ G▮▮▮▮▮▮▮▮, declare:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification.

2. I was incarcerated at FCI Dublin from February or March 2020 until November 2021. In November 2021, I was transferred to Federal Detention Center, SeaTac. I now live in California after I was released.

3. FCI Dublin's inadequate systems for preventing, detecting, and responding to sexual abuse have caused actual harm to myself and others incarcerated at FCI Dublin and put myself and other incarcerated persons at substantial risk of serious harm from sexual assault, harassment, and retaliation from staff.

4. While at FCI Dublin, I experienced sexual abuse by Officer Chavez and witnessed other officers abusing women.

5. While I was incarcerated at FCI Dublin, I worked in the kitchen from Summer or Fall 2020 to November 2021. When I began working in the kitchen, I heard that officers were sexually abusing women, but I did not believe it—until I saw it for myself.

6. Correctional officers began forcing me to watch the door to the closets or bathrooms, acting as a lookout so prison officers could be alone with women in these spaces.

7. Officers Jones and Kinlaw went into these rooms alone with women three to four times while I acted as a lookout.

8. Everyone knew that these officers were having sex with women during this time.

9. I also saw officers touch women inappropriately. Most often, I saw Officer Chavez touch women inappropriately, hugging them in the fridge at the beginning and end of every shift. Chavez also often asked women to go into places alone with him—for example, he asked women to go with him to the fridge or trash area. I often saw the sexual

way he looked at and touched other women, which made me feel uncomfortable.

10. Many women in the facility knew he had sex with many women who worked in the kitchen.

11. When one of the women Officer Chavez was having sex with was released around Spring 2021, Chavez turned his attention toward me. He started to ask me to give him hugs "for doing a good job."

12. Then he constantly began inviting me into situations where we could be alone—to the fridge, to take out the trash with him, or other errands. Soon after, he began touching my body, often touching my back and shoulders. He also brought me food and treats from the outside. This included candy, avocados, and prepared food such as ceviche. All of these things were things we could not get inside the prison, which made them very coveted and valuable to us.

13. In April or May 2021, when Officer Chavez and I were alone in the fridge, he said to me, "I investigated you, I saw that they are going to deport you and that you have kids." I was afraid of what Chavez would do with this information. I felt threatened by his reference to my noncitizen status and my children.

14. Officer Chavez escalated his actions into overtly sexual ones. He started making sexual comments about me and my body.

15. He began following me into the fridge, touching me more aggressively.

16. Chavez touched my genitals with his hands, and then proceeded to digitally penetrate me. This happened about six times.

17. Chavez also attempted to get me to touch him. He took my hand and put it on his penis over his pants. I could feel he was erect. I immediately moved my hand and said, "No."

18. I did not feel like I could reject Officer Chavez's abuse because he often threatened me. The first couple of times, I tried to stop him. I told him, "This isn't right. I don't want to do this. I don't like that you do that." He responded, "Aren't you well behaved? Okay, do you want to lose your good time? You know I can take you to the

SHU" (referring to the Special Housing Unit).  When I attempted to refuse his sexual advances, he also mentioned that I had an immigration detainer, and that he knew where my children lived.

19. I knew that he was threatening me, so I stopped fighting back in fear.

20. When I arrived at FCI Dublin in early 2020, I was not provided adequate training and information about how to respond to sexual abuse.

21. There is no effective way to confidentially report sexual assault and abuse by staff at FCI Dublin.

22. While I was held at FCI Dublin, I never felt comfortable reporting Officer Chavez's sexual abuse.  I was terrified and did not even know how to report.

23. Staff at FCI Dublin prevent people from reporting sexual assault and abuse by staff and retaliate against people who do report.

24. When incarcerated persons report sexual abuse by staff, FCI Dublin and BOP do not seriously investigate the reports.  Investigations are frequently delayed and overseen by staff who know and work with the offending staff member.  Generally nothing happens as a result.

25. I only felt comfortable reporting this abuse when I was transferred to SeaTac and other women from FCI Dublin encouraged me to report.

26. There is little to no confidential mental health care available to survivors of sexual abuse and assault at FCI Dublin.

27. As a result of this abuse, I feel as if I could never have a relationship or be intimate with a man again.  I feel utterly broken.  I have physical and psychological manifestations of extreme emotional distress that still affect me to this day.

28. There is little to no medical care available to survivors of sexual abuse and assault at FCI Dublin.

29. The camera system at FCI Dublin is inadequate.  There are some cameras installed in fixed locations in the facility, but it is well known that there are no cameras in certain areas.  Staff at FCI Dublin have never worn body-worn cameras in the facility.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration is executed at _____California_____ this __26__ day of _____July_____, 2023.



[4201615.1]