1   Jonathan A. Goldstein, Esq. (SBN: 225293)
    WADE LAW GROUP
2   A Professional Corporation
    262 E Main Street
3   Los Gatos, CA 95030
    Telephone: (408) 842-1688
4   Facsimile: (408) 549-1612
    Email: jgoldstein@wadelitigation.com
5

6   Attorneys for Defendant,
    OFFICER GACAD, in his
7   individual capacity

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  COALITION FOR WOMEN PRISONERS; Et. Al.)   Case No. 4:23-cv-04155-YGR

12                Plaintiffs,              )   **DEFENDANT/CROSS-COMPLAINANT**
                                           )   **OFFICER GACAD'S CROSS-**
13        v.                               )   **COMPLAINT AGAINST**
                                           )   **DEFENDANTS/CROSS-DEFENDANTS**
14                                         )
    UNITED STATES OF AMERICA FEDERAL       )
15  BUREAU OF PRISONS, a governmental entity;)
    Et. Al.,                               )
16                                         )
17                Defendants.             )
                                           )
18  ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ )
                                           )
19  OFFICER GACAD, in his individual capacity, )
                                           )
20                Defendant/Cross-Complainant, )
                                           )
21        v.                               )
                                           )
22  UNITED STATES OF AMERICA FEDERAL       )
23  BUREAU OF PRISONS, a governmental entity;)
    Et. Al.,                               )
24                                         )
                Defendants/Cross-Defendants. )
25                                         )
                                           )
26                                         )
                                           )
27                                         )

28

                                     1
**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST**
**DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

**CROSS-COMPLAINT**

NOW COMES Defendant/Cross-Complainant, OFFICER GACAD, in his individual capacity (hereinafter referred to as "CC-OG") and hereby cross-complaints against Defendants/Cross-Defendants, UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,  (hereinafter collectively referred to as "Cross-Defendants") in the above-captioned matter initiated by Plaintiffs, COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,  (hereinafter collectively referred to as "Plaintiffs") by their filing of a Unverified Complaint against CC-OG and Cross-Defendants as follows:

**THE PARTIES**

1.      Plaintiffs, COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated, as, and was at all times mentioned herein, an individual and citizen of the United States of America, resident of Los Angeles County, State of California and was also at all times mentioned herein, (hereinafter collectively referred to as "Plaintiffs"), reside in and/or otherwise are doing business in Los Angeles County, State of California.

2.      Defendant/Cross-Defendant, United Stated of America Federal Bureau of Prisons ("CD-BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin").  FCI Dublin is a federal female low-security correctional institution with an adjacent minimum-security satellite camp located at 5701 8th Street, Dublin, California.

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

3.      Defendant/Cross-Defendant, Colette Peters ("CD-CP") is the current director of the BOP and is sued in her official capacity.

4.      Defendant/Cross-Defendant, Tahesha Jusino ("CD-TJ") is the current Warden of FCI Dublin and is sued in her official capacity.

5.      Defendant/Cross-Defendant, Officer Bellhouse ("CD-OB") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity. While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Bellhouse was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

6.      Defendant/Cross-Complainant, Officer Gacad ("CD-OG") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Gacad was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

7.      Defendant/Cross-Defendant, Officer Jones ("CD-OJ") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Jones was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

8.      Defendant/Cross-Defendant, Lieutenant Jones ("CD-LJ") was an officer at FCI Dublin during the relevant period and is sued in her individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Lieutenant Jones was acting within the scope of her official employment, or with the BOP's permission and consent and under color of federal law.

9.      Defendant/Cross-Defendant, Officer Lewis ("CD-OL") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Lewis was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

10.     Defendant/Cross-Defendant, Officer Nunley ("CD-ON") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Nunley was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

11.     Defendant/Cross-Defendant, Officer Serrano ("CD-OSE") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Serrano was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

12.     Defendant/Cross-Defendant, Officer Shirley ("CD-OSH") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Shirley was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

13.     Defendant/Cross-Defendant, Officer Smith ("CD-OSM") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Smith was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law. Defendant Officer Pool was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Pool was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

14.     Defendant/Cross-Defendant, Lieutenant Putnam ("CD-LP") was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Lieutenant Putnam was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

15.     Defendant/Cross-Defendant, Officer Vazquez ("CD-OV") was an officer at FCI Dublin during the relevant period and is sued in her individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Vazquez was acting within the scope of her official employment, or with the BOP's permission and consent and under color of federal law.

16.     CD-BOP, CD-CP, CD-TJ, CD-OB, CD-OJ, CD-LJ, CD-OL, CD-JM, CD-OSE, CD-OSH, CD-OSM, CD-LP, CD-OV, shall be hereinafter collectively referred to as "Cross-Defendants."

17.     CC-OG and Cross-Defendants shall be hereinafter collectively referred to as "Defendants" in relation to being named party Defendants in a civil action that was initiated by

4

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

Plaintiffs on or about August 16, 2023 when Plaintiffs filed an Unverified Complaint against Defendants in the U.S. District Court for the Northern District of California.

**VENUE**

18.     This complaint seeks to remedy these failures on behalf of the putative class and to compensate named Plaintiffs for the immense harms they have suffered.  An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

19.     This action involves claims arising under the United States Constitution.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because at least one plaintiff resides in this district, one or more defendants resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

21.     Jurisdiction is conferred upon this Court to adjudicate Plaintiffs' claims against Defendants pursuant to by Title 42 of the United States Code, Sections 1331 (federal question) and 1343(a) (civil rights).  Jurisdiction is conferred for the CC-OG's crossclaims against Cross-Defendants pursuant to Title 28, United States Code Section l367(a) because they form part of the same case or controversy as Plaintiffs' claims against Defendants in the instant action.

22.     Venue lies in the Northern District of California pursuant to Title 28, United States Code Section l391(b), as the unlawful acts and practices alleged herein occurred in and around the City of Dublin, County of Alameda, California, which is within this judicial district.

**FACTUAL ALLEGATIONS**

23.     Plaintiffs' Complaint alleges that, "On or about August 16, 2023, Plaintiffs filed an Unverified Complaint ("Plaintiffs' Complaint") in U.S. Northern District Court of California against Defendants."

24.     Plaintiffs' Complaint alleges that, "Plaintiffs' Complaint alleges that, "Plaintiff R.B. has been incarcerated at FCI Dublin since 2013 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff R.B. has been sexually harassed and abused while incarcerated at FCI Dublin. Plaintiff R.B. witnessed widespread sexual abuse of her

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

friends, including her cellmate, and was sexually harassed and retaliated against herself.  She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff R.B.'s safekeeping, care, and protection.  Plaintiff R.B. is also a member of CCWP." "

25.     Plaintiffs' Complaint alleges that, "Plaintiff A.H.R. has been incarcerated at FCI Dublin since May 2019 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff A.H.R. is a transgender man and uses he/him pronouns.  Plaintiff A.H.R. has been sexually harassed and abused while incarcerated at FCI Dublin.  Plaintiff A.H.R. was coerced into serving as a lookout for officers as they sexually abused incarcerated women and was himself sexually harassed and groped by BOP staff.  He lives in ongoing fear of further sexual abuse from those he depends upon for his care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff A.H.R.'s safekeeping, care, and protection.  Plaintiff A.H.R. is also a member of CCWP."

26.     Plaintiffs' Complaint alleges that, "Plaintiff S.L. has been incarcerated at FCI Dublin since 2016 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff S.L. has been sexually harassed and abused while incarcerated at FCI Dublin. Plaintiff S.L. was sexually abused by an officer for months; when that officer left BOP after being confronted about his actions, he moved to another state to be near S.L.'s family.  Plaintiff S.L. continues to experience retaliation and threats from BOP staff who blame her for the officer's departure.  She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff S.L.'s safekeeping, care, and protection.  Plaintiff S.L. is also a member of CCWP."

27.     Plaintiffs' Complaint alleges that, "Plaintiff J.L. has been incarcerated at FCI Dublin since 2020 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff J.L. has been sexually harassed and abused while incarcerated at FCI Dublin. Plaintiff J.L. endured months of abuse by an officer who supervised her in the kitchen; the officer harassed, threatened, assaulted, and raped her.  She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142cacdc2

misconduct and failure to ensure Plaintiff J.L.'s safekeeping, care, and protection.  Plaintiff J.L. is also a member of CCWP."

28.     Plaintiffs' Complaint alleges that, "Plaintiff J.M. has been incarcerated at FCI Dublin since 2018 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff J.M. has been sexually harassed and abused while incarcerated at FCI Dublin. Plaintiff J.M. witnessed multiple officers sexually abusing incarcerated women and was herself abused by medical staff.  She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff J.M.'s safekeeping, care, and protection. Plaintiff J.M. is also a member of CCWP."

29.     Plaintiffs' Complaint alleges that, "Plaintiff G.M. has been incarcerated at FCI Dublin since 2020 and at all times material to this action has been incarcerated in the custody and control of the BOP. Plaintiff G.M. has been sexually harassed and abused while incarcerated at FCI Dublin. Multiple guards sexually harassed and groped her and demanded to see parts of her body.  She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff G.M.'s safekeeping, care, and protection. Plaintiff G.M. is also a member of CCWP."

30.     Plaintiffs' Complaint alleges that, "Plaintiff A.S. has been incarcerated at FCI Dublin since 2020 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff A.S. has been sexually harassed and abused while incarcerated at FCI Dublin. Plaintiff A.S. experienced relentless harassment by multiple officers, one who required her to expose her body to him and watch him masturbating, and others who retaliated against her after the officer who had abused her was placed on leave.  She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff A.S.'s safekeeping, care, and protection."

31.     Plaintiffs' Complaint alleges that, "Plaintiff L.T. has been incarcerated at FCI Dublin since 2019 and at all times material to this action has been incarcerated in the custody and control of the BOP.  Plaintiff L.T. has been sexually harassed and abused while incarcerated at FCI Dublin.

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

Plaintiff L.T. was harassed and groped by an officer who forced her and others to strip and dance for him and was well known for trading food and basic goods with incarcerated individuals in exchange for sexual acts. She lives in ongoing fear of further sexual abuse from those she depends upon for her care due to the institution's ongoing failures to address rampant staff misconduct and failure to ensure Plaintiff L.T.'s safekeeping, care, and protection. Plaintiff L.T. is also a member of CCWP."

32.  Plaintiffs' Complaint alleges that, "Defendant United Stated of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin is a federal female low-security correctional institution with an adjacent minimum-security satellite camp located at 5701 8th Street, Dublin, California."

33.  Plaintiffs' Complaint alleges that, "Defendant Colette Peters is the current director of the BOP and is sued in her official capacity."

34.  Plaintiffs' Complaint alleges that, "Defendant Tahesha Jusino is the current Warden of FCI Dublin and is sued in her official capacity."

35.  Plaintiffs' Complaint alleges that, "Defendant Officer Bellhouse was an officer at FCI Dublin during the relevant period and is sued in his individual capacity. While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Bellhouse was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

36.  Plaintiffs' Complaint alleges that, "Defendant Officer Gacad was an officer at FCI Dublin during the relevant period and is sued in his individual capacity. While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Gacad was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

37.  Plaintiffs' Complaint alleges that, "Defendant Officer Jones was an officer at FCI Dublin during the relevant period and is sued in his individual capacity. While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Jones was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

38.  Plaintiffs' Complaint alleges that, "Defendant Lieutenant Jones was an officer at FCI

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

Dublin during the relevant period and is sued in her individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Lieutenant Jones was acting within the scope of her official employment, or with the BOP's permission and consent and under color of federal law."

39.    Plaintiffs' Complaint alleges that, "Defendant Officer Lewis was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Lewis was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

40.    Plaintiffs' Complaint alleges that, "Defendant Officer Nunley was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Nunley was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

41.    Plaintiffs' Complaint alleges that, "Defendant Officer Serrano was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Serrano was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

42.    Plaintiffs' Complaint alleges that, "Defendant Officer Shirley was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Shirley was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

43.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Smith was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law. Defendant Officer Pool was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Pool was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.  Defendant Lieutenant Putnam was an officer at FCI Dublin during the relevant period and is sued in his individual capacity.  While performing the acts

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

and omissions that Plaintiffs allege in this complaint, Lieutenant Putnam was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law."

44.     Plaintiffs' Complaint alleges that, "Defendant Officer Vazquez was an officer at FCI Dublin during the relevant period and is sued in her individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer Vazquez was acting within the scope of her official employment, or with the BOP's permission and consent and under color of federal law."

45.     Plaintiffs' Complaint alleges that, "While acting and failing to act as alleged herein, Defendants, and each of them, had complete custody and total control of Plaintiffs. Plaintiffs were, and continue to be, dependent upon Defendants for their personal security and necessities."

46.     Plaintiffs' Complaint alleges that, "In performing the acts and/or omissions contained herein, Defendants, and each of them, acted under color of federal law, and Plaintiffs are informed and believe each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiffs.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiffs and to their constitutionally and statutorily protected rights.  Despite this knowledge Defendants failed to take steps to protect Plaintiffs and to ensure their constitutional rights were satisfied while in the custody of Defendants."

47.     Plaintiffs' Complaint alleges that, "Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein."

48.     Plaintiffs' Complaint alleges that, "BOP has failed to adhere to PREA regulations. From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions and failures to act have created an environment that has exposed, and continues to expose, the people in its custody to an unconscionable risk of sexual violence."

49.     Plaintiffs' Complaint alleges that, "Sexual assault and harassment have been serious, systemic problems in BOP facilities generally—and at FCI Dublin in particular—for decades.

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

Defendants BOP and FCI Dublin officials have been aware of these problems and have failed to take action."

50.     Plaintiffs' Complaint alleges that, "Officers at FCI Dublin have been undeterred by the internal investigations, criminal prosecutions, and even convictions of former staff members.  Even after Warden Garcia was removed from his position and the first Dublin officers were criminally charged the summer of 2021, rampant sexual abuse has continued at FCI Dublin, grievously injuring named plaintiffs and many others.  On information and belief, officers at FCI Dublin continue to be placed on administrative leave pending investigation of allegations of sexual misconduct, including as recently as August 10, 2023.  Plaintiffs, and other putative class members continue to report ongoing sexual assault and harassment by staff."

51.     Plaintiffs' Complaint alleges that, "Plaintiff J.L. is one of countless people who were sexually abused by officers working in the kitchen, including well after Warden Garcia was suspended.  Plaintiff J.L. was forcibly raped, assaulted, and harassed by her kitchen supervisor, Defendant Officer Jones."

52.     Plaintiffs' Complaint alleges that, "Around July 2021, Defendant Officer Jones began to taunt Plaintiff J.L. because of her weight, calling her "big," then he began to flirt with her.  Jones provided Plaintiff J.L. special benefits for this sexual attention: he allowed her to have food from the kitchen and allowed her to use the kitchen to cook.  He also brought Plaintiff J.L. special treats from the outside, like chips, chocolate bars, and ice cream which he would leave in the freezer for her."

53.     Plaintiffs' Complaint alleges that, "As time went on, Defendant Officer Jones' behavior became assaultive.  One day, he asked Plaintiff J.L. to go into the walk-in fridge to get him something for his meal.  Kitchen officers routinely used the walk-in fridge to abuse incarcerated women, because it was private and out of view of security cameras.  Once inside the fridge, Jones grabbed Plaintiff J.L., bent her over, and rubbed his penis against her buttocks over their clothing.  A few days later, he removed her from her unit and ordered her to get his parmesan cheese out of the walk-in freezer.  When they entered the freezer, he tried to kiss her, but she told him she ate tuna to avoid kissing him.  Instead of kissing her, he pulled up her shirt, groped her, and sucked on her right breast with his mouth.  She was afraid to do anything to stop him.  He stopped when he thought he

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

heard someone coming."

54.     Plaintiffs' Complaint alleges that, "The next day, Plaintiff J.L. attempted to leave work, but Defendant Officer Jones instructed her to wait.  He took Plaintiff J.L. into the warehouse, where they entered a smaller room with a door—another location known to be out of view of security cameras.  Jones pulled down her pants, bent her over, and vaginally raped her without a condom, pushing into her so hard that her head repeatedly hit the concrete wall in front of them.  When he was about to orgasm, he turned Plaintiff J.L. around and ejaculated into her mouth and onto her shirt."

55.     Plaintiffs' Complaint alleges that, "While this was happening, Defendant Officer Pool was in the staff office in the kitchen about forty feet from the warehouse.  A few days after her rape, Pool—who also worked in the kitchen and sexually abused numerous kitchen workers—began calling Plaintiff J.L. "Becky the Slave."  Plaintiff J.L. understood "Becky" to be slang for a person who performs oral intercourse."

56.     Plaintiffs' Complaint alleges that, "Defendant Officer Jones recently admitted to sexually assaulting five incarcerated women—including Plaintiff J.L.—in a single year.  See Plea Agreement at 4, United States v. Jones, No. 4:23-cr-00212-HSG (N.D. Cal. July 13, 2023)."

57.     Plaintiffs' Complaint alleges that, "Plaintiff G.M. endured horrendous sexual harassment and abuse by Defendant Officers Smith and Nunley."

58.     Plaintiffs' Complaint alleges that, "Defendant Officer Nunley supervised Plaintiff G.M. at Unicor—the for-profit call center that operates inside FCI Dublin—from approximately September 2020 until September 2021.  Several months after Plaintiff G.M. started working at the call center, Defendant Officer Nunley began throwing notes at her instructing her to meet him in the back.  He would tell Plaintiff G.M. that he wanted to have sex with her and promised to write her letters of recommendation and send money to her kids in exchange.  On one occasion, Defendant Officer Nunley took papers from Plaintiff G.M.'s desk and said he would only return them if she had sex with him.  When she refused, he shredded the papers."

59.     Plaintiffs' Complaint alleges that, "While Plaintiff G.M. was at her workstation, in view of others, Defendant Officer Nunley often would come up behind her, pull her hair, rub her shoulders, and attempt to kiss her.  On one occasion in the spring of 2021, while showing G.M.

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

pictures of himself at a football game on his computer, Nunley came up behind her, rubbed his penis against her backside and attempted to kiss her neck."

60.     Plaintiffs' Complaint alleges that, "Plaintiff G.M. was also abused by Defendant Officer Smith. When Plaintiff G.M. was in the quarantine unit during the summer of 2020, Smith would regularly enter the showers to watch Plaintiff G.M. and other women shower.  He would refuse to give Plaintiff G.M. a towel unless she walked over to him naked.  He would demand that Plaintiff G.M. "show him something" in order to send out mail.  Plaintiff G.M. also witnessed Defendant Officer Smith make other incarcerated women perform sexual acts in order to access basic privileges, including sending mail out."

61.     Plaintiffs' Complaint alleges that, "Plaintiff G.M. witnessed other officers in the quarantine unit use food and hygiene products as bribes in the same manner.  She once witnessed officers tell women that if they wanted a Kit-Kat bar they needed to "break off a piece" for the officer, which meant revealing or touching themselves."

62.     Plaintiffs' Complaint alleges that, "Plaintiff L.T. is also a survivor of Defendant Officer Smith. From the time she arrived at FCI Dublin, Plaintiff L.T. was aware of Smith's reputation as a sexual abuser.  She knew that he regularly flirted with and touched women in her housing unit.  She knew that when he worked the night shift, he would turn on the music in his office and expect women to dance for him. She heard him tell other incarcerated people that he liked to see "titties." "

63.     Plaintiffs' Complaint alleges that, "Then in June 2021, Defendant Officer Smith forced Plaintiff L.T. to strip for him, and then assaulted her.  As people were getting ready for bed, Smith came to L.T.'s doorway.  He asked her to dance for him.  Plaintiff L.T. felt like she had no other option because he was in charge and could make her life hard if she said no and began to dance for him.  While Plaintiff L.T. was dancing, Smith asked to touch her breasts.  Plaintiff L.T. pulled up her blouse and Smith groped her bare breasts with his hands.  He then returned to his desk.  Plaintiff L.T. then saw another girl come down from her cell and dance for Smith in front of the officers' station."

64.     Plaintiffs' Complaint alleges that, "After this initial incident, Defendant Officer Smith

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

began bringing his radio to the housing unit and would ask Plaintiff L.T. and other women to dance for him whenever he was working the evening shift.  Everyone in the facility, including the officers, knew that Smith was holding these strip shows, but they did nothing to stop him.  In exchange, Smith would let L.T. and others have additional privileges including moving around the unit as they wanted during facility-wide lock downs and quarantines, turning up the officers' MP3 music, drinking, and generally creating a "party" atmosphere when he would have them dance and strip for him.  It was understood that they allowed L.T. and others out of their cells to do what they wanted for the officers' whole shift from—2 pm until the 10 pm count—as long as they "entertained" Defendant Officer Smith and the other officers.  Officers Smith, Williams, Bell, and others facilitated this exchange by opening the doors and allowing them to roam free while no one else could so that L.T. and others could dance for them."

65.     Plaintiffs' Complaint alleges that, "Plaintiff A.S. has endured abuse and retaliation by multiple Dublin officials. Defendant Officer Smith relentlessly sexually harassed Plaintiff A.S. from around September 2020 through August 2021, including up to four times a week from November 2020 through March 2021 during a COVID lockdown."

66.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith began harassing Plaintiff A.S. around September 2020.  He called her into his office and asked her about her time in state prison.  He told her that state prison was nothing like the BOP because in state prison, officials would provide contraband to women incarcerated in order to obtain sexual favors, whereas at BOP officers did not need to do that.  Soon after this conversation, Smith began asking Plaintiff A.S. to "show him something."  He commented on how pretty her breasts looked and told her that he wanted to see them.  In exchange, he would trade her a drink from his office."

67.     Plaintiffs' Complaint alleges that, "During a COVID lockdown around January 2021, Defendant Officer Smith's abuse intensified.  He would intercept Plaintiff A.S. and others on their way to the shower, and demand that they take off their robes and show him their naked bodies.  He repeatedly threatened disciplinary action if A.S. and others did not disrobe in front of him.  On one occasion, he pulled back the shower curtain and watched Plaintiff A.S. shower.  Also, during lockdown, Defendant Officer Smith would watch Plaintiff A.S. in her cell when naked.  Several

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

times, Smith locked A.S.'s cell door and refused to open it unless she disrobed for him.  He also threated to issue disciplinary actions against Plaintiff A.S. and others unless they stripped for him."

68.     Plaintiffs' Complaint alleges that, "After that lockdown ended, Defendant Officer Smith began calling A.S. to his office over the intercom. One time, when she arrived at his office, he was masturbating himself over his pants.  He forced Plaintiff A.S. to stand in front of him, and stared at her while he continued masturbating."

69.     Plaintiffs' Complaint alleges that, "In August 2021, after the Warden was placed on administrative leave, Defendant Officer Smith was again demoted to working the perimeter, where he continued his harassment. While Plaintiff A.S. walked the yard during recreation, Defendant Officer Smith drove by in a car and asked Plaintiff A.S. to "show me something." "

70.     Plaintiffs' Complaint alleges that, "When Plaintiff A.S. refused Defendant Officer Smith's advances, his friend, Officer Ramos, retaliated by tossing and searching her cell.  Ramos also took Plaintiff A.S.'s roommates' items intentionally to create conflict between them.  Ramos told Plaintiff A.S. that if she did not do what he said, another officer would "hit" her room again, meaning search her cell without reason and take her possessions.  On one occasion, Ramos escorted Plaintiff A.S. to an office, and had Officer DeLuca strip search her, seemingly for no reason.  Ramos and DeLuca took Plaintiff A.S.'s property during this incident."

71.     Plaintiffs' Complaint alleges that, "Plaintiff S.L. has been assaulted, harassed, and stalked by Defendant Officer Lawrence Gacad.  Gacad's abuse began in March 2022, nearly a year after the Warden was placed on administrative leave.  Gacad began flirting with Plaintiff S.L. and dedicating songs to her that he played on his computer.  He dropped her notes in her cell during rounds, telling her that she was beautiful, that he was in love with her.  His messages explained his infatuation with Plaintiff S.L. saying, "Back in September 2021, since I first laid eyes on you, I knew you were going to be my future wife."  He also began sending her electronic messages using a pseudonym.  He gave Plaintiff S.L. gifts including a necklace, watch, and earrings."

72.     Plaintiffs' Complaint alleges that, "After several weeks, their relationship became sexual.  Around April 2022, Defendant Officer Gacad grabbed Plaintiff S.L. while she was working in the yard office and groped her buttocks and kissed her.  Soon after, during a trash run, he pulled

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142cacccdc2

Plaintiff S.L. into the yard office, groped her body, and kissed her.  After this incident, he began to grope and kiss her every time they took out the trash, approximately once a week.  In May 2022, Defendant Officer Gacad was working in Plaintiff S.L.'s housing unit at night when he appeared in the doorway to her room.  She was naked, having just come from the shower, and he kissed her and touched her genitals.  On one last occasion around May 2022, while Defendant Officer Gacad was working in the officers' station in her unit, he again kissed Plaintiff S.L."

73.     Plaintiffs' Complaint alleges that, "In June 2022, after another incarcerated person reported Gacad's abuse, Plaintiff S.L. and Defendant Officer Gacad were questioned about their rumored relationship by Defendant SIS Officer Lt. Putnam.  Defendant Officer Gacad promptly quit."

74.     Plaintiffs' Complaint alleges that, "After he quit, Defendant Officer Gacad continued to harass, stalk, and torment Plaintiff S.L.  After she was released from the SHU, Plaintiff S.L. continued to receive messages from Defendant Officer Gacad on CorrLinks for months.  In the beginning of July 2022, Plaintiff S.L. was shocked to see Defendant Officer Gacad in her parents' home in Arizona during a video visit wearing a mask.  Defendant Officer Gacad told S.L.'s parents that he loved her and stayed with them for several weeks.  He has since moved to Phoenix, and now works with Plaintiff S.L.'s mother at the VA hospital."

75.     Plaintiffs' Complaint alleges that, "Though Plaintiff S.L. ended their relationship and told Defendant Officer Gacad to stay away from her, as of Spring of 2023, she believes he is still in communication with her family.  Plaintiff S.L. is now terrified of being transferred to a facility in Phoenix or returning to her home, where her abuser resides."

76.     Plaintiffs' Complaint alleges that, "Plaintiff A.H.R. has been sexually harassed and retaliated against by multiple officers at FCI Dublin.  Throughout 2020 and 2021, Plaintiff A.H.R. was forced to act as a lookout by Defendant Officer Jones in the kitchen and Defendant Officer Bellhouse in the Safety Office, while the officers had sex with incarcerated women."

77.     Plaintiffs' Complaint alleges that, "In early 2020, Plaintiff A.H.R. took a job in the food service department as a butcher and shortly thereafter, Defendant Officer Jones began to flirt

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

with several of the girls that worked with Plaintiff A.H.R. Soon after, he began ordering Plaintiff A.H.R. to work as a look out for him while he had sex with incarcerated women."

78.     Plaintiffs' Complaint alleges that, "Defendant Officer Jones made it clear that Plaintiff A.H.R. could have anything he wanted from the kitchen, such as cheese and vegetables, in exchange for his work as a lookout."

79.     Plaintiffs' Complaint alleges that, "Being forced into this lookout role made Plaintiff A.H.R. deeply uncomfortable.  He quit his position in food service to try to avoid taking part in Defendant Officer Jones's abuse."

80.     Plaintiffs' Complaint alleges that, "Soon after, when Plaintiff A.H.R. began working in a new job in the Safety Department, he was once again forced to act as a lookout for Defendant Officer Bellhouse.  Bellhouse forced Plaintiff A.H.R. to work as a lookout as Bellhouse had sex with the women that A.H.R. worked with.  Plaintiff A.H.R. worked as a lookout until Bellhouse was walked off the job for his inappropriate sexual relationships."

81.     Plaintiffs' Complaint alleges that, "In exchange for working as a lookout, Defendant Officer Bellhouse gave Plaintiff A.H.R. food such as pizza, bagels, candy, and energy drinks such as Monsters and Red Bulls.  Plaintiff A.H.R. knew that this was a way to ensure he would help the officers and stay quiet.  Plaintiff A.H.R. believes that these officers targeted him to work as a lookout because he is a transgender man, and they believed that it would not raise suspicion if they had a man working with them."

82.     Plaintiffs' Complaint alleges that, "From around July to November 2022, Plaintiff A.H.R. was himself sexually harassed by Defendant Officer Vazquez.  Vazquez would often remove A.H.R. from his living area or workplace.  Defendant Officer Serrano often assisted Defendant Officer Vazquez to take Plaintiff A.H.R. to private rooms where it was well known that there were no cameras.  Once there, Vazquez would flirt with A.H.R. and often asked why he didn't look for women "beyond the fence."  She also hugged A.H.R. on a number of occasions and kissed him on the lips.  For these sexual favors, Defendant Officer Vazquez brought Plaintiff A.H.R. contraband such as Red Bulls, candy bars, and clothing, and gave him special privileges such as using staff computers."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

83.     Plaintiffs' Complaint alleges that, "Defendant Officers Vazquez and Serrano began to intentionally interfere with Plaintiff A.H.R.'s romantic relationship with another incarcerated person in an attempt to separate him from his partner.  Around September 6, 2022, Defendant Officers Vazquez and Serrano took him to a staff office.  Serrano told him about the email messages that his incarcerated girlfriend was exchanging with Defendant Officer Gacad.  Vasquez allowed A.H.R. to use her computer to view these email messages.  Defendant Officers Vazquez and Serrano also let A.H.R. listen to phone calls between his incarcerated girlfriend and Defendant Officer Gacad."

84.     Plaintiffs' Complaint alleges that, "Shortly after Plaintiff A.H.R. filed an emergency request for administrative remedy in March 2023, Defendant Officer Vazquez was placed on administrative leave."

85.     Plaintiffs' Complaint alleges that, "Plaintiff J.M. witnessed Defendant Officers Jones and Pool sexually abusing incarcerated women in early 2022 and was herself abused by FCI Dublin medical staff."

86.     Plaintiffs' Complaint alleges that, "In November 2021, Nurse Fraser Cohen inappropriately groped Plaintiff J.M.'s naked breast while administering an "EKG" for an unknown medical reason.  At least two other incarcerated women report that Nurse Cohen forced them to disrobe and inappropriately fondled their breasts during medical exams in 2021 and 2022.  In June 2022, Cohen took another incarcerated woman to the medical office multiple times a week outside of normal hours and weekends and sedated her to the point of unconsciousness for no apparent medical reason.  On at least one occasion, this woman awoke and found that Nurse Cohen was fondling her bare breasts."

87.     Plaintiffs' Complaint alleges that, "In July 2022, Nurse Wilson came into Plaintiff J.M.'s cell and gave her an injection that knocked her out for several hours.  Staff never explained why she was given this shot, or what happened when she was unconscious, but the experience made her even more afraid to engage and seek medical care at the facility due to fears that she would be groped or otherwise drugged and assaulted."

88.     Plaintiffs' Complaint alleges that, "Plaintiff R.B.'s recent experiences show that people at FCI Dublin continue to endure degrading sexual comments and invasions of privacy on a

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142cacccdc2

regular basis.  Plaintiff R.B. has a medical condition that requires her to give herself rectal enemas at least once per day.  In order to administer the enema, she has to disrobe from the waist down. Previously, she was housed alone to protect her privacy, but on November 23, 2022, Case Manager O'Brien, and Unit Manager Groover told R.B. that she would be getting a roommate.  Plaintiff R.B.'s enema process can take up to two hours, but FCI Dublin only requires her roommate to leave for twenty minutes.  In addition, staff refuse to allow R.B. to cover her window while she administers the enema.  In March 2023, Officer Cortez went so far as to shine a flashlight on Plaintiff R.B. while she was administering an enema in her room, causing her intense humiliation and fear."

89.     Plaintiffs' Complaint alleges that, "Numerous CCWP members have endured sexual assault and harassment by FCI Dublin officials, even after former Warden Garcia was put on leave. For example, many CCWP members were abused by members of the kitchen staff throughout 2021 and into 2022, including Defendant Officers Pool, O'Connor, Kinlaw, and St. Clair, who remain on administrative leave pending investigation into sexual abuse allegations.  Combined, these kitchen officers have victimized dozens of additional putative class members at FCI Dublin—raping them, groping them, harassing them, threatening them, and ordering others to assist with their abuse.  These officers would regularly provide the women they abused with fresh fruits, vegetables, dairy products, and fish and meats in exchange for sexual favors, or to curry survivors and witnesses' silence."

90.     Plaintiffs' Complaint alleges that, "Other CCWP members have been sexually abused by staff in recent months. For example, around February 2023, CCWP member A.R., was sexually harassed and groped by Officer Caston while in the SHU.  Caston grabbed A.R.'s breast, told officers to look at A.R.s "big ass titties," denied A.R. menstrual products, and interfered with their outgoing mail.  In June 2023, while CCWP member T.M. was in the shower, Officer Cooper kicked open the curtain and shown a flashlight on her naked body.  T.M. later to spoke to multiple other women who said that Cooper had also walked in on them while showering."

91.     Plaintiffs' Complaint alleges that, "Named Plaintiffs and numerous CCWP members have experienced retaliation after reporting abuse by FCI Dublin staff."

92.     Plaintiffs' Complaint alleges that, "For example, Plaintiff J.M. was placed in the SHU for over two weeks in October 2022, soon after making a legal call regarding abuse at FCI Dublin.

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

During that period staff prevented her from calling her lawyer."

93.     Plaintiffs' Complaint alleges that, "After filing a PREA complaint and speaking with an FBI officer, Plaintiff G.M. was placed in the SHU for four and a half months on a false write up. Since her retaliatory SHU placement, Plaintiff G.M.'s confidential legal mail has been opened, and her room has been repeatedly searched, as recently as March 2023.  In addition, beginning in January 2023, Defendant Officer Shirley and Defendant Lt. Jones have harassed Plaintiff G.M. and other incarcerated people for reporting sexual abuse.  Defendant Officer Shirley asked Plaintiff G.M. if she was "working for them" and going to "report me to the FBI." "

94.     Plaintiffs' Complaint alleges that, "Even failing to comply with demands to report abuse could result in retaliation.  In July 2022, Defendant SIS Lt. Putnam placed Plaintiff S.L. in the SHU after she refused to speak with OIG about her relationship with Defendant Officer Gacad, who had quit the month prior.  Defendant Lt. Putnam further confiscated all of Plaintiff S.L.'s property, and never returned it.  Plaintiff S.L. believes that SIS staff still have her property, including evidence of her relationship with Defendant Officer Gacad."

95.     Plaintiffs' Complaint alleges that, "After Plaintiff S.L. worked up the courage to report Defendant Officer Gacad, she faced retaliation from other officers.  Defendant Officer Serrano blamed S.L. for getting another Dublin officer walked off and called S.L. "bitch" and other degrading names.  Serrano also removed Plaintiff S.L.'s mail from the mailbox and read it aloud to others in an attempt to intimidate her from reporting.  Prior to being walked off for misconduct allegations, Defendant Lt. Jones also threatened Plaintiff S.L. and regularly embarrassed her in front of her entire unit.  Officers also spread gossip and give cruel directives about people who report sexual abuse; for example, Officers Serrano and Vazquez would say to people "don't speak to [S.L.]" as a way to ensure she kept quiet."

96.     Plaintiffs' Complaint alleges that, "After Plaintiff A.H.R. reported Defendant Officer Gacad's abuse of Plaintiff S.L. to Defendant Lt. Putnam in November 2022, officers retaliated against him by threatening him. Defendant Officer Serrano came to his door and told him, "You better tell your fucking bitch to not report us."  Officers also spread rumors about his and Plaintiff S.L.'s cooperation with investigations."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

97.     Plaintiffs' Complaint alleges that, "Plaintiff L.T. was afraid to report because she knew that staff routinely retaliated against survivors and was aware that Defendant SIS Lt. Putnam was friends with many abusive officers, including Warden Garcia.  After Plaintiff L.T. spoke with the U.S. Attorney's Office and filed an emergency request for an administrative remedy in March 2023, officers verbally harassed and strip-searched her.  As a result, she continues to be afraid to report any future abuse."

98.     Plaintiffs' Complaint alleges that, "After Plaintiff A.S. reported Defendant Officer Smith's abuse to SIS around April 2023, Defendant Officer Lewis ordered Plaintiff A.S. to unzip her commissary-issued sweatshirt to expose her clothed chest while leaving Food Service, something female officers had never ordered her to do before.  When Defendant Officer Lewis told her to keep "running [her] mouth," Plaintiff A.S. reported his harassment to SIS.  The same day, staff searched her room in apparent retaliation.  Defendant Officer Lewis has forced Plaintiff A.S. to unzip her sweatshirt countless times since then."

99.     Plaintiffs' Complaint alleges that, "Plaintiff R.B. was also afraid to report staff abuse because she witnessed retaliation against survivors who did report abuse, including retaliatory placement in SHU.  When she did eventually report former Warden Garcia's abuse, she faced retaliation.  Plaintiff R.B. was close friends with M.H., who confided in Plaintiff R.B. about her physical relationship with Warden Garcia.  Once, following an argument he had with M.H., Warden Garcia came over to Plaintiff R.B. and ask if she "could keep this one calm," which R.B. understood to be a request to help keep M.H. quiet about their illicit relationship.  After Plaintiff R.B. was subpoenaed to testify for the government against the former Warden, she lost her job in the Warden's Complex suddenly and without any explanation.  One day months later, after Plaintiff R.B. and others returned to their unit following a legal visit, Officer Craig forced the entire unit to attend a "Town Hall" meeting, during which he screamed at and berated them.  R.B. and others understood this to be punishment for meeting with attorneys."

100.     Plaintiffs' Complaint alleges that, "Many CCWP members have also been retaliated against for reporting abuse and speaking with outside advocates.  For example, after CCWP member A.R. reported being sexually harassed and groped by Officer Caston in early 2023, staff kept A.R. in

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

the SHU for weeks for seemingly no reason, then transferred them to a far-off facility.  After CCWP member T.M. reported that Officer Cooper sexually harassed her in the shower in June 2023, guards gave her a bogus write-up, searched her cell, and destroyed her property."

101.    Plaintiffs' Complaint alleges that, "CCWP member A.S. was repeatedly sexually assaulted and harassed by Officer Nunley throughout 2020 and 2021, and finally worked up the courage to share her experiences with an attorney in March 2023.  Just days after her first legal call, officers took her to the SHU for weeks for "wearing green pants."  After her attorney successfully advocated for her release from the SHU, officers have continued to retaliate against her, including by searching her room countless times.  CCWP member N.A. was sexually harassed and assaulted by Officer Ramos repeatedly for years, until he was walked off around March 2022.  After she reported him to the Warden and the OIG, Ramos was not held accountable, and he only became more aggressive.  Other staff continue to retaliate against N.A. including by harassing at her, screaming at her in front of other incarcerated women, and throwing her in the SHU as recently as March 2023.  CCWP member M.S. was sexually harassed by a medical technician, who forced M.S. to disrobe unnecessarily and smacked her butt during a medical exam in May 2022.  Shortly after M.S. reported the technician to SIS in June 2022, M.S. developed a sinus infection.  Medical staff ignored her many requests for care, and by the time she was seen in late August, she was in constant, excruciating pain, and had to go on very intense antibiotics."

102.    Plaintiffs' Complaint alleges that, "After many Plaintiffs submitted emergency requests for administrative remedies regarding staff misconduct in February and March 2023, FCI Dublin strip searched dozens of people on their way to and from legal visits with undersigned counsel and CCWP advocates.  Strip searches around legal visits were previously unheard of at FCI Dublin, and many understood this to be punishment for speaking with attorneys."

103.    Plaintiffs' Complaint alleges that, "Other survivors were transferred soon after reporting their abuse and filing emergency requests, which they and others still at FCI Dublin believe was retaliation and an effort to suppress further reports.  Other survivors have experienced repeated and invasive drug tests that began only after they reported abuse; SHU placement on obviously pretextual or false charges; direct threats of physical violence from officers who had been abusing

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

them; unnecessary strip searches on a near-daily basis for months after reporting; termination from their jobs; medical neglect; and being prohibited from using the phone or conducting video visits with family."

104.    Plaintiffs' Complaint alleges that, "Even after some survivors were transferred to other facilities, retaliation resulting from reporting their abuse at Dublin continued at their new facilities. For example, after one individual was transferred to FDC SeaTac, that individual was retaliated against for having reported at FCI Dublin, including through use of force, false write-ups, barring him from using the phone, being placed in the SHU.  After another survivor was transferred to FCI Phoenix, she was "marked as a 'troublemaker' because she was at Dublin," was denied a job because of it, and officers at the facility further retaliated after her name was released in the news.  A group of survivors and witnesses now at FPC Bryan are disparagingly referred to by staff as "the Dublin girls," indicating they will be targeted for disfavor.  Preemptive Retaliation to Prevent Reporting."

105.    Plaintiffs' Complaint alleges that, "Survivors and witnesses of abuse also experienced threats and preemptive retaliation from officers who suspected they would report their abuse."

106.    Plaintiffs' Complaint alleges that, "For example, after Plaintiff J.L. told another incarcerated person about Defendant Officer Jones' abuse, he threatened Plaintiff J.L. with physical violence.  One day when J.L. went to dinner, Defendant Officer Jones pulled her to the side and told her he was going to "beat [her] ass because [h]e was pissed" that she reported the abuse.  He said she needed to "keep [her] mouth shut" so that '[they]' don't get into trouble." "

107.    Plaintiffs' Complaint alleges that, "Defendant Lt. Jones also repeatedly threatened to punish Plaintiff J.L, Plaintiff A.S., and others if they reported staff misconduct.  Before she was placed on administrative leave in March 2023 following sexual misconduct allegations, Lt. Jones was well known for screaming at incarcerated women, blaming them for the staff walk-offs and sexual abuse, and threatening collective punishment.  When she first came to Dublin, she told people incarcerated there that she was retaliating against them for the things that were being said about officers there.  She told Plaintiff A.S. and her roommates: "I came here because of everything that's going on, you can go ahead and write me up, it's not gonna go anywhere." "

108.    Plaintiffs' Complaint alleges that, "In January 2023, Defendant Lt. Jones pat searched

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

all the kitchen workers, including Plaintiff J.L., in front of four male officers.  Defendant Lt. Jones intimidated Plaintiff J.L. and her coworkers and forced them put their food trays on the ground with geese excrement.  Defendant Lt. Jones screamed at those watching, including Plaintiff A.S.: "Stop staring, you'll be next." She shouted things like: "You wouldn't have to deal with staff like me if you hadn't gotten rid of all the good ones," and "you told on all the good ones."  Lt. Jones told Plaintiff J.L. and the other kitchen workers that she loved to send people to the SHU and told them to "make sure to write your lawyers about this," and "when you write to your lawyers, make sure you spell my name right. It is J-O-N-E-S."  This made it clear to Plaintiff J.L. that staff read their emails and letters so that they would know who was reporting abuse and who they would target for future retaliation."

109.    Plaintiffs' Complaint alleges that, "Many CCWP members have experienced preemptive retaliation.  For example, Defendant Officer Smith threatened CCWP member Y.M. after she witnessed his rampant abuse.  Smith harassed many women in Y.M.'s housing unit, specifically targeting Mexican immigrant women.  Smith had sexual relationships with two of Y.M.'s former cellmates; he would enter the cell and order Y.M. to leave so that he could have sexual contact with her roommate.  Smith told Y.M. that he knew that her son was in federal prison, and that if she reported him, her son would bet hurt.  Staff also used physical violence and threats to attempt to silence CCWP member Z.T.S..  After Z.T.S. walked in on Officer Chavez having sex with an incarcerated woman in the warehouse in late 2019, Chavez grabbed Z.T.S. by the shirt, shoved her against a wall, and violently shook her by her work uniform while her coworkers looked on. Defendant Officer Jones was in a sexual relationship with Z.T.S.'s cellmate, and after the relationship ended, Jones lashed out at both Z.T.S. and her cellmate.  He shoved Z.T.S.'s cellmate against a hot oven, and verbally abused Z.T.S., calling her a "fucking wetback" and threatening: "I'll slap the shit out of you if you ever say anything."  Defendant Officer Jones also instructed another incarcerated woman to "do whatever you need to do to put [Z.T.S.] in the SHU."  That woman made a false report that Z.T.S. got into a fight with her, and Z.T.S. was thrown into the SHU for a month."

110.    Plaintiffs' Complaint alleges that, "Multiple noncitizen survivors and witnesses of staff abuse were threatened with deportation.  Officers told them that they would contact immigration authorities if they reported staff misconduct."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

111.   Plaintiffs' Complaint alleges that, "Others incarcerated at FCI Dublin similarly experienced anticipatory retaliation, such as physical violence and threats of additional violence; sexual assault; verbal abuse and epithets; threats of retaliatory SHU placements; and being fired from a job because an abusive officer suspected a survivor would report him.  Others were placed in the SHU in what they understood to be an effort to suppress individual reports of abuse, or a threat of "collective punishment" if they reported officers' abuse.  Additionally, one officer that was abusing an individual he knew had kids threatened to cut off visits with her children if she reported him.  Then-Warden Garcia threatened to transfer one woman "to a facility further away from her children" if she told any other incarcerated women of their relationship."

112.   Plaintiffs' Complaint alleges that, "For example, Defendant Lt. Putnam has led internal investigations of staff misconduct at FCI Dublin for years and remains in a leadership role to this day.  Throughout the time that former Warden Garcia and convicted former officials were sexually abusing people in their custody, Defendant Lt. Putnam received dozens of reports of staff abuse.  Indeed, many named Plaintiffs and CCWP members reported staff abuse to Lt. Putnam in recent years.  Instead of acting on those reports, Defendant Lt. Putnam would tell those who reported abuse: "You should keep quiet, do your time, and don't make problems."  It was also well known that Lt. Putnam was close to Warden Garcia and other abusers."

113.   Plaintiffs' Complaint alleges that, "Furthermore, when incarcerated persons report abuse to staff, their experiences are often not kept confidential, and are instead shared among staff and even other incarcerated people.  For example, after Plaintiff A.H.R. reported Defendant Officer Gacad's ongoing sexual abuse of Plaintiff S.L., Defendant Lt. Jones and Defendant Officer Serrano began retaliating against S.L. Lt. Jones and Officer Serrano have threatened her, embarrassed her in front of her unit, read her aloud mail to others, monitored her calls, spread rumors about her, called her a "bitch" and told others, "don't speak to [S.L.]." "

114.   Plaintiffs' Complaint alleges that, "All other means of communicating with the outside world—including the BOP email system, regular phone calls, and regular mail—are heavily monitored by staff.  Many people at FCI Dublin report that staff read their emails and letters, and listen to their calls, and reference the contents in later conversations.  For example, after CCWP

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

member M.S. wrote to an attorney stating that "abuse is still happening here," Defendant Lt. Putnam pulled her into a private room to question her about what she had shared with the attorney."

115.    Plaintiffs' Complaint alleges that, "After reports are made, and evidence of staff misconduct is provided, action is often not swiftly taken against officers.  Indeed, oftentimes, no action is taken at all.  As a result of this pattern of inaction and retaliation, people incarcerated at FCI Dublin broadly understand that even brazen sexual abuse and harassment will not be meaningfully sanctioned at FCI Dublin."

116.    Plaintiffs' Complaint alleges that, "For example, after Plaintiff R.B. summoned the courage to report Defendant Officer O'Connor—for sexually harassing another incarcerated woman, and physically threatening R.B. when she tried to intervene to three different members of the Task Force—no actions were taken against him."

117.    Plaintiffs' Complaint alleges that, "After Plaintiff A.H.R. reported Defendant Officer Gacad's ongoing sexual misconduct in November 2022, Lt. Putnam said it was "too much" for him to deal with and did not follow-up with A.H.R. until A.H.R. filed an emergency request for administrative remedy in March 2023 through his attorneys."

118.    Plaintiffs' Complaint alleges that, "In addition, when allegations were first made about Defendant Officer Gacad's sexual relationship with Plaintiff S.L., Defendant Gacad was permitted to voluntarily resign his post at FCI Dublin and remains free in the community to continue his harassment of Plaintiff S.L. and her family.   Plaintiff S.L.'s own report about misconduct by Defendant Officer Gacad was not investigated until June 2023."

119.    Plaintiffs' Complaint alleges that, "Plaintiff J.L. reported her abuse by Defendant Officer Jones to Defendant Lt. Putnam in May 2022, and participated in an FBI interview in August 2022, but she received no information about the investigation or any support until she filed an emergency grievance about conditions in March 2023."

120.    Plaintiffs' Complaint alleges that, "Plaintiff G.M. reported her abuse in July 2022 and spoke to the FBI in August 2022, but she did not receive any follow-up about the investigation for many months, nor did she receive any support, only retaliation."

121.    Plaintiffs' Complaint alleges that, "Plaintiff A.S. reported Defendant Officer Lewis's

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

sexual harassment to SIS repeatedly, but no action has been taken against him."

122.    Plaintiffs' Complaint alleges that, "In recent months, Plaintiff L.T. has gone to SIS to report Defendant Officer Smith's abuse at least four times, SIS staff ignore her and do nothing to help.  Plaintiff L.T. has also tried to report issues using the forms they provide for administrative remedies, but officers refuse to take them."

123.    Plaintiffs' Complaint alleges that, "Even where multiple people have reported abuse by specific officers, those officers have remained employed by BOP. For example, both Plaintiff S.L. and Plaintiff A.H.R. have reported retaliation by Defendant Officer Serrano, yet the officer remains on staff at FCI Dublin.  Defendant Officers O'Connor and Kinlaw are still on administrative leave pending criminal investigations, and as of May 2023, FCI Dublin was still accepting "bids" from them for their positions in the kitchen."

124.    Plaintiffs' Complaint alleges that, "Some survivors have reported abuse directly to BOP officials overseeing FCI Dublin and still faced inaction.  For example, in 2021 when one incarcerated woman reported Defendant Officer Smith's persistent harassment of her to a visiting BOP representative, the representative acknowledged there were other reports on Defendant Officer Smith but offered no indication that the report would be taken seriously, saying only, "It's normal for that to happen to women like you, you are pretty." "

125.    Plaintiffs' Complaint alleges that, "Furthermore, even in cases where officers have been criminally convicted for abuse at FCI Dublin, the BOP has failed to make any reparations to survivors of their abuse who remain in BOP custody.  BOP has declined to certify U-Visa applications to survivors who aid in internal investigations of officers and face deportation, it has broadly declined to sign compassionate release petitions of survivors and testifying witnesses, and there has been no apology made to survivors by the officers involved or the FCI administration that permitted these egregious human rights violations to occur.  It is no surprise, in this context, that sexual abuse continues."

126.    Plaintiffs' Complaint alleges that, "As a result of the BOP's failure to prevent officers' sexual violence, survivors of sexual abuse and retaliation at FCI Dublin have suffered grievous harm, with ongoing effects.  The injuries inflicted upon them by abusive officers include physical pain from

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

rape, mental anguish, extreme emotional distress and resulting physical symptoms, economic damages, dignitary harms profound social isolation, and undue invasion of privacy."

127.   Plaintiffs' Complaint alleges that, "The Plaintiffs in this case have all suffered serious injuries following staff sexual abuse and retaliation at FCI Dublin.  The widespread staff misconduct at FCI Dublin has forced Plaintiff CCWP to divert critical resources to provide its members needed support resources, engage in public advocacy efforts, and respond to members' urgent mental and physical health needs."

128.   Plaintiffs' Complaint alleges that, "Plaintiff R.B. was recently diagnosed with depression and prescribed antidepressants. Stress and anxiety have caused her hair to fall out, her to lose weight, and interfered with her ability to sleep."

129.   Plaintiffs' Complaint alleges that, "Plaintiff A.H.R. was forced to quit his job in Food Service to avoid witnessing former Defendant Officer Jones' rapes of incarcerated women. He has suffered anxiety and depression and has experienced fear for his personal safety and humiliation as a result of his own sexual harassment by Defendant Officer Vazquez."

130.   Plaintiffs' Complaint alleges that, "Plaintiff S.L. has suffered extreme emotional distress as a result of her abuse by Defendant Officer Gacad and retaliation by multiple Dublin officials.  Her chronic stress is so severe that it has disrupted her menstrual cycle."

131.   Plaintiffs' Complaint alleges that, "Plaintiff J.L. was diagnosed with PTSD as a result of her abuse by Defendant Officer Jones. For months, she slept constantly and confined herself to her room because she was afraid of what officers could do."

132.   Plaintiffs' Complaint alleges that, "Plaintiff J.M. has experienced intense anxiety, depression, and insomnia. After being placed in the SHU, she was so distraught that she was placed on suicide watch."

133.   Plaintiffs' Complaint alleges that, "Plaintiff G.M. has experienced severe depression and PTSD due to the abuse she witnessed and experienced.  Her symptoms were exacerbated after staff chose to withdraw G.M. from prescribed medication for a period of two months. She has suffered a partial blindness as a result of her chronic stress."

134.   Plaintiffs' Complaint alleges that, "Plaintiff A.S. has experienced intense anxiety,

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

which is exacerbated each time she has to interact with officers at Dublin."

135.   Plaintiffs' Complaint alleges that, "Plaintiff L.T. has experienced anxiety, depression, and insomnia, and cries constantly.  F. Survivors of and Witnesses to Sexual Abuse Are Denied Access to Mental Health Care and Medical Care to Address Their Mental and Physical Injuries. "

136.   Plaintiffs' Complaint alleges that, "After suffering grievous mental and physical injury, survivors continue to be denied basic mental health and medical care."

137.   Plaintiffs' Complaint alleges that, "Survivors of sexual abuse at FCI Dublin suffered and continue to suffer severe emotional distress resulting from their abuse.  For example, many survivors have suffered depression, suicidality, intense anxiety, panic attacks, and paranoia. Some survivors who were able to get mental health care are now on psychotropic medications to treat anxiety and depression or sleep disorders. Others have been unable to obtain adequate mental health care, prolonging or worsening their emotional distress."

138.   Plaintiffs' Complaint alleges that, "Many survivors live in a perpetual state of fear. Some survivors are too afraid to leave their rooms, go anywhere alone or be alone anywhere in custody, or shower alone for fear of being abused (beyond the reach of surveillance cameras), and some feel ill at the sight of officers' grey uniforms. For some, the officers' sexual abuse triggered their previous traumatic experiences of surviving sexual abuse or domestic violence, exacerbating their emotional distress. Due to the gravity of the emotional harms and the pervasive culture of sexual abuse at FCI Dublin, survivors' emotional distress persists after they are transferred or released, or their abusers have been walked off."

139.   Plaintiffs' Complaint alleges that, "Survivors are not provided with adequate mental health care at FCI Dublin to address the psychological trauma that officers' abuse and retaliation has caused. Though FCI Dublin recently re-established an agreement with an outside agency, Tri-Valley Haven, to provide legally required mental health services to survivors of sexual abuse at the facility, these services were not available at the facility for over a year. Even now, there is no direct way for survivors to confidentially contact the outside mental health agency, Tri-Valley Haven, to request mental health services. Survivors must either put in a request to Tri-Valley Haven, or use the new pilot legal phones, which can often only be accessed with staff assistance. Even once contacted, very

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

few survivors at FCI Dublin have been able to see a counselor from Tri-Valley Haven in-person or able to speak with them on a confidential line. Those lucky few are only permitted five thirty-minute sessions with unlicensed counselors. Survivors of abuse at Dublin who BOP subsequently transferred to other facilities do not have any access to outside specialized support services from Tri-Valley Haven or other analogous organizations."

140. Plaintiffs' Complaint alleges that, "For example, despite requesting services from Tri-Valley Haven multiple times, it took months for Plaintiff S.L. and Plaintiff G.M. to receive care. Plaintiff S.L. was dismayed that she had to repeat her trauma to a new counselor at each session. Meanwhile, Plaintiff R.B. and others who have requested to meet with Tri-Valley Staff have been told that the list is "full." "

141. Plaintiffs' Complaint alleges that, "This obstructionism compounds the problem that many people incarcerated at FCI Dublin do not trust the mental health professionals that work at the prison and do not feel safe talking with them; they know that information they share related to their traumatic experiences with sexual assault and harassment do not stay confidential. For example, Plaintiff L.T. was retaliated against after she spoke to her attorneys and the BOP psychologist. After she spoke to them, she was moved out of her unit in retaliation. When L.T. inquired as to why she was moved, her unit manager, Officer Craig, told her it was because of "all the lies you guys are telling, you guys are going to psychology and telling lies about PREA." Officer Craig is married to the psychologist who L.T. reported to, Dr. Mulcahy. Plaintiff L.T. knew that Officer Craig's comments meant that he had discussions with his wife about what she reported when she attempted to access mental health care. As a result, L.T. is afraid of accessing any mental health care in the facility or reporting what she experienced."

142. Plaintiffs' Complaint alleges that, "Even where survivors have felt safe to seek mental health care at FCI Dublin, many either cannot actually access the care or it is severely inadequate. For example, facility staff told Plaintiff G.M. to just "do breathing exercises" after she was abused by two officers. When another survivor sought mental health care at the direction of SIS in 2021, none of the therapists she met with spoke Spanish, her primary language, so they were unable to assist her."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

143.    Plaintiffs' Complaint alleges that, "Recently, FCI Dublin has gone so far as to cut off numerous survivors' psychiatric medications.  For example, around December 2022, clinicians at FCI Dublin took Plaintiff G.M. off her psychiatric medications for three months.  This practice is widespread, disabling, and dangerous: several survivors who were taken off of mood stabilizing medications after reporting abuse have been on suicide watch at Dublin in recent months."

144.    Plaintiffs' Complaint alleges that, "Further, individuals who have testified in criminal cases concerning abuse at FCI Dublin have experienced extreme difficulty accessing victim-witness advocates appointed to them by the U.S. Attorney's Office.  After months of struggling to communicate with clients, the Family Violence Law Center, one of the agencies contracted to provide services to victims and witnesses in the criminal proceedings, wrote to BOP officials pleading for improved access.  As a result of these challenges, survivors who have been summoned to share their painful experiences in court, and who have anxiously prepared to testify, are left to decompensate without access to any mental healthcare."

145.    Plaintiffs' Complaint alleges that, "Survivors have experienced many physical symptoms of emotional distress, including insomnia, loss of a menstrual cycle, partial vision loss, hair loss, and weight loss.  Accessing medical care to address these concerns is next to impossible, in part due to lack of resources.  People at FCI Dublin have to wait weeks or months to see a medical provider if they are even able to see one at all.  Problems around medical neglect are especially acute for survivors' reproductive health issues."

146.    Plaintiffs' Complaint alleges that, "Multiple medical providers at FCI Dublin have abused individuals in their care, which has deterred others from seeking care or going back for additional care.  Many people incarcerated at FCI Dublin have also been denied access to basic medical care after reporting sexual abuse.  Medical staff also frequently do not keep patients' health information private and discuss patients' medical issues in the presence of other staff and incarcerated persons."

147.    Plaintiffs' Complaint alleges that, "For example, Plaintiff S.L. reported that she sliced her finger in May 2023, but was not able to get stitches until the following day; she now has permanent nerve damage.  She is also afraid to seek medical care for a gynecological problem

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

because she fears that the officers who escort her to the appointment will spread rumors about her."

148.    Plaintiffs' Complaint alleges that, "Plaintiff R.B. required an ultrasound of her breast according to a medical doctor.  When the time for her appointment came, there was no doctor at FCI Dublin, and they figured out the order was accidentally written for the wrong breast.  Without a physician at the facility, Dublin staff could not change the order, so they did the ultrasound on the wrong breast.  Plaintiff R.B. is still waiting on the facility to send her out for an ultrasound on the correct breast."

149.    Plaintiffs' Complaint alleges that, "Prior to being incarcerated, Plaintiff G.M. had a splenectomy in 2017.  When she arrived at FCI Dublin, she was taken off her blood-clotting medicine.  Compounded by her extreme distress following staff sexual abuse, she is now starting to go blind as a result.  Since February, she has been losing vision in her eye, and it was several months before she could see an eye specialist.  Her vision loss episodes have been getting more frequent and are now accompanied by headaches; she has also fallen off the bed multiple times because of her vision loss and she has bruises all over her body.  Every time she goes to sick call, they have no record of her problems.  When she has inquired about her care, staff asked what her "motive" is and whether she is going to file a grievance against them."

150.    Plaintiffs' Complaint alleges that, "Plaintiff A.H.R. pulled a muscle in his back and was experiencing significant pain; clinicians refused to give him ibuprofen to treat it.  He also suffered a weeks-long respiratory illness that caused him to spit up blood and feel as though he could not breathe, but medical staff at FCI Dublin did nothing to treat it."

151.    Plaintiffs' Complaint alleges that, "Plaintiff L.T has been unable to access all necessary care for her respiratory condition or her hearing loss and has been provided expired medication. 207. Numerous CCWP members report egregious medical neglect. For example, after reporting sexual harassment by a medical technician, one CCWP member was denied care for her sinus infection for over two months.  Facility staff have denied another CCWP member's repeated requests to remove her IUD, which was inserted over a decade ago and must be removed."

152.    Plaintiffs' Complaint alleges that, "FCI Dublin Officers and their supervisors have created an intricate trafficking system where incarcerated people are forced to commit sexual acts in

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

exchange for valuable items and special benefits or force incarcerated people to work as lookouts so that officers may engage in their abuse.  216. As detailed in the individualized accounts of harm of S.L., L.T., G.M., A.H.R. and A.S., it is common practice for officers to illicit sexual favors in exchange for contraband or other benefits.  Of the named plaintiffs, more than half were solicited into a sex trafficking or labor trafficking system where sexual favors were exchanged for goods or benefits."

153.    Plaintiffs' Complaint alleges that, "Officers solicit sexual favors such as oral and penetrative sex, digital penetration, stripping, fondling, forced sex with other incarcerated people, and forced masturbation."

154.    Plaintiffs' Complaint alleges that, "Officers take advantage of the isolation of incarcerated people to solicit sexual acts from them, often forcing them to endure sexually explicit comments about their bodies or manipulating them with gestures of love and adoration through notes, songs, or direct comments."

155.    Plaintiffs' Complaint alleges that, "Officers at every level have knowingly created and maintained a complex system of payment for these sexual acts.  The dire living conditions at FCI Dublin create a context where basic necessities, hot or fresh food, sanitary items, and commissary items are extremely valuable goods that officers use as bartering tools in exchange for sexual favors. At times, they even exchange illicit substances, such as drugs and alcohol, for sexual acts."

156.    Plaintiffs' Complaint alleges that, "Officers also take advantage of the lack of resources and programming at FCI Dublin, to aid their payment system.  They offer special benefits that incarcerated people could not access otherwise in exchange for sexual acts, such as access to cellphones, use of staff computers, disciplinary benefits, letters of recommendation, and offers to help incarcerated people—either monetarily, or with access to reentry resources—when they are released. Such rewards were specifically offered to plaintiffs G.M., A.S., S.L. and others."

157.    Plaintiffs' Complaint alleges that, "Officers knowingly use their power and authority to force, threaten and coerce incarcerated people into committing sex acts. Because officers have the authority to direct incarcerated people's actions and movements—whether as work supervisors or as unit officers— Dublin officers exploit this authority to direct people into areas where they can be

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

alone in order to command incarcerated people to sexually gratify them. Officers also withhold basic necessities or repeatedly lock people into their cells until they provide them with sexual favors."

158.     Plaintiffs' Complaint alleges that, "Officers employ a cycle of retaliation to coerce incarcerated people into their trafficking system and prevent reporting. Officers terrorize incarcerated people with threats of physical or sexual abuse, disciplinary actions, and legal consequences if they do not commit sexual acts or if they report abuse.  For example, incarcerated people who are noncitizens are threatened with immigration consequences if they do not commit sex acts or if they report abuse."

159.     Plaintiffs' Complaint alleges that, "Other incarcerated people are threatened with disciplinary actions such as disciplinary reports, punitive cell searches, loss of job assignments, and solitary confinement if they refuse sexual advances.  As such, officers' unlimited discretion to control incarcerated people physically and through threatened legal process, coalesce into coercive tactics that force incarcerated people into their sex trafficking system."

160.     Plaintiffs' Complaint alleges that, "This trafficking system is a coordinated venture, where officers actively assist other perpetrating officers in exploiting incarcerated people within FCI Dublin walls. Officers help perpetrating officers by assisting them to isolate and transport incarcerated people to areas where perpetrating officers can receive sexual favors.  Other officers support perpetrating officers by failing to report sexual abuse that they are aware of, and even go so far as to joke or taunt incarcerated people who they know are involved in their sex trafficking system."

161.     Plaintiffs' Complaint alleges that, "FCI Dublin officers have created a network of protection where officers act as lookouts themselves or use the forced labor of other incarcerated people to act as lookouts while they receive sexual gratification.  These lookouts keep watch to ensure other officers or incarcerated people do not walk by areas where perpetrating officers are engaging in sexual acts to prevent being caught.  Officers coerce incarcerated people to perform forced labor using their status as supervising officers who can issue disciplinary actions, order work assignments, or dictate incarcerated people's movements to force them to work as lookouts against their will. In exchange, officers once again provide valuable goods to pay them for their forced labor

34

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

including outside food, drinks, commissary items, or special benefits."

162.    Plaintiffs' Complaint alleges that, "This system of trafficking, assault, harassment, and obstruction resulted in serious harms to named plaintiffs and others incarcerated at FCI Dublin."

163.    Plaintiffs' Complaint alleges that, "In particular, Plaintiffs A.S., G.M., L.T., A.H.R., and S.L. were all coerced into performing particular sex acts in exchange for special benefits or items of value."

164.    Plaintiffs' Complaint alleges that, "Additionally, Plaintiffs such as A.H.R. were coerced into performing forced labor for officers' benefit such as acting as a "lookout" while the officers engaged in sexual abuse."

165.    Plaintiffs' Complaint alleges that, "L.T. and others were further coerced into performing other forced labor such as stripping for officers in staged strip shows."

166.    Plaintiffs' Complaint alleges that, "Officers obstruct internal, criminal, or legislative investigations of the sex trafficking and abuse by officers.  Many FCI Dublin officers have been charged with making false statements to investigators in government agencies tasked with investigating claims of abuse, including the Department of Justice Office of Inspector General (OIG) and the FBI.  They have also committed perjury while testifying in their criminal charges and lied about the abuse they committed in attempts to cover up their abuse.  Officers intimidate trafficking survivors and witnesses of abuse by threatening to beat incarcerated people, throw them in solitary confinement."

167.    Plaintiffs' Complaint alleges that, "Defendants have a non-delegable duty to ensure that the conditions of confinement in facilities operated by BOP employees and contractors are constitutionally adequate."

168.    Plaintiffs' Complaint alleges that, "Defendants failed to adequately monitor, oversee, and administer FCI Dublin and violated Plaintiffs' rights to be free from cruel and unusual punishment while they were incarcerated at FCI Dublin by subjecting them to, or failing to prevent, sexual assaults, intimidation, physical, sexual and verbal abuse, threats of violence, sexual harassment, retaliation, and other violations of law against Plaintiffs, and by failing to investigate such violations, as set forth herein, subjected Plaintiff to unnecessary and wanton infliction of pain

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

and physical injury and continue to subject Plaintiffs to a significant risk of serious harm.  This abuse occurred under coercive circumstances and by intentionally subjecting Plaintiffs to these acts, Defendants acted maliciously, in a manner that is deeply offensive to human dignity and void of penological justification."

169.   Plaintiffs' Complaint alleges that, "Additionally, in acting and failing to act as alleged herein, Defendants subject Plaintiffs to unnecessary and wanton infliction of pain and injury and continue to subject Plaintiffs to a significant risk of serious harm by failing to properly evaluate, train, discipline, and supervise custody personnel to prevent physical harm to, and/or sexual harassment of, incarcerated persons; by failing to investigate allegations of physical harm to and/or sexual harassment of incarcerated persons; and by failing to prevent retaliation against incarcerated persons for complaints of such abuse."

170.   Plaintiffs' Complaint alleges that, "Defendants' failures, as described herein, and those of their agents, officials, employees, and all persons acting in concert with them, and are the proximate cause of the Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.  WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth below.

SECOND CLAIM FOR RELIEF

(Fifth Amendment, Substantive Due Process) (Injunctive Relief Only)

Against Defendant BOP and All Official Capacity Defendants"

171.   Plaintiffs' Complaint alleges that, "Plaintiffs' Complaint alleges that, "Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if set forth fully herein." "

172.   Plaintiffs' Complaint alleges that, "Defendants have a non-delegable duty to ensure that the conditions of confinement in facilities operated by BOP employees and contractors are constitutionally adequate."

173.   Plaintiffs' Complaint alleges that, "In acting and failing to act as alleged herein, Defendants violated Plaintiffs' right to personal security, subjecting Plaintiffs to unnecessary and wanton infliction of serious pain and injury and to a significant risk of serious harm in violation of

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

their substantive due process rights under the Fifth Amendment."

174.    Plaintiffs' Complaint alleges that, "Defendants have been and are aware of all the deprivations complained of herein and have condoned or been deliberately indifferent to such conduct."

175.    Plaintiffs' Complaint alleges that, "Defendants' failures, as described herein, and those of their agents, officials, employees, and all persons acting in concert with them, and are the proximate cause of the Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Fifth Amendment."

176.    Plaintiffs' Complaint alleges that, "Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if set forth fully herein."

177.    Plaintiffs' Complaint alleges that, "Defendants have a non-delegable duty to ensure that the conditions of confinement in facilities operated by BOP employees and contractors are constitutionally adequate."

178.    Plaintiffs' Complaint alleges that, "In acting and failing to act as alleged herein, Defendants subjected Plaintiffs to sexual assaults, abuse, and harassment, and/or failed to adequately investigate and take reasonable measures to protect Plaintiffs, as described herein, in retaliation for Plaintiffs' complaints to prison authorities regarding such unlawful conduct."

179.    Plaintiffs' Complaint alleges that, "Defendants have been and are aware of the retaliation complained of herein and have condoned or been deliberately indifferent to such conduct."

180.    Plaintiffs' Complaint alleges that, "Defendants' failures, as described herein, and those of their agents, officials, employees, and all persons acting in concert with them, and are the proximate cause of the Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the First Amendment."

181.    Plaintiffs' Complaint alleges that, "Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein."

182.    Plaintiffs' Complaint alleges that, "Defendant Officers Nunley and Smith subjected G.M. to serious bodily harm as defined by the Eight Amendment when they sexually assaulted and harassed G.M. and provided or withheld privileges to coerce sexual favors from G.M."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142cac cdc2

183.     Plaintiffs' Complaint alleges that, "Defendant Lt. Putnam was deliberately indifferent to the substantial likelihood of serious harm to G.M. Despite knowledge, Defendant Lt. Putnam did nothing to prevent the alleged sexual misconduct and, after G.M. reported such misconduct to Defendant Lt. Putnam, she was retaliated against."

184.     Plaintiffs' Complaint alleges that, "Defendants' actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment."

185.     Plaintiffs' Complaint alleges that, "This claim for damages is cognizable under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in Carlson v. Green 446 U.S. 14 (1980) and Farmer v. Brennan 511 U.S. 825 (1994), two recognized Bivens contexts."

186.     Plaintiffs' Complaint alleges that, "Defendant Officer Gacad subjected S.L. to cruel and unusual as defined by the Eight Amendment when he sexually touched, assaulted, and harassed S.L. and provided or withheld privileges to coerce sexual favors from S.L.."

187.     Plaintiffs' Complaint alleges that, "Defendant Lt. Putnam was deliberately indifferent to the substantial likelihood of serious harm to S.L. Despite knowledge, Defendant Lt. Putnam did nothing to prevent the alleged sexual misconduct."

188.     Plaintiffs' Complaint alleges that, "Defendants' actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment."

189.     Plaintiffs' Complaint alleges that, "This claim for damages is cognizable under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in Carlson v. Case 4 Green 446 U.S. 14 (1980) and Farmer v. Brennan 511 U.S. 825 (1994), two recognized Bivens contexts."

190.     Plaintiffs' Complaint alleges that, "Defendant Officer Jones subjected J.L. to serious bodily harm as defined by the Eight Amendment he sexually assaulted, coerced sexual favors from,

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

and threatened to punish S.L. unless she provided sexual favors."

191.    Plaintiffs' Complaint alleges that, "Defendant Officer Pool and Defendant Lieutenant Putnam were deliberately indifferent to the substantial likelihood of serious harm to J.L..  They both knew of ongoing and likely assaults of J.L. and did nothing to investigate or prevent such harm."

192.    Plaintiffs' Complaint alleges that, "Defendants' actions and failures described here caused the Plaintiff's physical, emotional, an constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment."

193.    Plaintiffs' Complaint alleges that, "This claim for damages is cognizable under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in Carlson v. Green 446 U.S. 14 (1980) and Farmer v. Brennan 511 U.S. 825 (1994), two recognized Bivens contexts."

194.    Plaintiffs' Complaint alleges that, "The exploitation of vulnerable people is so common that Congress has passed the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 et. seq., a comprehensive statutory framework imposing both criminal and civil liability, see 18 U.S.C. § 1595, of persons engaging or attempting to engage or benefit from sexual exploitation and labor trafficking or obstructing anti-trafficking enforcement."

195.    Plaintiffs' Complaint alleges that, "Specifically, the TVPA punishes anyone who attempts to, conspires to, or actively "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . . benefits, financially or by receiving anything of value, from participation in a [trafficking] venture" while knowing "that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); 18 U.S.C. § 1594."

196.    Plaintiffs' Complaint alleges that, " "Coercion" means "threats of serious harm to or physical restraint against any person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person" or "the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2)."

197.    Plaintiffs' Complaint alleges that, " "Serious harm" means "any harm, whether

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(5)."

198.    Plaintiffs' Complaint alleges that, "The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. 18 U.S.C. § 1591(e)(1)."

199.    Plaintiffs' Complaint alleges that, "Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C § 1591(e)(3)."

200.    Plaintiffs' Complaint alleges that, "Additionally, the TVPA punishes anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means. (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589 (a)."

201.    Plaintiffs' Complaint alleges that, "The TVPA punishes anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d). 18 U.S.C. § 1589 (b)."

202.    Plaintiffs' Complaint alleges that, "The term "abuse or threatened abuse of law or legal process" in the forced labor provision means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the

40
**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

1    law was not designed, in order to exert pressure on another person to cause that person to take some

2    action or refrain from taking some action." 18 U.S.C. § 1589 (c)(1)."

3         203.    Plaintiffs' Complaint alleges that, "The term "serious harm" means "any harm,

4    whether physical or nonphysical, including psychological, financial, or reputational harm, that is

5    sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the

6    same background and in the same circumstances to perform or to continue performing labor or

7    services in order to avoid incurring that harm." 18 U.S.C. § 1589 (c)(12)."

8         204.    Plaintiffs' Complaint alleges that, "The TVPA also punishes anyone who "obstructs,

9    attempts to obstruct, or in any way interferes with or prevents the enforcement of this section," 18

10    U.S.C. § 1591(d). 283. The TVPA allows "[an] individual who is a victim of a violation of this

11    chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or

12    conspires to benefit, financially or by receiving anything of value from participation in a venture

13    which that person knew or should have known has engaged in an act in violation of this chapter) in an

14    appropriate district court of the United States and may recover damages and reasonable attorneys

15    fees." 18 U.S.C. § 1595(a)."

16         205.    Plaintiffs' Complaint alleges that, "Congress grants a plaintiff up to ten years in which

17    to bring a civil action under 18 U.S.C. § 1595(c)."

18         206.    Plaintiffs' Complaint alleges that, "Defendant Officer Gacad engaged or attempted to

19    engage in sex trafficking of Plaintiff S.L. as prohibited under 18 U.S.C. § 1591; § 1594(a). 286.

20    Defendant Gacad Officer forced Plaintiff S.L. to engage in commercial sex acts within the meaning

21    18 U.S.C. § 1591. These sex acts included kissing and groping her body, including her buttocks and

22    genitals."

23         207.    Plaintiffs' Complaint alleges that, "Defendant Officer Gacad knowingly recruited,

24    enticed, and solicited Plaintiff S.L. by making repeated romantic overtures, flirting, and harassing

25    her, and offering special benefits and things of value for sex acts."

26         208.    Plaintiffs' Complaint alleges that, "Defendant Officer Gacad made Plaintiff S.L.

27    commit these sexual acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591.

28    He did so by: • Using physical force to grab Plaintiff S.L. and grope her body; • Assaulting her in

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

places where she could not easily escape; • Using his power and status as a correctional officer and work supervisor who has the power to control and direct incarcerated persons and their movements to have Plaintiff S.L. engage in commercial sexual acts with him; • Stalking her family's home and workplace to intimidate Plaintiff S.L."

209. Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a plan designed to make Plaintiff S.L. believe that she would suffer serious harm should she not obey his sexual advances."

210. Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint."

211. Defendant Officer Gacad exchanged valuable goods and special benefits for these sex acts. In this way, Defendant Officer Gacad's conduct constitutes an attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591.

212. Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595. 2."

213. Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595."

214. Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants."

215. Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct."

216. Plaintiffs' Complaint alleges that, "Defendant Officers Putnam, Vazquez, Serrano, and Lt. Jones together and individually obstructed or attempted to obstruct enforcement efforts or investigations into the sex trafficking of Plaintiff S.L. under 18 U.S.C. § 1591(d), 18 U.S.C. §1592. They did so in the following ways: Defendant Officer Putnam stole Plaintiff S.L.'s personal property that contained evidence of her relationship with Defendant Officer Gacad; After being informed of the abuse, Defendant Officer Putnam failed to further investigate the sex trafficking committed by

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

Defendant Officer Gacad; Defendant Officers Serrano and Vazquez attempted to silence and isolate Plaintiff S.L.; Defendant Officers Serrano and Vazquez allowed other people to listen to her private conversations to track and interfere with her communications and ability to confidentially report; Defendant Officer Serrano read Plaintiff S.L.'s private mail out loud, and consistently humiliated her to intimidate her from report; Defendant Lt. Jones consistently threatened Plaintiff S.L. and humiliated her after S.L. reported in order to intimidate her from making future reports; Defendant Officers Vazquez, Serrano, and Lt. Jones also knowingly failed to report the abuse and harassment that Defendant Officer Gacad was committing."

217.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that reporting would result in serious harm or physical restraint."

218.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

219.    Plaintiffs' Complaint alleges that, "Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. §1592, 18 U.S.C. § 1595."

220.    Plaintiffs' Complaint alleges that, "Defendants' conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants."

221.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct."

222.    Plaintiffs' Complaint alleges that, "Defendant Officer Vazquez engaged or attempted to engage in sex trafficking of Plaintiff A.H.R. as prohibited under 18 U.S.C. § 1591; § 1594(a)."

223.    Plaintiffs' Complaint alleges that, "Defendant Officer Vazquez forced Plaintiff A.H.R. to engage in commercial sex acts within the meaning 18 U.S.C. § 1591. These sex acts included kissing, hugging, and other physical touching."

224.    Plaintiffs' Complaint alleges that, "Defendant Officer Vazquez knowingly recruited, enticed, and solicited Plaintiff A.H.R. by removing him from his housing unit and work assignments

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

and exchanging special benefits and things of value for sex acts."

225.   Plaintiffs' Complaint alleges that, "Defendant Officer Vasquez made Plaintiff A.H.R. commit these sex acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591. He did so by:  Using his power and status as a correctional officer who has the power to control and direct incarcerated persons and their movements in order to facilitate sex acts;  Removing him from his housing unit and work assignments into isolated locations to engage in sex acts;  Interfering in his romantic relationship with his partner to manipulate him."

226.   Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a plan designed to make Plaintiff A.H.R. believe that he would suffer serious harm should he not obey the sexual advances."

227.   Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint."

228.   Plaintiffs' Complaint alleges that, "Defendant Officer Vazquez exchanged valuable goods and special benefits for these sex acts. In this way, Defendant Officer Vazquez's conduct constitutes the attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591."

229.   Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

230.   Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.'

231.   Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant. 312. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

232.   Plaintiffs' Complaint alleges that, "Defendant Officers Jones and Bellhouse obtained

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

or attempted to obtain the forced labor of Plaintiff A.H.R. as prohibited under 18 U.S.C. § 1589."

233.    Plaintiffs' Complaint alleges that, "Defendant Officers Jones and Bellhouse forced Plaintiff A.H.R. to work as a lookout to facilitate their sexual abuse and harassment of other incarcerated persons in the facility which constitutes as labor under 18 U.S.C. § 1589. 315. Defendant Officers Jones and Bellhouse provided valuable goods in exchange for A.H.R.'s work as a lookout."

234.    Plaintiffs' Complaint alleges that, "Defendant Officer Jones and Bellhouse, who had the power to control and direct incarcerated persons, coerced Plaintiff A.H.R. to perform these services by using their power and status as correctional officers and work supervisors of Plaintiff A.H.R."

235.    Plaintiffs' Complaint alleges that, "Defendant Officers Jones and Bellhouse forced Plaintiff A.H.R. into performing this service by a scheme, plan, or pattern of retaliatory actions that intended to cause Plaintiff A.H.R. to believe that if he did not perform such services, he would suffer serious harm or physical restraint."

236.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

237.    Plaintiffs' Complaint alleges that, "Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and he has a claim for damages for such violations under 18 U.S.C. § 1589, 18 U.S.C. § 1595."

238.    Plaintiffs' Complaint alleges that, "Defendants' conduct warrants the Court's imposition of punitive damages against the Defendants."

239.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct."

240.    Plaintiffs' Complaint alleges that, "Defendant Officer Serrano obstructed or attempted to obstruct enforcement efforts or investigations into the sex trafficking of Plaintiff A.H.R. under 18 U.S.C. § 1591(d); 18 U.S.C. § 1592. He did so by:  Assisting Defendant Officer Vazquez in obtaining and taking Plaintiff A.H.R. to locations where he could sexually abuse him;  Making direct threats to Plaintiff A.H.R. to prevent him and others from reporting abuse;  Interfering with Plaintiff A.H.R.'s relationship to manipulate him;  Failing to report Defendant Officer Vazquez's abuse."

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

241.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that reporting would result in serious harm or physical restraint."

242.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

243.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and he has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. §1592, 18 U.S.C. § 1595."

244.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant."

245.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

246.    Plaintiffs' Complaint alleges that, "Defendant Officer Nunley engaged or attempted to engage in sex trafficking of Plaintiff G.M. as prohibited under 18 U.S.C. § 1591; § 1594(a)."

247.    Plaintiffs' Complaint alleges that, "Defendant Officer Nunley forced Plaintiff G.M. to engage in commercial sex acts within the meaning 18 U.S.C. § 1591.  These sex acts included rubbing his penis on Plaintiff, kissing her, and other sexual touching."

248.    Plaintiffs' Complaint alleges that, "Defendant Officer Nunley knowingly recruited, enticed, and solicited Plaintiff G.M. by frequently requesting sex acts, leaving instructions for where Plaintiff could commit sex acts, and exchanging special benefits and things of value for sex acts."

249.    Plaintiffs' Complaint alleges that, "Defendant Officer Nunley made Plaintiff G.M. commit these sex acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591. He did so by:  Using physical force to sexually touch her;  Using his power and status as a correctional officer and as Plaintiff G.M.'s work supervisor who had the power to control and direct incarcerated persons and their movements and control access to disciplinary records, in order facilitate sexual acts;  Offering to provide benefits and things of value for sex."

250.    Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

plan designed to make Plaintiff G.M. believe that she would suffer serious harm should she not obey his sexual advances."

251.   Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint against any person."

252.   Plaintiffs' Complaint alleges that, "Defendant Officer Nunley exchanged offers of money and special benefits for these sex acts. In this way, Defendant Officer Nunley's conduct constitutes the attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591."

253.   Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595."

254.   Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595."

255.   Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant."

256.   Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

257.   Plaintiffs' Complaint alleges that, "Defendant Officer Smith engaged or attempted to engage in sex trafficking of Plaintiff G.M. as prohibited under 18 U.S.C. § 1591; § 1594(a)."

258.   Plaintiffs' Complaint alleges that, "Defendant Officer Smith forced Plaintiff G.M. to engage in commercial sex acts within the meaning 18 U.S.C. § 1591. These sex acts included forcing her to show him her naked body."

259.   Plaintiffs' Complaint alleges that, "Defendant Officer Smith knowingly recruited, enticed, and solicited Plaintiff G.M. by requesting sexual favors."

260.   Plaintiffs' Complaint alleges that, "Defendant Officer Smith made Plaintiff G.M. commit these sex acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591.  He

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

did so by:  Physically coercing or restraining Plaintiff G.M. by cornering her in areas where she could not easily escape;  Using his power and status as a correctional officer who had the power to control and direct incarcerated persons and their movements, in order facilitate sexual acts;  Withholding basic necessities for sexual favors."

261.    Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a plan designed to make Plaintiff G.M. believe that she would suffer serious harm if she did not obey his sexual advances."

262.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person."

263.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith exchanged special benefits and things of value in exchange for sexual acts."

264.    Plaintiffs' Complaint alleges that, "In this way, Defendant Officer Smith's conduct constitutes the attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591."

265.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595."

266.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595."

267.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant. 350. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

268.    Plaintiffs' Complaint alleges that, "Defendant Officers Putnam and Shirley and Defendant Lt. Jones together and individually obstructed or attempted to obstruct enforcement efforts or investigations into the sex trafficking of Plaintiff G.M. under 18 U.S.C. § 1591(d), 18 U.S.C.

48
**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

§1592. They did so in the following ways:  Defendant Lt. Putnam failed to further investigate the abuse by Defendants Nunley and Smith after G.M. reported it to him;  Defendant Officer Shirley threatened and intimidated G.M. by questioning her about her reporting;  Defendant Lt. Jones individually threatened Plaintiff and threatened to engage in collective punishment."

269.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that reporting would result in serious harm or physical restraint against any person."

270.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595."

271.    Plaintiffs' Complaint alleges that, "Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. §1592, 18 U.S.C. § 1595."

272.    Plaintiffs' Complaint alleges that, "Defendants' conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants."

273.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct."

274.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith engaged or attempted to engage in sex trafficking of Plaintiff A.S. as prohibited under 18 U.S.C. § 1591; § 1594(a)."

275.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith forced Plaintiff A.S. to engage in commercial sex acts within the meaning 18 U.S.C. § 1591. These sex acts included forcing her to strip, stand naked, and watch him as he masturbated."

276.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith knowingly recruited, enticed, and solicited Plaintiff A.S. by requesting sexual favors and using his power as a correctional officer to lead her into locations where he directed her to how him her body."

277.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith made Plaintiff A.S. commit these sex acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591. He did so by:  Harassing and abusing Plaintiff A.S. in areas where she could not easily escape;  Using his

49

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

power and status as a correctional officer who had the power to control and direct incarcerated persons and their movements, control access to disciplinary records, and conduct searches, in order facilitate sexual acts;  Threatening abuse of process in the form of disciplinary actions;  Restricting access to basic necessities."

278.    Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a plan designed to make Plaintiff A.S. believe that she would suffer serious harm should she not obey his sexual advances."

279.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint against any person."

280.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith exchanged basic necessities and things of value for sexual acts.  In this way, Defendant Officer Smith's conduct constitutes the attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591."

281.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595."

282.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595."

283.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant."

284.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

285.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith obtained or attempted to obtain the forced labor of Plaintiff A.S. as prohibited under 18 U.S.C. § 1589."

286.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith knowingly forced Plaintiff A.S. to perform sex acts including stripping and other sexual acts. As such this constitutes

50

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

sex work as labor that was part of under 18 U.S.C. § 1589(a). In exchange for this forced work, Defendant Officer Smith paid Plaintiff A.S. with basic necessities and special benefits."

287.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith made Plaintiff A.S. commit labor by force, restraint, or abuse of law or process within the meaning of 18 U.S.C. § 1589. He did so by:  Forcing Plaintiff to perform these acts in areas where she could not easily escape; Using his power and status as a correctional officer who had the power to control and direct incarcerated persons and their movements, control access to disciplinary records, and conduct searches, in order facilitate sexual acts;  Threatening abuse of process in the form of disciplinary actions if she did not perform this labor;  Restricting access to basic necessities if she did not perform this labor."

288.    Plaintiffs' Complaint alleges that, "Defendant Officer Smith forced Plaintiff A.S. into performing this service by a scheme, plan, or pattern of retaliatory actions that was intended to cause Plaintiff A.S. to believe that if she did not perform such services, she would suffer serious harm or physical restraint."

289.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that failure to perform labor would result in serious harm or physical restraint against any person."

290.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

291.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1589, 18 U.S.C. § 1595."

292.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of punitive damages against the Defendant."

293.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

294.     Plaintiffs' Complaint alleges that, "Defendants Officer Lewis and Lt. Jones obstructed or attempted to obstruct enforcement efforts or investigations into the sex trafficking and labor trafficking of Plaintiff A.S. under 18 U.S.C. § 1591(d), 18 U.S.C. §1592. She did so in the following ways: • Defendant Lt. Jones directly threatened Plaintiff A.S. through abuse of process by directly stating she was retaliating against A.S. and others who reported abuse. • Defendant Officer Lewis forced A.S. to unzip her sweatshirt everyday as a form of intimidation while threatening her to "keep running her mouth." "

295.     Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that reporting would result in serious harm or physical restraint against any person."

296.     Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595."

297.     Plaintiffs' Complaint alleges that, "Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1589, 18 U.S.C. § 1591, 18 U.S.C. §1592, 18 U.S.C. § 1595."

298.     Plaintiffs' Complaint alleges that, "Defendants' conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants."

299.     Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct."

300.     Plaintiffs' Complaint alleges that, "Defendant Officer Jones engaged or attempted to engage in sex trafficking of Plaintiff J.L. as prohibited under 18 U.S.C. § 1591; § 1594(a)."

301.     Plaintiffs' Complaint alleges that, "Defendant Officer Jones forced Plaintiff J.L. to engage in commercial sex acts within the meaning 18 U.S.C. § 1591. These sex acts included forcing her to engage in vaginal and oral sex, groping her body, and sucking on her breast."

302.     Plaintiffs' Complaint alleges that, "Defendant Officer Jones knowingly recruited, enticed, and solicited Plaintiff J.L. by flirting with her, and using his authority as a correctional officer to direct her into locations where he could be alone with her and force her to commit sex

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

acts."

303.    Plaintiffs' Complaint alleges that, "Defendant Officer Jones made Plaintiff J.L. commit these sex acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591. He did so by: • Locking Plaintiff J.L. into areas without an ability to escape if she did not perform sexual acts; • Using his power and status as a correctional officer and as her work supervisor, who had the power to control and direct prisoners and their movement or acts, in order facilitate sexual acts; • Using physical force to make Plaintiff J.L. commit these acts; • Using threats of harm to make Plaintiff J.L. believe she would be seriously harmed if she did not perform these sex acts or if she reported; • Using threats of abuse of process by making Plaintiff J.L. believe she would have negative consequences for reporting."

304.    Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a plan designed to make Plaintiff J.L. believe that she would suffer serious harm should she not obey his sexual advances."

305.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint against any person."

306.    Plaintiffs' Complaint alleges that, "Defendant Officer Jones exchanged special benefits and things of value for sexual acts."

307.    Plaintiffs' Complaint alleges that, "In this way, Defendant Officer Jones' conduct constitutes an attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591."

308.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff J.L. and actionable under 18 U.S.C. § 1595."

309.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595."

310.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

imposition of compensatory and punitive damages against the Defendant."

311.   Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

312.   Plaintiffs' Complaint alleges that, "Defendant Officer Jones knowingly obtained or attempted to obtain forced labor from Plaintiff J.L. as prohibited under 18 U.S.C. § 1589."

313.   Plaintiffs' Complaint alleges that, "Defendant Officer Jones forced Plaintiff J.L. to perform sex acts as sex work which constitutes as labor under 18 U.S.C. § 1589."

314.   Plaintiffs' Complaint alleges that, "Defendant Officer Jones knowingly forced Plaintiff J.L. to perform sex acts including groping, sexual touching, and vaginal sex on a number of occasions. This often happened while J.L. was working in her job while Defendant Officer Jones supervised her. During her shift hours, he would order her into spaces where she was cornered in order to force her to perform sex acts. As such, this conduct constitutes sex work as labor that was part of her job under 18 U.S.C. § 1589 (a)."

315.   Plaintiffs' Complaint alleges that, "Defendant Officer Jones made Plaintiff J.L. commit labor by force, restraint, or abuse of law or process within the meaning of 18 U.S.C. § 1589. He did so by:  Locking Plaintiff in areas without an ability to escape if she did not perform sexual acts;  Using his power and status as a correctional officer and as her work supervisor, who had the power to control and direct incarcerated persons and their movement or acts, in order facilitate sexual acts;  Using physical force to make Plaintiff J.L. commit these acts;  Using threats to make Plaintiff J.L. believe she would be seriously harmed if she did not perform this labor;  Threats of abuse of process by making Plaintiff J.L. believe she would have negative consequences for reporting."

316.   Plaintiffs' Complaint alleges that, "Defendant Officer Jones forced Plaintiff J.L. into performing this service by a scheme, plan, or pattern of retaliatory actions that intended to cause Plaintiff J.L. to believe that if she did not perform such services, she would suffer serious harm or physical restraint."

317.   Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that failure to perform labor would result in serious harm or physical restraint against any person."

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

318.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

319.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1589, 18 U.S.C. § 1595."

320.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants."

321.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

322.    Plaintiffs' Complaint alleges that, "Defendants Officer Jones, Officer Pool, and Lt. Putnam together and individually obstructed or attempted to obstruct enforcement efforts or investigations into the labor trafficking of Plaintiff J.L. under 18 U.S.C. § 1591(d), 18 U.S.C. §1592. They did so in the following ways: • Defendant Officer Jones directly threatened Plaintiff J.L. with serious risk of harm if she reported his abuse; • Defendant Officer Pool taunted and failed to report Defendant Andrew Jones's exploitation when he was present in the exploitation; • Defendant Lt. Putnam failed to further investigate Defendant Andrew Jones's abuse and exploitation of Plaintiff J.L. after she reported it."

323.    Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that reporting would result in serious harm or physical restraint against any person."

324.    Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

325.    Plaintiffs' Complaint alleges that, "Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1589, 18 U.S.C. §1592, 18 U.S.C. § 1595."

326.    Plaintiffs' Complaint alleges that, "Defendants' conduct warrants the Court's

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

imposition of compensatory and punitive damages against the Defendants."

327.     Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct."

328.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith engaged or attempted to engage in sex trafficking of Plaintiff L.T. as prohibited under 18 U.S.C. § 1591; § 1594(a)."

329.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith forced Plaintiff L.T. to engage in commercial sex acts within the meaning 18 U.S.C. § 1591. These sex acts included strip shows and sexual touching."

330.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith knowingly recruited, enticed, and solicited Plaintiff L.T. by propositioning her to allow him to touch her, and requesting her to dance for him."

331.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith made Plaintiff L.T. commit these sex acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591. He did so by: • Using his power and status as a correctional officer who had the power to control and direct prisoners and their movement or acts in order facilitate sexual acts; • Cornering her in her cell where she had no way to escape to coerce her to strip; • Using special benefits to coerce her into performing these sex acts."

332.     Plaintiffs' Complaint alleges that, "These methods of force, fraud, and coercion were a plan designed to make Plaintiff L.T. believe that she would suffer serious harm should she not obey his sexual advances."

333.     Plaintiffs' Complaint alleges that, "These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint against any person."

334.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith exchanged special benefits and things of value for sexual acts."

335.     Plaintiffs' Complaint alleges that, "In this way, Defendant Officer Smith's conduct constitutes an attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

336.     Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff L.T. and actionable under 18 U.S.C. § 1595."

337.     Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595."

338.     Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant."

339.     Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct. Plaintiff L.T. Against Defendant Officer Smith (Forced Labor)."

340.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith knowingly obtained or attempted to obtain forced labor from Plaintiff L.T as prohibited under 18 U.S.C. § 1589."

341.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith forced Plaintiff L.T. to perform stripping as sex work which constitutes as labor under 18 U.S.C. § 1589."

342.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith made Plaintiff L.T. commit labor by force, restraint, or abuse of law or process within the meaning of 18 U.S.C. § 1589. He did so by: • Using his power and status as a correctional officer who had the power to control and direct prisoners and their movement or acts in order facilitate sexual acts; • Cornering her in her cell where she had no way to escape to coerce her to strip."

343.     Plaintiffs' Complaint alleges that, "Defendant Officer Smith forced Plaintiff L.T. into performing this service by a scheme, plan, or pattern of retaliatory actions that intended to cause Plaintiff L.T. to believe that if she did not perform such services, she would suffer serious harm or physical restraint. 428. These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that was intended to cause a person to believe that failure to perform labor would result in serious harm or physical restraint against any person."

344.     Plaintiffs' Complaint alleges that, "These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595."

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142cacccdc2

345.    Plaintiffs' Complaint alleges that, "Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1589, 18 U.S.C. § 1595."

346.    Plaintiffs' Complaint alleges that, "Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants."

347.    Plaintiffs' Complaint alleges that, "Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendant's wrongful conduct."

348.    Plaintiffs' Complaint alleges that, "The Trafficking Victims Protection Act establishes that "[w]hoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section; . . . [and w]hoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." 18 U.S.C. § 1594 (b), (c)."

349.    Plaintiffs' Complaint alleges that, "The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595(a)."

350.    Plaintiffs' Complaint alleges that, "Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c)."

351.    Plaintiffs' Complaint alleges that, "At all relevant times, Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted, and/or conspired to continue their longstanding practice of exchanging sex for valuable goods or special benefits as defined in 18 U.S.C. § 1591, or obtaining forced labor as defined in 18 U.S.C. § 1589 by coercing incarcerated people to perform sexual acts or to act as lookouts as the Defendants engaged in sexual acts."

352.    Plaintiffs' Complaint alleges that, "All Defendants conspired to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, solicit, or benefit from participation in the sex and/or

58

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

labor trafficking of Plaintiffs as defined by 18 U.S.C. § 1581 et. seq."

353.   Plaintiffs' Complaint alleges that, "Defendants committed overt acts in furtherance of the agreement or understanding by committing one or more of the following acts: • Directly receiving or attempting to receive sexual acts or labor in exchange for valuable goods or benefits;  Directly working as lookouts themselves while perpetrating officers engaged or attempted to engage in sexual acts;  Forcing or coercing other incarcerated people to act as lookouts while perpetuating officers engaged or attempted to engage in sexual acts in exchange for valuable goods or benefits;  Transporting or directing incarcerated people into locations where principal perpetrating officers could engage or attempt in engage in sexual acts;  Engaging in a range of retaliatory tactics to threaten and silence survivors or witnesses of sexual abuse or trafficking including but not limited to threats of physical abuse and/or restraint, threats of law or process, indiscriminate searches, taunting, and humiliation;  Knowingly refusing to report abuse or trafficking occurring at FCI Dublin =and/or obstructing investigation into abuse or trafficking;  Ensuring confidential means of reporting abuse is not possible by indiscriminately opening legal mail, monitoring confidential or private communications, interfering with confidential or private communications, and intentionally preventing access to reporting mechanisms such as grievances and other reporting lines;  Maintaining practices, policies, and procedures that allowed Defendants to benefit from unlawful commercial sex ventures and human trafficking."

354.   Plaintiffs' Complaint alleges that, "Defendants' participation and assistance in the furtherance of an illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused the facilitation of the sex acts in support of their trafficking venture."

355.   Plaintiffs' Complaint alleges that, "Defendants knew or should have known that their acts supported and facilitated a trafficking venture."

356.   Plaintiffs' Complaint alleges that, "Defendants' conspiracy kept Plaintiffs and other witnesses of the trafficking from taking meaningful action, resulting in significant injuries to Plaintiffs and additional victims."

357.   Plaintiffs' Complaint alleges that, "Defendants' conduct caused Plaintiffs serious harm

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

including, without limitation, physical, psychological, emotional, financial, and reputational harm, and Plaintiffs have claims for damages for such violations under 18 U.S.C. § 1584; 18 U.S.C. § 1589, 18 U.S.C. § 1591; 18 U.S.C. § 1595."

358.    Plaintiffs' Complaint alleges that, "An order certifying that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23."

359.    Plaintiffs' Complaint alleges that, "A declaratory judgment that the conditions, acts, omissions, policies, and practices described above are in violation of the rights of Plaintiffs and the class they represent under the United States Constitution."

360.    Plaintiffs' Complaint alleges that, "An order requiring Defendants, their agents, officials, employees, and all persons acting in concert with them or otherwise to (1) adequately, hire, train and supervise its employees to prevent their ongoing sexual misconduct and abuse of power; (2) implement a confidential and reliably available method for individuals to report abuse to fully independent outside authorities who are not employed by the BOP; (3) properly investigate claims of abuse; (4) immediately cease the practice of placing individuals who report sexual abuse into solitary confinement in the SHU; (5) address rampant retaliation against survivors, including but not limited to placement in solitary confinement, punitive cell and strip searches, and punitive transfers, which harm survivors and deter others from reporting; (6) ensure that officers who have substantiated claims of sexual abuse and harassment against them are promptly fired and not permitted to return to BOP employment; (7) provide constitutionally adequate medical and mental health care to survivors of sexual abuse; (8) provide timely and consistent access to confidential attorney calls and visits; (9) provide survivors with documentation of reports of staff misconduct and promptly facilitate the U-visa certification process for noncitizen survivors who report and assist in the investigation of sexual abuse; (10) create a process to assist survivors of abuse with compassionate release petitions; (11) install fixed cameras in areas where abuse is known to occur and properly monitor and maintain the fixed cameras that do exist; and (12) address increasingly dire living conditions that contribute to the ongoing sexual exploitation of incarcerated persons."

361.    Plaintiffs' Complaint alleges that, "An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert from continuing the unlawful acts, conditions,

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

and practices described in this Complaint."

362.   Plaintiffs' Complaint alleges that, "An award of compensatory, punitive, and nominal damages to each named Plaintiff in an amount to be determined at trial."

363.   Plaintiffs' Complaint alleges that, "An award to Plaintiffs, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this suit and reasonable attorneys' fees and litigation expenses"

364.   Plaintiffs' Complaint alleges that, "An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction."

365.   Plaintiffs' Complaint alleges that, "For such other and further relief as this Court may deem just and proper."

## FIRST CAUSE OF ACTION

### CONTRIBUTION

### (Against All Cross-Defendants)

366.   CC-OG hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 365, inclusive, above, as though set forth in full herein.

367.   CC-OG is entitled as a matter of law to seek contribution from Cross-Defendants arising from and/or related to any and all liability and/or damages sought by Plaintiffs in their civil action that names CC-OG in the COMPLAINT as a party Defendant.

368.    As a direct and proximate result of the acts, omissions, and/or misconduct alleged to have been committed or engaged in by or among Cross-Defendants against Plaintiffs in the COMPLAINT in their civil action, CC-OG is entitled as a matter of law to seek contribution from Cross-Defendants.

369.    As a direct and proximate result of Plaintiffs initiating a civil action against CC-OG and naming CC-OG in the COMPLAINT as a party Defendant, CC-OG has and will continue to incur, sustain, and/or otherwise suffer substantial monetary harm, loss, injury, and/or damages, including having to pay attorneys' fees, costs, and/or expenses in his defense in the civil action initiated by Plaintiffs; being responsible for paying any and all monetary awards for damages to

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

Plaintiffs in their civil action; as well as in relation to paying attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein.

**WHEREFORE,** CC-OG requests the Court grant judgment in favor of CC-OG and against Cross-Defendants and award relief by granting contribution to CC-OG from Cross-Defendants for: (1) paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in their civil action; (2) paying CC-OG's ordered amount of monetary damages awarded to Plaintiffs in their civil action against Defendants, including against CC-OG; (3)  paying CC-OG's attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4) for such further relief as the Court deems proper and necessary

## SECOND CAUSE OF ACTION

### INDEMNIFICATION

### (Against All Cross-Defendants)

370.     CC-OG hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 369, inclusive, above, as though set forth in full herein.

371.     CC-OG is entitled as a matter of law to seek indemnification from Cross-Defendants arising from and/or related to any and all liability and/or damages sought by Plaintiffs in their civil action that names CC-OG in the COMPLAINT as a party Defendant.

372.     CC-OG is entitled as a matter of law to seek indemnification from Cross-Defendants arising from and/or related to Cross-Defendants fault arising from and/or related to liability and damages incurred, suffered, and/or otherwise sustained by Plaintiffs in their civil action that names CC-OG in the COMPLAINT as a party Defendant.

373.     CC-OG is entitled as a matter of law to seek indemnification from Cross-Defendants who are equitably responsible for any and all damages incurred, suffered, and/or otherwise sustained by CC-OG arising from and/or related to Plaintiffs civil action that names CC-OG in the COMPLAINT as a party Defendant.

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

374.     As a direct and proximate result of the acts, omissions, and/or misconduct alleged to have been committed or engaged in by or among Cross-Defendants against Plaintiffs in the COMPLAINT in their civil action, CC-OG is entitled as a matter of law to seek indemnification from Cross-Defendants.

375.     As a direct and proximate result of Plaintiffs initiating a civil action against CC-OG and naming CC-OG in the COMPLAINT as a party Defendant, CC-OG has and will continue to incur, sustain, and/or otherwise suffer substantial monetary harm, loss, injury, and/or damages, including having to pay attorneys' fees, costs, and/or expenses in his defense in the civil action initiated by Plaintiffs; being responsible for paying any and all monetary awards for damages to Plaintiffs in their civil action; as well as in relation to paying attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein.

**WHEREFORE,** CC-OG requests the Court grant judgment in favor of CC-OG and against Cross-Defendants and award relief by granting indemnification to CC-OG from Cross-Defendants for: (1) paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in their civil action; (2) paying CC-OG's ordered amount of monetary damages awarded to Plaintiffs in their civil action against Defendants, including against CC-OG; (3)  paying CC-OG's attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4) for such further relief as the Court deems proper and necessary.

## THIRD CAUSE OF ACTION

### DECLARATORY RELIEF

### (Against All Cross-Defendants)

376.     CC-OGs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 119, inclusive, above, as though set forth in full herein.

377.     There exists an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and/or several written instrument(s) and CC-OG requests that these rights and duties be adjudged by the Court.

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

378.     As a direct and proximate result of Plaintiffs initiating a civil action against CC-OG and naming CC-OG in the COMPLAINT as a party Defendant, CC-OG has and will continue to incur, sustain, and/or otherwise suffer substantial monetary harm, loss, injury, and/or damages, including having to pay attorneys' fees, costs, and/or expenses in his defense in the civil action initiated by Plaintiffs; being responsible for paying any and all monetary awards for damages to Plaintiffs in their civil action; as well as in relation to paying attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein.

379.     As a direct and proximate result of Plaintiffs initiating a civil action against CC-OG and naming CC-OG in the COMPLAINT as a party Defendant, CC-OG requests that the Court grant judgment in favor of CC-OG and against Cross-Defendants and declare that: (1) Cross-Defendants shall be solely responsible for paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in the civil action; (2) Cross-Defendants shall be solely responsible for paying the entire ordered amount of monetary damages awarded to Plaintiffs in the civil action against Defendants, including CC-OG; (3) Cross-Defendants shall be solely responsible for paying CC-OG's attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4) for such further relief as the Court deems proper and necessary.

**WHEREFORE,** CC-OG requests the Court grant judgment in favor of CC-OG and against Cross-Defendants and award relief by granting declaratory relief to CC-OG from Cross-Defendants and declaring that: (1) Cross-Defendants shall be solely responsible for paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in the civil action; (2) Cross-Defendants shall be solely responsible for paying the entire ordered amount of monetary damages awarded to Plaintiffs in the civil action against Defendants, including CC-OG; (3) Cross-Defendants shall be solely responsible for paying CC-OG's attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4) for such further relief as the Court deems proper and necessary.

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

**PRAYER FOR RELIEF**

WHEREFORE, CC-OG pray for relief and judgment against Cross-Defendants as follows:

1. As to the First Cause of Action for judgment in favor of CC-OG and against Cross-Defendants and award CC-OGs relief by granting contribution to CC-OG from Cross-Defendants for: (1) paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in their civil action; (2) paying CC-OG's ordered amount of monetary damages awarded to Plaintiffs in their civil action against Defendants, including against CC-OG; (3) paying CC-OG's attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4) for such further relief as the Court deems proper and necessary;

2. As to the Second Cause of Action for judgment in favor of CC-OGs and against Cross-Defendants and award CC-OGs relief by granting indemnification to CC-OG from Cross-Defendants for: (1) paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in their civil action; (2) paying CC-OG's ordered amount of monetary damages awarded to Plaintiffs in their civil action against Defendants, including against CC-OG; (3) paying CC-OG's attorneys' fees, costs, and/or expenses in relation to bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4) for such further relief as the Court deems proper and necessary; and

3. As to the Third Cause of Action for judgment in favor of CC-OGs and against Cross-Defendant and award CC-OGs relief by granting declaratory relief and declaring that: (1) Cross-Defendants shall be solely responsible for paying CC-OG's attorneys' fees, costs, and/or expenses in defending against Plaintiffs' claims for damages contained in the COMPLAINT filed in their civil action; (2) Cross-Defendants shall be solely responsible for paying the entire ordered amount of monetary damages awarded to Plaintiffs in their civil action against Defendants; (3) Cross-Defendants shall be solely responsible for paying CC-OG's attorneys'' fees, costs, and/or expenses in relation to

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

bringing forth the instant Cross-Complaint against Cross-Defendants herein; and (4)

for such further relief as the Court deems proper and necessary.

/ / /

/ / /

DATED: October 20, 2023                    **WADE LAW GROUP, APC**

*Jonathan Goldstein*

JONATHAN A. GOLDSTEIN, ESQ.
Attorney for Defendant/Cross-Complainant,
OFFICER GACAD, in his
individual capacity

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST
DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2

1

## **Certification and Closing**

2      Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

3   knowledge, information, and belief that this cross-complaint: (1) is not being presented for an

4   improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of

5   litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

6   reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so

7   identified, will likely have evidentiary support after a reasonable opportunity for further investigation

8   or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

9      I agree to provide the Clerk's Office with any changes to my address where case related

10   papers may be served. I understand that my failure to keep a current address on file with the Clerk's

11   Office may result in the dismissal of my case.

12

13   Date of signing: _____10 / 20 / 2023_____

14

15   Signature of Defendant _____

16

17   Printed Name of Defendant ___Lawrence Gacad_____

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT/CROSS-COMPLAINANT OFFICER GACAD'S CROSS-COMPLAINT AGAINST DEFENDANTS/CROSS-DEFENDANTS**

Doc ID: 2843e3782a8cb586a34996c0fc5139142caccdc2