

**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:            CPD/CSB
NUMBER:     5270.09, CN-1
DATE:          November 18, 2020

# Inmate Discipline Program

          /s/
*Approved*:  M.D. Carvajal
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following change to Program Statement 5270.09, **Inmate Discipline Program**, dated July 8, 2011.  Additional discipline code, noted by highlighted text will be added to the program statement as follows:

**Table 1.  PROHIBITED ACTS AND AVAILABLE SANCTIONS**

**HIGH SEVERITY LEVEL PROHIBITED ACTS**

**231    Requesting, demanding, pressuring, or otherwise intentionally creating a situation, which causes an inmate to produce or display his/her own court documents for any unauthorized purpose to another inmate.**



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

OPI:            CPD/CSB
NUMBER:   5270.09
DATE:         July 8, 2011.

# Inmate Discipline Program

                        */s/*
*Approved*:  Thomas R. Kane
Director, Federal Bureau of Prisons

## 1.  PURPOSE AND SCOPE

### § 541.1  Purpose.

**This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program.  This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts.  Sanctions will not be imposed in a capricious or retaliatory manner.  The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).**

### § 541.2  Application.

**This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons.**

This policy applies to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise. These provisions do not apply to Federal inmates designated to a non-Federal facility (e.g., inmates serving Federal sentences in state or county facilities).

Federal Regulations from 28 Code of Federal Regulations, part 541, are shown in this type.
Implementing instructions are shown in this type.

2.  **SUMMARY OF CHANGES**

a.  Establish Greatest and High severity level prohibited acts for sexual assault of any person. The Greatest severity level act (114) requires the use or threat of force.  The High severity level act (229) is for incidents without the use or threat of force.

b.  Increase the severity level of escapes from non-secure facilities from a High to a Greatest severity level prohibited act.

c.  Amend the Code 104 to include any instrument used as a weapon.

d.  Establish a Code 115 for destroying and/or disposing of any item during a search or attempt to search.

e.  Establish a High severity level prohibited act code for escape from a work detail, a non-secure institution, or other non-secure custody, including a community facility, with subsequent voluntary return to custody within four hours.

f.  Clarify possession of a cellular telephone or other electronic communications device is a Greatest severity level prohibited act.

g.  Increase the severity level of all alcohol-related offenses from a High to a Greatest severity level prohibited act.

h.  Establish a High severity level prohibited act code for stalking.

i.  Establish a High severity level prohibited act code for possession of stolen property.

j.  Establish a Moderate severity level prohibited act code for circulating a petition.

k.  Establish a High severity level prohibited act code for refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, TB).

l.  Increase the severity level for tattooing and self-mutilation to a High severity level prohibited act.

m.  Establish a Moderate severity level prohibited act code for the fraudulent or deceptive completion of a skills test.

n.  Increase the severity level for conducting a business to a Moderate severity level prohibited act.

o.  Establish a Moderate severity level prohibited act code for communicating gang affiliation.

p.  Establish Greatest, High, and Moderate severity level prohibited acts for abuse of the mail.

q.  Establish a sanction of monetary fine.

r.  Remove the formal sanctions of reprimand and warning.

s.  Increase the sanction of disciplinary segregation from a range of 7 to 60 days to a range of 1 to 18 months.

t.  Change from three work days to five work days for the UDC to ordinarily conduct a review.

u.  The Special Housing Unit policy (conditions of disciplinary segregation, administrative detention, and protection cases) has been removed and guidance is provided in a separate program statement.

3.  **PRINCIPLES**

Several general principles apply to every disciplinary action:

a.  Incident reports can be written by Bureau staff, Federal Prison Industries (FPI) staff, and Public Health Service (PHS) officers detailed to the Bureau.  Community Corrections Managers may take disciplinary action on inmates in contract RRC's.

b.  Staff take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

c.  Staff control inmate behavior in an impartial and consistent manner.

d.  Disciplinary action may not be capricious or retaliatory.

e.  Staff may not impose or allow corporal punishment of any kind.

4.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

P5270.08      Inmate Discipline and Special Housing Units (12/4/09)

b.  **Directives Referenced**

P1315.07      Inmate Legal Activities (11/5/99)
P1330.16      Administrative Remedy Program (12/31/07)
P1505.03      Language Translations Used in Official Documents (10/31/97)
P2000.02      Accounting Management Manual (10/15/86)

P4500.07    Trust Fund/Deposit Fund Manual (4/19/10)
P4700.05    Food Service Manual (6/12/06)
P5100.08    Inmate Security Designation and Custody Classification (9/12/06)
P5162.05    Categorization of Offenses (3/16/09)
P5180.05    Central Inmate Monitoring System (PS Only) (12/31/07)
P5180.06    Central Inmate Monitoring System (Operations Manual Only) (3/24/08)
P5212.07    Control Unit Programs (2/20/01)
P5215.05    Youth Corrections Act (YCA) Inmates and Programs (3/17/99)
P5264.08    Inmate Telephone Regulations (1/24/08)
P5265.14    Correspondence (4/5/11)
P5267.08    Visiting Regulations (5/11/06)
P5270.10    Special Housing Units (8/1/11)
P5322.12    Inmate Classification and Program Review (11/29/06)
P5360.09    Religious Beliefs and Practices (12/31/04)
P5380.08    Financial Responsibility Program, Inmate (8/15/05)
P5500.11    Correctional Services Manual (10/10/03)
P5500.12    Correctional Services Procedures Manual (10/10/03)
P5521.05    Searches of Housing Units, Inmates, and Inmate Work Areas (6/30/97)
P5580.07    Inmate Personal Property (12/28/05)
P5800.15    Correctional Systems Manual (1/1/09)
P5880.28    Sentence Computation Manual (CCCA of 1984) (7/20/99)
P5880.30    Sentence Computation Manual (Old Law, Pre-CCCA of 1984) (9/8/99)
P5880.32    Sentence Computation Manual (District of Columbia) (1/23/01)
P5884.03    Good Conduct Time Under the Prison Litigation Reform Act (3/31/06)
P7300.09    Community Corrections Manual (5/19/99)
P7331.04    Pretrial Inmates (1/31/03)

c.  Rules cited in this Program Statement are contained in 28 CFR § 541.2 and §§ 541.10-23.

## 5. **AGENCY ACA ACCREDITATION PROVISIONS**

a.  American Correctional Association 4th Edition Standards for Adult Correctional Institutions:

4-4226, 4-4227, 4-4228, 4-4229, 4-4230, 4-4231, 4-4232, 4-4233, 4-4234, 4-4235, 4-4236, 4-4237, 4-4238, 4-4239, 4-4240, 4-4241, 4-4242, 4-4243, 4-4244, 4-4245, 4-4246, 4-4247, 4-4248, 4-4255, 4-4399

b.  American Correctional Association 4th Edition Performance-Based Standards for Adult Local Detention Facilities:

4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-4C-40, 4-ALDF-6C-01, 4-ALDF-6C-02, 4-ALDF-6C-03, 4-ALDF-6C-04, 4-ALDF-6C-05, 4-ALDF-6C-06, 4-ALDF-6C-07, 4-ALDF-6C-08, 4-ALDF-6C-09, 4-ALDF-6C-10, 4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-13, 4-ALDF-6C-14, 4-ALDF-6C-15, 4-ALDF-6C-16, 4-ALDF-6C-17, and 4-ALDF-6C-18.

6.  **INSTITUTION SUPPLEMENTS**

None required.

7.  **NOTICE TO INMATE OF THE INMATE DISCIPLINE PROGRAM**

Staff must give each inmate a copy of the following documents promptly after his/her arrival at an institution:

\#  Summary of the Inmate Discipline System (Appendix B).
\#  Inmate Rights and Responsibilities (Appendix C).
\#  Prohibited Acts and Available Sanctions (Table 1).

Receipt of these documents must be noted on the intake screening form and maintained in the inmate's central file.  The receipt is kept in the inmate's central file.

To the extent reasonably available, a qualified staff member or translator will help an inmate who has a language or literacy problem, in accordance with the Program Statement **Language Translations Used in Official Documents**.

# CONTENTS

## Chapter 1

**§ 541.3  Prohibited acts and available sanctions** ...................................................9
  (a)  Prohibited acts ...................................................................................9
  (b)  Available sanctions ...........................................................................9
    (1)  Greatest Severity Level Offenses ...............................................9
    (2)  High Severity Level Offenses .....................................................9
    (3)  Moderate Severity Level Offenses .............................................9
    (4)  Low Severity Level Offenses ....................................................10
    (5)  All Severity Level Offenses .....................................................10

**§ 541.4  Loss of good conduct sentence credit as a mandatory sanction** ...................11
  (a)  Groups that lose good conduct sentence credit ..............................11
    (1)  VCCLEA – violent inmates .......................................................11
    (2)  PLRA inmates and D.C. Code offenders ..................................11
  (b)  Amount of credit lost .......................................................................11
    (1)  Greatest Severity Level Offenses .............................................11
    (2)  High Severity Level Offenses ...................................................11
    (3)  Moderate Severity Level Offenses ...........................................12
    (4)  Low Severity Level Offenses ...................................................12

**Available Sanctions** ..........................................................................................12
(A)  Recommend Parole Date Rescission or Retardation ...........................12
(B)  Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time,
or Terminate or Disallow Extra Good Time .............................................12
(B.1) Disallowance of Good Conduct Time ....................................................13
(C)  Disciplinary Segregation ......................................................................14
(D)  Make Monetary Restitution ..................................................................15
(E)  Monetary Fine .......................................................................................15
(F)  Loss of Privileges .................................................................................15
(G)  Change Housing Quarters ....................................................................15
(H)  Remove from Program or Group Activity ............................................15
(I)  Loss of Job ...........................................................................................16
(J)  Impound Inmate§s Personal Property ..................................................16
(K)  Confiscate Contraband .........................................................................16
(L)  Restrict to Quarters ..............................................................................16
(M)  Extra Duty ............................................................................................16

## Chapter 2

**§ 541.5  Discipline process** ........................................................................17
  (a) Incident report ...................................................................................17
  (b) Investigation ......................................................................................18
    (1) Information ....................................................................................18
    (2) Statement .....................................................................................18
    (3) Informally resolving the incident report ......................................20

## Chapter 3

**§ 541.6  Mentally ill inmates** .....................................................................21
  (a) Competency to participate in disciplinary proceedings ....................21
  (b) Responsibility for conduct .................................................................21

## Chapter 4

**§ 541.7  Unit Discipline Committee (UDC) review of the incident report** .................23
  (a) Available dispositions ........................................................................23
  (b) UDC members ...................................................................................23
  (c) Timing ...............................................................................................24
  (d) Inmate appearance ...........................................................................24
  (e) Evidence ...........................................................................................24
  (f) Sanctions ..........................................................................................24
  (g) Referral to the DHO ..........................................................................25
  (h) Written report ...................................................................................25
  (i) Appeals ............................................................................................25

## Chapter 5

**§ 541.8  Discipline Hearing Officer (DHO) hearing** ....................................27
  (a) Available dispositions ........................................................................27
  (b) Discipline Hearing Officer ..................................................................27
  (c) Timing ...............................................................................................27
  (d) Staff representative ...........................................................................27
    (1) How to get a staff representative .................................................28
    (2) How the staff representative will help ...........................................28
    (3) How the staff representative may appear .....................................28
  (e) Inmate appearance ...........................................................................28
  (f) Evidence and witnesses ....................................................................29
  (g) Sanctions ..........................................................................................33
  (h) Written report ...................................................................................34
  (i) Appeals ............................................................................................35

**APPENDIXES**

**A.** List of Forms.................................................................................................37

**B.** Summary of Inmate Discipline System.................................................38

**C.** Inmate Rights and Responsibilities.......................................................39

**D.** Data Entry Instructions ...........................................................................41

**TABLES**

**1.** Prohibited Acts and Available Sanctions....................................................44

**2.** Additional Available Sanctions for Repeated Prohibited Acts
Within the Same Severity Level .......................................................................55

**CHAPTER 1.**

**§ 541.3  Prohibited acts and available sanctions.**

**(a)  *Prohibited acts.*  The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low.  We describe the prohibited acts in Table 1 - Prohibited Acts and Available Sanctions.  Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself.**

**(b)  *Available sanctions.*  The list of available sanctions for committing prohibited acts is listed in Table 1 - Prohibited Acts and Available Sanctions.  If you commit repetitive prohibited acts, we can impose increased sanctions, as listed in Table 2 - Additional Available Sanctions for Repeated Prohibited Acts Within the Same Severity Level.**

(1)  **Greatest Severity Level Offenses**.  The Discipline Hearing Officer (DHO) imposes one or more of sanctions A through E.  Sanction B.1 must be imposed for a VCCLEA inmate rated "violent" (an inmate who, per the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (an inmate sentenced for an offense committed on or after April 26, 1996, per the Prison Litigation Reform Act).  The DHO may impose any available sanctions (A through M) in addition to sanctions A through E.  All Greatest severity level charges must be referred to the DHO.

(2)  **High Severity Level Offenses**.  The DHO imposes one or more of sanctions A through M, and, except as noted in the sanction, may also suspend one or more sanctions A through M.  Sanction B.1 must be imposed for a VCCLEA inmate rated "violent" and for a PLRA inmate.  All High severity level charges must be referred to the DHO.

Prohibited Act Code 225, Stalking, is for the purpose of punishing repetitive inmate behavior, e.g., loitering, staring, leering, inappropriate remarks (short of insolence, profanity, or sexual proposals), that are not clearly covered by another prohibited act code.  When staff encounter such behavior, the inmate should be specifically warned that it is inappropriate and must cease.  If the behavior fits another prohibited act code provision, the inmate should be charged with violating that specific provision instead of stalking.  Examples of other prohibited act code behavior that may be used instead of Code 225, Stalking, include, but are not limited to Insolence (Code 312), Being in an Unauthorized Area (Code 316), Threatening (Code 203), and Making a Sexual Proposal or Threat (Code 206).

(3)  **Moderate Severity Level Offenses**.  The DHO imposes at least one sanction A through M, but, except as noted in the sanction, may suspend any sanction(s) imposed. Sanction B.1 ordinarily must be imposed for a VCCLEA inmate rated "violent" and for a PLRA inmate.

Except for charges referred to the DHO, the Unit Discipline Committee (UDC) shall impose at

least one sanction F through M, but may suspend any sanctions imposed.

The UDC ordinarily refers to the DHO a moderate severity level charge for a VCCLEA inmate rated "violent" or for a PLRA inmate if the inmate was found to have committed two moderate offenses during his/her current anniversary year (the 12-month period for which an inmate may be eligible to earn good conduct time [GCT]).  The UDC must document the reasons why a third charge for such an inmate was not referred to the DHO.

A prohibited act charge for 331 involving tobacco or nutritional supplements must be referred to the DHO for final disposition.

(4)  **Low Severity Level Offenses**.  The DHO imposes at least one sanction B.1, or D through M.  The DHO may suspend any sanction(s) imposed; however, a B.1 sanction may not be suspended.  Except for charges referred to the DHO, the UDC imposes at least one sanction F through M, but may suspend any sanction(s) imposed.

The UDC ordinarily refers to the DHO a low severity level charge for a VCCLEA inmate rated "violent" or for a PLRA inmate if the inmate had been found to have committed three low offenses during his/her current anniversary year.  The UDC must document the reasons why a charge for such an inmate was not referred to the DHO.

Sanction B.1 may be imposed on the Low severity level **only** if the inmate has committed a Low severity level prohibited act more than once within a six-month period (except for a VCCLEA inmate rated "violent" or a PLRA inmate).

(5)  **All Severity Level Offenses**.  In all categories of severity**, aiding** another person to commit any of these offenses, **attempting** to commit them, or **making plans** to commit them, **is considered equivalent to committing the offense itself**.  In these cases, the letter "A" is combined with the offense code.  For example, planning an escape is Escape, Code 102A. Attempting to adulterate food or drink is Code 209A.

When the prohibited act is **Interfering with a Staff Member in the Performance of Duties (Code 198, 298, 398 or 498) or Conduct Which Disrupts (Code 199, 299, 399, or 499)**, the DHO or UDC must specify the severity level of the conduct that is most comparable to an offense(s) at that severity level.  **Example:** "I find the act of Conduct Which Disrupts (Code 299) to be of High severity level, most comparable to the prohibited act of Engaging in a Group Demonstration (Code 212)."

**Suspensions of any sanction cannot exceed six months**.  Suspended sanctions may only be revoked and executed if the inmate is found to have committed a subsequent prohibited act. Only the DHO may execute, suspend, or revoke and execute suspension of sanctions A through E (B and B.1. may never be suspended).  The DHO or UDC may execute, suspend, or revoke and

execute suspensions of sanctions F through M.  The DHO may execute UDC-suspended sanctions.  However, the UDC may **not** execute DHO-suspended sanctions A through E.

When an inmate receives an incident report while on a DHO-imposed, but suspended sanction, the new incident report is forwarded by the UDC to the DHO, both for a final disposition on the new incident report, and for a disposition on the suspended sanction. This procedure is not necessary when the UDC informally resolves the new incident report.  The DHO may return an incident report to the UDC if a decision not to execute the suspended sanction is made.

The UDC or DHO may impose increased sanctions for repeated, frequent offenses per the guidelines in Table 2.

Noting that not all UDC or DHO decisions finding an inmate committed a prohibited act will result in a change to the inmate's security designation score, the Unit Team may recommend a greater security transfer, using their professional judgment, and in accordance with the policy on Inmate Security Designation and Custody Classification.

**§ 541.4  Loss of good conduct sentence credit as a mandatory sanction.**

**(a)  You will lose good conduct sentence credit as a mandatory disciplinary sanction if you are in one of the following two groups:**

**(1)  *VCCLEA-violent inmates.*  The date of your U.S. Code offense was on or after September 13, 1994, but before April 26, 1996, and you committed a "crime of violence" as defined by the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA); or**

**(2)  *PLRA inmates and D.C. Code offenders.*  The date of your U.S. Code offense was on or after April 26, 1996, and, therefore, under the Prison Litigation Reform Act (PLRA), or the date of your District of Columbia (DC) Code offense was on or after August 5, 2000.**

**(b)  If you are an inmate in one of the above groups and commit a prohibited act, you will lose good conduct sentence credit as a mandatory disciplinary sanction. The amount of good conduct sentence credit you will lose depends on the severity level of the prohibited act(s) committed, as follows:**

**(1)  *Greatest Severity Level Offenses.*  You will lose at least 41 days, or 75% of available credit if less than 54 days are available for the prorated period, for each act committed.**

**(2)  *High Severity Level Offenses.*  You will lose at least 27 days, or 50% of available credit if less than 54 days are available for the prorated period, for each act committed.**

**(3)  *Moderate Severity Level Offenses.*  You will lose at least 14 days, or 25% of available credit if less than 54 days are available for the prorated period, after committing two or more Moderate severity acts during the current year of your good conduct sentence credit availability.**

**(4)  *Low Severity Level Offenses.*  You will lose at least 7 days, or 12.5% of available credit if less than 54 days are available for the prorated period, after committing three or more Low severity acts during the current year of your good conduct sentence credit availability.**

**Available Sanctions** (upon finding the inmate committed the prohibited act(s)):

**(A)  Recommend Parole Date Rescission or Retardation.**  The DHO may recommend retardation or rescission of parole grants to the U.S. Parole Commission or respective parole authority.

**(B)  Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time, or Terminate or Disallow Extra Good Time.**

*Forfeited good conduct time* (GCT) is not eligible for restoration.  However, *forfeited statutory good time* (SGT) may be restored.  Restoration of statutory good time is approved at initial eligibility only when the inmate has shown a period of improved good behavior.  When the Warden (or designee) denies restoration of forfeited statutory good time, the unit team notifies the inmate of the reasons for denial.  The unit team establishes a new eligibility date, not to exceed six months from the date of denial.

An application for restoration of statutory good time is forwarded from the inmate's unit team, through the DHO and Captain for comments, to the Warden for final decision.

Inmates who committed their crimes on or after November 1, 1987, and are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act, are only eligible to receive 54 days GCT credit (18 U.S.C. § 3624(b)).  This credit is given at the end of each year served and, once given, is vested.  For these inmates, the DHO§s authority is final and subject only to review by the Regional Director to ensure conformity with the discipline policy and by inmate appeal through Administrative Remedy procedures.

The statutory good time available for forfeiture is limited to an amount computed by multiplying the months served at the time of the offense for which forfeiture is taken, by the applicable monthly rate specified in 18 U.S.C. § 4161 (less previous forfeiture or withholding).  The amount of GCT available for forfeiture is limited to total days in "non-vested" status at the time of misconduct (less previous forfeiture).

Forfeiture of GCT may not be suspended.

Disallowance of extra good time is limited to extra good time for the calendar month in which the violation occurs.  It may not be withheld or restored.

The sanction of termination or disallowance of extra good time may not be suspended.

Forfeited GCT will not be restored.  Authority to restore forfeited statutory good time is delegated to the Warden, and may not be delegated lower than the Associate Warden level. Limitations on this sanction and eligibility for restoration are based on the severity scale.  (See Table 2.)

To ensure an inmate§s case is not overlooked when statutory good time has been forfeited, the unit manager will ensure the eligibility requirements are reviewed for restoration per the time frames in the Program Statement on Classification and Program Review of Inmates.  A recommendation of the unit team for or against restoration is forwarded to the Warden through the DHO and Captain.  Except as noted, eligibility for restoration of forfeited statutory good time is computed from the date of the withholding or forfeiture action by the DHO.

An inmate who has escaped and receives a forfeiture at a subsequent in absentia hearing begins the eligibility for restoration period upon return to Bureau custody.  The Warden refers to the Regional Director any case where exceptional circumstances support restoration of statutory good time before completion of the eligibility requirements.

Sanction B does not apply to inmates committed under the Comprehensive Crime Control Act for crimes committed on or after November 1, 1987, and prior to passage of the Violent Crime Control and Law Enforcement Act of 1994 (September 23, 1994).  For those inmates, the applicable sanction is B.1.

**(B.1)  Disallowance of Good Conduct Time.**  An inmate sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act (committed a crime on or after November 1, 1987) may not receive statutory good time, but is eligible to receive 54 days GCT credit each year (18 U.S.C. § 3624(b)).  Once awarded, the credit is vested, and may not be disallowed.

Crimes committed on or after September 13, 1994, and before April 26, 1996, (VCCLEA) credit is not vested unless the inmate has earned or is making satisfactory progress toward a high school diploma or equivalent degree (or is exempt because of a learning disability).

For crimes committed on or after April 26, 1996, (PLRA and SRAA) GCT credit toward an inmate's service of sentence vests on the date the inmate is released.  Once disallowed, the credit may not be restored, except by immediate review or appeal as indicated below.  Prior to this award being made, the credit may be disallowed for an inmate found to have committed a prohibited act.

A sanction of GCT disallowance may not be suspended.  Only the DHO can take action to

disallow GCT.  The DHO considers the severity of the prohibited act and the suggested disallowance guidelines in making a determination.

A decision to go above the guideline is warranted for a greatly aggravated offense or a repeated violation of another prohibited act within a relatively short time (e.g., within 24 months for a greatest severity level prohibited act, 18 months for a high severity level prohibited act, and 12 months for a moderate severity level prohibited act).  A decision to go below the guidelines is warranted for strong mitigating factors.  A decision above or below the guidelines is justified in the DHO report.

VCCLEA inmates rated "violent" and PLRA inmates are ordinarily disallowed GCT for each prohibited act they are found to have committed at a DHO hearing, consistent with the following:

\#   **Greatest Severity Level Offenses**.  A minimum of 41 days (or, if less than 54 days are available for the prorated period, a minimum of 75% of available GCT) for each act committed.

\#   **High Severity Level Offenses**.  A minimum of 27 days (or, if less than 54 days are available for the prorated period, a minimum of 50% of available GCT) for each act committed.

\#   **Moderate Severity Level Offenses**.  A minimum of 14 days (or, if less than 54 days are available for the prorated period, a minimum of 25% of available GCT) for each act committed if the inmate has committed two or more moderate severity level offenses during the current anniversary period.

\#   **Low Severity Level Offenses**.  A minimum of 7 days (or, if less than 54 days are available for the prorated period, a minimum of 12.5% of available GCT) for each act committed if the inmate has committed three or more low moderate offenses during the current anniversary period.

Except for VCCLEA inmates rated "violent" or PLRA inmates, Sanction B.1 may be imposed on the Low severity level only where the inmate has committed a Low severity level act more than once within a six-month period.

GCT credit may only be given to an inmate serving a sentence of more than one year, but less than life.  In the last year or part of a year of an inmate's sentence, only the GCT available for the time remaining may be disallowed.

**(C) Disciplinary Segregation.**  The DHO may direct that an inmate be placed or retained in disciplinary segregation.  Consecutive disciplinary segregation sanctions can be imposed for inmates found to have committed offenses that are part of different acts only.  Limits on time in disciplinary segregation are based on the severity scale (see Tables 1 and 2).

Unless otherwise specified by the DHO, disciplinary segregation placements for different or separate prohibited acts are imposed consecutively.

**(D)  Make Monetary Restitution.**  The DHO may direct that an inmate reimburse the U.S. Treasury for damages to U.S. Government property that the individual caused or contributed to. The UDC is prohibited from imposing the sanction of make monetary restitution.

Commissary privileges should be suspended by the DHO until restitution is made.  See the Program Statement **Trust Fund/Deposit Fund Manual** for instructions regarding impoundment of inmate funds.

**(E)  Monetary Fine.**  The DHO may direct that an inmate pay a fine, as follows:

#   Greatest severity level offense – Up to $500, or 75% of the inmate's trust fund balance.
#   High severity level offense – Up to $300, or 50% of the inmate's trust fund balance.
#   Moderate severity level offense – Up to $100, or 25% of the inmate's trust fund balance.
#   Low severity level offense – Up to $50, or 12.5% of the inmate's trust fund balance.

Commissary privileges should be suspended until the fine is paid.  See the Trust Fund/Deposit Fund Manual for instructions regarding impoundment of inmate funds.

This sanction cannot be used as a form of monetary restitution.  The UDC is prohibited from imposing the sanction of monetary fine.

**(F)  Loss of Privileges (e.g., visiting, telephone, e-mail, commissary, movies, recreation).** The DHO or UDC may direct that an inmate forego specific privileges for a specified time.

The DHO or UDC may impose non-contact visiting or immediate family-only visitation in addition to loss of visiting.

Loss of recreation privileges (exercise periods) may not be imposed on inmates in a Special Housing Unit (SHU), but may be used for general population inmates.

The DHO or UDC may impose a loss of mattress sanction from lights on to lights off for inmates in the SHU.  Staff must ensure the inmate has a mattress from lights off to lights on.

**(G)  Change Housing (Quarters)**.  The DHO or UDC may direct that an inmate be moved to other housing.

**(H)  Remove from Program or Group Activity.**  The DHO or UDC may direct that an inmate not participate in any program or group activity for a specified time.

**(I)  Loss of Job.**  The DHO or UDC may direct that an inmate be removed from his/her present

job or assigned to another job.

**(J)  Impound Inmate§s Personal Property.**  The DHO or UDC may direct that an inmate's personal property be stored in the institution for a specified time.

**(K)  Confiscate Contraband.**

**(L)  Restrict Quarters.**  The DHO or UDC may direct that an inmate be confined to quarters or its immediate area for a specified time.

**(M)  Extra Duty.**  The DHO or UDC may direct that an inmate perform tasks other than those performed during his/her regular job.

**CHAPTER 2.**

**§ 541.5  Discipline process.**

**(a)  *Incident report.*  The discipline process starts when staff witness or reasonably believe that you committed a prohibited act.  A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.  You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.**

When staff witness or reasonably believe that a violation of Bureau regulations has been committed, staff must prepare an incident report and forward it to the appropriate Lieutenant. The Lieutenant will enter the incident report into SENTRY.

The reporting employee immediately completes Part 1 of the incident report.  The incident is a prohibited act listed in Appendix C.  The entire language of the prohibited act(s) does not have to be copied. For example, "Destroying Government Property, Code 218" or "Possessing Narcotics, Code 113" would be acceptable listings.

The description of the incident should contain all facts known by the employee that are not confidential.  Anything unusual about the inmate's behavior should be noted.  The reporting employee also lists persons (staff, inmates, others) at the scene, and physical evidence (weapons, property, etc.) the employee may have handled.  The report reflects any actions taken, including use of force.  The reporting employee signs the report, enters his/her title, date, and time, and forwards it to the Lieutenant.  The description of the incident provides the inmate with specific evidence for which he/she may prepare a defense.

References to attachments and other investigative materials should not be identified in Section 11 of the report.  For example, if staff observe two inmates in a physical altercation, the reporting officer should describe in Section 11 specific actions by each inmate; e.g., throwing punches to the head with a closed fist, striking one another with closed fists, biting, scratching, hair pulling.

Acts are different or separate if they have different elements (time, place, persons involved, actions).  For example, if an inmate is involved in a fight with another inmate and also strikes a staff member trying to break it up, the inmate can be charged with fighting (Code 201) and assaulting a staff member (Code 224 or 101, depending on seriousness of injuries).

Code 305, Possession of anything not authorized, may be appropriate for inmates possessing items in excess of authorized limits.

Codes 199, 299, and 399, most like 196, 296, and 396, respectively, may be appropriate for inmates using electronic messaging (e.g., TRULINCS) in violation of policy.  Sanctions Code F., Loss of privileges, in the form of loss of electronic messaging privileges, may be an appropriate

sanction for these offenses.

**(b)  *Investigation.*  After you receive an incident report, a Bureau staff member will investigate it.**

The Investigating Officer is an employee at the supervisory level who conducts an investigation of alleged inmate misconduct.  The Investigating Officer must be IDC-certified, and may not be the employee reporting the incident or otherwise be involved in the incident.  The officer is ordinarily a Lieutenant, but the Warden may appoint another staff member.

Staff conduct the investigation as promptly as possible.  The Investigating Officer is ordinarily appointed within 24 hours of the incident report.  The investigation should be finished within 24 hours after the appointment.

When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation.  Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing.  The incident report should then be delivered to the inmate by the end of the next business day.  The time frame for processing the Incident report is suspended until it is released for processing.

The Investigating Officer may informally resolve the Incident report (except for prohibited acts in the Greatest or High severity level categories) or conduct an investigation consistent with this section.

**(1)  *Information:*  The investigator will specifically inform you:**

**(A)  of the charge(s) against you; and**

**(B)  that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process.  Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).**

**(2)  *Statement:*  When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed.  However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.**

The Investigating Officer provides a copy of the incident report to the inmate at the beginning of the investigation, unless there is good cause for later delivery, such as absence of the inmate from the institution or a medical condition that argues against delivery.  If the investigation is delayed, any employee may deliver the charge(s) to the inmate.  The reason for the delay must be documented in the discipline record.

The incident report should be delivered to the inmate within 24 hours of the time staff become aware of the inmate's alleged misconduct.  If an incident is referred for prosecution, the report is delivered by the end of the next business day after release for administrative processing.  (The five-day time frame for a UDC review starts when the incident report is released for administrative processing.)

The staff member must record the date and time the inmate received a copy of the report.  The investigator also reads the charge(s) to the inmate and asks for the inmate's statement about the incident.

The investigator then talks to persons with direct and relevant information, and summarizes their statements.  (For example, if an inmate was in a fight, the investigator talks with the other inmate(s) involved.)  Often, the investigator will want to talk to the reporting employee to obtain a report firsthand and to clarify any questions.  Although an inmate may not identify or request any witnesses at this stage of the discipline process, the investigator should interview any witnesses to the incident (and victims, if applicable) to record their statements. The investigator records the disposition of evidence.

If practicable, the inmate's statements offering a rationale for his/her conduct or for the charges against him/her should be investigated.  If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence.  It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident.

An inmate who receives an Incident report based on a "positive" urine test may claim this result comes from either:

#   Permissible medication he/she was given.
#   A combination of medications he/she is taking.

In the first situation, the investigator must contact Health Services staff to determine if the inmate is receiving medication that contains the compound found in the urinalysis.  In the second situation, the investigator must confirm that the inmate is authorized to take the medications.  When necessary, the testing laboratory is contacted to see if the combined medications could produce a "false positive."

While an inmate can challenge the **results** of a urine test, and this may be considered by the DHO, the validity of the testing **process** is not at issue.  Neither the investigator nor the DHO has the experience to assess the accuracy of the laboratory process.  See the Program Statement **Urine Surveillance**.

Under Comments and Conclusions, the investigator may include:

\#   Comments on the inmate's prior record and behavior.
\#   Analysis of any conflict between witnesses.
\#   Conclusions regarding what happened.

The investigator must record all steps and actions taken on the incident report and forward the relevant materials to staff holding the initial hearing.

**The inmate does not receive a copy of the investigation (Sections 23 through 27 of the incident report).**  However, if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf.

The UDC chairman or DHO taking **final** action ensures that the required information is entered into SENTRY.  The unit team files all discipline documents in the inmate's central file.

**(3)  *Informally resolving the incident report.*  The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations.  If the incident report is informally resolved, it will be removed from your records.**

The Bureau encourages informal resolution of incidents.  However, prohibited acts in the Greatest severity level (100 level) and High severity level (200 level) may not be informally resolved, and must be referred to the DHO.  Moderate severity level (300 level) and Low severity level (400 level) offenses can be informally resolved at any stage of the process.  A record of any informal resolution is maintained in SENTRY.  However, the incident report is not filed in the inmate's central file.

Staff may suspend discipline proceedings up to two calendar weeks while informal resolution is undertaken.  If informal resolution is unsuccessful, staff may reinstate disciplinary proceedings at the stage at which they were suspended.  The time requirements then restart at the point at which they were suspended.  Staff are required to write the incident report before starting informal resolution so the facts of the incident will be preserved if informal resolution is not successful. While informal resolution requires the consent of both staff and inmate to be successful, the determination to informally resolve an incident report is solely at the discretion of staff.

**CHAPTER 3.**

**§ 541.6  Mentally ill inmates.**

**If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.**

**(a)  *Competency to Participate in Disciplinary Proceedings.*  If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate.  The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.**

**(b)  *Responsibility for Conduct.*  You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act.  The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.**

If it appears at any stage of the discipline process that an inmate is mentally ill, staff refers him/her to a mental health professional to determine whether he/she is responsible for his/her conduct or is incompetent.  Staff may take no discipline action against an inmate who is determined by a mental health professional to be incompetent to participate in the disciplinary proceedings or not responsible for his/her behavior.

A person is **not responsible** for his/her conduct if, at the time of the conduct, as a result of a severe mental disease or defect, he/she was unable to appreciate the nature and quality or the wrongfulness of his/her acts.  When a person is determined not responsible for his/her conduct, the incident report shows as a finding that the person did not commit the prohibited act because he/she was found not mentally responsible.  The incident report is retained in the inmate's central file.  The DHO or UDC, as appropriate, enters this finding into SENTRY in the Chronological Disciplinary Record.

A person is **incompetent** if he/she lacks the ability to understand the disciplinary proceedings, or to assist in his/her defense.  When a person is determined incompetent, the disciplinary proceedings are postponed until the inmate is able to understand the proceedings and assist in his/her defense.  If competency is not restored within a reasonable time, the incident report shows as a finding that the inmate is incompetent.  The incident report is retained in the inmate's central file.  The DHO or UDC chairman records the finding into SENTRY in the Chronological Disciplinary Record.

Generally, the UDC initiates referral to a mental health professional.  However, staff at any stage of the discipline process may make such a referral.   The completed mental health evaluation is returned to the UDC, which then decides whether the incident may be handled by the UDC (other than Greatest or High severity level), or referred to the DHO.  In Greatest or High severity level cases, the UDC may refer an inmate for a mental health evaluation along with referral to the DHO.  The completed evaluation is returned to the UDC, which forwards it to the DHO.

**CHAPTER 4.**

**§ 541.7  Unit Discipline Committee (UDC) review of the incident report.**

**A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete.  The UDC§s review involves the following:**

**(a)  *Available dispositions.*  The UDC will make one of the following decisions after reviewing the incident report:**

**(1)  You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)  You did not commit the prohibited act(s) charged; or**

**(3)  The incident report will be referred to the Discipline Hearing Officer (DHO) for further review, based on the seriousness of the prohibited act(s) charged.**

**(4)  If you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.4, the UDC will automatically refer the incident report to the DHO for further review.**

**(b)  *UDC members.*  The UDC ordinarily consists of two or more staff.  UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident.**

The Warden designates ordinarily two or more unit staff members to hold an initial review and impose available sanctions upon completion of the investigation of alleged misconduct for moderate category and low category offenses.  One staff member UDCs are permitted when other members are not reasonably available.

Only one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO.

A staff member witnessing an incident may serve on the UDC in cases where virtually every staff member in the institution witnessed the incident in whole or in part.

A staff member may not sit on the UDC without successfully completing the self-study program for UDC certification.

Each Warden must select at least one UDC Trainer to monitor the progress of staff participating in the self-study program.

**(c)  *Timing.*  The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays.  UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution.**

The Warden's approval is required for any extension beyond five work days.  The UDC will ensure the approval is documented and included in the discipline packet.  The time that an incident report is suspended for referral to another agency for possible prosecution is not included in this five work day time frame.  The time line commences when the incident report is released from the outside agency for administrative processing.  However, the inmate should be advised of the delay, and if appropriate, the reason for the delay.

**(d)  *Inmate appearance.*  You are permitted to appear before the UDC during its review of the incident report, except during UDC deliberations or when your presence would jeopardize institution security, at the UDC's discretion.  Also:**

**(1)  You may appear either in person or electronically (for example, by video or telephone conferencing) at the UDC§s discretion.**

**(2)  You may waive your appearance before the UDC.  If you waive your appearance, the UDC will review the incident report in your absence.**

**(3)  If you escape or are otherwise absent from custody, the UDC will conduct a review in your absence at the institution where you were last confined.**

The UDC must document its reasons for excluding an inmate from the hearing.

A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo indicating the inmate's refusal to appear (Waiver of Appearance (BP-A0307)).

**(e)  *Evidence.*  You are entitled to make a statement and present documentary evidence to the UDC on your own behalf.   The UDC will consider all evidence presented during its review.  The UDC's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.**

The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.  The phrase "greater weight of the evidence" refers to the strength of the evidence.

**(f)  *Sanctions.*  If you committed a prohibited act(s), the UDC can impose any of the available sanctions listed in Tables 1 and 2, except loss of good conduct sentence credit, disciplinary segregation, or monetary fines.**

**(g)  *Referral to the DHO.*  If the UDC refers the incident report to the DHO for further review, the UDC will advise you of your rights at the upcoming DHO hearing, as detailed in § 541.8.**

The UDC is prohibited from imposing the sanctions of make monetary restitution or monetary fines.

The UDC forwards copies of relevant documents to the DHO with a statement of reasons for the referral, along with recommendations for sanctions if the DHO finds the inmate has committed the act or another prohibited act.  The UDC Chair records reasons for the referral and recommendations for disposition in the "Committee Action" section of the incident report. Recommendations are contingent upon a DHO finding that the inmate committed the act.

When charges are referred to the DHO, the UDC advises the inmate of the rights afforded at a hearing.  The UDC asks the inmate to choose a staff representative, if any, and the names of witnesses the inmate wishes to be called to testify and what testimony they are expected to provide.  The UDC advises the inmate that he/she may waive the right to be present at the hearing, but still have witnesses or a staff representative appear on his/her behalf.

If an inmate waives the right to appear at the UDC review, the UDC ensures the inmate is advised of the rights afforded at a hearing before the DHO (see forms for Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)).

**(h)  *Written report.*  You will receive a written copy of the UDC§s decision following its review of the incident report.**

The UDC prepares a record of its proceedings, which need not be verbatim.  A record of the hearing and supporting documents is kept in the inmate's central file.

The UDC gives the inmate a written copy of the decision and disposition by the close of business the next work day.  Action taken as a minor disposition may be reviewed under the Administrative Remedy Program (see 28 CFR Part 542, Subpart B.).

All UDC member**(s)** must print their name and sign Part II of the incident report to certify they served on the UDC and that the completed Part II accurately reflects their review.

When the UDC finds the inmate committed the prohibited act charged or a similar prohibited act reflected in the incident report, the chair ensures the information is entered into SENTRY in the Chronological Disciplinary Record.

**(i)  *Appeals.*  You may appeal the UDC§s action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.**

The Program Statement **Administrative Remedy Program** covers the regulations in 28 CFR Part 542, Subpart B.  In addition to a review under the Administrative Remedy procedure, the Warden or designee audits and reviews discipline hearings and dispositions to ensure conformity with this policy.

When the UDC holds a full review and determines that the inmate did not commit a prohibited act of Moderate or Low severity, the UDC expunges the inmate's file of the incident report and related documents.

**CHAPTER 5.**

**§ 541.8  Discipline Hearing Officer (DHO) hearing.**

**The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC.  The DHO§s hearing involves the following:**

**(a)  *Available dispositions.*  The DHO will make one of the following decisions after a hearing on the incident report:**

**(1)  You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)  You did not commit the prohibited act(s) charged; or**

**(3)  The incident report will be referred back for further investigation, review, and disposition.**

**(b)  *Discipline Hearing Officer.*  The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.**

The term Discipline Hearing Officer (DHO) refers to a one-person, independent officer who conducts hearings and imposes sanctions for incidents of misconduct referred by the UDC.  A DHO may not conduct hearings without receiving specialized training and passing a certification test.  If the institution's assigned DHO is unable to conduct hearings, the Warden arranges for another DHO, who must be certified.

The DHO may not hear any case not referred by the UDC.  Only the DHO has authority to impose or suspend sanctions A through E.

**(c)  *Timing.*  You will receive written notice of the charge(s) against you at least 24 hours before the DHO§s hearing.  You may waive this requirement, in which case the DHO§s hearing can be conducted sooner.**

The inmate does not appear before the DHO less than 24 hours before receiving written notice, unless he/she is to be released from custody within that time or waives the 24-hour notice requirement.

**(d)  *Staff Representative.*  You are entitled to have a staff representative during the DHO hearing process as follows:**

**(1)  *How to get a staff representative.*  You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident.  If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one.  The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.**

**(2)  *How the staff representative will help you.*  Prior to the DHO§s hearing, the staff representative will be available to help you understand the incident report charges and potential consequences.  The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO§s hearing.  During the DHO§s hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings.  The staff representative can also assist you in presenting evidence during the DHO's hearing.**

**(3)  *How the staff representative may appear.*  Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO§s discretion.  If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.**

The Warden provides a full-time staff member to represent an inmate, if requested.  If the request cannot be fulfilled, and the inmate still wants a staff representative, the Warden will appoint one.  The executive staff, the DHO or alternate DHO, reporting officer, investigating officer, witnesses to the incident, and UDC members involved in the case may not be staff representatives.  The Warden may exclude other staff in a particular case or when there is a potential conflict.

The DHO arranges for the presence of the staff representative selected by the inmate.  If the staff member declines or is unavailable, the inmate can select another representative, wait a reasonable period for the staff member's return, or proceed without a representative.  The DHO affords a staff representative adequate time to speak with the inmate and interview witnesses.  While it is expected that a staff member will have ample time to prepare before the hearing, delays to allow additional preparation may be ordered by the DHO.

**(e)  *Inmate appearance.*  You are permitted to appear before the DHO during the hearing on the incident report as follows:**

**(1)  You may appear either in person or electronically (for example, by video or telephone conferencing), at the DHO's discretion.**

**(2)  Your appearance may be prohibited during DHO deliberations or when your presence would jeopardize institution security, at the DHO's discretion.**

**(3)  You may waive your appearance before the DHO.  If you waive your appearance, the DHO hearing will be conducted in your absence.**

**(4)  If you escape or are otherwise absent from custody, the DHO will conduct a hearing in your absence at the institution where you were last confined.**

Although an inmate may waive the right to be present, he/she may elect to have a staff representative and witness(es) appear.

The DHO must document reason(s) for excluding an inmate from the hearing.  An inmate may waive the right to be present, provided the waiver is documented and reviewed by the DHO.  A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear.

The DHO may conduct a hearing in the absence of an inmate when the inmate waives the right to appear.  If an inmate escapes or is otherwise absent, the DHO conducts a hearing in the inmate's absence at the institution in which the inmate was last confined.  When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution.

The UDC ensures that the inmate is aware of all rights for an appearance before the DHO, including delivery of charge(s), advisement of the right to remain silent, and other rights exercised before the DHO.  Procedural requirements before the DHO apply to this in-person hearing, except that written statements of witnesses not readily available may be liberally used in place of in-person witnesses.

The DHO may affirm the earlier action taken, dismiss the charge(s), modify the finding of the original DHO as to the offense committed, or modify sanctions imposed in the inmate's absence.

When an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than in-absentia hearing may be held at the DHO's discretion.

**(f)  *Evidence and witnesses.*  You are entitled to make a statement and present documentary evidence to the DHO on your own behalf.   The DHO will consider all evidence presented during the hearing.  The DHO§s decision will be based on**

**at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.  Witnesses may appear at the DHO§s hearing as follows:**

**(1)  Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.**

**(2)  The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available.  However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.**

**(3)  You or your staff representative may request witnesses appear at the hearing to testify on your behalf.  Your requested witnesses may not appear if, in the DHO§s discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.**

**(4)  If your requested witnesses are unavailable to appear, written statements can be requested by either the DHO or staff representative.  The written statements can then be considered during the DHO§s hearing.**

**(5)  Only the DHO may directly question witnesses at the DHO's hearing.  Any questions by you or your staff representative must be submitted to the DHO, who will present the question to the witness in his/her discretion.**

**(6)  The DHO may consider evidence provided by a confidential informant (CI) that the DHO finds reliable.  You will not be informed of the CI§s identity.  You will be informed of the CI's testimony to the extent it will not jeopardize institution security, at the DHO§s discretion.**

The DHO may refer the case back to the UDC for further information or disposition when the case does not warrant DHO involvement.  When further investigation or more evidence is needed, the DHO may postpone or, before deciding whether a prohibited act was committed, continue the hearing until a later date.  A postponement or continuance must be for good cause (determined by the DHO) and documented in the record.

The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.  The phrase "greater weight of the evidence" refers to the strength of the evidence, not to its quantity or to the number of witnesses testifying.

The DHO may consider negative information (e.g., known peddler of contraband) as part of the fact-finding process.  Negative information may be used to draw an adverse inference against the inmate.  However, negative information alone may not be used to support a finding that an inmate committed a prohibited act.

\#   **Witnesses**.  An inmate may request witnesses from outside the institution.  In such instances, the inmate charged may be excluded during the appearance of an outside witness.  An outside witness should appear in an area in which outside visitors are usually allowed.  Written statements from outside witnesses may be used by the DHO in lieu of live testimony.

The DHO need not call repetitive witnesses.  The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the incident report and other investigative materials.  The DHO must document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate.

The inmate's staff representative, or, when the inmate waives staff representation, the DHO, questions witnesses requested by the inmate, who are called before the DHO.  An inmate who waives staff representation may submit questions for requested witnesses in writing to the DHO.  The inmate may not question witnesses.

When an inmate is excluded during the appearance of a witness, including an outside witness, the DHO informs the inmate before the close of the hearing of the substance of the testimony, except where security would be jeopardized.

There is no minimum or maximum number of witnesses who may be called; the number should be based on the situation and the information to be presented.  While several eyewitnesses may be called, it is expected that the number of character witnesses would be limited, at the discretion of the DHO.

The DHO may not refuse to call a witness who is reasonably available (e.g., on a different shift) and has information relevant to the charge **solely** because the witness (staff or inmate) does not wish to appear.  An inmate witness can be required to attend, and failure to cooperate with the DHO can result in disciplinary action (e.g., for Refusing to Obey an Order of a Staff Member, Code 307).

The DHO may notify the inmate when a witness does not wish to testify.  This may be warranted when it appears that to force the witness's appearance could result in threats to a person's safety, or disruption to security or orderly running of the institution.

The statement of an inmate requesting a witness is not enough to mandate the witness's appearance. There must be an indication that the witness has information directly relevant to the charges.

The DHO may remind an inmate witness that statements at the hearing must be "true" to the best of the inmate's knowledge.

On occasion, an inmate may request a witness who is not reasonably available to testify in person (e.g., an inmate from another institution).  When this occurs, the DHO ordinarily

allows time for the written statement of the witness to be received, if he/she is expected to have relevant information.  The witness should sign the written statement.  If an extension is not granted, the DHO must clearly state in the record reasons for not granting it.

\#   **Confidential informants**.  When a discipline decision is based on confidential informant information, the UDC or DHO must document, ordinarily in the hearing report, their finding as to the reliability of each confidential informant and the factual basis for that finding.  If the report would reveal the confidential informant's identity, this finding is part of a separate report prepared by the DHO, not available to the inmate.

Confidential informant information should not be used, or relied on in the report, when independent information is available to support a finding.  Just because an informant provided information that opened an investigation does not mean that informant must be referred to, as long as there are other facts or independent evidence.

An **informant** is a person (non-staff, ordinarily an inmate) who provides staff (usually at the person's initiation) with information about the commission of an offense or about misconduct.  A **confidential informant** is one whose identity must be protected for personal safety.  Ordinarily, the finding that an inmate committed a prohibited act must be supported by more than one reliable confidential source.  If there is only one, the confidential information must be corroborated by independently verified evidence linking the inmate to the prohibited act.

Uncorroborated confidential information from a single informant is **insufficient** as the sole basis for a finding, **unless** the circumstances of the incident and the knowledge possessed by the informant are convincing enough to show that the information must be reliable.  In an unwitnessed assault, for example, the statement of a seriously injured assault victim **could** be sufficient to support a finding without corroborating evidence.

The reliability of a confidential informant must be established before the information may be used to support a finding.  Reliability may be determined by a record of past reliability or by other factors that reasonably convince the DHO.  The staff member providing information to the DHO must include a written statement of the frequency with which the informant provided information, the period during which the informant provided information, and the information's accuracy.  If reliability is based on other factors, they must be clearly specified.

Staff have an obligation to determine whether there is any basis for concluding that the informant is providing false information.  Neither the DHO nor UDC may consider information obtained in exchange for the promise of a favor to support its finding.

Confidential information presented to the UDC or DHO must be in writing and must state facts and the manner in which the informant learned the facts.  If possible, the statement must be signed by the confidential informant.  If the informant does not write a statement,

the staff member receiving the information provides the information in language as close to the informant's as possible (actual words where possible).

The identity of a confidential informant must be known, at a minimum, by the DHO.  Where the UDC does not make a final disposition, but refers a case to the DHO, the UDC need not know the identity of an informant or the substance of the information.

An inmate's staff representative need not know the identity of informants.  While confidential information may, at the discretion of the DHO, be divulged to, and challenged by, a staff representative, the **reliability** of informants may not be questioned by the staff representative.  The DHO is responsible for establishing reliability.

Confidential informants§ statements must, at a minimum, be incorporated in discipline hearing reports by reference.  The UDC or DHO must document, ordinarily in the UDC or DHO report, their finding as to the reliability of each informant and its factual basis.  The report must identify specific information relied on and the factual basis for that reliance.  When the DHO decides that information given by a single confidential informant is sufficient, the report should include a rationale for that decision.

When the DHO determines that including information in the report would not reveal the identity of the informant, such information is included.  When the DHO determines that including information in the report might reveal the identity of the informant, the DHO prepares a separate report documenting the findings of the reliability of each informant, their factual basis, the information relied on, and the factual basis for that reliance.  This separate report need not be placed in the inmate central file, but is retained in a secure location as long as it is available for later administrative or judicial review, and as long as the separate report is incorporated by reference into the DHO report.

Since information received anonymously does not meet the necessary reliability standard, it may not be used as evidence in making a finding.  Such information, however, may be used in the investigation.

When relying on confidential informant information in making a finding, the DHO must justify the reliability of this information and its factual basis.  If the testimony of conflicting witnesses (any witness, not just confidential informants) is presented, or there are other conflicts in the evidence, the DHO indicates in the record the reason for believing the testimony of one witness over another or otherwise resolving the conflict.  When including this information in the written report would jeopardize security, the DHO may provide it in a separate report, not available to the inmate.

**(g)** *Sanctions.* **If you committed a prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2.**

The Regional Director audits discipline hearings and dispositions to ensure conformity with this policy.

**(h)  *Written Report.*  You will receive a written copy of the DHO's decision following the hearing.  The DHO is not required to prepare a verbatim record of the hearing.  The DHO's written report will document the following:**

**(1)  Whether you were advised of your rights during the DHO process;**

**(2)  The evidence relied on by the DHO;**

**(3)  The DHO's decision;**

**(4)  The sanction imposed by the DHO; and**

**(5)  The reason(s) for the sanction(s) imposed.**

The DHO prepares a record of the proceedings.  The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security.  The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision.

The DHO signs the discipline hearing report, certifying that it accurately reflects the proceedings.

A record of the hearing and supporting documents are kept in the inmate central file.

The DHO ensures that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.

If the DHO expunges an incident report, unit staff must ensure the inmate's central file does not include the incident report and/or related documents.

References to significant prohibited acts that are not supported by disciplinary actions and hearings may not be used by the Bureau in ways that have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time, good conduct time, or a parole recommendation.  Staff may maintain such references in an inmate's central file for use in making classification, administrative transfer, and other decisions if the following conditions are met:

\#   References in an inmate's central file must be maintained accurately.  For example, an inmate suspected of being involved in an escape attempt who was never found to have violated disciplinary regulations or was never charged due to lack of evidence would have to have the lack of evidence noted in any reference to alleged involvement in the escape attempt.

\#   Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the institution where the incident occurred.  This must be documented in the inmate's central file.  Approval signifies that in the Warden's judgment this information is necessary for proper management of the inmate.

**(i)** *Appeals.* **You may appeal the DHO's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.**

The reviewing official (Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions, including ordering a rehearing, any action of the UDC or DHO, but may not increase a valid sanction.  The initial reviewing official for the UDC is the Warden.  The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program.  The DHO ensures the inmate is notified that any appeal must be made within the time frames in the Administrative Remedy procedures.  The Warden may also review DHO hearings to the extent he or she considers necessary to ensure substantial compliance with the provisions of the discipline policy.  Also, the DHO may receive informal complaints about the procedure and correct mistakes locally.

On appeals, the reviewing authority considers:

\#   Whether the UDC or DHO substantially complied with regulations on inmate discipline.
\#   Whether the UDC or DHO based its decision on facts.
\#   If there was conflicting evidence, whether the decision was based on the greater weight of the evidence.
\#   Whether an appropriate sanction was imposed or the severity level of the prohibited act, and other relevant circumstances.

The reviewing official is limited to determining if the UDC or DHO could have rationally concluded that the evidence supports the decision, not necessarily whether the reviewing official would have made the same decision.

The investigator, UDC members, DHO, reporting officer, or staff representative may not investigate or help prepare the response to administrative appeals from UDC or DHO actions.

Where a remand is directed, the UDC or DHO is bound by the original sanction(s), except where:

\#   The sanction is in violation of policy.
\#   The remand is made specifically because of the sanction.
\#   The inmate's behavior or activity since the first hearing is determined by the UDC or DHO to justify an increase or decrease in sanction(s).  The intervening behavior or activity and the

reasons for an increase or decrease in sanction(s) must be documented in the hearing record.

When an appeal results in the original sanction being replaced by a suspended sanction, the suspension (when possible) runs from the date the original sanction was imposed.

When an inmate files a Regional or Central Office appeal of a disciplinary action, those offices may request copies of disciplinary records.  Each Warden will designate an appropriate staff member with the proper clearance to ensure that copies sent for review or appeal include confidential information, witness and notice of rights forms, staff memos concerning the incident, investigative reports, and any dissenting reports.  Documentation is forwarded within three working days of the receipt of request.

**Appendix A.  LIST OF FORMS**

\#   Incident Report (BP-A0288 JUN 11).
\#   Inmate Rights at Discipline Hearing (BP-A0293 JUN 11).
\#   Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) (BP-A0294 JUN 11).
\#   Duties of Staff Representative (BP-A0306 JUN 11).
\#   Waiver of Appearance (BP-A0307 JUN 11).
\#   Discipline Hearing Officer (DHO) Report (BP-A0304 JUN 11).

**Appendix B.  SUMMARY OF INMATE DISCIPLINE SYSTEM**

1.   Staff becomes aware of inmate's involvement in incident or once the report is released for administrative processing following a referral for criminal prosecution.



        ordinarily maximum of 24 hours

2.   Staff gives inmate notice of charges
       by delivering Incident Report.

        maximum ordinarily of 5 work days from the
        time staff became aware of the inmate's
        involvement in the incident.  (Excludes
        the day staff become aware of the inmate's
        involvement, weekends, and holidays.)

                                    3.        Initial review (UDC)

        minimum of 24 hours
          (unless waived)

4.  Discipline Hearing Officer (DHO) Hearing

**NOTE**:  Time limits are subject to exceptions as provided in the rules.

Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while undertaking informal resolution.  If informal resolution is unsuccessful, staff may reinitiate disciplinary proceedings.  The requirements then begin running at the same point at which they were suspended.

**Appendix C.  INMATE RIGHTS AND RESPONSIBILITIES**

**RIGHTS**

**RESPONSIBILITIES**

1.  You have the right to expect that you will be treated in a respectful, impartial, and fair manner by all staff.

1. You are responsible for treating inmates and staff in the same manner.

2.  You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution.

2. You have the responsibility to know and abide by them.

3.  You have the right to freedom of religious affiliation and voluntary this   worship.

3. You have the responsibility to recognize and respect the rights of others in regard.

4.  You have the right to health care, which includes nutritious meals, proper bedding and clothing,- and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles, and medical and dental treatment.

4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it.

5.  You have the opportunity to visit and correspond with family members and friends, and correspond with members of the news media, in accordance with Bureau rules and institution guidelines.

5. It is your responsibility to conduct yourself properly during visits.  You will not engage in inappropriate conduct during visits to include sexual acts and introduction of contraband, and not to violate the law or Bureau guidelines through your correspondence.

6.  You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.)

6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court.

7.  You have the right to legal
    counsel from an attorney of your
    choice by interviews and
    correspondence.

7.  It is your responsibility to
    use the services of an
    attorney honestly and fairly.

8.  You have the right to parti-
    cipate in the use of law library
    reference materials to assist
    you in resolving legal problems.
    You also have the right to receive
    help when it is available through
    a legal assistance program.

8.  It is your responsibility to
    use these resources in keeping
    with the procedures and
    schedule prescribed and to
        respect the rights of other
    inmates to the use of the
    materials and assistance.

9.  You have the right to a wide
    range of reading materials
    for educational purposes
    and for your own enjoyment.  These
    materials may include magazines
    and newspapers sent from the
    community, with certain restrictions.

9.  It is your responsibility
    to seek and use such
    materials for your personal
    benefit, without depriving
    others of their equal rights
    to the use of this material.

10. You have the right to participate
    in educational, vocational training,
    counseling, and employment programs
    as resources permit, and in keeping
    with your interests, needs, and
    abilities.

10.  You have the responsibility to
    take advantage of activities
    which will aid you to live a
    successful and law-abiding
    life within the institution
    and in the community.  You will be
    expected to abide by the regulations
    governing the participation in such
    activities.

11. You have the right to use your
    funds for commissary and other
    purchases, consistent with institution
    security and good order, for
    opening bank and/or savings accounts,
    and for assisting your family, in
    accordance with Bureau rules.

11.  You have the responsibility to
    meet your financial and legal
    obligations, including, but
    not limited to, DHO and court-
    imposed assessments, fines,
    and restitution. You also have
    the responsibility to make use of
    your funds in a manner consistent with
    your release plans, your family needs,
    and for other obligations that you may have.

**Appendix D.  DATA ENTRY INSTRUCTIONS**

Each Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) is responsible for the validity and accuracy of the data on all cases resolved at their level.  It is critical that the data is reported correctly and uniformly.

**Prohibited Acts**.  Data collection requirements apply only to the following prohibited acts:

# Code 100 – Killing.
# Code 101 – Assaulting any Person (Serious).
# Code 107 – Taking Hostages.
# Code 114 – Sexual Assault by Force.
# Code 203 – Threatening Another with Bodily Harm.
# Code 205 – Engaging in Sexual Acts.
# Code 206 – Making Sexual Proposals or Threats to Another.
# Code 224 – Assaulting any Person (Less Serious).
# Code 225 – Stalking.
# Code 229 – Sexual Assault without Force.

**SENTRY Screens**.  When an inmate is found to have committed one or more of the prohibited acts listed above, the DHO or UDC enters data on the following SENTRY screens:

#   Add Hearings/Findings or Update Status After Procedural Hearing.
#   Update Hearing/Findings or Execute/Unexecute Sanctions.

Because data collection is not required at the charging or accusatory levels, there are no additional requirements for the Update Charges screen.

**Data Keying Requirements**.  Four characters are available to enter data on a particular act; the fourth is always used for aiding and abetting or attempts (for example, code 101**A**).

For the prohibited acts specified above, SENTRY allows three additional characters (fields) for DHOs or UDCs to input data:

#   The first field requires data on **type of victim**.
#   The second requires data on **type of weapon** used.
#   The third applies to the **nature of the injury**.

A fourth, separate field records whether the incident was referred for prosecution.

**Type of Victim**.  The DHO and UDC Chairman must select one of three codes that best identifies the victim's status and enter it in the Additional Tracking Identifier (ATI) field for the prohibited act (e.g., ATI.: <u>S</u>, ATI.: <u>O</u>):

I ' Inmate
S ' Staff
O ' Other

There can be only one victim for each prohibited act.  When there are multiple victims (two or more inmates, or one staff member and one inmate), there must be multiple prohibited acts against the inmate.  If there are multiple acts for the same code, they must be keyed under separate incident report numbers even though the finding could be based on a single incident report.

"Other" is entered when the victim is a visitor, contracting staff, U.S. Marshal, etc.

**Type of Weapons Classification**.  DHOs must review the list of weapons codes starting from the top (code "A") to the bottom (code "N").  Using this rank-ordered review, select the **first** code that **best** describes the most serious weapon the inmate used or attempted to use.  The selection is placed in the second position after the type of victim (e.g. ATI.: S**B**, ATI.: O**F**):

    A  gun
    B  sharp object (used to inflict cutting injury)
    C  pointed object (used to inflict stabbing injury)
    D  solid\blunt object (thrown or used to hit)
    E  toxic or flammable fluids or substances
    F  fists\hands
    G  feet\legs
    H  bodily fluids\waste (spit, urine, feces, blood, etc.)
    J  teeth
    K  head
    L  water
    M  other or unknown
    N  no weapon

"Weapons" refers to objects, instruments, or substances listed above that the inmate controlled at the time of the offense, and are considered an element of the offense.

When an inmate threatens to use a weapon that was not readily available or under his or her control at the time of the incident, select code "N", "no weapon."

**Nature of Injury Assessment**.  The level of injury is best assessed by considering the medical treatment required, if any.  Choose the injury code that best describes the most serious injury suffered.  The choice is placed in the third position after type of weapon (e.g., ATI.: SB**4**, ATI.: OF**1**):

    1  **No injury** - The victim or medical staff reported no injuries.

2 **Minor injury** - The victim received minor injuries that may have been treated at the facility, or treated at the facility with a possible recommendation for a non-inmate victim to consult with his/her physician.

3 **Moderate injury** - The victim received more serious injuries that generally require treatment at an outside hospital, or, in the case of non-inmate victims, treatment by their own physicians.  Moderate injuries are not judged life-threatening.

4 **Major injury** - The victim received injuries that are life-threatening, requiring emergency medical treatment at an outside hospital.

5 **Fatal injury** - The victim received injuries resulting in loss of life.

**Example One**:  ATI.: **SB4** – "Staff-**S**" victim, with the weapon being a "sharp object-**B**", and "major injuries-**4**" sustained.

**Example Two**:  ATI.: **OF1** – "Other-**O**" victim with the weapon being "fists/hands-**F**", and "no injury-**1**" sustained.

**Referrals for Prosecution (RFP)**.  For this system to provide accurate data, it is imperative that Special Investigative Supervisors (SIS) and Special Investigative Agents (SIA) refer assaults for prosecution and record the data in section 25 of the incident report.  This is a separate field; the DHO keys either accepted or declined for prosecution by the Assistant U.S. Attorney in the screens for:

# Add Hearings/Findings.
# Update Status After Procedural Hearing.
# Update Hearing/Findings.
# Execute/Unexecute Sanctions.

The SIS or SIA documents this under "Other Facts" in section 25 of the incident report (e.g., RFP.: <u>A</u> for accepted or RFP.: <u>D</u> for declined).

**Table 1.  PROHIBITED ACTS AND AVAILABLE SANCTIONS**

**GREATEST SEVERITY LEVEL PROHIBITED ACTS**

**100    Killing.**

**101    Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).**

**102    Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution.**

**103    Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, *e.g.,* in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).**

**104    Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.**

**105    Rioting.**

**106    Encouraging others to riot.**

**107    Taking hostage(s).**

**108    Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,* hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).**

**109    (Not to be used).**

**110    Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug-abuse testing.**

**111    Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

**112    Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

**113    Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

**114    Sexual assault of any person, involving non-consensual touching by force or threat of force.**

**115    Destroying and/or disposing of any item during a search or attempt to search.**

**196    Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.**

**197    Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.**

**198    Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act.  This charge is to be used only when another charge of Greatest severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.**

**199    Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act.  This charge is to be used only when another charge of Greatest severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.**

**AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS**

**A.  Recommend parole date rescission or retardation.**

**B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).**

**B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).**

**C.  Disciplinary segregation (up to 12 months).**

**D.  Make monetary restitution.**

**E.  Monetary fine.**

**F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

**G.  Change housing (quarters).**

**H.  Remove from program and/or group activity.**

**I.   Loss of job.**

**J.   Impound inmate's personal property.**

**K.  Confiscate contraband.**

**L.  Restrict to quarters.**

**M.  Extra duty.**

**HIGH SEVERITY LEVEL PROHIBITED ACTS**

**200   Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.**

**201   Fighting with another person.**

**202   (Not to be used).**

**203   Threatening another with bodily harm or any other offense.**

**204   Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.**

**205   Engaging in sexual acts.**

**206   Making sexual proposals or threats to another.**

**207   Wearing a disguise or a mask.**

**208**   **Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.**

**209**   **Adulteration of any food or drink.**

**210**   **(Not to be used).**

**211**   **Possessing any officer's or staff clothing.**

**212**   **Engaging in or encouraging a group demonstration.**

**213**   **Encouraging others to refuse to work, or to participate in a work stoppage.**

**214**   **(Not to be used).**

**215**   **(Not to be used).**

**216**   **Giving or offering an official or staff member a bribe, or anything of value.**

**217**   **Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.**

**218**   **Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.**

**219**   **Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).**

**220**   **Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).**

**221**   **Being in an unauthorized area with a person of the opposite sex without staff permission.**

**222**   **(Not to be used).**

**223**   **(Not to be used).**

**224    Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).**

**225    Stalking another person through repeated behavior which harasses, alarms, or annoys the person, after having been previously warned to stop such conduct.**

**226    Possession of stolen property.**

**227    Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).**

**228    Tattooing or self-mutilation.**

**229    Sexual assault of any person, involving non-consensual touching without force or threat of force.**

**231    Requesting, demanding, pressuring, or otherwise intentionally creating a situation, which causes an inmate to produce or display his/her own court documents for any unauthorized purpose to another inmate.**

**296    Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).**

**297    Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.**

**298    Interfering with a staff member in the performance of duties most like another High severity prohibited act.  This charge is to be used only when another charge of High severity is not accurate.  The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.**

**299    Conduct which disrupts or interferes with the security or orderly running of**

**the institution or the Bureau of Prisons most like another High severity prohibited act.  This charge is to be used only when another charge of High severity is not accurate.  The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.**

## AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS

**A.  Recommend parole date rescission or retardation.**

**B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).**

**B.1    Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).**

**C.  Disciplinary segregation (up to 6 months).**

**D.  Make monetary restitution.**

**E.  Monetary fine.**

**F.  Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

**G.  Change housing (quarters).**

**H.  Remove from program and/or group activity.**

**I.  Loss of job.**

**J.  Impound inmate's personal property.**

**K.  Confiscate contraband.**

**L.  Restrict to quarters.**

**M.  Extra duty.**

## MODERATE SEVERITY LEVEL PROHIBITED ACTS

**300    Indecent Exposure.**

**301**  **(Not to be used).**

**302**  **Misuse of authorized medication.**

**303**  **Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.**

**304**  **Loaning of property or anything of value for profit or increased return.**

**305**  **Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.**

**306**  **Refusing to work or to accept a program assignment.**

**307**  **Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, *e.g.* failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).**

**308**  **Violating a condition of a furlough.**

**309**  **Violating a condition of a community program.**

**310**  **Unexcused absence from work or any program assignment.**

**311**  **Failing to perform work as instructed by the supervisor.**

**312**  **Insolence towards a staff member.**

**313**  **Lying or providing a false statement to a staff member.**

**314**  **Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, *e.g.,* counterfeiting release papers to effect escape, Code 102).**

**315**  **Participating in an unauthorized meeting or gathering.**

**316**  **Being in an unauthorized area without staff authorization.**

**317**  **Failure to follow safety or sanitation regulations (including safety**

**regulations, chemical instructions, tools, MSDS sheets, OSHA standards).**

**318   Using any equipment or machinery without staff authorization.**

**319   Using any equipment or machinery contrary to instructions or posted safety standards.**

**320   Failing to stand count.**

**321   Interfering with the taking of count.**

**322   (Not to be used).**

**323   (Not to be used).**

**324   Gambling.**

**325   Preparing or conducting a gambling pool.**

**326   Possession of gambling paraphernalia.**

**327   Unauthorized contacts with the public.**

**328   Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.**

**329   Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.**

**330   Being unsanitary or untidy; failing to keep one§s person or quarters in accordance with posted standards.**

**331   Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements).**

**332   Smoking where prohibited.**

**333   Fraudulent or deceptive completion of a skills test (*e.g.,* cheating on a GED,**

or other educational or vocational skills test).

**334**    **Conducting a business; conducting or directing an investment transaction without staff authorization.**

**335**    **Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.**

**336**    **Circulating a petition.**

**396**    **Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring; or use of the mail to commit or further a Moderate category prohibited act.**

**397**    **Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act.**

**398**    **Interfering with a staff member in the performance of duties most like another Moderate severity prohibited act.  This charge is to be used only when another charge of Moderate severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.**

**399**    **Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Moderate severity prohibited act.  This charge is to be used only when another charge of Moderate severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.**

**AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS**

**A.  Recommend parole date rescission or retardation.**

**B.  Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).**

**B.1    Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).**

**C.  Disciplinary segregation (up to 3 months).**

**D. Make monetary restitution.**

**E. Monetary fine.**

**F. Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

**G. Change housing (quarters).**

**H. Remove from program and/or group activity.**

**I. Loss of job.**

**J. Impound inmate's personal property.**

**K. Confiscate contraband.**

**L. Restrict to quarters.**

**M. Extra duty.**

**LOW SEVERITY LEVEL PROHIBITED ACTS**

**400     (Not to be used).**

**401     (Not to be used).**

**402     Malingering, feigning illness.**

**403     (Not to be used).**

**404     Using abusive or obscene language.**

**405     (Not to be used).**

**406     (Not to be used).**

**407     Conduct with a visitor in violation of Bureau regulations.**

**408     (Not to be used).**

**409     Unauthorized physical contact (e.g., kissing, embracing).**

**498     Interfering with a staff member in the performance of duties most like**

another Low severity prohibited act.  This charge is to be used only when another charge of Low severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.

499    Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Low severity prohibited act.  This charge is to be used only when another charge of Low severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.


**AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS**

B.1    Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).

D.  Make monetary restitution.

E.  Monetary fine.

F.  Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G.  Change housing (quarters).

H.  Remove from program and/or group activity.

I.   Loss of job.

J.  Impound inmate's personal property.

K.  Confiscate contraband

L.  Restrict to quarters.

M. Extra duty.

**Table 2.** **ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL**

| Prohibited Act Severity Level | Time Period for Prior Offense (same code) | Frequency of Repeated Offense | Additional Available Sanctions |
|---|---|---|---|
| Low Severity (400 level) | 6 months | 2nd offense | 1. Disciplinary segregation (up to 1 month). 2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended). |
|  |  | 3rd or more offense | Any available Moderate severity level sanction (300 series). |
| Moderate Severity (300 level) | 12 months | 2nd offense | 1. Disciplinary segregation (up to 6 months). 2. Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
|  |  | 3rd or more offense | Any available High severity level sanction (200 series). |
| High Severity (200 level) | 18 months | 2nd offense | 1. Disciplinary segregation (up to 12 months). 2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
|  |  | 3rd or more offense | Any available Greatest severity level sanction (100 series). |
| Greatest Severity (100 level) | 24 months | 2nd or more offense | Disciplinary Segregation (up to 18 months). |