

U.S. Department of Justice

Federal Bureau of Prisons

---

*Office of the Regional Counsel*  Western Regional Office
7338 Shoreline Drive
Stockton, CA  95219
(209) 956-9739

January 18, 2023

Arielle Tolman
Rosen Bien Galvan & Grunfeld LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738

Susan Beaty
Centro Legal de la Raza
3400 E. 12th Street
Oakland, CA 94601

Oren Nimni
416 Florida Avenue NW,
Suite 26152
Washington, DC 20001

      Re: Access to Legal Counsel at FCI Dublin

Dear Attorneys Tolman, Beaty, and Nimmi:

      On behalf of Warden Jusino and Regional Director Rio-Marques, I am responding to your December 22, 2022, letter expressing various concerns about your ability to confidentially and consistently communicate with your clients through mail, visits and telephone calls.  As you did not provide any written consent from any of your clients to discuss specific concerns, I will generally respond to your concerns based on applicable Bureau of Prisons (BOP) policies and policies and practices at the Federal Correctional Institution (FCI) at Dublin, California.

      To assess whether a prison regulation or policy infringes an inmate's constitutional rights, courts within the Ninth Circuit typically apply the *Turner* test.  *Mauro v. Arpaio*, 188 F.3d 1054, 1058–59 (9th Cir. 1999)(citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)).  The Supreme Court noted thirty years ago that *Turner* "applies to all circumstances in which the needs of prison administration implicate constitutional rights."  Under *Turner*, a court "must consider four factors: (1) whether there is a valid, rational connection between the policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of

prison resources generally; and (4) whether the policy is an 'exaggerated response' to the jail's concerns." *Mauro*, 188 F.3d at 1058–59.  "The burden is on the inmates to show that the challenged regulation is unreasonable under Turner." *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993).

I.      **Legal Mail**

Per Program Statement 5265.14, <u>Correspondence,</u>[1] and 28 C.F.R. § 540.19, <u>Legal Correspondence</u>, the inmate must advise their attorney that correspondence will be handled as special mail if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail- Open only in the presence of the inmate."  In the absence of the "special mail" marking or an adequately identified sender (*e.g.*, a preprinted law firm name on an envelope without an attorney's name) that contains markings similar to the "Special Mail" phrase, staff *may* treat the mail as general correspondence and *may* open, inspect and read the mail outside of the inmate's presence.  Even with all the correct markings, staff are allowed to do a cursory scan to ensure there is no contraband item included and items are at least legal in nature.

This aforementioned policy and FCI Dublin's local policy on the same subject directs the mailroom staff to log legal mail according to the date and time the letter is delivered to the inmate and opened in their inmate's presence, as well as the name of the staff member who delivered the mail.  The log must be signed, or staff must document the inmate's refusal to sign.  To the extent a piece of mail is claimed as legal mail, the log will notate this information.

To the extent any inmate believes their legal mail was improperly opened outside of their presence, they may file a Request for Administrative Remedy pursuant to Program Statement 1330.18, <u>Administrative Remedy Program</u>.[2]  This process allows FCI Dublin to investigate any specific incidents and provide clarification on what happened.  If the inmate is not satisfied with the Warden's response, the inmate may appeal to the Regional Director and to Central Office.  I have personally assisted with the review of appeals to the Regional Director and have reviewed ones regarding legal mail.  Thus, I have confidence in our administrative processes that strive to identify areas that may need improvement based on individual incidents and would encourage your clients to use this process so we can all learn from their experiences.

II.     **Legal Visits**

Per BOP Program Statement 1315.07, <u>Inmate Legal Activities</u>[3] and 28 C.F.R. § 543.13, <u>Visits by Attorneys</u>, the Warden sets the time and place for visits.  Attorneys shall make advance appointments for the visit through the Warden/designee (Unit Team) prior to each visit.  Though Wardens may ordinarily not limit the frequency of attorney visits, the nature and urgency of the legal problems helps determine the number of visits necessary.  Legal visits shall take place in a private conference room, only if available, or in a regular visiting room in an area and at a time designed to allow *some* degree of privacy.  If a private area or conference room is not available, attorneys may reschedule their visit.  Attorneys shall make advance appointments for the visit through the Warden/designee (Unit Team) prior to each visit.

---

[1] Available at www.bop.gov at https://www.bop.gov/policy/progstat/5265_014.pdf
[2] Available at www.bop.gov at https://www.bop.gov/policy/progstat/1330_018.pdf
[3] Available at www.bop.gov at https://www.bop.gov/policy/progstat/1315_007.pdf

To provide increased clarity to its legal visitation process, FCI Dublin is updating their local legal visitation policy that will be consistent with the aforementioned national policies. When their local policy is finalized, FCI Dublin will accomplish several objectives: 1) establish exclusive visitation blocks multiple times per week for attorney-client visits; 2) provide minimum notice requirements with which to request legal visitation; and 3) present additional visitation blocks for attorney-client visits unable to be held during hours exclusively earmarked for legal visitation.   These anticipated changes are reflective of FCI Dublin's broader commitment to make sure that an inmate's right to communicate confidentially with their attorney is not impeded through legal access availability across several avenues (*e.g.*, e-mails, legal mail and scheduled phone calls).  While this updating process has taken longer than expected, FCI Dublin has used this time to evaluate its capacity to accommodate the expected demands for legal visitation to arrive at an acceptable system.

As an example of the ongoing efforts in this area, FCI Dublin has already updated their legal access procedures related to the Institution Hearing Program (IHP).[4]  While these procedures providing expedited legal access are limited to those inmates who have been formally notified of IHP proceedings, this demonstrates FCI Dublin's commitment to providing reasonable in-person legal access that is consistent with Constitutional mandates.

### III.     Legal Calls

Per BOP Program Statement 5265.14, Inmate Telephone Regulations[5] and 28 C.F.R. § 540.103, Inmate Telephone Calls to Attorneys, the Warden may not apply frequency limitations on inmate telephone calls to attorneys when the inmate demonstrates that communication with attorneys by correspondence, visiting or normal telephone use is not adequate.  BOP policy outlines that in-person legal visitation and written communication are meant to be the primary method of client communication.  Additionally, unmonitored legal calls are not intended to be the default method of communication, but rather the secondary option when traditional means (*e.g,* correspondence, visiting or monitored telephone calls) are not sufficient (*e.g.*, imminent court deadline as demonstrated by the inmate or inmate's attorney).

Similarly, FCI Dublin's local policy on the same subject directs inmates to make legal call requests through their Unit Team and to list the reason or circumstance for the legal call. While inmates do not have to disclose confidential content in their request, the request should at least explain why a legal call is necessary when legal visitation and legal mail are readily available options to communicate confidentially.  For example, an inmate with an imminent court deadline will receive a legal phone call, but an inmate who does not demonstrate an imminent court deadline will not automatically receive a legal call simply because his attorney requests it.  Instead, an inmate who does not demonstrate an imminent legal need will first be provided options to access their counsel through legal visitation and legal mail.  Courts have routinely held that some limitations are reasonable to the objectives of providing phone access to many inmates and to promoting jail security.

The practice for accommodating legal phone calls, once approved by Unit Staff, ordinarily involves staff dialing the attorney's number in their private office, confirming the

---

[4] Available at www.bop.gov at https://www.bop.gov/locations/institutions/dub/dub_legal%20procedures.pdf
[5] Available at www.bop.gov at https://www.bop.gov/policy/progstat/5264_008.pdf

person is an attorney, then handing over the phone to the inmate.  The staff member usually stays in the office given the confidential materials in the office; however, staff have the discretion to monitor the call from outside the office if such arrangements do not compromise the safety and security of the institution.

      While this is an acceptable practice, FCI Dublin, on its own initiative, created private offices for inmates' legal calls, even though such arrangements were not mandated by national policy.  Thus, this initiative also demonstrates FCI Dublin's commitment to providing legal access to counsel that is consistent with Constitutional mandates.

      To the extent you assert that the approval rate or processes for approving legal calls falls below Constitutional mandates, I disagree with your broad assertion.  Requests for legal calls are reviewed and approved on a case-by-case basis based on the aforementioned criteria.  In our pretrial facilities where ongoing criminal matters and its due process requires the highest level of legal access, even our national policy governing Pretrial Inmates only mandates legal phone calls to the extent the institution's resources allow.[6]  As FCI Dublin is not a pretrial facility, and as inmates in IHP proceedings have expedited legal access, their process for legal calls is within Constitutional mandates.  *United States v. Kemmerer,* No. 3:19-CR-02513-GPC, 2020 WL 4697982, at *9-10 (S.D. Cal. Aug. 13, 2020) (holding that Kemmerer's right to communicate confidentially with counsel was not infringed by being subjected to BOP's Metropolitan Correctional Center San Diego's limitations, including legal calls being made subject to staff schedules, availability and notice provisions).

      Lastly, I would note that outside attorneys routinely reach out to BOP legal staff for assistance with requests for legal access to FCI Dublin inmates.  Either directly or indirectly, we then follow-up with FCI Dublin as needed.  Between BOP's and FCI Dublin's policies and our continued interaction, I am optimistic we will address any future issues and concerns.

      I trust this is generally responsive to your letter.  To the extent you wish to discuss a client's specific situation, please submit another letter to my attention along with your client's written consent, and I would be pleased to respond accordingly.

      If you would like to discuss this further, please feel free to contact me at rfrance@bop.gov.

      Sincerely,

      *Robert J. France*

      Robert J. France
      Senior Attorney

cc:    Warden T. Jusino
       Regional Director M. Rios-Marques

---

[6] See Program Statement 7331.04, Pretrial Inmates, available at https://www.bop.gov/policy/progstat/7331_004.pdf