1 | MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
2 | KARA J. JANSSEN – 274762
GINGER JACKSON-GLEICH – 324454
3 | ROSEN BIEN
GALVAN & GRUNFELD LLP
4 | 101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
5 | Telephone:    (415) 433-6830
Email:    mbien@rbgg.com
6 | egalvan@rbgg.com
kjanssen@rbgg.com
7 | gjackson-gleich@rbgg.com

OREN NIMNI*
Mass. Bar No. 691821
AMARIS MONTES*
Md. Bar No. 2112150205
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C. 20001-0506
Telephone:    (202) 455-4399
Email:    oren@rightsbehindbars.org
amaris@rightsbehindbars.org
d@rightsbehindbars.org

*Admitted *pro hac vice*

8 | SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
9 | IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
10 | Oakland, California 94612-4700
Telephone:    (510) 679-3674
11 | Email:    susan@ccijustice.org

12 | Attorneys for Plaintiffs

13

14 | UNITED STATES DISTRICT COURT

15 | NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

16

| | |
|---|---|
| 17 | CALIFORNIA COALITION FOR WOMEN et al., | Case No. 4:23-cv-04155-YGR |
| 18 | Plaintiffs, | **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| 19 | v. | |
| 20 | UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al., | Judge:   Hon. Yvonne Gonzalez Rogers |
| 21 | | Date:    December 11, 2023 |
| 22 | Defendants. | Time:    1:00 p.m. |
| | | Crtrm.:  Via ZOOM |
| 23 | | Trial Date:    None Set |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION........................................................................................................1

ARGUMENT .............................................................................................................1

I.      THE COURT SHOULD EVALUATE THE FACTORS FOR PRELIMINARY
        INJUNCTION BY CONSIDERING HARMS TO ALL PEOPLE AFFECTED BY
        DEFENDANTS' POLICIES AND PRACTICES...............................................1

II.     THE DECLARATION OF MORGAN AGOSTINI SHOULD BE STRICKEN, OR
        AT LEAST AFFORDED LITTLE WEIGHT IN ANALYZING PLAINTIFFS'
        MOTION. ..........................................................................................................3

III.    DEFENDANTS' EVIDENCE DOES NOT SUPPORT DEFENDANTS'
        POSITION AND IS HEAVILY REBUTTED BY PLAINTIFFS' EVIDENCE. ...5

        A.      BOP's Limited Staffing Changes Do Not Address Plaintiffs' Concerns. ...5

        B.      Changes in Reporting Policies Have Not Resulted in Safe or Confidential
                Reporting. ...........................................................................................7

        C.      BOP Does Not Properly Investigate Claims of Abuse, And Its
                Investigations Have Not Curbed Harms Alleged By Plaintiffs...................7

        D.      FCI Dublin Uses the SHU As A Method Of Retaliation and There
                Continues to Be Widespread Retaliation At FCI Dublin. ........................8

        E.      Medical and Mental Health Care Is Inadequate. ......................................9

        F.      BOP Can Certify U-Visas But Chooses Not To......................................10

        G.      Defendants Overstate the Impact of Their Purported Changes to Camera
                Systems................................................................................................10

IV.     ALL FACTORS WEIGH IN FAVOR OF GRANTING A PRELIMINARY
        INJUNCTION HERE.........................................................................................11

        A.      Plaintiffs Are Likely To Succeed on the Merits of Their Claims. ............11

                1.      Plaintiffs Have Demonstrated an Objective Risk of Serious Harm. ............11

                2.      Plaintiffs Have Demonstrated Subjective Deliberate Indifference. .............13

        B.      Plaintiffs Have Demonstrated That They Will Suffer Irreparable Harm
                Absent a Preliminary Injunction............................................................15

        C.      Preliminary Relief Here Would Be In the Public Interest and the Balance of
                Equities Cuts In Favor of Plaintiffs. ......................................................16

V.      THE PRISON LITIGATION REFORM ACT DOES NOT BAR PLAINTIFFS'
        REQUESTED RELIEF. .....................................................................................16

i

1

CONCLUSION ...........................................................................................................................18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
   No. 13-CV-05167, 2014 WL 11456533 (C.D. Cal. Oct. 24, 2014) ..................................... 3

*Armstrong v. Brown*,
   768 F.3d 975 (9th Cir. 2014) ................................................................................................ 17

*Armstrong v. Schwarzenegger*,
   622 F.3d 1058 (9th Cir. 2010) .............................................................................................. 17

*Brown v. Plata*,
   563 U.S. 493 (2011) ........................................................................................... 2, 3, 11, 16

*Carol Cable Co. v. Grand Auto, Inc.*,
   No. 87-CV-1036, 1987 WL 14544 (N.D. Cal. Apr. 24, 1987) ............................................. 3

*Clement v. California Dept. of Corr.*,
   364 F.3d 1148 (9th Cir. 2004) ............................................................................................... 3

*Colwell v. Bannister*,
   763 F.3d 1060 (9th Cir. 2014) .............................................................................................. 13

*Edmo v. Corizon, Inc.*,
   935 F.3d 757 (9th Cir. 2019) ................................................................................................ 13

*Farmer v. Brennan*,
   511 U.S. 825 (1994) .............................................................................................................. 11

*Flintkote Co. v. Gen. Acc. Assur. Co.*,
   410 F. Supp. 2d 875 (N.D. Cal. 2006)................................................................................ 3, 5

*Gomez v. Vernon*,
   255 F.3d 1118 (9th Cir. 2001) .............................................................................................. 17

*Hartmann v. California Dep't of Corr. & Rehab.*,
   707 F.3d 1114 (9th Cir. 2013) .............................................................................................. 13

*Hernandez v. County of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015) ......................................................................................... 11

*Hoffer v. Sec'y, Fla. Dep't of Corr.*,
   973 F.3d 1263 (11th Cir. 2020)............................................................................................ 17

*Hoptowit v. Spellman*,
   753 F.2d 779 (9th Cir. 1985) ................................................................................................ 13

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir. 1988) ................................................................................................ 13

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

*Lowry v. City of San Diego*,
    858 F.3d 1248 (9th Cir. 2017) ........................................................................ 3

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ....................................................................... 16

*Parsons v. Ryan*,
    912 F.3d 486 (9th Cir. 2018) ....................................................................... 17

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*,
    632 F. Supp. 3d 1108 (S.D. Cal. 2022) .......................................................... 4

*Plata v. Schwarzenegger*,
    603 F.3d 1088 (9th Cir. 2010) ..................................................................... 17

*Spain v. Procunier*,
    600 F.2d 189 (9th Cir. 1979) ....................................................................... 16

*Strong v. Valdez Fine Foods*,
    724 F.3d 1042 (9th Cir. 2013) ....................................................................... 3

*Toussaint v. McCarthy*,
    801 F.2d 1080 (9th Cir. 1986) ..................................................................... 16

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
    2020 WL 4458908 (N.D. Cal. May 27, 2020) ................................................. 2


## STATUTES

18 U.S.C. § 3626(a) .......................................................................................... 18

Pub. L. No. 106-386, 114 Stat. 1464-1548 (2000) ............................................ 10


## RULES

Fed. R. Evid. 602 .............................................................................................. 3

Fed. R. Civ. P. 25(d)(1) ................................................................................... 13


## REGULATIONS

28 CFR § 115.52 .............................................................................................. 10

**INTRODUCTION**

Federal Defendants oppose Plaintiffs' request for preliminary relief by hewing to a central theme: conditions in FCI Dublin were deplorable and incarcerated people were at risk of serious harm, but now claim that everything is fine. Defendants' arguments rely on inadmissible and unpersuasive evidence, unfounded legal arguments, and a misunderstanding of Plaintiffs' filings. Defendants also almost entirely ignore the robust evidentiary record constructed by Plaintiffs in their initial filings and, as a result, make claims that are directly contradicted by clear record evidence.

Plaintiffs are likely to succeed in the merits of their arguments. Plaintiffs' allegations and evidence establish an objective risk of serious bodily harm to Plaintiffs in the form of ongoing sexual assault, retaliation, and inadequate mental and medical health care for survivors. The official capacity Defendants also have subjective knowledge of this risk and changing some personnel does not immunize Defendants from knowledge or liability. BOP's policies, practices, and responses to sexual misconduct consistently have been shown to fail survivors of abuse which establishes their subjective knowledge.

The risk of harm is imminent and irreparable. The forty-seven (47) declarations submitted by Plaintiffs with their Motion for Preliminary Injunction, declarants established that the culture, polices, and practices at FCI Dublin currently leave incarcerated people at serious risk of sexual assault and retaliation. The government has submitted no evidence that directly rebuts Plaintiffs' claims about what is actually happening at FCI Dublin, instead focusing on personnel changes and one new written policy that has little impact on sexual assault or retaliation. Defendants remaining arguments regarding the scope of requested relief are also unavailing and misapply applicable principles of law.

**ARGUMENT**

**I.     THE COURT SHOULD EVALUATE THE FACTORS FOR PRELIMINARY INJUNCTION BY CONSIDERING HARMS TO ALL PEOPLE AFFECTED BY DEFENDANTS' POLICIES AND PRACTICES.**

Defendants assert that this Court can only consider the preliminary injunction factors for named individual Plaintiffs and not for California Coalition for Women Prisoners ("CCWP") or for

putative class members. ECF 46 at 18.[1] This is incorrect. First, Defendants make no argument that the evaluation of preliminary relief should exempt CCWP, a named organizational Plaintiff. In doing so they ignore the organizational Plaintiff with hundreds of members in FCI Dublin who are gravely affected by the imminent risk of sexual assault and retaliation on an everyday basis. *See* ECF 11-3. Defendants cannot pick-and-choose which Plaintiffs preliminary relief can be provided for. Because Defendants have no support for this contention, preliminary relief should be evaluated on behalf of CCWP and its members, and this Court must evaluate the evidence of current and future harm attested to by CCWP members.

Second, this Court should evaluate the evidence submitted by putative class members as evidence of imminent harm. Plaintiffs concurrently filed a motion for class certification that is pending resolution. ECF 11. In that motion, Plaintiffs seek both class certification and provisional class certification for purposes of the preliminary injunction. ECF 11.[2] At this stage with a pending motion, class-wide consideration is appropriate.[3] *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2020 WL 4458908, at *3 (N.D. Cal. May 27, 2020) (noting that class-wide relief can be granted prior to certification, particularly in civil rights cases "when such broad-based relief is necessary to effectuate relief for the individual plaintiffs" and usually operates against government defendants). Plaintiffs have requested preliminary relief that necessarily must apply facility wide. Evidence of harm to any individual in FCI Dublin is evidence of the harm created by the policies and practices at the facility and it would make little sense to find that a culture of sexual abuse or retaliation only affects a handful of individuals, or that only certain individuals should be protected. *Brown v. Plata*,

---

[1] Page citations are to the ECF page numbering on the blue headers.

[2] Defendants are incorrect that Plaintiffs' motion for class certification is stayed and cite nothing in support of this proposition. This Court's stay in *M.R. v. FCI Dublin*, 22-cv-05137-YGR, should not apply here. The concerns in that case, a damages case against an individual currently under criminal prosecution, are not attendant to this case or to the pending motion for class certification. The relevant Defendants are different. No discovery involving those currently under criminal prosecution is required for resolution of this motion. This injunctive case differs from the currently stayed damages matters in all relevant respects and is therefore not subject to the stay.

[3] To the extent this Court finds that it is required to certify the pending class prior to granting preliminary relief, Plaintiffs respectfully request that this Court provisionally certify the putative class in accordance with their motion.

563 U.S. 493, 530-531 (2011) (rejecting argument that a remedy was too broad because it would benefit non-plaintiffs, where broad remedy is proportional to the scope of the violation); *Clement v. California Dept. of Corr.*, 364 F.3d 1148, 1152-1153 (9th Cir. 2004) (upholding systemwide injunction in a case involving an individual plaintiff where the enjoined practices were matters of uniform policy).

## II.    THE DECLARATION OF MORGAN AGOSTINI SHOULD BE STRICKEN, OR AT LEAST AFFORDED LITTLE WEIGHT IN ANALYZING PLAINTIFFS' MOTION.

Defendants rely, almost exclusively, on a declaration from Morgan Agostini ("Agostini Dec.") for their evidence and in support of their arguments. However, Ms. Agostini's declaration is inadmissible and should either be excluded or afforded little weight in evaluating the instant motion.

Lay declarants may only offer facts or opinions based on their own personal knowledge. Fed. R. Evid. 602; *see also Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (holding that witness lacked personal knowledge of "events that she did not in fact witness or was not in a position to perceive on the night in question"). While the burden on a witness is "minimal," district courts have used this standard to exclude testimony as to events where "reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotations omitted). However, district courts have used this standard to exclude testimony as to events that declarants could not have personally observed. *See Flintkote Co. v. Gen. Acc. Assur. Co*., 410 F. Supp. 2d 875, 884 (N.D. Cal. 2006); *see also, e.g.*, *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. 13-CV-05167, 2014 WL 11456533, at *4 (C.D. Cal. Oct. 24, 2014). Additionally, courts give reduced weight to a declarant's statement where the court has "serious[] doubt" that a person in the declarant's position within the defendant company would have sufficient knowledge of the matters to which he attested. *Carol Cable Co. v. Grand Auto, Inc*., No. 87-CV-1036, 1987 WL 14544, at *4 (N.D. Cal. Apr. 24, 1987). That serious doubt exists here.

Ms. Agostini lists her position as an Executive Assistant employed by BOP at FCI Dublin. Agostini Dec. ¶¶ 1-3. She was hired in July 2022. *Id*. ¶ 1. Agostini lists her general duties as (1) administering correction programs at DUB Satellite Prison Camp (SCP), an adjacent structure

of the prison that is not inside the FCI; (2) advising and providing administrative support for the Warden (although it is not clear that FCI Dublin currently has a Warden); and (3) helping plan, organize, supervise, and evaluate diversified programs. *Id*. ¶ 3. Ms. Agostini then proceeds to testify about a wide range of subjects including: (1) BOP and FCI Dublin policy creation, promulgation, and execution (*See Id*. ¶ 5-6); (2) BOP's working relationship with the DOJ and FBI (*Id*.¶ 17); (3) BOP's hiring, firing and investigation practices (*Id*. ¶¶ 9-11); (4) how people incarcerated at FCI Dublin (not just SCP) can report abuse (*Id*. ¶¶ 12-14); (5) ongoing FBI and OIG investigations (*Id*. ¶ 4); (6) the practical use of segregated housing at FCI Dublin (not just SCP) and the background penological purposes for the use of segregated housing in Dublin and across all prisons (*Id*. ¶¶ 20-23); (7) the presence or lack of retaliation at FCI Dublin and the facility's knowledge of such practices (*Id*. ¶¶ 24-25); (8) nationwide BOP practices concerning strip searches (*Id*. ¶ 29); (9) that the constitutional adequacy of FCI Dublin's health care (*Id*. ¶ 39); and (10) BOP's role and legal authority in certifying "U-Visas"( *Id*. ¶ 54).

Nowhere in Agostini's declaration does she lay out any additional personal knowledge beyond her job role, and her role as she describes it does not encompass knowledge of such a wide range of subjects including inter-department government coordination and FBI investigations. In particular, Agostini does not assert that she has the personal (or expert) knowledge to attest to how written policies are actually carried out at FCI Dublin—the central feature of Plaintiffs' complaint and request for preliminary relief, where Agostini does not work. Further, the declaration contains impermissible legal conclusions. *Id*. ¶¶ 23, 34-45, 54 (asserting that health care at FCI Dublin meets the constitutional standard; that the BOP cannot certify U-visas; and that the SHU serves a legitimate penological interest). Such self-serving legal conclusions are not proper evidence and should be stricken. *See Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1131 (S.D. Cal. 2022) (noting that statements in declarations containing improper argumentation or legal conclusions will not be considered).

There is a wide gap between what Agostini declares her position to entail and the subjects on which she testifies. This Court should strike all facts where an appropriate foundation of personal knowledge has not been laid by the declaration or other facts in the record. In particular, this Court

4

should offer no weight to Ms. Agostini's testimony concerning the execution of policy or custom at FCI Dublin and to her legal conclusions and should also exclude any attestations related to FCI Dublin prior to Agostini's employment there. *See Flintkote*, 410 F. Supp. 2d at 884 (holding a company employee could not testify to events that occurred prior to his employment).

### III. DEFENDANTS' EVIDENCE DOES NOT SUPPORT DEFENDANTS' POSITION AND IS HEAVILY REBUTTED BY PLAINTIFFS' EVIDENCE.

At most, Defendants point to some policies which have proven not to protect incarcerated people from abuse but provide no substantive evidence on how these policies are implemented. Policies are meaningless when prison officers and leadership at every level flout them and allow sexual abuse, retaliation, and abysmal conditions to continue.

#### A. BOP's Limited Staffing Changes Do Not Address Plaintiffs' Concerns.

Defendants argue that BOP now "adequately hires, trains, and supervises its employees." Agostini Dec. ¶¶ 5-11. But this conclusion does not flow from the evidence. Defendants state that they have policies to deter staff misconduct but present no evidence as to how those policies operate in practice. The majority of policies they cite have been in effect for close to ten years, did not prevent harm in the past, and Defendants fail to explain why they would suddenly prevent abuse now. *Id.* ¶ 5 (citing to sexual abuse policies from 2015). For example, Defendants only cite two BOP Program Statements regarding sexual abuse, one from 2015 and the other issued on August 1, 2023. Agostini Dec. ¶ 5. Defendant's 2015 Program Statement regarding sexual abuse was in place throughout the countless abuses incarcerated people experienced in the past five years, including abuses by Warden Garcia, Chaplain Highhouse, and Officers Chavez, Klinger, Bellhouse, Smith, Nunley, and Jones. ECF 1 at 5. Plaintiffs have submitted ample evidence of how these policies have not worked to protect incarcerated people. The one new policy that Defendants point to, the August 1, 2023 Program Statement, does not contain significant changes, it only alters back-end investigation processes, and Plaintiffs' evidence reinforces that there is a gulf between written policy and actual practice at FCI Dublin. ECF 46-2.

Defendants also cite staffing changes as a meaningful defense against irreparable harm. But the staffing changes in question have little bearing on Plaintiffs' claims. The majority of departments

listed as having changed have no direct bearing on the prevention of sexual assault or retaliation and serve only as irrelevant window dressing. Agostini Dec. ¶ 8 (noting turnover in the IT department, locksmith department, financial management department, trust fund department, etc.). Much of the noted staff turnover resulted from transfers to other departments or temporary leaves of absence or criminal prosecutions, and not the systemic overhaul that BOP presents. Agostini Dec. ¶ 8.

A number of staffing changes made by Dublin not only fail to solve the problems complained about by Plaintiffs, they exacerbate them. For example, Defendant Putnam was not removed from a position of authority at FCI Dublin, instead he was promoted has a more prominent role in managing investigations Agostini Dec. ¶ 8. Plaintiffs have allegations and evidence that Putnam, acting in a lower-level investigatory capacity, systematically refused to investigate claims of sexual abuse and facilitated such abuse through indifference and retaliation. *See, e.g.*, ECF 10-23 ¶ 7; ECF 10-37 ¶ 10; ECF 10-18 ¶¶ 9, 13. His promotion, therefore does not cure the illness at Dublin, it makes it worse. Additionally, Defendants note that the current acting Warden also holds the position of PREA coordinator. Agostini Dec. ¶ 11. This too only serves to exacerbate the problems detailed by Plaintiffs and contains the same high risk for abuse that attended former Warden Garcia's appointment as PREA coordinator: a position that he used to regularly sexually assault people and curtail any reporting. ECF 1 at 21.

Defendants' citation of staffing changes is unavailing. As previously described, Plaintiffs here complain of ongoing policies, customs, and practices which render them at risk of the irreparable harms of sexual abuse and retaliation. These are not claims about the retrospective actions of former officers. Those actions are important; they caused incalculable harm and did so under the same policies that Defendants now valorize and are evidence of BOP's failures. Plaintiffs seek to enjoin ongoing customs, policies, and practices at FCI Dublin and shuffling of staff has no bearing on that claim.[4]

---

[4] Defendants assert that since 2022, FCI Dublin has participated in the prosecutions of prior employees and has investigated others. *See* Opp. Br. at 18. This is simply not supported by even Defendants' own self-serving declaration. It is true that several officers were prosecuted. But nothing in the declaration points to FCI Dublin's role in referring individuals for prosecution or assisting in the prosecution in any way. Defendants cannot claim that prosecutions conducted by the

**B.**     **Changes in Reporting Policies Have Not Resulted in Safe or Confidential Reporting.**

Defendants assert that a series of policies now provide for confidential reporting mechanisms for survivors of sexual assault and for other abuses at Dublin. Agostini Dec. ¶¶ 12-15. But Defendants' assertions do not provide any evidence beyond what policies exist on paper at FCI Dublin and Defendants describe the same reporting mechanisms that existed during periods of extensive abuse and which have not changed or otherwise improved. Plaintiffs' declarations demonstrate that the reporting systems described by Defendants either do not exist or do not function in practice, and that Plaintiffs are unable to report staff misconduct safely and confidentially. *See, e.g.*, ECF 10-36 ¶ 14; ECF 10-14 ¶ 10.; ECF 10-20 ¶ 13.

**C.**     **BOP Does Not Properly Investigate Claims of Abuse, And Its Investigations Have Not Curbed Harms Alleged By Plaintiffs.**

Defendants also rely on Agostini's assertion that BOP properly investigates claims of abuse in support of their arguments. However, Agostini's declaration merely asserts that there are policies that require investigation of claims. Agostini Dec. ¶ 16. As previously noted, a majority of those policies were operative during a period when even Defendants admit staff perpetuated serious abuse. *See, e.g.*, Program Statement 3420.11, Standards of Employee Conduct (12/6/2013). Agostini's declaration again says nothing about the actual implementation of these policies, which are the primary source of Plaintiffs' complaints.[5] Finally, Agostini proudly cites recent investigations of staff misconduct and resulting suspensions with nineteen staff currently on leave, including three walked off in the in the last six months as evidence of BOP's functioning system. Agostini Dec. ¶ 33. But this evidence only serves to demonstrate that, despite new leadership, the same problems persist at FCI Dublin—people are still being assaulted and harassed at staggering rates.

Plaintiffs paint a different picture of Dublin's investigative practices, bolstered by firsthand evidence. The declarants detail how they are chilled from reporting by preemptive retaliation, threats

---

USAO are somehow evidence of FCI Dublin's functioning policies when they were absent from that process and have presented no evidence that they would have acted in lieu of the USAO prosecution and investigation.

[5] Agostini also again cites prosecutions initiated by the USAO as indicative of BOP's investigative procedures, but presents no evidence as to how BOP facilitated this process in any way.

7

of retaliation or post-report retaliation. *See, e.g.*, ECF 10-37 ¶ 17; ECF 10-32 ¶¶ 20-22; ECF 10-33 ¶¶ 27, 30-31; ECF 10-22 ¶ 13. Plaintiffs also submitted substantive evidence alleging that reports of sexual abuse are systematically swept under the rug absent interference from outside agencies. *See, e.g.*, ECF 10-44 ¶¶ 19-25; ECF 10-19 ¶ 7; ECF 10-18 ¶¶ 9, 13. Additionally, the Complaint identify Defendant Putnam as largely responsible for the systemwide failure of BOP's investigative process, *see* ECF 1 ¶¶ 140, 143-144, 164, 172, but, Defendant Putnam has been promoted and continues to oversee additional investigations.

**D.     FCI Dublin Uses the SHU As A Method Of Retaliation and There Continues to Be Widespread Retaliation At FCI Dublin.**

Defendants assert that FCI Dublin categorically does not place people in segregated housing as retaliation for reporting sexual abuse. Agostini Dec. ¶¶ 20-23. Agostini cites no evidence beyond existing policies prohibiting retaliation of that kind. *Id*. ¶¶ 20-23. But, the allegations here are that the policies at issues, have been repeatedly and flagrantly violated, and their mere invocation cannot shield Defendants from liability.[6] Plaintiffs have submitted substantial evidence that, since the enactment of the 2019 policy the SHU has been regularly used to punish survivors who report sexual assault and as a tool to dissuade reporting altogether. *See, e.g.*, ECF 10-4 ¶¶ 12-13; ECF 10-5 ¶ 8; ECF 10-10 ¶¶ 17, 18; ECF 10-9 ¶¶ 8, 11. Additionally, Plaintiffs detail numerous other forms of retaliation beyond placement in the SHU including: additional sexual harassment, verbal threats, room searches and property seizures, strip searches, job loss, and denial of privileges. ECF 10-6 ¶ 17-20; ECF 10-5 ¶ 15-16, 20; ECF 10-14 ¶ 17; ECF 10-15 ¶ 18, ECF 10-44 ¶ 29; ECF 10-47 ¶¶ 20-34; ECF 10-46 ¶¶ 40-44; ECF 10-21 ¶¶ 9-11; ECF 10-20 ¶¶ 11-14; ECF 10-18 ¶ 8; ECF 10-17 ¶¶ 16-19; ECF 10-36 ¶ 7; ECF 10-31 ¶¶ 6, 10, 13; ECF 10-10 ¶¶ 8, 13, 16-18; ECF 10-23 ¶¶ 4, 7-10; ECF 10-32 ¶¶ 12-32; ECF 10-33 ¶¶ 69–73; ECF 10-1 ¶¶ 6-7; ECF 10-7 ¶ 8; ECF 10-34 ¶ 8, 10; ECF 10-42 ¶ 11; ECF 10-25 ¶¶ 6; ECF 10-41 ¶ 8; ECF 10-26 ¶¶ 9-10; ECF 10-27 ¶¶ 11-13;

---

[6] The Agostini Dec. asserts that BOP provided additional guidance on this policy in October 2019 but does not cite this guidance. Agostini Dec. ¶ 20. This new guidance, as described, does not appear to be relevant to the matter at hand as it simply "reiterat[es] the PREA requirement that inmates at high risk for sexual victimization shall only be placed in segregated housing after BOP has assessed all available alternatives." Agostini Dec. ¶ 20. This has no bearing on the use of the SHU as retaliation.

ECF 10-29 ¶¶ 5-6; ECF 10-28 ¶¶ 7-8; ECF 10-32 ¶ 8; ECF 10-39 ¶¶ 4-7, 23-24; ECF 10-22 ¶¶ 6, 13-14. These forms of retaliation are unaddressed by Defendants.

**E.    Medical and Mental Health Care Is Inadequate.**

Defendants cite Agostini's declaration to argue that people incarcerated at FCI Dublin receive a constitutionally adequate standard of medical and mental health care. This legal conclusion must be stricken from the record. Further, this conclusion cannot be sustained against the mountain of evidence presented by those at FCI Dublin who continue to be denied care.

Plaintiffs detail serious and unconstitutional deficiencies in medical and mental health care for survivors. ECF 10-36 ¶ 15; ECF 10-17 ¶ 15; ECF 10-23 ¶¶ 5, 12; ECF 10-8 ¶ 12; ECF 10-6 ¶ 25; ECF 10-24 ¶ 8. For example, in May 2023, M.M. was placed in the SHU under false pretenses by Officer Knittles as a form retaliation of retaliation. ECF 10-28 ¶ 10. While in the SHU she was involuntarily withdrawn from necessary psychotropic medication. *Id.* ¶¶ 11-12. To date she has been unable to get back on her medication regimen and is suffering serious physical and psychological consequences as a result. *Id.* ¶ 12. Defendants gesture at Tri-Valley as a solution to the unconstitutional medical and mental health care at FCI Dublin but again Plaintiffs' evidence demonstrates that policy is not practice. It is true that Tri-Valley is now contracted to provide some services at FCI Dublin, but Plaintiffs present evidence that this service is irregular, incomplete, and not staffed by licensed professionals. ECF 10-2 ¶ 15 (putting in a request to meet with Tri Valley but was told "the list is full"); ECF 10-29 ¶ 7 (attempted to get an appointment with Tri-Valley but was told it was only a means for PREA reporting, not for ongoing care); ECF 10-17 ¶ 19 (describing that only handful of women have been seen by Tri-Valley, and that the need is too high and the services are not sufficient); ECF 10-27 ¶ 14 (heard that Tri-Valley was supposed to provide services, but she had not been provided any services); ECF 10-12 ¶ 12.

As evident from Tri-Valley's own fliers informing people of services, BOP's agreement with Tri-Valley requires that incarcerated people specifically request care from Tri-Valley via officers in FCI Dublin. ECF 46-5. This requirement creates an unnecessary barrier to services and opens incarcerated people up to abuse and retaliation by officers who remain their only means to access care. This barrier has already created concerning issues—the individual who manages referrals to

9

Tri-Valley, Dr. Mulcahey, is currently married to a Unit Manager in the facility and has disclosed confidential information to him, leading to retaliation. *See* ECF 10-13 ¶ 14 (sought mental health care through Dr. Mulcahey who informed her husband, Officer Craig, who then accused declarant of making a false report); ECF 10-4 ¶ 16 (detailing concerns that anything said to Dr. Mulcahey will be shared with her husband who runs her unit and could cause further retaliation); ECF 10-27 ¶ 14 (only psychiatrist is married to an Officer working the units which leads to mistrust).

## F.   BOP Can Certify U-Visas But Chooses Not To.

Plaintiffs detail in their complaint and preliminary injunction filings that FCI Dublin staff targeted non-citizens for abuse at FCI Dublin and used the threat of immigration consequences or the promise of immigration assistance to coerce survivors. ECF 10-47 ¶¶ 15-17; ECF 10-45 ¶ 13; ECF 10-46 ¶ 6; ECF 10-32 ¶ 17; ECF 10-18 ¶¶ 6-7; ECF 10-20 ¶¶ 6; ECF 10-6 ¶ 7. The Agostini Dec. declares that BOP plays no role in the certification of U-visas, which offer limited immigration relief to non-citizens who assist in the investigation or prosecution of criminal activity. Agostini Dec. ¶ 54.  As a matter of law, BOP can certify U-visas. VTVPA, Pub. L. No. 106-386, 114 Stat. 1464-1548 (2000). The fact that it chooses not too for non-citizens who have been abused by its own staff only serves as further evidence that BOP has not altered its practices and policies to meet the needs of those they have harmed and continue to harm.

## G.   Defendants Overstate the Impact of Their Purported Changes to Camera Systems.

Defendants place substantial weight on new cameras in the facility, but do not substantiate how their new camera act to prevent sexual assault. ECF 46 at 11. Defendants produce no evidence about where the camera information is stored, who reviews them if there are allegations of abuse, whether survivors can access this video, if video is assessed in internal investigations, or anything else. *Id. See also* Agostini Dec. ¶ 57-60. Importantly, Defendants also concede that "digital and analog cameras will overwrite video 14 days after incident." Agostini Dec. ¶ 58. This means that video will always be useless if an incident of sexual assault was reported 14 days or later after the actual incident occurred. According to PREA policy, survivors are not required to report sexual assault within this timeframe. 28 CFR § 115.52 (b)(1). As a result, the current camera system set in

place by the BOP does very little to track and prevent abuse. Furthermore, Defendants concede that despite implementing these new cameras, there are still no cameras inside staff offices, Agostini Dec. ¶ 60, despite evidence that many people were sexually abused in staff offices because there were no cameras. *See, e.g.*, ECF 10-11¶ 12; ECF 10-6 ¶ 13. Finally, Plaintiffs present accounts of cameras not functioning in the facility and casting doubt on the film review process. *See* ECF 10-26 ¶ 13; ECF 10-8 ¶ 14; ECF 10-14 ¶ 15.

## IV.   ALL FACTORS WEIGH IN FAVOR OF GRANTING A PRELIMINARY INJUNCTION HERE.

### A.   Plaintiffs Are Likely To Succeed on the Merits of Their Claims.

#### 1.   Plaintiffs Have Demonstrated an Objective Risk of Serious Harm.

The Eighth Amendment is violated when prison officials know that "inmates face a sub-stantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Plaintiffs can establish an Eighth Amendment violation by showing that they are "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). Prison officials must also have a culpable state of mind, or one of "deliberate indifference." *Id.* The official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it. *Id.* at 842. In systemic cases, such as here, deliberate indifference can be shown by, *inter alia*, evidence of "systematic or gross deficiencies in staffing, facilities, equipment, or procedures." *Hernandez v. County of Monterey*, 305 F.R.D. 132, 152-53, 155 n.138 (N.D. Cal. 2015). Importantly, the key question in systemic cases focuses not on individual circumstances but rather on whether systemic deficiencies "taken as whole" subject people to a "substantial risk of serious harm." *See Brown v. Plata*, 563 U.S. at 505 n.3.[7]

Defendants argue that Plaintiffs fail to satisfy the objective prong of the deliberate indifference test because some of the officers who sexually assaulted and harassed Plaintiffs and

---

[7] Defendants posit that *Brown* and *Hernandez* are inapplicable because both cases involved certified classes. But that distinction is not relevant for analyzing the likelihood of success on the merits of Plaintiffs' claims. This court should evaluate the risk to all those from Defendants customs, policies, and practices; nothing in *Brown* or *Hernandez* qualifies their holdings.

11

putative class members have been criminally charged or are no longer employed at FCI Dublin. But this fact does not undermine Plaintiffs' showing, and Defendants do not even attempt to challenge the robust evidence offered by Plaintiffs. At the outset, Defendants' argument, by its own terms, only applies to some officers alleged to have assaulted Plaintiffs and putative class members, not all. ECF 46 at 19 (noting that *most* claims of assault refer to criminally prosecuted or removed officers) (emphasis added). That alone dooms Defendants' position.

Plaintiffs do not allege that the specific officers listed by Defendants will sexually assault them again (beyond those who remain at FCI Dublin or have simply been put on temporary leave). Instead, Plaintiffs allege that there are policies, practices, and customs at FCI Dublin that currently put them at imminent risk of sexual assault and retaliation. One method Plaintiffs use to demonstrate this is by citing past sexual assaults which occurred under the same culture and practices (and largely under identical policies) as evidence of the failure of existing policies. These numerous examples are *evidence* of Plaintiffs' claims, not the claims themselves.[8] As such, Defendants argue against a straw man and provide no evidence to rebut Plaintiffs' actual complaint and evidence.

Even addressing the content of their misguided argument, Defendants are incorrect that there are no examples of sexual assault or harassment from 2022 until the time of filing. Indeed, Plaintiffs have provided a number of declarations showing recent sexual assault and harassment between 2022 to the time of filing. ECF 10-15 ¶ 19; ECF 10-9 ¶ 7; ECF 10-26 ¶ 7; ECF 10-43 ¶ 5-8; ECF 10-24 ¶ 4-5; ECF 10-14 ¶ 9-10; ECF 10-31 ¶ 4, 7; ECF 10-44 ¶ 6-16; ECF 10-20 ¶ 6; ECF 10-25 ¶ 5; ECF 10-4 ¶ 6 (describing instances of sexual abuse and harassment from 2022-August 2023). These declarations are only some examples of ongoing harm and imminent risk that incarcerated people face at FCI Dublin and the timeline of these proceedings cannot catch up to the numerous reports of sexual assault, harassment, and retaliation occurring in FCI Dublin every day. The scale of this problem makes clear that Defendants' changes have not remedied the imminent risk of harm—only significant changes to policies, practices, and customs can effectively protect people inside.

---

[8] The past assaults and harassment are central pieces of the *damages* claims brought by Plaintiffs.

**2.      Plaintiffs Have Demonstrated Subjective Deliberate Indifference.**

Defendants' argument that Plaintiffs cannot satisfy the subjective prong of the deliberate indifference test fairs no better. Defendants attempt to assert that Plaintiffs cannot establish the subjective component of deliberate indifference because some of the officers involved Plaintiffs abuse are no longer employed at FCI Dublin. ECF 46 at 24. This is a fundamental misunderstanding of the role of official capacity and individual capacity claims.

Plaintiffs' injunctive claims are brought against institutional Defendants in their *official* capacity, not their personal ones. ECF 1 at 1. It is well established in this Circuit that Plaintiffs "seeking injunctive relief against the State [or federal entity] is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *see also Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014). Official capacity defendants may be held liable and subject to injunctive relief without any showing of actual knowledge or personal involvement on an individual basis in an Eighth Amendment violation. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 799 (9th Cir. 2019) (issuing an injunction under the Eighth Amendment against official capacity Defendants "regardless of their personal involvement"). Where the evidence in support of injunctive relief concerns "institutional practices and physical conditions" that support an inference of continuation, rather than "the personal conduct of the principal named defendants," the district court may issue injunctive relief against the successor officials. *See Hoptowit v. Spellman*, 753 F.2d 779, 782 (9th Cir. 1985); *see also* Fed. R. Civ. P. 25(d)(1), advisory committee note to 1961 amendment.

When plaintiffs seek injunctive relief "against a myriad of prison personnel responsible for operating a prison," the correct focus is "on whether the combined acts or omissions of the state officials responsible for operating the state's penal system created living conditions that violate the eighth amendment … the causal link between the deliberate indifference and the eighth amendment deprivation is broader and more generalized than when that same prisoner seeks damages for the harmful effects of such conditions." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Therefore, the proper inquiry here is whether BOP's policies and practices, responses to complaints of sexual

13

assault, and the prison's inferred knowledge from correctional standards show that they were deliberately indifferent to the substantial risk of harm of sexual harassment and sexual assault.

Defendants have done nothing to rebut Plaintiffs evidence that they are likely to succeed in showing Defendants are deliberately indifferent and instead focus on a few superficial changes that have not in fact eliminated the risk of harm to people in Dublin. *See supra,* Section III. Plaintiffs have presented ample evidence of ongoing sexual harm between 2022 to the time of filing. *See supra,* Section IV(A)(1). Defendants attempt to assert that the sexual assault of named Plaintiffs S.L, A.H.R., A.R., are the only recent incidences of sexual abuse and that, because those officers were placed on administrative leave, there are no other risks of harm in the facility. While the horrifying experiences of the named Plaintiffs are paradigmatic examples of harm, they are not the only ones—Defendants ignore the 47 other declarations that show evidence of Defendants' consistent deliberate indifference time.

Plaintiffs have also presented evidence showing that the BOP Task Force did not address the harms. Many declarants report that even when they filed reports with the Task Force those reports were not kept confidential and were instead sent to Lieutenant Putnam, who repeatedly ignored reports, facilitated sexual abuse, and swept long time abuse under the rug. *See, e.g.*, ECF 10-6 ¶ 15). Others attempted to report their experience with sexual assault and harassment directly to BOP representatives of the Task Force, yet they heard nothing in response and no actions were taken. J.L.H.¶ 11 (spoke to a representative of a BOP delegation about ongoing abuse but that they never heard from them again); ECF 10-22 ¶ 12 (reported sexual abuse to a Task Force member, Ms. Tobin, but nothing was done); *see infra* Section II (A) & (C).

Finally, Plaintiffs have provided evidence that staff use the SHU, and other tactics to punish people who report sexual assault or to dissuade reporting on the front end. In response, Defendants argue that the use of the SHU does not violate the Eighth Amendment. However, Plaintiffs advance a narrower position: that retaliatory use of the SHU, property confiscation, and threats of disciplinary consequences, itself violates the constitution and, at the very least, evinces deliberate indifference to the harms people are trying to report. In support, Plaintiffs have submitted substantial evidence demonstrating these acts are ongoing and have a chilling effect. *See supra* Section III (D).

**B.     Plaintiffs Have Demonstrated That They Will Suffer Irreparable Harm Absent a Preliminary Injunction.**

Plaintiffs argue that they will suffer irreparable harm because the policies, customs, and practices currently operative at FCI Dublin place them at substantial risk of sexual abuse and retaliation. *See generally* ECF 10. Defendants make the same mistake in addressing Plaintiffs' irreparable harm argument that they do in addressing the merits of Plaintiffs' claims: they conflate citations to past harm with an assertion that the harm is not continuous. But Plaintiffs' brief and supporting evidence demonstrate that Plaintiffs face a current, ongoing risk of harm because of the policies, customs, and practices of FCI Dublin. As noted above, Plaintiffs have submitted close to fifty (50) declarations with their motion for preliminary injunction. Each declaration describes past harms that operated under the same policies, practices, and customs that currently exist at FCI Dublin and ongoing harms that continue today, including ongoing sexual abuse and harassment. *See* ECF 10-15 ¶ 19; ECF 10-9 ¶ 7; ECF 10-26 ¶ 7 (sexual abuse investigation in 2023); ECF 10-43 ¶ 5-8; ECF 10-24 ¶ 4-5; ECF 10-14 ¶ 9-10; ECF 10-31 ¶ 4, 7; ECF 10-44 ¶ 6-16; ECF 10-20 ¶ 6; ECF 10-25 ¶ 5; ECF 10-4 ¶ 6 (describing instances of sexual abuse and harassment from 2022-August 2023). While Defendants are incorrect that evidence of assaults and retaliation prior to 2022 have no bearing on the irreparable harm that Plaintiffs suffer, Plaintiffs submit Exhibit E with this brief: a non-exhaustive list of 173 incidents that occurred between Jan. 2022 and August 2023 as described in Plaintiffs original filings. Reply Declaration of Amaris Montes, Ex. E (detailing ongoing risks of sexual assault, retaliation, illness and injury from lack of mental health and medical care, and broken reporting mechanisms that allow abuse to continue with impunity). Defendants mislead the Court by claiming that there is no evidence of irreparable harm. There is recent evidence of ongoing risk of sexual assault, *see supra* IV (A), and retaliation (including retaliatory use of the SHU), *see supra* III (D).

As with all motions for preliminary relief, the situation at FCI Dublin continues to unfold. Plaintiffs moved for a Preliminary Injunction on August 17, 2023, however due to failures in securing representation, there have been multiple extensions of the hearing date. Reply Declaration of Kara Janssen ¶¶ 3-7. Since filing, Plaintiffs' Counsel has been in regular contact with many

individuals currently incarcerated at FCI Dublin regarding ongoing harassment and retaliation including recent abuse. *Id*. ¶¶ 5, 8-9. While Plaintiffs should prevail on the existing record, to the extent the Court wishes to examine evidence concerning incidents that occurred during the period of government delay, Plaintiffs' counsel would be ready to furnish witnesses for a brief evidentiary hearing where the Court can hear from Plaintiffs' and Defendants' declarants. Alternatively, Plaintiffs would be ready to furnish the Court with additional documentary evidence which was not submitted here to ensure that the long-delayed hearing on this matter could proceed.

### C.   Preliminary Relief Here Would Be In the Public Interest and the Balance of Equities Cuts In Favor of Plaintiffs.

Plaintiffs also satisfy the remaining factors for granting a preliminary injunction because the requested relief would be in the public interest and because the balance of equities weighs heavily in favor of Plaintiffs. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Defendants attempt to rebut the presumption which favors Plaintiffs by calling on the Court to defer to prison administrators. But as then-Judge Kennedy noted "enforcement of the eighth amendment is not always consistent with allowing complete deference to all administrative determinations by prison officials." *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir. 1979); *accord Brown v. Plata*, 563 U.S. at 511. Put another way: when a longstanding pattern of systemic problems at a facility has resulted in mass sexual assault and retaliation against incarcerated people, and Plaintiffs come forward with evidence that abuse and retaliation continues while facility policies, customs, and practices remain the functionally the same, prison administrators cannot hide facts under blanket deference. Putting an end to the rampant abuse at FCI Dublin is unquestionably in the public interest and any hardship to the government pales in comparison to the bodily and psychological harm described by people at FCI Dublin. *See supra* Section IV(A) & (B).

### V.   THE PRISON LITIGATION REFORM ACT DOES NOT BAR PLAINTIFFS' REQUESTED RELIEF.

The "needs-narrowness-intrusiveness" requirement appears several times in the PLRA but does not change the requirements that were in place for entering injunctions against prison officials before the PLRA. *See, e.g.*, *Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir. 1986) (explaining,

16

before the PLRA, that "[i]njunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation."). Recognizing this, the Ninth Circuit has held that the PLRA "codifies existing law and does not change the standards for determining whether to grant an injunction." *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001). Defendants cite a single source of authority holding that the needs-narrowness- intrusiveness imposes any additional requirements whatsoever: the Eleventh Circuit's holding that the statute mandates that courts go provision-by-provision to ensure that each aspect of an injunction satisfies needs-narrowness-intrusiveness. ECF 46 at 26 (citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1278 (11th Cir. 2020)). The Ninth Circuit, however, has expressly rejected this requirement. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010) ("the language of the PLRA does not suggest that Congress intended a provision-by-provision explanation of a district court's findings, and there is no practical reason why we should read such an obligation into the statute."). In the Ninth Circuit, "courts must do what they have always done when determining the appropriateness of the relief ordered: consider the order as a whole." *Id.*

Plaintiffs' requested relief is narrowly tailored to prevent serious risk of sexual abuse and retaliation at FCI Dublin. Plaintiffs' requests—a special master, outside medical care, limitations on retaliation, and reporting requirements—are run-of-the-mill requests in systemic prison cases and have been regularly upheld as complying with the PLRA. *See Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir. 2018) (holding that an order requiring the prison system to send patients to outside providers met the PLRA requirements); *see also Armstrong v. Brown*, 768 F.3d 975, 984 (9th Cir. 2014) (holding that a detailed accountability mechanism for fixing violations, including reporting to plaintiff class's counsel, met the PLRA requirements); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1098 (9th Cir. 2010) (holding that not just a special master to oversee one prison, but a *receiver* to oversee health care at the *entire state system* met the PLRA requirements); *Gomez*, 255 F.3d at 1130 (holding that order preventing retaliation of individual plaintiffs fit within the scope of the PLRA).

Defendants' arguments that the requested relief does not match the assessed harms is also unavailing. Contrary to Defendants' assertions, ECF 46 at 28, the requested relief of offsite medical care, a process for property return, and attorney access are all targeted at limiting assaults and

17

retaliation. Onsite medical staff have been the source of numerous assaults, *see, e.g.*, ECF 10-44 ¶¶ 6-15, and thus transferring care offsite is targeted at eliminating the opportunity for BOP medical providers at Dublin to sexually abuse their patients. Similarly, property confiscation is a common form of retaliation at Dublin and increased attorney access provides an avenue for reporting abuse.

Plaintiffs' request to temporarily end the use of the SHU is also aimed at ending retaliatory practices. Defendants only cite the legal conclusions of Agostini and general policies on the SHU as reasons to limit Plaintiffs' requested relief. ECF 46 at 27. These conclusions are due no weight and the referenced policies are grossly deficient. *See supra* Sections II & III. Further, limitations on the use of solitary confinement are well within the PLRA injunctive scope limitation because it would be necessary to remedy the constitutional issue here. 18 U.S.C. § 3626(a)(1)(A). Further, Plaintiffs requested preliminary relief lasts only until the Court can ensure, as a matter of fact, that the SHU is not being used as a form of retaliation.

To the extent that Defendants are correct that any preliminary injunctive limitation be limited to 90 days under the PLRA, Plaintiffs agree to site evaluations every 90 days and reporting by a special master to this Court to determine if continued relief is warranted. 18 U.S.C. § 3626 (a)(2).

Defendants' arguments all boil down to an assertion that they should be allowed to have their cake and eat it too. On one hand they argue that the relief requested by Plaintiffs is unnecessary because Defendants have already implemented the required changes, and on the other hand they argue that implementing the relief requested by Plaintiffs would be overly burdensome and intrusive. It cannot be both.

## CONCLUSION

Because Plaintiffs meet each element of the test for preliminary injunction and because Defendants have failed to rebut the evidence martialed by Plaintiffs in support of their motion, Plaintiffs respectfully request that their Motion for Preliminary Injunction be granted and that this Court enter an order granting the requested relief.

DATED: November 24, 2023

Respectfully submitted,

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
RIGHTS BEHIND BARS
ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Oren Nimni*

Attorneys for Plaintiffs

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2023, a true and accurate copy of the foregoing has been served on all counsel of record via this Court's CM/ECF electronic filing system and has been caused to be mailed via first class post to all non-registered parties.

/s/ Oren Nimni
Oren Nimni
RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
Telephone: (202) 540-0029
oren@rightsbehindbars.org
