EXHIBIT B



**ROSEN BIEN**
**GALVAN & GRUNFELD** LLP

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Kara J. Janssen
Email: kjanssen@rbgg.com

October 31, 2023

<u>VIA EMAIL ONLY</u>

Michelle Lo
Chief Civil Division
Pamela T. Johann
Assistant United States Attorney
United States Attorney's Office for the
Northern District of California
450 Golden Gate Avenue, Box 30655
San Francisco, CA 94102
Michelle.Lo@usdoj.gov
Pamela.Johann@usdoj.gov

Jesse Laslovich
United States Attorney
United States Attorney's Office for the
District of Montana
2601 2nd Avenue N., Suite 3200
Billings, MT
Jesse.Laslovich@usdoj.gov

Re:    FCI Dublin Investigation
       <u>Our File No. 0672-07</u>

Dear Ms. Lo, Ms. Johann, and Mr. Laslovich:

We write to raise concerns about ongoing staff abuse and retaliation and further deterioration of conditions at FCI Dublin since we filed our complaint on August 16, 2023. We also write to request clarity about who is representing the Bureau of Prisons and other federal defendants in the ongoing litigation, and to whom we should address our concerns moving forward.

We contacted BOP Regional Counsel in early September about several time-sensitive concerns related to FCI Dublin but were told to address our concerns to counsel for the federal defendants. At the time, no counsel had been identified. We understand that as of October 17, 2023, this matter has been assigned to the United States Attorney's Office for the District of Montana but have received no further information. We have copied the United States Attorney for that office here. Please advise if specific Assistant United States Attorneys are appointed to this case, or if there are other attorneys we should be communicating with.

**Since we filed our complaint on August 16, 2023, we have heard multiple reports of recent incidents of staff sexual abuse and sexual harassment at FCI Dublin.** Multiple incarcerated people have reported that they were subjected to

Michelle Lo, Pamela T. Johann, Jesse Laslovich
October 31, 2023
Page 2

inappropriate and overly invasive strip searches following legal or family visits, without cause.  In some cases, these strip searches were conducted by officers who incarcerated people have recently reported for PREA violations.  We have also received multiple reports of officers intentionally walking in on incarcerated people showering or on the toilet which has made people feel violated and exposed.  When incarcerated people have attempted to cover up or block the sight of officers to retain their privacy while undressed, officers have issued disciplinary tickets.  One individual, at the direction of the facility psychologist and an SIS official, recently submitted a PREA report about an overly invasive search.  The day after she filed her report, staff disciplined her for filing a false PREA report.  While disciplining her, staff asked her "What do you want to keep?"  When she answered that she just wanted to be able to continue speaking to her family, staff intentionally removed her right to calls, emails, and visits for 30 days.

Additionally, BOP staff members who were recently accused of sexual abuse by multiple people have returned to work at FCI Dublin and have continued to harass and retaliate against the incarcerated people who reported their abuse.

**Our clients and putative class members have also faced retaliation as a result of filing the lawsuit.**  Numerous named plaintiffs and declarants report that staff have harassed and questioned them about their involvement in the case, and have unnecessarily searched their rooms and property, including looking through legal paperwork prior to meeting with legal advocates.  Multiple declarants have been disciplined without cause, including one declarant who has received over 15 disciplinary charges since July 2023.  She is also unable to speak to her children and has lost good time credits that have affected her release date. Now this declarant feels unable to leave her cell for any programming because she lives in fear that officers will continue to retaliate against her by issuing more disciplinary tickets which will continue to affect when she can see or speak to her family.

One named plaintiff was fired from her facility job shortly after the litigation was filed.  A declarant was asked by the psychologist what was "untrue" in the complaint.  One incarcerated person was called to a lieutenant's office and told to stop giving other incarcerated people copies of the complaint, "for her protection."  She was then told by another staff member that she could be placed in the SHU for sharing the complaint.

Another declarant who was transferred after filing her FTCA administrative filing was placed on suicide watch without cause in retaliation, claiming she had hidden something inside her body.  While on suicide watch they subjected her to humiliating conditions, forcing her to conduct multiple bowel movements in front of officers, only to find that she was hiding nothing.

Michelle Lo, Pamela T. Johann, Jesse Laslovich
October 31, 2023
Page 3

We also continue to hear reports of staff threatening to "call ICE" on noncitizens who are incarcerated at FCI Dublin and do not yet have immigration holds, including individuals who have spoken out about conditions at the facility. BOP staff are not immigration officials, and this practice is likely illegal, and is particularly troubling given that staff have explicitly targeted immigrant women for abuse and there are serious allegations that BOP officials have threatened immigration consequences or assistance in exchange for sexual contact.

Multiple incarcerated clients, including named plaintiffs, have been suddenly and involuntary transferred in retaliation for reporting abuse or being involved in the lawsuit. During the transfer process, our clients have lost their property and have struggled to communicate with attorneys and other supporters. Several individuals have also been subjected to further retaliation at their new institution due to their involvement in the case.

**We also continue to face barriers in accessing our clients at FCI Dublin, and at other BOP institutions following transfers.** Members of our team and our partners have been unable to schedule legal calls at FCI Dublin—facility staff have either failed to respond to requests for legal calls, or responded saying that the facility no longer facilitates legal calls outside of the pilot phone program. Members of our team and our partners have also faced difficulty and long delays adding their phone numbers to the FCI Dublin pilot legal phone line. Weeks after we filed our lawsuit, FCI Dublin instituted, for the first time ever, an arbitrary limit on the number of people we are permitted to visit on a single day. FCI Dublin staff also refused entry to a member of our legal team without explanation for weeks, then suddenly reversed course (also without explanation) hours after our colleagues at the American Civil Liberties Union contacted them.

We continue to experience difficulties in accessing our clients after they are transferred to other facilities. For example, attorneys on our team have attempted to schedule legal calls with survivors who were transferred to FCI Danbury. Officers at FCI Danbury have blanketly denied our requests for legal calls purportedly because our legal representation is "not related to their federal offense." As we are sure you are aware, BOP cannot restrict access to legal counsel in such a way–our clients have the right to communicate with their attorney through private confidential legal calls. This is especially necessary because some of our attorneys are not local to many of these facilities to conduct legal visits–for example, Rights Behind Bars is located in Washington, DC and can only communicate with most clients through legal calls. We have faced logistical impediments intended to obstruct access to our clients in other facilities. For example, in early September, RBB had to make several attempts to schedule a confidential legal call with a client at FCI Aliceville. For two days in a row, RBB attempted multiple times each day to schedule a call but was routed to numbers that

Michelle Lo, Pamela T. Johann, Jesse Laslovich
October 31, 2023
Page 4

either kept ringing or suddenly disconnected.  It took an inordinate amount of time and
persistence for hours over several days to schedule a call.  This is especially troubling
because we have heard numerous reports from clients at FCI Dublin and other BOP
facilities of incoming legal mail being delayed and opened outside the presence of the
recipient, and outgoing legal mail never arriving at the destination.  We have also been
told that individuals are being blanketly denied stamps, paper, envelopes, and copy cards
to send any mail out, including legal mail.  As such, there is no consistent way for
individuals to have consistent access to their legal counsel.

     **Conditions at FCI Dublin also continue to deteriorate**.  Multiple people at FCI
Dublin were recently infected with MRSA, and we have heard reports that infected
individuals were not properly quarantined and did not receive adequate healthcare.  We
have also heard of unsanitary conditions, including contaminated water and food
resulting in bacterial infections.  This is especially dire because individuals have reported
that the commissary system has been closed and no orders of products have been made
for weeks so individuals cannot access sanitary food on their own at all, nor obtain
sanitary or hygiene items.

     We receive reports of medical neglect at FCI Dublin on a nearly daily basis.
Clients and putative class members have shared that there is no dentist at the facility, that
it takes weeks or months to be seen by facility medical staff, and that they are unable to
access necessary outside medical care.  We have also heard multiple accounts of medical
staff providing people with expired medications and providing only Tylenol regardless of
the level of pain, and suddenly taking people off of psychotropic medications without
explanation.

     We have also reports from incarcerated Native people at Dublin that they have
faced religious discrimination and retaliation.  For example, Native individuals have
described that after they reported sexual harassment and abuse they were specifically
targeted and prevented from going to their Native ceremonial practice.  Individuals have
also been subject to retaliatory searches where their Native religious items were
confiscated, destroyed, or disposed of.  These kinds of retaliatory actions cannot
continue, as they are a violation of the First Amendment as well as the Religious
Freedom Restoration Act (RFRA).   It is also our understanding that Native people are
systematically unable to access sweat lodge and are currently banned from using tobacco,
an essential religious medicine.  As you know, BOP policy requires federal officials to
allow Native people to access sweat lodge and tobacco for religious purposes.  *See*
Program Statement § 551.160 at 4(a)(stating that tobacco use is permitted for religious
purposes); Program Statement P5360.09 at 20(f)(requiring institutional policy statements
for the process in facilitating sweat lodge attendance).  Implementing a prohibition on
these services not only violates this BOP policy, but also contravenes the First

Michelle Lo, Pamela T. Johann, Jesse Laslovich
October 31, 2023
Page 5

Amendment and RFRA.  As such, BOP officials must ensure that Native people can access their religious items and ceremonial practices as required under law.

**We request a meeting as soon as possible to discuss these concerns and what immediate steps the BOP will take to end future abuse and retaliation.  Please advise as to your earliest availability to discuss further.  We request a response as soon as possible but no later than November 7, 2023, given the urgency of these issues.**

Finally, in light of the litigation and given the recent assignment, **we want to remind your clients of their obligation to preserve all documents, videos, tangible items, and electronically stored information ("ESI") potentially relevant to the claims in that suit.**  You and your clients are hereby given notice not to destroy, conceal or alter any paper or electronically stored information as defined by the Federal Rules of Civil Procedure.  This obligation began as soon as it was reasonably likely that litigation would be filed and continues today.  This includes but is not limited to email messages, files and other data generated by and/or stored on your client's computers and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voice mail, which contain any information relating to this matter.  Please immediately suspend any policies or protocols that may lead to any destruction of relevant discoverable files and take steps to identify and appropriately retain and preserve all pertinent information.

Please take note that documents and the storage media on which relevant, discoverable files reside contain information beyond that which may be found in printed documents.  Therefore, even where a paper copy exists, we will seek all documents in their electronic form along with information about those documents contained on the media.  We will also seek paper printouts of those documents that contain unique information after they were printed out, such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions, along with any paper documents for which no corresponding electronic file exists.

Although it is your responsibility to identify and appropriately preserve and retain all relevant information, we have specifically identified the following steps that should immediately be taken in regard to all documents and personal computers used by you and any BOP employees or their agents or contractors:

- As to fixed drives attached to such computers: (i) a true and correct copy is to be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including

Michelle Lo, Pamela T. Johann, Jesse Laslovich
October 31, 2023
Page 6

hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; (iii) such copies and listings are to be preserved until this matter reaches its final resolution; and (iv) immediate steps should be taken to prevent modification, destruction or concealment of electronically stored information due to automatic or manual deletion of files, overwriting files, using data shredding and erasure applications, defragmenting, reimaging, encrypting, compressing, or physical damage.

- All floppy diskettes, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of delivery of this letter containing any electronic data relating to this matter are to be collected and put into storage for the duration of this lawsuit.

With regard to paper or electronic data created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and you and the BOP are to take whatever steps are appropriate to avoid destruction of evidence.

In order to ensure that the BOP's obligation to preserve relevant records will be met, please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter. We will view any subsequent unavailability of any of these materials as the deliberate spoliation of evidence material to a federal civil rights lawsuit against the BOP.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Kara J. Janssen*

By: Kara J. Janssen
Senior Counsel


RIGHTS BEHIND BARS

*/s/ Oren Nimni*

By: Oren Nimni
Litigation Director

[4383102.3]

Michelle Lo, Pamela T. Johann, Jesse Laslovich
October 31, 2023
Page 7

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE

*/s/ Susan Beatty*

By:  Susan Beatty
     Senior Attorney

KJJ:fgl

[4383102.3]