JESSE LASLOVICH
United States Attorney
MADISON L. MATTIOLI
  MT Bar No. 36411284
ABBIE J.N. CZIOK
  MT Bar No. 55781377
Assistant U.S. Attorneys
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5269 – Madison
        (406) 457-5268 – Abbie
Fax: (406) 457-5130
Email: madison.mattioli@usdoj.gov
       abbie.cziok@usdoj.gov

MARK STEGER SMITH
  MT Bar No. 4160
TIMOTHY A. TATARKA
  CA Bar No. 277219
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin Federal Courthouse
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667 – Mark
        (406) 247-4642 – Tim
Fax: (406) 657-6058
Email: mark.smith3@usdoj.gov
       tim.tatarka@usdoj.gov

Attorneys for Federal Defendants.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs<br>  v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity; OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>    Defendants. | CASE NO. 4:23-CV-04155-YGR<br><br><br><br>**FEDERAL DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

II.     FACTUAL BACKGROUND ............................................................................. 2

III.    CLASS CERTIFICATION STANDARD ....................................................... 6

IV.    ARGUMENT ...................................................................................................... 7

     A. Legal Background for Commonality, Typicality, and General
       Applicability................................................................................................ 7

     B. Legal Background for Analysis of Class Certification .................................. 8

     C. Plaintiffs have not shown that common questions predominate. ................ 10

CONCLUSION........................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bowerman v. Field Asset Servs., Inc.*,
    60 F.4th 459 (9th Cir. 2023) ........................................................................ 8, 14

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .......................................................................................... 6

*Davidson v. O'Reilly Auto Enterprises, LLC*,
    968 F.3d 955 (9th Cir. 2020) ............................................................................. 6

*Doe v. Los Angeles Unified Sch. Dist.*,
    No. 216CV00305CASJEMX, 2017 WL 797152 (C.D. Cal. Feb. 27, 2017) ............. 3

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ............................................................................ 1, 7, 9, 10

*General Telephone Co. v. Falcon*,
    457 U.S. 147 (1982) .......................................................................................... 8

*Graves v. Arpaio*,
    623 F.3d 1043 (9th Cir. 2010) ........................................................................ 14

*Hanlon v. Chrysler Corp*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 8

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................ 8

*Hernandez v. Cnty. of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015) ...................................................................... 15

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ..................................................................... 9, 15

*Johnson v. City of Grants Pass*,
    72 F.4th 868 (9th Cir. 2023) ........................................................................... 16

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .......................................................................... 9

*Lyon v. U.S. Immigr. & Customs Enforcement,*
   171 F. Supp. 3d 961 (N.D. Cal. 2016) ............................................................. 13, 14

*Maney v. Brown,*
   516 F. Supp. 3d 1161 (D. Or. 2021) ...................................................................... 14

*Nieves v. Bartlett,*
   139 S. Ct. 1715 (2019).................................................................................. 7, 9, 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
   31 F.4th 651 (9th Cir. 2022) ..................................................................................... 9

*Owino v. CoreCivic, Inc.,*
   60 F.4th 437 (9th Cir. 2022) ................................................................................... 15

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ............................................................ 1, 7, 9, 15, 16

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ......................................................................................... 6, 8, 9

*Watison v. Carter,*
   668 F.3d 1108 (9th Cir. 2012) ..................................................................... 7, 9, 13

*Willis v. City of Seattle,*
   943 F.3d 882 (9th Cir. 2019) ................................................................................. 15

Rules

Fed. R. Civ. P. 23 ........................................................................................... 6, 7, 8, 9

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Plaintiffs seek to certify a class in relation to their Complaint for injunctive relief. The standard for such relief based on an Eighth Amendment claim is high. Plaintiffs must show that Bureau of Prisons officials, at the time the suit was filed, knew of, and disregarded, an excessive risk to inmate health or safety and that prison officials will continue to disregard that risk "during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Under this prospective standard, Plaintiffs have not and cannot show the common questions predominate. *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims.").

In 2022, following Department of Justice investigations that uncovered many instances of sexual assault included in Plaintiffs' allegations at FCI Dublin, the BOP took dramatic steps to protect inmates from the risk of sexual assault by replacing the entire management team, enforcing existing policies that had been criminally undermined, and providing new means of reporting sexual assault while counteracting the misuse of authority to prevent reporting.

Plaintiffs' declarations attached to their preliminary injunction motion raise only seven incidents of possible sexual misconduct in 2023, after these changes began. Discounting claims made only in anonymous declarations reduces that number even further. A close examination of those remaining claims demonstrates that individual issues of fact, not common questions of "FCI Dublin's uniform policies, customs and practices concerning sexual assault," predominate.

Federal Defendants acknowledge that sexual assaults occurred—several perpetrators have been and are being federally prosecuted for those crimes. The question for the Court under *Farmer*, however, is whether Plaintiffs have met their burden of showing that questions relating to the prison's current policies predominate over the specifics of individual inmates' constitutional claims. In examining those claims—the record of which will be further developed at the preliminary injunction hearing—it becomes apparent that specific fact questions predominate:  The effect of the policies at issue are unique to each individual's circumstances, requiring a mini-trial for each claimant. This defeats any judicial efficiency of class treatment.

## I.  FACTUAL BACKGROUND

This case arises from instances of sexual misconduct beginning in 2020 at FCI Dublin. Beginning in 2020, the Department of Justice launched an investigation into FCI Dublin which "revealed significant findings of wrongdoing by multiple correctional officers at that facility."[1] The investigation, led by DOJ, through the Office of Inspector General and the FBI, continues to this day. In June 2021, the U.S. Attorney's Office for the Northern District of California charged the first of a series of prison officials with crimes related to the sexual abuse of inmates at the facility.

In 2022, the managerial staff at FCI Dublin was completely replaced. (Agostini Declaration, Doc. 46-1 at ¶ 7). Experienced managers were brought in from other facilities to review FCI Dublin's operations and make any necessary operational changes. Many of the changes are still works in progress, but new management staff continue to actively ensure compliance with policy. (*Id.* at ¶¶ 16, 20, 24).

Plaintiffs filed a Complaint on August 16, 2023, alleging constitutional violations and seeking injunctive relief. (Doc. 1). On August 17, 2023, Plaintiffs filed a motion for preliminary injunctive relief and a motion seeking to certify a class for the injunctive relief claims. (Docs. 10, 11). Attached to the motion for preliminary injunction were forty-seven anonymous declarations. In Plaintiffs' motion for class certification, they primarily relied on these declarations, supplemented by a Senate Report, (Doc. 11-1 at 40) and a Report from a DOJ Working Group (Doc. 11-1 at 109).

The forty-seven declaration are largely anonymous—"largely" because Plaintiffs recently sent a draft witness list for the upcoming evidentiary hearing, and Defendants have now cross-referenced those names with the declarations. As a result, Defendants believe they have matched

---

[1] United States Attorney's Office, Northern District of California, Press Release (https://www.justice.gov/usao-ndca/pr/two-more-dublin-federal-correctional-officers-plead-guilty-sexually-abusing-multiple) (last visited December 28, 2023).

identities for fifteen of the declarations,[2] while the remaining thirty-two are still anonymous.[3] *See Doe v. Los Angeles Unified Sch. Dist*., No. 216CV00305CASJEMX, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017) (declining to consider the anonymous declarations offered in support of briefing, even where the court granted plaintiffs' motion to proceed anonymously).

Of the non-anonymous declarations, only four allege inappropriate conduct even remotely of a sexual nature occurring in 2023. R.B. reported that an officer shined a flashlight on her during rounds while she was performing an enema. (Doc. 10-2). J.L. discusses an event when Lieutenant Jones pat searched a number of inmates in front of male officers. (Doc. 10-3 at ¶ 9). A.S. alleges that an officer has ordered her to unzip her sweatshirt on a number of occasions. (Doc. 10-6 at ¶ 22). T.D.M. alleges that an officer shined a flashlight on her and opened the curtain while she was in the shower. (Doc. 10-25 at ¶ 5). Of the remaining anonymous declarations, there are only three more events of possible sexual misconduct from 2023. The majority of allegations of sexual misconduct are from 2020 through 2022, occurred largely in a single division isolated during the COVID lockdown, and involve officers that no longer work at FCI Dublin because they have been criminally prosecuted. Doc. 46-1, ¶¶ 36-38.

As to healthcare allegations, numerous declarants state that "[t]here is little to no medical care available to survivors of sexual abuse and assault at FCI Dublin," but then discuss medical events entirely unrelated to sexual abuse and highly particularized to individual health issues. (*See e.g.* Docs. 10-30 (epilepsy treatment), 10-34 (treatment of boils)). Of the potentially identifiable declarants, the claims of inadequate treatment are highly idiosyncratic, factually contested, and implicate multiple distinct policies not subject to conglomeration. For example,

---

[2] *See* Docs. 10-2 (named Plaintiff), 10-3 (named Plaintiff), 10-4 (named Plaintiff), 10-5 (named Plaintiff), 10-6 (named Plaintiff), 10-7, 10-14 (named Plaintiff), 10-15 (named Plaintiff), 10-19, 10-23, 10-25, 10-27, 10-28, 10-30, 10-35.

[3] The Court indicated it would not give weight to anonymous declarations not subject to cross examination at the preliminary injunction hearing. December 18, 2023, Status conference. Reliance on such declarations is even less appropriate with respect to class certification, which is generally subject to testing through the discovery process.

J.M. wrote, "The lack of medical care has caused my fibromyalgia to flare up and my left side to be paralyzed at times and I was in excruciating pain. As a result, I was given cortisone shots, but they stopped providing them and I still suffer from pain." (Doc. 10-4 at 17). ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

The purported deficiencies related to mental healthcare implicate different policies and, again, raise individualized issues with individualized explanations. J.L wrote that, "There is no confidential mental health care available to survivors of sexual abuse and assault at FCI Dublin. The only outside mental health counseling available to people at FCI Dublin is through Tri-Valley Care." (Doc. 10-3 at ¶ 11). ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

███████████████████████████████████████

████████████████████████████████████████████████. She expressed that "the BOP doctor took me off my mood stabilizer, Trileptal, which  have been on for years and I still do not have it back. This has left me in significant distress making me extremely depressed, anxious, and unable to function." (Doc. 10-28 at ¶ 11). ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

As to retaliation, the identifiable declarations generally allege that "everyone" knows that retaliation occurs, and most provide almost no details that allows evaluation of the event. J.M. generally reported that after "Warden Garcia and his colleagues" were terminated for having

sexual relations with inmates, "the staff continued to retaliate . . . by taking away recreation times, conducting unnecessary and harassing room searches and limiting our access to calls . . . ." (Doc. 10-4 at ¶ 11). The allegation lacks any specificity that the alleged retaliatory acts occurred close in time or that the acts were done by individuals that had knowledge of the terminations. Moreover, each situation implicates different prison policies and would require individualized factual analysis of whether legitimate goals of the correctional institution were advanced. A.H.R. reported that she reported an officer, and after that she has been targeted. She was drug tested without a reason, which "felt like retaliation." Again, drugs remain a significant issue at FCI Dublin, random drug testing is required by policy[4], there is no indication that these were close in time, and given the ongoing drug issues at FCI Dublin, there are other potential explanations for the drug testing.

Plaintiffs also rely on the Senate Report and DOJ Working Group Report in support of the sexual misconduct claims in their class certification. Notably, however, the Senate Report recognized that while there had been significant issues at FCI Dublin, changes were being made in late 2022: "In addition to BOP implementing reforms, DOJ and BOP leadership have taken steps—coinciding with the Subcommittee's investigation—to address the issue of sexual abuse of female prisoners by male employees." (Doc. 11-1 at 71).

Based on the foregoing, Plaintiffs propose the following class be certified in support of their claims for injunctive relief:

> All people who are now, or will be in the future, incarcerated at FCI Dublin and subject to FCI Dublin's uniform policies, customs, and practices concerning sexual assault, including those policies, customs, and practices related to care in the aftermath of an assault and protection from retaliation for reporting an assault.

(Doc. 11 at 7).

---

[4] U.S. Department of Justice, Federal Bureau of Prisons, *Urine Surveillance and Narcotic Identification, No. 6060.08* (https://www.bop.gov/policy/progstat/6060_008.pdf) (Last visited December 28, 2023).

Plaintiffs further contend the following four questions demonstrate the commonalities of the class:

>(1) Whether Defendants' policies and practices place members of the class at a substantial risk of harm because they permit sexual assault to occur, provide ineffective reporting mechanisms, fail to impose accountability, and facilitate retaliation;

>(2) Whether Defendants, who have known about staff sexual abuse and harmful conditions at FCI Dublin for years, have been deliberately indifferent to that risk;

>(3) Whether Defendants have abdicated their oversight obligations to ensure adequate medical and mental health responses have been taken to mitigate the risk of harm to the class; and

>(4) Whether, as part of their denial of effective reporting mechanisms, Defendants' denial of access to counsel violates the constitutional rights of the class.

(Doc. 11 at 13).

## II. CLASS CERTIFICATION STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). To justify a departure from that rule, the Plaintiffs must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequate representation—limit the class claims to those that are fairly encompassed by the named plaintiff's claims. *Dukes*, 564 U.S. at 349.

Plaintiffs must also prove one of the subparts of Rule 23(b). *Davidson v. O'Reilly Auto Enterprises, LLC*, 968 F.3d 955, 967 (9th Cir. 2020). Because the plaintiffs seek class certification under Rule 23(b)(2), (Doc. 11 at 6), they must establish that defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." F.R.C.P. 23(b)(2).

### III. ARGUMENT

Plaintiffs' request for class certification must be analyzed within the context of the claims made in their Complaint, which was for injunctive relief through the Eighth and First Amendments. The standard for such relief based on the Eighth Amendment is very specific. Plaintiffs must show that BOP officials, at the time the suit was filed, knew of, and disregarded, an excessive risk to inmate health or safety and that prison officials will continue to disregard that risk "during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846. Under this prospective standard, Plaintiffs have not shown and cannot show that common questions predominate. *Parsons*, 754 F.3d at 676 ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims."). Plaintiff also makes First Amendment claims, which are factually intensive as proof is required of "an official tak[ing] adverse action against someone based on [a] forbidden motive," and that "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). In the prison setting specifically, retaliation translates into five elements: (1) the retaliated against conduct is protected; (2) defendant took an adverse action against the plaintiff; (3) a causal connection exists between the adverse action and protected conduct; (4) the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities; and (5) the authority's retaliatory action did not advance legitimate goals of the correctional institution. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). In this case, the retaliation claims are so fact-intensive that they cannot be common and are therefore not amenable to class certification.

### A. Legal Background for Commonality, Typicality, and General Applicability.

The Federal Defendants dispute that Plaintiffs satisfy the commonality and typicality portions of Rule 23(a), along with "generally applicable" requirement in Rule 23(b)(2). The crux of Plaintiffs' motion for class certification is commonality—the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has recognized that this language is easy to misread, since "[a]ny competently

crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349 (citation omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted). Class certification is inappropriate when "individualized questions . . . will overwhelm common ones." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023).

Typicality asks whether "the claims or defenses of the representative parties are typical" of the class. Fed. R. Civ. P. 23(a)(3). *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998). The Ninth Circuit has established that the "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The Supreme Court has recognized that the "commonality and typicality requirements of Rule 23(a) tend to merge," which is understandable because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349, n.5 (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982)).

Federal Rule of Civil Procedure 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." *Id*. This inquiry is also like the commonality analysis, as it looks to whether there are similar issues among the class individuals.

**B. Legal Background for Analysis of Class Certification**

When a party seeks to prove the existence of a class, they must satisfy their burden of proof, which is analyzed in the context of the underlying claims. Thus, Plaintiffs must present sufficient evidence proving commonality, typicality, and general applicability in the context of

the Eighth Amendment's forward-looking standard and the First Amendment's fact-intensive one.

"The party seeking class certification bears the burden of demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017). Rule 23 does not provide a mere pleading standard; rather, Plaintiffs "must affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350–51 (emphasis in original). The Supreme Court requires "[s]ignificant proof" of the elements in Rule 23, *id*. at 353, which the Ninth Circuit has interpreted as a preponderance standard. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 665 (9th Cir. 2022).

This analysis must be performed in the context of the underlying action. For commonality, the "analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1165 (9th Cir. 2014). This rigorous analysis will necessarily "entail some overlap with the merits of the plaintiff's underlying claim" because it generally "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 564 U.S. at 351; *see Parsons*,754 F.3d at 676 ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims.").

Again, Plaintiffs class certification request must be analyzed in the context of the Eighth Amendment and First Amendment.[5] *Farmer*, 511 U.S. at 846; *Nieves*, 139 S. Ct. at 1722; *Watison*, 668 F.3d at 1114  Plaintiffs fail do not meet their burden.

---

[5] Plaintiffs also raise a Fifth Amendment claim in the Complaint, but the facts do not clearly support such a claim, and Plaintiffs seem to have abandoned this theory in their preliminary injunction and class briefing.

**C. Plaintiffs have not shown that common questions predominate.**

Plaintiffs' arguments suffer from two related infirmities: (1) Plaintiffs claims turn on fact-intensive inquiries, both as to whether any Eighth Amendment violation occurred and to whether prison officials were deliberately indifferent to such a risk; and (2) Each incident, even if proven, implicates a variety of different policies, practices, and customs that are not amenable to general resolution. In short, Plaintiffs' claims raise a myriad of individual questions that do not resolve into common answers "apt to drive the resolution of the litigation."

First, Plaintiffs claims turn on fact-intensive inquiries. Importantly, the relevant evidence about sexual misconduct and provision of healthcare must be analyzed in the context of the Eighth Amendment, which requires Plaintiffs to show that BOP officials, at the time the suit was filed, knew of, and disregarded, an excessive risk to inmate health or safety *and* that prison officials will continue to disregard that risk "during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846. Plaintiff has not put forth evidence that the BOP officials at FCI Dublin at the time the suit was filed knew of and disregarded an excessive risk to inmate health or safety regarding sexual misconduct or healthcare. Most of the evidence Plaintiffs set forth about sexual misconduct is from 2020, 2021, and 2022. BOP participated in the prosecutions of the alleged perpetrators from those years.

The more recent allegations of sexual misconduct are exceedingly few—only four declarations with identifiable declarants raise events from 2023. (Docs. 10-2, 10-3, 10-6, and 10-25). And each is unique and implicates very different facts and policies that prevent any conglomeration into a category of "sexual assault."

R.B. reported that an officer shined a flashlight on her while she was performing an enema in March 2023. (Doc. 10-2). The inmate raised the privacy issues with the facility, which responded in writing with concessions that were possible and those that were not in light of the need not to leave inmates unmonitored for up to two hours. The resolution of this claim will necessary be driven by the unique factual situation, as well as the adequacy of the prison's response; it does not present common issues with any of the other inmates.

J.L. claims a female employee pat searched inmates after they had been working outside and performed the searches in front of male officers. (Doc. 10-3). Other declarations indicate that only the outer layer of their clothing was removed. (Doc. 10-26 at ¶ 7). The situation is not similar to any others referenced in the complaint or declarations. The pat down policy implicated turns on a variety of situational factors that require factual inquiry.[6] In addition, one of the employees involved in this incident was put on leave, raising potential factual issues related to deliberate indifference. Once again, the resolution of the claim will be driven by unique facts regarding the incident and policies involved and will not be driven by generic policies relating to sexual assault.

T.D.M. alleges that an officer shined a flashlight on her and opened the curtain while she was in the shower in June 2023. (Doc. 10-25 at ¶ 5). This incident invokes different monitoring policies and because the event was investigated, further individualized issues regarding the adequacy of the prison's response with respect to the deliberate indifference standard.

Finally, A.S. alleges that an officer has ordered her to unzip her sweatshirt on a number of occasions. (Doc. 10-6 at ¶¶ 22–23). A.S. stated in their declaration that they always keep their sweatshirt zipped to their neck. It is unclear from the declaration whether A.S. was clothed beneath the sweatshirt, and if not, whether the guard knew what the individual was wearing. As explained in Agostini's declaration and to be further explained at the evidentiary hearing, there is currently a significant drug issue at FCI Dublin. Illegal drugs are moving among the inmate population, and the facility is trying to keep the issue under control. (Doc. 46-1 at ¶ 27). Visual inspections under clothing are a necessary measure to prevent smuggling. Once again, individual fact and legal questions predominate over questions of policies related to sexual assault.

---

[6] U.S. Department of Justice, Federal Bureau of Prisons, *Searches of Housing Units, Inmates, and Inmate Work Areas, 5521.06* (https://www.bop.gov/policy/progstat/5521_006.pdf) (Last visited December 28, 2023).

The 2023 claims of misconduct do not involve similar conduct in similar locations with the same employees or under similar circumstances. They are simply four random events occurring at a facility with over seven hundred inmates who all interact daily with various employees. This is not sufficient evidence to show there is a current practice of sexual misconduct that exposes all inmates to a risk of harm. Nor have Plaintiffs shown that the Federal Defendants have "acted or refused to act on grounds generally applicable to the class."[7]

Plaintiffs raised issues related to healthcare only to the extent they were relevant to treatment following sexual assaults; the question presented about healthcare only probes whether it is being administered to "mitigate the risk of harm to the class" that is caused by the instances of sexual misconduct. Thus, the examples of alleged insufficient healthcare in the anonymous declarations that are unrelated to sexual assault—like complaints of epilepsy and skin care treatment—do not point to common questions and are not probative of the ultimate issue alleged by Plaintiffs. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Resolution of the claim will not be driven by the answer to any question common to the class.

As to the issues arguably related to the assaults, the claims are generally related to accessibility of mental health care. But FCI Dublin staff includes mental health providers, and

---

[7] Plaintiffs' proposed question number four relates to hiring, training, and supervising employees. The question encourages an inductive analysis: if sexual misconduct is ongoing, then *something* must be wrong with hiring, firing, and supervision for sexual assault to occur. Besides being predicated on an unsupported and invalid assumption (sexual misconduct is not ongoing), Plaintiffs do not provide any evidence these aspects of personnel management were or are flawed.

many of the declarants have received care from these staff members. ███████████
████████████████████████████████████████████████████████
███████████████████████. Additionally, after the new management took over at FCI
Dublin in 2022, they worked to form a Memorandum of Understanding with an outside mental
health group—Tri-Valley—who could provide mental healthcare from outside sources. Doc. 46-
1, ¶ 41. Accordingly, several of the declarations are stale with respect to the policies at issue and
do not contribute to common questions of policy relevant to injunctive relief.

Additionally, as to issues about psychiatric medication accessibility, there are
predominant individual considerations with the various inmates. ████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████. Other declarants express frustration with individual
treatment, like breathing exercises, (Doc. 10-5 at ¶ 18), but the constitutional adequacy of this
care does turn on class issues. Instead, they are individualized complaints about satisfaction.

All of these situations present unique factual foundations that are topically unrelated.
Thus, there is insufficient evidence that there are common questions related to healthcare that
make class certification appropriate. *Cf. Lyon v. U.S. Immigr. & Customs Enforcement,* 171 F.
Supp. 3d 961, 983 n.16 *(*N.D. Cal. 2016) (addressing prison hospital practice of not sterilizing
equipment). This also means that the named Plaintiffs' issues are not necessarily typical of the
class.

Plaintiffs contend that inmates are at a substantial risk of harm because FCI Dublin's
practices *facilitate retaliation.* Plaintiffs must show that "an official tak[ing] adverse action
against someone based on [a] forbidden motive, and non-retaliatory grounds are *in fact*
insufficient to provoke the adverse consequences," *Nieves*, 139 S. Ct. at 1722, or as this
translates to the prison setting, that the authority's action did not advance legitimate goals of the
correctional institution. *Watison*, 668 F.3d at 1114. In this case, the retaliation claims are so fact-
intensive that they cannot be common and are therefore not amenable to class certification.

Plaintiffs have made no showing that there is a current *practice* of retaliation in response

reporting sexual assault at FCI Dublin. The First Amendment analysis is necessarily fact-

intensive and requires an inquiry into whether legitimate reasons could explain the actions. As

the majority of declarations are anonymous, it is impossible to fact-check the reasons behind any

act of discipline to show that it was non-retaliatory.

As to the identifiable declarants, they make vague claims about various acts that are

performed sometime after a report is made. Many of the acts complained of—searching rooms,

taking away recreation time, performing drug tests—serve legitimate penological purposes. Any

such claims thus require specific factual analysis.  Retaliation claims necessarily involved

"individualized questions . . . [that] will overwhelm common ones." *Bowerman*, 60 F.4th at 469.

Not only have Plaintiffs not met their burden, but as the facts are further developed, including at

the preliminary injunction hearing, they show individual events that are unrelated and require

fact-intensive inquiries.

Analysis of Plaintiffs' claims requires the court to engage in fact-intensive analysis of

individual incidents—few, if any, of which are fleshed out in sufficient detail for the Court to

assess their viability—and implicate a multitude of individual policies. The resolution of these

claims will be driven by the individual analysis of the factual and legal questions of each incident

and implicated policy. No judicial economy will be achieved by conglomerating these claims

into an unwieldy and divergent class action. This is a sharp contrast from classes that, in fact,

turn on a singular identifiable policy or practice. *Lyon,* 171 F. Supp. 3d at 983 n.16 (equipment

sterilization); *Graves v. Arpaio*, 623 F.3d 1043, 1048–49 (9th Cir. 2010) (heat exposure); *Maney

v. Brown*, 516 F. Supp. 3d 1161, 1174 (D. Or. 2021) (COVID vaccine availability). On the

contrary, as discussed below, the mismatches in Plaintiffs complaint between the claims raised,

the common questions presented, the relief sought, and the factual support presented only

muddies the waters and complicates the Court's ability assess individual claims under the

appropriate legal standards.

Second, each incident, even if proven, implicates a variety of different policies, practices, and customs that are not amenable to general resolution, and Plaintiffs have not provided evidence of greater structural issues. Courts have certified a class and held that plaintiff did prove commonality only when significant evidence supported the motion. In *Parsons v. Ryan*, which like this case involves issues broader than COVID vaccines or non-sterilized equipment, the Ninth Circuit decided there was sufficient proof to satisfy commonality when a party supported its class request with "four expert reports, hundreds of internal [Arizona Department of Corrections] documents, depositions of ADC staff, and inmate declarations." *Parsons*, 754 F.3d at 662. In *Hernandez v. County of Monterey*, which Plaintiffs relied on at length in their preliminary injunction briefing, a class was certified based on evidence including "more than one hundred interviews of former and current inmates in the jail[,] tens of thousands of pages of medical and custody records for current and former inmates in the jail[,] documents produced by the County in response to three requests for information pursuant to the California Public Records Act[,] and . . . hundreds of Sheriff's Office reports of incidents that occurred in the jail." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 141 (N.D. Cal. 2015); *see also Jimenez*, 765 F.3d at 1164 (relying on declarations, depositions, and documents); *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022), cert. denied, 143 S. Ct. 2612 (2023) (relying on written policies, testimony of ICE detainees, testimony of defendant's manager).

The Ninth Circuit has decided there is *not* commonality even where the plaintiffs supplied declarations and deposition testimony. For example, class certification was denied where a specific practice did not apply "uniformly to all proposed class members," even though the motion was supported with "voluminous declarations, photographs, and videos in support of a broad descriptions of 'sweeps'" performed among the homeless population. *Willis v. City of Seattle*, 943 F.3d 882, 885–86 (9th Cir. 2019).

As applied to the causes of action specifically, Plaintiffs have not set forth evidence that a class-wide proceeding can generate common answers apt to drive the resolution of Plaintiffs' Eighth and First Amendment Claims. Plaintiffs proposed four common questions related to

sexual misconduct, retaliation, and medical and mental healthcare insufficiencies. They assert

there are policies and practices at FCI Dublin allowing these improper acts and conditions. Yet

Plaintiffs do not cite to any actual regulations or policies that they argue are improper. Plaintiffs

cite to PREA regulations at length, (Doc. 1 at 15–18), but do not take issue with the regulations

themselves, unlike in more recent class action cases where plaintiffs challenge the regulations

themselves. *See Johnson v. City of Grants Pass*, 72 F.4th 868, 876 (9th Cir. 2023). Rather,

Plaintiff alleges that "BOP has failed to adhere to PREA regulations." (Doc. 1 at 18, ¶ 55).

And the events, even if true, do not show that there is a *practice* of sexual misconduct or

retaliation. Plaintiffs have not provided documents that are probative of larger organizational

facts. Plaintiffs rely on a Senate report, a DOJ Working Group Report, thirty-two anonymous

declarations, and fifteen declarations that may be identifiable after next week's evidentiary

hearing. Plaintiffs controlled the timing of their certification motion by bringing the motion

before the factual record could be adequately developed and before their claims had been

refined, unlike the Plaintiffs in many of the more compelling cases in the Ninth Circuit. *See, e.g.*

*Parsons*, 754 F.3d at 657 (relying on "four expert reports, hundreds of internal [Arizona

Department of Corrections] documents, depositions of ADC staff, and inmate declarations"). No

depositions have been conducted, and no discovery requests or responses have been exchanged.

The events implicate different legitimate policies like drug-use prevention, facility safety,

general facility management, and prescription drug administration safety. Even the structure of

Plaintiffs' argument shows this lack of consistency. Plaintiffs seek relief for many different

alleged wrongful acts, but many of these acts are not covered by the proposed questions, and the

defined class of individuals in turn is broader than who these proposed questions could protect.

Plaintiffs ask for twelve different forms of injunctive relief, from ensuring that employees with

substantiated claims of sexual misconduct are fired to installing cameras to creating a process to

assist survivors of abuse with compassionate release petitions. These requests are made through

the Eighth and First Amendments. Then, the proposed class questions condense the issues to

inmates at a substantial risk of harm of sexual assault and retaliation to which FCI Dublin is

deliberately indifferent. Finally, the class definition focuses on BOP's "uniform policies, customs, and practices concerning sexual assault, including those policies, customs, and practices related to care in the aftermath of an assault and protection from retaliation for reporting an assault." This incongruity between the relief sought and the interests that the class is intended to protect shows Plaintiffs' failure to support their commonality argument with sufficient evidence that a class-wide proceeding can generate common answers apt to drive the resolution of the litigation.

Plaintiffs' motion for class certification cannot survive at this stage given the myriad of unanswered factual and legal questions related to isolated and varied incidents alleged. As noted above, class certification issues, particularly those involving the complexity of those alleged here, are often decided after the parties conduct discovery. In the interests of judicial efficiency, Federal Defendants are amenable to the Court declining to address Plaintiffs' premature motion at this time and revisiting the issue upon further factual development—which Federal Defendants are confident will only undermine the basis for Plaintiffs' individual claims and reinforce the predominance of individual factual and legal questions. In any event, based on the record as it stands, it is clear that Plaintiffs have not met their burden of showing the common questions predominate and class representatives are typical.

## CONCLUSION

Plaintiffs have not met their burden of showing that questions relating to FCI Dublin's current policies, customs, and practices predominate over the specifics of individual inmates' constitutional claims. In examining the specifics of those claims—the record of which will be further developed at the preliminary injunction hearing—it is apparent that the specific concerns predominate and there is no evidence of a current practice of sexual misconduct. Plaintiffs' class certification motion should be denied, or, in the alternative, resolution should be withheld pending discovery and further briefing on a complete record.

Respectfully submitted on this 28th day of December, 2023.

JESSE A. LASLOVICH
United States Attorney


*/s/ Abbie J.N. Cziok*
MADISON L. MATTIOLI
ABBIE J.N. CZIOK
MARK STEGER SMITH
TIMOTHY A. TATARKA
Assistant U.S. Attorneys
Attorneys for Federal Defendants