ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL - 330482
LUMA KHABBAZ - 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Email: mbien@rbgg.com
       egalvan@rbgg.com
       kjanssen@rbgg.com
       gjackson-gleich@rbgg.com

STEPHEN CHA-KIM*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
Five Palo Alto Square, Suite 500
New York, NY 10019-9710
Telephone: 212.836.8000
Email: stephen.cha-kim@arnoldporter.com

CARSON ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: 650.319.4500
Email: carson.anderson@arnoldporter.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 679-3674
Email: susan@ccijustice.org

OREN NIMNI* Mass. Bar No. 691821
AMARIS MONTES* Md. Bar No. 2112150205
D DANGARAN *Mass. Bar No. 708195
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C. 20001-0506
Telephone: (202) 455-4399
Email: oren@rightsbehindbars.org
       amaris@rightsbehindbars.org
       d@rightsbehindbars.org

Attorneys for Plaintiffs

*Admitted pro hac vice

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al.,<br><br>Defendants. | Case No. 4:23-CV-04155-YGR<br><br>**PLAINTIFF'S REPLY TO FEDERAL DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT .......................................................................................................... 2

       A.     The Proposed Class Meets The Commonality Requirement .......................... 2

              1.     Defendants Apply The Wrong Commonality Requirement................ 2

              2.     Plaintiffs Have Demonstrated That The Relief Sought Here
                     Turns on the Answers to Common Questions ..................................... 3

              3.     The Evidence Supporting Commonality Is Robust.............................. 6

       B.     The Proposed Class Meets The Typicality Requirement ............................. 10

       C.     The Medical Records Attached To Defendants' Opposition Are
              Inadmissible And Do Not Support Defendants' Position ............................. 10

III.   CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ................................................................................ 3, 4

*Bowerman v. Field Asset Servs., Inc.*,
   60 F.4th 459 (9th Cir. 2023) ....................................................................................... 2

*Brown v. Plata,*
   563 U.S. 493 (2011) .................................................................................................. 1

*Doe v. Los Angeles Unified Sch. Dist.*, No. 216CV00305CASJEMX, 2017 WL
   797152 (C.D. Cal. Feb. 27, 2017) ............................................................................. 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................. 3

*Heineke v. Santa Clara University,* No. 17-CV-05285-LHK, 2017 WL 6026248
   (N.D. Cal. Dec. 5, 2017) ............................................................................................ 9

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) .............................................................................. passim

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................... 3

*Stull v. Fuqua Indus., Inc.*,
   906 F.2d 1271 (8th Cir. 1990) ................................................................................ 12

*Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6,
   2020), ......................................................................................................................... 9

*U.S. v. Doe*, 655 F.2d 920 (9th Cir. 1980) ........................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................. 3, 5

*Willis v. City of Seattle*,
   943 F.3d 882 (9th Cir. 2019) .................................................................................... 7

**STATUTES**

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 9

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 1, 2

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 2

Fed. R. Evid. 803(1) .......................................................................................................... 10

Fed. R. Evid. 803(4) .......................................................................................................... 10

Fed. R. Evid. 803(6) .......................................................................................................... 10

**OTHER AUTHORITIES**

Federal Practice and Procedure (Wright & Miller) § 1785 ................................................. 7

## I. INTRODUCTION

Defendants' Opposition, (Dkt. 74, the "Opposition" or "Opp.") fundamentally misconstrues the law applicable to class certification in this ***injunction*** matter by attempting to hold Plaintiffs to the class standard for a ***damages*** matter. Indeed, as this Court observed, "[t]he individual cases I understand, damages are different, the evidence is different, the individuals are different. But in terms of the extent to which the issues with respect to the injunctive relief, that's all common to all of those individuals. I wouldn't want to do that 43 times, and it makes no sense to do that 43 times." December 11, 2023, Hrg. Tr. at 48:8-13. When analyzed within the proper class certification framework pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' Motion (Dkt. 11, the "Motion" or "Mot.") must be granted.

To this end, Defendants incorrectly assert that this injunctive case requires individual mini trials on whether each class member was subjected to cruel and unusual punishment on particular days and times in the past. *See* Opp. at 10.[1] The proper legal standard for an injunctive case does not turn on each individual incident, but rather on whether the class as a whole is subject to uniform policies, practices and customs, or uniform failures to act, that puts the entire class at risk of imminent and serious harm. *See Brown v. Plata,* 563 U.S. 493, 506 n.3 (2011) (systemic remedies are not based "on deficiencies in care provided on any one occasion.") When evaluated under the actual legal standards applicable to the Motion, Plaintiffs have provided more than sufficient evidence to support class certification and the policies, practices, and customs at FCI Dublin are amenable to class-wide resolution.

Even under their own theory that that each class member has to prove individual Eighth Amendment violations, Defendants' motion fails. The **individualized** evidence they provide in their opposition are the medical records of class members J.M. and J.L.,

---

[1] Defendants do not contest that Plaintiffs meet the numerosity or adequacy of representation requirements and they are accordingly not addressed herein. *See* Dkt. 74 at 12.

1                                                                                          Case No. 4:23-CV-04155-YGR
PLAINTIFF'S REPLY TO FEDERAL DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

and M.M. to the Opposition in an attempt to demonstrate disparate factual predicates underlying each individual's claims. *See* Dkts. 74-1 to 74-4. They use these medical records to present the Court with BOP clinician's attacks on the veracity of three class members. These medical records confirm rather than refute the commonality of issues in this action, because even these examples, which were carefully selected to favor the Defendants' arguments, share a common focus on medical needs arising from sexual abuse survivorship.

## II.     ARGUMENT

### A.     The Proposed Class Meets the Commonality Requirement

#### 1.     Defendants Apply the Wrong Commonality Requirement

Defendant's Opposition seeks to incorrectly hold Plaintiffs to the standard applicable to damages class actions under FRCP 23(b)(3), by arguing that "Plaintiffs have not shown and cannot show that common questions predominate." *See* Opp. at 7. This standard is inapplicable here. Instead, Plaintiffs seek injunctive relief under FRCP 23(b)(2), which states that a "class action may be maintained if Rule 23(a) is satisfied and if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Dkt. 11 at 3; FRCP 23(b)(2).

Accordingly, Defendants' references to *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459 (9th Cir. 2023) and other cases in which plaintiffs sought to certify a damages class action are inapposite. By contrast to a class seeking damages, a class seeking only injunctive relief need not show predominance. As the court in *Parsons v. Ryan* unequivocally stated: "[A (b)(2) class] does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." 754 F.3d 657, 688 (9th Cir. 2014). The presence of individual factual differences among class members does not preclude the existence of a single common question of law or fact required by 23(a)(2).

*See Parsons,* 754 F.3d at 678 (finding commonality because "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm" even though "a presently existing risk may ultimately result in different future harm for different inmates"); *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality). The Court has explained that the function of considering the dissimilarities between putative class members is not to determine whether common questions predominate, but whether there is "even a single common question." *Dukes*, 564 U.S. at 359. The "existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Dukes*, 564 U.S. 338). In a "civil-rights suit, . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at 868. In such cases, a finding of commonality is appropriate despite "individual factual differences among the individual litigants or group of litigants." *Id.*

Under the applicable commonality standard, plaintiffs provide sufficient evidence for the Court to certify the proposed class.

### 2. Plaintiffs Have Demonstrated That the Relief Sought Here Turns on the Answers to Common Questions

Common questions among the putative class in this matter exist because "all of the putative class members" are affected by FCI Dublin's "system-wide practice [and] policy" of permitting sexual assault to occur, failing to provide effective reporting mechanisms and to impose accountability, and facilitating retaliation. *See Armstrong*, 275 F.3d at 868. Examples of common questions include but are not limited to the following: (1) Whether Defendants' policies and practices place members of the class at a substantial risk of harm

because they permit sexual assault to occur, provide ineffective reporting mechanisms, fail to impose accountability, and facilitate retaliation; (2) Whether Defendants, who have known about staff sexual abuse and harmful conditions at FCI Dublin for years, have been deliberately indifferent to that risk; (3) Whether Defendants have abdicated their oversight obligations to ensure adequate medical and mental health responses have been taken to mitigate the risk of harm to the class; and (4) Whether, as part of their denial of effective reporting mechanisms, Defendants' denial of access to counsel violates the constitutional rights of the class. Mot. at 8.

Defendants argue that "[p]laintiffs seek relief for many different alleged wrongful acts, but many of these acts are not covered by the proposed questions, and the defined class of individuals in turn is broader than who these proposed questions could protect." Opp. at 16. However, "[p]laintiffs need not show . . . that 'every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons*, 754 F.3d at 675. Accordingly, the presence of individual factual differences among class members also does not preclude the existence of a single common question.

Defendants also suggest that the events detailed in Plaintiffs' claims are nothing more than "isolated and varied incidents." Opp. at 10. But, the *Parsons* court addressed a similar argument and explained that it "rests upon a misunderstanding of the plaintiffs' allegations. The Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient . . . but rather that . . . policies and practices of statewide and systemic application expose all inmates . . . to a substantial risk of serious harm." *Parsons*, 754 F.3d at 676. That court further explained that "[a]lthough a presently existing risk may ultimately result in different future harm for different inmates--ranging from no harm at all to death--every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm." *Id.* at 678. Here, like in *Parsons*, the Complaint does

1  not rest on individualized allegations stemming from particular incidents; rather, it alleges
2  that "[a]s a result of . . . institutional failures, people incarcerated at FCI Dublin continue to
3  face an imminent *risk* of sexual assault, harassment, and retaliation." Dkt. 1 at 25
4  (emphasis added). The putative class members here suffer the same harms from FCI
5  Dublin's policies and practices that allow for sexual assault, fail to provide effective
6  reporting mechanisms and to impose accountability, and facilitate retaliation. The
7  common questions listed above are directly related to those policies and practices despite
8  variation in a particular proposed class members' individual experience with these policies
9  and the results of such policies. Accordingly, Defendant's *ad nauseum* focus on the
10 particularized factual predicate underlying each individual's Eighth amendment claims for
11 damages are misplaced in the context of an injunction class.
12         Similarly, Defendant's citation to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,
13 352 (2011) is inapplicable. In *Dukes*, female employees of Wal-Mart retail brought a Title
14 VII claim against their employer for sex discrimination and sought to "certify a plaintiff
15 class consisting of '[a]ll women employed at any Wal–Mart domestic retail store at any
16 time since . . . 1998 who have been or may be subjected to Wal–Mart's challenged pay and
17 management track promotions policies and practices.'" *Id.* at 346. The Court held that the
18 proposed class did not satisfy the commonality requirement because they were not able to
19 bridge the conceptual gap between an individual's discrimination claim and "the existence
20 of a class of persons who have suffered the same injury" without "[s]ignificant proof that
21 [Wal-Mart] operated under a general policy of discrimination." *Id.* at 352-53. The Court
22 reasoned that, while the proposed class sought to litigate "literally millions of employment
23 decisions at once," they failed to demonstrate that any "glue h[eld] the alleged *reasons* for
24 all those decisions together." *Id.* at 352. This is because the "only evidence of a 'general
25 policy of discrimination' respondents produced was the testimony of Dr. William Bielby,
26 their sociological expert[,] . . . that Wal–Mart has a 'strong corporate culture,' that makes it
27 'vulnerable' to 'gender bias.'" *Id.* at 346. Therefore, it was "impossible to say that
28 examination of all the class members' claims for relief w[ould] produce a common answer

to the crucial question *why was I disfavored*." *Id.* at 352 (emphasis original). Simply put, Plaintiffs have bridged the gap between the factual differences of each proposed class members individual claims and the existence of a class who have suffered the same injury: FCI Dublin employs uniform methods of receiving complaints about sexual abuse, of investigating such complaints, of using restrictive housing as the only means to protect people during an investigation, of protecting or failing to protect people from retaliation for reporting sexual abuse, of providing access to mental health counseling, and to outside advocates.

Defendants also attempt to argue that there is no commonality because each Plaintiff "implicates a variety of different policies, practices, and customs." Opp. at 16. Not so. While individualized claims may implicate different sections of each specific policy, the Motion clearly explains that it relates to "FCI Dublin's uniform policies, customs, and practices concerning sexual assault, including those policies, customs, and practices related to care in the aftermath of an assault and protection from retaliation for reporting an assault," Mot. at 1, which broadly apply to every individual plaintiff identified in the Complaint.

### 3.     The Evidence Supporting Commonality Is Robust

Defendants also assert that Plaintiffs have not provided sufficient evidence to support their Motion. *See* Opp. at 12, 17. Not so. Plaintiffs have provided a substantial record of policies, practices, and customs that apply generally to the proposed class and substantial evidence of both past and ongoing sexual abuse at the hands of FCI Dublin officers pursuant to these polices, practices, and customs. Both the Senate Subcommittee Report on Sexual Abuse of Female Inmates in Federal Prisons ("Senate Report") and the DOJ Working Group Report ("DOJ Report") were the product of extensive investigation by the Federal Government, including into internal BOP documents. *See* Dkt. 1 at 20. And the declarations from incarcerated individuals themselves corroborate the findings of those reports. Evaluation of Plaintiffs' claims regarding the polices, practices, and customs at FCI Dublin will require answers to common questions that will drive resolution

of the complaint. Moreover, while no discovery has taken place, Courts may determine class certification at "an early practicable time" and are not required to await months or years of motion practice and discovery prior to such a determination.

The cases cited by Defendants do not support its position, and in fact undermine it. As Defendants explain, class certification in *Willis* was denied because a specific practice did not apply uniformly to the proposed class; the volume of evidence presented by plaintiffs was not determinative. *See Willis v. City of Seattle*, 943 F.3d 882, 885-86 (9th Cir. 2019). In other words, "[t]he rigor requirement for analyzing a class certification motion does not turn on how much material the parties submit or on how carefully the district court seems to weigh the issues at a hearing; instead, it asks whether the court's order sufficiently analyzes the certification requirements." Federal Practice and Procedure (Wright & Miller) § 1785 fn. 34.90. Here, similarly, the sheer number of documents provided is not determinative; the strength of the evidence contained therein is. Plaintiffs have submitted enough evidence for the court to certify the proposed class without discovery because the Motion and its supporting declarations are sufficiently detailed to allow the Court to analyze the certification requirements. *See* Dkt. 11.

*First*, the Senate Report was the product of a review of non-public BOP and whistleblower documents, along with dozens of interviews with senior BOP leaders, whistleblowers, and survivors of sexual abuse. *See* Permanent Subcommittee on Investigations, United States Senate, Sexual Abuse of Female Inmates in Federal Prisons at 1. After this in-depth investigation, the Senate Report specifically named FCI Dublin as one of the most egregious offenders within the BOP, citing "horrific abuse" at the prison. *Id.* at ii, 2. The Senate Report identified FCI Dublin as one of four BOP facilities with "recurring sexual abuse of female prisoners by male BOP employees" and concluded that BOP "failed to prevent, detect, and stop recurring sexual abuse" at that location. *Id.* at 1.

*Second*, the DOJ Report resulted from a multi-agency, months-long investigation that included review of BOP policies and practices, relevant data, listening sessions, and other evidence. Report and Recommendations Concerning the Department of Justice's

Response to Sexual Misconduct by Employees of the Federal Bureau of Prisons at 1 (2022). The DOJ Report's investigation "reinforced the need for immediate actions to address the Department's approach to sexual misconduct perpetrated by BOP staff, as well as the importance of further review to consider longer-term--and more systemic--changes." *Id.* at 2. This report also highlighted abuses at FCI Dublin in particular. *Id.* at 5 (describing the prosecution of James Highhouse).

*Third*, declarations from those incarcerated at FCI Dublin, along with ongoing investigations of its employees, provide significant evidence that the abuse detailed in the reports above is ongoing. Plaintiffs provided 47 declarations from individuals incarcerated at FCI Dublin that detail numerous abuses at the hands of FCI Dublin employees. Dkts. 10-1 to 10-47.

Defendants assert that reliance on these declarations is inappropriate because the declarants were identified only by initials. Opp. at 3. Defendants rely on one unpublished decision about middle school students who tried to remain anonymous in a dispute about racially offensive comments. *Doe v. Los Angeles Unified Sch. Dist.*, No. 216CV00305CASJEMX, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017). This case is far more similar to *Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199, at *10 (N.D. Cal. Jan. 6, 2020), where the court upheld the use of a Doe declaration from an alleged rape victim in ruling on a California anti-SLAPP motion. While the court in *Doe* could discern no specific confidentiality interest, here, as in *Todd,* the confidentiality interest is fact-based and well established: victims of sex crimes have a recognized interest in protecting their identities, particularly where they are vulnerable to retaliation. *See Todd,* 2020 WL 60199, at *10, citing *U.S. v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) (pseudonymity to protect retaliation in prison); *Heineke v. Santa Clara University,* No. 17-CV-05285-LHK, 2017 WL 6026248, at *1 (N.D. Cal. Dec. 5, 2017) (campus sexual harassment victim). Here, as in *Todd,* Plaintiffs have provided particularized justifications for proceeding pseudonymously. Dkt. Nos. 6 (Application to Proceed Pseudonymously); 6-1 (Declaration of Ginger Jackson-Gleich in Support of Plaintiffs' Application to Proceed

Anonymously.)

This case is more similar to *Todd* than to *Doe* in two other important respects. First, the anti-SLAPP motion at issue in *Todd* requires a preliminary evaluation of the merits, just as the preliminary injunction and class certification motions here require a preliminary look at the merits. The summary judgment motion at issue in *Doe* requires far more than a preliminary look. Second, here, as in *Todd,* the Defendants chose not to take discovery of the declarants' identities during the four months they had to oppose the motion, and like the plaintiff in *Todd,* therefore waived the issue.[2] *Todd,* 2020 WL 60199, at *10.

Defendants further argue that there is not sufficient evidence to show there is a *current* practice of sexual abuse that exposes all inmates to a risk of harm because the 2023 claims of misconduct do not involve similar conduct in similar locations with the same employees or under similar circumstances, and dismiss these allegations as "four random events," suggesting that they should be expected "at a facility with over seven hundred inmates who all interact daily with various employees." Opp. at 12. These arguments go to the merits of Plaintiffs claims which is inappropriate at this stage, but in any event are not supported by the record. *See* Dkt. 10 at 15 (As recently as August 2023, an Officer Souza was let go for engaging in sexual misconduct with an incarcerated woman.); *see also* Dkt. 10 at 25 (In June 2023, after T.M. heard from other incarcerated women that he had done the same to them, T.M. reported Defendant Officer Lewis for shining a light on her naked body while in the shower and faced a bogus write-up, a searched cell, and destroyed property promptly after.); see *also* Dkt. 10 at 29 (In April 2023, Defendant Officer Lewis told A.S.H. to unzip her sweatshirt, keep "running her mouth," referring to her recent report of abuse by another officer, and her room was searched on three days consecutive days after reporting Lewis).

---

[2] Pursuant to the Court's instructions at the December 11, 2023 Case Management Conference, Plaintiffs disclosed identities to Defendants in two groups as Plaintiffs were able to inform and seek consent from the Declarations. *See* Dkt. No. 102.

### B. The Proposed Class Meets the Typicality Requirement

Defendants dispute that Plaintiffs satisfy the Rule 23(a) typicality requirement because the proposed class members "present unique factual foundations that are topically unrelated," the issues are not "necessarily typical of the class," but do not articulate this argument beyond this single sentence. *See* Dkt. 74 at 13.

"Under [Rule23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (citation omitted). Thus, although there are individual factual circumstances that impact each class member, the typicality requirement does not necessitate that the claims be identical. *Id.* Here, as explained above, Plaintiffs' claims are sufficiently coextensive with those of the class to satisfy typicality because all named Plaintiffs have faced the same or similar issues and have been and continue to be subject to the Defendant's centralized policies, practices, and customs, or lack thereof.

### C. The Medical Records Attached to Defendants' Opposition Are Inadmissible and Do Not Support Defendants' Position

Defendants' Opposition attempts to use medical records from three individual named Plaintiffs to argue that claims related to healthcare are either "not probative of the ultimate issue alleged by Plaintiffs" or else "present unique factual foundations that are topically unrelated." Opp. at 12-13.

As an initial matter, Defendants' cherry-picked portions of these individuals' medical records should not be evaluated divorced from the entirety of these individuals' medical records, on which Plaintiffs have received no discovery. Nonetheless, while Defendants assert that these medical records demonstrate disparate factual predicates between the putative class members, all putative class members are subject to the same physical and mental healthcare policies, and the three specific examples provided by Defendants all pertain to issues sexual abuse survivorship. *See* Dkt. 10-4 (J.M.), ¶17 ("little to no medical care available to survivors of sexual abuse" and retaliatory healthcare

practices "caused my fibromyalgia to flare up"); Dkt. 10-3 (J.L.), ¶11 ("I became extremely depressed" because "no confidential mental health care available to survivors of sexual abuse and assault"); Dkt. 10-28 (M.M.), ¶¶10-11 (put in SHU for alleged false PREA allegation where "in the SHU the BOP doctor took me off my psychiatric medication without any explanation.")

      In any event, these medical records are inadmissible hearsay because they are being offered for the truth of the matter asserted, and no hearsay exception applies. *See* Fed. R. Evid. 802; Dkts. 74-1 to 74-4. While the medical record exception permits statements that are made for or are "obtained from the person seeking treatment" and reasonably pertinent to, "medical diagnosis or treatment" while "describ[ing] medical history; past or present symptoms or sensations; their inception; or their general cause," the exception is inapplicable here. Fed. R. Evid. 803(4); *Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1273 (8th Cir. 1990). The medical records relied on by Defendants contain statements made for and not reasonably pertinent to medical treatment, and were not made by the Plaintiffs, the people seeking treatment. Instead, Defendants rely on self-serving statements made by their own employees attacking the veracity of the incarcerated class members. *See, e.g.*, Dkt. 74-2 at 3 ("During pill line this evening, the inmate refused to comply with an order for a mouth check after taking their pills;" "ADDENDUM: entire clinical encounter conducted through pill line window. The inmate was never touched. CO's Cooper, Prior, Cortez, and Kham all present outside unit E/F while this incident took place.").

      These medical records are also not admissible as present sense impressions because there are no indications that they were made "while the declarant was perceiving the event" or immediately thereafter (F.R.E. 803(1)), and also lack foundation and do not meet the business records exception because they are not supported by a declaration satisfying the requirements of F.R.E. 803(6).

//
//
//

## III. CONCLUSION

For the reasons stated in the Motion and the foregoing reply in support thereof, Plaintiffs Motion for Class Certification should be granted.

DATED: January 5, 2024                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Ernest Galvan*
     Ernest Galvan

Attorneys for Plaintiffs