

**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

| | |
|---|---|
| OPI: | RSD/PSY |
| NUMBER: | 5324.12 |
| DATE: | June 4, 2015 |

# Sexually Abusive Behavior Prevention and Intervention Program

*/s/*
*Approved*:  Charles E. Samuels, Jr.
Director, Federal Bureau of Prisons

## 1. **PURPOSE AND SCOPE**

To provide a written policy that implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and to provide guidelines to address the following prohibited and/or illegal sexually abusive behavior involving:

- Inmate perpetrator against staff victim.
- Inmate perpetrator against inmate victim.
- Staff perpetrator against inmate victim.

This policy also covers incidents involving contractors and volunteers.

These guidelines are provided to

- Help **detect** incidents, perpetrators, and inmate victims of sexually abusive behavior.
- Help **prevent** sexually abusive behavior.
- Educate staff to **intervene** properly and in a timely manner.
- **Document, report,** and **investigate** reported incidents.
- **Discipline** and/or prosecute perpetrators.

**Note.**  The protection and safety of staff who are sexually victimized is a top priority.  It is addressed in sections 115.6 and 115.22 of this Program Statement.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

In the Prison Rape Elimination Act (PREA) of 2003, Congress required the Attorney General to promulgate regulations concerning sexual abuse prevention.  The statute further required that the regulations would be binding upon the Federal Bureau of Prisons.  See 42 U.S.C. §15607.  The **bold, blue** type in this Program Statement is the regulations issued to the Bureau of Prisons, which were not subject to bargaining.

National and Regional PREA Coordinators, and Institution PREA Compliance Managers, will comply with collective bargaining agreements in implementing changes or programs.

a.  **Summary of Changes**

*Policy Rescinded*
P5324.11        Sexually Abusive Behavior Prevention and Intervention Program (01/06/14)

■   Updates ACA provisions.
■   Provides further information on PREA statute and regulations.
■   Provides further information on resources available to staff victims.
■   Provides reference to policy concerning cross gender pat searches of female inmates.
■   Clarifies authorities concerning post assignments in implementing this policy.
■   Updates the language of the public address announcement to be used at shift change.
■   Provides additional guidance concerning the separation of an inmate alleging to be victims and alleged perpetrator.
■   Provides references to Posted Picture File policy.
■   Clarifies responsibilies of Psychology and Health Services staff policies.
■   Provides additional guidance concerning the reassignment of staff if necessary to protect victim.
■   Provides information for safeguarding staff victims of inmate abuse/harassment.
■   Provides guidance to Institution PREA Compliance Managers on tracking and distributing Reports of Incident.
■   Corrects a typographical error in section 115.67
■   Clarifies data collection resposnsibilities of the Office of Internal Affairs.
■   Clarifies procedures for filing appeals of audit findings to the Department of Justice.

b.  **Program Objectives.**  The intent of this Program Statement is to ensure that:

■   Staff and inmates are informed of the Bureau's zero-tolerance philosophy in regards to sexually abusive behavior.
■   Standard procedures are in place to detect and prevent sexually abusive behavior at all Bureau and contract facilities.
■   Victims of sexually abusive behavior receive prompt and effective response to their physical, psychological, and security needs.
■   Allegations of sexually abusive behavior receive prompt intervention upon report.
■   The perpetrators of sexually abusive behavior will be disciplined and, when appropriate, prosecuted in accordance with Bureau policy and Federal law.

## 2.  INSTITUTION SUPPLEMENT

Each institution is required to have a current Institution Supplement, using negotiated procedures at the local level, which reflects that institution's unique characteristics and specifies how each institution will comply with this Program Statement, including the following:

**Specification of Staff Member(s) responsible for:**

■  Staff training activities to ensure a coordinated response to a report of sexually abusive behavior.
■  Inmate education regarding issues pertaining to sexually abusive behavior.

**Notification Procedures** to be followed when sexually abusive behavior occurs (including notification of appropriate law enforcement agencies).

**Responding to the Inmate Victim:**

■  Providing security to any inmate who alleges that he/she is the victim of sexually abusive behavior and, where appropriate, to inmates who are reported by others to be the victims of sexually abusive behavior.
■  Identifying entities (e.g., institution Health Services or community health services) responsible for providing medical assessment (e.g., forensic examination) and treatment of the victim of a sexual assault.

**Monitoring the Inmate Perpetrator:**

■  Monitoring or managing the perpetrator in a way that minimizes the risk of future predation.
■  Describing the system in place to ensure that the Chief of Correctional Services is notified of inmates with a serious sexual predation history or who are "at risk" of engaging in sexually abusive behavior while in BOP custody.

## 3.  AGENCY ACA ACCREDITATION PROVISIONS

(See Program Statement **Directives Management Manual**, Sections  2.5 and 10.3.)

■  American Correctional Association Standards for Adult Correctional Institutions, 4th Edition:  4-4056, 4-4133, 4-4277, 4-4365, 4-4371, 4-4406M.
■  American Correctional Association Performance Based Standards for Adult Local Detention Facilities, 4th Edition:   4-ALDF-2A-29, 4-ALDF-4D-22-5, 4-ALDF-4D-22-6M, 4-ALDF-4D-22-7, 4-ALDF-4D-22-8, 4-ALDF-7B-10.
■  American Correctional Association Standards for Administration of Correctional Agencies, 2nd Edition:  2-CO-1C-18.

P5324.12     6/4/2015     Federal Regulations from 28 CFR: this type.  Implementing instructions: this type.          3

PIX_209, Page 3 of 62

**REFERENCES**

*Program Statements*
P1210.24    Office of Internal Affairs (5/20/03)
P1330.18    Administrative Remedy Program (12/31/13)
P1350.01    Criminal Matter Referrals (1/11/96)
P1351.05    Release of Information (9/19/02)
P3000.03    Human Resource Management Manual (12/19/07)
P3420.11    Standards of Employee Conduct (12/6/13)
P3906.22    Employee Development Manual (4/30/15)
P5141.02    Sex Offender Notification and Registration (12/14/98)
P5180.05    Central Inmate Monitoring System (12/31/07)
P5270.09    Inmate Discipline Program (7/08/11)
P5270.10    Special Housing Units (7/29/11)
P5290.15    Intake Screening (3/30/09)
P5310.12    Psychology Services Manual (3/7/95)
P5500.11    Correctional Services Manual (3/31/15)
P5500.14    Correctional Services Procedures Manual (10/19/12)
P5510.13    Posted Picture File (8/22/11)
P5510.14    Crime Scene Management and Evidence Control (8/22/11)
P5521.06    Searches of Housing Units, Inmates, and Inmate Work Areas (6/4/15)
P5538.05    Escorted Trips (10/6/08)
P6031.03    Patient Care (8/23/12)

28 CFR Part 115, National Standards To Prevent, Detect, and Respond to Prison Rape; Final Rule, dated June 20, 2012, located at http://www.gpo.gov/fdsys/pkg/FR-2012-06-20/pdf/2012-12427.pdf.

Prison Rape Elimination Act of 2003 (Public Law 108-79; September 4, 2003)

U.S. Department of Justice, Office of Violence Against Women, A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents, September 2004, located at http://www.ncjrs.gov/pdffiles1/ovw/206554.pdf.

*BOP Forms*
BP-A0583    Report of Incident
BP-A1002    Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

# CONTENTS

This Program Statement follows the organization of the relevant portions of 28 CFR Part 115 (Prison Rape Elimination Act National Standards): §§ 115.5, 115.6, Subpart A, and Subpart E.

§ 115.5 — General definitions ............................................................................................ 7

§ 115.6 — Definitions related to sexual abuse ..................................................................... 10

**PREVENTION PLANNING** ........................................................................................... 13

§ 115.11 — Zero tolerance of sexual abuse and sexual harassment; PREA coordinator ............. 13
§ 115.12 — Contracting with other entities for the confinement of inmates ................................. 14
§ 115.13 — Supervision and monitoring ................................................................................ 14
§ 115.14 — Youthful inmates ................................................................................................ 16
§ 115.15 — Limits to cross-gender viewing and searches ........................................................ 17
§ 115.16 — Inmates with disabilities and inmates who are limited English proficient ............... 19
§ 115.17 — Hiring and promotion decisions .......................................................................... 20
§ 115.18 — Upgrades to facilities and technologies ............................................................... 21

**RESPONSIVE PLANNING** ........................................................................................... 22

§ 115.21 — Evidence protocol and forensic medical examinations ........................................... 22
§ 115.22 — Policies to ensure referrals of allegations for investigations ................................... 24

**TRAINING AND EDUCATION** ....................................................................................... 24

§ 115.31 — Employee training .............................................................................................. 24
§ 115.32 — Volunteer and contractor training ........................................................................ 26
§ 115.33 — Inmate education ............................................................................................... 26
§ 115.34 — Specialized training: Investigations ..................................................................... 28
§ 115.35 — Specialized training: Medical and mental health care ........................................... 28

**SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS** ........................... 29

§ 115.41 — Screening for risk of victimization and abusiveness ............................................... 29
§ 115.42 — Use of screening information ............................................................................... 33
§ 115.43 — Protective custody ............................................................................................. 33

**REPORTING** .............................................................................................................. 35

§ 115.51 — Inmate reporting ............................................................................................... 35
§ 115.52 — Exhaustion of administrative remedies ................................................................. 36
§ 115.53 — Inmate access to outside confidential support services .......................................... 36
§ 115.54 — Third-party reporting .......................................................................................... 37

**OFFICIAL RESPONSE FOLLOWING AN INMATE REPORT** ................................................ 37

§ 115.61 — Staff and agency reporting duties ................................................ 37
§ 115.62 — Agency protection duties ................................................ 38
§ 115.63 — Reporting to other confinement facilities ................................................ 39
§ 115.64 — Staff first responder duties ................................................ 40
§ 115.65 — Coordinated response ................................................ 40
§ 115.66 — Preservation of ability to protect inmates from contact with abusers ................................................ 42
§ 115.67 — Agency protection against retaliation ................................................ 42
§ 115.68 — Post-allegation protective custody ................................................ 43

**INVESTIGATIONS** ................................................ 43

§ 115.71 — Criminal and administrative agency investigations ................................................ 43
§ 115.72 — Evidentiary standard for administrative investigations ................................................ 45
§ 115.73 — Reporting to inmates ................................................ 45

**DISCIPLINE** ................................................ 47

§ 115.76 — Disciplinary sanctions for staff ................................................ 47
§ 115.77 — Corrective action for contractors and volunteers ................................................ 47
§ 115.78 — Disciplinary sanctions for inmates ................................................ 48

**MEDICAL AND MENTAL CARE** ................................................ 49

§ 115.81 — Medical and mental health screenings; history of sexual abuse ................................................ 49
§ 115.82 — Access to emergency medical and mental health services ................................................ 50
§ 115.83 — Ongoing medical and mental health care for sexual abuse victims and abusers ................................................ 51

**DATA COLLECTION AND REVIEW** ................................................ 52

§ 115.86 — Sexual abuse incident reviews ................................................ 52
§ 115.87 — Data collection ................................................ 54
§ 115.88 — Data review for corrective action ................................................ 56
§ 115.89 — Data storage, publication, and destruction ................................................ 56

**AUDITS** ................................................ 57

§ 115.93 — Audits of standards ................................................ 57
§ 115.401 — Frequency and scope of audits ................................................ 57
§ 115.402 — Auditor qualifications ................................................ 58
§ 115.403 — Audit contents and findings ................................................ 59
§ 115.404 — Audit corrective action plan ................................................ 60
§ 115.405 — Audit appeals ................................................ 60

**Attachment** — PREA Intake Objective Screening Instrument ................................................ 62

## § 115.5  General definitions.

**For purposes of this part, the term—**

*Agency* **means the unit of a State, local, corporate, or nonprofit authority, or of the Department of Justice, with direct responsibility for the operation of any facility that confines inmates, detainees, or residents, including the implementation of policy as set by the governing, corporate, or nonprofit authority.**

As a component of the Department of Justice, all requirements of "agencies" under these regulations apply to the Federal Bureau of Prisons (Bureau).

*Agency head* **means the principal official of an agency.**

The Director of the Bureau is the "agency head" under these regulations.

*Community confinement facility* **means a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community correctional facility (including residential re-entry centers), other than a juvenile facility, in which individuals reside as part of a term of imprisonment or as a condition of pretrial release or post-release supervision, while participating in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during nonresidential hours.**

*Contractor* **means a person who provides services on a recurring basis pursuant to a contractual agreement with the agency.**

*Detainee* **means any person detained in a lockup, regardless of adjudication status.**

*Direct staff supervision* **means that security staff are in the same room with, and within reasonable hearing distance of, the resident or inmate.**

*Employee* **means a person who works directly for the agency or facility.**

*Exigent circumstances* **mean any set of temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility.**

*Facility* **means a place, institution, building (or part thereof), set of buildings, structure, or area (whether or not enclosing a building or set of buildings) that is used by an agency for the confinement of individuals.**

As a component of the Department of Justice, all requirements of a "facility" under these regulations apply to Bureau institutions.

***Facility head* means the principal official of a facility.**

A Warden or CEO is a "facility head" under these regulations.

***Full compliance* means compliance with all material requirements of each standard except for *de minimis* violations, or discrete and temporary violations during otherwise sustained periods of compliance.**

***Gender nonconforming* means a person whose appearance or manner does not conform to traditional societal gender expectations.**

***Inmate* means any person incarcerated or detained in a prison or jail.**

***Intersex* means a person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical definitions of male or female.  Intersex medical conditions are sometimes referred to as disorders of sex development.**

***Jail* means a confinement facility of a Federal, State, or local law enforcement agency whose primary use is to hold persons pending adjudication of criminal charges, persons committed to confinement after adjudication of criminal charges for sentences of one year or less, or persons adjudicated guilty who are awaiting transfer to a correctional facility.**

***Juvenile* means any person under the age of 18, unless under adult court supervision and confined or detained in a prison or jail.**

***Juvenile facility* means a facility primarily used for the confinement of juveniles pursuant to the juvenile justice system or criminal justice system.**

***Law enforcement staff* means employees responsible for the supervision and control of detainees in lockups.**

***Lockup* means a facility that contains holding cells, cell blocks, or other secure enclosures that are: (1) Under the control of a law enforcement, court, or custodial officer; and (2) Primarily used for the temporary confinement of individuals who have recently been arrested, detained, or are being transferred to or from a court, jail, prison, or other agency.**

***Medical practitioner* means a health professional who, by virtue of education, credentials, and experience, is permitted by law to evaluate and care for patients within the scope of his or her professional practice. A "qualified medical practitioner" refers to such a professional who has also successfully completed specialized training for treating sexual abuse victims.**

PIX_209, Page 8 of 62

**Mental health practitioner means a mental health professional who, by virtue of education, credentials, and experience, is permitted by law to evaluate and care for patients within the scope of his or her professional practice. A "qualified mental health practitioner" refers to such a professional who has also successfully completed specialized training for treating sexual abuse victims.**

Mental health professionals with graduate degrees in clinical or counseling psychology or clinical social work are considered to be qualified mental health practitioners based on specific course work required for the completion of their degree.

**Pat-down search means a running of the hands over the clothed body of an inmate, detainee, or resident by an employee to determine whether the individual possesses contraband.**

**Prison means an institution under Federal or State jurisdiction whose primary use is for the confinement of individuals convicted of a serious crime, usually in excess of one year in length, or a felony.**

**Resident means any person confined or detained in a juvenile facility or in a community confinement facility.**

**Secure juvenile facility means a juvenile facility in which the movements and activities of individual residents may be restricted or subject to control through the use of physical barriers or intensive staff supervision. A facility that allows residents access to the community to achieve treatment or correctional objectives, such as through educational or employment programs, typically will not be considered to be a secure juvenile facility.**

**Security staff means employees primarily responsible for the supervision and control of inmates, detainees, or residents in housing units, recreational areas, dining areas, and other program areas of the facility.**

In the Bureau, all institution staff are considered to be "security staff."

**Staff means employees.**

**Strip search means a search that requires a person to remove or arrange some or all clothing so as to permit a visual inspection of the person's breasts, buttocks, or genitalia.**

**Substantiated allegation means an allegation that was investigated and determined to have occurred.**

In the Bureau, this may also be referred to as a "sustained" allegation.

***Transgender*** **means a person whose gender identity (*i.e.,* internal sense of feeling male or female) is different from the person's assigned sex at birth.**

***Unfounded allegation*** **means an allegation that was investigated and determined not to have occurred.**

***Unsubstantiated allegation*** **means an allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.**

In the Bureau, this may also be referred to as a "not sustained" allegation.

***Volunteer*** **means an individual who donates time and effort on a recurring basis to enhance the activities and programs of the agency.**

***Youthful inmate*** **means any person under the age of 18 who is under adult court supervision and incarcerated or detained in a prison or jail.**

***Youthful detainee*** **means any person under the age of 18 who is under adult court supervision and detained in a lockup.**

**§ 115.6  Definitions related to sexual abuse.**

**For purposes of this part, the term—**

***Sexual abuse*** **includes—**

**(1) Sexual abuse of an inmate, detainee, or resident by another inmate, detainee, or resident; and**

**(2) Sexual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer.**

***Sexual abuse of an inmate, detainee, or resident by another inmate, detainee, or resident*** **includes any of the following acts, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse:**

**(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;**

**(2) Contact between the mouth and the penis, vulva, or anus;**

**(3) Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instrument; and**

(4) Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact incidental to a physical altercation.

***Sexual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer*** includes any of the following acts, with or without consent of the inmate, detainee, or resident:

(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

(2) Contact between the mouth and the penis, vulva, or anus;

(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1) through (5) of this definition;

(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and

(8) Voyeurism by a staff member, contractor, or volunteer.

***Sexual harassment*** includes—

(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and

(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including

**demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.**

***Voyeurism by a staff member, contractor, or volunteer* means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions.**

"Official duties," as referenced above, include, but are not limited to, position descriptions, Institution Supplements, post orders, and other duties as assigned, to ensure the safe and orderly running of the institution.  An example includes monitoring inmates to prevent and deter the movement of contraband.

The Bureau recognizes that addressing inappropriate sexual behavior by inmates towards staff furthers the objectives of PREA by increasing the overall security and safety of institutions.  The Bureau also has zero tolerance for sexual abuse of a staff member by an inmate, detainee, or resident.  Sexual abuse of staff by an inmate, detainee, or resident includes actions such as:

(1) Contact between the penis and vulva or penis and the anus, including penetration, however slight.

(2) Contact between the mouth and penis, vulva, or anus.

(3) Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instrument.

(4) Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks, excluding contact incidental to a physical altercation.

(5) Any attempt, threat, or request by an inmate to engage in activities described in paragraphs (1) through (4), above.

(6) Any display by an inmate of his/her uncovered genitalia, buttocks, or breast to a staff member, outside of the staff member's official duties (e.g., searches), with the inmate's intent to harass staff or for sexual gratification.

The Bureau also has zero tolerance for sexual harassment of staff by inmates.  Sexual harassment includes actions such as:

(1) Unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by an inmate, detainee, or resident directed toward a staff member.

(2) Verbal comments or gestures of a sexual nature by an inmate, detainee, or resident to a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

Sexual abuse and sexual harassment of staff members should be addressed through other existing statutes, policies, and procedures, such as using the inmate discipline system and referral for criminal prosecutions as appropriate.  In addition, staff members will be informed of available resources for assistance as appropriate, to include the Employee Assistance Program, and for bargaining unit employees to the local Union.


## PREVENTION PLANNING

### § 115.11  Zero tolerance of sexual abuse and sexual harassment; PREA coordinator.

**(a) An agency shall have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the agency's approach to preventing, detecting, and responding to such conduct.**

The intent of this policy is to ensure that:

- Staff and inmates are informed that this policy implements the Bureau's "zero tolerance" of sexually abusive behavior, and sexual harassment, as defined in this policy;
- Standard procedures are in place to detect and prevent sexually abusive behavior and sexual harassment at all Bureau facilities;
- Victims of sexually abusive behavior and sexual harassment receive timely and effective responses to their physical, psychological, and security needs;
- Allegations of sexually abusive behavior and sexual harassment receive timely intervention upon report; and
- The perpetrators of sexually abusive behavior and sexual harassment will be disciplined and, when appropriate, prosecuted in accordance with Bureau policy and Federal law.

**(b) An agency shall employ or designate an upper-level, agency-wide PREA coordinator with sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all of its facilities.**

**National PREA Coordinator.**  The National PREA Coordinator's responsibilities include developing, implementing, and overseeing the Bureau's compliance with PREA.  The National PREA Coordinator provides oversight to all Regional PREA Coordinators.   The National PREA Coordinator assists the Information, Policy, and Public Affairs (IPPA) Division in providing the required information to the U.S. Department of Justice, Bureau of Justice Statistics, through their collection agent (U.S. Census Bureau), of all incidents of sexually abusive behavior.  The National PREA Coordinator also coordinates with the Privatization Management and Residential Reentry Branches to ensure contract facilities are in compliance with PREA Standard § 115.11.

**Regional PREA Coordinator.**  The Regional PREA Coordinator ensures policy guidelines are addressed in institutions within each region.  Given the sensitivity required when defining and reporting cases as substantiated, a background in investigations is preferred when selecting a Regional PREA Coordinator.

**(c) Where an agency operates more than one facility, each facility shall designate a PREA compliance manager with sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards.**

The Warden at each institution must ensure that all aspects of this Program Statement are implemented, including maintaining a current Institution Supplement.  He/she must assign an Institution PREA Compliance Manager, who except in rare circumstances will be an Associate Warden, for the overall responsibility of the program.

The Institution PREA Compliance Manager maintains responsibility for the Sexually Abusive Behavior Prevention and Intervention Program.  He/she must provide supervisory oversight to ensure the coordination of institution departments in prevention, detection, intervention, and response, as specified in this Program Statement.  The Warden may appoint supervisory staff as PREA points of contact in each key department (Correctional Services, Psychology Services, Health Services, etc.), in order to assist the Institution PREA Compliance Manager with the implementation of this policy.

**§ 115.12  Contracting with other entities for the confinement of inmates.**

**(a) A public agency that contracts for the confinement of its inmates with private agencies or other entities, including other government agencies, shall include in any new contract or contract renewal the entity's obligation to adopt and comply with the PREA standards.**

**(b) Any new contract or contract renewal shall provide for agency contract monitoring to ensure that the contractor is complying with the PREA standards.**

The Bureau must ensure its contracts with secure privatized facilities, jails, juvenile facilities, and Residential Reentry Centers include their obligation to adopt and comply with the PREA standards.  Privatization Management Branch and Residential Reentry Management Branch field staff must include PREA compliance monitoring within their scheduled contract monitoring activity.

**§ 115.13  Supervision and monitoring.**

**(a) The agency shall ensure that each facility it operates shall develop, document, and make its best efforts to comply on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse. In calculating adequate staffing levels and determining the need for video monitoring, facilities shall take into consideration:**

**(1) Generally accepted detention and correctional practices;**

**(2) Any judicial findings of inadequacy;**

**(3) Any findings of inadequacy from Federal investigative agencies;**

**(4) Any findings of inadequacy from internal or external oversight bodies;**

**(5) All components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated);**

**(6) The composition of the inmate population;**

**(7) The number and placement of supervisory staff;**

**(8) Institution programs occurring on a particular shift;**

**(9) Any applicable State or local laws, regulations, or standards;**

**(10) The prevalence of substantiated and unsubstantiated incidents of sexual abuse; and**

**(11) Any other relevant factors.**

The Human Resource Management Division and Administration Division, Central Office, must consider PREA factors and safety, in general, when allocating overall staffing resources.  At the institution, the Salary/Workforce Utilization Committee Meeting Minutes serves as the staffing plan.

**(b) In circumstances where the staffing plan is not complied with, the facility shall document and justify all deviations from the plan.**

Deviations are documented in the remarks section of the Salary/Workforce Utilization Committee Meeting Minutes.  For example, if an allocated position is not filled for budgetary or other reasons, the reasons should be noted in remarks section.

**(c) Whenever necessary, but no less frequently than once each year, for each facility the agency operates, in consultation with the PREA coordinator required by § 115.11, the agency shall assess, determine, and document whether adjustments are needed to:**

**(1) The staffing plan established pursuant to paragraph (a) of this section;**

**(2) The facility's deployment of video monitoring systems and other monitoring technologies; and**

**(3) The resources the facility has available to commit to ensure adherence to the staffing plan.**

At a minimum, the most recent Salary/Workforce Utilization Committee Meeting Minutes (which include a review of the staffing plan) are annually compiled by the Regional PREA Coordinator by May 1, and submitted to the National PREA Coordinator by June 1.

**(d) Each agency operating a facility shall implement a policy and practice of having intermediate-level or higher level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. Such policy and practice shall be implemented for night shifts as well as day shifts. Each agency shall have a policy to prohibit staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility.**

Unannounced rounds by supervisory staff conducted with the intent of identifying and deterring sexual abuse and sexual harassment are conducted every week, including all shifts and all areas. The Institution Duty Officer (IDO) conducts and documents the unannounced rounds.  At the end of the IDO's tour week, the documentation is forwarded to the Institution PREA Compliance Manager for retention.

**§ 115.14  Youthful inmates.**

**(a) A youthful inmate shall not be placed in a housing unit in which the youthful inmate will have sight, sound, or physical contact with any adult inmate through use of a shared dayroom or other common space, shower area, or sleeping quarters.**

**(b) In areas outside of housing units, agencies shall either:**

**(1) Maintain sight and sound separation between youthful inmates and adult inmates, or**

**(2) Provide direct staff supervision when youthful inmates and adult inmates have sight, sound, or physical contact.**

**(c) Agencies shall make best efforts to avoid placing youthful inmates in isolation to comply with this provision. Absent exigent circumstances, agencies shall not deny youthful inmates daily large-muscle exercise and any legally required special education services to comply with this provision. Youthful inmates shall also have access to other programs and work opportunities to the extent possible.**

**§ 115.15  Limits to cross-gender viewing and searches.**

**(a) The facility shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners.**

See the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**, or current version of this policy.

**(b) As of August 20, 2015, or August 21, 2017 for a facility whose rated capacity does not exceed 50 inmates, the facility shall not permit cross-gender pat-down searches of female inmates, absent exigent circumstances. Facilities shall not restrict female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision.**

See the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**, or current version of this policy.

Post assignments may not be restricted on the basis of gender.  Institutions will evaluate operational concerns consistent with collective bargaining obligations, the Master Agreement, and other laws, rules, and regulations.  The agency will continue to comply with Title VII and other Equal Employment Opportunity Commission authorities in implementing this policy.

**(c) The facility shall document all cross-gender strip searches and cross-gender visual body cavity searches, and shall document all cross-gender pat-down searches of female inmates.**

(**Note.**  This provision's requirement to document cross-gender pat-down searches of female inmates is **not** implemented by this policy.)

**(d) The facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Such policies and procedures shall require staff of the opposite gender to announce their presence when entering an inmate housing unit.**

This section applies only to inmate housing units.  Further, this section is to provide notice in a housing unit; specific notice to individual inmates is not required.

The Bureau operates Medical Centers, which include medical housing units.  This provision does not apply to medical staff working on these units.

Inmates will be appropriately clothed in all common areas of the institution.

Inmates should only shower, perform bodily functions, and change clothing in designated areas (e.g. cells, shower rooms, bathrooms).  Housing unit officers of the opposite gender, or any other cross-gender staff, may view breasts, buttocks, or genitalia only in an exigent circumstances, or when incidental to security checks of these designated areas of the housing unit**.**

Staff are not required to make announcements when responding to temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility, or when incidental to routine cell checks, to include circumstances such as responding to alarms, contraband detection, or detecting behavior that would constitute an inmate prohibited act, for example.

Inmates will be notified of the presence of opposite-gender staff members in several ways:

- Inmates are advised of the requirement to remain clothed, and the presence of cross-gender staff generally, during the Intake Screening process and the Admission and Orientation process.

- The following notice must be posted on inmate bulletin boards and signs within housing units, including segregated housing areas: "NOTICE TO INMATES:  Male and female staff routinely work and visit inmate housing areas."

- For housing unit officers, an announcement is made at the beginning of primary shifts, or other appropriate time to be determined locally (e.g., 10:00 count instead of morning watch). The verbal announcement to each housing unit, including segregated housing areas, will be "Notice: Opposite-gender staff will be in housing units during this shift."  This announcement is made using the general public address system (e.g., from Control or Lieutenants' Office).  If the public address system does not cover these areas, an individual announcement in each housing area, including segregated housing areas, is made.

- For staff members with offices in the housing units; e.g., the Unit Team, the most recent schedule is posted in the unit so inmates are aware when opposite-gender staff are present. (**Note**:  this provision does not affect local scheduling procedures – quarterly, annually, 18 months, etc.)

As the agency has provided at least four ways to notify inmates that opposite-gender staff are present in the housing units, the only time an announcement is made is if a public address system is not working, or an opposite-gender staff member comes into a unit area who is not the assigned housing unit officer, or unit team member working there, and must go into individual cells, showers, or bathroom areas.

Any other announcement mechanism at the local level will be determined through collective bargaining in the local Institution Supplement.

Nothing in this section should preclude opposite-gender staff from viewing live or recorded video, or participating in an inmate suicide watch.

**(e) The facility shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status. If the inmate's genital status is unknown, it may be determined during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that**

**information as part of a broader medical examination conducted in private by a medical practitioner.**

This provision does not limit searches of inmates to ensure the safe and orderly running of the institution.

**(f) The agency shall train security staff in how to conduct cross-gender pat-down searches, and searches of transgender and intersex inmates, in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs.**

The Correctional Services Branch updates and maintains training materials on conducting pat-down searches of transgender and intersex inmates.

**§ 115.16  Inmates with disabilities and inmates who are limited English proficient.**

**(a) The agency shall take appropriate steps to ensure that inmates with disabilities (including, for example, inmates who are deaf or hard of hearing, those who are blind or have low vision, or those who have intellectual, psychiatric, or speech disabilities), have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment.  Such steps shall include, when necessary to ensure effective communication with inmates who are deaf or hard of hearing, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.  In addition, the agency shall ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities, including inmates who have intellectual disabilities, limited reading skills, or who are blind or have low vision.  An agency is not required to take actions that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity, or in undue financial and administrative burdens, as those terms are used in regulations promulgated under title II of the Americans With Disabilities Act, 28 CFR 35.164.**

The Institution PREA Compliance Manager should reach out to local disabilities assistance offices, as a resource, to ensure the facility is providing effective communication accommodations when a need for such an accommodation is known.  Staff take reasonable action to ensure that available methods of communication are provided to all inmates with disabilities for complete access to its efforts of preventing, detecting, and responding to sexual abuse and sexual harassment.

**(b) The agency shall take reasonable steps to ensure meaningful access to all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to inmates who are limited English proficient, including steps to provide interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.**

The Institution PREA Compliance Manager should reach out to available interpretation services to ensure the facility is providing effective communication accommodations when a need for such an accommodation is known.  Staff take reasonable action to ensure that available methods of communication are provided to all inmates who are limited English proficient for complete access to its efforts of preventing, detecting, and responding to sexual abuse and sexual harassment.

**(c) The agency shall not rely on inmate interpreters, inmate readers, or other types of inmate assistants except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the inmate's safety, the performance of first response duties under § 115.64, or the investigation of the inmate's allegations.**

**§ 115.17  Hiring and promotion decisions.**

**(a) The agency shall not hire or promote anyone who may have contact with inmates, and shall not enlist the services of any contractor, who may have contact with inmates, who:**

**(1) Has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997);**

**(2) Has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or**

**(3) Has been civilly or administratively adjudicated to have engaged in the activity described in paragraph (a)(2) of this section.**

**(b) The agency shall consider any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with inmates.**

For the purposes of this section, consideration of incidents of sexual harassment of inmates will not automatically preclude any current staff member from being transferred into another position or promoted within the Bureau, in accordance with its disciplinary/adverse action process and collective bargaining agreement, and applicable laws, rules, and regulations.

**(c) Before hiring new employees who may have contact with inmates, the agency shall:**

**(1) Perform a criminal background records check; and**

**(2) Consistent with Federal, State, and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual abuse.**

**(d) The agency shall also perform a criminal background records check before enlisting the services of any contractor who may have contact with inmates.**

**(e) The agency shall either conduct criminal background records checks at least every five years of current employees and contractors who may have contact with inmates or have in place a system for otherwise capturing such information for current employees.**

**(f) The agency shall ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in written applications or interviews for hiring or promotions and in any interviews or written self-evaluations conducted as part of reviews of current employees. The agency shall also impose upon employees a continuing affirmative duty to disclose any such misconduct.**

For current employees, the "reviews" referenced in this section mean the five-year background checks in section (e).

**(g) Material omissions regarding such misconduct, or the provision of materially false information, shall be grounds for termination.**

**(h) Unless prohibited by law, the agency shall provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work.**

The Bureau complies with the Federal Privacy Act and Freedom of Information Act, and all other applicable laws, rules, and regulations.

**§ 115.18  Upgrades to facilities and technologies.**

**(a) When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the agency shall consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect inmates from sexual abuse.**

**(b) When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, the agency shall consider how such technology may enhance the agency's ability to protect inmates from sexual abuse.**

All new facility designs and upgrades of technology will include consideration of how it could enhance the Bureau's ability to protect against sexual abuse.

## RESPONSIVE PLANNING

**§ 115.21  Evidence protocol and forensic medical examinations.**

**(a) To the extent the agency is responsible for investigating allegations of sexual abuse, the agency shall follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions.**

**(b) The protocol shall be developmentally appropriate for youth where applicable, and, as appropriate, shall be adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/ Adolescents," or similarly comprehensive and authoritative protocols developed after 2011.**

The Bureau's response to sexual assault follows the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," dated April 2013, or the most current version.

**(c) The agency shall offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiary or medically appropriate. Such examinations shall be performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible.  If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified medical practitioners.  The agency shall document its efforts to provide SAFEs or SANEs.**

When there is a report of a recent incident of sexual abuse, or there is a strong suspicion that a recent serious assault may have been sexual in nature, a physical examination of the alleged victim is conducted.  The victim is provided the opportunity for a forensic examination as soon as possible.  Physical evidence collection may also include an examination of and collection of physical evidence from the suspected perpetrator(s).

For further information see sections 115.64, 115.65, and 115.81-83.

In the case of inmate-on-staff sexual abuse, community medical/mental health resources and services will be made available to the staff member immediately.

**(d) The agency shall attempt to make available to the victim a victim advocate from a rape crisis center. If a rape crisis center is not available to provide victim advocate services, the agency shall make available to provide these services a qualified staff member from a community-based organization, or a qualified agency staff member. Agencies shall document efforts to secure services from rape crisis centers. For the purpose of this standard, a rape crisis center refers to an entity that provides intervention and related assistance, such as the services specified in 42 U.S.C. 14043g(b)(2)(C), to victims of sexual assault of all ages. The agency may utilize a rape crisis center that is part of a governmental unit as long as the center is not part of the criminal justice system (such as a law enforcement agency) and offers a comparable level of confidentiality as a nongovernmental entity that provides similar victim services.**

The Institution PREA Compliance Manager, with the assistance of Psychology Services, attempts to enter into agreement with a rape crisis center to make available a victim advocate to inmates being evaluated for the collection of forensic evidence. If an agreement is not reached, efforts must be documented. Properly trained Psychology or Chaplaincy Services staff members may provide victim services locally, if a rape crisis center is not available.

**(e) As requested by the victim, the victim advocate, qualified agency staff member, or qualified community-based organization staff member shall accompany and support the victim through the forensic medical examination process and investigatory interviews and shall provide emotional support, crisis intervention, information, and referrals.**

Victim advocates from the community used by the Bureau are preauthorized by the agreement established in section (d). The victim advocate serves as emotional and general support, navigating the inmate through the treatment and evidence collection process. The victim advocate has access to the inmate similar to that of medical staff at the facility. He/she is not authorized to make decisions regarding inmate care, or interfere with escort procedures as outlined in the Program Statement **Escorted Trips**.

**(f) To the extent the agency itself is not responsible for investigating allegations of sexual abuse, the agency shall request that the investigating agency follow the requirements of paragraphs (a) through (e) of this section.**

**(g) The requirements of paragraphs (a) through (f) of this section shall also apply to:**

**(1) Any State entity outside of the agency that is responsible for investigating allegations of sexual abuse in prisons or jails; and**

**(2) Any Department of Justice component that is responsible for investigating allegations of sexual abuse in prisons or jails.**

**(h) For the purposes of this section, a qualified agency staff member or a qualified community-based staff member shall be an individual who has been screened for appropriateness to serve in this role and has received education concerning sexual assault and forensic examination issues in general.**

A qualified agency staff member meets the education requirement of this section by virtue of his/her degree or vocational training, or through specialized training offered by the Bureau.

**§ 115.22  Policies to ensure referrals of allegations for investigations.**

**(a) The agency shall ensure that an administrative or criminal investigation is completed for all allegations of sexual abuse and sexual harassment.**

**(b) The agency shall have in place a policy to ensure that allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to conduct criminal investigations, unless the allegation does not involve potentially criminal behavior.  The agency shall publish such policy on its Web site or, if it does not have one, make the policy available through other means. The agency shall document all such referrals.**

Under this section, criminal investigations are referred consistent with the Program Statement **Criminal Matter Referrals**.

**(c) If a separate entity is responsible for conducting criminal investigations, such publication shall describe the responsibilities of both the agency and the investigating entity.**

**(d) Any State entity responsible for conducting administrative or criminal investigations of sexual abuse or sexual harassment in prisons or jails shall have in place a policy governing the conduct of such investigations.**

**(e) Any Department of Justice component responsible for conducting administrative or criminal investigations of sexual abuse or sexual harassment in prisons or jails shall have in place a policy governing the conduct of such investigations.**

**TRAINING AND EDUCATION**

**§ 115.31  Employee training.**

**(a) The agency shall train all employees who may have contact with inmates on:**

**(1) Its zero-tolerance policy for sexual abuse and sexual harassment;**

**(2) How to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures;**

**(3) Inmates' right to be free from sexual abuse and sexual harassment;**

**(4) The right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment;**

**(5) The dynamics of sexual abuse and sexual harassment in confinement;**

**(6) The common reactions of sexual abuse and sexual harassment victims;**

**(7) How to detect and respond to signs of threatened and actual sexual abuse;**

**(8) How to avoid inappropriate relationships with inmates;**

**(9) How to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates; and**

**(10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities.**

Staff training includes a component on crime scene preservation for first responders, taking into consideration the physical design of the institution, as indicated in section 115.64.

**(b) Such training shall be tailored to the gender of the inmates at the employee's facility. The employee shall receive additional training if the employee is reassigned from a facility that houses only male inmates to a facility that houses only female inmates, or vice versa.**

Annual refresher training takes the gender of the inmate population at each facility into account. Transferring staff members receive gender-appropriate training, as needed.

**(c) All current employees who have not received such training shall be trained within one year of the effective date of the PREA standards, and the agency shall provide each employee with refresher training every two years to ensure that all employees know the agency's current sexual abuse and sexual harassment policies and procedures.  In years in which an employee does not receive refresher training, the agency shall provide refresher information on current sexual abuse and sexual harassment policies.**

- ■ **New Employees.**  For new employees, a discussion of the Sexually Abusive Behavior Prevention and Intervention Program must be a part of  Introduction to Correctional Techniques Phase I and Phase II.  Specific staff responsibilities included in policy are outlined.

■ **Current Employees.**  For current staff, information about the program is included yearly as a part of Annual Training.  Each Warden designates a staff member to conduct this training from the areas responsible for policy implementation (e.g., the Institution PREA Compliance Manager, or supervisory staff from Correctional Services, Psychology Services, Health Services, etc.).

■ **Specialized Training.**  Discipline-specific training is available at the institution level to staff who are likely to be most involved in the management and treatment of sexually abused victims and the perpetrators (Health Services staff, Psychologists, Lieutenants, etc.).  Specialized training is provided to these disciplines as part of their comprehensive training.  Further information on required specialized training is provided below.

**(d) The agency shall document, through employee signature or electronic verification, that employees understand the training they have received.**

Participation must be documented through employee signature or electronic verification.  Participation documentation will note that employees understood the training they have received.  At the conclusion of the training, employees are asked to seek additional supervisory direction, if necessary, to ensure understanding of the training.

**§ 115.32  Volunteer and contractor training.**

**(a) The agency shall ensure that all volunteers and contractors who have contact with inmates have been trained on their responsibilities under the agency's sexual abuse and sexual harassment prevention, detection, and response policies and procedures.**

**(b) The level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates, but all volunteers and contractors who have contact with inmates shall be notified of the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and informed how to report such incidents.**

**(c) The agency shall maintain documentation confirming that volunteers and contractors understand the training they have received.**

Participation must be documented through volunteer and contractor signature or electronic verification, and will indicate that the volunteer and contractor understood the training they have received.  At the conclusion of the training, volunteers and contractors are asked to seek additional direction from Bureau staff, if necessary, to ensure understanding of the training.

**§ 115.33  Inmate education.**

**(a) During the intake process, inmates shall receive information explaining the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment.**

The Bureau's Admission and Orientation (A&O) Pamphlet on Sexually Abusive Behavior Prevention and Intervention is provided to each inmate at intake screening. It describes the key elements of the program and informs inmates of the Bureau's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents of sexual abuse. It also provides inmates notice that male and female staff routinely work and visit inmate housing areas. This pamphlet is available to staff on the PREA Sallyport site.

**(b) Within 30 days of intake, the agency shall provide comprehensive education to inmates either in person or through video regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents, and regarding agency policies and incidents.**

During the A&O Program, a staff member, designated by the Warden, presents the Sexually Abusive Behavior Prevention and Intervention Program. This presentation must include:

- Definitions of sexually abusive behavior and sexual harrassment.
- Prevention strategies the inmate can take to minimize his/her risk of sexual victimization while in BOP custody.
- Methods of reporting an incident of sexually abusive behavior against oneself, and for reporting allegations of sexually abusive behavior involving other inmates, including reporting procedures directly to Regional Staff, if desired.
- Methods of reporting an incident of sexual harassment against oneself, and for reporting allegations of sexual harassment involving other inmates.
- Treatment options and programs available to inmate victims of sexually abusive behavior and sexual harassment.
- Monitoring, discipline, and prosecution of sexual perpetrators.
- Notice that male and female staff routinely work and visit inmate housing areas.

In addition, where inmates do not participate in a formal A&O program (e.g., WITSEC, pretrial, or SHU inmates), the Warden designates a staff member to ensure these inmates receive information on the Bureau's Sexually Abusive Behavior Prevention and Intervention Program within 30 days of intake. This is documented in the same manner as for inmates who participated during the regularly scheduled A&O session.

**(c) Current inmates who have not received such education shall be educated within one year of the effective date of the PREA standards, and shall receive education upon transfer to a different facility to the extent that the policies and procedures of the inmate's new facility differ from those of the previous facility.**

**(d) The agency shall provide inmate education in formats accessible to all inmates, including those who are limited English proficient, deaf, visually impaired, or otherwise disabled, as well as to inmates who have limited reading skills.**

Refer to section 115.16 above.

**(e) The agency shall maintain documentation of inmate participation in these education sessions.**

The A&O forms are filed in the Inmate Central File or pretrial/holdover files.

**(f) In addition to providing such education, the agency shall ensure that key information is continuously and readily available or visible to inmates through posters, inmate handbooks, or other written formats.**

In each housing unit, the following will be posted:

- A notice to inmates stating, "Male and female staff routinely work and visit inmate housing areas."
- A poster reflecting the BOP's zero tolerance for sexual abuse and harassment and contact information for inmate reporting of sexual abuse allegations.

**§ 115.34  Specialized training: Investigations.**

**(a) In addition to the general training provided to all employees pursuant to § 115.31, the agency shall ensure that, to the extent the agency itself conducts sexual abuse investigations, its investigators have received training in conducting such investigations in confinement settings.**

The Chief of Correctional Services ensures his/her Special Investigative Supervisor/Special Investigative Agents are appropriately trained under this section.  The Chief of the Office of Internal Affairs ensures his/her staff are appropriately trained under this section.

**(b) Specialized training shall include techniques for interviewing sexual abuse victims, proper use of *Miranda* and *Garrity* warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral.**

The Bureau trains on the rights and warnings applicable in the Federal sector, and as referenced in the Master Agreement.

**(c) The agency shall maintain documentation that agency investigators have completed the required specialized training in conducting sexual abuse investigations.**

**(d) Any State entity or Department of Justice component that investigates sexual abuse in confinement settings shall provide such training to its agents and investigators who conduct such investigations.**

**§ 115.35  Specialized training: Medical and mental health care.**

**(a) The agency shall ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in:**

**(1) How to detect and assess signs of sexual abuse and sexual harassment;**

**(2) How to preserve physical evidence of sexual abuse;**

**(3) How to respond effectively and professionally to victims of sexual abuse and sexual harassment; and**

**(4) How and to whom to report allegations or suspicions of sexual abuse and sexual harassment.**

The Health Services Division ensures medical staff are appropriately trained under this section. The Reentry Services Division ensures mental health staff are appropriately trained under this section.

Please note, training under this section does **not** refer to certifications needed to conduct forensic examinations.

**(b) If medical staff employed by the agency conduct forensic examinations, such medical staff shall receive the appropriate training to conduct such examinations.**

**(c) The agency shall maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the agency or elsewhere.**

**(d) Medical and mental health care practitioners shall also receive the training mandated for employees under § 115.31 or for contractors and volunteers under §115.32, depending upon the practitioner's status at the agency.**


**SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS**

**§ 115.41  Screening for risk of victimization and abusiveness.**

**(a) All inmates shall be assessed during an intake screening and upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates.**

All inmates entering an institution are screened as directed by Health Services, Psychology Services, and Unit Management policies.  Further information on intake mental health screenings is in section 115.81, below. The following steps should be taken:

- **Inmates with a history of sexual victimization while in BOP custody.**  When, during the intake screening process, staff identify inmates with a history of sexual victimization within BOP custody (e.g., from self-report or from review of available documents, such as judgment and commitment orders, criminal records, pre-sentence investigation reports, Inmate Central

File data, etc.), they must refer the inmate to Psychology Services.  If not previously documented on BOP records, staff must notify the Chief of Correctional Services of the inmate's report of victimization to ensure that appropriate steps (investigation, documentation, CIMS concerns, etc.) have been taken.  The Chief of Correctional Services also updates any current SENTRY STG assignment pertaining to the alleged victim.

- **Inmates with a history of sexual victimization while in a non-BOP setting.**  If victimization occurred in a non-BOP setting, staff should document information, and appropriate psychological treatment and monitoring will be provided if needed.

- **Inmates with a history of sexual predation.**  When, during the intake screening process, staff identify inmates with a history of sexual predation (e.g., from self-report or from review of available documents such as judgment and commitment orders, criminal records, pre-sentence investigation reports, Inmate Central File data, etc.), staff must refer the inmate to Psychology Services.

  If incidents of sexual predation have not previously been documented on BOP records, staff must notify the Chief of Correctional Services of the inmate's history of predation to ensure that appropriate steps (investigation, documentation, CIMS concerns, etc.) have been taken. The Chief of Correctional Services also updates a current SENTRY STG assignment pertaining to the alleged perpetrator.  In addition, inmates identified as perpetrators will be included in the Posted Picture file, pursuant to policy.

**(b) Intake screening shall ordinarily take place within 72 hours of arrival at the facility.**

**(c) Such assessments shall be conducted using an objective screening instrument.**

Staff are required to use the Bureau's Program Statement **Intake Screening**, which outlines issues and steps to take during the intake screening process generally, including issues concerning sexual abuse and sexual assault.  The Unit Team uses the Intake Screening Form during the intake process.

To complete the Intake Screening Form, the staff must use the PREA Intake Objective Screening Instrument, Attachment A, for guidance.  The PREA Intake Objective Screening Instrument encompasses all factors listed in section (d) of this subsection.  Ample copies of the PREA Intake Objective Screening Instrument will be maintained in the area of the institution where intake is conducted by Unit Management.

The PREA Intake Objective Screening Instrument should be completed using only information available to staff at the time of intake, and with the purpose of referring the inmate for further assessment if needed.

After applying the criteria on the PREA Intake Objective Screening Instrument, staff complete the "Intake Screening Form" and must note any specific information in the comment section applicable to victimization or abusiveness.  If none of the PREA Intake Screening Objective

Instrument criteria apply, staff make an entry stating, "No apparent PREA criteria met," in the comment section applicable to victimization or abusiveness.

If further assessment is needed after documenting and applying the criteria, an inmate is considered "at-risk" until a final determination is made by Psychology Services or Correctional Services. Referrals to Psychology Services or Correctional Services are documented at the local level.

Inmates are encouraged to disclose as much information as possible for the agency to provide the most protection possible under this policy. If an inmate chooses not to respond to questions relating to his/her level of risk, he/she may not be disciplined, as described in section (h) of this subsection.

Sensitive information is limited to staff who have a need to know.

**(d) The intake screening shall consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization:**

**(1) Whether the inmate has a mental, physical, or developmental disability;**

**(2) The age of the inmate;**

**(3) The physical build of the inmate;**

**(4) Whether the inmate has previously been incarcerated;**

**(5) Whether the inmate's criminal history is exclusively nonviolent;**

**(6) Whether the inmate has prior convictions for sex offenses against an adult or child;**

**(7) Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming;**

**(8) Whether the inmate has previously experienced sexual victimization;**

**(9) The inmate's own perception of vulnerability; and**

**(10) Whether the inmate is detained solely for civil immigration purposes.**

Some inmates are "at risk" for victimization due to one or a combination of factors such as physical appearance (small in stature, effeminate, etc.); demeanor (weak/nonassertive, anxious, depressed); special situations (e.g., high-profile, sexual activity with a child, first-time offender); or special needs (cognitive limitations, social inadequacy, developmental disability, etc.).

**(e) The initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or**

**sexual abuse, as known to the agency, in assessing inmates for risk of being sexually abusive.**

Some inmates pose a serious risk of engaging in sexually abusive behavior while in BOP custody because of their history of sexually abusive behaviors while in prison (stalking, excessive sexual preoccupation, etc.), or from the criminal history.  In the case of inmates "at risk" for perpetration, Correctional Services should be notified by Psychology Services.

**(f) Within a set time period, not to exceed 30 days from the inmate's arrival at the facility, the facility will reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening.**

Psychology Services staff reassess the inmate's risk level whenever warranted and within 30 days of arrival at the institution, based upon any additional information.  Reassessment is not required if no additional information is received after intake screening.

**(g) An inmate's risk level shall be reassessed when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness.**

Psychology Services staff reassess the inmate's risk level whenever warranted based upon receipt of additional relevant information (e.g., incident of sexual abuse, protective custody request, recent diagnosis of gender dysphoria, etc.).

**(h) Inmates may not be disciplined for refusing to answer, or for not disclosing complete information in response to, questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section.**

If an inmate refuses to respond or elects not to disclose information that applies only to questions about disabilities; Gay, Lesbian, Bisexual, Transgender, Intersex (GLBTI) status; gender nonconformance; previous sexual victimization; and the inmate's self-perception of vulnerability, he/she may not be disciplined.

**(i) The agency shall implement appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates.**

Any information related to sexual victimization or abusiveness, including the information entered into the comment section of the Intake Screening Form, is limited to a need-to-know basis for staff, only for the purpose of treatment and security and management decisions, such as housing and cell assignments, as well as work, education, and programming assignments.

## § 115.42  Use of screening information.

**(a) The agency shall use information from the risk screening required by § 115.41 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.**

Once an inmate has been identified as a victim or perpetrator, or as "at risk" for victimization or perpetration, Unit Management should review classification options.  These options may include transfer to a special treatment program (e.g., Sex Offender Management Program), transfer to a greater or lesser security facility (e.g., management variable), application of a PSF (e.g., sex offender), or changes in housing units, cell assignments, work assignments, and/or education assignments.

**(b) The agency shall make individualized determinations about how to ensure the safety of each inmate.**

**(c) In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.**

**(d) Placement and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate.**

**(e) A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration.**

**(f) Transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.**

**(g) The agency shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates.**

## § 115.43  Protective custody.

**(a) Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an**

**assessment immediately, the facility may hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment.**

Inmates are placed in administrative detention in accordance with the Program Statement **Special Housing Units**.

**(b) Inmates placed in segregated housing for this purpose shall have access to programs, privileges, education, and work opportunities to the extent possible. If the facility restricts access to programs, privileges, education, or work opportunities, the facility shall document:**

   **(1) The opportunities that have been limited;**

   **(2) The duration of the limitation; and**

   **(3) The reasons for such limitations.**

When an inmate is placed in special housing involuntarily, access to programs, privileges, education, or work should not be interrupted, to the extent possible.  If they are limited, the Chief of Correctional Services ensures that documentation exists reflecting the limitation, duration, and rationale for limitation.

**(c) The facility shall assign such inmates to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.**

**(d) If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, the facility shall clearly document:**

   **(1) The basis for the facility's concern for the inmate's safety; and**

   **(2) The reason why no alternative means of separation can be arranged.**

When determining an appropriate method of safeguarding the inmate assigned "at risk" for victimization, the Warden ensures all options are considered by completing, signing, and dating form BP-A1002, Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation.  The Warden should evaluate the least restrictive methods for separation of the alleged victim and alleged perpetrator.

The completed BP-A1002 is stamped "FOI EXEMPT" and placed in the Privacy Section of the Inmate Central File to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates.  If information gathered leads to an investigation, the BP-A1002 becomes part of the investigative file.  The completed form is e-mailed to BOP-CPD/PREA COORDINATOR and filed with the investigative case.

Psychologists are responsible for crisis intervention, assessment of treatment needs, documentation of the evaluation results, treatment, psychiatric referral, and other treatment options related to the alleged at-risk inmate.

**(e) Every 30 days, the facility shall afford each such inmate a review to determine whether there is a continuing need for separation from the general population.**

The inmate's status is reviewed during weekly Special Housing Unit meetings.

## REPORTING

### § 115.51  Inmate reporting.

**(a) The agency shall provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents.**

Bureau inmates are encouraged to report allegations to staff at all levels, including local, regional and Central Office.  They are also currently provided with avenues of internal reporting, such as telephonically to a specific department (such as the Special Investigative lieutenant), or by mail to an outside entity.  Inmates are provided information on reporting mechanisms as noted in section 115.33.

**(b) The agency shall also provide at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of the agency, and that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials, allowing the inmate to remain anonymous upon request. Inmates detained solely for civil immigration purposes shall be provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security.**

Inmates are provided contact information and access to the Office of Inspector General to make such reports.

**(c) Staff shall accept reports made verbally, in writing, anonymously, and from third parties and shall promptly document any verbal reports.**

For the purpose of this section, information received anonymously refers to "drop-notes" or other written communication.  Non-investigatory staff do not offer anonymity to inmates.

**(d) The agency shall provide a method for staff to privately report sexual abuse and sexual harassment of inmates.**

Staff reporting requirements are addressed in the Program Statement **Standards of Employee Conduct**.  For the purposes of this section, staff may contact any supervisory staff at the local

institution, Regional staff, or Central Office staff, including the Regional PREA Coordinators and the National PREA Coordinator.  Allegations involving staff members may also be reported to the Office of Internal Affairs or the Office of Inspector General, as appropriate.

**§ 115.52  Exhaustion of administrative remedies.**

See the Program Statement **Administrative Remedy Program**, or current version of the policy.

**§ 115.53  Inmate access to outside confidential support services.**

**(a) The facility shall provide inmates with access to outside victim advocates for emotional support services related to sexual abuse by giving inmates mailing addresses and telephone numbers, including toll-free hotline numbers where available, of local, State, or national victim advocacy or rape crisis organizations, and, for persons detained solely for civil immigration purposes, immigrant services agencies. The facility shall enable reasonable communication between inmates and these organizations and agencies, in as confidential a manner as possible.**

The Institution PREA Compliance Manager, with the assistance of Psychology Services staff, seeks to establish an agreement with community service providers who are able to provide confidential emotional support services as it relates to sexual abuse.  If an agreement is not feasible, the attempts are documented.  Staff take reasonable action to ensure that information on available resources is provided to all inmates so that they have access to the Bureau's efforts in preventing, detecting, and responding to sexual abuse and sexual harassment.  Staff also provide contact information and confidential communication services, as reasonably as possible.

"Confidential" communications under this section are distinguished from privileged communications, such as in attorney-client relationship.  Communications are monitored in a manner consistent with agency security practices, and should be addressed in any memorandum of understanding with the outside victim advocacy organization.

**(b) The facility shall inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws.**

**(c) The agency shall maintain or attempt to enter into memoranda of understanding or other agreements with community service providers that are able to provide inmates with confidential emotional support services related to sexual abuse. The agency shall maintain copies of agreements or documentation showing attempts to enter into such agreements.**

## § 115.54  Third-party reporting.

**The agency shall establish a method to receive third-party reports of sexual abuse and sexual harassment and shall distribute publicly information on how to report sexual abuse and sexual harassment on behalf of an inmate.**

The Bureau posts publicly, and maintains, the third-party reporting avenue on its public website.


## OFFICIAL RESPONSE FOLLOWING AN INMATE REPORT

### § 115.61  Staff and agency reporting duties.

**(a) The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.**

All staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or, where appropriate, in accordance with the Program Statement **Standards of Employee Conduct**.

Staff provide a written follow-up memorandum to the Operations Lieutenant to document such a report, in accordance with Article 6 of the Master Agreement.

The Operations Lieutenant notifies the PREA Compliance Manager.

Allegations of inmate-on-inmate and inmate-on-staff sexual abuse must be entered in TRUINTEL via the Report of Incident form (BP-A0583).  Reports must indicate whether the allegation involved Abusive Sexual Contact or a Non-Consensual Sexual Act.  The Institution PREA Compliance Manager will forward a copy of the BP-A0583 to the appropriate Regional PREA Coordinator; the number of BP-A0583's that pertain to inmate-on-inmate and inmate-on-staff sexual abuse will be sent to the National PREA Coordinator.

Once reported, an evaluation by the Institution PREA Compliance Manager of whether a full response protocol is needed will be made (see section 115.65).

In addition to reporting information, staff intervene as appropriate (e.g., writing an incident report), in behaviors that may subsequently lead to an incident of sexual abuse.

Staff should be aware of the following in determining what information to report:

Detection requires an awareness by staff of institution or unit climate and the reputations and behaviors of inmates – through actively paying attention to the following, for example:

- Inmate communications.
- Comments to staff.
- Posted picture files, and Correctional Services "confidentials."
- Inmate interactions.
- Changes in inmate behavior (eating, sleeping, hygiene, work habits, etc.).
- Isolated or "hot" areas of the institution.

By observing factors such as these, staff are able to better detect sexually abusive behavior, and possibly deter problems **before they occur, or before they escalate.**

**(b) Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions.**

The information concerning the identity of the alleged inmate victim and the specific facts of the case are limited to staff who need to know because of their involvement with the victim's welfare and the investigation of the incident.  This is important not only to preserve the victim's privacy but to preserve maximum flexibility to investigate the allegations.  It is appropriate under this section to forward reports to the Operations Lieutenant through the staff member's supervisor.

**(c) Unless otherwise precluded by Federal, State, or local law, medical and mental health practitioners shall be required to report sexual abuse pursuant to paragraph (a) of this section and to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at the initiation of services.**

**(d) If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute, the agency shall report the allegation to the designated State or local services agency under applicable mandatory reporting laws.**

**(e) The facility shall report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators.**

Staff must report and respond to allegations of sexually abusive behavior, regardless of the source of the report (e.g., "third party").

The Institution PREA Compliance Manager refers the incident for investigation to the appropriate office, and reviews the incident for any further response.  As the severity of the sexually abusive behavior increases, so should the level of response.

**§ 115.62  Agency protection duties.**

**When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate.**

In cases where the alleged perpetrator is another inmate, the Operations Lieutenant is notified immediately and immediately safeguards the inmate (which will vary depending on the severity of the alleged sexually abusive behavior and could include monitoring the situation, changing housing assignments, changing work assignment, placing alleged victim and perpetrator in Special Housing, etc.). The Operations Lieutenant promptly refers all inmates reported or suspected of being the victim of sexually abusive behavior to Psychology Services for assessment of vulnerability and treatment needs. The Operations Lieutenant also notifies the Institution PREA Compliance Manager.

If the alleged perpetrator is a staff member, all options for safeguarding the inmate should be considered as described in the above paragraph. The decisions made to safeguard the inmate should take impact on staff member into account, in accordance with the Master Agreement. Removal from the facility is an extreme measure, and other options include reassignment to another unit or post, or other measures that will effectively separate the staff member from the inmate.

If the alleged perpetrator is an inmate, and a staff member is the subject of abuse or harassment, all options for safeguarding the staff member should be considered. Options should include reassignment of the inmate to another housing unit, writing incident reports, assignment to the Special Housing Unit, criminal prosecution if appropriate, etc., in accordance with the Program Statements **Inmate Discipline Program** and **Special Housing Units**, among other options that will effectively separate the inmate from the staff member.

## § 115.63  Reporting to other confinement facilities.

**(a) Upon receiving an allegation that an inmate was sexually abused while confined at another facility, the head of the facility that received the allegation shall notify the head of the facility or appropriate office of the agency where the alleged abuse occurred.**

In cases where there is an allegation that sexually abusive behavior occurred at another Bureau facility, the Warden (or his/her designee) of the victim's current facility reports the allegation to the Warden of the identified institution. In cases alleging sexual abuse by staff at another institution, the Warden of the inmate's current facility refers the matter directly to the Office of Internal Affairs.

For non-Bureau secure privatized facilities, jails, juvenile facilities, and Residential Reentry Centers, the Warden will contact the appropriate office of the facility, and notify the Privatization Management or the Residential Reentry Management Branches, as appropriate.

For non-Bureau facilities, the Warden (or his/her designee) contacts the appropriate office of that correctional agency.

**(b) Such notification shall be provided as soon as possible, but no later than 72 hours after receiving the allegation.**

**(c) The agency shall document that it has provided such notification.**

**(d) The facility head or agency office that receives such notification shall ensure that the allegation is investigated in accordance with these standards.**

**§ 115.64  Staff first responder duties.**

**(a) Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to:**

**(1) Separate the alleged victim and abuser;**

**(2) Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence;**

**(3) If the abuse occurred within a time period that still allows for the collection of physical evidence, request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and**

**(4) If the abuse occurred within a time period that still allows for the collection of physical evidence, ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating.**

**(b) If the first staff responder is not a security staff member, the responder shall be required to request that the alleged victim not take any actions that could destroy physical evidence, and then notify security staff.**

The staff first responder must preserve the crime scene.  SIS staff are responsible for collecting information/evidence.  The investigation, in coordination with the agency to which the case may be referred, must follow the guidance given in agency policies and practices concerning evidence gathering and processing procedures.

**§ 115.65  Coordinated response.**

**The facility shall develop a written institutional plan to coordinate actions taken in response to an incident of sexual abuse, among staff first responders, medical and mental health practitioners, investigators, and facility leadership.**

All staff report incidents of sexual abuse to the Operations Lieutenant (see section 115.61).

The Operations Lieutenant immediately safeguards the inmate (see sections 115.43, 115.62).

The Operations Lieutenant promptly refers all inmates reported or suspected of being the victim of sexually abusive behavior to the Health Services Unit (or the on-call clinician during non-

business hours) for physical assessment and documentation of injuries (see sections 115.21, 115.82).

The Operations Lieutenant promptly refers all inmates reported or suspected of being the victim of sexually abusive behavior to Psychology Services for assessment of vulnerability and treatment needs (see section 115.82).

In addition, during business hours, the Operations Lieutenant ensures that the SIS, Chief of Correctional Services, Institution PREA Compliance Manager, and Warden are notified.  During non-business hours, the Operations Lieutenant ensures that the SIS, Chief of Correctional Services, Institution PREA Compliance Manager, Duty Officer, Health Services staff, and on-call Psychologist are notified.

The Institution PREA Compliance Manager reviews relevant factors and makes a determination whether or not to proceed with full activation of the Response Protocol.  Not all allegations of sexually abusive behavior require full activation of the protocol.  In some cases, the Institution PREA Compliance Manager will determine that there is not sufficient reason to proceed (the alleged victim credibly recanted; the alleged perpetrator was not in the institution on the date of the allegation, etc.) and the Response Protocol may be terminated.

In cases where more information is needed, or where there is a credible and serious allegation or instance of sexually abusive behavior, the full Response Protocol must be implemented.

Once the Institution PREA Compliance Manager determines that the intervention should continue, a sensitive and coordinated response is necessary.  Services will be provided in an environment that meets both security and therapeutic needs.

The full Response Protocol, monitored by the Institution PREA Compliance Manager, involves the following components:

- Correctional Services safeguard the inmate (see section 115.62); engage in evidence collection and preservation at the institution, including inmate clothing and footware (see section 115.64); investigate cases involving inmate perpetrators (see section 115.71); arrange for outside medical trips if necessary in accordance with the Program Statement **Escorted Trips**; and ensure that STG categories for victims and predators are entered into SENTRY (see section 115.87).

- Psychologists are responsible for crisis intervention, assessment of treatment needs, documentation of the evaluation results, treatment, psychiatric referral, and other treatment options related to the alleged victim (see section 115.82).  Psychologists also notify the qualified agency staff member or the outside victim advocate, if necessary, to assist the inmate (see section 115.21).

- Properly trained Health Services clinicians are responsible for assessment, examination, documentation, and treatment of inmate injuries arising from incidents of sexual abuse, including testing when appropriate for pregnancy, HIV, and other sexually transmissible infections (STIs) (see sections 115.82 and 115.83).  Where indicated, medical staff, trained in the collection of sexual assault evidence (e.g., "rape kit") should conduct an examination for

physical evidence that may be used later in formal investigations, or refer the inmate to trained health care professionals from the local community or at the local community facility equipped (in accordance with local laws) to evaluate and treat sexual assault victims (see sections 115.21 and 115.81).

After responding to the initial incident, staff noted above have additional responsibilities for follow-up with the inmate victim, which are covered in sections 115.66-68, 115.76-78, and 115.81-83.

**§ 115.66  Preservation of ability to protect inmates from contact with abusers.**

The collective bargaining process in the Bureau will be completed pursuant to Title 5 of the United States Code, and all other applicable laws, rules, and regulations, including third-party appeals.

**(a) Neither the agency nor any other governmental entity responsible for collective bargaining on the agency's behalf shall enter into or renew any collective bargaining agreement or other agreement that limits the agency's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted.**

**(b) Nothing in this standard shall restrict the entering into or renewal of agreements that govern:**

**(1) The conduct of the disciplinary process, as long as such agreements are not inconsistent with the provisions of §§ 115.72 and 115.76; or**

**(2) Whether a no-contact assignment that is imposed pending the outcome of an investigation shall be expunged from or retained in the staff member's personnel file following a determination that the allegation of sexual abuse is not substantiated.**

**§ 115.67  Agency protection against retaliation.**

**(a) The agency shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff, and shall designate which staff members or departments are charged with monitoring retaliation.**

**(b) The agency shall employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations.**

**(c) For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct and treatment of inmates or staff who reported the sexual abuse and of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff, and shall act promptly to remedy any such retaliation.  Items the agency should monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments of staff.  The agency shall continue such monitoring beyond 90 days if the initial monitoring indicates a continuing need.**

The Institution PREA Compliance Manager monitors staff and inmates who have reported sexual abuse allegations to protect them from retaliation for 90 days.  However, if the initial monitoring indicates a continuing need, periodic status checks occur.

**(d) In the case of inmates, such monitoring shall also include periodic status checks.**

**(e) If any other individual who cooperates with an investigation expresses a fear of retaliation, the agency shall take appropriate measures to protect that individual against retaliation.**

**(f) An agency's obligation to monitor shall terminate if the agency determines that the allegation is unfounded.**

**§ 115.68  Post-allegation protective custody.**

**Any use of segregated housing to protect an inmate who is alleged to have suffered sexual abuse shall be subject to the requirements of § 115.43.**

See section 115.43.  Form BP-A1002, Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation, is also used in cases of post-allegation protective custody.


**INVESTIGATIONS**

**§ 115.71  Criminal and administrative agency investigations.**

**(a) When the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, it shall do so promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports.**

At the conclusion of the investigation, the allegations must be indicated as:

- ■ Substantiated.
- ■ Unsubstantiated (may have occurred, but insufficient evidence to prove).
- ■ Unfounded (evidence proves that this could not have happened).

Upon activating the full Response Protocol, the investigation phase is initiated and the following notification(s) must be made:

(1) **Inmate Perpetrator on Inmate Victim**.  In the event that an inmate is alleged to have perpetrated sexually abusive behavior against another inmate, the Special Investigative Agent (or SIS) is notified immediately.

(2) **Staff Perpetrator on Inmate Victim**.  In the event that a staff member is alleged to have perpetrated sexually abusive behavior against an inmate, the Warden is notified immediately. The Warden notifies the Regional Director and the Office of Internal Affairs (OIA), who in turn notify the Office of the Inspector General (OIG), and, when appropriate, the Federal Bureau of Investigation (FBI).

(3) **Inmate Perpetrator on Staff Victim**.  In the event that an inmate is alleged to have perpetrated sexually abusive behavior against a staff member, the SIA/SIS must be contacted immediately, with follow-up notification to the Warden.  The Warden refers these matters for criminal investigation and possible prosecution in accordance with the Program Statement **Criminal Matter Referrals**.

**(b) Where sexual abuse is alleged, the agency shall use investigators who have received special training in sexual abuse investigations pursuant to § 115.34.**

**(c) Investigators shall gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data; shall interview alleged victims, suspected perpetrators, and witnesses; and shall review prior complaints and reports of sexual abuse involving the suspected perpetrator.**

**Note**.  this is a separate responsibility from staff first responders addressed in section 115.64. These duties are carried out by the appropriate investigative agency (e.g., SIS, OIA, OIG, FBI).

Previous unsubstantiated or unfounded complaints and reports may not be used as evidence.

**(d) When the quality of evidence appears to support criminal prosecution, the agency shall conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution.**

**(e) The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as inmate or staff.  No agency shall require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding with the investigation of such an allegation.**

**(f) Administrative investigations:**

**(1) Shall include an effort to determine whether staff actions or failures to act contributed to the abuse; and**

**(2) Shall be documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings.**

Administrative investigations should also consider information on whether other factors such as physical layouts, staffing patterns, institution operations, etc., contributed to the abuse.

**(g) Criminal investigations shall be documented in a written report that contains a thorough description of physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible.**

**(h) Substantiated allegations of conduct that appears to be criminal shall be referred for prosecution.**

**(i) The agency shall retain all written reports referenced in paragraphs (f) and (g) of this section for as long as the alleged abuser is incarcerated or employed by the agency, plus five years.**

**(j) The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation.**

**(k) Any State entity or Department of Justice component that conducts such investigations shall do so pursuant to the above requirements.**

**(l) When outside agencies investigate sexual abuse, the facility shall cooperate with outside investigators and shall endeavor to remain informed about the progress of the investigation.**

**§ 115.72  Evidentiary standard for administrative investigations.**

**The agency shall impose no standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated.**

The Bureau applies this section in accordance with its disciplinary/adverse action process and collective bargaining agreement, and applicable laws, rules, and regulations.

**§ 115.73  Reporting to inmates.**

**(a) Following an investigation into an inmate's allegation that he or she suffered sexual abuse in an agency facility, the agency shall inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded.**

The Special Investigative Lieutenant provides all notifications to inmates required under this section.

**(b) If the agency did not conduct the investigation, it shall request the relevant information from the investigative agency in order to inform the inmate.**

**(c) Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, the agency shall subsequently inform the inmate (unless the agency has determined that the allegation is unfounded) whenever:**

**(1) The staff member is no longer posted within the inmate's unit;**

**(2) The staff member is no longer employed at the facility;**

**(3) The agency learns that the staff member has been indicted on a charge related to sexual abuse within the facility; or**

**(4) The agency learns that the staff member has been convicted on a charge related to sexual abuse within the facility.**

An assessment of whether actions described in (c)(1)-(4) above are warranted is made in accordance with section 115.65, and may not be appropriate in all cases.  Inmates are notified only if there is a nexus between the listed actions in this section and an incident of sexual abuse. The timing of such notifications should not interfere with any pending criminal or administrative investigations.  All notifications are made in accordance with the Freedom of Information Act/Privacy Act.

**(d) Following an inmate's allegation that he or she has been sexually abused by another inmate, the agency shall subsequently inform the alleged victim whenever:**

**(1) The agency learns that the alleged abuser has been indicted on a charge related to sexual abuse within the facility; or**

**(2) The agency learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility.**

**(e) All such notifications or attempted notifications shall be documented.**

Documentation is maintained in the investigation file.

**(f) An agency's obligation to report under this standard shall terminate if the inmate is released from the agency's custody.**

The Bureau's obligation to report terminates if the inmate-victim is released from the agency's custody.

## DISCIPLINE

### § 115.76  Disciplinary sanctions for staff.

Bureau employees are subject to the Program Statement **Standards of Employee Conduct**, the Master Agreement, and employment-based laws, rules, and regulations.

**(a) Staff shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies.**

**(b) Termination shall be the presumptive disciplinary sanction for staff who have engaged in sexual abuse.**

If evidence supports that a staff member engaged in sexual abuse, as defined in section 115.6, the matter will first be referred for criminal prosecution.  Administrative discipline (including proposed removals for sexual abuse) will be conducted using the Program Statement **Standards of Employee Conduct**, the Program Statement **Human Resource Management Manual**, and the collective bargaining agreement.  Any decision made on the proposal will be in accordance with all applicable laws, rules, and regulations.

**(c) Disciplinary sanctions for violations of agency policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) shall be commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories.**

**(d) All terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.**

### § 115.77  Corrective action for contractors and volunteers.

**(a) Any contractor or volunteer who engages in sexual abuse shall be prohibited from contact with inmates and shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to relevant licensing bodies.**

Generally, this section is applied in cases where there is possible criminal prosecution.

**(b) The facility shall take appropriate remedial measures, and shall consider whether to prohibit further contact with inmates, in the case of any other violation of agency sexual abuse or sexual harassment policies by a contractor or volunteer.**

Generally, this section is applied in cases where administrative investigation/actions would be appropriate.

**§ 115.78  Disciplinary sanctions for inmates.**

**(a) Inmates shall be subject to disciplinary sanctions pursuant to a formal disciplinary process following an administrative finding that the inmate engaged in inmate-on-inmate sexual abuse or following a criminal finding of guilt for inmate-on-inmate sexual abuse.**

**(b) Sanctions shall be commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories.**

**(c) The disciplinary process shall consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior when determining what type of sanction, if any, should be imposed.**

**(d) If the facility offers therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse, the facility shall consider whether to require the offending inmate to participate in such interventions as a condition of access to programming or other benefits.**

**(e) The agency may discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact.**

Sexual abuse and sexual harassment of staff members should be addressed through other existing statutes, policies, and procedures, such as using the inmate discipline system and referral to criminal prosecutions as appropriate.  Please refer to sections 115.6 and 115.62 concerning staff victims.

**(f) For the purpose of disciplinary action, a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation.**

The maintenance of an effective sexual abuse prevention policy, and general secure and orderly running of an institution, requires that inmates be held responsible for manipulative behavior and intentionally making false allegations.  Allegations of false reports are considered by staff in accordance with the procedures and standards of the Program Statement **Inmate Discipline Program**.  Inmates who have been found to have made false allegations are recommended for placement in the Posted Picture File in accordance with the Program Statement **Posted Picture File**.

**(g) An agency may, in its discretion, prohibit all sexual activity between inmates and may discipline inmates for such activity. An agency may not, however, deem such activity to constitute sexual abuse if it determines that the activity is not coerced.**

PIX_209, Page 48 of 62

All sexual activity between inmates is prohibited, and is subject to discipline.  See the Program Statement **Inmate Discipline Program**.

## MEDICAL AND MENTAL CARE

### § 115.81  Medical and mental health screenings; history of sexual abuse.

Follow-up meetings under this section are conducted by Psychology Services.  Psychology Services consults with Health Services if necessary.

**(a) If the screening pursuant to § 115.41 indicates that a prison inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, staff shall ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.**

**(b) If the screening pursuant to § 115.41 indicates that a prison inmate has previously perpetrated sexual abuse, whether it occurred in an institutional setting or in the community, staff shall ensure that the inmate is offered a follow-up meeting with a mental health practitioner within 14 days of the intake screening.**

Inmates considered high risk for sexual re-offending may be referred to specialty treatment or management programs, referred to individual or group counseling, or managed through standard correctional techniques.

If an inmate perpetrator is determined in need of treatment services and refuses treatment, Psychology Services staff document the refusal, place it in the medical section of the Inmate Central File, and notify referring staff of the refusal.  Documentation of treatment compliance or refusal ensures continuity of care within and outside the Bureau.

**(c) If the screening pursuant to § 115.41 indicates that a jail inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, staff shall ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.**

**(d) Any information related to sexual victimization or abusiveness that occurred in an institutional setting shall be strictly limited to medical and mental health practitioners and other staff, as necessary, to inform treatment plans and security and management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law.**

It is appropriate under this section to provide staff information on an inmate's history of being a sexual abuser; for example, placing the inmate in the Posted Picture File, to maintain the safe, secure, and orderly running of the institution.

**(e) Medical and mental health practitioners shall obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.**

**§ 115.82  Access to emergency medical and mental health services.**

**(a) Inmate victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment.**

See section 115.65 for details concerning emergency mental health services.

**Procedures for Inmate Victims.**  Medical staff are responsible for examination, documentation, and treatment of inmate injuries arising from sexually abusive behaviors, including testing when appropriate for pregnancy and sexually transmissible infections (STIs), including HIV.

When an inmate self-reports, or is referred to Health Services, medical staff notify Psychology Services and Correctional Services prior to conducting an injury assessment.  The injury assessment, and the inmate's subjective/objective findings, are documented fully in the electronic health record.  Health Services staff perform the injury assessment without compromising forensic evidence.

The forensic examination is performed by qualified sexual assault examiners (e.g., Sexual Assault Nurse Examiner, Forensic Nurse Examiner, or Sexual Assault Forensic Examiner). Where indicated, Health Services staff with appropriate qualifications may conduct a forensic examination at the institution.  At institutions where Health Services staff are neither trained nor certified in forensic examinations, the inmate is examined at the institution by a qualified health care professional from the community, or at a local community facility (e.g., local hospital or rape crisis center) equipped to conduct such examinations.  The forensic examination should occur as soon as practicable, but within 72 hours of BOP staff becoming aware that an inmate reported involvement in a sexually abusive assault.  An inmate's refusal of a forensic examination is documented in the electronic health record.

If a trip to a local community facility is needed, Health Services staff coordinate with Correctional Services to transport the inmate to the facility.

When community care is completed, institution providers render follow-up care, including screening for infectious disease (HIV, viral hepatitis, or other sexually transmissible infections), pregnancy testing for female victims, and administration of prophylactic medication (if exposure to bloodborne pathogens is suspected) if these services were not already rendered during the community visit.

**Procedures for Alleged Inmate Perpetrators.**  Health Services clinicians also perform a physical injury assessment on any alleged inmate perpetrators without compromising forensic

evidence.  Providers document the assessment in the electronic health record and provide a copy to Correctional Services for insertion in the investigation packet.

Forensic examinations of inmate perpetrators will be in consultation with relevant outside law enforcement agencies, and consistent with applicable laws and policies.

**(b) If no qualified medical or mental health practitioners are on duty at the time a report of recent abuse is made, security staff first responders shall take preliminary steps to protect the victim pursuant to § 115.62 and shall immediately notify the appropriate medical and mental health practitioners.**

The Operations Lieutenant takes preliminary steps, as stated in section 115.65.

**(c) Inmate victims of sexual abuse while incarcerated shall be offered timely information about and timely access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate.**

Information and access to care as indicated in this section is offered to all inmate victims, as clinically indicated.

**(d) Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.**

Bureau policies concerning inmate co-pays for medical treatment shall not be applied to victims of sexual abuse.

**§ 115.83  Ongoing medical and mental health care for sexual abuse victims and abusers.**

**(a) The facility shall offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility.**

**(b) The evaluation and treatment of such victims shall include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody.**

**(c) The facility shall provide such victims with medical and mental health services consistent with the community level of care.**

**(d) Inmate victims of sexually abusive vaginal penetration while incarcerated shall be offered pregnancy tests.**

**(e) If pregnancy results from the conduct described in paragraph (d) of this section, such victims shall receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services.**

Bureau providers deliver comprehensive prenatal counseling and care for pregnant female offenders.

**(f) Inmate victims of sexual abuse while incarcerated shall be offered tests for sexually transmitted infections as medically appropriate.**

**(g) Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.**

**(h) All prisons shall attempt to conduct a mental health evaluation of all known inmate-on-inmate abusers within 60 days of learning of such abuse history and offer treatment when deemed appropriate by mental health practitioners.**


**DATA COLLECTION AND REVIEW**

**§ 115.86  Sexual abuse incident reviews.**

**(a) The facility shall conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, including where the allegation has not been substantiated, unless the allegation has been determined to be unfounded.**

In cases of unsubstantiated allegations, Institution Executive Staff review the incident to assess the facility's response to the allegations.  All factors noted within PREA Standard 115.86 (d) noted below are considered.  The Institution PREA Compliance Manager documents the review in a report, including recommendations for improvements, if any.  If the unsubstantiated allegation involved a staff member, the report under this section must not include the staff member's personally identifiable information.  The report is submitted to the Warden, who ensures implementation of the recommendations or documents the reason for not following them.

In cases of substantiated sexual abuse, Institution Executive Staff review the incident to assess the facility's response.  All factors noted within PREA Standard 115.86 (d) noted below are considered.  The Institution PREA Compliance Manager documents the review in a report, including recommendations for improvements, if any.  The report is submitted to the Warden, who ensures implementation of the recommendations or documents the reason for not following them.  A copy of this report is forwarded to the Regional Director through the Regional PREA Coordinator.

Consideration for staff affected by the incident is necessary.  Efforts to mitigate potential stress associated with these events should be offered to affected staff, such as offering Employee Assistance Program information.

**(b) Such review shall ordinarily occur within 30 days of the conclusion of the investigation.**

**(c) The review team shall include upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners.**

The review team also includes input from the local Union President, or his/her designee from the local Union.  The local Union representative is provided an opportunity to review the draft and submit the Union's recommendations, taking the time frames of this section into account.

The Union's recommendations are included in the review team's final report and recommendations as an addendum.  Adoption of the Union's recommendations in the final report is at the discretion of the review team.

Any subsequent implementation of any final recommendations will comply with collective bargaining agreements as indicated in 115.86(e) below.

**(d) The review team shall:**

**(1) Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse;**

**(2) Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; or gang affiliation; or was motivated or otherwise caused by other group dynamics at the facility;**

**(3) Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse;**

**(4) Assess the adequacy of staffing levels in that area during different shifts;**

**(5) Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff; and**

**(6) Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to paragraphs (d)(1) through (d)(5) of this section, and any recommendations for improvement and submit such report to the facility head and PREA compliance manager.**

**(e) The facility shall implement the recommendations for improvement, or shall document its reasons for not doing so.**

The institution will comply with collective bargaining agreements in implementing changes or programs.

## § 115.87  Data collection.

**(a) The agency shall collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control using a standardized instrument and set of definitions.**

The Bureau tracks information concerning sexual abuse using the methods listed below.  In disseminating this information within the Bureau, or releasing information to a third party, the Bureau complies with the Federal Privacy Act and Freedom of Information Act, and all other applicable laws, rules, and regulations.

(1) **SIS Data.**  The SIS must maintain secure investigative files and data, which include:

- The victim(s) and perpetrator(s) of sexually abusive behavior.
- A factual description of the events.
- Formal and informal action(s) taken.
- All collateral reports, supporting memoranda, and videotapes.
- Medical forms (e.g., injury assessments).
- Any other evidentiary materials pertaining to the allegation.

(2) **Office of Internal Affairs Data.**  The Office of Internal Affairs reports the cumulated data on the inmate victims of staff sexually abusive behavior to all Chief Executive Officers and the Psychology Services Administrator at the end of each quarter and at the end of each fiscal year.

(3) **Inmate Data.**  The Information, Policy, and Public Affairs Division collects and reports on the data used in the Bureau of Justice Statistics Survey of Sexual Violence.

(4) **SENTRY Data.**  The Chief of Correctional Services in each institution is responsible for accurate STG SENTRY assignments related to sexually abusive behavior.  Access to this SENTRY assignment must be limited to those staff who are involved in managing and treating the inmate victim or inmate perpetrator, or investigating the incident.

- **Unverified Codes.**  These two SENTRY assignments ensure that alleged inmate victims of inmates or staff, and alleged inmate perpetrators, are identified, evaluated, and monitored **as soon as the allegation is made**.

  **V SA UNV (Victim of Sexually Abusive Behavior - Unverified)**.  This assignment is entered into the SENTRY record of the alleged victim at the time an allegation of sexually abusive behavior is reported.  It remains current until it is found to be unsubstantiated or unfounded (in which case it is discontinued), or until it is verified and changed to **V INMT SA** or **V STAFF SA**.

  **SA UNV (Perpetrator of Sexually Abusive Behavior - Unverified)**.  This assignment is entered into the SENTRY record of the alleged inmate perpetrator at the time the allegation is made.  It remains current until it is found to be unsubstantiated or unfounded (and discontinued), or until it is verified and changed to **SA INMT** or **SA STAFF**.

- **Verified Codes.** These four SENTRY Assignments are used when there is a substantial evidence of sexually abusive behavior against an inmate, or by an inmate:

  **V INMT SA (Victim of Inmate Sexually Abusive Behavior)**.  This assignment should be entered into SENTRY when a sexually abusive behavior has been committed against an inmate victim.  It remains current for the length of the inmate victim's incarceration.

  **V STAFF SA (Victim of Staff Sexually Abusive Behavior)**.  This assignment should be entered into SENTRY when a sexually abusive behavior has been committed against an inmate victim by a staff member after the allegation has been sustained.

  **SA INMT (Perpetrator of Sexually Abusive Behavior Against an Inmate)**.  This assignment should be entered into SENTRY when there has been a sustained finding (incident report or legal finding) against an inmate perpetrator who has engaged in sexually abusive behavior towards another inmate.

  **SA STAFF (Perpetrator of Sexually Abusive Behavior Against a Staff Member/ Contractor/Volunteer)**.  This assignment should be entered into SENTRY when there has been a sustained finding (incident report or legal finding) against an inmate perpetrator who has committed a sexually abusive behavior against a staff member.

**(b) The agency shall aggregate the incident-based sexual abuse data at least annually.**

The National PREA Coordinator, with the assistance of the Regional PREA Coordinators, aggregates and reviews data from all sources annually.

**(c) The incident-based data collected shall include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice.**

The Information, Policy, and Public Affairs Division collects and reports on the data used in the Bureau of Justice Statistics Survey of Sexual Violence.

**(d) The agency shall maintain, review, and collect data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews.**

**(e) The agency also shall obtain incident-based and aggregated data from every private facility with which it contracts for the confinement of its inmates.**

**(f) Upon request, the agency shall provide all such data from the previous calendar year to the Department of Justice no later than June 30.**

**§ 115.88  Data review for corrective action.**

**(a) The agency shall review data  collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by:**

**(1) Identifying problem areas;**

**(2) Taking corrective action on an ongoing basis; and**

**(3) Preparing an annual report of its findings and corrective actions for each facility, as well as the agency as a whole.**

The National PREA Coordinator reviews data compiled by the Regional PREA Coordinators, the Information, Policy, and Public Affairs Division, and the Office of Internal Affairs, and issues a report to the Director on an annual basis, meeting the requirements of this section.

**(b) Such report shall include a comparison of the current year's data and corrective actions with those from prior years and shall provide an assessment of the agency's progress in addressing sexual abuse.**

**(c) The agency's report shall be approved by the agency head and made readily available to the public through its Web site or, if it does not have one, through other means.**

**(d) The agency may redact specific material from the reports when publication would present a clear and specific threat to the safety and security of a facility, but must indicate the nature of the material redacted.**

The Bureau complies with the Federal Privacy Act and Freedom of Information Act, and all other applicable laws, rules, and regulations.

**§ 115.89  Data storage, publication, and destruction.**

**(a) The agency shall ensure that data collected pursuant to § 115.87 are securely retained.**

**(b) The agency shall make all aggregated sexual abuse data, from facilities under its direct control and private facilities with which it contracts, readily available to the public at least annually through its Web site or, if it does not have one, through other means.**

**(c) Before making aggregated sexual abuse data publicly available, the agency shall remove all personal identifiers.**

The Bureau complies with the Federal Privacy Act and Freedom of Information Act, and all other applicable laws, rules, and regulations.

**(d) The agency shall maintain sexual abuse data collected pursuant to § 115.87 for at least 10 years after the date of the initial collection unless Federal, State, or local law requires otherwise.**

**AUDITS**

**§ 115.93  Audits of standards.**

**The agency shall conduct audits pursuant to §§ 115.401 through 115.405.**

**AUDITING AND CORRECTIVE ACTION**

**§ 115.401  Frequency and scope of audits.**

Information provided to auditors under this section is released consistent with the Freedom of Information Act/Privacy Act and all other applicable laws, rules, and regulations.

**(a) During the three-year period starting on August 20, 2013, and during each three-year period thereafter, the agency shall ensure that each facility operated by the agency, or by a private organization on behalf of the agency, is audited at least once.**

**(b) During each one-year period starting on August 20, 2013, the agency shall ensure that at least one-third of each facility type operated by the agency, or by a private organization on behalf of the agency, is audited.**

**(c) The Department of Justice may send a recommendation to an agency for an expedited audit if the Department has reason to believe that a particular facility may be experiencing problems relating to sexual abuse.  The recommendation may also include referrals to resources that may assist the agency with PREA-related issues.**

**(d) The Department of Justice shall develop and issue an audit instrument that will provide guidance on the conduct of and contents of the audit.**

**(e) The agency shall bear the burden of demonstrating compliance with the standards.**

**(f) The auditor shall review all relevant agency-wide policies, procedures, reports, internal and external audits, and accreditations for each facility type.**

**(g) The audits shall review, at a minimum, a sampling of relevant documents and other records and information for the most recent one-year period.**

**(h) The auditor shall have access to, and shall observe, all areas of the audited facilities.**

**(i) The auditor shall be permitted to request and receive copies of any relevant documents (including electronically stored information).**

**(j) The auditor shall retain and preserve all documentation (including, *e.g.,* video tapes and interview notes) relied upon in making audit determinations.  Such documentation shall be provided to the Department of Justice upon request.**

**(k) The auditor shall interview a representative sample of inmates, residents, and detainees, and of staff, supervisors, and administrators.**

The local Union will be given the opportunity to have the designated representative interviewed.

**(l) The auditor shall review a sampling of any available videotapes and other electronically available data (*e.g.,* Watchtour) that may be relevant to the provisions being audited.**

**(m) The auditor shall be permitted to conduct private interviews with inmates, residents, and detainees.**

This section refers to in-person interviews.  Institutions may use attorney-client rooms or other appropriate areas, taking institution security concerns into account.

**(n) Inmates, residents, and detainees shall be permitted to send confidential information or correspondence to the auditor in the same manner as if they were communicating with legal counsel.**

Inmates are able to use Special Mail procedures relevant to attorneys and legal counsel when sending confidential information or correspondence to PREA auditors, consistent with the Program Statement **Correspondence.**  The Institution PREA Compliance Manager will notify the institution mailroom when the PREA audit is beginning and ending, which will determine the time frame for PREA auditor mail to be treated as Special Mail.

**(o) Auditors shall attempt to communicate with community-based or victim advocates who may have insight into relevant conditions in the facility.**

**§ 115.402  Auditor qualifications.**

**(a) An audit shall be conducted by:**

**(1) A member of a correctional monitoring body that is not part of, or under the authority of, the agency (but may be part of, or authorized by, the relevant State or local government);**

**(2) A member of an auditing entity such as an inspector general's or ombudsperson's office that is external to the agency; or**

**(3) Other outside individuals with relevant experience.**

**(b) All auditors shall be certified by the Department of Justice.  The Department of Justice shall develop and issue procedures regarding the certification process, which shall include training requirements.**

**(c) No audit may be conducted by an auditor who has received financial compensation from the agency being audited (except for compensation received for conducting prior PREA audits) within the three years prior to the agency's retention of the auditor.**

**(d) The agency shall not employ, contract with, or otherwise financially compensate the auditor for three years subsequent to the agency's retention of the auditor, with the exception of contracting for subsequent PREA audits.**

**§ 115.403   Audit contents and findings.**

**(a) Each audit shall include a certification by the auditor that no conflict of interest exists with respect to his or her ability to conduct an audit of the agency under review.**

**(b) Audit reports shall state whether agency-wide policies and procedures comply with relevant PREA standards.**

**(c) For each PREA standard, the auditor shall determine whether the audited facility reaches one of the following findings: Exceeds Standard (substantially exceeds requirement of standard); Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period); Does Not Meet Standard (requires corrective action). The audit summary shall indicate, among other things, the number of provisions the facility has achieved at each grade level.**

**(d) Audit reports shall describe the methodology, sampling sizes, and basis for the auditor's conclusions with regard to each standard provision for each audited facility, and shall include recommendations for any required corrective action.**

**(e) Auditors shall redact any personally identifiable inmate or staff information from their reports, but shall provide such information to the agency upon request, and may provide such information to the Department of Justice.**

PIX_209, Page 59 of 62

**(f) The agency shall ensure that the auditor's final report is published on the agency's Web site if it has one, or is otherwise made readily available to the public.**

The final report will be posted on the Bureau's public website within 15 working days of receipt. The most recent final report for each facility must be posted.

**§ 115.404  Audit corrective action plan.**

**(a) A finding of ''Does Not Meet Standard'' with one or more standards shall trigger a 180-day corrective action period.**

To allow the auditor 60 days to write and submit a final report, institutions have 120 days to develop, implement, and submit to the Program Review Divison the corrective action(s) from the date the preliminary report is received.

**(b) The auditor and the agency shall jointly develop a corrective action plan to achieve compliance.**

Implementation of a corrective action plan will be in accordance with the collective bargaining agreement.

**(c) The auditor shall take necessary and appropriate steps to verify implementation of the corrective action plan, such as reviewing updated policies and procedures or re-inspecting portions of a facility.**

**(d) After the 180-day corrective action period ends, the auditor shall issue a final determination as to whether the facility has achieved compliance with those standards requiring corrective action.**

**(e) If the agency does not achieve compliance with each standard, it may (at its discretion and cost) request a subsequent audit once it believes that is has achieved compliance.**

**§ 115.405  Audit appeals.**

**(a) An agency may lodge an appeal with the Department of Justice regarding any specific audit finding that it believes to be incorrect.  Such appeal must be lodged within 90 days of the auditor's final determination.**

The Program Review Division files an appeal on behalf of the facility.  Appeals are filed in accordance to procedures issued by the Office of Justice Programs, U.S. Department of Justice.

**(b) If the Department determines that the agency has stated good cause for a re-evaluation, the agency may commission a re-audit by an auditor mutually agreed upon by the Department and the agency. The agency shall bear the costs of this re-audit.**

Re-audits are funded by the institution.

**(c) The findings of the re-audit shall be considered final.**

## Attachment A.   PREA Intake Objective Screening Instrument

**Instructions:** Intake screening in the Bureau of Prisons is completed according to the Program Statement **Intake Screening**.  In accordance with 28 C.F.R. 115.41 of the Prison Rape Elimination Act regulations, staff use this instrument when conducting intake screening per the Program Statement.  Any specific information must be noted in the comment sections of the Intake Screening Form.  If none of the criteria below apply, staff must make an entry stating "No PREA criteria met," in the comment section applicable to victimization or abusiveness.

| RISK OF VICTIMIZATION | | |
|---|---|---|
| **Factor** | **Objective Criteria** | **Referral Guidance** |
| Answers to Intake Screening Form | Questions 1, 6a, 6b, concerning history of sexual assault and inmate perception of whether he can be housed in general population. | If inmate responds yes to any of the questions, refer to Psychology Services in all cases. |
| General Physical Appearance and Presentation | Inmate is under 21 or over 65; <br><br>Inmate has small physical stature (5'6, 120 lbs or under for males; 5'0 and 118 lbs or under for females). <br><br>Developmental/mental/medical disability, if apparent or identified as SCRN4-MH, SCRN3-MH, CARE4-MH, CARE3-MH, SCRN4, SCRN3, CARE4, CARE 3. <br><br>Inmate is or may be perceived to be gay, lesbian, bisexual, transgender, intersex, or gender-nonconforming, based on documentation received (e.g., PSR), or correctional judgment would indicate the inmate would have issues being placed in general population. | If inmate meets two or more criteria, leading staff to determine that the inmate is at risk, then consider a referral to Psychology Services.  Please take institution security and mission into account in deciding to make the referral (e.g., older inmates with disabilities may not need to be referred at a medical facility). |
| Criminal history from available documentation | Inmate has not previously been incarcerated. <br><br>Inmate's criminal history is exclusively nonviolent. <br><br>Inmate has prior convictions for sex offenses against an adult or child. <br><br>Inmate is in custody solely under civil immigration detention. | Criminal history should be evaluated; however, the existence of only one of these factors alone may not warrant a referral to Psychology Services based on the security level of the institution and mission of the facility (e.g., SOMP sites). |
| **RISK OF ABUSIVENESS** | | |
| Documented history of abusiveness, from available documentation (PSR, incident reports, etc.) | Inmate has prior acts of sexual abuse. <br><br>Inmate has prior convictions for violent offenses. <br><br>Inmate has history of prior institutional violence or sexual abuse. | Referral to Psychology Services should be made if inmate previously perpetrated sexual abuse in community or in an institutional setting.  Staff must notify Correctional Services of the inmate's history of predation to ensure that appropriate steps (investigation, documentation, CIMS concerns, etc.) have been taken. The Chief of Correctional Services also updates a current SENTRY STG assignment. |