MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL – 330482
LUMA KHABBAZ – 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:	(415) 433-6830
Email:	mbien@rbgg.com
	egalvan@rbgg.com
	kjanssen@rbgg.com
	aspiegel@rbgg.com
	lkhabbaz@rbgg.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:	(510) 679-3674
Email:	susan@ccijustice.org

OREN NIMNI*
 Mass. Bar No. 691821
AMARIS MONTES*
 Md. Bar No. 2112150205
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone:	(202) 455-4399
Email:	oren@rightsbehindbars.org
	amaris@rightsbehindbars.org

STEPHEN S. CHA-KIM*
 N.Y. Bar No. 4979357
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone:	(212) 836-8000
Email:	stephen.cha-kim@arnoldporter.com

CARSON D. ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California 94306-3807
Telephone:	(650) 319-4500
Email:	carson.anderson@arnoldporter.com

* Admitted *pro hac vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al.,<br><br>　　　　Defendants. | Case No. 4:23-cv-04155-YGR<br><br>**PLAINTIFFS' RESPONSE TO UNITED STATES' RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Judge:　Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:　None Set |

Plaintiffs respectfully submit the following in response to the United States' Response, ECF No. 161 ("BOP Resp."), to this Court's Order to Show Cause, ECF No. 155 ("OTSC"), why the Government should not be held in contempt or sanctioned for transferring Rhonda F. ("R.F."), an incarcerated individual who testified at last month's evidentiary hearing, out of FCI Dublin to another Bureau of Prisons ("BOP") facility. On December 30, 2023, in response to Plaintiffs' motion raising recent instances of retaliation against possible witnesses at the upcoming evidentiary hearing, ECF No. 79, the Court ordered Defendants "not to transfer any person on the witnesses lists filed in this action *until further order of this Court*." ECF No. 88 ("Dec. 30 Order") ¶ 4 (emphasis added). At no time since has the Court issued any such subsequent order relieving the Government of its obligation to adhere to the Dec. 30 Order. Nor has the Government sought relief from, or modification to, the order, despite ample opportunity to do so.

Plaintiffs' counsel did not have the full facts surrounding R.F.'s transfer until an attorney for Plaintiffs was finally able to meet in person with R.F. in Los Angeles on Thursday, February 15, 2024. *See* Declaration of Amaris Montes ("Montes Decl."), filed herewith, ¶ 9. Based on what Plaintiffs have learned, as set forth below, it is clear that BOP, via the declaration of Acting Warden Arthur Dulgov ("Dulgov Decl.") (ECF No. 161-3), has provided the Court with a self-serving and incomplete background, and that there is ample evidence that R.F.'s transfer was motivated by unlawful retaliation. As a result, for the reasons set forth below, the Government has failed to satisfy its burden to explain how it took all reasonable steps to comply with the Court's instruction not to transfer witnesses absent further order.

**I.      Relevant Background**

On January 5, 2024, R.F. testified at the hearing about her recent experiences of retaliation by FCI Dublin staff, including that (1) she has been denied transfer to home confinement despite being eligible now for over a year, Tr. 835:9-835:21, and (2) in August 2023 Special Investigative Services ("SIS") Lt. Bauddizon ordered her to his office and threatened to throw her in the SHU unless she agreed to stop assisting Dublin residents get access to copies of the recently filed complaint in this matter, Tr. 821:11-825:5. BOP asserts that SIS subsequently placed R.F. in SHU because "she might have been encouraging other inmates to file false complaints against staff";

Dulgov states without explanation that this SIS investigation was "invalid," but R.F. was transferred to Metropolitan Detention Center, Los Angeles ("MDC") "pending further investigation" because of feared "prolonged" or "expanded hunger strikes" in the SHU. Dulgov Decl. ¶¶ 5, 15-16. Dulgov's stated reason for the transfer is inconsistent with the explanation provided by BOP previously on February 8, when BOP counsel Robert France stated in an email that R.F. had been transferred "[b]ased on preliminary findings from [the "invalid" SIS] investigation," not due to any role in the hunger strikes, which had "since ended." ECF No. 161-2 at 2.

After learning of R.F.'s transfer and confirming her location, Plaintiffs' counsel reached out to MDC to schedule a time to meet and speak securely with R.F. in order to gather facts about the circumstances of her transfer (and confirm whether she wishes to return to FCI Dublin). Montes Decl. ¶ 8. Plaintiffs' counsel was not able to speak by phone or in person with R.F. until four days ago, on February 15, 2023, when a member of the team traveled to MDC in Los Angeles for a legal visit with R.F. *Id*. ¶ 9.

During that visit, Plaintiffs' counsel learned the following:

- On January 31, 2024, R.F. was placed in detention in the SHU at the direction of Lt. Bauddizon, the very officer whose retaliatory conduct she had testified about at the hearing, *id*. ¶ 10;

- R.F. was not given a disciplinary incident report when placed in SHU and told only that she was "under investigation," but she was not provided any information about the nature of the investigation nor was she asked any questions about it, *id*.;

- For seven days, R.F. was kept in a cold cell that still had human filth from the previous occupant, mold on the walls, and at least a centimeter of water on the floor, and R.F. was denied cleaning or personal hygiene supplies, *id*.;

- R.F. commenced a hunger strike as soon as she arrived in the SHU, and nine other SHU detainees also went on hunger strike in protest of the unhabitable conditions and lack of supplies, independently of R.F., *id*.;

- The warden never visited the SHU as required by hunger strike procedures, *id*.;

- Although a Nurse Werne provided the hunger strikers with Ensure® as required by procedures, on February 5, Medical Director Monte Wilson removed the Ensure® and threatened the strikers with disciplinary action, *id.*;
- At some point while R.F. was in the SHU, she was given a 200-series shot, typically reserved for serious offenses like fighting, because of two screws that had allegedly been found in her cell, *id.*;
- On February 6, R.F. was transferred to MDC, which she did not want, *id.*;
- At the MDC, a Disciplinary Hearing Officer expunged the screw-related charge as unsupported by evidence, *id*.

Plaintiffs submit the foregoing facts, which cast serious doubt on the explanations for R.F.'s placement in SHU and transfer to MDC provided by BOP, as an attorney proffer for the purposes of this filing given today's deadline and counsel's inability to meet with R.F. in person until an initial visit on February 15.

As R.F. was returned to FCI Dublin over the weekend, Plaintiffs respectfully request that BOP be ordered to allow counsel to meet with R.F. to prepare a detailed declaration that provides the Court with an accurate picture of the circumstances of R.F.'s transfer, providing material facts Warden Dulgov omitted. Plaintiffs propose to submit the declaration no later than Friday, February 23 assuming the facility permits Plaintiffs to meet with R.F. before that time.

II.     **Legal Standard**

"A contemnor in violation of a court order may avoid a finding of civil contempt only by showing it took *all* reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (citing *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014)) (emphasis in original). Once a "clear and convincing" showing has been made that "contemnors violated a specific and definite order of the court . . . [t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation and internal quotation marks omitted). Importantly, "[t]he contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Harmon v. City of Santa Clara*, 323 F.R.D. 617,

626 (N.D. Cal. 2018) (citing *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

### III. Application

#### A. BOP Has Failed to Show It Took All Reasonable Steps to Comply

There is no dispute that BOP violated a "specific and definite order of the court" that by its express terms categorically prohibits transfers of any individual listed on the hearing witness lists. *See* Dec. 30 Order ¶ 4. Instead, BOP contends that it should be excused because (1) it "misinterpreted" the injunction against transfers "as being time limited to pre-evidentiary hearing" and that (2) R.F.'s transfer was (belatedly) communicated to Plaintiffs' counsel and (3) cleared through agency review for a purportedly legitimate purpose. BOP Resp. at 4-5. None of these contentions is availing.

First, even if a "good faith" mistake defense like BOP's asserted misinterpretation were available as a matter of law, which it is not, *see Harmon*, 323 F.R.D. at 626, it strains reason here where the Court's direction was clear and unambiguous. The Dec. 30 Order made no allusion to a "pre-evidentiary hearing" timeframe; to the contrary, it was explicit that no transfers were to be made "until further order." Dec. 30 Order ¶ 4. Indeed, the need for ongoing application is self-evident: a retaliatory transfer can occur prior to an anticipated witness' testimony (as it did in this matter, *see* ECF Nos. 79, 88) and it can also happen after the fact (as also occurred here, as discussed below). Moreover, to the extent there was any arguable ambiguity to the order, BOP, as part of its burden to take "all reasonable steps to comply," *Kelly*, 822 F.3d at 1096, should have sought clarification or other relief from the Court, including seeking prior authorization if there were a legitimate need to transfer a witness.

BOP's remaining contentions that Plaintiffs' counsel was informed about the transfer and that BOP's actions were based on legitimate penological reasons are both beside the point and meritless. BOP counsel informed Plaintiffs two days after the fact of R.F.'s transfer, but Plaintiffs in no way consented to or ratified it; indeed, Plaintiffs' counsel was unable to get a full understanding of the facts, or even BOP's representation of its shifting reasoning, until the past few days when counsel met with R.F. and reviewed BOP's response to the OTSC. In any event,

the Government offers no authority for the remarkable proposition that a party may blatantly violate a Court order merely on the assumed consent after-the-fact of the opposing party. Similarly irrelevant is BOP's assertion that it was motivated by legitimate concerns and followed agency review procedures. There is likewise no support for the proposition that a party may violate the express terms of a Court order so long as it believes it followed its own understanding of protocol.

### B.   The Only Reasonable Inference Is that BOP Retaliated Against R.F.

Finally, and most concerningly, the purportedly legitimate bases for its actions that BOP has proffered lack credibility and should be rejected, or at least further scrutinized by the Court through R.F.'s anticipated declaration and any other relevant evidence. R.F. was ordered to SHU at the direction of the same officer, SIS Lt. Bauddizon, that she had implicated just weeks before in open court. BOP has not offered any non-retaliatory reason for that action: Dulgov concedes that the now purported rationale of R.F. falsely encouraging others to file complaints was "invalid," Dulgov Decl. ¶ 5; and the different charge previously provided to R.F., having screws in her cell, on its face does not merit placement in SHU and was expunged as unfounded by the Disciplinary Hearing Officer. Tellingly, neither of these purported explanations are listed in the Administrative Detention Order Dulgov submitted. ECF No. 161-5 at 2. Although BOP is required in this form to document "all the circumstances" that required placement in SHU, R.F.'s states only "pending SIS investigation," and the sections for documenting whether she was given a copy and a supervisor reviewed her SHU detention are also inexplicably blank. *Id*. Moreover, BOP has given conflicting purported reasons for R.F.'s transfer to MDC, first stating in an earlier email that it was due to "findings" from the (invalid) SIS investigation, ECF No. 161-2 at 2, before now asserting that it was due to a concern over hunger strikes, Dulgov Decl. ¶ 16. (Plaintiffs are not able to address the contents of any related exhibits filed under seal and respectfully request an opportunity to do so.) This record can only support the inference that BOP's actions were motivated by unlawful retaliation. Of course, even if the rationale were legitimate, that does not permit Defendants to violate this Court's clear order or otherwise commit acts motivated by retaliatory animus.

### IV. Conclusion

In sum, not only has the Government failed to satisfy its burden of showing that it took all reasonable steps to comply with the Court's clear order, there is sufficient basis to find that FCI Dublin staff have retaliated against R.F. and, in doing so, have sent a message to others incarcerated at the facility that may deter them from coming forward with complaints or testifying in further proceedings in this matter. Accordingly, the Court should craft an appropriate sanction, including any steps necessary to ensure that R.F. is not targeted for future adverse treatment and that BOP comply with its obligations not to transfer or otherwise retaliate against witnesses.

DATED: February 19, 2024                    Respectfully submitted,

                                            ARNOLD & PORTER KAYE SCHOLER LLP

                                            By:  /s/ Stephen Cha-Kim
                                                 Stephen Cha-Kim

                                            Attorneys for Plaintiffs