| | |
|---|---|
| MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>KARA J. JANSSEN – 274762<br>ADRIENNE SPIEGEL – 330482<br>LUMA KHABBAZ – 351492<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830<br>Email: mbien@rbgg.com<br>  egalvan@rbgg.com<br>  kjanssen@rbgg.com<br>  aspiegel@rbgg.com<br>  lkhabbaz@rbgg.com<br><br>SUSAN M. BEATY – 324048<br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>1999 Harrison Street, Suite 1800<br>Oakland, California 94612-4700<br>Telephone: (510) 679-3674<br>Email: susan@ccijustice.org | OREN NIMNI*<br>  Mass. Bar No. 691821<br>AMARIS MONTES*<br>  Md. Bar No. 2112150205<br>RIGHTS BEHIND BARS<br>416 Florida Avenue N.W. #26152<br>Washington, D.C. 20001-0506<br>Telephone: (202) 455-4399<br>Email: oren@rightsbehindbars.org<br>  amaris@rightsbehindbars.org<br><br>STEPHEN S. CHA-KIM*<br>  N.Y. Bar No. 4979357<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York 10019-9710<br>Telephone: (212) 836-8000<br>Email: stephen.cha-kim@arnoldporter.com<br><br>CARSON D. ANDERSON – 317308<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>3000 El Camino Real<br>Five Palo Alto Square, Suite 500<br>Palo Alto, California 94306-3807<br>Telephone: (650) 319-4500<br>Email: carson.anderson@arnoldporter.com<br><br>* Admitted *pro hac vice* |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al.,<br><br>　　　　　Defendants. | Case No. 4:23-cv-04155-YGR<br><br>**PLAINTIFFS' EMERGENCY NOTICE IN RESPONSE TO UNITED STATES' NOTICES IN RESPONSE TO DOCS. 157 and 157-1**<br><br>Judge:　Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:　None Set |

Plaintiffs respectfully submit the following notice in response to the United States' "Notice in Response to Docs. 157 and 157-1," ECF No. 167, and "Supplemental Notice to Doc. 157," ECF No. 174, to alert the Court of concerning deficiencies in the Bureau of Prison's response to the Court's recent orders related to emergency health and safety concerns at the FCI Dublin Satellite Camp.

On February 16, 2024, the Court ordered BOP to "have licensed contractor(s) inspect the entire [Dublin] Camp for a natural gas leak, black mold, and asbestos." ECF No. 157. On the same date, in a sealed order, the Court further ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ECF No. 157-1. On February 23, 2024, BOP filed a half-page "memorandum regarding skin checks" asserting that Camp residents' skin-related "complaints were not of an infectious nature" and that "there is no need for further evaluation of an infectious disease process." ECF No. 174-2.[1]

Plaintiffs have become aware of details of BOP's underlying clinical methodology that raise serious questions about the confidence the Court should have in such a definitive and unsupported conclusion at this stage. As set forth in the declarations of T.R., C.V., and L.R., filed herewith, the initial "skin checks" at issue were conducted: (1) by a BOP employee who merely

---

[1] BOP also filed a declaration by Dr. Sayed Hosseini along with exhibits, all under seal. ECF No. 167-3. Plaintiffs have not been provided a copy of the declaration or underlying medical records because Defendants claim they are unable to do so without the consent of the individuals or a court order under the Privacy Act, Without seeing these documents, Plaintiffs are not able to address the contents of these documents. Plaintiffs fully understand that the personal health and other protected information must be shielded from the public docket and a protective order has been agreed to for this reason. To the extent that BOP wishes the Court to rely on the contents of these records to decide litigated issues in this matter, Plaintiffs respectfully request that a copy of these documents be provided, with appropriate redactions, to Plaintiffs. Plaintiffs note that BOP has been directed by Magistrate Judge Tse to submit a proposed Privacy Act order for final approval for all related   cases, including this one, by no later than March 4. See M.R. v. FCI Dublin, 22-cv-5137-YGR (lead case), ECF No. 151. BOP should have no basis to withhold any information within the Hosseini declaration after entry of the same Privacy Act order in this matter.  Even without the order fully in place, BOP could redact all identifying personal information while still providing Plaintiffs an understanding of the substance of the documents; wholesale *ex parte* sealing, by contrast, improperly insulates BOP from the adversarial process.

observed residents from four to six feet away from outside their cells for a total of 10-15 seconds to under a minute, Declaration of T.C. ¶ 4, Declaration of C.A. ¶ 5, Declaration of L.R. ¶ 5; and (2) in the constant presence of FCI Dublin employees, including camp administrator Agostini, who made statements meant to influence the BOP medical employee's assessments, T.C. Decl. ¶ 4, C.A. Decl. ¶ 5, L.R. Decl. ¶ 5. Though the memorandum filed by the BOP notes that 24 individuals were sent for "further evaluation," these follow up appointments were similarly cursory.  ECF No. 174-2 at 2.  As set forth in the declarations:

- T.R. spent 54 days in SHU "pending investigation," where she was placed in a damp and musty cell with visible mold, given fresh linens only once and fresh underwear only every four days; yet despite these dangerous conditions for the spread of disease, the BOP medical employee's examination consisted of looking at T.R. for mere seconds from outside her cell. T.C. Decl. ¶¶ 3, 4.
- C.A., who has in the last month been forced to clean Camp spaces with visible mold without PPE, has noticed several red marks that have appeared in the last several weeks. C.A. Decl. ¶¶ 3, 4. Looking at her from outside the cell, the BOP medical employee immediately dismissed her concern as "a pimple" without moving any closer than from four to five feet away to visually or otherwise examine the areas of concern. *Id*. ¶ 5.
- L.R. was among those sent to the medical office for further evaluation; however—despite having over 20 unexplained red spots on her body that she knows have only developed over the past month because she worked in a dermatology clinic and underwent regular skin checks before her incarceration—the BOP nurse dismissed her marks as "age spots" after looking at the area for under ten seconds and without any actual physical examination. L.R. Decl. ¶¶ 3, 4. L.R.'s friend, who was also sent for further evaluation, shared that in her appointment the nurse merely parroted an explanation that Agostini, who is not medically trained, gave the nurse—that her

sports were from "working out." *Id.* ¶ 6.[2]

It is highly concerning that BOP would summarily conclude based on such perfunctory and non-independent medical encounters, and absent the results of further laboratory testing, *see id*. ¶ 8 (explaining two residents need blood work), that "no further evaluation" is required.

Moreover, as the declarations explain, Dublin—which, as the Court is aware, has been ordered to prepare for contractor inspections for mold—has recently been forcing residents to conduct a "deep clean" of the Camp kitchen, including areas of visible mold on walls, ceilings, and appliances, without any PPE. T.C. Decl. ¶ 7; C.A. Decl. ¶ 3. That BOP would seek to prepare for the Court-ordered inspection in this fashion, forcing individuals, including those already suffering from as-yet unexplained skin conditions, to do such hazardous work unprotected demonstrates once again the utter indifference Dublin administrators show to residents' well-being.

Accordingly, the Court should order BOP ████████████████████████ ████████████████████████████ utilizing an independent third party medical provider to conduct the assessments outside of the presence of Dublin staff. The Court should also issue an immediate order enjoining BOP from requiring Dublin residents to clean or otherwise work in or near spaces with mold and other environmental hazards, either in preparation for Court-ordered inspections or otherwise.

DATED: February 29, 2024          Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ Stephen Cha-Kim
    Stephen Cha-Kim

Attorneys for Plaintiffs

---

[2] T.R., C.A., and L.R. are not named plaintiffs, nor did they previously submit declarations or testify during the evidentiary hearing.