An official website of the United States government  Here's how you know  ⌄

## U.S. OFFICE OF SPECIAL COUNSEL

☰  Main Menu

U.S. Office of Special Counsel  ＞  Resources

**Left Navigation**

# PUBLIC FILES

## PLEASE NOTE:

Documents in the case on the bottom of your webpage will often continue onto the next page.

**Search...**                                                    🔍

**1  2  >**

2,961 results

## 🏷️ Case: DI-22-000356, DI-22-000357, DI-22-000358

JUSTICE

**Location:** Dublin, California
**Date Closed:** 11/20/2023
**Results:**

- Partially substantiated
- Changes in agency rules, regulations, policy or practices
- Improved health and/or safety

**Associated Files:**

📄 **Letter to the President**

📄 **Agency Report**

📄 **Whistleblower Comments**

📄 **Referral Letter**

## 🏷️ Case: DI-23-000193

DEFENSE/ARMY

**Location:** Fort Irwin, California
**Date Closed:** 11/14/2023
**Results:**

- Unsubstantiated but led to agency changes

**Associated Files:**

📄 **Letter to the President**

📄 **Agency Report**

📄 **Whistleblower Comments**

📄 **Referral Letter**

# 🏷 Case: DI-19-003697

**TREASURY**

**Location:** Washington, D.C.
**Date Closed:** 10/20/2023
**Results:**

- Partially substantiated
- Disciplinary action against any employee

**Associated Files:**

📄 **Letter to the President**

📄 **Agency Report**

📄 **Referral Letter**

# 🏷 Case: DI-21-000643; DI-21-000651

**VETERANS AFFAIRS**

**Location:** Springfield, Missouri
**Date Closed:** 09/29/2023
**Results:**

- Partially substantiated
- Changes in agency rules, regulations, policy or practices
- Improved health and/or safety

**Associated Files:**

📄 **Letter to the President**

📄 **Agency Report**

📄 **Agency Supplemental Report**

📄 **Whistleblower Comments**

📄 **Whistleblower Comments to Supplemental Report**

📄 **Referral Letter**

# 🏷 Case: DI-19-2379

**HOMELAND SECURITY**

**Location:** Oakland, California
**Date Closed:** 09/29/2023
**Results:**

- Substantiated
- Changes in agency rules, regulations, policy or practices
- Improved health and/or safety

**Associated Files:**

📄 **Letter to the President**

📄 **Agency Report Pt. 1**

📄 **Agency Report Pt. 2**

📄 **Agency Report Pt. 3**

📄 **Whistleblower Comments**

📄 **Referral Letter**

🏷️ **Case: DI-21-000239; DI-21-000325**          OTHER/INDEPENDENT AGENCY

**Location:** Washington, D.C.
**Date Closed:** 09/28/2023
**Results:**

- Totally unsubstantiated

**Associated Files:**

📄 **Letter to the President**

📄 **Agency Report**

📄 **Agency Supplemental Report**

📄 **Whistleblower Comments DI-21-000239**

📄 **Whistleblower Comments DI-21-000325**

📄 **Referral Letter**

🏷 **Case: DI-21-000122**                                            INTERIOR

**Location:** Anchorage, Alaska
**Date Closed:** 09/27/2023
**Results:**

- Totally unsubstantiated

**Associated Files:**

📄 **Letter to the President**



**U.S. Office of Special Counsel**

**Open Government** | **FOIA** | **No FEAR Act/EEO Reports** | **USA.gov** |
**Privacy Program** | **Site Map** | **Accessibility** | **Careers** |
**Para Información En Español** | **Download Adobe Reader**



**U.S. OFFICE OF SPECIAL COUNSEL**
**1730 M Street, N.W., Suite 300**
**Washington, D.C. 20036-4505**

**The Special Counsel**

November 20, 2023

The President
The White House
Washington, D.C. 20500

Re: OSC File Nos. DI-22-000356, DI-22-000357, DI-22-000358

Dear Mr. President:

I am forwarding to you a report transmitted to the Office of Special Counsel (OSC) by the Attorney General in response to the Special Counsel's referral of disclosures of wrongdoing at the U.S. Department of Justice (DOJ), Bureau of Prisons (BOP), Federal Corrections Institution Dublin (FCI Dublin), Dublin, California. The whistleblowers, ███████████, a Special Investigative Services (SIS) Technician at FCI Dublin, and former SIS Technicians ███████████████████████ consented to the release of their names. The whistleblowers disclosed that FCI Dublin failed to address asbestos containing material (ACM) and mold throughout the institution and violated Occupational Safety and Health Administration (OSHA) regulations. I have reviewed the disclosure, agency report, and whistleblower comments and, in accordance with 5 U.S.C. § 1213(e), have determined that the report contains the information required by statute and the findings appear reasonable.[1] As summarized below, the agency substantiated some of the allegations.

Investigators substantiated that floor buffing practices disturbed asbestos in damaged or cracked vinyl floor tiles and that applicable OSHA safety measures were not employed during buffing operations. Though investigators did not substantiate that a shower renovation project disturbed asbestos, they noted that maintenance work, largely completed by staff and inmate laborers, could not be presumed to have been accomplished with appropriate attention to asbestos compliance. The investigation determined that a 1998 Asbestos Survey of FCI Dublin was the only reliable written record regarding ACM at the facility. That survey estimated the institution had 83,086 square feet of asbestos-containing floor tile and mastic. Even though the Safety and the Facilities Departments at FCI Dublin had the 1998 Survey available for review, neither department checked it to ensure ACM was not present in proposed work areas before authorizing work.

During a July 2022 site inspection, investigators saw a wide variety of floor tiles, many damaged with large cracks or gaps, and what appeared to be original tile either on the surface or exposed. Investigators learned that "floor buffing" included both the stripping and refinishing of floor tiles—which occurred every two to three years using specialized materials and equipment—and the weekly

---

[1] OSC referred the allegations to Attorney General Merrick Garland for investigation pursuant to 5 U.S.C. § 1213(c) and (d). The BOP Office of General Counsel and Review, Real Estate and Environmental Law Branch investigated the allegations. The Attorney General delegated the authority to review and sign the agency report to Associate Deputy Attorney General Bradley Weinsheimer.

The President
November 20, 2023
Page 2 of 3

or biweekly cleaning of the floors with a buffing machine. Investigators found that a self-taught inmate-orderly administered the buffing program, and inmates mainly received on-the-job training on the stripping and buffing equipment, which did not include awareness of or education about asbestos. At the inspection, investigators also observed inmates buffing floors but noted they did not avoid damaged or cracked tiles, use personal protective equipment, or limit access to the cleaning area. OSHA rules prohibit the sanding of floor tiles either known to contain asbestos or installed before 1981 that have not been proven to be asbestos free. Further, any finishes must be stripped from such floors using low abrasion equipment operating at or below 300 rpm. Investigators determined that FCI Dublin's stripping and buffing machines operated at speeds well over 300 rpm and with stripping pads that were not low abrasion. Thus, investigators concluded that FCI Dublin's practices of stripping and buffing its floor tiles violated OSHA standards.

As a result, FCI Dublin suspended all prohibited cleaning methods, and began cleaning floors using wet methods, HEPA vacuums, sweeping, and other non-buffing procedures. FCI Dublin also decided to remove all tile flooring from the inmate housing units—asbestos-containing and non-asbestos containing tiles—to ensure that no ACM flooring remains. Due to cost, FCI Dublin submitted a funding request for the project, which is under review at the BOP Western Regional Office and must be reviewed by the Central Office as well.

Investigators did not substantiate that FCI Dublin failed to adequately clean or remediate mold found in the institution or failed to sufficiently repair the Education Building's roof leaks to prevent future mold growth because the new Warden and executive team addressed these issues in 2021 and 2022. However, the report acknowledged that FCI Dublin's former Warden and executive team took an inappropriate length of time to remedy the situation, failed to comply with OSHA requirements, and intentionally withheld important information from staff and the union about health and safety matters, which created hurdles the new Warden and executive team had to overcome.

Investigators found that the roof leaks were repaired during 2021 and 2022. Neither an April 2022 Environmental and Safety Compliance Program Review conducted by the Central Office, nor the May 2022 institution-wide inspection conducted by the Western Regional Facilities Administrator found areas with mold and investigators saw no areas with mold during the July 2022 site inspection. Investigators also found no current, documented mold complaints. Further, FCI Dublin now ensures that no work order is completed without the order properly identifying the work performed, cost, hours, laborers, and any personal protective equipment used. FCI Dublin is reviewing whether the current computerized system can implement a 360° process that will allow staff who submitted a work order to receive updates on the order. In the meantime, staff may request and receive updates on work orders through an informal communications process. Investigators also noted the new Warden is committed to ensuring that this complaint and any other similar issues are adequately addressed by speaking with and listening to FCI Dublin staff. The agency determined that medical notifications or evaluations for past and present employees, contractors, and inmates who were working or incarcerated at FCI Dublin during the relevant time period are not warranted.

The President
November 20, 2023
Page 3 of 3

The whistleblowers disputed the findings and conclusions regarding the unsubstantiated allegations concerning mold. They also criticized FCI Dublin for the length of time it took to correct the asbestos and mold issues. The whistleblowers further objected to the agency's determination that notifications about any potential exposure to asbestos or mold were unwarranted.

I thank the whistleblowers for bringing these serious allegations to OSC's attention. Their efforts resulted in significant corrective actions that will improve health and safety at FCI Dublin. As required by 5 U.S.C. § 1213(e)(3), I have sent copies of this letter, the agency report, and whistleblower comments to the Chairmen and Ranking Members of the Senate and House Committees on the Judiciary. I have also filed redacted copies of these documents and the redacted referral letter in our public file, which is available online at www.osc.gov. This matter is now closed.

Respectfully,

Karen Gorman
*Acting Special Counsel*

Enclosures



**U.S. OFFICE OF SPECIAL COUNSEL**
**1730 M Street, N.W., Suite 300**
**Washington, D.C. 20036-4505**

**The Special Counsel**

November 20, 2023

The President
The White House
Washington, D.C. 20500

Re: OSC File Nos. DI-22-000356, DI-22-000357, DI-22-000358

Dear Mr. President:

I am forwarding to you a report transmitted to the Office of Special Counsel (OSC) by the Attorney General in response to the Special Counsel's referral of disclosures of wrongdoing at the U.S. Department of Justice (DOJ), Bureau of Prisons (BOP), Federal Corrections Institution Dublin (FCI Dublin), Dublin, California. The whistleblowers, ████████████, a Special Investigative Services (SIS) Technician at FCI Dublin, and former SIS Technicians ██████████████████████ consented to the release of their names. The whistleblowers disclosed that FCI Dublin failed to address asbestos containing material (ACM) and mold throughout the institution and violated Occupational Safety and Health Administration (OSHA) regulations. I have reviewed the disclosure, agency report, and whistleblower comments and, in accordance with 5 U.S.C. § 1213(e), have determined that the report contains the information required by statute and the findings appear reasonable.[1] As summarized below, the agency substantiated some of the allegations.

Investigators substantiated that floor buffing practices disturbed asbestos in damaged or cracked vinyl floor tiles and that applicable OSHA safety measures were not employed during buffing operations. Though investigators did not substantiate that a shower renovation project disturbed asbestos, they noted that maintenance work, largely completed by staff and inmate laborers, could not be presumed to have been accomplished with appropriate attention to asbestos compliance. The investigation determined that a 1998 Asbestos Survey of FCI Dublin was the only reliable written record regarding ACM at the facility. That survey estimated the institution had 83,086 square feet of asbestos-containing floor tile and mastic. Even though the Safety and the Facilities Departments at FCI Dublin had the 1998 Survey available for review, neither department checked it to ensure ACM was not present in proposed work areas before authorizing work.

During a July 2022 site inspection, investigators saw a wide variety of floor tiles, many damaged with large cracks or gaps, and what appeared to be original tile either on the surface or exposed. Investigators learned that "floor buffing" included both the stripping and refinishing of floor tiles—which occurred every two to three years using specialized materials and equipment—and the weekly

---

[1] OSC referred the allegations to Attorney General Merrick Garland for investigation pursuant to 5 U.S.C. § 1213(c) and (d). The BOP Office of General Counsel and Review, Real Estate and Environmental Law Branch investigated the allegations. The Attorney General delegated the authority to review and sign the agency report to Associate Deputy Attorney General Bradley Weinsheimer.

The President
November 20, 2023
Page 2 of 3

or biweekly cleaning of the floors with a buffing machine. Investigators found that a self-taught inmate-orderly administered the buffing program, and inmates mainly received on-the-job training on the stripping and buffing equipment, which did not include awareness of or education about asbestos. At the inspection, investigators also observed inmates buffing floors but noted they did not avoid damaged or cracked tiles, use personal protective equipment, or limit access to the cleaning area. OSHA rules prohibit the sanding of floor tiles either known to contain asbestos or installed before 1981 that have not been proven to be asbestos free. Further, any finishes must be stripped from such floors using low abrasion equipment operating at or below 300 rpm. Investigators determined that FCI Dublin's stripping and buffing machines operated at speeds well over 300 rpm and with stripping pads that were not low abrasion. Thus, investigators concluded that FCI Dublin's practices of stripping and buffing its floor tiles violated OSHA standards.

As a result, FCI Dublin suspended all prohibited cleaning methods, and began cleaning floors using wet methods, HEPA vacuums, sweeping, and other non-buffing procedures. FCI Dublin also decided to remove all tile flooring from the inmate housing units—asbestos-containing and non-asbestos containing tiles—to ensure that no ACM flooring remains. Due to cost, FCI Dublin submitted a funding request for the project, which is under review at the BOP Western Regional Office and must be reviewed by the Central Office as well.

Investigators did not substantiate that FCI Dublin failed to adequately clean or remediate mold found in the institution or failed to sufficiently repair the Education Building's roof leaks to prevent future mold growth because the new Warden and executive team addressed these issues in 2021 and 2022. However, the report acknowledged that FCI Dublin's former Warden and executive team took an inappropriate length of time to remedy the situation, failed to comply with OSHA requirements, and intentionally withheld important information from staff and the union about health and safety matters, which created hurdles the new Warden and executive team had to overcome.

Investigators found that the roof leaks were repaired during 2021 and 2022. Neither an April 2022 Environmental and Safety Compliance Program Review conducted by the Central Office, nor the May 2022 institution-wide inspection conducted by the Western Regional Facilities Administrator found areas with mold and investigators saw no areas with mold during the July 2022 site inspection. Investigators also found no current, documented mold complaints. Further, FCI Dublin now ensures that no work order is completed without the order properly identifying the work performed, cost, hours, laborers, and any personal protective equipment used. FCI Dublin is reviewing whether the current computerized system can implement a 360° process that will allow staff who submitted a work order to receive updates on the order. In the meantime, staff may request and receive updates on work orders through an informal communications process. Investigators also noted the new Warden is committed to ensuring that this complaint and any other similar issues are adequately addressed by speaking with and listening to FCI Dublin staff. The agency determined that medical notifications or evaluations for past and present employees, contractors, and inmates who were working or incarcerated at FCI Dublin during the relevant time period are not warranted.

The President
November 20, 2023
Page 3 of 3

The whistleblowers disputed the findings and conclusions regarding the unsubstantiated allegations concerning mold. They also criticized FCI Dublin for the length of time it took to correct the asbestos and mold issues. The whistleblowers further objected to the agency's determination that notifications about any potential exposure to asbestos or mold were unwarranted.

I thank the whistleblowers for bringing these serious allegations to OSC's attention. Their efforts resulted in significant corrective actions that will improve health and safety at FCI Dublin. As required by 5 U.S.C. § 1213(e)(3), I have sent copies of this letter, the agency report, and whistleblower comments to the Chairmen and Ranking Members of the Senate and House Committees on the Judiciary. I have also filed redacted copies of these documents and the redacted referral letter in our public file, which is available online at www.osc.gov. This matter is now closed.

Respectfully,

Karen Gorman
*Acting Special Counsel*

Enclosures



**U.S. Department of Justice**

Office of the Deputy Attorney General

_Bradley Weinsheimer_
Associate Deputy Attorney General

_Washington, D.C. 20530_

December 2, 2022

The Honorable Henry J. Kerner
Special Counsel
Office of the Special Counsel
1730 M. Street, N.W., Suite 300
Washington, D.C. 20036-4505

> Re: OSC File No. DI-22-000356, - 00357, -00358; Investigation Regarding
> Whistleblower Disclosures Relating to Bureau of Prisons, Federal Correctional
> Institution Dublin

Dear Mr. Kerner:

I am responding to your April 7, 2022, letter to the Attorney General in which you referred for investigation allegations by whistleblowers that you believe may constitute a violation of law, rule, or regulation, and a substantial and specific danger to public health. Specifically, current and former federal employees from the Federal Correctional Institution (FCI) Dublin, CA alleged that the institution is failing to address asbestos containing material (ACM) and mold at various areas in FCI Dublin. Authority has been delegated to me to review and sign the Department's response, in accordance with 5 U.S.C. 1213(d).

As reflected in the attached report, the Bureau of Prisons (BOP) Office of General Counsel and Review initiated an investigation upon receiving the referral from your office. That investigation substantiated certain of the allegations and did not substantiate others. In particular, the investigation found that maintenance of floor tile throughout FCI Dublin violates OSHA standards and Bureau Policy because of the likelihood that those areas contain ACM. As a result, FCI Dublin has suspended all floor stripping, finishing, and buffing or cleaning with its existing stock of buffing machines. Floors may be cleaned using wet methods (such as mops) or HEPA vacuums. FCI Dublin is further considering engaging with an appropriate contractor to create a current asbestos survey that includes the entirety of FCI Dublin and create an Asbestos Management Plan for FCI Dublin to adopt and keep current. The Management Plan will become part of a robust annual review process by BOP's Regional or Central office.

While the allegations relating to mold were not substantiated, the investigation nonetheless resulted in recommendations to improve FCI Dublin's handling of instances that may involve mold. Specifically, the investigation recommended that Facilities staff ensure appropriate personal protective equipment (PPE) is worn at all times by FCI Dublin staff and

inmate workers. Further, no work should be completed without a proper work order that identifies the work performed, cost, hours, laborers, and PPE (if any). The investigation further recommended a 360° process that allows staff submitting work orders to receive or obtain updates on submitted Work Orders. The investigation further noted that new executive staff at FCI Dublin appear to be responsive and committed to addressing problems as they arise. The new Warden has shown commitment to ensuring that these types of complaints and any other similar issues are adequately addressed by speaking with each unit of staff members at FCI Dublin to hear and address their concerns as well as conducting thorough walk-throughs of impacted buildings to ensure that updates and repairs are adequately addressing the issue.

I trust that the investigation conducted by the BOP Office of General Counsel and Review resolves the concerns outlined in your letter. Please do not hesitate to contact me if I can provide further assistance.

Sincerely,

*Bradley Weinsheimer*
Bradley Weinsheimer
Associate Deputy Attorney General

2

**United States Department of Justice**
**Federal Bureau of Prisons**

**Office of General Counsel and Review**

**Report of Investigation**

OSC File Nos. DI-22-000356, DI-22-000357, and DI-22-000358

**Subject:** Investigation regarding allegations of specific danger to public safety at the Federal Correctional Institution (FCI) Dublin

**SYNOPSIS**

This is in response to a referral from the Office of Special Counsel (OSC) for investigation regarding conduct of employees at the Federal Correctional Institution (FCI) Dublin, California. It is alleged by EX1, EX2, and EX3 that asbestos containing material (ACM) located throughout FCI Dublin has been disturbed, thereby contaminating certain areas with asbestos dust and debris. These individuals further allege FCI Dublin has been and is currently contaminated with mold. The whistleblowers allege that they have brought these issues to management's attention but the issues remain unresolved.

OSC requested an investigation into the following specific allegations:

- Daily floor buffing throughout FCI Dublin has disturbed the asbestos contained in damaged vinyl floor tiling in various areas and buildings in violation of Occupational Safety and Health Administration (OSHA) regulations;
- FCI Dublin has not implemented applicable OSHA safety measures when daily floor buffing has disturbed the asbestos contained in damaged vinyl floor tiling;
- A shower renovation/expansion project in Housing Unit A has disturbed the asbestos in ACM and applicable OSHA safety measures have not been followed;
- FCI Dublin has not sufficiently cleaned or remediated mold located in various buildings throughout FCI Dublin;

1

- FCI Dublin has not sufficiently repaired a leak in the roof of the Education Building to prevent future mold growth; and
- Any additional, related allegations of wrongdoing discovered during the investigation of the foregoing allegations.

In the request for investigation, the whistleblowers stated that a 1998 asbestos survey, and subsequently a 2020 asbestos survey, concluded that ACM, such as vinyl floor tiling and associated black mastic, is located throughout FCI Dublin including Housing Units A/B, C/D, E/F, the Old Special Housing Unit, and the Food Service, Medical Service, Administration/Business, VT Business, Visiting, and Education Buildings. The whistleblowers stated that many of these areas have damaged floor tile which contains asbestos and that mechanical buffing of these tiles creates a visible cloud of asbestos dust and debris that is not managed or cleaned as prescribed by the Occupational Safety and Health Administration (OSHA). Further allegations state that a shower renovation/expansion project currently underway in Housing Unit A is either disturbing or removing ACM and that common areas near the work location, as well as employees completing the work, have not been properly protected through appropriate engineering controls or work practices.

The whistleblowers also allege that mold is present and can be seen in FCI Dublin buildings and areas including the Education Building, Drug Treatment Building, the Old Special Housing Unit, Food Service, the Main Lobby, and an office adjacent thereto. The whistleblowers allege that, at management's direction, untrained FCI Dublin facilities employees attempted to clean areas where mold has been seen, but that these areas were only superficially cleaned instead of fully remediated because the mold has repeatedly returned. Further allegations state that the roof in the Education Building recurrently leaks, which contributes to the mold problem in that location. Allegations state that FCI Dublin facilities employees have not fully repaired the roof given that the roof leaked in October, November, and December of 2021.

A thorough investigation into these allegations was conducted by the Bureau of Prisons' Office of General Counsel and Review, Real Estate and Environmental Law Branch. During the course of this investigation five witnesses were formally interviewed and approximately ten other individuals provided information during the in person site visit to FCI Dublin conducted on July 14, 2022. All documents provided by the whistleblowers were reviewed as well as other relevant records from the Bureau of Prisons' archives.

2

## INVESTIGATION

### Whistleblower Interviews and Information:

The whistleblowers requested written questions to which they could provide a written response. The whistleblowers were also given an opportunity to be interviewed during an on-site visit, but scheduling of that on-site interview was not able to be completed and thus a follow up conversation via telephone with all three whistleblowers was conducted on July 27, 2022. A summary of the information provided by the whistleblowers can be found below.

EX1, SIS Technician and Union Vice president for FCI Dublin, reported that he has seen broken vinyl flooring undergo buffing in all Housing Units. He also noted that sometimes the floors are dry buffed without the use of any product. He stated that buffing leaves a thin layer of dust on the baseboards in the buffed area. He said inmates perform the buffing and do not wear or use protective clothing or equipment. He is not aware of any training provided to these inmates regarding use of the buffing equipment or associated cleaning products. EX1 further provided that staff and inmates are able to freely walk through areas as they are being buffed.

EX1 also said that facilities staff and inmates are replacing the tile in several of the Housing Unit showers with stainless steel. He identified this project as starting in Housing Units A and B, but then moving to E and F. According to EX1, no barrier was put up around the showers to prevent dust from spreading to surrounding areas during the project. Individuals performing the shower work are not wearing masks except for cloth masks designed only to slow the spread of COVID-19. EX1 said he was not provided training on asbestos and is not aware of training being provided to other staff or inmates.

On the subject of mold, EX1 identified the Education Building and the Drug Treatment Building as having mold, which has progressively gotten worse over the years. He also stated that smaller amounts of mold were present in the Old Special Housing Unit, Records, Front Entrance, and throughout the Camp. He stated that Work Orders have been submitted regarding this issue as far back as 2013, but to his knowledge they have gone unaddressed. The Education Building has active and observable leaks, which he believes have been minimally and insufficiently repaired. He also stated, without further elaboration, that he has witnessed employee retaliation by managerial staff at FCI Dublin in response to the reporting of issues such as mold.

3

EX1 provided a detailed recitation of events relevant to these matters involving the local union and management between 2013 and 2022. The listed events generally detail mold complaints at the Education and Drug Treatment Buildings beginning in 2013 and management's response or lack thereof. The events also detail the Union's first formal awareness of a 1998 Asbestos Survey at FCI Dublin and management's response and statement that FCI Dublin was asbestos-free despite the findings in the survey. These events, as corroborated by other documentation, are discussed in further detail in another section, below.

EX3, retired SIS Technician at FCI Dublin and Union Secretary/Treasurer, provided information that was substantially similar to that reported by EX1 as outlined above. She said that in the 25 years she worked for the Bureau she was never aware of any inmates receiving training on buffing or floor equipment and has never personally witnessed anyone wearing personal protective equipment while using the buffing equipment. She reports witnessing work performed in various locations containing ACM, and all work was done without any asbestos abatement measures in place.

EX3 provided that only select staff have the ability to generate a Work Order. An employee who sees an area needing repair or remediation is to report that to an employee who is able to create a Work Order. She stated that no follow up on the order is provided either to the individual who submitted the Work Order or to the employee who originally reported the problem.

EX2, retired SIS Technician at FCI Dublin and Union President, concurred with EX1 in that he said he was unaware of any training provided to inmates regarding use of the buffing equipment or associated cleaning products and that he had not witnessed inmates operating the buffing or stripping equipment wearing protective clothing or equipment.

All three whistleblowers said they were not provided training on asbestos and were not aware of training being provided to other staff or inmates. They were all unaware of any training provided to staff regarding remediation of mold or how to report mold related issues. Both EX1 and EX2 alleged that they have been retaliated against for reporting issues such as these.

EX2 identified additional staff who he believed would have relevant information and who might agree to be interviewed. Of the nine staff identified, two agreed to be interviewed telephonically.

4

EX4 was telephonically interviewed on May 19, 2022. EX4 is a Procurement and Property Specialist at FCI Dublin and has held this position for the last six years. EX4 has been at FCI Dublin in this and other roles for 14 years.

EX4 stated that he and EX1 did a "walkthrough" of the institution in early May, 2022. He stated that the institution currently looks clean, although the Education and Chapel buildings still experience roof leaks. One project he focused on was a renovation of the Warden's Complex approximately two years ago. At the time of that project, his desk was located in the Warden's Complex near the renovation area. He stated that the renovation included grinding concrete floors and replacing tile. He stated that the dust coming from the office being renovated was so bad that the employees in the area were wearing masks; however, the inmates completing the actual renovation were neither provided nor wearing masks.

He further stated that, within the last two to three years, various showers have undergone renovations. He stated that tiles have been removed and replaced with stainless steel, and that any mold was simply painted over. He also discussed floor tiles, stating that inmates buff the floors either weekly or every two weeks. Inmates first strip the tiles, then spray it with "something else," and then use the buffers. According to EX4, inmates performing the buffing do not wear PPE and other staff and inmates are not restricted from the area while buffing occurs.

He agreed that there are cracked tiles throughout the institution. He stated that Facilities staff replace tiles upon notification of a cracked tile and he believes this work is done wearing PPE. When EX4 began as a correctional officer they were trained every year on mold and asbestos, although they were not trained on the locations of ACM. Training was discontinued, however, approximately nine years ago. He did not know why.

Lastly, EX4 stated that supervisors hold the ability to initiate Work Orders for things such as mold, dust, and potential asbestos. He stated that supervisors are reluctant to initiate Work Orders because the supervisors are threatened or discouraged by "higher ups" from reporting anything that would cost money to fix. He stated that supervisors would encourage him to "fix" the problem so that they do not have to report it. He stated that things such as cracked floor tiles are no longer being reported. During the Warden's Complex renovation, he stated that his supervisor at the time was seated at a desk behind closed doors and thus separated from the dust, and therefore would not report the dusty conditions from the concrete grinding. He also stated that if he reported mold that he

5

would be threatened with relocating until the mold could be remediated. He stated that the Drug Treatment building was the only building he ever saw receive mold remediation.

EX5 was telephonically interviewed on May 19, 2022. EX5 is a Drug Treatment Specialist and has worked at FCI Dublin since the Fall of 2015. He worked at two Bureau of Prisons' facilities prior to FCI Dublin. He requested anonymity.

In January of 2016, EX5 was assigned to work in a portable office which was being utilized as the Drug Treatment Building at the time. The building smelled of mold and when it rained, water would noticeably come down the walls. A coworker was complaining of headaches and sore throat and when she moved her desk the wall behind it was covered in mold. The employee reported this to the Safety Department and nothing was done. EX5 then obtained a home mold kit and tested the area for mold. The results showed the presence of mold and EX5 presented the test to management. EX5 stated that EX6 threatened to charge him with theft of Government property for taking the mold sample. However, the Drug Treatment Building was then remediated by removing and replacing the wallboard and the subfloor. EX5 stated that he and other employees had to stay in the building during the remediation despite the dust and mold. He stated that staff and inmates working on the project were not wearing PPE. It was approximately two years between the mold complaint and final remediation. EX5 said that the office was "pretty nice" following remediation; however, as soon as the remediation was complete, he and his team were moved to a different building and computer services personnel were given offices in the newly renovated space.

EX5 is unaware of any training given to staff or inmates on mold. He also has a recent Workers Compensation decision that his sinusitis was caused by mold in the workplace. While he receives no money for "winning" this claim, it allows him to pursue a claim later in life if further symptoms develop. He stated that management was asked by Department of Labor to respond to the claim, but EX7 either chose not to, or was directed not to, respond.

EX5 stated that the Education Building has leaks that are so extensive that at times the ceiling tiles become saturated with water to such a great extent that they fall. When that occurs someone is asked to go onto the roof to try and repair the leak, and the damaged ceiling tiles are removed but not replaced. He also identified a location in the Southwest Corner of the GED room in the Education building where a tile has fallen and you can, or could at one point, see sunlight coming in through a hole in the roof.

6

EX5 also discussed asbestos. He stated that the first time he heard asbestos discussed at Annual Training was after the Union had obtained an asbestos report through a Freedom Of Information Act (FOIA) request. He stated that EX6 then showed up with the report the Union had acquired through FOIA in hand and said "don't disturb anything with asbestos." No further training or discussion of asbestos was provided.

EX5 is in charge of preparing Work Orders for his Department. It is his impression that some of these Work Orders simply get ignored because there is no feedback on work requests. He did mention, however, that responses have improved over the last year or two. There still is no feedback on work requests, but he can observe work being performed. He does not currently see mold in his office and mold seems to have been a priority for the Facilities Department beginning in approximately March of this year.

When discussing Management, EX5 stated that EX8 and EX6 were "the enforcers" and "were awful."[1]

**Regulatory Framework:**

***Asbestos***

Asbestos is a well-recognized health hazard and is highly regulated by both the Occupational Safety and Health Administration (OSHA) and the United States Environmental Protection Agency (EPA). Both OSHA and EPA implement a variety of asbestos-related laws and regulations. The Bureau of Prisons also strictly regulates working with ACM through internal Policy requirements.

In general, asbestos found in building materials (which is much more prevalent in older building components) is not a health hazard when it is not in a breathable form, that is, when it is "non-friable." However, working on such material can cause the asbestos to become friable and consequently a health hazard. Asbestos is hazardous only when microscopic and breathable.

---

[1] In addition to the whistleblowers, management staff would have critical information regarding the above claims; however, two of the most relevant individuals, Associate Warden (later Warden) EX6 and Safety Manager EX7 are both currently under Federal criminal indictment for other matters and considered generally unavailable for comment. A third managerial staff member, Associate Warden EX8, is no longer with the Bureau of Prisons. Several other staff, notably Facility Managers, have largely held only temporary acting roles. Therefore, emails have been gathered and relied upon as representative of those staff.

7

OSHA regulations, established under 29 CFR 1910.1001 define ACM as any material containing more than 1% asbestos. Some materials such as thermal insulation and surfacing materials installed prior to 1981 are presumed to be ACM. Also, all vinyl flooring material installed prior to 1981 must be treated as asbestos containing unless a valid test of the tile and mastic shows otherwise pursuant to 29 CFR 1910.1001(j)(1)(ii). In addition, EPA regulations prohibit the future manufacture, importation, processing, and distribution in commerce of asbestos in almost all products.

Specifically relevant to this investigation, sanding of asbestos-containing floor material is prohibited and stripping of finishes on such flooring must be conducted using wet methods with low abrasion pads at speeds lower than 300 rpm pursuant to 29 CFR 1910.1001(k)(7)(ii)). Dry buffing of ACM flooring is only to be performed if the flooring has sufficient finish so that the pad does not come into contact with the ACM flooring. 29 CFR 1910.1001(k)(7)(iii). Any dust that is created in an area with ACM, including ACM flooring material, must be removed with a vacuum with a HEPA filter and is not to be dusted or swept dry.

EPA also has regulations specifically relevant to this investigation. EPA has established a national emission standard for asbestos under section 112 of the Clean Air Act (CAA). EPA regulations require, in relevant part, that if a renovation operation includes the disturbance of at least 15 square meters of material that contains or is suspected to contain asbestos, the Administrator of the EPA or their designee must be provided a notice of intent to renovate. 40 CFR 61.145(a)(4)(i). ACM is required to be wet prior to removal to prevent dust and can only be removed when at least one onsite representative at a level equivalent to a foreman or management who has been properly and currently trained on EPA's asbestos removal requirements is present.

Bureau of Prisons' Program Statement (PS) 1600.11 provides information for all staff on how to proceed with projects that may involve the disturbance and/or removal of asbestos containing material or suspected asbestos containing material. PS 1600.11 Ch.1 s. 4 requires that all institution staff be provided asbestos awareness training during Annual Training. PS 1600.11 Ch. 3 s. 5 requires that any suspected ACM shall be treated as ACM until proven otherwise. In general, all work on ACM or suspected ACM is required to be performed by contractors, not by staff or inmates. At no time may ACM or suspected ACM be removed or disturbed without the approval of both the ESCA (Environmental & Safety Compliance Administrator) and the Facilities Manager through a written "Asbestos Work Permit." Inmates are not allowed to work on projects

8

that involve the abatement or repair of asbestos containing material. Bureau of Prisons' employees who have been properly trained on asbestos removal may perform small-scale projects that involve less than one glove bag of asbestos-containing material. Any other removal or demolition projects must be completed by a properly certified asbestos removal contractor. Any such work requires respirators and appropriate PPE.

This Policy also requires that the ESCA at each institution perform monthly inspections that document any needed repairs on known or suspected ACM; this documentation requirement can only be eliminated if the institution is determined to be asbestos-free. Work Orders for ACM or suspected ACM are forwarded to the Facility Manager, who ensures that new projects potentially involving asbestos removal are presented to the Work Programming Committee and that all proper work procedures are followed.

Lastly, s. 5(f) of the Policy specifically states:

> Removal/demolition projects involving asbestos-containing materials must adhere to OSHA 29 CFR 1926 and EPA 40 CFR 61 Subpart M (National Emission Standard for Hazardous Air Pollutants), and state and local requirements. Due to the complexity of such projects and their strict regulatory safeguards, in-house asbestos removal or demolition (except for small-scale emergency repair/cleanup) is prohibited. Contracts for asbestos abatement projects and specifications must be approved by the Regional Facilities Administrator and the RESCA [Regional Environmental & Safety Compliance Administrator] before work begins. While specifications vary from project to project, compliance with applicable regulations is mandatory. As required by 40 CFR 61 Subpart M, the Regional EPA Asbestos Coordinator or governing state environmental agency must be notified in writing at least 20 days before the start of an asbestos removal or demolition project. A copy of the notification must be kept in the Facilities project file.

In summary, all inmates (other than in certain UNICOR applications not discussed in this report) and all staff (other than certain trained staff in very limited circumstances) are prohibited from working on ACM or suspected ACM. Bureau Policy and guidance regarding asbestos complies with EPA and OSHA requirements.

9

*Mold*

While OSHA requires varying levels of PPE that staff must wear when remediating moldy surfaces, indoor mold itself is not directly regulated by either OSHA or EPA. However, OSHA, EPA, and the Centers for Disease Control and Prevention (CDC) have all issued guidelines concerning mold.

What is clear from all of the guidance is that, while molds are everywhere and generally do not produce health impacts in most people, molds can trigger ill effects in people with weakened immune systems, allergies, and respiratory illnesses. Water damage should be attended to quickly in order to avoid mold, and moldy conditions should be responded to by removing the source of water, removing damaged or moldy material, and allowing the area to fully dry (generally without the use of disinfectants).

On November 29, 2021, EX9, MD, MPH, Chief of the Occupational Safety and Health Branch of the Bureau, sent out a memorandum to all ESCAs regarding Workplace Mold. This memorandum repeated information that was sent in similar memoranda in 2015 and 2018. The memorandum reminded staff of the Bureau's policy on mold remediation and abatement, providing that if a water leak or water damage is identified, the Facilities Department should be immediately notified in order to address the issue to prevent future mold growth. If mold is identified the area must be remediated by permanently repairing any roof, window, or interior plumbing leaks, water damaged interior furnishings should be removed and replaced, and any surface with mold should be cleaned with an appropriate disinfectant. Bureau Policy and guidance on mold complies with OSHA, EPA, and CDC requirements and guidance.

**Findings:**

*Allegation #1* - **Daily floor buffing throughout FCI Dublin has disturbed the asbestos contained in damaged vinyl floor tiling in various areas and buildings in violation of Occupational Safety and Health Administration (OSHA) regulations.**

*Allegation #2* – **FCI Dublin has not implemented applicable OSHA safety measures when daily floor buffing has disturbed the asbestos contained in damaged vinyl floor tiling.**

Allegation #1 is premised on there being asbestos in floor tiling in various areas of the institution. Ensafe Environmental Corporation performed an Asbestos Survey (Survey) at FCI Dublin in 1998. As part of that Survey, Ensafe identified 44 suspected

10

asbestos-containing construction materials located in 16 structures throughout the institution. The Survey found a total of 83,086 square feet of asbestos-containing floor tile and mastic located in the dining area of the Food Service Building, Housing Units A/B, C/D, E/F, what is now the Old Special Housing Unit, Administration/Business Offices, storage and rest rooms in the VT Business Offices, the computer lab in the Education Building, the Medical Services Building, and the Visiting Building. The Survey largely concluded that all of the floor tiling was in good condition and did not present an immediate health hazard. The Survey further concluded that all identified asbestos-containing material should be placed under a site-specific Asbestos Management Plan that included a detailed Operations and Maintenance Program. Such a Program would include proper training of maintenance personnel and notifications to all employees of the existence of asbestos. These recommendations appear to be industry-standard and part of an Asbestos Management Plan "living document" that is kept updated with all relevant changes.

In 2020, an additional Asbestos Inspection Report (Report) at FCI Dublin was prepared by J.C. Chang & Associates, Incorporated. The Report notes that the only prior study provided to the contractor was the 1998 Asbestos Survey. No changes or updates to the Survey, no Asbestos Management Plan, no Operations and Maintenance Program, and no other document was provided by FCI Dublin representing the intervening 22 years between the 1998 Survey and 2020 Report. The Report states the contractor was directed to not inspect buildings constructed prior to 1990 that had been "completely remodeled" sometime between original construction and the date of the 2020 inspection. No list of the areas not inspected is provided in the report. Further, the contractor was directed to not inspect buildings constructed post 1990. Those buildings include Human Resources, Training Center, SORT, UNICOR, UNICOR Warehouse, Safety, Recreation Barn, and the New Special Housing Unit. Lastly, the Report fails to describe all of the locations at FCI Dublin that were, in fact, inspected or the specific procedures used for the inspection. The locations where sampling occurred are assumed to be areas constructed prior to 1990 and not completely remodeled.

The contractor sampled five locations, all pertaining to floor tile. Two locations described as "black mastic under new floor tile" in the VT Business restroom and "bottom layer of floor tile" in Education ISM Records office contained no asbestos. Three locations, described as 12-inch vinyl floor tile in Administration, 12-inch vinyl floor tile in C Unit, and "bottom layer of vinyl floor tile & mastic" in F unit contained asbestos. The Report describes

11

many locations that have "newer floor tile" but does not assess whether the "new tile" is asbestos-free.

While the 2020 Report appears to have lacked the breadth and vigor of the 1998 Survey, it essentially confirmed the 1998 Survey. The two samples found to be asbestos-free in 2020 were in areas that had already largely been found to be asbestos-free in 1998 (and may have been sampled to specifically check certain rooms that contained asbestos flooring in 1998). The three areas found to contain asbestos in 2020 were confirmed to have asbestos in 1998. Some of the tile appears to be the same tile inspected in 1998, and some appears to be located under "newer tile." The "newer tile," if installed after 1998 may be asbestos-free but is not addressed in the Report. Our own inspection in July 2022 showed a wide variety of tiles and layers of tile throughout the Housing Units and institution demonstrating a variety of changes throughout the years. Our inspection and review of photographs revealed cracks and damage to many floor tiles and what appears to be original tile either on the surface or exposed via cracks in areas of floor. Given the cursory asbestos review provided in 2020, which did not specifically go beyond a small number of findings concerning floor tile, the lack of an Asbestos Management Plan, Operations and Maintenance plan, or other relevant records, the 1998 Survey appears to be the only reliable written record.

The investigation also revealed that a memorandum incorrectly stating that FCI Dublin was asbestos-free was issued by EX10, Western Regional Facilities Administrator, on January 19, 2018. This memorandum appears to have been issued due to an internal miscommunication on the part of the Bureau and a change in the way asbestos surveys were reported Bureau-wide. While this error was short-lived it added to the confusion surrounding asbestos at FCI Dublin. At all relevant times, however, it appears that the Safety Department at FCI Dublin had the 1998 survey available for review. It also appears that neither the Safety nor Facilities Departments were in the habit of checking the Asbestos Survey to ensure that ACM or PACM was not present in a proposed work area prior to authorizing work.

Our investigation revealed that "floor buffing" includes stripping old finish from floors, adding new finish, and/or cleaning the floors with a buffing machine. The stripping, finishing, and cleaning is largely managed by an inmate orderly who has performed this task for many years. She provided much of the following information during the July 2022 inspection. Stripping and refinishing is infrequent and occurs every two to three years, while cleaning is more frequent and may occur weekly or biweekly.

12

Stripping and finishing is infrequent due to the cost of materials, time, and labor intensity. Stripping and finishing of floors can be initiated when the inmate orderly determines an area of flooring has finish that is too damaged or deteriorated to benefit from cleaning. Other times the inmate orderly is instructed to strip and finish the floors due to events such as a planned inspection by Regional or Central Office officials or by third parties. She said that when stripping and finishing activities are underway, access to the area is limited to the inmate-operators and no other persons are allowed to enter.

The orderly stated that the machine for cleaning the floors via buffing is a separate machine than the machine for floor stripping. Inmates are only able to acquire a machine for floor stripping if they specifically request one from the orderly. Buffing machines for floor cleaning are more freely available to inmates, and inmates were cleaning using floor buffers at various locations during the July 2022 inspection. The orderly provided manufacturers' documentation for both machines, showed where the machines were stored, allowed a visual inspection of the machines, and gave a demonstration of the buffing machine used for cleaning. Her demonstration included safety precautions she encourages such as a two-person operation to keep the cord clear and ensure the machine operator is safe. Her demonstration did not lead to clouds of dust and debris coating the baseboards during cleaning; however, the investigators did not request a demonstration of floor stripping. Floor stripping was described as creating a wet slurry in the area of stripping as opposed to dust. The orderly is also very aware of cracked vinyl flooring. She avoids cracked tile and instructs other operators to do the same. Her concern with cracked tile is that it damages the buffer pads, increasing the time and expense involved. However, inmates observed during the July 2022 inspection were cleaning using the buffers and were clearly not engaged in a two-person operation, not wearing any protective gear, not limiting access to areas during cleaning, and did not appear to be concerned regarding cracks in flooring.

FCI Dublin employees and the orderly said that training regarding the use of the buffing equipment and associated cleaning products is available and provided to inmates prior to their use of such equipment. The investigators were shown lists containing names of inmates that were trained. It appears training is largely on-the-job and entirely managed by the orderly. Furthermore, while the inmate orderly coordinating the program seemed very knowledgeable, any training she may have received appears to have been largely on-the-job and self-study occurring many years ago. There did not

13

appear to be any awareness or training concerning potential asbestos in the floor tiles.

Pursuant to OSHA standards 29 CFR 1910.1001(j)(1)(ii) floor tile either known to contain asbestos or which was installed prior to 1981 cannot be sanded and stripping of finishes in these flooring areas can only be completed at speeds of 300 rpm or less using low abrasion equipment. Both the cleaning and stripping buffing machines at FCI Dublin operate at speeds well over 300 rpm and have no lower setting. The stripping pads were not described as "low abrasion."

Additionally, vinyl flooring areas were identified that had large cracks or gaps in them. While the orderly ensured us that she trains other inmates to avoid buffing areas of tile with cracks, an inspection into buffing occurring in areas where the orderly was not present showed that other inmates are likely utilizing the cleaning buffing equipment in areas with damaged tile. Inspection of the cracked tile flooring throughout the Housing Units showed that many, if not all, of the cracks had not received any additional finish which would prevent a buffing pad from coming into contact directly with the flooring and/or mastic as required by 29 CFR 1910.1001(k)(7)(iii).

**Allegations #1 and #2 are substantiated.** The July 2022 inspection revealed a wide variety of asbestos and asbestos-free tiling scattered throughout the institution after 1998 without any available documentation to show which tiles are ACM and which are not. According to the 1998 survey, the tiling appears to have been intact in 1998 but has undergone significant deterioration in various locations. Beginning in at least 1998, when the institution became aware of the ACM in the floor tile, no stripping and finishing should have occurred at speeds greater than 300 rpms, and no buffing or cleaning should occur in locations where the finish has worn away. The current practices of stripping, finishing, and cleaning floor tiles violates OSHA. Given the mix of flooring and thus the inability to selectively avoid asbestos containing tile, all such activities should be suspended. Further, given the demonstrated lack of specific asbestos awareness, it is assumed (and appears largely demonstrated) that these activities occurred in violation of other OSHA regulations.[2]

---

[2] The relevant OSHA provisions include regulations in 29 CFR 1910.1001(k)(7) concerning care of asbestos-containing flooring material; 29 CFR 1910.1001(k)(8) concerning cleaning; and 29 CFR 1910.1001(j)(7)(iv) concerning training of employees performing housekeeping.

14

Safety and Facilities staff both at the institution and at Central Office have been made aware of this and steps to remediate the issue, which include stopping all stripping and finishing and suspending buffing in all areas of the institution until the level of finish on the flooring can be determined, are underway. Buffing activities have been suspended; however, as noted, buffing was still occurring during the in person portion of this investigation. Staff at FCI Dublin have been reminded to discontinue buffing in all areas until a determination as to the level of finish on the flooring can be completed.

**Allegation #3 - A shower renovation/expansion project in Housing Unit A has disturbed the asbestos in ACM and applicable OSHA safety measures have not been followed.**

Similar to the floor tiles discussed above, this allegation is premised on there being asbestos in the Housing Unit Shower areas. The 1998 Study included all of the Housing Units in its survey and did not identify any shower area as containing suspected ACM. As such, materials from these areas were not tested for asbestos. The 2020 Report did not mention the shower areas and it cannot be determined whether these areas were included in that investigation.

A review of Work Orders at FCI Dublin did not identify any major shower repairs in the past three years; however, in 2014 a Building and Facilities funding request was sent from the FCI Dublin Facilities Manager to the Region asking for $80,000 for supplies and employee time to replace tile in half of the showers in the Housing Units with stainless steel inserts. On May 3, 2016, a purchase order for 18 stainless steel shower inserts was submitted. It is unclear from the records when the renovations on the showers to install the stainless steel inserts began, but during the July 2022 inspection a small number of showers in the Housing Units had stainless steel in place. Staff and inmates reported that these projects were all done by FCI Dublin employees and inmates. On December 17, 2019, a sample of the tile mastic, backing, and vapor barrier from one of the showers in Housing Unit F was sent to a lab for testing to determine if it contained asbestos. The results came back negative for asbestos; the actual wall tiles were not tested.

Given that the 1998 Survey did not list these areas as having suspected ACM and the 2019 testing confirming that no asbestos was present in the mastic or tile backing, **Allegation #3 is unsubstantiated.**

While Allegation #3 is unsubstantiated, maintenance work occurring at FCI Dublin and largely accomplished by staff and inmate laborers

15

throughout its history cannot be assumed to have been accomplished with appropriate attention to asbestos compliance. Our specific recommendations regarding Allegations #1 and #2 (below) should be considered only as a first step towards ensuring the safety of all workers against the recognized hazard of friable asbestos.

**_Allegation #4_ – FCI Dublin has not sufficiently cleaned or remediated mold located in various buildings throughout FCI Dublin.**

**_Allegation #5_ – FCI Dublin has not sufficiently repaired a leak in the roof of the Education Building to prevent future mold growth.**

The July 2022 inspection covered all areas of the institution and staff provided access to any areas requested by the investigators. No areas of mold or suspected mold were identified upon visual inspection. In addition, an Environmental and Safety Compliance Program Review was conducted by Central Office staff at FCI Dublin in April 2022 and no mold was noted (although such notations would be ancillary to this type of review). Lastly, an institution-wide inspection with accompanying photographs conducted by EX10 in May 2022 found no areas of mold, three areas with indicators that could be confused for mold, and a complaint from Education Staff that the carpet smelled musty.

In October 2021 a Work Order requesting that leaks be repaired in the Education building was submitted and as of April 12, 2022, those leaks have been repaired. After the leaks were repaired, all employees in the Education Building were moved out to provide room for renovation to include new drywall, ceiling, and flooring. New carpet to replace the water damaged carpet is currently being installed. This was observed during the July 2022 inspection.

The investigation found the current Warden and management staff to be attentive and responsive to concerns regarding mold. No mold was discovered, no current mold complaints were documented, and leaks were either repaired or being repaired. Therefore, **Allegations #4 and #5 are unsubstantiated.** However, this investigation would be incomplete without a broader discussion to contextualize this historical anomaly.

Regarding the Education Building, email exchanges in October 2013 concerning mold began with staff emailing the Warden of FCI Dublin and other executive staff to report that the roof in the GED area of the Education Building was collapsing due to rain. On June 3, 2015, an email was sent to Human Resources reporting mold in staff work areas. A Statement of Work was prepared in 2015 which outlined roof replacement projects for a number of buildings at FCI Dublin,

16

including the Education Building. Staff at FCI Dublin believe the roof work on the Education Building was completed in 2016. On October 19, 2018, staff in the Education Building complained again about a moldy smell, which began after several rounds of flooding. The Education Building, as noted above, was again repaired in 2021 – 2022. The investigation revealed that staff and inmates in that area were required to conduct classes in rooms with periodically damp and moldy carpeting from 2013 to 2022.

The Drug Treatment Building was also noted as having had long-standing mold. Throughout 2016 to 2019, staff repeatedly reported to management through successive work orders the observation of visible mold on the east wall, outlets, floor, and ceiling of the Drug Treatment Building. Little was done to remedy or address the concerns.

In March 2019, the staff member responsible for submission of several of the Work Orders decided to conduct a home mold test in the Drug Treatment Building. The results showed mold, and the staff member provided the information to EX7 on April 4, 2019. On April 9, 2019, EX7 sent a mold sample gathered from "Ms. Charles Office" and the "Copy Room" in the Drug Treatment Building to AbsoluteLabs for testing.

On April 30, 2019, AbsoluteLabs sent the results of the testing, showing that both areas had mold. These results were sent to the Bureau's Industrial Hygienist, EX12, on May 3, 2019. EX12 recommended the areas be remediated of water leaks, sanitized with diluted bleach or hdqc2 with a 10 minute soak time, individuals removed from the work area, any porous furnishing in the area that were contaminated be removed, and a dehumidifier be installed to remove moisture.

Both the union and staff members requested the results of the Bureau's test. By July 2019 EX6 informed the union that they could not have the results.

These basic facts led to a series of communications between management, the union, and other staff members, most of which seem ancillary to the present investigation. However, it is clear that attention to mold and leaks took an inappropriate length of time, and that management failed to comply with basic OSHA requirements. Further, management at the time intentionally withheld important information from staff and its union regarding health the safety matters. These actions created significant hurdles for the present executive staff to overcome.

17

**While Allegations #4 and #5 are presently unsubstantiated, a conclusion in this regard could only be supported by the attention created as a result of certain claims and the fortuitous intervention of new executive staff.**

**Conclusions:**

Allegations #1 and #2 are substantiated. Maintenance of floor tile throughout FCI Dublin violates OSHA standards and Bureau Policy. FCI Dublin should immediately suspend all floor stripping, finishing, and buffing or cleaning with its existing stock of buffing machines. Floors may be cleaned using wet methods (such as mops) or HEPA vacuums. Once appropriate machines are obtained, only Bureau staff or federal contractors may conduct stripping, finishing, or buffing. In the alternative, FCI Dublin could hire an appropriate contractor to accurately determine the current location of all asbestos-containing floor tile and either fully remove and remediate or encapsulate all asbestos-containing flooring. We recommend the contractor perform the additional step of creating a current asbestos survey that includes the entirety of FCI Dublin and create an Asbestos Management Plan for FCI Dublin to adopt and keep current. The Management Plan should become a part of a robust annual review process by the Regional or Central office.

Allegation #3 is unsubstantiated. Nevertheless, in addition to the above recommendations, it is highly recommended that Facilities staff ensure appropriate PPE is worn at all times by Bureau staff and inmate workers. Further, no work should be completed without a proper Work Order that identifies the work performed, cost, hours, laborers, and PPE (if any). Lastly, we recommend a 360° process that allows staff submitting Work Orders to receive or obtain updates on submitted Work Orders.

Allegations #4 and #5 are unsubstantiated due to intervening factors. Recommendations in this regard (as in the area of asbestos) should begin with the recognition of robust Policy issued by the Central Office Health Services Division and Administration Division, along with what appears to the investigators as chronic and significant underfunding for maintenance and repair of current real estate assets. That notwithstanding, it is recognized that the promotion, installation, and accountability of highly competent executive staff with a commitment to transparency is key to the resolution of these allegations. A new team of executive staff have been installed at FCI Dublin. This includes a new Warden who has shown commitment to ensuring that this complaint and any other

18

similar issues are adequately addressed by speaking with each unit of staff members at FCI Dublin to hear and address their concerns as well as conducting thorough walk-throughs of impacted buildings to ensure that updates and repairs are adequately addressing the issue.

**Violations of Laws, Rules, or Regulations:**

Regarding Allegations 1 and 2, this investigation revealed violations of law, rule, and regulations at FCI Dublin as related to the floor buffing activities on flooring known or suspected to contain asbestos.

Dry buffing of ACM flooring is only to be performed if the flooring has sufficient finish so that the pad does not come into contact with the ACM flooring. 29 CFR 1910.1001(k)(7)(iii). Any dust that is created in an area with ACM, including ACM flooring material, must be removed with a vacuum with a HEPA filter and is not to be dusted or swept dry. This investigation did not reveal that the floors were being adequately checked to ensure a sufficient finish was in place prior to any buffing activity and also revealed that dusting and dry sweeping, as opposed to the required vacuuming with a HEPA filter, was occurring after buffing activities.

Furthermore, Pursuant to OSHA standards 29 CFR 1910.1001(j)(1)(ii) floor tile either known to contain asbestos or which was installed prior to 1981, and which has not been proven to be asbestos free, cannot be sanded and stripping of finishes in these flooring areas can only be completed at speeds of 300 rpm or less using low abrasion equipment. Both the cleaning and stripping buffing machines at FCI Dublin operate at speeds well over 300 rpm and have no lower setting, and the stripping pads were not described as "low abrasion." The refinishing via stripping of finishes of these floors is a violation of OSHA standards.

As noted above, there is no evidence of a violation of law, rule, or regulation at FCI Dublin related to allegations 3, 4, or 5. While this was widely due to intervening factors, those factors largely included the installation of a new team of executive staff at FCI Dublin who pride themselves on ensuring the transparency and operational safety of the institution.

19

**Action taken or planned as a result of the investigation:**

(A)   Changes in agency rules, regulations, or practices.

All stripping or refinishing of floors at FCI Dublin was immediately ceased and the machines used for refinishing are no longer being made available for use by inmate orderlies or staff. Buffing activities were also paused so that the level of finish on the floor could be determined to ensure that an appropriate level of finish exists in each area of flooring so that the buffing pads do not come into direct contact with the tile below. Orderlies responsible for buffing activities have also been instructed to check for sufficient levels of finish prior to any buffing activity. Any area found to have insufficient floor finish is not to be buffed.

(B)   Restoration of any aggrieved employee.

Not applicable.

(C)   Disciplinary action against any employee.

Not applicable; as identified above, the employees whose actions may have risen to the level of disciplinary action are no longer with the Bureau for unrelated reasons.

(D)   Referral to the Attorney General of any evidence of criminal violation.

Not applicable.

20

OSC File No. DI-22-000356

OSC File No. DI-22-000357                                        January 18, 2023

OSC File No. DI-22-000358


Pursuant to 5 U.S.C. § 1213(e)(1), we the whistleblowers are making the following comments in response to the Department of Justice Federal Bureau of Prisons' report to the U.S. Office of Special Counsel (OSC). We ask that our comments be sent to the agency head, the President, and the appropriate congressional oversight committees in accordance with 5 U.S.C. § 1213(e)(3). We also consent for our comments to be included with the public file maintained by OSC pursuant to 5 U.S.C. § 1219(a)(1).


Two of our allegations were determined by the Federal Bureau of Prisons to be substantiated.


Allegation 1 substantiated - Daily floor buffing throughout FCI Dublin has disturbed the asbestos contained in damaged vinyl floor tiling in various areas and buildings in violation of Occupational Safety and Health Administration (OSHA) regulations.


Allegation 2 substantiated– FCI Dublin has not implemented applicable OSHA safety measures when daily floor buffing has disturbed the asbestos contained in damaged vinyl floor tiling.

Two of our allegations were determined by the Federal Bureau of Prisons to be unsubstantiated.


We do not agree with the determination of unsubstantiated and we make the following argument that allegations 4 & 5 should have been substantiated.


Allegation 4 - FCI Dublin had not sufficiently cleaned, or remediated mold located in various buildings throughout FCI Dublin


Allegation 5 - FCI Dublin had not sufficiently repaired a leak in the roof of the Education Building to prevent future mold growth.


Timeline


2016 - 2021: Mold was present in multiple areas of the Prison and was not remediated and leaks were not repaired


2016 - 2021: Work orders and safety reports were turned in requesting the mold and leaks to be repaired


2021: Mold was reported to the Bureau of Prisons Western Regional Director, the Western Regional Deputy Director, the Local Human Resource Manager, Safety Manager, Facilities Manager, and the Warden throughout 2021 and the mold was not remediated nor was the roof sufficiently repaired in 2021. Federal Officers and Federal prison inmates were subjected to work and attend classes in a mold infested education building all through 2021, and part of 2022.

02/25/2022: Whistleblowers turned in allegations to OSC

03/01/2022: OSC assigned an OSC Attorney to review our whistleblower disclosures.

04/07/2022: OSC referred asbestos and mold allegations back to the Bureau of Prisons for investigation.

06/03/2022: Bureau of Prisons investigation due date to OSC, however they requested an extension.

07/06/2022: Bureau of Prisons investigation due date to OSC, however they requested an extension.

08/05/2022: Bureau of Prisons investigation due date to OSC, however they requested an extension.

10/24/2022: Bureau of Prisons investigation due date to OSC, however they requested an extension.

11/30/2022: Bureau of Prisons investigation due date to OSC, however they requested an extension.

12/13/2022: Whistleblowers notified by OSC that the Bureau of Prisons investigation was completed.

We as the whistleblowers made the OSC complaint in February 2022 after our requests to the Bureau of Prisons for remediation were ignored for the last couple years and we began to be retaliated against for requesting remediation.

It wasn't until the Agency became aware of OSC's involvement and referral that they acted on remediating the mold.

In 04/2022 to 07/2022 the mold was removed by removing all carpet, tiles, ceiling times and wall boards that were covered with mold.

The inspection was due prior to 06/2023 but was delayed and in 07/2022 the Bureau conducted it's inspection after the mold was removed and new carpet and tiles were replaced and walls painted (See page 16 "The July 2022 inspection")

This does not make the allegation unsubstantiated it makes the allegation remediated.

The definition of unsubstantiated is "not supported by evidence"

The allegation that FCI Dublin had not sufficiently cleaned, or remediated mold located in various buildings throughout FCI Dublin from 2016 to 2022 and they had not sufficiently repaired a leak in the roof of the Education Building to prevent future

mold growth from 2016 to 2022 was supported by multiple witness testimonies. Some examples from the Bureau report are listed below:

Page 3 "On the subject of mold, EX1 identified the Education Building and the Drug Treatment Building as having mold, which has progressively gotten worse over the years. He also stated that smaller amounts of mold were present in the Old Special Housing Unit, Records, Front Entrance, and throughout the Camp. He stated that Work Orders have been submitted regarding this issue as far back as 2013, but to his knowledge they have gone unaddressed. The Education Building has active and observable leaks, which he believes have been minimally and insufficiently repaired. He also stated, without further elaboration, that he has witnessed employee retaliation by managerial staff at FCI Dublin in response to the reporting of issues such as mold. EX1 provided a detailed recitation of events relevant to these matters involving the local union and management between 2013 and 2022. The listed events generally detail mold complaints at the Education and Drug Treatment Buildings beginning in 2013 and management's response or lack thereof."

Page 6 "In January of 2016, EX5 was assigned to work in a portable office which was being utilized as the Drug Treatment Building at the time. The building smelled of mold and when it rained, water would noticeably come down the walls. A coworker was complaining of headaches and sore throat and when she moved her desk the wall behind it was covered in mold. The employee reported this to the Safety Department, and nothing was done. EX5 then obtained a home mold kit and tested the area for mold. The results showed the presence of mold and EX5 presented the test to management. EX5 stated that EX6 threatened to charge" "EX5 stated that the Education Building has leaks that are so extensive that at times the ceiling tiles become saturated with water to such a great extent that they fall. When that occurs, someone is asked to go onto the roof to try and repair the leak, and the damaged ceiling tiles are removed but not replaced. He also identified a location in the Southwest Corner of the GED room in the Education building where a tile has fallen and you can, or could at one point, see sunlight coming in through a hole in the roof."

Additionaly and conveniently not included in the inspection and report there is a mass amount of other evidence to support allegations 4 and 5 over the years from 2015 – 2022.

One important piece of evidence is a 2019 Office of Workers' Comp approved claim for occupational disease indicating a FCI Dublin employee sustained an injury or condition when being exposed to mold and asbestos in their work area since 2015.

In closing, we as the whistleblowers are thankful the mold has been remediated and are hopeful that after OSC closes this case that FCI Dublin will make future repairs timely and not subject any future employees or inmates to conditions that they were subjected to in the past.

We ask that that the Attorney General, Department of Justice and the Federal Bureau of Prisons notify all employees, contractors, and inmates who were working at or incarcerated at FCI Dublin during the relevant time period of their potential exposure to mold and asbestos and provide them a no-cost medical evaluation. Thank you.

OSC File No. DI-22-000356

OSC File No. DI-22-000357                                                    July 31, 2023

OSC File No. DI-22-000358

Supplemental comments to our January 18, 2023, response:

Pursuant to 5 U.S.C. § 1213(e)(1), we the whistleblowers are making the following comments in response to the Department of Justice Federal Bureau of Prisons' report to the U.S. Office of Special Counsel (OSC). We ask that our comments be sent to the agency head, the President, and the appropriate congressional oversight committees in accordance with 5 U.S.C. § 1213(e)(3). We also consent for our comments to be included with the public file maintained by OSC pursuant to 5 U.S.C. § 1219(a)(1).

On December 13, 2022, OSC notified the whistleblowers that the Bureau of Prisons report of investigation was completed and received by OSC.

On January 18, 2023, whistleblowers reviewed the Bureau of Prisons report of investigation and provided a response to OSC to include in the report to the President of the United States, oversight committees, and public file.

From January 18, 2023, through July 7, 2023, the Bureau of Prisons was given an opportunity by OSC to consider a comprehensive resolution for asbestos exposure.

On July 13, 2023, the whistleblowers were notified by OSC that the Bureau of Prisons has decided NOT to notify past and present employees of their exposure to mold and asbestos at the Federal Correctional Institution in Dublin, California.

We ask that no further delays occur and that this report be submitted timely to the President of the United States, the Congressional oversight committees, and released electronically in the OSC public file.

We ask that that the President of the United States and the Congressional oversight committees require the Attorney General, Department of Justice and the Federal Bureau of Prisons to notify all past and present employees who were working at FCI Dublin during the relevant time period of their potential exposure to mold and asbestos and provide them a no-cost medical evaluation, necessary medical care, and a presumption in their personnel file that they were exposed to these issues at the workplace for purposes of potential workers compensation claims if appropriate.

We further ask that Congressional hearings be held to seek answers from the agency as to why the known issues related to asbestos and mold were not mitigated without the need of an investigation.

Lastly, the public should be given a reason, under oath, as to why the agency won't inform past employees about these health exposures.

Thank you.





**The Special Counsel**

U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

April 7, 2022

The Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Dear Attorney General Garland:

    Re:  OSC File Nos. DI-22-000356, DI-22-000357, and DI-22-000358
          Referral for Investigation – 5 U.S.C. § 1213(c)

Dear Attorney General Garland:

    I am referring to you for investigation a whistleblower disclosure that employees at the U.S. Department of Justice (DOJ), Bureau of Prisons, Federal Corrections Institution Dublin, Dublin, California, (FCI Dublin), engaged in conduct that may constitute a violation of law, rule, or regulation, and a substantial and specific danger to public health. A report of your investigation of these allegations and any related matters is due to the Office of Special Counsel (OSC) by June 6, 2022.

    The whistleblowers, █████████████████████████████████ at FCI Dublin, and █████████████████████████████ FCI Dublin, consented to the release of their names. The whistleblowers disclosed that asbestos containing material (ACM) located throughout FCI Dublin has been disturbed, thereby, contaminating certain areas with asbestos dust and debris. The whistleblowers also disclosed that various areas in FCI Dublin have been contaminated with mold. The whistleblowers have brought the issues to management's attention, but they remain unresolved. The allegations to be investigated include:

- Daily floor buffing throughout FCI Dublin has disturbed the asbestos contained in damaged vinyl floor tiling in various areas and buildings in violation of Occupational Safety and Health Administration (OSHA) regulations;[1]
- FCI Dublin has not implemented applicable OSHA safety measures[2] when daily floor buffing has disturbed the asbestos contained in damaged vinyl floor tiling;

---

[1] In pertinent part, OSHA's general asbestos standard states that dry buffing asbestos-containing floor material may occur only on flooring that has a sufficient finish so that the pad cannot contact the asbestos, and visibly deteriorated ACM shall not be dusted, swept dry, or vacuumed without using a HEPA filter. *See* 29 CFR § 1910.1001(k)(7)-(8).
[2] OSHA requires cleaning asbestos spills and sudden releases as soon as possible and using HEPA-filtered vacuuming equipment to vacuum asbestos waste, debris, and dust. 29 CFR § 1910.1001(k) *et seq.* Also, employers shall medically surveil all employees exposed to airborne asbestos at or above the time weighted average and/or excursion limits. *See* 29 CFR § 1910.1001(l) *et seq.*

The Honorable Merrick B. Garland
April 7, 2022
Page 2 of 4

- A shower renovation/expansion project in Housing Unit A has disturbed the asbestos in ACM and applicable OSHA safety measures[3] have not been followed;
- FCI Dublin has not sufficiently cleaned or remediated mold located in various buildings throughout FCI Dublin;
- FCI Dublin has not sufficiently repaired a leak in the roof of the Education Building to prevent future mold growth; and
- Any additional, related allegations of wrongdoing discovered during the investigation of the foregoing allegations.

The whistleblowers stated that a 1998 asbestos survey and, subsequently, a 2020 inspection concluded that ACM, such as vinyl floor tiling and associated black mastic, is located throughout FCI Dublin including Housing Units A/B, C/D, E/F, the Old Special Housing Unit, and the Food Service, Medical Service, Administration/Business, VT Business, Visiting, and Education Buildings. The whistleblowers asserted that numerous floor tiles in these locations are cracked and warped—exposing the asbestos contained therein. The whistleblowers asserted that inmates mechanically buff the floors in these locations daily, including the damaged tiles. The buffing creates a visible cloud of asbestos dust and debris that is not managed or cleaned as prescribed by OSHA. The whistleblowers further asserted that a shower renovation/expansion project currently underway in Housing Unit A is either disturbing or removing ACM such as floor tiles and mastic. The shower area is not in use, and FCI Dublin facilities employees performing the work wear face coverings. However, the whistleblowers asserted that inmate common areas are near the work area and the facilities employees performing the work have not implemented engineering controls or work practices to minimize others' exposure to asbestos waste, dust, or debris.

Additionally, the whistleblowers alleged that mold is present and can be seen in several FCI Dublin buildings and areas including the Education and Drug Treatment Buildings, the Old Special Housing Unit, Food Service, the main lobby, and an office adjacent thereto. The whistleblowers alleged that, at management's direction, untrained FCI Dublin facilities employees attempted to clean areas where mold had been seen. But the whistleblowers alleged these areas were only superficially cleaned instead of fully remediated because the mold has repeatedly returned. The whistleblowers also alleged that the roof in the Education Building repeatedly leaks, which contributes to the problem there, explaining that FCI Dublin facilities employees have not fully repaired the roof given that the roof had leaked in October, November, and December of 2021.

Pursuant to my authority under 5 U.S.C. § 1213(c), I have concluded that there is a substantial likelihood that the information provided to OSC discloses a violation of law, rule, or regulation, and a substantial and specific danger to public health. Please note that specific allegations and references to specific violations of law, rule or regulation are not intended to be exclusive. If, in the course of your investigation, you discover additional violations, please include your findings on these additional matters in the report to OSC. As previously noted, your agency must conduct an investigation of these matters and produce a report, which must be reviewed and signed by you. Per statutory requirements, I will review the report for sufficiency and reasonableness before sending copies of the agency report along with the whistleblower's comments and any comments

---

[3] OSHA requires construction, renovation, repair, or maintenance work that will likely disturb ACM to be conducted using engineering controls and work practices that minimize asbestos exposure. 29 C.F.R. § 1926.1101 *et seq.*

The Honorable Merrick B. Garland
April 7, 2022
Page 3 of 4

or recommendations I may have, to the President and congressional oversight committees and making these documents publicly available.

Additional important requirements and guidance on the agency report are included in the attached Appendix, which can be accessed at https://osc.gov/Services/Pages/DU-Resources.aspx. If your investigators have questions regarding the statutory process or the report required under 5 U.S.C. § 1213, please contact Catherine A. McMullen, Chief, Disclosure Unit, at (202) 804-7088 or cmcmullen@osc.gov for assistance. I am also available for any questions you may have.

Sincerely,

Henry J. Kerner
Special Counsel

Enclosure

cc: The Honorable Michael E. Horowitz, DOJ Inspector General

The Honorable Merrick B. Garland
April 7, 2022
Page 4 of 4

**APPENDIX**
**AGENCY REPORTS UNDER 5 U.S.C. §**
**1213**

GUIDANCE ON 1213 REPORT
- OSC requires that your investigators interview the whistleblower at the beginning of the agency investigation when the whistleblower consents to the disclosure of his or her name.
- Should the agency head delegate the authority to review and sign the report, the delegation must be specifically stated and include the authority to take the actions necessary under 5 U.S.C. § 1213(d)(5).
- OSC will consider extension requests in 60-day increments when an agency evidences that it is conducting a good faith investigation that will require more time to complete.
- Identify agency employees by position title in the report and attach a key identifying the employees by both name and position. The key identifying employees will be used by OSC in its review and evaluation of the report. OSC will place the report without the employee identification key in its public file.
- Do not include in the report personally identifiable information, such as social security numbers, home addresses and telephone numbers, personal e-mails, dates and places of birth, and personal financial information.
- Include information about actual or projected financial savings as a result of the investigation as well as any policy changes related to the financial savings.
- Reports previously provided to OSC may be reviewed through OSC's public file, which is available here: https://osc.gov/Pages/Resources-PublicFiles.aspx. Please refer to our file number in any correspondence on this matter.

RETALIATION AGAINST WHISTLEBLOWERS
In some cases, whistleblowers who have made disclosures to OSC that are referred for investigation pursuant to 5 U.S.C. § 1213 also allege retaliation for whistleblowing once the agency is on notice of their allegations. The Special Counsel strongly recommends the agency take all appropriate measures to protect individuals from retaliation and other prohibited personnel practices.

EXCEPTIONS TO PUBLIC FILE REQUIREMENT
OSC will place a copy of the agency report in its public file unless it is classified or prohibited from release by law or by Executive Order requiring that information be kept secret in the interest of national defense or the conduct of foreign affairs. 5 U.S.C. § 1219(a).

EVIDENCE OF CRIMINAL CONDUCT
If the agency discovers evidence of a criminal violation during the course of its investigation and refers the evidence to the Attorney General, the agency must notify the Office of Personnel Management and the Office of Management and Budget. 5 U.S.C. § 1213(f). In such cases, the agency must still submit its report to OSC, but OSC must not share the report lower or make it publicly available. See 5 U.S.C. §§ 1213(f), 1219(a)(1)