ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL - 330482
LUMA KHABBAZ - 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Email: mbien@rbgg.com
        egalvan@rbgg.com
        kjanssen@rbgg.com
        gjackson-gleich@rbgg.com

STEPHEN CHA-KIM*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
Five Palo Alto Square, Suite 500
New York, NY 10019-9710
Telephone: (212) 836-8000
Email: stephen.cha-kim@arnoldporter.com

CARSON ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: (650) 319-4500
Email: carson.anderson@arnoldporter.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 679-3674
Email: susan@ccijustice.org

OREN NIMNI* Mass. Bar No. 691821
AMARIS MONTES* Md. Bar No. 2112150205
D DANGARAN *Mass. Bar No. 708195
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C. 20001-0506
Telephone: (202) 455-4399
Email: oren@rightsbehindbars.org
        amaris@rightsbehindbars.org
        d@rightsbehindbars.org

Attorneys for Plaintiffs                    *Admitted pro hac vice

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al.,<br><br>Defendants. | Case No. 4:23-cv-04155-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1
I.    LEGAL STANDARDS ................................................................................................... 2
II.   FACTS ............................................................................................................................. 3
III.  ARGUMENT ................................................................................................................... 9
    A.  The Court Should Not Be Rushed Into Accepting BOP's Manufactured Urgent Timeline For Closure…………………………………………………………………………………9
    B.  The Court's Guidance On Transfer Of Inmates From FCI Dublin Is Not Being Followed……………………………………………………………………………..11
    C.  The Court Has The Authority To Ensure That BOP Effectuates Inmate Transfers In A Constitutional And Statutorily-Compliant Manner………………………………………11
    D.  A TRO Should Issue…………………………………………………………………14
        1.  Plaintiffs Are Likely To Succeed On The Merits .......................................... 14
        2.  Plaintiffs Are Likely To Suffer Irreparable Harm In the Absence of The TRO ........ 14
        3.  The Balance Of Equities Tips In Plaintiffs' Favor ....................................... 15
        4.  A TRO Is In The Public Interest .................................................................. 15
IV.   CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmad v. Jacquez*,
 860 Fed. Appx. 459 (9th Cir. 2021) .................................................................................... 12

*Brown v. Plata*,
 563 U.S. 493 (2011) .............................................................................................................. 14

*Duren v. Doerer*,
 No. 5:23-cv-00772-FWS-KES, 2023 WL 9289984 (C.D. Cal. Dec. 1, 2023) ...................... 12

*Duren v. Doerrer, R&R accepted*,
 2024 WL 187672 (C.D. Cal. Jan. 16, 2024) ........................................................................ 13

*East Bay Sanctuary Covenant v. Trump*,
 932 F.3d 742 (9th Cir. 2018) .................................................................................................. 2

*Flynt Distrib. Co. v. Harvey*,
 734 F.2d 1389 (9th Cir. 1984) ................................................................................................ 4

*Izaguirre-Guerrero v. Warden, FCI Mendota*,
 No. 1:23-cv-00845-EPG-HC, 2024 WL 1333353 (E.D. Cal. Mar. 28, 2024) ...................... 13

*Martinez Franco v. Jennings*,
 456 F. Supp. 3d 1193 (N.D. Cal. 2020) ........................................................................ 2, 3, 13

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ............................................................................................ 3, 15

*Rodriguez v. Copenhaver*,
 823 F.3d 1238 (9th Cir. 2016) ................................................................................ 11, 12, 14

*Rodriguez v. Smith*,
 541 F.3d 1180 (9th Cir. 2008) .............................................................................................. 11

**Statutes**

18 U.S.C. § 3621 ............................................................................................................................ 11

18 U.S.C. § 3621(b) ......................................................................................................... 11, 12, 14

# NOTICE OF MOTION AND MOTION

Notice is hereby given that, as soon as they may be heard, Plaintiffs hereby move, pursuant to Civil L.R. 7-1 and 65-1, for a temporary restraining order (TRO) ordering Defendants the United States and the United States Bureau of Prisons (collectively the "BOP") to (1) temporarily stay the transfer of incarcerated persons from Federal Correctional Institute ("FCI") Dublin until such a time as it can be ensured by the Court and the Special Master that it proceeds without risk of further constitutional violation to the incarcerated population or violation of the existing preliminary injunction in this matter; (2) for those class members who have already been transferred, order Defendant BOP to produce all records associated with such transfers and allow Special Master Still the authority to conduct a review of these records to determine whether such transfers complied with constitutional standards; and (3) order BOP to maintain constitutionally appropriate conditions at FCI Dublin, including provision of medical care, food, water, blankets, and life's other necessities.

Notice was given to counsel for the BOP that Plaintiffs were filing this TRO via email on April 18, 2024 at 10:57 PM. *See* Nimni Declaration, filed herewith ("Nimni Decl.").

## I.    INTRODUCTION

BOP's sudden decision to clear out FCI Dublin's over six hundred residents on a week's notice has wrought chaos to a population that, as this Court has found, is already at risk of "imminent and serious medical injury, including lack of treatment for serious medical ailments, psychological distress, and risk of suicide," among others harms. ECF No. 222 at 1, 42. This urgent crisis is entirely of BOP's own making and the agency's insistence that the closure was made in the ordinary course for proper reasons – when there was absolutely no sign that such a major action had been planned until BOP announced it a week after the appointment of the Special Master – already strained credulity. As set forth below, BOP's actions in the past few

days – increasingly and audaciously flouting the Court's Guidance on Transfer Of Inmates (ECF Nos. 252-1, 254-1, and 260-1) – further demonstrate that BOP's real aim is to change the status quo as quickly and as irreversibly as possible to evade this Court's oversight.

BOP is currently in the process of dispersing a Plaintiff class this Court certified after due consideration – sexual abuse survivors, retaliation victims, individuals with serious unmet medical needs – without ensuring, as directed by the Court, that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ While the Court may not prevent BOP from closing a prison in the due course, as described below, it has the authority, jurisdiction and duty to ensure that the process is carried out in compliance with relevant federal laws and in accordance with constitutional standards. Where such violations of the Constitution and federal law are at issue, this Court does not have to cede to BOP's manufactured urgency. Accordingly, the Court should immediately intervene to temporarily halt any further transfers out of Dublin until the Court and the Special Master can ensure that the transfer process of all remaining individuals is carried out in a duly considered, constitutionally compliant manner.

I. **LEGAL STANDARDS**

The legal standard for a temporary restraining order and a preliminary injunction are the same: A movant must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent preliminary relief, (3) the balance of equities tips in favor of the plaintiff, and (4) a TRO is in the public interest. *Martinez Franco v. Jennings*, 456 F. Supp. 3d 1193, 1197 (N.D. Cal. 2020). A TRO is particularly appropriate where, in meeting these factors, it seeks to maintain the status quo. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018).

It is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Other irreparable harm includes economic hardship and separation from family. *Martinez Franco*, 456 F. Supp. 3d at 1200. And when evaluating the public interest for a TRO, courts "must consider the hardship to [a detained individual's] family and friends and the waste of public resources from the expense of his possibly unnecessary detention." *Id*.

## II.     FACTS

### A. BOP Suddenly Announces Closure Only After Special Master Is Appointed and the Court Issues Mandatory Guidance on Transfers

Ten days after the appointment of Special Master Still, Defendant BOP announced plans to close FCI Dublin and transfer the entire incarcerated population to other facilities. ECF No. 257 at 2-3. Counsel for BOP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ECF No. 251. Without informing the Special Master nor class counsel, BOP Director, Colette Peters, made a public statement to the media that it was closing FCI Dublin to address "employee misconduct," admittedly because "FCI Dublin is not meeting expected standards."[1] Director Peters also told the media that the closure may be "temporary" and that "none of the 203 employees would lose their jobs."[2] After quietly transferring small groups of incarcerated individuals in the preceding weeks, BOP quickly began mass transfers at 6 am on Monday morning.[3]

---

[1] Though Plaintiffs' counsel has not been provided updated information about the numbers of class members transferred since the class was certified, or since the BOP announced the abrupt closure of FCI Dublin, the media reports that at least 100 incarcerated people were transferred on the morning of Monday, April 15, coinciding with Director Peters's public statement. *See* https://apnews.com/article/federal-prison-dublin-california-sexual-abuse-bureau-of-prisons-17731ecb5d0a14adf6011e853bf7e05d

[2] https://www.ktvu.com/news/fci-dublin-closing-women-transferred-elsewhere

[3] *Id*.

1  As BOP hastily began mass transfers, the Court halted movement at FCI Dublin until
2  measures were taken to ensure that the Plaintiff class was moved or released appropriately,
3  providing Guidance on Transfer Of Inmates, which it updated throughout the week. ECF Nos.
4  252-1, 254-1, and 260-1. The Court's Guidance on Transfer Of Inmates ████████████████
5  ████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████
13 ████

### B. BOP Is Not Complying in Good Faith with the Court's Guidance on Transfers and BOP Is Violating Dublin Residents' and Transferees' Constitutional Rights

The BOP has given short shrift to implementing the Court's Guidance On Transfer Of Inmates. Plaintiffs' counsel have received frantic reports from dozens of class members about the chaos unfolding at the prison over the past four days, summarized below and in the declaration of Susan M. Beaty, filed herewith, and the accompanying exhibits thereto.

The Court may consider this evidence even to the extent that it incorporates hearsay because "[t]he urgency of obtaining [the emergency relief] necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d

1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, Federal Practice and Procedure, Civil, § 2949 at 471).  Plaintiffs are prepared to present the following facts in admissible form, including through live testimony, at the earliest opportunity amenable to the Court.

### 1. Transferees Are Being Subjected to Abusive Treatment in the Rushed Confusion

Incarcerated people report that staff are narrowly focused on transferring as many people as soon as possible, and they are not taking appropriate care in an effort to empty the prison "by Friday."  Class members have been fully processed for transfer, only to be returned to their dorms, sometimes multiple times in a single day.  This morning a group of over 20 people were removed from their unit to be shipped out–as they were being processed, they had limited access to food, water, or the toilet, and at one point were all placed in a single holding cell, only to be returned to their dorm seven hours later.  Another group of people sat on a bus, shackled, for over three hours straight before unloading.  One woman shared that after she was pulled for transfer on Monday, she was strip searched and forced to remove her tampon in front of two officers. She was not provided any materials to clean herself with, or any menstrual products for the journey, and sat in the bus bleeding on herself for hours before being returned to her dorm; she has not had access to her belongings or clean underwear for four days.  Another class member was designated for transfer and processed for hours today, then returned to the Camp this evening without any of her possessions, including her medications.

Staff themselves acknowledge these deficiencies–class members report that officers asked a group of women waiting to be loaded on the bus "where are you being transported to?" while other officers characterized the rushed transfers as a "mess" and a "disaster."

### 2. BOP Is Not Properly Classifying and Releasing Eligible Transferees

Counsel has also received numerous reports that BOP continues to transfer class members who are eligible for release, including to home confinement or a halfway house, or

5

through compassionate release. In one case, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓–only after repeated intervention by Plaintiffs' counsel and the special master was she appropriately classified for immediate release. This case raises serious concerns about miscalculations and misclassifications for the hundreds of other class members who have not received the same scrutiny, and who BOP seeks to hastily transfer without proper consideration.

Indeed, class members report serious issues with Dublin's systems for tracking potential release. One class member reports that the last time she was "teamed," her counselor showed her an empty folder and told her that there was no documentation of any of her programming or certificates even though she had completed numerous classes and programs over the years. Another individual reports that she applied for and was approved for compassionate release last year by Warden Jusino, but was told Dublin has no record of her request or the warden's approval.

Plaintiffs' counsel are aware of numerous people who have been transferred with pending compassionate release requests, including at least five survivors of Dublin staff sexual assault. Counsel have also spoken with multiple noncitizens who are currently eligible for release to home confinement or halfway house, but have been erroneously told they do not qualify because of their immigration status, and are instead slated for transfer. Counsel has also received many reports of people designated or transferred to the opposite coast, hundreds or thousands of miles from their families and children. All of this has occurred without BOP providing evidence as to how BOP is able to suddenly absorb 600 new entrants to other facilities without gaps in medical care and with protections against retaliation.

### 3. Individuals Are Losing Their Personal Property

Many class members also report serious issues with confiscation and transportation of property.  On Monday and Tuesday, BOP staff instructed class members to throw away all of their property that did not fit in a single bag.  Many distraught class members were forced to throw away sentimental possessions (like family photographs, letters, and books), items of significant monetary value (like clothing and shoes), and even medications.  The process was later modified, and class members were allowed to pack a single bag, and ship one box home, or pay to ship additional boxes if they could afford postage (many cannot).  Staff were to "pack out" the bag in front of people, providing documentation of the process and any discarded items.  As of today, staff are "packing out" property outside the presence of incarcerated people, who have no way of knowing what was actually packed and what was thrown away, and staff are not providing any documentation of this process.  Multiple class members were not offered the opportunity to ship possessions home.  Once people are "packed out" they no longer have access to their possessions–some people have now been without extra clothes, hygiene, and medications for three days.  One class member reported she was processed for transfer–including being strip searched and handcuffed–and when she returned to her dorm hours later, staff told her they "lost" her bag.

### 4. Proper Medical Clearance Is Not Being Followed

Throughout the week, including since the Court's Guidance was modified, class members have reported disturbing deficiencies in the medical clearance process.  Class members report that BOP has medically cleared people with unmet medical needs, and has even transported people without medical clearance.  Multiple distraught class members in FCI recounted that, while a group of over 20 individuals waited in a small holding cell to board a bus, a BOP medical provider came and read out the names of four people who needed to be medically

cleared–but those four individuals were long gone from the facility. Multiple people at the Camp called to say that staff were repeatedly paging a class member, J.G., over the loudspeaker for her medical clearance appointment, hours after J.G. had already been transferred. One sexual assault survivor who has been awaiting a cardiologist appointment for months following a major cardiac event, and who was approved for compassionate release last year, was reportedly transferred this afternoon without proper medical clearance.

Several class members who were medically cleared described a cursory process where BOP providers reviewed existing medical records, took vital signs, and declared them "cleared," without apparent oversight. Providers asked questions about documented medical conditions, but did not address undocumented and untreated medical needs. One individual shared that she was cleared in less than ten minutes, despite the fact that she has serious liver and heart conditions and an outstanding cardiology appointment and is currently experiencing chest pains, all documented in her pending compassionate release request. One transgender class member reported that he was cleared and transported despite being days overdue for his testosterone shot.

### 5. Conditions For Those That Remain Are Abysmal

For the hundreds of people who remain incarcerated at FCI Dublin, conditions remain dangerous and alarming. Class members report that there is functionally no medical or mental healthcare. Due to BOP's manufactured crisis, many already-traumatized people are experiencing mental health crises. Plaintiffs' counsel has received countless calls from sobbing clients, describing scenes of people having breakdowns across housing units. Thursday morning, a group of class members called for psychology, and despite being told someone would come see them in fifteen minutes, no one ever did. One survivor of staff sexual assault who has been held in solitary confinement for over two weeks was taken to suicide watch on Tuesday; she has not seen a psychiatrist, and as of this evening she is only one of three people left in the SHU, and has

not received fresh linens or hygiene products as required. Another survivor of staff sexual assault has had major panic attacks every day this week, and suffered a seizure on Tuesday; when medical staff finally came to check on her the following morning, the officer yelled at her: "don't start with your bullshit." One elderly class member has had a migraine for weeks, and is currently experiencing numbness in her hands and arms. She has sent emails and messages, and even went to the medical office twice to seek care, but has not been seen; multiple people have called to express concern for her, and her family has called BOP to no avail. Class members and loved ones continue to express concern for I.C., an 80 year old woman with serious health conditions who has been designated for transfer.

Class members also report intense retaliation and hostility from staff, who blame incarcerated people for Dublin's closure. Multiple women reported that CO Morasco screamed at a group of people in their housing unit, yelling, "it's your fault that Dublin is closing" and "this is what you wanted." Last night, as guards yelled at women in a housing unit, the women raised concerns about how they were being treated, and the guards threatened to throw them all in SHU. Various staff have reportedly made public, derogatory comments about both the Court and the special master to incarcerated people. One guard complained that "the judge shouldn't mess with BOP." Class members report that temporary, outside staff are not wearing name tags, and therefore cannot be identified.

## III.   ARGUMENT

### A.   The Court Should Not Be Rushed Into Accepting BOP's Manufactured Urgent Timeline For Closure

BOP's assertions that it has been "considering the closure of FCI Dublin for many years" and that "[e]xtensive resources and employee hours have already been invested in" the shutdown and transfer of the Plaintiff class to other facilities (ECF No. 257 at 3), cannot be squared with its actions. BOP spent the last six months arguing to this Court that no injunctive relief was

necessary because FCI Dublin was a changed facility and the "BOP completely overhauled the FCI Dublin Executive Team." *See generally*, ECF No. 45-5.  Indeed, there is no way BOP can credibly assert that the shambolic process currently underway was truly the result of considered planning for "many years" to which "extensive resources" have been committed.  Instead, the only reasonable inference is that the closure was hastily put together in the wake of the Special Master's appointment.  *See* ECF No. 257 at 3 (BOP notified the Court "of the impending facility closure on April 12, 2024.").  Putting aside the impropriety of taking such an action for the purpose of evading judicial oversight meant to protect the very powerless people BOP is now actively hurrying off in busloads with mere hours to prepare, it strains credulity to believe that BOP is simply carrying out a long conceived plan to close this facility.

True, BOP may decide to close FCI Dublin, but its discretion is bounded both by the Constitution and by statutory frameworks that apply to limit its power.  As a practical matter, BOP has provided no valid reason whatsoever for why it needs to complete that closure and the transfer of over six hundred incarcerated individuals in a week's time with absolutely no notice.  BOP has simultaneously stated that no employee will lose their job but has also allowed a majority of employees to not report for duty.  ECF No. 257 at 4.  They have argued that they have adequate medical care, and now that they cannot possibly treat everyone at FCI Dublin so they need to shut the facility down, but that also, somehow, they still are competent to medically evaluate residents.  *See id.* at 5-6, 13.  The only reasonable inference from the rush and the inconsistencies is that it is a self-serving attempt to evade this Court's review.  As the Court's efforts to intervene this week to provide guardrails on the process amply show, BOP is well aware that the more rushed this process is, the faster it can create a *fait accompli* before judicial scrutiny can be truly applied.  But, as the authorities described below demonstrate, the Court need not be bulldozed into accepting BOP's artificial schedule.  Because BOP's manufactured

urgency is leading to the transfer of the Plaintiff class in violation of federal law governing transfer determinations, and in violation of constitutional rights that this Court ordered protected, the Court should stay the process down and ensure proper oversight is effectuated in practice, and has the authority to do so.

### B. The Court's Guidance On Transfer Of Inmates From FCI Dublin Is Not Being Followed

As explained at length above, it is clear that the Court's Guidance On Transfer of Inmates is not being followed in good faith by the BOP. At its best it has devolved into a cursory box checking exercise and at its worst, it is being ignored entirely. The protections currently in place are dysfunctional in practice and must be reformed by halting any further transfers from FCI Dublin. These orders were not entered into lightly by the Court. They are there to ensure that the constitutional rights the Court sought to protect through its grant of preliminary relief are not now thwarted by the same agency that has mismanaged FCI Dublin for years.

### C. The Court Has The Authority To Ensure That BOP Effectuates Inmate Transfers In A Constitutional And Statutorily-Compliant Manner

When making transfer determinations, BOP must consider five factors, including "the resources of the facility contemplated" and "the history and characteristics of the prisoner." 18 U.S.C. § 3621(b). These factors are mandatory, and all transfer determinations must consider each one. *See Rodriguez v. Smith*, 541 F.3d 1180, 1186 (9th Cir. 2008) ("The BOP regulations necessarily violate the unambiguously expressed intent of Congress conveyed in § 3621(b), which expressly instructs that all placement and transfer determinations take into consideration *each* of the five factors enumerated in the statute. That Congress intended the BOP to apply each of the factors is evidenced by the invocation of the word 'and' between the fourth and fifth factors."); *see also Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016) ("Section

11

3621(b) gives the Bureau of Prisons discretion to designate the facility, but lists the factors that the Bureau of Prisons must consider when it exercises discretion.").

In assessing BOP's transfer decisions, the court ***"does have jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority when it acted pursuant to 18 U.S.C. § 3621."*** *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016) (emphasis added); *see also Ahmad v. Jacquez*, 860 Fed. Appx. 459, 462 (9th Cir. 2021) ("Though § 3621(b) strips the court of jurisdiction to consider Ahmad's individual challenge, it does not preclude review of all challenges that might implicate individual designation decisions."). Of course, here, § 3621(b)'s jurisdiction stripping provision does not apply by its own terms. § 3621(b) only strips jurisdiction of "a designation of a place of imprisonment." 18 U.S.C. § 3621(b). In this motion for a TRO Plaintiffs do not challenge the designation of where people in prison may be sent. Rather, Plaintiffs seek to stay transfers pending an evaluation which has no effect on where an incarcerated person may eventually be sent.

BOP's current dysfunctional approach to immediate transfers is contrary to established law and exceeds its statutory authority because it fails to consider mandatory factors under 18 U.S.C. § 3621. This Court has authority to ensure that transfers are accomplished in a statutorily-compliant manner. *See Duren v. Doerer*, No. 5:23-cv-00772-FWS-KES, 2023 WL 9289984, at *7 (C.D. Cal. Dec. 1, 2023) ("The Complaint argues that . . . the BOP violated 18 U.S.C. § 3621(b) by failing to analyze all five factors listed in that statute. . . . This argument appears to be judicially reviewable, notwithstanding the statutory limitations on judicial review of BOP placement decisions. Plaintiff appears to be arguing that the BOP's policy 'is contrary to established federal law' and/or 'exceeds [the BOP's] statutory authority' because, he alleges, the BOP categorically excludes some inmates based on the percentage of their sentence served,

1  without considering the factors in § 3621."), *R&R accepted*, 2024 WL 187672 (C.D. Cal. Jan.

2  16, 2024); *cf. Izaguirre-Guerrero v. Warden, FCI Mendota*, No. 1:23-cv-00845-EPG-HC, 2024

3  WL 1333353, at *2 (E.D. Cal. Mar. 28, 2024) ("Given that application of FTCs ['First Step Act

4  Time Credits'] to eligible prisoners who have earned them is *required*, not discretionary, under

5  U.S.C.§ 3632(d)(4)(C), the Court finds that dismissal is not warranted on the ground that it lacks

6  jurisdiction to compel BOP discretionary action with respect to FTCs.").

7        For example, BOP has made no showing that it considers the "the resources of the facility

8  contemplated" for transfer.  The Plaintiff Class has significant medical and mental health care

9  needs, exacerbated by years of medical neglect, sexual abuse and retaliation suffered at FCI

10 Dublin.  But BOP has not considered whether the transfer facilities have sufficient resources to

11 provide constitutionally-adequate medical and mental health care treatment on an individualized

12 basis for hundreds of new arrivals.  Similarly, BOP has failed to consider "the history and

13 characteristics of the prisoner[s]" who are being transferred.  The Plaintiff Class includes

14 individuals sexually assaulted by staff at FCI Dublin, and ██████████████████

15 ██████████████████████████, ECF No. 45-4 at ¶ 38, and no BOP staff will lose

16 their job, despite ██████████████████████████ BOP has not considered

17 whether individuals with a history of surviving sexual abuse are being transferred to the same

18 facilities as abusers.  Moreover, BOP has not considered the impact that a disorganized,

19 haphazard, and immediate transfer has on the already traumatized and distrustful population at

20 FCI Dublin.

21       Further, BOP's instant actions likely violate this Court's existing order granting

22 preliminary injunctive relief in this matter and independently violate the constitutional rights of

23 class members. This Court also has jurisdiction to decide whether BOP violates the Constitution

24 by using immediate transfers to evade a preliminary injunction and Special Master oversight

25

predicated on severe constitutional violations. *See Copenhaver*, 823 F.3d at 1242. This Court ordered relief to protect against certain constitutional violations, and the BOP now seeks to evade that relief and potentially exacerbate those violations in ways already identified by Plaintiffs. *See* April 16 and April 18 letters from K. Janssen to Special Master. Prison authority is always bounded by constitutional guard rails and "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011). This Court found that BOP "proceeded sluggishly with intentional disregard of the inmates' constitutional rights despite being fully apprised of the situation for years." ECF No. 222 at 1. A one-week rush to transfer the entire FCI Dublin population comes at the expense of the incarcerated individuals and puts the same constitutional rights BOP was already violating, in further peril.

### D. A TRO Should Issue

#### 1. Plaintiffs Are Likely To Succeed On The Merits

This Court has already found that Plaintiffs are likely to succeed on the merits of establishing that BOP violated their constitutional rights. ECF No. 222. As demonstrated above, conditions for the certified class have drastically regressed over the past week. As a result Defendants continue to violate Plaintiffs' constitutional rights and transfers are being conducted without compliance with the Court's Guidance on Transfer Of Inmates or 18 U.S.C. § 3621.

#### 2. Plaintiffs Are Likely To Suffer Irreparable Harm In the Absence of The TRO

The chaos caused by the BOP's insistence on transferring the entire Plaintiff class with extreme and artificial haste is making it impossible for BOP to meaningfully comply with the limited protections afforded to the Plaintiff class by the Court's Guidance on Transfer Of Inmates and this Court's ordered preliminary relief. Absent halting BOP's reckless transfer process, the entire Plaintiff class will be improperly transferred without further recourse. As one

example, many may be transferred away from family, causing irreparable harm. *See Martinez*, 456 F. Supp. 3d at 1200. Others with serious medical conditions will also face irreparable harm if their emergency medical needs are not adequately assessed prior to transfer, especially when they may be moved to facilities where it is unclear whether there are adequate medical resources available. Finally, this Court's order granting preliminary relief recognized the severe harms attendant to the retaliation faced by Plaintiffs. No protection from such retaliation has been indicated and evaluation for such risk is not part of BOP's protocols. As such, despite being found likely in violation of the constitution, BOP may be free now to retaliate against class members in new facilities, without oversight, causing severe, irreparable harm.

### 3. The Balance Of Equities Tips In Plaintiffs' Favor

The balance of equities are entirely in favor of the Plaintiff Class. There is no harm to BOP from halting its mass transfer of the Plaintiff class—that is simply maintenance of the status quo prior to this Monday morning. By contrast, as explained throughout, the Plaintiff class is at grave risk of continued harm absent Court intervention.

### 4. A TRO Is In The Public Interest

As explained above, the Plaintiff class is facing an imminent risk of constitutional harm and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.

## IV. CONCLUSION

For the reasons stated herein, the Court should grant the Plaintiffs request for a temporary restraining order. The Court should order: (1) a temporary stay to the transfer of incarcerated persons from Federal Correctional Institute ("FCI") Dublin until such a time as it can be insured by the Court and the Special Master that it proceeds without risk of further constitutional violation to the incarcerated population or violation of the exiting preliminary injunction or

federal law; (2) for those class members who have already been transferred, order Defendant BOP to produce all records associated with such transfers and allow Special Master Still the authority to conduct a review of these records to determine whether such transfers complied with constitutional standards; and (3) order BOP to maintain constitutionally appropriate conditions at FCI Dublin, including provision of medical care, food, water, blankets, and life's other necessities.

DATED:  April 19, 2024				Respectfully submitted,

						By:	*Kara J. Janssen*
							Kara J. Janssen

						Attorneys for Plaintiffs