1  Jaqueline Aranda Osorno (SBN 308084)
       jaosorno@publicjustice.net
2  Alexandra Z. Brodsky*
       abrodsky@publicjustice.net
3  Sarah Ortlip-Sommers*
       sortlip-sommers@publicjustice.net
4  PUBLIC JUSTICE
5  1620 L Street NW, Suite 630
   Washington, DC 20036
6  Telephone: (202) 797-8600
7  *Pro Hac Vice Forthcoming

8  Angelica Salceda (SBN 296152)
       asalceda@aclunc.org
9  Chessie Thacher (SBN 296767)
       cthacher@aclunc.org
10  Shaila Nathu (SBN 314203)
       snathu@aclunc.org
11  AMERICAN CIVIL LIBERTIES UNION
12  FOUNDATION OF NORTHERN CALIFORNIA, INC.
   39 Drumm Street
13  San Francisco, CA 94111
   Telephone: (415) 621-2493
14

15  Attorneys for Proposed Intervenors

16

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al., <br><br> Defendants. | Case No. 4:23-cv-04155 <br><br> **NOTICE OF MOTION AND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS AND PROTECTING ACCESS TO COURT PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Judge: Yvonne Gonzalez Rogers <br> Date: July 16, 2024 <br> Time: 2:00 p.m. <br> Courtroom: 1 (Fourth Floor) |

## NOTICE OF MOTION AND MOTION

Please take notice that on July 16, 2024 at 2:00 p.m., or as soon thereafter as the matter may be heard, at the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, proposed intervenors The Appeal, Inc., Victoria Law, the American Civil Liberties Union of Northern California, and the First Amendment Coalition (collectively, "Proposed Intervenors") will and hereby do move to intervene for the limited purposes of unsealing documents and protecting access to court proceedings.

This Motion is based on (1) the accompanying Memorandum of Points and Authorities, (2) the declarations of Proposed Intervenors filed in support of this Motion, and (3) the entire record in this action.

On June 10, 2024, counsel for Proposed Intervenors sent separate emails to counsel for Plaintiffs and Defendants advising of their intent to file this Motion. Class Counsel responded that they did not object to the Motion and took "no position on the merits." Counsel for Defendant Patrick Pool consented to the filing. Counsel for the remaining Defendants had not responded by the time of filing.

Dated: June 11, 2024                    Respectfully submitted,

                                        PUBLIC JUSTICE


                                        ***/s/ Jaqueline Aranda Osorno***
                                        Jaqueline Aranda Osorno (SBN 308084)
                                        Alexandra Z. Brodsky*
                                        Sarah Ortlip-Sommers*
                                        *Pro Hac Vice Forthcoming*


                                        AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                        OF NORTHERN CALIFORNIA, INC.

                                        Angelica Salceda (SBN 296152)
                                        Chessie Thacher (SBN 296767)
                                        Shaila Nathu (SBN 314203)

                                        *Attorneys for Proposed Intervenors*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 5

INTRODUCTION ................................................................................................................ 5

INTERESTS OF MOVANTS ............................................................................................. 5

BACKGROUND ................................................................................................................... 6

PROCEDURAL HISTORY ................................................................................................ 8

ARGUMENT ........................................................................................................................ 9

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases** ........................................................................................................................ **Page(s)**

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
966 F.2d 470 (9th Cir. 1992) ............................................................................. 9

*Cosgrove v. Nat'l Fire & Marine Ins. Co.,*
770 F. App'x 793 (9th Cir. 2019) ................................................................. 9, 10

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
331 F.3d 1122 (9th Cir. 2003) ...................................................................... 10, 11

*Greer v. Cty. of San Diego,*
No. 19CV378-JO-DEB, 2023 WL 4479234 (S.D. Cal. July 10, 2023) .............. 10

*Hernandez v. Cnty. of Monterey,*
No. 13-CV-02354-BLF, 2023 WL 5418753 (N.D. Cal. Aug. 21, 2023) .......... 9, 10

*In re Copley Press, Inc.,*
518 F.3d 1022 (9th Cir. 2008) ........................................................................... 10

*Muhaymin v. City of Phoenix,*
No. CV-17-04565-PHX-DLR, 2021 WL 5173767 (D. Ariz. Nov. 3, 2021) .......... 11

*Newman v. Graddick,*
696 F.2d 796 (11th Cir. 1983) ........................................................................... 10

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.,*
187 F.3d 1096 (9th Cir. 1999) .................................................................. 9, 10, 11

**Rules** ........................................................................................................................ **Page(s)**

Fed. R. Civ. P. 24 ...................................................................................................... 9, 10

Civil L.R. 79.5 ............................................................................................................... 10

**Other Authorities** ..................................................................................................... **Page(s)**

Keri Blakinger & Richard Winton, *Women at California Prison Dubbed the 'Rape Club' Now Worry Where They'll be Transferred*, L.A. Times (Apr. 16, 2024) ................... 7

Sen. Permanent Subcomm. on Investigations, *Rep. on Sexual Abuse of Female Inmates in Federal Prisons* (Dec. 13, 2022) ......................................................... 7

Lisa Fernandez, *FCI Dublin Transfers Complain of Poor Treatment, Retaliation at Other Prisons*, KTVU FOX 2 (May 7, 2024) ....................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

For years, people incarcerated at the Federal Correctional Institution Dublin ("FCI Dublin") experienced sexual violence, retaliation, and other horrors. Reporters and advocates have worked, in partnership with incarcerated people, to expose these abuses. The public interest in FCI Dublin has only increased since, in April, Defendant U.S. Bureau of Prisons ("BOP") began transferring people from the facility to other prisons across the country—a process this Court and its appointed Special Master have closely monitored as part of this proceeding. Notwithstanding this interest and concern, the public lacks critical access to information about the government's misconduct and the shuttering of FCI Dublin. This Court has sealed a number of documents and, between April 15 and May 8, held a number of closed hearings. Because transparency is fundamental to accountability, The Appeal, Inc., reporter Victoria Law, the ACLU of Northern California, and the First Amendment Coalition (collectively, "Proposed Intervenors") seek to intervene for the limited purposes of moving to unseal certain court records and to ensure continued public access to hearings. Proposed Intervenors' motion is timely and would not prejudice the parties. The Court should therefore grant this motion.

## INTERESTS OF MOVANTS

**The Appeal, Inc.**, is a nonprofit news organization founded in 2018. Greene Decl. ¶ 1. The Appeal works to expose the harms of the American criminal legal system and elevates the solutions that emerge from the communities most affected by policing, jails, and prisons in the U.S. *Id.* ¶ 2. The Appeal consistently reports on women's experiences with the criminal legal system, including at FCI Dublin. *Id.* ¶¶ 3, 6. The Appeal regularly relies on access to public documents, including court records, in its reporting, and it has a demonstrated commitment to protecting freedom of the press and demanding government transparency. *Id.* ¶ 7. The Appeal seeks to intervene in this case because its leadership believes that accessing the information contained in sealed documents will further journalists' efforts to cover FCI Dublin and its closure. *Id.* ¶ 8.

**Victoria Law** is a freelance journalist who primarily writes about the intersection of mass incarceration and gender. Law Decl. ¶ 1. She has written a number of articles about the experiences of women at FCI Dublin and the ongoing legal proceedings about the alleged abuses at the facility. *Id.* ¶ 6.

Ms. Law plans to continue to report on FCI Dublin and the women, previously incarcerated there, who have been transferred to other prisons across the country. *Id.* ¶ 8. Ms. Law seeks to intervene in this case to secure the unsealing of records that may provide important information about the conditions at FCI Dublin and the transfer of women from FCI Dublin to other prisons—matters of pressing public concern on which she is eager to report. *Id.* ¶ 9.

**The ACLU of Northern California** ("ACLU NorCal") is an affiliate of the national ACLU, a nonpartisan, nonprofit organization dedicated to defending the guarantees of individual liberty secured by the state and federal Constitutions. Soltani Decl. ¶ 2. Since its founding in 1920, the ACLU has been focused on protecting and expanding First Amendment rights, including the public's right to access civil and criminal court proceedings. *Id.* Since 2021, ACLU NorCal has worked with people incarcerated at FCI Dublin and with other advocacy organizations to expose and end abuses within the prison. *Id.* ¶¶ 4– 9. To inform its ongoing and future advocacy, ACLU NorCal has in interest in the information contained in the many sealed motions and sealed documents in this case. *Id.* ¶ 12.

**The First Amendment Coalition** ("FAC") is a nonpartisan public interest nonprofit dedicated to protecting and promoting a free press, freedom of expression, and the people's right to know. Loy Decl. ¶ 4. FAC believes that the broadest range of engaged and informed communities is essential to the health of our democracy, and that the values expressed by the First Amendment provide a blueprint for an inclusive, equitable society and a responsive, accountable government. *Id.* ¶ 5. Because information relating to incarceration, policing, and civil rights is of significant public concern, FAC has a demonstrated commitment to ensuring law enforcement's exercise of power is exposed to public scrutiny. *Id.* ¶ 7. FAC seeks to intervene in this case to protect the public's right to see what information is before the court so the public can assess for itself the true state of conditions in FCI Dublin and hold elected officials accountable as the public sees fit. *Id.* ¶¶ 8, 10–11.

## BACKGROUND

FCI Dublin is known as "the rape club" for good reason. Dkt. No. 152 (Am. Compl.) ¶ 245. For decades, FCI Dublin staff have been allowed to sexually abuse incarcerated women with near impunity. *See* Dkt. No. 222 (Omnibus Order Granting Mot. for Class Certification; Granting in Part & Denying in Part Mot. for Prel. Inj.; and Granting Related Sealing Mots.) at 5–10. Acting on a whistleblower

complaint, the Department of Justice ("DOJ") began investigating new claims of sexual assault at FCI

Dublin sometime around 2020. *See id.* at 5. The investigation, which implicates more than twenty

officers and staff, remains ongoing. *Id.* at 5–10, 23–26; Sen. Permanent Subcomm. on Investigations,

*Rep. on Sexual Abuse of Female Inmates in Federal Prisons* 15–18, 26 (Dec. 13, 2022),

https://tinyurl.com/SenateSexualAbuseReport2022. To date, seven officers and staff—including senior

officials—have been convicted of sexually abusing incarcerated women. *See* Dkt. No. 222 at 6 & n.15

(documenting six convictions); *United States v. Nunley*, No. 4:23-cr-213-YGR, Dkt. No. 43 (Am. J.)

(additional official pleading guilty to four counts of sexually abusing a ward, five counts of abusive

sexual contact, and one count of making false statements, and sentenced to seventy-two months).

       Women at FCI Dublin not only suffered sexual abuse but also faced retaliation when they

reported it. As this Court has found, the criminal prosecutions of abusive FCI Dublin officers have

resulted in "ongoing retaliation." Dkt. No. 222 at 1, 9–10. Several women who spoke out against their

abusers were placed in the Special Housing Unit, whose "little cells" were like "dungeons." Dkt. No.

222 at 6, 37, 39; *see also id.* at 6 n.16, 7, 37. Witnesses to the abuse and those involved in the present

litigation have been subjected to "correctional 'policies' . . . *only after* . . . engaging in

constitutionally-protected activities, such as meeting with their attorneys to file this suit." *Id.* at 9–10;

*see also id.* at 37, 39–40. For example, according to some counsel, witnesses and litigants have been

"conspicuously and inexplicably targeted by strip searches, cell searches and confiscation of legal

papers." *Id.* at 2–3.

       In a hastily executed operation and without notice, the BOP began shutting down FCI Dublin

on April 15, 2024. News reports of the closure described a frantic scene as officials raced to empty the

facility by May 1. *See, e.g.*, Keri Blakinger & Richard Winton, *Women at California Prison Dubbed

the 'Rape Club' Now Worry Where They'll be Transferred*, L.A. Times (Apr. 16, 2024),

https://tinyurl.com/4br3byd7. Many of those who were transported out of FCI Dublin have since made

"credible allegations" that their medications and personal property were lost, stolen, or destroyed

during the process. Dkt. No. 300 (Order re Closure of FCI Dublin & Prelim. Inj.) at 8; *see also id.* at

4–5. Some of those transported had pending compassionate release requests, including, according to

some counsel, "at least five survivors of Dublin staff sexual assault." Dkt. No. 262 (Pls.' Mot. for

TRO) at 6. Continued news reporting indicates those transferred are now facing retaliation and poor treatment in other BOP facilities. Lisa Fernandez, *FCI Dublin Transfers Complain of Poor Treatment, Retaliation at Other Prisons*, KTVU FOX 2 (May 7, 2024), https://www.ktvu.com/news/fci-dublin-transfers-complain-of-poor-treatment-retaliation-at-other-prisons.

**PROCEDURAL HISTORY**

The California Coalition for Women and eight people formerly incarcerated at FCI Dublin (collectively, "Plaintiffs") brought this action in August 2023. Dkt. No. 1. They alleged violations of the Eighth Amendment's prohibition on cruel and unusual punishment and the Fifth Amendment's protection of substantive due process, as well as federal statutory law. Dkt. Nos. 1, 152. Plaintiffs moved for class certification and a preliminary injunction. Dkt. Nos. 10, 11. The Court held an evidentiary hearing in January 2024. Dkt. Nos. 101, 104, 110, 117, 126.

On March 15, 2024, following a site visit by the Court, an order to address immediate health and safety issues, and motion practice relating to retaliation allegations, this Court concluded that FCI Dublin was "a dysfunctional mess . . . in dire need of immediate change." Dkt. No. 222 at 1. It further found that the BOP had "proceeded sluggishly with intentional disregard of [incarcerated people's] constitutional rights despite being fully apprised of the situation for years." *Id.*; *see* also Dkt. Nos. 79 (Pls.' Req. for Emergency Order), 155 (Show Cause Order), 157 (Emergency Order re Health & Safety Post-in-Person Visit), 186 (Min. Entry for Feb. 27, 2024 Hr'g).

Given its findings, the Court appointed a Special Master to oversee Defendants' compliance with the Court's orders on April 5, 2024. Dkt. No. 248. Less than two weeks later, on April 12, Defendants filed a sealed notice informing the Court that BOP intended to close the facility. Dkt. No. 251; *see* Dkt. No. 300 at 3. On April 15, the Court held a closed hearing after learning that the BOP had attempted to transfer incarcerated people. *See* Dkt. Nos. 252, 300 at 3. From that day through May 8, the Court "provided operational guidance to the BOP" relative to the facility's closure and transfer of incarcerated people. Dkt. No. 300 at 3. This guidance included holding "regular sealed status conferences, sometimes as frequently as every other day, with counsel and [the warden]." *Id.* None of the hearings were noticed on the public docket.

Throughout the proceedings, both Parties have requested to file documents under seal, including documents related to requests for injunctive relief, allegations of retaliation, and the facility's closure. *See, e.g.*, Dkt. Nos. 45, 75, 99, 102, 111, 143, 159, 162, 176, 178, 184, 191, 197, 199, 204, 206, 209, 229, 231, 236, 239, 242, 244, 247, 251, 258, 263, 292. Some of the motions are themselves under seal. *See, e.g.*, Dkt. Nos. 45, 75, 162, 168, 176, 242, 244, 251. In addition to these sealed documents, this Court has sealed testimony and certain Court orders. *See, e.g.*, Dkt. Nos. 107, 113, 114, 116, 157-1, 252-1, 254-1, 260-1, 264-1, 275-1.

## ARGUMENT

Proposed Intervenors seek access to sealed court records and future court proceedings and information about closed court proceedings. The Court should permit Proposed Intervenors to intervene in this action for the limited purpose of asserting their First Amendment and common law rights of access.

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999). Ordinarily, a court may grant permissive intervention under Rule 24(b) if the movant presents "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Consistent with the requirements of Rule 24(b), the court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

When a party intervenes solely for the purpose of seeking access to court records or proceedings, however, "an independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits." *Beckman*, 966 F.2d at 473; *see Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019) (explaining a "third party seeking permissive intervention purely to unseal a court record does not need to a demonstrate independent jurisdiction"); *Hernandez v. Cnty. of Monterey*, No. 13-CV-02354-BLF, 2023 WL 5418753, at *2 (N.D. Cal. Aug. 21, 2023) (same). Further, "[t]here is no reason to require [] a strong nexus of fact or law when a party seeks to intervene only for the purpose" of promoting court transparency. *Beckman*, 966 F.2d at 474; *see Cosgrove*, 770 F. App'x at

795 (explaining a "third party seeking permissive intervention purely to unseal a court record does not need to demonstrate . . . a common question of law or fact"); *Hernandez*, 2023 WL 5418753, at *2 (same). Accordingly, "a party who seeks to intervene solely to unseal filed documents only needs to show timeliness." *Greer v. Cty. of San Diego*, No. 19CV378-JO-DEB, 2023 WL 4479234, at *3 (S.D. Cal. July 10, 2023). In determining whether the motion is timely, a court must consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay," *San Jose Mercury News*, 187 F.3d at 1101—considerations that also satisfy Rule 24(b)(3)'s requirement, *see* Fed. R. Civ. P. 24(b)(3).

All these factors indicate that Proposed Intervenors' Motion to Intervene is timely. Proposed Intervenors did not delay: They took prompt action to file this Motion within two months of FCI Dublin's closure, an event that intensified public interest in the facility and this proceeding, *see* Law Decl. ¶ 8; Soltani Decl. ¶ 11, and which spurred a series of sealed filings, *see* Dkt. Nos. 251, 258, 263, 292, and closed hearings, *see* Dkt. No. 300 at 3. Those two months are a far shorter period than the "delays measured in years [that] have been tolerated where an intervenor is pressing the public's right of access to judicial records." *San Jose Mercury News*, 187 F.3d at 1101 (collecting cases). And this Court permits "[p]arties and non-parties" to "file a motion requesting that the Court unseal a document" "*at any time*." Civil L.R. 79.5(g)(3) (emphasis added). In addition, because further closed proceedings in this prison civil rights case may infringe on the public's presumptive right of access, Proposed Intervenors' motions are well-timed. *See Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (holding that "civil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement are presumptively open to the press and public").

Finally, granting this Motion to Intervene would not prejudice the parties. As explained in Proposed Intervenors' Motion to Unseal, Defendants have an existing burden to establish that there are compelling reasons for keeping court records sealed or hearings closed. *See, e.g.*, *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (explaining the First Amendment presumption of access can only be "overcome by a compelling governmental interest"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (explaining the common law "strong presumption in favor of access

to court records," which can only be overridden if the party seeking to seal can establish there are "sufficiently compelling reasons for doing so").

So, "[t]he mere fact that Defendants will need to explain why the relevant records should remain sealed," or why hearings should be closed to the public, "is not, itself, unduly prejudicial." *Muhaymin v. City of Phoenix*, No. CV-17-04565-PHX-DLR, 2021 WL 5173767, at *2 (D. Ariz. Nov. 3, 2021). Even if it did, once an intervenor asserts "a legitimate, presumptive right to open the court record . . . , the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion." *San Jose Mercury News*, 187 F.3d at 1101 (quoting *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 (1st Cir. 1988)).

**CONCLUSION**

Because Proposed Intervenors satisfy the requirements for permissive intervention under Rule 24(b), the Court should grant their Motion and allow them to assert their First Amendment and common law rights of access to court records.

Dated: June 11, 2024                    Respectfully submitted,

                                        PUBLIC JUSTICE


                                        */s/ Jaqueline Aranda Osorno*
                                        Jaqueline Aranda Osorno (SBN 308084)
                                        Alexandra Z. Brodsky*
                                        Sarah Ortlip-Sommers*
                                        *Pro Hac Vice Forthcoming*


                                        AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                        OF NORTHERN CALIFORNIA, INC.


                                        Angelica Salceda (SBN 296152)
                                        Chessie Thacher (SBN 296767)
                                        Shaila Nathu (SBN 314203)

                                        *Attorneys for Proposed Intervenors*