JESSE LASLOVICH
United States Attorney
MADISON L. MATTIOLI
 MT Bar No. 36411284
ABBIE J.N. CZIOK
 MT Bar No. 55781377
Assistant U.S. Attorneys
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5269 – Madison
          (406) 457-5268 – Abbie
Fax: (406) 457-5130
Email: madison.mattioli@usdoj.gov
          abbie.cziok@usdoj.gov

MARK STEGER SMITH
 MT Bar No. 4160
TIMOTHY A. TATARKA
 CA Bar No. 277219
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin Federal Courthouse
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667 – Mark
          (406) 247-4642 – Tim
Fax: (406) 657-6058
Email: mark.smith3@usdoj.gov
          timothy.tatarka@usdoj.gov

Attorneys for Federal Defendants and
Defendant United States of America.

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; et. al.,<br><br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et. al.,<br><br>Defendants. | CASE NO. 4:23-CV-04155-YGR<br><br>**UNITED STATES' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY DISCOVERY, AND TERMINATE PROSPECTIVE RELIEF**<br><br>Date:     July 30, 2024<br>Time:    2:00 p.m.<br>Place:   Courtroom 1, 4th Floor<br>Before:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................2

    I.      INTRODUCTION ....................................................................................................2

    II.     LEGAL AND FACTUAL BACKGROUND ........................................................3

    III.    STANDARDS OF REVIEW ...................................................................................7

    IV.    ARGUMENT ............................................................................................................8

        A.    This Court lacks subject matter jurisdiction over Plaintiffs' claims for injunctive relief because they are moot. ..............................................8

        B.    No exceptions to mootness apply to prevent dismissal. .......................10

        C.    Leave to amend would be futile and would unfairly prejudice BOP.....................12

        D.    This Court's preliminary injunction expired by operation of law on June 15, 2024; to the extent orders granting prospective relief can be interpreted to extend beyond that date, the United States moves for immediate termination under 18 U.S.C. § 3626(a)(2). ..........................13

        E.    The Court's Order renaming the special master a court monitor cannot survive expiration of the preliminary injunction, and was issued without notice and an opportunity to be heard.........................................17

        F.    A stay of discovery pending resolution of this motion is appropriate. ..................19

    V.     CONCLUSION......................................................................................................20

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Abel v. Martel*,
No. 2:09-cv-1749-JAM-CKD, 2013 WL 552416 (E.D. Cal. 2013) ........................................ 9

*Ahlman v. Barnes*,
20 F.4th 489 (9th Cir. 2021) .................................................................................................. 13

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013).............................................................................................................. 8, 10

*Alvarez v. Smith*,
558 U.S. 87 (2009).................................................................................................................. 8

Andrews v. Cervantes,
493 F.3d 1047 ........................................................................................................................ 8

*Arc of Cal. v. Douglas*,
757 F.3d 975 (9th Cir. 2014) .................................................................................................. 8

*Armstrong v. Brown*,
768 F.3d 975 (9th Cir. 2014) ................................................................................................ 15

*Armstrong v. Schwarzenegger*,
622 F.3d 1058 (9th Cir. 2010) .............................................................................................. 18

Bayer v. Neiman Marcus Grp., Inc.,
861 F.3d 853 (9th Cir. 2017) .................................................................................................. 8

*Benjamin v. Fraser*,
343 F.3d 35 (2d Cir. 2003).................................................................................................... 18

*Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
941 F.3d 1195 (9th Cir. 2019) .............................................................................................. 10

*Brach v. Newsom*,
38 F.4th 6 (9th Cir. 2022) ......................................................................................... 10, 11, 14

*Brackens v. City & Cnty. of San Francisco*,
No. 19-CV-02724-SK, 2023 WL 6847576 (N.D. Cal. Oct. 17, 2023) ................................ 15

*Burton v. Clark*,
No. 1:09-cv-61-AWI, 2012 WL 3205425 (E.D. Cal. 2012) .................................................. 9

*Caiozzo v. Koreman*,
    581 F.3d 63 (2d Cir. 2009)..................................................................................................... 18

*Cary v. United States*,
    No. 06-CV-2342-DMS (LSP), 2007 WL 9683542 (S.D. Cal. May 21, 2007) ..................................... 13

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).............................................................................................................. 18

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................................ 8, 20

*Coleman v. Brown*,
    938 F. Supp. 2d 955 (E.D. Cal. 2013)...................................................................................... 19

*County of Los Angeles v. Davis*,
    440 U.S. 625 (1979)............................................................................................................ 10

*Crowder v. LinkedIn Corp.*,
    No. 22-CV-237-HSG, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023) ................................................ 19

*Darring v. Kincheloe*,
    783 F.2d 874 (9th Cir.1986) ............................................................................................... 9

*Dilley v. Gunn*,
    64 F.3d 1365 (9th Cir. 1995) .............................................................................................. 9

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................................................ 12

*Farmer v. Brennan*,
    511 U.S. 825 (1994)............................................................................................................ 15

*FBI v. Fikre*,
    601 U.S. 234 (2024)............................................................................................................ 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)....................................................................................................... 8, 10

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013).............................................................................................................. 8

*Gilmore v. California*,
    220 F.3d 987 (9th Cir. 2000) .............................................................................................. 15

*Grenning v. Miller-Stout*,
    738 F. App'x 546 (9th Cir. 2018) ........................................................................................ 15

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ........................................................................................................ 8, 12

*In re Netflix Antitrust Litigation*,
    506 F. Supp. 2d 308 (N.D. Cal. 2007) ................................................................................ 19

*in re Nexus 6p Prod. Liab. Litig.*,
    No. 17-CV-2185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017).............................. 19

*Jarvis v. Regan*,
    833 F.2d 149 (9th Cir. 1987) .............................................................................................. 19

*Johnson v. Moore*,
    948 F.2d 517 (9th Cir.1991) ............................................................................................. 8, 9

*Jones v. Bock*,
    549 U.S. 199 (2007) ........................................................................................................... 12

*Kincheloe v. Am. Airlines, Inc.*,
    No. 21-CV-00515-BLF, 2021 WL 5847884 (N.D. Cal. Dec. 9, 2021) ................................ 8

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) ................................................................................................ 7

*Maldonado v. Lynch*,
    786 F.3d 1155 (9th Cir. 2015) .............................................................................................. 8

*Miller v. French*,
    530 U.S. 327 (2000) ........................................................................................................... 16

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ......................................................................................... 7, 13

*Munoz v. Tilton*,
    No. 5:07-cv-03846-EJD, 2013 WL 2146583 (N.D. Cal. 2013) ............................................ 9

*NASCO, Inc. v. Calcasieu Television & Radio, Inc.*,
    894 F.2d 696 (CA5 1990) .................................................................................................... 18

*Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*,
    112 F.R.D. 120 (N.D. Cal. 1986).......................................................................................... 18

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015) ............................................................................................... 7

*Pierce v. Cnty. of Orange*,
    761 F. Supp. 2d 915 (C.D. Cal. 2011) ................................................................................ 18

*Pinson v. Carvajal*,
69 F.4th 1059 (9th Cir. 2023) ................................................................. 9

*Plata v. Schwarzenegger*,
603 F.3d 1088 (9th Cir. 2010) ............................................................... 18

*Porter v. Nussle*,
534 U.S. 516 (2002) ............................................................................... 12

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ................................................................................. 9

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) ................................................................. 17

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) ....................................................... 10, 11

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) ............................................................................... 18

*Rodriguez v. Hubbard*, No. 1:10-cv-858-DLB-P,
C, 2012 WL 4490768 (E.D. Cal. 2012) .................................................... 9

*Rupe v. Cate*,
688 F. Supp. 2d 1035 (E.D. Cal. Feb. 1, 2010) ........................................ 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ................................................................. 7

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) .............................................................. 7, 19

*United States v. Hudson*,
7 Cranch 32 (1812) ................................................................................ 18

*United States v. W. T. Grant Co.*,
345 U.S. 629 (1953) ............................................................................... 10

*Wenger v. Monroe*,
282 F.3d 1068 (9th Cir. 2002) ............................................................... 19

*Wiggins v. Rushen*,
760 F.2d 1009 (9th Cir. 1985) ................................................................. 9

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ................................................................. 20

Statutes

18 U.S.C. § 2626(a)(2) ............................................................................................... 1

18 U.S.C. § 3626 ........................................................................................................ 2

18 U.S.C. § 3626(a)(1) ............................................................................................. 14

18 U.S.C. § 3626(a)(1)(A) .................................................................................. 14, 16

18 U.S.C. § 3626(a)(2) ..................................................................................... passim

18 U.S.C. § 3626(b)(2) ......................................................................................... 3, 16

18 U.S.C. § 3626(e)(2) ................................................................................ 3, 5, 6, 13

18 U.S.C. § 3626(e)(2)(A) ....................................................................................... 16

18 U.S.C. § 3626(f)(4) ............................................................................................. 17

18 U.S.C. § 3626(f)(6)(D) .......................................................................................... 3

18 U.S.C. § 3626(g)(6)(D) .................................................................................. 16, 17

18 U.S.C. § 3626(g)(7) ............................................................................................. 14

18 U.S.C. § 3626(g)(8) ............................................................................................. 17

28 U.S.C. § 2675(a) ................................................................................................. 13

42 U.S.C. § 1983 ........................................................................................................ 9

Rules

Fed. R. Civ. P. 12(b)(1) .................................................................................... 1, 3, 7

Fed. R. Civ. P. 23(b)(2) .............................................................................................. 6

Fed. R. Civ. P. 25 ....................................................................................................... 1

Fed. R. Civ. P. 26(c) ................................................................................................ 19

Fed. R. Civ. P. 53 ..................................................................................................... 18

Fed. R. Civ. P. 53(b)(1); (f)(1); (g)(1) ..................................................................... 18

Fed. R. Civ. P. 53(f)(1) ............................................................................................ 18

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 30, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 4th Floor, of the United States Courthouse, 1301 Clay Street, Oakland, California, before the Honorable Yvonne Gonzalez Rogers, United States District Judge, the United States Federal Bureau of Prisons (BOP), Colette Peters, in her official capacity as Director, and Charmaine Nash[1], in her official capacity as FCI Dublin Warden, (collectively, "Defendants"), will move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) for an order dismissing the first, second, and third claims for relief in Plaintiffs' first amended complaint (FAC) (dkt. 152 at 63–65), for a stay of discovery pending resolution of this motion, and to terminate all orders granting prospective relief to the extent any such orders extend beyond the expiration of the preliminary injunction under 18 U.S.C. § 2626(a)(2). This motion is based on this notice and motion, the accompanying memorandum of points and authorities, the Court's files and records in this matter, including the testimony and evidence introduced at the evidentiary hearing, the declaration attached hereto, and any other matters of which the Court takes judicial notice.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), C.D. Nash may be substituted for defendant Art Dulgov as the current Warden of FCI Dublin.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

While the Court's supervision of conditions at FCI Dublin has served its purpose through the closure of the facility, it has reached a point of completion. The coordinated branches of government, each with its own role, are unified in a common goal: to foster a "humane and secure environment" for individuals in custody, and to "ensure public safety by preparing individuals for successful reentry into our communities."[2] When a federal correctional institution fails to meet these expected standards, BOP has an obligation to those in custody, as well as to the surrounding communities, to make a change.

Here, both the BOP and the Court recognized that FCI Dublin was in "dire need of immediate change," (dkt. 222 at 1), and each took action. For its part, the Court conducted an evidentiary hearing with respect to the conditions of confinement at FCI Dublin and issued a preliminary injunction addressing those conditions under 18 U.S.C. § 3626(a)(2). Following its own deliberative process, BOP leadership determined that it needed to close FCI Dublin and transfer all female adults in custody (AICs) to other federal facilities. The transfer process was conducted subject to various court orders and in coordination with the Court's special master. That process is now complete, and the AICs previously confined at Dublin are now at new facilities. If Dublin is eventually reopened, it will not be used to house female AICs again. While Plaintiffs' damages claims remain,[3] the injunctive claims addressing conditions of confinement at FCI Dublin—a facility where no inmates are confined—must be dismissed as moot. Likewise, the Court's preliminary injunction has expired by statute and further prospective relief is unavailable under the Prison Litigation Reform Act (PLRA).

Claims one through three of the FAC, which seek injunctive relief under the Eighth and First Amendments of the United States Constitution, are moot.[4] These claims for relief, as well as the

---

[2] Federal Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency/agency_pillars.jsp?t=4, accessed June 13, 2024; *see also* 18 U.S.C. § 3626 (providing appropriate remedies with respect to prison conditions and establishing procedures).

[3] These claims and cases are stayed until at least August 16, 2024. *See* dkt. 64; and *M.R. v. United States*, No. 22-cv-05137-YGR (AGT), and related cases (dkt. 198).

[4] As noted by the Court (dkt. 222 at 21, fn. 40), Plaintiffs also raise a Fifth Amendment claim but have abandoned it in briefing before the Court. In any event, this claim is premised upon the same factual allegations – that the conditions of confinement at FCI Dublin were violating Plaintiffs' substantive due process rights – and it should similarly be dismissed with prejudice.

injunctive class action allegations, are premised exclusively on 245 paragraphs of factual allegations detailing conditions of confinement at FCI Dublin, which is now closed, and which will never again house female AICs. As such, the official-capacity defendants respectfully move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss with prejudice Plaintiffs' injunctive and class claims as moot in light of the closure of FCI Dublin and for a stay of discovery pending resolution of this motion to promote judicial economy and conserve time and resources.

Official-capacity defendants also provide notice that the Court's orders granting preliminary injunctive relief automatically expired on June 15, 2024, by operation of the PLRA. 18 U.S.C. § 3626(a)(2). To the extent any orders granting prospective relief can be interpreted as extending beyond the expiration of the preliminary injunction, defendants move to immediately terminate such orders pursuant to 18 U.S.C. § 3626(b)(2), as they were issued without the congressionally required findings. This includes relieving the Special Master of her appointment. *See* 18 U.S.C. § 3626(f)(6)(D) ("A special master appointed under this subsection . . . shall be relieved of appointment upon the termination of relief."). The PLRA provides for an automatic stay of these orders beginning on the 30th day after this motion is filed pending this Court's final order ruling on the motion. 18 U.S.C. § 3626(e)(2).

## II.   LEGAL AND FACTUAL BACKGROUND

The California Coalition for Women Prisoners (CCWP) and eight individual AICs brought this action in August 2023, and simultaneously moved for class certification and a preliminary injunction. (Dkts. 1, 10, 11.) Plaintiffs' FAC opens with the statement: "[f]or years, *people incarcerated at the Federal Correctional Institution, Dublin ("FCI Dublin")*, a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant ongoing sexual abuse that continues to this day." (Dkt. 152 at 5 (footnote omitted) (emphasis added).) It continues, "Plaintiffs, and the putative class members they represent, have endured horrific abuse and exploitation at the hands of *facility staff*…" (Dkt. 152 at 5 (emphasis added).) Indeed, Plaintiffs' motions for a preliminary injunction and class certification centered exclusively on conditions of confinement at FCI Dublin. (*See e.g.*, dkt. 10 at 6–7, "[t]hose incarcerated *at FCI Dublin* have been and continue to be subject to a systemic campaign of staff sexual assault, harassment, and retaliation which makes sexual abuse a fact of incarceration *at the facility* . . . It is hard to overstate how pervasive the sexual misconduct and retaliation *at FCI Dublin* is . .

.”; “[t]he past and ongoing harms to those incarcerated *at FCI Dublin* include physical harm, psychological harm, and damage to their wellbeing and relationships in every way imaginable. All those incarcerated *at the facility* remain subject to extremely high risk of substantial injury from sexual assault *while they remain at FCI Dublin*,” and at 17, 19, 21–22, 26 (emphasis added)).

The declarations Plaintiffs filed in support of the preliminary injunction similarly focused exclusively on conditions of confinement at FCI Dublin, and all declarations contained this statement: “*FCI Dublin*’s inadequate systems for preventing, detecting, and responding to sexual abuse have caused actual harm to myself and others *incarcerated at FCI Dublin* and put myself and other incarcerated persons at substantial risk of serious harm from sexual assault, harassment, and retaliation *from staff*.” (Dkts. 10-1–10-47 (emphasis added).)

The relief requested through Plaintiffs’ claims for injunctive relief in the amended complaint and the motion for preliminary injunction focused on allegations of harm that occurred “while they were incarcerated at FCI Dublin,” (*see e.g.*, dkt. 152 at 59) and requested an order requiring BOP “to take immediate steps to protect people inside FCI Dublin . . .” (*see e.g.*, dkt. 10 at 4).

The Court held an evidentiary hearing on the motions from January 3–9, 2024. (*See* dkts. 83–87, 101, 104, 110, 117, 126.) Fourteen incarcerated people, largely from the same two housing units, testified over two days about conditions of confinement at FCI Dublin, including their perceptions of ongoing risks of sexual assault, retaliation, and lack of access to confidential reporting mechanisms, counsel, and medical and mental health care at the facility. (Dkts. 110, 117.)

BOP witnesses testified consistently that BOP earnestly attempted to remedy issues at FCI Dublin through traditional means, by installing new leadership at the facility and implementing the recommendations of an outside consulting group. (Dkts. 101, 104, 117, 126.) When they testified, new leadership was confident they had reformed and would continue to reform the culture at FCI Dublin, and that no outside supervision was necessary. However, due to various factors, BOP placed nine supervisory employees on administrative leave pending investigation into allegations of non-sexual misconduct between January 9 and March 11, 2024. (Dkts. 211, 222 at 14.)

On March 11, 2024, the government provided notice to the Court that BOP had replaced the Acting Warden, an Associate Warden, the Executive Assistant/Satellite Camp Administrator, and the

Acting Captain at FCI Dublin. *Id.* This notice stated that "[t]his change is consistent with ongoing actions by BOP leadership to enact positive changes at FCI Dublin, and in response to recent developments that were raised in post-hearing motions (*see e.g.*, dkts. 163, 166, 175) and in the February 27, 2024 show cause hearing. This new team has been charged with developing a plan for the future of the facility and presenting it to Bureau leadership for consideration." (Dkt. 211.)

Far from an impulsive decision, BOP leadership had been considering the closure of FCI Dublin for many years and determined that closure was compelled post haste "due to FCI Dublin's perpetual short-staffing, aging infrastructure, and ongoing allegations of staff misconduct." (*See* dkts. 211; 257 at 3.) The Court has described closure of the facility as hasty and chaotic. (Dkt. 300 at 1, 4.)  However, as the government subsequently explained, it was carefully planned, but "[d]etails regarding the closure of a federal prison are highly sensitive and cannot become public in advance of the closure due to serious safety and security risks to all involved." (Dkt. 236-2.) This includes allowing AICs advanced notice of closure, for obvious security reasons. Information regarding a mass transfer can be shared only on a need-to-know basis. Once BOP leadership determined it needed to close FCI Dublin – a decision that would involve the mass transfer of all AICs and all its attending considerations – counsel determined the Court had an immediate need to know given its Order requiring advance notice of the transfer of any AIC listed on either party's witness list. (Dkts, 88, 160.) Accordingly, BOP made *ex parte* contact with the Court about a month prior to the announcement of the closure – on or about March 14, 2024 – to inform it of the impending facility closure, omitting any logistical details. (Dkt. 235 (Notice memorializing *ex parte* contact).)

On March 15, 2024, this Court issued an Order granting the motion for class certification and granting and denying in part the motion for preliminary injunction. (Dkt. 222.) The Court found that "[FCI] Dublin is a dysfunctional mess. The situation can no longer be tolerated. The facility is in dire need of immediate change." (*Id*. at 1.) The Court devoted several paragraphs to Dublin's "history of sexual abuse," (*id*. at 5–6) and explained that "[t]he source of [Dublin's] problems were apparent: the stigma associated with the ongoing criminal investigation, the high cost of living in the Dublin area, the failure of the federal pay scale to be competitive with similar local or state institutions, and the failure of the General Services Agency to authorize on-site house trailers for staff. Because of the high cost of

living, in addition, staff was often forced to live far away, which makes commutes long, morale low, and recruitment and retention difficult." (*Id.* at 8.) Additional key findings supporting this ruling by the Court centered solely on the unique conditions present at FCI Dublin. (*See e.g.*, *id.* at 8, 10-12, 22, 26–27, 30-31, 35, 37–42.) The Court stated further it was issuing the preliminary injunction "and other anticipated Orders so that the constitutional rights of *those imprisoned at the prison* are no longer at significant risk. The Court shall appoint a special master forthwith. The Court will issue further Orders narrowly tailored to address the ongoing retaliation which has resulted from the convictions and sentencings of five prison officials, including the previous warden, for criminal sexual abuse and sexual contact. The special master shall assist the Court to ensure compliance with these orders." (*Id.* (emphasis added).)

As to the class claims, the Court stated: "Plaintiffs move to certify a class of '[a]ll people who are now, or will be in the future, incarcerated at FCI Dublin and subject to FCI Dublin's uniform policies, customs, and practices concerning sexual assault, including those policies, customs, and practices related to care in the aftermath of an assault and protection from retaliation for reporting an assault.' They do so solely under Fed. R. Civ. P. 23(b)(2) and, at this juncture, for the purpose of adjudicating their motion for preliminary injunction on a classwide basis." (*Id.* at 14 (citing doc. 11 at 2).) The Court granted the class certification motion, finding that Plaintiffs had satisfied the Rule 23(b)(2) factors based on the numerosity of those incarcerated at FCI Dublin (then-674), the commonality of questions sought to be answered (whether "BOP and FCI Dublin's policies and practices will provide common proof of whether FCI Dublin has placed its incarcerated population at risk of sexual abuse, retaliation, and medical neglect"), and typicality of the named plaintiffs' claims (finding "named plaintiffs bring the same type of claims—risk of sexual abuse and retaliation—for the same type of circumstances—incarceration at FCI Dublin, under the same policies and practices of the conditions of confinement at FCI Dublin."). (Dkt. 222 at 15–17.)

After a three-week process of party-nominations, and Court interviews, the Court selected a former correctional official, Wendy Still, as FCI Dublin special master to assist BOP in complying with this Court's Orders. Ms. Still began her on-site presence at FCI Dublin on Monday April 8, 2024. BOP again notified the Court *ex parte* of the impending facility closure through an under-seal filing on April

12, 2024, this time including estimated dates of the closure but omitting logistical details. (Dkts. 251, 251-1, 251-2, 251-3.)

Under the supervision of the Court and special master, the last female AIC left FCI Dublin on May 1, 2024. BOP leadership is certain at this juncture that – if they reopen FCI Dublin – it will coincide with a mission change, and the prison will not reopen as a women's facility. (Ex. 1, Lothrop's Second Decl.)

## III.    STANDARDS OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the plaintiff fails to meet its burden of establishing subject matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "A Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair*, 880 at 201 (internal citations omitted). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id*. The district court may review evidence beyond the complaint "without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. A district court "does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *Id*.

Leave to amend should be freely granted except where it would unfairly prejudice the party opposing amendment, and courts are empowered to deny leave to amend based on the futility of the proposed amendment. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015). A district court does not abuse its discretion when it considers the relevant factors (discussed below) and articulates why dismissal should be with prejudice. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (internal citation omitted).

While the Federal Rules of Civil Procedure do not provide for an automatic stay of discovery while a potentially dispositive motion is pending, district courts have wide discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Courts in the Ninth Circuit and this District also "consider whether a stay of discovery will promote efficiency or conserve the parties' resources, recognizing that engaging in discovery prior to adjudication of a strong motion to dismiss would represent a potential 'waste of resources.'" *Kincheloe v. Am. Airlines, Inc.*, No. 21-CV-00515-BLF, 2021 WL 5847884, at *1 (N.D. Cal. Dec. 9, 2021).

## IV. ARGUMENT

### A. This Court lacks subject matter jurisdiction over Plaintiffs' claims for injunctive relief because they are moot.

To invoke a federal court's limited jurisdiction, the court must have before it an actual case or controversy. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (quoting U.S. Const. Art. III, § 2). If a court does not have an actual case or controversy before it, it has no power to hear the matter in question. "Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Id.* at 705 (*citing Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)), and a case must therefore be dismissed as moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Alvarez v. Smith*, 558 U.S. 87, 92 (2009); *see Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015) (describing mootness as "the doctrine of standing set in a time frame") (*citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal citation omitted)). Mere past exposure to illegal conduct does not establish a case or controversy that would support prospective injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quotation marks omitted). Here, there is no "present harm left to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017); *see also Arc of Cal. v. Douglas*, 757 F.3d 975, 982 (9th Cir. 2014).

In the context of prisoner civil rights litigation, if a prisoner challenges his conditions of confinement and seeks injunctive relief, transfer to another prison generally renders the request for

injunctive relief moot absent some non-speculative evidence of an expectation of being transferred back. *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007) (*citing Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")). As articulated by the Ninth Circuit in *Wiggins v. Rushen*, 760 F.2d 1009 (9th Cir. 1985), claims for non-monetary relief brought under 42 U.S.C. § 1983 are moot if the prisoner-plaintiff is no longer subject to the alleged illegal conduct. *See also Pinson v. Carvajal*, 69 F.4th 1059, 1063–65 (9th Cir. 2023).

Indeed, "[a]n inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action," *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (assuming members of the class remain at the original prison where the policies were being challenged). AICs "who have been released from prison or transferred to a different prison may not sue for injunctive relief because they no longer benefit from having the injunction issued." *Rupe v. Cate*, 688 F. Supp. 2d 1035, 1043 (E.D. Cal. Feb. 1, 2010) (*citing Preiser v. Newkirk*, 422 U.S. 395, 402–03 (1975); *Moore*, 948 F.2d at 519; *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Several district courts have reached the same conclusion. *See Munoz v. Tilton*, No. 5:07-cv-03846-EJD, 2013 WL 2146583, at *7 (N.D. Cal. 2013), aff'd, 585 F. App'x 424 (9th Cir. 2014); *Rodriguez v. Hubbard*, No. 1:10-cv-858-DLB-PC, 2012 WL 4490768 (E.D. Cal. 2012); *Abel v. Martel*, No. 2:09-cv-1749-JAM-CKD, 2013 WL 552416 (E.D. Cal. 2013); *Burton v. Clark*, No. 1:09-cv-61-AWI, 2012 WL 3205425 (E.D. Cal. 2012).

It is abundantly clear from the filings in this case and the evidence presented at the evidentiary hearing, which the parties and the Court are familiar with, that Plaintiffs and the class they represent sued BOP based on allegedly unconstitutional conditions of confinement at FCI Dublin. FCI Dublin is now closed; and under the direction of the Court and supervision of the special master, the last female AIC left the facility on May 1, 2024. There is neither a reasonable expectation nor demonstrated probability that FCI Dublin will again house female AICs. Indeed, the possibility of recurrence of the challenged conduct is only a speculative contingency. At most, Plaintiffs' claims allege past exposure to illegal conduct for which they could seek money damages. Because Plaintiffs can put forth no non-

speculative evidence that they will return to FCI Dublin, their requests for non-monetary relief as alleged in the FAC are moot.[5]

### B. No exceptions to mootness apply to prevent dismissal.

As stated, a case becomes moot—and is therefore no longer a case or controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Already,* 568 U.S. at 91 (internal citations and quotations omitted). The Supreme Court has held, pursuant to what is known as the "voluntary cessation" exception, that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* "But this doctrine, which 'traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior,' does not apply here." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (en banc). A case is moot so long as it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *W.T. Grant Co.*, 345 U.S. at 632–33 (internal quotations omitted)); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2024) ("[A] defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'") (quoting *Friends of the Earth*, 528 U.S. at 189)).

BOP has demonstrated that the harms alleged in this case cannot reasonably be expected to recur because the agency's Deputy Director has declared that FCI Dublin will not be reopened until factors causing previous issues are addressed, and if it is reopened, it will not be used to house female AICs. (*See* Lothrop' Second Declaration, ¶¶ 4–7.) This evidence is more than sufficient to carry the government's burden, particularly in light of the "'solicitude'" and "presumption of good faith" that Ninth Circuit precedent affords the government in this context. *Brach*, 38 F.4th at 12-13 (quoting *Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc);

---

[5] That said, dismissal here "would not be a bar to a new suit in case possible violations arise in the future." *United States v. W. T. Grant Co.*, 345 U.S. 629, 636 (1953). Plaintiffs and class members remain free to pursue injunctive relief at their new correctional facilities if they encounter issues deriving from conditions of confinement at those facilities. Such claims cannot be judicially reviewed, however, until they are administratively exhausted. *See* § C below.

see also *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) (collecting cases that afford solicitude to government officials' voluntary conduct).

BOP's decision to remove female AICs from FCI Dublin "is entrenched and not easily abandoned or altered in the future." *Brach*, 38 F.4th at 6. This Court is "not here presented with a mere informal promise or assurance on the part of the [governmental] defendants that the challenged practice will cease." *Rio Grande*, 601 F.3d at 1118 (citing *Burbank*, 520 F.2d at 748; see also 13C Wright, Miller & Cooper, supra note 15, § 3553.7, at 351–52). To the contrary, BOP has irrevocably remedied all issues relating to continued incarceration at Dublin by closing the facility and moving all female AICs to other BOP facilities. *Id.* at 1118 (citing 13C Wright, Miller & Cooper § 3533.7, at 326 (noting that although governmental defendants might take action as a direct response to litigation, "[a]t any rate, self-correction again provides a secure foundation for mootness so long as it seems genuine")).

As the BOP's Deputy Director stated in his second declaration, the closure of FCI Dublin was not an elaborate attempt to temporarily evade review. (Lothrop's Second Declaration, ¶ 6.) *See Brach*, 38 F.4th at 13 (holding the voluntary cessation exception inapplicable where an "order opening schools [was] not a temporary move to sidestep . . . litigation"). Rather, due to FCI Dublin's persistent issues, BOP leadership had been considering closure for many years. Closure was compelled and the timeline moved up due to changing factual conditions but was not in an effort to evade sanctions or review. (Lothrop's Second Declaration, ¶¶ 4, 6.) As Director Peters explained in a public statement, "[t]he agency took unprecedented steps and provided a tremendous amount of resources to address culture, recruitment and retention, aging infrastructure – and most critical – employee misconduct. Despite these steps and resources," BOP leadership determined that FCI Dublin was not meeting expected standards and that the best course of action was to close the facility. Peters explained that this decision was made "after ongoing evaluation of the effectiveness of those unprecedented steps and additional resources." Plans for the future of FCI Dublin are continuing to be developed, but the closure "certainly will result in a mission change."[6] This mission change involves discontinuing use of the facility to house female AICs, and current class members will not be transferred back. (Lothrop's Second Declaration, ¶ 5, 7.)

---

[6] *Federal women's prison in California plagued by rampant sexual abuse to close*, Thao Nguyen, USA TODAY, https://www.usatoday.com/story/news/nation/2024/04/16/california-federal-correctional-institution-dublin/73347882007/ (accessed June 14, 2024).

1   As such, this Court must conclude that the voluntary cessation exception to mootness does not apply

2   because the recurrence of the challenged conduct is but a mere speculative contingency. *See Rio*

3   *Grande*, 601 F.3d at 1118.

4       **C.  Leave to amend would be futile and would unfairly prejudice BOP.**

5       After a party has amended a pleading once as a matter of course (like here), it may only amend

6   further after obtaining leave of the court, or by consent of the adverse party. *Eminence Cap., LLC v.*

7   *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).

8       In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory

9       motive on the part of the movant, repeated failure to cure deficiencies by amendments previously
    allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility

10      of amendment, etc.—the leave sought should, as the rules require, be freely given.

11  *Id*. at 1052 (internal citations and quotations omitted). Dismissal with prejudice and without leave to

12  amend is appropriate where it is clear on de novo review that the complaint could not be saved by

13  amendment. *Id*. (internal citation omitted). A district court does not abuse its discretion when it

14  considers the relevant factors and articulates why dismissal should be with prejudice. *Id*. (internal

15  citation omitted).

16      Leave to amend would be futile here because, as explained above, FCI Dublin has closed and

17  class members have been transferred to other BOP facilities, mooting Plaintiffs' claims for injunctive

18  relief. While they may argue that the challenged policies are nationwide agency policies, the challenged

19  practices (i.e., the implementation of those policies) was limited to FCI Dublin. And because this

20  Court's finding that Plaintiffs were likely to succeed on merits of their Eighth and First Amendment

21  claims was limited to BOP's national policies *as applied at* FCI Dublin, this Court "must put aside the

22  natural urge to proceed directly to the merits of an important dispute and to 'settle' it for the sake of

23  convenience and efficiency." *Perry*, 570 U.S. at 704–05. There has been no showing that Plaintiffs are

24  likely to succeed in proving, nor have they even alleged, that unconstitutional conditions persist at other

25  BOP facilities.

26      Critically, any new potential claims related to other facilities would be subject to immediate

27  dismissal for failure to exhaust. "The [Prison Litigation Reform Act] PLRA's exhaustion requirement

28  applies to all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Plaintiffs seeking to challenge conditions at another facility would be required first to satisfy the PLRA's "mandatory," nonwaivable exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Any new claim for class damages would similarly be subject to immediate dismissal for failure to exhaust. *See Cary v. United States*, No. 06-CV-2342-DMS (LSP), 2007 WL 9683542, at *6 (S.D. Cal. May 21, 2007) (counsel's status as class counsel is irrelevant, as submission of an administrative claim on behalf of a class does not satisfy the jurisdictional requirements of 28 U.S.C. § 2675(a) (the Federal Tort Claims Act) "unless *each class member* also satisfies the claim filing requirements." (emphasis added)). Accordingly, an amended complaint alleging unconstitutional conditions at any facility receiving Dublin AICs would be futile.

Moreover, allowing Plaintiffs to amend their pending complaint to include new claims related to other BOP facilities would represent a "radical shift in direction" of this litigation and would unfairly prejudice BOP given the time and resources already spent defending conditions of confinement at FCI Dublin. Substantial prejudice may be shown where new claims set forth in the subsequently amended complaint would greatly alter the nature of the litigation and would require defendants to undertake an entirely new course of defense. *See Rose*, 893 F.2d at 1079 (affirming denial of motion for leave to amend where new claims posed a "radical shift in direction" of the litigation, were "tenuous" at that, and where moving party failed to request leave to amend for nearly two years). As such, this Court should dismiss Plaintiffs claims for injunctive relief without leave to amend.

**D. This Court's preliminary injunction expired by operation of law on June 15, 2024; to the extent orders granting prospective relief can be interpreted to extend beyond that date, the United States moves for immediate termination under 18 U.S.C. § 3626(a)(2).**

This Court entered an order granting a preliminary injunction on March 15, 2024. (Dkt. 222.) To enter preliminary injunctive relief pursuant to the PLRA, a court must find that the relief is narrowly drawn, that it extends no further than necessary to correct *the harm* the court finds requires preliminary relief, and that it is the least intrusive means necessary to correct *the harm*. 18 U.S.C. § 3626(a)(2) (emphasis added). Preliminary injunctive relief "shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of

prospective relief and makes the order final before the expiration of the 90-day period." *Id.*; *see Ahlman v. Barnes*, 20 F.4th 489, 491–92 (9th Cir. 2021) (explaining that, the PLRA provides that "any preliminary injunction automatically expires 90 days after being issued (absent further finalization) . . ."); *see also* dkt. 46 at 26–27 (noting that certain claims for preliminary injunctive relief were mooted by automatic 90-day expiration of preliminary relief). The preliminary injunction that the Court entered on March 15, 2024, therefore "automatically expire[d]" on June 15, 2024.

To award prospective relief extending beyond the 90-day period, the Court would have been required to make the findings set out in 18 U.S.C. § 3626(a)(1). *See* 18 U.S.C. § 3626(g)(7) (defining "prospective relief" to mean "all relief other than compensatory damages" and applying that definition to "any civil proceeding arising under Federal law with respect to conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison" excluding habeas proceedings). In contrast to the findings required for entry of preliminary injunction, subsection (a)(1) provides that,

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct *the violation of* the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct *the violation of* the Federal right, and is the least intrusive means necessary to correct *the violation of* the Federal right.

18 U.S.C. § 3626(a)(1)(A) (emphasis added).

As a prerequisite to prospective relief, courts must make the fact findings outlined in (a)(1)(A). Under § 3626(b)(3), such findings must be "written" and "based on the record." The Court has made no such findings in this case. Indeed, the Court's Order granting preliminary prospective relief was issued, "so that the constitutional rights of those imprisoned at the prison are no longer at significant risk." (Dkt. 222 at 1.) The Court found – based on conditions of confinement unique to FCI Dublin – that without preliminary injunctive relief plaintiffs faced imminent irreparable harm and were "*likely to succeed* in their Eighth Amendment claims for the risk of sexual abuse and serious medical neglect, along with their First Amendment claim that they face an ongoing risk of retaliation." (*Id.* at 42 (emphasis added).) In so finding, the Court acknowledged "that at this early stage the record before it is necessarily incomplete . . ." (*Id.* at 35.)

The language used in 18 U.S.C. § 3626(a)(2) requiring a finding of harm is congruent with the law on preliminary injunctions in general, i.e., a Plaintiff must show imminent, irreparable harm and a likelihood of success on the merits. By contrast, the language in 18 U.S.C. § 3626(a)(1) requiring a finding of a "violation of a federal right", is congruent with an ultimate decision on the merits, i.e., rather than show a likelihood of success, a Plaintiff has succeeded on the merits and is entitled to a permanent injunction. Permanent injunctions are an extraordinary remedy, particularly under the PLRA. *Grenning v. Miller-Stout*, 738 F. App'x 546, 547 (9th Cir. 2018). Importantly, the PLRA exists "to restrict the equity jurisdiction of federal courts" and "creates a more exacting standard for federal courts to follow." *Brackens v. City & Cnty. of San Francisco*, No. 19-CV-02724-SK, 2023 WL 6847576, at *35 (N.D. Cal. Oct. 17, 2023) (*citing Gilmore v. California*, 220 F.3d 987, 999, 1007 (9th Cir. 2000)) (For example, in *Brackens*, this Court entered the findings under 18 U.S.C. § 3626(a)(1)(A) after an extensive 8-day bench trial on the merits).

Again, the Court has made no such findings – nor could it in light of changing conditions. Under the Eighth Amendment, to survive summary judgment, "[a]n inmate seeking an injunction on the ground that there is 'a contemporary violation of a nature likely to continue,'" "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, *and are at the time of summary judgment*, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction" (i.e., a violation of a federal right), "the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 845–46 (1994) (internal citation omitted) (emphasis added). As the parties and the Court have all acknowledged, FCI Dublin has an "extraordinary history." (Dkt. 222 at 28.) The closure of FCI Dublin and transfer of female AICs to facilities that do not share the same extraordinary history – such as chronic culture issues, employee misconduct, understaffing, and aging infrastructure – remedied many of the issues the Court identified in its various orders granting preliminary relief. There is no basis for conclusions about the conditions of confinement at other BOP facilities, and certainly no basis for the findings required by the PLRA.

While a district court may *sua sponte* modify injunctive relief, *Armstrong v. Brown*, 768 F.3d 975, 980 (9th Cir. 2014), under the plain terms of the PLRA, there is no mechanism to "extend" an order granting a preliminary injunction beyond its statutory expiration. Because the order granting a preliminary injunction (dkt. 222) was not made final prior to June 15, 2024, it has expired. Dkts. 300 and 308, which are related orders based on the findings required under 18 U.S.C. § 3626(a)(2) made in Dkt. 222, have likewise expired. To the extent the related orders granting prospective relief can be interpreted as extending beyond the expiration of the preliminary injunction, Defendants move for their immediate termination pursuant to 18 U.S.C.A. § 3626(b)(2). This subsection provides that, "[i]n any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. Again, as noted above, the Court has made no such findings in this case. Accordingly, any prospective relief must be terminated.

Additionally, "the term 'special master' means any person appointed by a federal court pursuant to Rule 53 of the Federal Rules of Civil Procedure or pursuant to any inherent power of the court to exercise the powers of a master, regardless of title or description given by the court." 18 U.S.C. § 3626(g)(8). The special master "may be removed at any time, but shall be relieved of the appointment on termination of relief." 18 U.S.C. § 3626(g)(6)(D). As explained, because the Court has not entered the requisite findings under the PLRA to make prospective relief final, all prospective relief – including the appointment of the special master – must terminate.

Finally, any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period beginning on the 30th day after such motion is filed and ending on the date the court enters a final order ruling on the motion. 18 U.S.C.A. § 3626(e)(2)(A)–(B). Thus, even if construed as a motion to terminate prospective relief, and even in lieu of any action on such motion, all existing Court orders deriving from the injunctive claims are stayed 30 days after the filing of this motion. "Through the PLRA, Congress clearly intended to make operation of the automatic stay

1   mandatory, precluding courts from exercising their equitable powers to enjoin the stay." *Miller v.*

2   *French*, 530 U.S. 327, 350 (2000).

3       **E.   The Court's Order renaming the special master a court monitor cannot survive**
        **expiration of the preliminary injunction, and was issued without notice and an**
4       **opportunity to be heard.**

5       On May 20, 2024, the Court issued an Order appointing the special master as Monitor. (Dkt.

6   308.) The Court explained, "[g]iven [Special Master] Still has completed her work on-site at FCI

7   Dublin,…the Court finds that monitoring of the adults in custody ('AICs') who left the facility for other

8   institutions is now required. Thus, the Court hereby exercises its inherent authority to **APPOINT** Still

9   and a subset of her team as Monitor of BOP's compliance with court orders and to ensure that FCI

10  Dublin AICs receive appropriate follow up care and support in their new facilities." (*Id*. at 1 (emphasis

11  in original)). The Court stated that the Monitor and Special Master are distinct and separate positions (*id*.

12  at 1–2) and exercised its inherent authority to direct BOP "to pay the reasonable and necessary expenses

13  for Still's time monitoring its compliance, as well as those of the subset of her team members." (*Id*. at

14  2.)

15      This is impermissible for two reasons: one, even assuming the Court has authority to appoint a

16  court monitor as a modification of an existing preliminary injunction, as argued above, the preliminary

17  injunction has expired by operation of law and the Court's authority under that injunction has likewise

18  expired. To the extent the court monitor has been appointed under Rule 53 to ensure compliance with

19  this Court's orders, that is the same role assigned to the special master. As stated, "[t]he term 'special

20  master' means any person appointed by a Federal court pursuant to Rule 53 of the Federal Rules of Civil

21  Procedure or pursuant to any inherent power of the court to exercise the powers of a master, *regardless*

22  *of title or description given by the court*." 18 U.S.C. § 3626(g)(8) (emphasis added). This means that,

23  under 18 U.S.C. § 3626(f)(4), "compensation and costs shall be paid with funds appropriated by the

24  Judiciary," and the master "may be removed at any time, but *shall be relieved of the appointment* on

25  termination of relief." 18 U.S.C. § 3626(g)(6)(D) (emphasis added).

26      Two, as explained below, even assuming the appointment of a distinct court monitor is a valid

27  exercise of inherent authority, the Court is required to provide notice and an opportunity to be heard

28

U.S.' MOTION TO DISMISS
4:23-cv-04155-YGR

prior to any such appointment—which it did not provide here. "The inherent powers of federal courts are those that 'are necessary to the exercise of all others.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980) (quoting *United States v. Hudson,* 7 Cranch 32, 34 (1812)). "[I]nherent power 'is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (CA5 1990)).

"Consistent with the PLRA's mandate, the Court may exercise its inherent authority to appoint a special monitor to oversee compliance with Court Orders intended to remedy statutory violations in the prison context." *Pierce v. Cnty. of Orange*, 761 F. Supp. 2d 915, 948 (C.D. Cal. 2011) (citing *Benjamin v. Fraser,* 343 F.3d 35, 44–47 (2d Cir. 2003), *abrogated in other part by Caiozzo v. Koreman,* 581 F.3d 63, 70 (2d Cir. 2009). This Court has used the terms special master and monitor interchangeably and concluded that Fed. R. Civ. P. 53 governs not only special masters, but also monitors. *See e.g., Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*, 112 F.R.D. 120, 122 (N.D. Cal. 1986). Crucially, Rule 53 requires notice and an opportunity to be heard before an appointment. Fed. R. Civ. P. 53(b)(1); (f)(1); (g)(1). In deciding whether to appoint a receiver or monitor, the Court may act on a master's report or recommendation, however, the Court "must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

"The PLRA provides that all prospective judicial relief (necessarily including the appointment of [monitors and] receivers) must be accompanied by findings that the relief is 'narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.'" *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010) (quoting 18 U.S.C. § 3626(a)(1)(A)). "Moreover, '[t]he court shall give **substantial weight** to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.'" *Pierce*, 761 F. Supp at 947 (quoting *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010) (emphasis added)). Again, and as explained above, the Order appointing Still as court monitor does not contain the required findings under § 3626(a)(1)(A).

Importantly, in considering a motion to terminate prospective relief, the Court must consider "the record and arguments of the parties as to what the current status is (rather than the past). The record on which this motion is decided must reflect conditions *as of the time termination is sought*." *Coleman v. Brown*, 938 F. Supp. 2d 955, 960 (E.D. Cal. 2013) (cleaned up and internal citations omitted) (emphasis added). If provided notice and an opportunity to be heard, BOP would demonstrate that the current status does not warrant the appointment of a court monitor. The current status of this litigation is that FCI Dublin is closed (*see* supra, § IV(a)) and there has been no showing that a violation of any AIC's federal rights has occurred at any other BOP facility, nor can there be such a showing under the claims as pled in the amended complaint. This Court must terminate the appointment of the court monitor, or, in the alternative, provide the parties with notice and an opportunity to be heard regarding the appointment.

### F.  A stay of discovery pending resolution of this motion is appropriate.

"[D]istrict courts have broad discretion to stay discovery pending the resolution of a potentially dispositive motion, including a motion to dismiss." *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (*citing Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)). The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *see* also *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming a district court ruling granting a protective order staying discovery pending a dispositive motion).

"Courts in this district often apply a two-prong test to determine whether a stay of discovery is appropriate." *Crowder v. LinkedIn Corp.*, No. 22-CV-237-HSG, 2023 WL 2405335, at *7 (N.D. Cal. Mar. 8, 2023) (citing *in re Nexus 6p Prod. Liab. Litig.*, No. 17-CV-2185-BLF, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017) (collecting cases)). "First, the moving party must demonstrate that the pending motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. Second, the court must determine whether the pending motion can be decided absent discovery." *Id.* (internal quotations omitted). Discovery is necessary "only if it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded that opportunity." *St. Clair*, 880

F.2d at 201–02 (internal citation omitted). "Where, as here, the extra-pleading material demonstrates that the controlling questions of fact are undisputed, additional discovery would be useless." *Id*.

This Court should exercise its discretion and order a stay of discovery related to injunctive claims because the motion to dismiss the injunctive claims is dispositive of all active claims in this case and the issue of jurisdiction can be decided without discovery. It is undisputed that FCI Dublin is currently closed, and no class members remain incarcerated there. No amount of discovery will lead to a contrary conclusion. To the extent Plaintiffs believe they are entitled to seek discovery in support of class damages, discovery should not be permitted in lieu of any actual claim in the pleadings seeking such damages. As it stands the amended complaint advances no damages claims in association with class allegations. Importantly, as the Court noted, "[t]he motion [for class certification] does not contend that the individual, past harms suffered by named plaintiffs call for class treatment; instead, it argues that class certification is warranted because plaintiffs are all subject to a collective, future risk of injury under BOP policy and FCI Dublin custom." (Dkt. 222 at 16–17 (citation omitted).) To the extent Plaintiffs seek discovery to prove past exposure to unconstitutional conditions, those are damages claims and discovery on those claims is currently stayed to promote global resolution. (*M.R.*, dkt. 198.) It makes little sense to proceed with discovery on some claims but not others, when all involve the same backward-looking analysis.

Allowing discovery to proceed on mooted claims is legally invalid because a court lacking subject matter jurisdiction cannot entertain any facet of the dispute and must dismiss the case, *Lyons*, 461 U.S. at 102; and does not promote judicial economy because conducting discovery on mooted claims inevitably wastes the time and resources of the Court, *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) (holding that "[a] district court may ... stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").

## V. CONCLUSION

Considering all of the foregoing, BOP respectfully requests that this Court dismiss Plaintiffs' claims for injunctive relief with prejudice, as they are moot in light of the closure of FCI Dublin, and terminate all prospective relief.

1    Dated this 18th day of June, 2024.

2                                              JESSE A. LASLOVICH
                                               United States Attorney
3

4                                              /s/ *Madison L. Mattioli*
                                               MADISON L. MATTIOLI
5                                              ABBIE J.N. CZIOK
                                               MARK STEGER SMITH
6                                              TIMOTHY A. TATARKA
                                               Assistant U.S. Attorneys
7                                              Attorneys for Federal Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28