**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CALIFORNIA COALITION FOR WOMEN PRISONERS, ET AL.,** | **Case No.:** 4:23-cv-4155-YGR |
| Plaintiffs, | **ORDER EXTENDING PRELIMINARY INJUNCTIVE RELIEF; REQUIRING MEET AND CONFER** |
| v. | |
| **UNITED STATES OF AMERICA BUREAU OF PRISONS, ET AL.,** | |
| Defendants. | |

Earlier this spring and following both an evidentiary hearing and personal site visit, the Court ordered preliminary injunctive relief designed to safeguard the constitutional rights of the adults in custody ("AICs") at the Bureau of Prisons ("BOP")'s Federal Correctional Institution Dublin and satellite camp (collectively, "FCI Dublin").

As set forth in detail herein, such injunctive relief will expire, by operation of statute, on Thursday, July 4, 2024. Given that the BOP has still failed to correct the violation of the constitutional rights experienced by the AICs, the Court hereby **ORDERS** that such relief shall be extended and will now expire on **Wednesday, October 2, 2024**. The fact that the BOP may have closed FCI Dublin does not relieve them of their obligations.

## I.    BACKGROUND

On March 15, 2024, the Court granted in part and denied in part plaintiffs' motion for a preliminary injunction to safeguard the FCI Dublin AICs' constitutional rights.[1] The Court did not, at that time, appoint a Special Master, although it indicated its intention to do so. (Prior Order at 1.)

---

[1] Dkt. No. 222, Order Granting the Motion for Class Certification; Granting in Part and Denying in Part the Motion for Preliminary Injunction; Granting the Related Sealing Motions ("Prior Order"). In addition to addressing plaintiffs' request for injunctive relief, the Prior Order also certified a class of "[a]ll people who are now, or will be in the future, incarcerated at FCI Dublin and subject to FCI's Dublin's uniform policies, customs, and practices concerning sexual assault, including those policies, customs, and practices related to care in the aftermath of an assault and protection from retaliation for reporting an assault." *Id.* at 14:17–20; 20:3–5.

United States District Court
Northern District of California

Following a further status conference to discuss the matter of appointment, and as required by 18 U.S.C. § 3626(f)(2)(A), the parties each proposed a list of five individuals whom they recommended for the role. (Dkt. No. 223.) The parties subsequently "remove[d] up to 3 persons from the opposing party's list," pursuant to the governing statute.[2] *See* 18 U.S.C. § 3626(f)(2)(B). The two remaining persons on each party's list were then permitted to view certain documents and thereafter required to provide the Court "an initial assessment, including their suggested approach" to addressing the harm unfolding at FCI Dublin. (Dkt. No. 232 at 2:3–4.)

Following a review of these initial assessments and after speaking to the candidates, the Court appointed Wendy Still, a corrections expert and criminologist,[3] as Special Master on April 5, 2024.[4] (Dkt. No. 248 at 1:17–18.) "Given the urgency and magnitude of issues existing at FCI Dublin," and at Still's request, a limited and reasonable number of additional individuals were also appointed to assist her. These included a nurse consultant, special assistant, and two specialists in, respectively, (i) data and statistical analysis, as well as (ii) safety and security, rehabilitative programming, and the Prison Rape Elimination Act of 2003 ("PREA"). (*Id.* at 1.)

---

[2] *See also* Dkt. No. 232 (further outlining the process by which the Special Master was selected).

[3] Still previously served as Acting Chief Deputy Warden Correctional Administrator for California State Prisons Solano, Folsom, and Wasco. She also served as Chief Probation Officer for the San Francisco Probation Department's adult population, as well as Chief Probation Officer for the Adult and Juvenile Divisions for the Alameda County Probation Department. As a consultant, Still has worked with the California Federal Prison Health Care Services; United States Department of Justice, Civil Rights Division; as well as the United States Department of Homeland Security, Office of Civil Rights and Civil Liberties. She holds relevant degrees from the University of California, Irvine and University of San Francisco.

[4] The government has filed a motion to dismiss this matter on the grounds that the closure of FCI Dublin renders plaintiffs' claims moot. It also attacks the legitimacy of Still's appointment and authority as Special Master. Separately, the government has filed myriad objections to the comprehensive report authored by Still regarding conditions at FCI Dublin pre- and post-closure. The Court defers ruling on such filings at this time. The factual bases upon which the Court relies upon herein to extend the previously-ordered preliminary injunctive relief are drawn primarily from its own experience with the parties and almost a dozen status conferences held with them, as well as facility leadership, prior to, during, and after FCI Dublin's closure.

The appointment order closed by stating, "For the purposes of Title 18 U.S.C. § 3626(a)(2), the 90-day period [for which the preliminary injunction would be in effect] shall be deemed to begin as of the date of this order." (*Id.* at 2:16–17.) Thus, the preliminary injunction took full force on April 5, 2024, the date the appointment order was issued, and will automatically expire on Thursday, July 4, 2024, unless the Court rules otherwise on or prior to the deadline. This makes abundant sense. The injunctive relief ordered by the Court required the close participation of a Special Master and could not begin in earnest until a Special Master was put in place.[5] This was made plain by the first page of the preliminary injunction order. (*See* Prior Order at 1:18–26 (summarizing the Court's rulings and providing that a Special Master shall be appointed "forthwith").) Further, neither party objected to this interpretation of Section 3626(a)(2) at the time. Thus, the Court deems any belated objection to have been waived.

## II.    LEGAL FRAMEWORK

Section 3626 of Title 18 of the United States Code governs injunctive relief with respect to prison conditions. It provides the following with respect to preliminary injunctive relief:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter . . . an order for preliminary injunctive relief . . . . Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Subsection 3626(a)(1), in turn, concerns "prospective relief" relative to prison conditions, which includes preliminary injunctive relief. It bars courts from approving such relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Courts must, in assessing such an assessment, "give

---

[5] *See, e.g.*, Prior Order at 44:3–5 ("Too much remains to be done urgently and the Court cannot be physically present on the property on a daily basis to ensure compliance. The remedial actions necessary are entirely too complex without the help of a special master.").

1   substantial weight to any adverse impact on public safety or the operation of a criminal justice

2   system caused by the relief." *Id.*

3   **III.    ANALYSIS**

4          The Court begins by recounting the grounds on which preliminary injunctive relief was

5   ordered in the first instance. Having done so, the Court then assesses whether such conditions persist.

6          A.   Preliminary Injunctive Relief

7          The Court's decision to order preliminary injunctive relief in this case followed multiple

8   days of evidentiary hearings, detailed briefing and argument, as well as the Court's unannounced

9   nine-hour personal visit to FCI Dublin. The Court set out its rationale for this decision in a detailed,

10   45-page order. In sum, the Court found that "[g]iven the record presented and the Court's personal

11   observations," the BOP "has proceeded sluggishly with intentional disregard of [AICs']

12   constitutional rights despite being fully apprised of the situation for years." (Prior Order at 1:12–

13   16.) Various factors drove this analysis:

14          *One*, there remained among AICs an ongoing risk of staff sexual abuse, and relatedly,

15   BOP's response to staff sexual abuse at FCI Dublin "demonstrates that it has been, and is,

16   deliberately indifferent to plaintiffs' risk of abuse." (*Id.* at 26:23–24.) Such indifference has taken

17   the form of insufficient reporting mechanisms and investigations of wrongdoing, as well as a

18   general failure to follow BOP policy relative to allegations of sexual abuse.

19          *Two*, FCI Dublin's AICs had "serious medical and mental health needs," plus many had

20   experienced trauma and resultant mental health issues. (*Id.* at 30:6–7, 19–21.) Despite this, the BOP

21   "failed to act with any sense of urgency or creativity in resolving" the "serious" issue of low

22   medical and mental health staffing, including as to both chronic and urgent care needs. (*See id.* at

23   33:16–17.)

24          *Three*, BOP's use of the Special Housing Unit ("SHU") to "quell" AICs' free speech rights,

25   including in the context of filing PREA complaints, was "draconian" and "pose[d] a serious risk of

26   also deterring legitimate" claims. (*Id.* at 40–41.)

27          The gravity of these deficiencies, among others, led the Court to find that plaintiffs were likely

28   to succeed on their constitutional claims and, given the history of recent events at the facility, the

United States District Court
Northern District of California

public interest and balance of equities favored injunctive relief. (*See id.* at 43.) Such balancing led directly to the Court's decision that preliminary injunctive relief was necessary under Section 3626.

      B.  <u>Current Conditions Relative to the Certified Class</u>

The sudden closure of FCI Dublin drastically changed the landscape of this case. In the days and weeks that followed, the Court took the most prudent action possible to safeguard the constitutional rights of the AICs. This process revealed to the Court new information relative to the conditions at the facility.

By way of background, Special Master Still arrived on site for the first time on Monday, April 8, 2024. Within a week, BOP had put plans in motion to close the facility and transfer its AICs to other federal facilities. The Special Master reported myriad concerns to the Court relative to such plans, including concerning the medical clearance process for the AICs being prepared for transport and the eligibility of such individuals for community placements (*i.e.*, home confinement, halfway homes) or release. Based thereon, the Court intervened to halt the transfer of AICs away from FCI Dublin.

The Court provided operational guidance to the BOP relative to the closure of the facility over the weeks that followed. These efforts were limited in scope and intended to, among others, ensure that the traumas endured by FCI Dublin's AICs and the constitutional deprivation of rights they experienced were not exacerbated. This involved ensuring adequate identification and tracking of medical and mental health issues, review of casework to first ensure AICs were not eligible for release and thereafter were sent to the proper destination, and that BOP processed its backlog of compassionate release and other administrative requests.

The events surrounding BOP's closure of FCI Dublin, including the roles played by the Court and Special Master, were set forth in detail in a contemporaneous order. (*See* Dkt. No. 300.) The Court incorporates by reference the factual background provided therein, as it is relevant to the Court's assessment of the preliminary injunctive relief here at issue. (*Id.* at 2–10.) Two categories of factual observations set forth in that order, which were made primarily on the basis of the

United States District Court
Northern District of California

1    Court's own observations over nearly a dozen status conferences held with the parties between

2    Still's appointment and the issuance of the order,[6] are particularly notable.

3         *One*, the critically low staffing levels jeopardized the AICs' health and safety. The AICs

4    had not been properly medically cleared prior to transit. Further, AICs had waited so long for

5    medically necessary care that some routine needs had become urgent. Other AICs' needs were so

6    pronounced that medical appointments were necessary prior to transit. The Special Master, at the

7    Court's request, created "alerts" for such individuals and continues to track their resolution with the

8    BOP and counsel for both parties. These efforts are ongoing.

9         *Two*, the same low staffing levels have prevented FCI Dublin from timely addressing

10   administrative issues raised by the AICs, sometimes for months or years. The impact of such delays

11   meant that casework was not up to date as of the closure, requiring the Court to order casework

12   reviews prior to transport so that AICs were sent to the appropriate institution or released. Certain

13   administrative issues, particularly regarding disciplinaries, remain outstanding and impact release

14   dates and classification status.  These efforts are ongoing.

15        Thus, the Court **FINDS** that many of the issues previously identified have not been resolved

16   by BOP notwithstanding the closure of FCI Dublin, and thus, the previously-identified AICs'

17   constitutional rights remain threatened. Specifically, BOP does not appear to have maintained

18   accurate and up-to-date casework on the AIC class members. This failure has a constitutional

19   valence; without accurate casework, AICs may be improperly classified, which affects their accrual

20   of credits, and, thus, could result in them being incarcerated longer than necessary. Separately, it

21   does not appear the medical and mental health issues identified by the Court during its site visit

22   have been meaningfully addressed. That is why the Court, through the Special Master, has placed

23   "alerts" on certain AICs to ensure care is provided and tracked. Again, this failure by the BOP has

24   constitutional implications. As set forth in the Court's Prior Order, plaintiffs have brought Eighth

25   Amendment claims tied, in part, to FCI Dublin's insufficient medical and mental health services.

26

27        ---

         [6] The Court convened conferences on the following days: April 5, 2024; April 15, 2024;
28   April 17, 2024; April 19, 2024; April 21, 2024; April 23, 2024; April 24, 2024; April 26, 2024;
     April 29, 2024; and May 1, 2024.

Having established that AICs' constitutional rights remain threatened, the Court assesses whether, under Subsection 3626(a)(1)(A), ongoing relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." As part of this inquiry, the Court affords "substantial weight to any adverse impact on public safety or the operation of [the] criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A).

For the foregoing reasons, the Court **FINDS** that the preliminary injunctive relief previously ordered, and since clarified by the Court, is sufficiently tailored and is the least intrusive means necessary to correct the above-referenced constitutional violations. Further, the need for such relief is not outweighed by an adverse impact on public safety or the operation of the BOP.

The narrow scope of the relief is worth emphasizing. The Court has not, for example, issued a nationwide injunction on all BOP facilities. Such action would be sweeping in nature and could adversely impact the BOP's ability to operate this country's prison system. Instead, the Court here has ordered relief designed to address the constitutional deprivations experienced by FCI Dublin AICs. All relief is directly tied to those issues.[7] Further, the Court has not heard from the government that the relief ordered is adversely impacting BOP's ability to operate. Extension of the relief for 90 additional days is therefore warranted. The Court is bolstered in so finding by the Ninth Circuit's admonition that, "federal courts 'must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners.'" *See Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (quoting *Brown v. Plata*, 563 U.S. 493, 511 (2011)).

## IV.   CONCLUSION

For the foregoing reasons, the Court determines the injunctive relief previously ordered by the Court **SHALL** be extended by 90 days, to expire on **Wednesday, October 2, 2024**.

\*          \*          \*

---

[7] The mere fact that the AICs have been relocated does not mean they lose this Court's protection as a certified class relative to those issues. The Court reserves the right to issue orders specific to class members who are now incarcerated at other facilities but who continue to suffer harms tied to their experiences at FCI Dublin.

United States District Court
Northern District of California

United States District Court
Northern District of California

Separately, the Court revisits the filing, by the government, of myriad objections to Special Master Still's report. The Court orders the following relative to the report:

1. The Court shall schedule an evidentiary hearing to review all findings in the report. Currently the Court is in a three-to-four month trial and will schedule the proceeding immediately thereafter, likely September 2024;

2. Plaintiffs **SHALL** respond to the government's objections by no later than **Friday, July 12, 2024**; and

3. The parties **SHALL** meet and confer regarding pre-hearing discovery, including identification and production of documents upon which the Special Master relied in compiling her report.

The parties shall act expeditiously so as not to delay the evidentiary hearing.

**IT IS SO ORDERED**.

Date: July 1, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

8