1  ERNEST GALVAN – 196065
   KARA J. JANSSEN – 274762
2  ADRIENNE SPIEGEL – 330482
   LUMA KHABBAZ – 351492
3  ROSEN BIEN
   GALVAN & GRUNFELD LLP
4  101 Mission Street, Sixth Floor
   San Francisco, California  94105-1738
5  Telephone:      (415) 433-6830
   Email:        egalvan@rbgg.com
6                kjanssen@rbgg.com
                 aspiegel@rbgg.com
7                lkhabbaz@rbgg.com

8  SUSAN M. BEATY – 324048
   CALIFORNIA COLLABORATIVE FOR
9  IMMIGRANT JUSTICE
   1999 Harrison Street, Suite 1800
10 Oakland, California  94612-4700
   Telephone:      (510) 679-3674
11 Email:        susan@ccijustice.org

OREN NIMNI*
  Mass. Bar No. 691821
AMARIS MONTES*
  Md. Bar No. 2112150205
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone:      (202) 455-4399
Email:        oren@rightsbehindbars.org
              amaris@rightsbehindbars.org

STEPHEN S. CHA-KIM*
  N.Y. Bar No. 4979357
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone:      (212) 836-8000
Email:        stephen.cha-kim@arnoldporter.com

CARSON D. ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California 94306-3807
Telephone:   (650) 319-4500
Email:        carson.anderson@arnoldporter.com

* Admitted *pro hac vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

CALIFORNIA COALITION FOR WOMEN PRISONERS et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al.,

Defendants.

Case No. 4:23-cv-04155-YGR

**PLAINTIFFS' OPPOSITION TO UNITED STATES' NOTICE OF MOTION TO DISMISS, STAY DISCOVERY, AND TERMINATE PROSPECTIVE RELIEF**

Date:      July 30, 2024
Time:      2:00 p.m.
Crtrm.:   1, 4th Floor

Judge:   Hon. Yvonne Gonzalez Rogers

Trial Date:      June 23, 2025

1

# TABLE OF CONTENTS

**Page**

2

3    I.     INTRODUCTION .................................................................................................... 1

4    II.    ARGUMENT ........................................................................................................... 2

5          A.     The Court's Order Extending the Preliminary Injunctive Relief
                Resolves Defendants' Motion. ................................................................... 2

6    A.     Defendants' motion under 12(b)(1) is inappropriate and untimely. ........................... 3

7

8          B.     This case is not moot because Defendants have not ceased their
                unlawful conduct: the same class is still in custody of the same
9                Defendants and subject to the same policies and practices as alleged in
                the complaint ............................................................................................... 4

10         C.     The injunctive relief issued in this matter has not expired, nor has the
                appointment of the Monitor. ...................................................................... 9

11

12               1.     Defendants' motion is inappropriately tied to ECF No. 222
                        while seeking to vacate relief issued under the Closure Order
                        (ECF No. 300) and Order Appointing a Court Monitor (ECF
13                        No. 308). .................................................................................. 9

14               2.     The appointment of Ms. Still as Court Monitor is not subject to
                        the restrictions of the PLRA because Monitor is a distinct role
15                          from that of Special Master. ................................................... 10

16    III.   Discovery should not be stayed pending resolution of Defendants' motion. ........... 12

17          A.     A stay of discovery is not issued as a matter of right, particularly here
                where this case has been pending for nearly ten months, has had
18                  significant proceedings, and is only several months from the close of
                  fact discovery. ......................................................................................... 12

19

20          B.     Plaintiffs will be prejudiced by a discovery stay. ......................................... 12

          C.     Defendants will not be prejudiced without a discovery stay. ........................ 13

21    IV.   CONCLUSION..................................................................................................... 13

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Abel v. Martel*, No. 2:09-CV-1749 JAM CKD, 2013 WL 552416
(E.D. Cal. Feb. 13, 2013) ..........................................................................................9

5

*Benjamin v. Fraser*,
6   343 F.3d 35 (2d Cir. 2003)
*overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009) ..........11

7

*Brach v. Newsom*,
8   38 F.4th 6 (9th Cir. 2022) ...........................................................................................5

9

*Burton v. Clark*,
No. 1:09-CV-00061-AWI, 2012 WL 3205425 (E.D. Cal. Aug. 3, 2012) ........................9

10

*Campbell-Ewald Co. v. Gomez*,
11   577 U.S. 153 (2016), *as revised* (Feb. 9, 2016) ................................................................8

12

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)..........................................................................................................4

13

*Darring v. Kincheloe*,
14   783 F.2d 874 (9th Cir. 1986) ............................................................................................8

15

*Dilley v. Gunn*,
64 F.3d 1365 (9th Cir. 1995) .............................................................................................8

16

*FBI v. Fikre*,
17   601 U.S. 234 (2024).................................................................................................4, 6, 8

18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....................................................................................................4, 5

19

*Georgia Advoc. Off. v. Jackson*, 4 F.4th 1200 (11th Cir. 2021),
20   vacated, 33 F.4th 1325 (11th Cir. 2022) ...............................................................10

21

*Gilmore v.People of the State of California*,
220 F.3d 987 (9th Cir.2000) .......................................................................................10

22

*Gray v. First Winthrop Corp.*,
23   133 F.R.D. 39 (N.D. Cal. 1990)........................................................................................13

24

*Johnson v. Moore*,
948 F.2d 517 (9th Cir. 1991) ...........................................................................................8

25

*Jones v. L.A. Cent. Plaza LLC*,
26   74 F.4th 1053n.2 (9th Cir. 2023) ....................................................................................4

27

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .........................................................................................4

28

*Munoz v. Rowland*,
   104 F.3d 1096 (9th Cir. 1997) .......................................................................8

*Munoz v. Tilton*,
   No. 5:07-CV-03846 EJD, 2013 WL 2146583 (N.D. Cal. May 15, 2013).........................9

*Nelson v. Heiss*,
   271 F.3d 891 (9th Cir. 2001) ....................................................................5, 7

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
   No. 5:16-CV-06370-EJD, 2018 WL 1569811 (N.D. Cal. Feb. 16, 2018).....................13

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007)...................................................................................6

*Pinson v. Carvajal*,
   69 F.4th 1059 (9th Cir. 2023) .....................................................................8

*Rodriguez v. Hubbard*, No. 1:10-CV-00858-DLB PC, 2012 WL 4490768
   (E.D. Cal. Sept. 28, 2012).........................................................................9

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) .....................................................................5

*Rupe v. Cate*,
   688 F. Supp. 2d 1035 (E.D. Cal. 2010).........................................................8

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...................................................................4

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   65 F.4th 1012 (9th Cir. 2023) ...................................................................4

*Schoppe-Rico v. Lewis*,
   No. C 11-04283-YGR-PR, 2012 WL 3022441 (N.D. Cal. July 24, 2012)....................12

*Tavantzis v. Am. Airlines, Inc.*,
   No. 23-CV-05607-BLF, 2024 WL 812012 (N.D. Cal. Feb. 23, 2024)..........................12

*Tiedemann v. von Blanckensee*,
   72 F.4th 1001 (9th Cir. 2023) ...................................................................5

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   582 U.S. 449 (2017)..................................................................................4

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ....................................................................3

*United States v. Lummi Indian Tribe*,
   235 F.3d 443 (9th Cir. 2000) ....................................................................3

*United States v. Oregon State Med. Soc.*,
   343 U.S. 326 (1952).................................................................................1

*Walker v. Beard,*
    789 F.3d 1125 (9th Cir. 2015) ............................................................................5

*West Virginia v. EPA,*
    597 U.S. 697 (2022) .....................................................................................4, 6

**Statutes**

18 U.S.C. § 3626(a)(1) ........................................................................................10

18 U.S.C. § 3626(a)(2) ........................................................................................10

18 U.S.C. § 3626(g)(7) ........................................................................................10

18 U.S.C.A. § 3626 .............................................................................................11

18 U.S.C.A. § 3626(f) ..........................................................................................11

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................................3

Fed. R. Civ. P. 12(h)(3) ........................................................................................3

Fed. R. Civ. P. 53(c) ...........................................................................................11

# I.    INTRODUCTION

Rather than addressing the systemic issues in the Bureau of Prisons (BOP) made plain by the instant litigation, Defendants have chosen to return to their familiar, and now tired, refrain: 'all is now well in the BOP.'  In moving to dismiss this case, Defendants seek to circumvent the explicit guardrails established by courts to ensure that parties will not attempt to strategically moot litigation to shield bad acts from court scrutiny.  One week after the court-appointed Special Master began work at the facility, the BOP announced the abrupt, temporary closure of FCI Dublin, scattering class members to facilities across the country, while acknowledging potential plans to reopen FCI Dublin in the future.  No evidence in the record undermines the inference that the sudden closure was an attempt to moot the instant litigation.  Nor have Defendants provided any record evidence to establish that they do not, and will not, continue to violate the rights of the same class members who remain in their custody – particularly not to the high standard set by the voluntary-cessation mootness doctrine.

The violations at FCI Dublin did not occur in a vacuum.  As alleged in the First Amended Complaint (FAC), BOP practices, policies, and neglectful oversight allowed the horrors to continue unabated.  Even now after the Court and prosecutors removed some of the worst actors, the practices and policies that protected the perpetrators are unchanged and continue to harm class members.  The Court has repeatedly recognized the ongoing risk of harm and need for continued narrow relief, including most recently in its July 1, 2024 order, which resolves Defendants' arguments regarding the expiration of the Court's orders under the Prison Litigation Reform Act (PLRA) by extending the Court's prior order. The order also addressing their mootness claims, noting that "[t]he fact that the BOP may have closed FCI Dublin does not relieve [BOP] of their obligations."  Order Extending Preliminary Injunctive Relief; Requiring Meet and Confer at 1.

When government Defendants argue to dismiss on mootness grounds "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform . . . ." *See United States v. Oregon State Med. Soc.*, 343 U.S. 326,

1    333 (1952).  To be sure, this might be a harder case if Defendants could point to

2    substantive BOP policies and practices that they changed to address the issues and

3    evidence raised by this case.  Here, however, Defendants do not seriously repudiate their

4    past actions or point to specific reforms.  Defendants' only argument is that the temporary

5    closure of one facility somehow moots a case where the same class members have the

6    same claims, against the same Defendants, in whose custody they remain.  That is a live

7    case and controversy, not the stuff of mootness.

8            Defendants are unnecessarily throwing everything they can up against the wall to

9    avoid accountability rather than simply engaging in litigation of this case or in the ordered

10   settlement process which would expeditiously resolve this matter for the benefit of all.

11   **II.    ARGUMENT**

12           **A.    The Court's Order Extending the Preliminary Injunctive Relief**
                     **Resolves Defendants' Motion.**

13

14           On July 1, 2024, this Court issued an Order Extending Injunctive Relief and

15   Requiring a Meet and Confer ("Extension Order").  ECF No. 336.  In that order the Court

16   held (1) that the narrow preliminary injunctive relief in this matter is extended 90 days to

17   October 2, 2024; and (2) that "[t]he fact that the BOP may have closed FCI Dublin does

18   not relieve them of their obligations." Extension Order at 1, 7.  The Court also reiterated

19   the narrow scope of the existing injunction which only requires particular reporting and

20   specific action related to former residents of FCI Dublin and reiterated the findings upon

21   which that narrow relief was founded.  *See* Extension Order at 5-7.  Because Defendants'

22   motion to dismiss and to vacate relief was based solely on mootness following the closure

23   of FCI Dublin and the 90-day automatic expiration of relief required by the PLRA, their

24   motion is resolved by the Extension Order as are any arguments that the needs-

25   narrowness-intrusiveness requirements of the PLRA have not been met in this case.  To the

26   extent that the Extension Order does not resolve Defendants' Motion, Plaintiffs preserve

27   their arguments and address Defendants' motion below.

28

## A.    Defendants' motion under 12(b)(1) is inappropriate and untimely.

A motion to dismiss for lack of subject-matter jurisdiction "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Although the Court can consider a challenge to subject-matter jurisdiction at any stage in the litigation, *see* Fed. R. Civ. P. 12(h)(3), the Court has effectively already asserted jurisdiction post-closure, and Defendants' motion does not alter that analysis.

According to Defendants' own timeline, BOP notified the Court of its decision that "it needed to close FCI Dublin" on March 14, 2024.  United States' Notice of Motion and Memorandum of Points and Authorities in Support of Motion to Dismiss, Stay Discovery, and Terminate Prospective Relief at 5 ("Defendants' Motion").  On April 16, 2024, Defendants filed a Motion for Relief pursuant to Rule 60 of the Federal Rules of Civil Procedure on the basis that the Court, among other things, "lacks jurisdiction to impose" requirements regarding the transfer process.  ECF No. 257 at 15.  On May 1, "[t]he last female AIC left FCI Dublin."  Defs' Mot. at 7.  On May 6, Defendants filed an Answer, not a motion to dismiss.  ECF No. 299.  Two days later the Court issued its Order re Closure of FCI Dublin & Preliminary Injunction and ruled on Defendants' pending motion for relief under Rule 60.  ECF No. 300 ("Closure Order").  The Court found "[i]t strains credulity for the BOP to assert that the Court's guidance to the BOP" during and after the closure "was unlinked to any source of legitimate authority."  *Id.* at 12-13.  The Court went on to order BOP to take specified measures to address the "cumulative impact of FCI Dublin's insufficient staffing and related medical and mental health care inadequacies" which were "still being felt by the AICs in need of treatment."  *Id.* at 10.  In short, the Court made clear there remained a redressable constitutional injury.  What the Court stated then remains true today, and was reiterated in the Court's July 1 Extension Order.  Defendants' attempt to re-raise the issue is improper, and nothing would justify the Court's departure from its prior determination.  *See United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (explaining that "a court is generally precluded from reconsidering an issue previously decided by the same court.");  *United States v. Alexander*,

106 F.3d 874, 876 (9th Cir. 1997).  The Court has authority to deny Defendants' motion on that basis alone.

If the Court considers the merits of Defendants' factual 12(b)(1) motion, the court need not but "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 n.2 (9th Cir. 2023) (quoting *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  Any evidence that government Defendants seek to offer to show relief is no longer necessary should be addressed at the upcoming evidentiary hearing after a full opportunity for discovery.

**B.     This case is not moot because Defendants have not ceased their unlawful conduct: the same class is still in custody of the same Defendants and subject to the same policies and practices as alleged in the complaint.**

A court with jurisdiction has a "virtually unflagging obligation" to hear and resolve the claims before it.  *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  A defendant asserting mootness on the basis of an intervening circumstance bears the burden to show the issues are no longer live.  *West Virginia v. EPA*, 597 U.S. 697, 719 (2022).  That burden is particularly "heavy" where "[t]he only conceivable basis for a finding of mootness in th[e] case is [the defendant's] voluntary conduct."  *Id.*  (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  Voluntary conduct by a defendant "does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (quoting

1   *Friends of the Earth*, 528 U.S. at 189).  A logical prerequisite for mootness is that the

2   allegedly wrongful behavior actually has ceased.  And although the government is entitled

3   to more solicitude than a private defendant, the Ninth Circuit has explained, "This is no

4   bare deference: we probe the record to determine whether the government has met its

5   burden, even as we grant it a presumption of good faith."  *Brach v. Newsom*, 38 F.4th 6, 13

6   (9th Cir. 2022); *see also Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

7           Contrary to the Government's contention, BOP's sudden closure of Dublin did not

8   moot this action because Plaintiffs still bear the same constitutional injuries by the same

9   defendants as at all points in this litigation.  As the Ninth Circuit recently reiterated,

10  "where a prisoner challenges a policy that applies across multiple institutions and has

11  named at least one defendant capable of providing relief across those institutions, a prison

12  transfer will not moot a case."  *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008–09

13  (9th Cir. 2023) (citing *Walker v. Beard*, 789 F.3d 1125, 1132 (9th Cir. 2015); *Nelson v.*

14  *Heiss*, 271 F.3d 891, 897 (9th Cir. 2001)).  That is precisely the case here.  Plaintiffs

15  named the BOP and its director as Defendants.  FAC ¶¶ 27–30, ECF No. 152.  Plaintiffs

16  did so because BOP policies and actions (or concerted inaction) placed them at serious risk

17  of sexual abuse and medical neglect and ongoing retaliation in specific ways that are not

18  limited to FCI Dublin – nor to any other single BOP institution.  For instance, as the

19  pleadings make clear, Plaintiffs seek relief from long-standing policy failures that resulted

20  in inadequate reporting mechanisms, nonexistent or negligent investigations into claims of

21  abuse, deficient medical- and mental-health care, and compromised access to legal

22  services.  All of those injuries derive from the challenged regional and national BOP

23  policies and the inadequate actions of outside agencies (including DOJ OIG).  *See, e.g.*,

24  FAC ¶¶ 8, 60–70 (detailing Defendant BOP's failure to comply with PREA); *id.* at ¶¶ 71–

25  105 (detailing BOP's awareness of ongoing sexual assault against AICs for decades and

26  repeated failures to take action); *id.* at 258–262 (Second Claim for Relief for violation of

27  Substantive Due Process, alleging non-delegable duty to ensure constitutionally adequate

28  conditions in all BOP facilities); *id.* at 263–267 (Third Claim for Relief for Retaliation for

1  Exercise of First Amendment Rights, same).  The Government itself repeatedly

2  emphasized at the evidentiary hearing that it is regional and national BOP guidance that

3  provide the operating framework for addressing the issues arising out of Dublin.  *See, e.g.*,

4  Evidentiary Hearing Tr. 257:17-258:2 (Deveney testifying that FCI Dublin had no local

5  staff misconduct policies and relied entirely on national policies); Tr. 272:16-274:11 (same

6  for PREA policies); Tr. 983-2-5 (Wilson, same as to medication formulary); Tr. 1124:14-

7  1125:1 (Mulcahey, same for mental health staffing); Tr. 50:10-12 (Quezada, same for SHU

8  policy).

9        In light of the claims Plaintiffs actually pleaded against Defendant BOP, the

10  Government's assertion that this case is moot because there is no expectation that class

11  members will be transferred back to Dublin, Defendants' Motion at 9, misses the point.

12  While Plaintiffs certainly challenged specific failures at Dublin, the relief they sought was

13  on behalf of the class and some of the relief can only be provided by the BOP itself.  FAC

14  532.  In any event, the Government's reliance on the declaration of William Lothrop,

15  Deputy Director, is unavailing.  In his declaration, Deputy Director Lothrop states only

16  that BOP "is able to presently care for its female AIC population and anticipates the ability

17  to meet their future needs without requiring the use of the FCI Dublin facility."  ECF No.

18  326-1 ¶ 7.  But the U.S. Supreme Court has held that such equivocal language, specifically

19  limited to present circumstances and hedging about future developments, is insufficient as

20  a matter of law to satisfy the "formidable standard" applied to claims of mootness.  *Fikre*,

21  601 U.S. at 242-43 (rejecting mootness argument based on Government's "sparse

22  declaration" that it would not repeat conduct "based on the currently available

23  information").  Such equivocal language is insufficient because "voluntary cessation does

24  not moot a case" unless it is *absolutely clear* that the allegedly wrongful behavior could

25  not reasonably be expected to recur."  *West Virginia*, 597 U.S. at 720 (emphasis added)

26  (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719

27  (2007) ); *see also Fikre*, 601 U.S. at 243 ("In all cases, it is the defendant's 'burden to

28  establish' that it cannot reasonably be expected to resume its challenged conduct—whether

the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment.").  Here, Deputy Director Lothrop himself acknowledges that future factors "impacting federal prisoner populations, like overcrowding, may require BOP to reopen FCI Dublin at some point in the future." Defs.' Mot. to Dismiss ¶ 7, ECF No. 326-1.  The Government has failed to meet its demanding burden.

Defendants remain capable of providing the requested relief: implementing actions to protect the constitutional rights of the plaintiff class members, wherever they may be located.  The Court has repeatedly found that Defendants are capable of providing this systemic relief.  When the Court granted class certification, it stated that "BOP and FCI Dublin policies and practices will provide common proof" and "[a]nyone incarcerated at FCI Dublin is subject to the same BOP-wide policies on sexual assault prevention and reporting as well as their specific implementation by the officer…at FCI Dublin."  Mot. Class Cert. at 16.  When it appointed the Special Master, the Court found "that the monitoring of the adults in custody ("AICs") who left the facility for other institutions is now required" and exercising the Court's "inherent authority to APPOINT Still and a subset of her team as Monitor of BOP's compliance with court orders and to ensure that FCI Dublin AICs receive appropriate follow up care and support in their new facilities." *See* Order No. 3 re:  Special Master at 1.  And when it extended the relief of the Special Master's appointment, the Court found "the Court here has ordered relief designed to address the constitutional deprivations experienced by Dublin AICs.  All relief is directly tied to those issues."  Extension Order at 7.

BOP cannot invoke mootness to evade accountability for the effects of the policies at issue when it remains the party responsible for setting, modifying, and enforcing them, and while class members remain in custody under BOP control and subject to ongoing systemic failures that only exacerbate the harm class members already suffered while housed at FCI Dublin.  *See Nelson*, 271 F.3d at 897 (rejecting transfer-related mootness where claims were raised against director of California's prisons who "set policy for the

1   whole California prison system"); *see also Rupe v. Cate*, 688 F. Supp. 2d 1035, 1043 (E.D.

2   Cal. 2010) ("Because Plaintiff is still incarcerated in a prison run by the [same correctional

3   agency], his claims based on this alleged policy are not moot."). This is particularly true

4   where the facts suggest the defendant "suspend[ed] its challenged conduct after being

5   sued" only to "win dismissal," while preserving the option to "later pick up where it left

6   off." *Fikre*, 601 U.S. at 241; *cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016),

7   *as revised* (Feb. 9, 2016) (rejecting mootness claim because granting it would have

8   "place[d] the defendant in the driver's seat" and allowed the defendant through unilateral

9   action "to avoid a potential adverse decision" ordering more relief). "A live case or

10   controversy cannot be so easily disguised, and a federal court's constitutional authority

11   cannot be so readily manipulated." *Fikre*, 601 U.S. at 241.

12          Each of the cases the Government cites is readily distinguishable because, by

13   contrast, none involved ongoing challenges on a class-wide basis to agency-wide policies,

14   the effects of which were still being felt by Plaintiffs after their transfers. *See Dilley v.*

15   *Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (release from prison will not moot case where

16   "suit has been certified as a class action"); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.

17   1991) (claim moot only because individual Plaintiff "no longer is subjected to [complained

18   of] policies"); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986) (transfer mooted

19   case because claims concerned institution-specific order). Because class members

20   continue to seek the same remedies as before (e.g., improved means to report abuse up the

21   chain at BOP and to outside agencies, improved BOP policies for investigating abuse and

22   preventing retaliation) even after the temporary closure of Dublin, this is not a case where

23   the court "'can no longer provide' [the] requested relief" as a result of an individual's

24   transfer. *Pinson v. Carvajal*, 69 F.4th 1059, 1064 (9th Cir. 2023) (quoting *Munoz v.*

25   *Rowland*, 104 F.3d 1096, 1097–98 (9th Cir. 1997)). Quite to the contrary, as the Special

26   Master's report reflects, Plaintiffs remain in dire need of the ongoing relief the Court has

27   already begun to provide on a class-wide basis. Nimni Decl., ¶ 2, Ex. A (Special Master's

28   Report) at 6 ("



1
2 ”); *id.* at 13 (“
3
4
5 .”); *id.* at 28
6 (
7
8 .”)

9    The Government also cites a number of unpublished district court cases concerning

10 claims of infringement of rights of religious practice in prisons, none of which is

11 analogous to the claims here.  None of these cases involved claims made against

12 correctional agencies concerning policies beyond the single institution from which the

13 plaintiff was transferred; indeed, in one, the plaintiff conceded that "his religious needs

14 [we]re being met" post transfer.  *Munoz v. Tilton*, No. 5:07-CV-03846 EJD, 2013 WL

15 2146583, at *8 (N.D. Cal. May 15, 2013); *see also Abel v. Martel*, No. 2:09-CV-1749

16 JAM CKD, 2013 WL 552416, at *2 (E.D. Cal. Feb. 13, 2013); *Rodriguez v. Hubbard*, No.

17 1:10-CV-00858-DLB PC, 2012 WL 4490768, at *2 (E.D. Cal. Sept. 28, 2012); *Burton v.*

18 *Clark*, No. 1:09-CV-00061-AWI, 2012 WL 3205425, at *3–7 (E.D. Cal. Aug. 3, 2012).

19    In short, the AICs from FCI Dublin are still at risk of harm, and while they are, the

20 case cannot be moot.

21    **C.    The injunctive relief issued in this matter has not expired, nor has the**
    **appointment of the Monitor.**

22
23    The Court's July 1, 2024, Order Extending the Preliminary Injunction makes clear

    that the preliminary relief has not expired and that the appointed Monitor can continue her
24
    work.  To address Defendants' arguments Plaintiffs briefly detail below why, even absent
25
    that order, the relief had not yet expired, although now all relief is subject to the Court's
26
    delineated findings and timeline in ECF No. 336.
27
28       **1.    Defendants' motion is inappropriately tied to ECF No. 222 while**
          **seeking to vacate relief issued under the Closure Order (ECF No.**

1          **300) and Order Appointing a Court Monitor (ECF No. 308).**

2          Defendants move to vacate the existing injunctive relief on the basis that the Order

3   Granting Preliminary Injunction (ECF No. 222) was entered on March 15, 2024, and

4   therefore, under the PLRA's 90-day rule for preliminary relief, should terminate on June

5   15, 2024.  Defs.' Mot. to Dismiss at 13–14.  This is inappropriate at this stage.  As this

6   Court explained in its Extension Order, the relief in the Preliminary Injunction Order was

7   not entered until April 5, 2024 (ECF No. 248, "Appointment Order"), so it would have run

8   on July 4, 2024, but has since been extended to October 2, 2024.  However even if that

9   relief had not been extended, Defendants' challenge would be untimely.  After the

10  Appointment Order was entered, the Closure Order was entered on May 8, 2024 and would

11  have expired on August 8, 2024.  The Monitor Order was then entered on May 20, 2024

12  and would have expired on August 18, 2024.  The 90-rule runs from the entry of the relief

13  in question so there was no basis for Defendants to tie the expiration date to the initial

14  March 15, 2024 date.  *See* 18 U.S.C. § 3626(a)(2).  Regardless, no matter the starting

15  point, the Court's Extension order now firmly sets the expiration date for relief as October

16  2, 2024 unless or until it is renewed or made final.[1]

17              **2.      The appointment of Ms. Still as Court Monitor is not subject to
                         the restrictions of the PLRA because Monitor is a distinct role
18                       from that of Special Master.**

19          Ms. Still's role has now been extended to October 2, 2024.  *See* Extension Order.

20

21  _____
    [1] The Court can also at any time convert preliminary relief into prospective relief.  18
22  U.S.C. § 3626(a)(2).  18 U.S.C. § 3626(g)(7) defines prospective relief as "all relief other
    than compensatory monetary damages."  18 U.S.C. § 3626(g)(7).  And prospective relief,
23  which is subject to different time constraints under the PLRA, need not be a permanent
    injunction, but simply relief that is beyond the scope of preliminary relief and without
24  automatic expiration.  *Id.*  Prospective relief may be entered regardless of whether the
    Court enters new prospective relief or whether the Court changes preliminary relief into
25  prospective relief by making the required findings under 18 U.S.C. § 3626(a)(1) and
    "making the order final."  The required findings under the Ninth Circuit's interpretation of
26  the needs-narrowness-intrusiveness test require no magic words and have been repeatedly
    made by this Court.  *Gilmore v.People of the State of California*, 220 F.3d 987, 1007 n. 25
27  (9th Cir.2000).  Further, 'making the order final' for the purposes of the PLRA is not the
    same as 'entering a final order.'  *See Georgia Advoc. Off. v. Jackson*, 4 F.4th 1200, 1217
28  (11th Cir. 2021), vacated, 33 F.4th 1325 (11th Cir. 2022) (Wilson, J., dissenting) (detailing
    how 'final' in the context of § 3626(a)(2) simply means "not to be processed further"
    rather than an indication of a final order).

1   Alternatively, even if it had not been, and as relevant for future challenges, Ms. Still's

2   appointment as Monitor in this case is distinct from her appointment as Special, as noted in

3   the Court's Order converting Ms. Still's position.  Order No. 3 re: Special Master 1

4   (describing the position of Monitor as "distinct" from that of Master).  While the PLRA

5   governs the appointment of Special Masters, it does not govern the appointment of Court

6   Monitors with different powers.  Even if the PLRA did govern the appointment of Ms. Still

7   as Monitor, that appointment has now been extended as detailed above.

8       The change in title is more than semantic.  Special Masters under the PLRA are

9   particular positions that, in line with the Court's power to appoint them under Rule 53,

10  have a quasi-judicial rule that includes, *inter alia*, conducting hearings or issuing

11  sanctions.  Fed. R. Civ. Proc. 53(c).  Positions, including Monitors, that do not entail such

12  powers are untouched by the PLRA.  In fact, the unpassed predecessor bill to the PLRA,

13  the Stop Turning Out Prisoners ("STOP") Act, "expressly provided that in prison

14  conditions litigation, 'any special master or monitor shall be a United States magistrate and

15  shall make proposed findings on the record on complicated factual issues submitted to that

16  special master or *monitor* by the court, but shall have no other function.'"  *Benjamin v.*

17  *Fraser*, 343 F.3d 35, 46 (2d Cir. 2003) (emphasis in original), *overruled on other grounds*

18  *by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009).  In later passing the PLRA, Congress

19  intentionally removed the term "monitor" so as to not limit the court's powers to appoint a

20  wide variety of positions to assist with the administration of the case.  18 U.S.C.A. § 3626.

21  In *Benjamin v. Fraser*, 343 F.3d 35 (2d Cir. 2003), the Second Circuit dealt with the

22  precise issue that Defendants raise in their motion.  Defendants in *Fraser* sought to

23  terminate the court appointed monitoring organization set up to observe and make reports

24  about jail conditions.  *Fraser*, 343 F.3d at 43.  The Court there determined that because the

25  Monitor was simply monitoring and reporting, rather than conducting quasi-judicial

26  functions, the appointment was not subject to the limitations of the PLRA.  *Id.* at 46.  The

27  same is true of the duly appointed Monitor here.  Ms. Still was bound by the PLRA as a

28  Special Master, and properly appointed by the process that the Court used to select her.  18

1   U.S.C.A. § 3626(f).  Now, in her new role as Monitor with its new mandate (as narrowly

2   outlined in the Closure Order), Ms. Still's appointment is unbounded by the PLRA,

3   although still subject to the Court's inherent authority to craft appropriate injunctive relief.

4   **III.    Discovery should not be stayed pending resolution of Defendants' motion.**

5          **A.    A stay of discovery is not issued as a matter of right, particularly here
             where this case has been pending for nearly ten months, has had
6             significant proceedings, and is only several months from the close of fact
             discovery.**

7

8          Defendants' motion lacks merit.  As an initial matter, "the [C]ourt must take a

9   'preliminary peek' at the merits of the pending motion to dismiss to assess whether a stay

10  is warranted." *Tavantzis v. Am. Airlines, Inc.*, No. 23-CV-05607-BLF, 2024 WL 812012,

11  at *1 (N.D. Cal. Feb. 23, 2024).  As explained above, Defendants' Motion fails on the

12  merits.  This alone warrants denial of Defendants' request to stay discovery.  *See id.* at *2

13  ("[T]he Court has taken its 'preliminary peek' and finds that American Airlines has not

14  met its heavy burden of making a strong showing that a stay is warranted.").

15         **B.    Plaintiffs will be prejudiced by a discovery stay.**

16         The close of fact discovery (October 31) is fast approaching—less than four months

17  away.  Staying discovery will impair Plaintiffs' ability to obtain the discovery it needs,

18  particularly given Defendants' refusal to meaningfully engage with Plaintiffs' discovery

19  requests.  Additionally, the Court has now ordered the parties to meet and confer in regard

20  to pre-hearing discovery for the upcoming evidentiary hearings.  Extension Order  8.

21         Any stay of discovery will be inefficient, and would negatively impact the case

22  schedule and derail resolution of this important cause.  *Schoppe-Rico v. Lewis*, No. C 11-

23  04283-YGR-PR, 2012 WL 3022441, at *1 (N.D. Cal. July 24, 2012) ("[S]taying discovery

24  would only further delay resolution of the case if the motion to dismiss is denied.

25  Accordingly, Defendants' motion to stay discovery is DENIED.").  Indeed, "[t]he mere

26  filing of a motion to dismiss is not ordinarily sufficient to stop the discovery process, derail

27  a case schedule, and delay proceedings.  If it was, every case with a pending second-round

28  motion to dismiss—the large majority of federal actions—would be stayed at some point.

1  That sort of inefficient and chaotic system is not contemplated by the Federal Rules, and is

2  in any event 'directly at odds with the need for expeditious resolution of litigation.'"

3  *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2018 WL

4  1569811, at *2 (N.D. Cal. Feb. 16, 2018) (citing *Gray v. First Winthrop Corp.*, 133 F.R.D.

5  39, 40 (N.D. Cal. 1990)).

6         **C.**    **Defendants will not be prejudiced without a discovery stay.**

7        Defendants do not argue that they will be prejudiced without a discovery stay, nor

8  could they.  "Defendants have not offered a particularized showing describing why

9  discovery in this case is any more burdensome than it is on parties to other civil litigations.

10  Discovery is not stayed just because it imposes *some* burden."  *Optronic*, 2018 WL

11  1569811, at *2.  The certified class includes more than 600 Plaintiffs and the veracity of

12  their constitutional allegations has already been upheld.  *See* Order Granting Prelim. Inj.;

13  *see also, e.g.,* Nimni Decl., ¶ 2, Ex. A (Special Master's Report) at 13 ("████████████

14  ████████████████████████████████████████████████████████████████████

15  ██████████████████████████") (emphasis added).  Defendants have failed to meet

16  their burden for a stay.

17  **IV.**    **CONCLUSION**

18        For the forgoing reasons Defendants motion to dismiss and vacate should be denied.

19  If the Court grants the motion Plaintiffs respectfully request leave to amend.

1   DATED:  July 2, 2024                    Respectfully submitted,

2                                            ARNOLD & PORTER LLP

3                                            CALIFORNIA COLLABORATIVE FOR
                                             IMMIGRANT JUSTICE

4                                            RIGHTS BEHIND BARS
                                             ROSEN BIEN GALVAN & GRUNFELD LLP

5

6
                                             By:   */s/ Oren Nimni*
7                                                  Oren Nimni

8                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28