Jaqueline Aranda Osorno (SBN 308084)
    jaosorno@publicjustice.net
Alexandra Z. Brodsky*
    abrodsky@publicjustice.net
Sarah Ortlip-Sommers*
    sortlip-sommers@publicjustice.net
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
*Pro Hac Vice Forthcoming

Angelica Salceda (SBN 296152)
    asalceda@aclunc.org
Chessie Thacher (SBN 296767)
    cthacher@aclunc.org
Shaila Nathu (SBN 314203)
    snathu@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Proposed Intervenors*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al., <br><br> Defendants. | Case No. 4:23-cv-04155 <br><br> **PROPOSED INTERVENORS' REPLY IN SUPPORT OF MOTION TO UNSEAL COURT RECORDS AND PROTECT ACCESS TO COURT PROCEEDINGS** <br><br> Judge: Yvonne Gonzalez Rogers <br> Date: July 16, 2024 <br> Time: 2:00 p.m. <br> Courtroom: 1 (Fourth Floor) |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 3

ARGUMENT ................................................................................................................... 4

    I.    Defendants' "Institutional Safety" and "Law Enforcement" Arguments Are Unsupported By Specific Facts Demonstrating a Compelling Interest in Sealing

        A.    The Court Should Reject Defendants' Arguments Relating to Institutional Safety ........... 4

        B.    The Court Should Reject Defendants' Arguments Concerning FOIA and Law Enforcement-Related Information ...................................................................... 7

    II.    The Court Should Scrutinize Defendants' Additional Privacy Act Arguments ......................... 8

CONCLUSION ............................................................................................................... 10

CERTIFICATE OF SERVICE ................................................................**Error! Bookmark not defined.**

# INTRODUCTION[1]

Members of the public, and especially Proposed Intervenors, have a significant interest in understanding the horrors that incarcerated people at FCI Dublin have endured and in demanding accountability from the predatory officials who abused them. The information revealed in the current litigation directly relates to this interest and the public has a common law and constitutional right to access it—as Proposed Intervenors explained in their Motion to Unseal Court Records and Protect Access to Public Proceedings. Dkt. No. 317 ("Mot. to Unseal"). In responding to this motion, Defendants now appear to comprehend the weight of their burden when seeking to seal court records. *See* Dkt. No. 329 ("United States' Resp. to Mot. to Unseal Ct. Rs."). They concede that, due to FCI Dublin's closure, "changing factual conditions [] have mooted time-sensitive security concerns justifying the sealing of certain materials." *Id.* at 1.

But Defendants' about-face goes only so far. In sweeping generalities, they argue that certain records should remain under seal because of (1) "significant law enforcement safety and security concerns" and (2) "the Privacy Act" set forth in 5 U.S.C. § 552a(b). *Id.* at 1-2. Neither ground, however, justifies the overbroad reach of Defendants' continued sealing requests. When seeking secrecy, a party must substantiate the need for sealing with more than mere speculation about disclosure's possible risks. Blanket claims unsupported by specific facts "will not, without more, suffice to exempt a document from the public's right of access." *Kamakana v. City & Cnty. of Honolulu*, 447 F. 3d 1172, 1185 (9th Cir. 2006). Defendants have largely failed to meet this burden.

More specifically, Defendants state their generic assertions as to why certain documents should remain sealed in a chart that they append to two pages of cursory argument. But Defendants' chart inexplicably fails to address Proposed Intervenors' request to unseal documents relating to Dkt. Nos. 178, 191, 204, 209, 263, 292. *See* Dkt. No. 317 at 2 (identifying contested records to be unsealed). This chart further omits any response as to Proposed Intervenors' request to unseal trial transcripts (Dkt. Nos. 107, 113, 114, 116) and court orders (Dkt. Nos. 157-1, 252-1, 254-1, 260-1, 264-1, 275-1, 287-1). And even where the chart does acknowledge that certain records should be unsealed, it omits critical

---

[1] No party filed any opposition to Proposed Intervenors' Motion to Intervene.

information. Defendants, for example, state that they will agree to withdraw their request to seal six administrative sealing motions on the ground that these types of motions "should not have been filed under seal," but they fail to explain why three other sealing motions should not be made public by the same logic. *See* Dkt. No. 329 at 3-4 (*compare* Dkt. Nos. 45, 75, 159, 162, 168, 176 *with* Dkt. Nos. 242, 244, 251).[2]

Building from Defendants' chart, Proposed Intervenors concurrently submit Exhibit 1, which sets forth their position as to each of the motions to seal. This exhibit, together with the arguments raised herein on reply, confirm that Defendants have provided inadequate justifications for sealing and are unable to substantiate the necessity of keeping many, if not most, records under seal. Because Defendants have largely failed to meet their burden to justify sealing documents and because the public has a significant interest in information that sheds light on the misdeeds committed at FCI Dublin, Proposed Intervenors respectfully request that the Court order relief consistent with that requested in their Motion to Unseal.

## ARGUMENT

**I.  Defendants' "Institutional Safety" and "Law Enforcement" Arguments Are Unsupported By Specific Facts Demonstrating a Compelling Interest in Sealing**

### A.  The Court Should Reject Defendants' Arguments Relating to Institutional Safety

While conceding that some time-sensitive security concerns have mooted the need to seal documents, Defendants insist on keeping certain documents sealed or redacted because they allegedly "implicate compelling law enforcement safety and security issues." Dkt. No. 329 at 2. Defendants rely on the "rationale proffered by high-ranking agency leadership" to justify their purported security concerns. *Id.* But a close examination of that evidence reveals why it is inadequate to support their overbroad, and now relatively obsolete, arguments for sealing.

---

[2] Because Proposed Intervenors lack access to all of these motions to seal, it is difficult to fully respond to Defendants' present arguments for sealing. *See* Dkt. Nos. 45 (asserting privacy interest and law enforcement sensitive information); 75 (privacy); 162 (privacy); 168 (privacy); 176 (privacy). Proposed Intervenors therefore respectfully seek the Court's leave to provide additional argument, should the Court deem it helpful, once they have had the opportunity to review the improperly sealed motions.

First, Defendants rely on the declaration of William W. Lothrop, the Deputy Director of the Bureau of Prisons ("BOP"). Dkt. No. 236-2. That declaration was submitted specifically in support of a request to seal an *ex parte* communication with the Court. *See* Dkt. No. 235 ("United States' Notice of *Ex Parte* Commc'n"). In the declaration, Lothrop states that he is familiar with the *ex parte* communication at issue and avers that it "contains highly sensitive information" relevant to "the management of FCI Dublin, including details about operational decisions and future planning at the facility." Dkt. No. 236-2 at 1. Lothrop further asserts: "Disclosure of such information to the public, to inmates, and even to opposing counsel would be detrimental to facility management and would increase risk to BOP staff and inmates alike." *Id.*

From this document-specific declaration, Defendants derive an unreasonably broad proposition: namely, that disclosure of *any* information relating to the management of the facility must be sealed. Defendants, for instance, subsequently cite the Lothrop Declaration to move to seal portions of their Rule 60 Motion for Relief and a related exhibit, arguing that disclosure of these papers would harm "the interest of prison security" because the information "relate[d] to the management of FCI Dublin, including details about operational decisions and future planning at the facility." Dkt. No. 258 ("United States' Admin. Mot. to File Under Seal & for In Camera Rev.") at 2 (citing Lothrop Decl.). But, again, the Lothrop Declaration presented an opinion as to a particular communication with which he was personally familiar, not a general opinion about all information potentially implicating FCI Dublin's management. As Plaintiffs cautioned in their opposition to Dkt. No. 258, those "generalized security and prison management justifications could apply to almost any document in the instant litigation and accepting such justification drastically lowers the bar" for secrecy. Dkt. No. 259 ("Pls.' Opp'n to Defs.' Admin. Mot. for In Camera Rev.") at 2; *see also* Dkt. No. 317-2 ("Decl. of Stephen Sinclair in Supp. of Mot. to Unseal") ¶ 15 ("There are a minimal number of documents maintained by correctional agencies, which, if revealed to the public, could threaten the safety and security of a correctional institution.").

Next, Defendants rely on the declaration of Art Dulgov, a former FCI Dublin Warden that BOP replaced in the wake of retaliation allegations and an FBI raid. *See* Dkt. No. 211 ("United States' March 11, 2024 Notice") (informing Court of the removal of certain executive staff); *see also* Michael R. Sisak

& Michael Balsamo, *Warden Ousted as FBI Again Searches California Federal Women's Prison Plagued by Sexual Abuse*, AP News (March 11, 2024), https://tinyurl.com/bdhbw9yh. Defendants had submitted the Dulgov Declaration in support of their response to the Order to Show Cause as to why the transfer of a trial witness had not violated the Court's prior order prohibiting the transfer of such witnesses. *See* Dkt. No. 161 ("United States' Resp. to Order to Show Cause").

Specifically, in the declaration, Duglov states that a document submitted as an exhibit to Defendants' response "contains a reference to [FCI Dublin's] staffing situation, which if disclosed, could jeopardize institutional safety and security." Dkt. No. 161-3 ¶ 6. He further claims that the document could serve as "a reference . . . about staff exercising . . . discretion to make an exception related to [FCI Dublin's] established processes," which if disclosed "would be disruptive to the orderly running of the institution." *Id.* With respect to the individual document in question, staffing concerns and the exercise of staff discretion are no longer relevant because the facility is closed. And with regard to the general premise Defendants derived from this paragraph to justify sealing other documents, Proposed Intervenors note that it is unreasonably broad and could apply to many, if not most, of the documents in this case. *See* Dkt. No. 317 at 16-19 (providing argument and collecting cases in support of unsealing).

Dulgov also opines that a second internal document relating to someone's placement in the SHU was "sensitive" because it "related to the specifics of institution management" and "include[d] preliminary and professional assessment of the situation." Dkt. No. 161-3 ¶ 16. Again, Proposed Intervenors have already addressed why this argument is without merit.  Dkt. No. 317 at 18-19.

Finally, Dulgov avers that SHU housing records should not be disclosed because they may list "sensitive reasons for a person's placement in SHU," "notes about special visitors," or information about another incarcerated person. Dkt. No. 161-3 ¶ 17. Defendants do not explain why redaction of incarcerated persons names is insufficient to protect these privacy interests. And, again, Proposed Intervenors note that the facility is closed, mooting facility-specific security concerns.

Nowhere is Defendants' failure to meaningfully consider Proposed Intervenors' unsealing challenge more apparent than with respect to the Moss Group Report. *See* Dkt. No. 193 (United States'

1   Resp. to Pls.' Admin. Mot. to Consider Whether to File Under Seal) (requesting sealing of Moss Group

2   Report). FCI Dublin's closure has clearly mooted many, if not all, of the government's justifications for

3   keeping this report from the public.[3] In support of their initial request to seal the Report, Defendants

4   argued that, "[i]f the public and inmates had access to the information contained in the Moss Group

5   Report, they could deduce any potential areas of current weakness in facility management and the steps

6   that are being taken to address them." *Id.* at 2-3. Proposed Intervenors fundamentally disagree with this

7   argument and previously discussed it at length. *See* Dkt. No. 317 at 17-18. But even if it was convincing,

8   the argument no longer applies. No "current weakness in facility management" can be exploited in a

9   facility that is empty, nor can any contraband be introduced. Dkt. No. 193 at 2-3. Further, the public

10  interest in this document is particularly high given not just its relevance to the allegations in this case,

11  but the Court's reliance on the information contained in it. *See* Dkt. No. 222 at 11-12 (Order re Mot. for

12  Class Certification; Mot. for Prelim. Inj.; Related Sealing Mots.). Because Defendants cannot

13  demonstrate a compelling reason to keep the Moss Group Report from the public, the Court should

14  unseal it.

15      **B.**    **The Court Should Reject Defendants' Arguments Concerning FOIA and Law**
              **Enforcement-Related Information**

16

17          Defendants also wrongly claim that exemptions under the Freedom of Information Act (FOIA)

18  and caselaw relating to law enforcement privilege shield some of the contested documents from

19  unsealing. Dkt. No. 329 at 2 (citing 5 U.S.C. § 552a(b)(7) and *Shah v. Dep't of Justice*, 89 F. Supp. 3d

20  1074, 1080 (D. Nev. 2015)). Defendants claim that Dkt. Nos. 45, 206, and 292 contain information

21  protected by 5 U.S.C. § 552a(b)(7) or contain "law enforcement sensitive" materials. *Id.* at 3, 5, 7. They

22  also generally argue that "much of [the] information" subject to the Privacy Act  "would not be subject

23  to a [FOIA] request" because it constitutes "records or information compiled for law enforcement

24  purposes" that could "interfere with law enforcement proceedings" and "could reasonably be expected

25  to constitute an unwarranted invasion of personal privacy." *Id.* at 2 (citing 5 U.S.C. § 552a(b)(7)).

26  _____

27  [3] In the same motion to seal, Defendants argued that certain portions of Plaintiff's reply brief should be
    redacted. For the reasons Plaintiffs presented in their opposition to that sealing request, Dkt. No. 203,
    Proposed Intervenors also ask that the brief be unredacted.

28

Defendants' reliance on FOIA exemptions and evidentiary privileges, without more, is misplaced. The Ninth Circuit made clear in *Kamakana* that "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden" to justify sealing documents. 447 F.3d at 1184 (considering claims of multiple privileges, including law enforcement privilege). The *Kamakana* court also explicitly rejected the argument that FOIA exemptions constitute a *per se* compelling reason to keep court documents under seal. *Id.* at 1184 -85.

Even documents normally subject to the "law enforcement" FOIA exemption "are not privileged from public discovery outside of the FOIA context." *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3993147, at *4 (N.D. Cal. June 30, 2015) (citing *Kamakana,* 447 F.3d at 1184–85). "It is unsound to equate the FOIA exemptions" and standards for sealing "because the two schemes serve different purposes." *Kamakana,* 447 F.3d at 1185 (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984)). Afterall, FOIA "is a statutory scheme" that governs public access to federal government documents and "the public's 'need' for a document is unrelated to whether it will be disclosed." *Id.* (citing *Maricopa Audubon Soc'y v. United States Forest Serv.,* 108 F.3d 1082, 1087 (9th Cir. 1997)). In contrast, public access to court documents is based on "the public's right and need to access court proceedings." *Id.* (citing *Friedman*, 738 F.2d at 1344). Accordingly, the Ninth Circuit "will not import wholesale FOIA exemptions as new categories of documents" to which the public right of access does not attach. *Kamakana,* 447 F.3d at 1185.

Unsurprisingly, Defendants fail to cite a single case where a court found that FOIA exemptions or a law enforcement privilege alone constitute compelling reasons to seal documents. Based on the lack of legal support for Defendants' position and absent any facts bolstering specific concerns, the Court should reject Defendants' FOIA and law enforcement-related arguments.

## II.   The Court Should Scrutinize Defendants' Additional Privacy Act Arguments

Proposed Intervenors have made clear that they do not seek the unsealing of records containing sensitive or private information about incarcerated people. Dkt. No. 317 at 7. Based on their current, but limited, insight about unsealed documents and docket entry text, Proposed Intervenors agree that certain

information, such as individual medical records, which have been sealed for privacy reasons should remain sealed. *See, e.g.*, Dkt. No. 75-5 (J.M. Medical Rs.). Proposed Intervenors note, however, that even Plaintiffs contend Defendants' application of the Privacy Act sweeps too broadly. Dkt. No. 194 at 3 ("Plaintiffs disagree that the Declarations contain information subject to the Privacy Act"). And Proposed Intervenors have no reason to doubt that this is the case.

For example, in a motion to file documents under seal, Defendants argued that "information regarding procedures for reporting incidents and how those procedures apply to one specific sexual misconduct allegation" was protected by the Privacy Act. Dkt. No. 206 ("United States' Admin. Mot. to File Under Seal") at 2. But the Privacy Act is inapposite to this analysis. It "prohibits a federal agency from disclosing a record contained in a system of records pertaining to an individual unless the individual requests the information or consents to the disclosure in writing." *Minshew v. Donley*, 911 F. Supp. 2d 1043, 1069 (D. Nev. 2012); *see also* 5 U.S.C. § 552a(a)(5) (defining "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.").

Unlike in the present situation, the Privacy Act, "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency record." *Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597, 600 (9th Cir. 1995), *abrogated on other grounds by Doe v. Chao*, 540 U.S. 614 (2004). "[T]he Privacy Act does not necessarily cover disclosure of information merely because it happens to be contained in the records. Such a broad application of the Act would impose an 'intolerable burden, and would expand the Privacy Act beyond the limits of its purpose, which is to preclude a system of records from serving as the *source* of personal information about a person that is then disclosed without the person's prior consent.'" *Id.* (quoting *Olberding v. United States Dep't of Defense*, 709 F.2d 621, 622 (8th Cir.1983)) (emphasis in the original). Therefore, Defendants' overly broad application of the Act imposes unnecessary restrictions on the public's right to access court documents that do not apply here.

As previously noted, many of the motions to seal that raise Privacy Act arguments remain improperly sealed. *See* Dkt. Nos. 45, 75, 159, 162, 168, 176. The Court has also yet to issue detailed orders explaining its decision to seal any records. Proposed Intervenors therefore respectfully reserve the right to challenge the sealing of specific documents on these grounds until after the Court unseals the motions to seal and issues an opinion explaining to what extent, if any, documents should be redacted or sealed due to Privacy Act considerations. *See* Dkt. 222 at 2, n.2 (granting in part the related sealing motions).

**CONCLUSION**

The public's right of access to court documents and proceedings creates a strong presumption of openness that can only be overcome by compelling interests. The law demands more than unsupported, generalized assertions of harm. Because Defendants have failed to meet their burden and because the public's interest in the misconduct that happened at FCI Dublin is so significant, Proposed Intervenors respectfully request that this Court grant their motion to intervene and also grant their request to unseal court records and protect access to public proceedings.

Dated: July 2, 2024                         Respectfully submitted,

                                            PUBLIC JUSTICE

                                            */s/ Jaqueline Aranda Osorno*
                                            Jaqueline Aranda Osorno (SBN 308084)
                                            Alexandra Z. Brodsky*
                                            Sarah Ortlip-Sommers*
                                            *Pro Hac Vice Forthcoming*

                                            AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                            OF NORTHERN CALIFORNIA, INC.

                                            Angelica Salceda (SBN 296152)
                                            Chessie Thacher (SBN 296767)
                                            Shaila Nathu (SBN 314203)

                                            *Attorneys for Proposed Intervenors*