JESSE LASLOVICH
United States Attorney
MADISON L. MATTIOLI
  MT Bar No. 36411284
ABBIE J.N. CZIOK
  MT Bar No. 55781377
Assistant U.S. Attorneys
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5269 – Madison
       (406) 457-5268 – Abbie
Fax: (406) 457-5130
Email: madison.mattioli@usdoj.gov
       abbie.cziok@usdoj.gov

MARK STEGER SMITH
 MT Bar No. 4160
TIMOTHY A. TATARKA
 CA Bar No. 277219
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin Federal Courthouse
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667 – Mark
       (406) 247-4642 – Tim
Fax: (406) 657-6058
Email: mark.smith3@usdoj.gov
       timothy.tatarka@usdoj.gov

Attorneys for Federal Defendants and
Defendant United States of America.

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; et. al.,<br><br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS; et. al.,<br><br>Defendants. | CASE NO. 4:23-CV-04155-YGR<br><br>**UNITED STATES' REPLY ISO MOTION TO DISMISS** |

Plaintiffs argue with limited analysis that this Court's July 1, 2024 Order captioned in part "Extending the Preliminary Injunctive Relief" resolves Defendants' motion because the "motion to dismiss and to vacate relief was based solely on mootness following the closure of FCI Dublin and the 90-day automatic expiration of relief required by the [Prison Litigation Reform Act] PLRA." (Dkt. 338 at 6.) But the Court's July 1 and 3, 2024 Orders were issued while the government's motion was pending, and therefore were not addressed in that motion. Without waiving any independent objections to those Orders, Defendants respectfully provide the following Reply in Support of its Motion to Dismiss.

/

/

## I. Introduction

Plaintiffs argue that, "[i]n moving to dismiss this case, Defendants seek to circumvent the explicit guardrails established by courts to ensure that parties will not attempt to strategically moot litigation to shield bad acts from court scrutiny." (Dkt. 338 at 6.) But in asking this Court to keep a mooted controversy alive, Plaintiffs seek to extend judicial review beyond subject matter jurisdiction: This Court has already remedied the defects at Dublin and lacks any basis to intervene in BOP operations beyond that facility. Plaintiffs also seek review in violation of the PLRA's mandate "to restrict severely the intrusion of the judiciary into the operation of prisons." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010) (discussing legislative history of the PLRA, 18 U.S.C. § 3626 (PLRA)). As discussed in the government's motion, and reiterated below, this Court lacks subject matter jurisdiction over Plaintiffs' claims for injunctive relief in light of the closure and depopulation of FCI Dublin, and Plaintiffs have failed to carry their burden of providing any evidence to support a contrary conclusion. Because Plaintiffs' Eighth, First, and Fifth Amendment claims (the first three claims in the First Amended Complaint (FAC)) challenge conditions of confinement at FCI Dublin, a facility that no longer confines anyone, this Court must dismiss such claims as moot. (Dkt. 152 at 63–65). Finally, under the plain terms of the PLRA, there is no mechanism to "extend" an order granting a preliminary injunction beyond its statutory expiration. All orders purporting to extend preliminary injunctive relief beyond the expiration of the preliminary injunction are subject to immediate termination under 18 U.S.C. § 3626(b)(2). A stay of discovery is appropriate pending resolution of this dispositive motion.

## II. Argument

### A. Defects in subject matter jurisdiction can be raised at any time.

Defendants moved to dismiss Plaintiffs' claims for injunctive relief for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) rather than 12(h)(3) because the former can be raised at any time, need not be responsive to any pleading, and the standards are the same. *Hamidi v. Serv. Emps. Int'l Union Loc. 1000*, 386 F. Supp. 3d 1289, 1294 (E.D. Cal. 2019), aff'd, No. 19-17442, 2021 WL 4958855 (9th Cir. Oct. 26, 2021) (citing *Johnson v. Cal. Welding Supply, Inc.*, No. 2:11-cv-01669 WBS GGH, 2011 WL 5118599, at *2 (E.D. Cal. Oct. 27, 2011) (applying a single standard to a motion to dismiss pursuant to Rules 12(b)(1) and 12(h)(3)). Regardless of the vehicle, and because it cannot be

waived, the Court has an independent obligation to examine subject matter jurisdiction at all stages of the litigation.

Plaintiffs next erroneously contend that the law of the case prevents the Court from "reconsidering" the issue of subject matter jurisdiction. (Dkt. 338 at 8.) But the law of the case doctrine is a discretionary "'judicial invention designed to aid in the efficient operation of court affairs.'" *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990)), which does not apply to the required inquiry into whether the Court has subject matter jurisdiction. *See Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 805 n.10 (9th Cir. 2020). This makes sense because, as courts of limited jurisdiction, federal courts are under a continuing obligation to confirm that subject matter jurisdiction exists. "A court's '[s]ubject-matter jurisdiction can never be waived or forfeited,' 'objections [to the court's jurisdiction] may be resurrected at any point in the litigation,' and courts are obligated to consider sua sponte requirements that 'go[ ] to subject-matter jurisdiction.'" *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1035–36 (9th Cir. 2013), aff'd and remanded sub nom. *United States v. Wong*, 575 U.S. 402 (2015) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)) (further citation omitted). The closure of Dublin and expiration of the March 15, 2024 preliminary injunction has dramatically shifted the landscape of this case. (*See e.g.*, dkt. 336 at 5.) Regardless of whether the preliminary injunction expired on June 15 or July 4, 2024, the prison's closure and transfer of all adults in custody (AICs) incarcerated there requires re-analysis of this Court's subject matter jurisdiction, irrespective of any prior determinations.

**B.     Voluntary cessation does not vitiate mootness: Disputed practices will not recur.**

Post-closure, this Court no longer possesses subject matter jurisdiction over Plaintiffs' claims for injunctive relief and cannot issue Orders related to those claims for relief because those claims are moot, and Defendants have carried their burden of overcoming the voluntary cessation exception to the mootness doctrine. In support of their Opposition to the government's motion to dismiss, Plaintiffs state that, "Defendants [have not] provided any record evidence to establish that they do not, and will not, continue to violate the rights of the same class members who remain in their custody – particularly not to the high standard set by the voluntary-cessation mootness doctrine." (Dkt. 338 at 6.) But this misstates the operative inquiry. BOP is required only to make clear there is no reasonable likelihood the

challenged practices – an unconstitutional risk of staff sexual assault of female AICs *at FCI Dublin* – will recur. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953) (internal quotations omitted)). A declaration from the agency's second highest officer stating unequivocally: (a) what steps will be taken in the event Dublin is reopened; (b) that the facility will never reopen as a female facility; and (c) that the BOP will continue to adhere to federal law and policy in caring for all AICs, more than satisfies this burden, especially where Plaintiffs have provided no evidence to the contrary. "As the D.C. Circuit has succinctly explained, 'the mere power to reenact a challenged [practice] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be *evidence* indicating that the challenged [practice] likely will be reenacted.'" *Brach v. Newsom*, 38 F.4th 6, 12–14 (9th Cir. 2022), cert. denied, 143 S. Ct. 854 (2023) (emphasis added) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (citation omitted) (footnote omitted)).

Plaintiffs argue their claims for injunctive relief nonetheless survive the closure and depopulation of FCI Dublin because they "seek relief from long-standing policy failures that resulted in inadequate reporting mechanisms, nonexistent or negligent investigations into claims of abuse, deficient medical- and mental-health care, and compromised access to legal services." (Dkt. 338 at 10.) But contrary to what they now allege, Plaintiffs' policy failure claims were predicated (and litigated) not on the existence of deficient national BOP policies but on the *absence of* effective local policies and practices at FCI Dublin to protect female AICs from staff sexual abuse. Nowhere in their amended complaint do Plaintiffs challenge national BOP policies as unconstitutional. *See Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008 (9th Cir. 2023) ("a prisoner's transfer will naturally moot claims for prospective relief "as to conditions at [a former] particular facility," but "does not defeat jurisdiction where a prisoner's injury stems from a system-wide policy.") Rather, their amended complaint challenges BOP's implementation of policies *at FCI Dublin*, resulting in specific unconstitutional conditions of confinement. In just one example, Plaintiffs allege:

> BOP has failed to adhere to PREA regulations. From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and

rampant staff retaliation, its actions and failures to act have created an environment that has exposed, and continues to expose, the people in its custody to an unconscionable risk of sexual violence. As one survivor of staff sexual abuse *at Dublin* remarked at the trial of the former Warden, Ray Garcia, PREA 'really doesn't exist *in Dublin*.' Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

(Dkt. 152 at 22 (emphasis added).) In another example, related to the organizational Plaintiff, California Coalition of Women Prisoners (CCWP), Plaintiffs state:

> …because CCWP has members who are currently, and were formerly, in FCI Dublin, one or more of CCWP's members have been injured as a direct result of Defendants' actions and omissions, including Defendants' ongoing failure to protect individuals from systematic sexual and retaliation, and to ensure affected individuals have access to methods for reporting abuse as well as mental health support; and general failure to meet the duty of 'safekeeping, care . . . [and] protection' as required by 18 U.S.C. § 4042(a)(2), (3) *in regard to those incarcerated at FCI Dublin.*"

(Dkt. 152 at 10 (emphasis added).)

There is *no* record evidence to establish that the rights of class members are currently being violated at any BOP facility, including FCI Dublin, nor have Plaintiffs plead as much in their FAC. Nor is there any evidence in the record to support a conclusion that any facility receiving Dublin AICs lacks local policies and procedures to protect incarcerated individuals from abuse, or that conditions of confinement that were unique to Dublin persist elsewhere. Plaintiffs' claims for injunctive relief cannot survive the closure of FCI Dublin, and diaspora of its AICs, and this Court must dismiss them as moot.

Plaintiffs suggest the Court can extend jurisdiction and follow class members away from Dublin to new BOP facilities, to ensure enactment of remedies previously ordered by the Court. There are at least two problems with this assertion. First, there is no evidence or well-plead claim indicating any deficiency in medical care or psychological services at any destination BOP facilities. If an AIC suffered emotional or psychological trauma as a result of conditions at Dublin, that health concern would warrant treatment at the destination facility without any need of intervention by this Court. If an AIC suffered complications or new health problems because of deficient medical services at Dublin, those problems would be addressed at destination BOP facilities without any order from the Court. There is nothing in the record, and certainly nothing in the FAC, alleging that these facilities have been deliberately indifferent to any such conditions.

1  Second, the Court has never made a merits determination and ordered a final remedy on the basis of such a merits determination. The Court adjudicated preliminary injunction, which was explicitly predicated on probabilities. *See, e.g.*, Dkt. 222 at 42 (finding Plaintiffs "likely to succeed" on Eighth and First Amendment claims); Dkt. 300 at 10 (finding pre-closure conditions of confinement at FCI Dublin "constitutionally suspect"); Dkt. 308 at 2 (noting Special Master tasked with finding evidence of "constitutionally inadequate conditions at FCI Dublin"). Preliminary injunction is intended to prevent the occurrence of irreparable harm until a dispute can be resolved on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). It is not intended to make a party whole pending such a final determination. *Roark v. Individuals of Federal Bureau of Prisons*, 2013 WL 2153944, *4 (E.D.Tex. May 16, 2013) ("Otherwise, the normal procedures of litigation would be short-circuited by the simple vehicle of trying a case by way of a motion for injunctive relief."); *see also Schrier v. University of Co.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005). In short, there is no allegation and no basis to assert constitutional deficiencies at destination facilities, and there is no final order supporting implementation of such a "remedy" even if such deficits were alleged.

**C.      The PLRA constrains judicial review and neutralizes existing orders.**

Section 3626(a)(2) strictly limits the circumstances in which district courts can issue preliminary injunctive relief in civil actions challenging prison conditions, and states that such relief "**shall automatically expire** on the date that is 90 days after its entry, **unless** the court makes the findings required under subsection (a)(1) for the entry of prospective relief **and** makes the order final before the expiration of the 90-day period." (emphasis added). The black letter of the statute indicates clearly that the 90-day period begins at the entry of the preliminary injunctive relief. This Court's March 15, 2024 Order was very clearly the "entry of preliminary injunctive relief". Indeed, it is captioned as "Granting in Part and Denying in Part the Motion for Preliminary Injunction," and it granted much of the relief Plaintiffs sought, including appointment of a special master. (Dkt. 222.) Nothing in the PLRA allows courts to designate ensuing dates – after entry of a preliminary injunction order – as ad hoc "entry" dates.[1] No case precedent sanctions such an approach. Such an interpretation would enable courts to

---

[1] The statutory limit on the Court's power to issue preliminary injunction is a reflection of

serially evade the PLRA's explicit and non-discretionary 90-day limit on preliminary injunctions, simply by entering another ensuing order implementing some facet of relief. It would also be antithetical to the PLRA's entire *raison d'etre*, that is, expediting and limiting judicial review of prison administration. *Georgia Advoc. Off.*, 4 F.4th at 1211. Here, this Court's March 15 Order started the 90-day clock pursuant to § 3626(a)(2).

This Court's April 5, 2024 Order appointing the special master also cannot constitute the entry of preliminary injunctive relief as defined in § 3626(a)(2) because the "appointment of a Special Master…is simply a means of achieving previously ordered relief, **rather than a form of relief itself**." *United States v. Territory of the Virgin Islands*, 884 F. Supp. 2d 399, 409 n. 5 (D.V.I. 2012) (emphasis added) (citing *Coleman v. Wilson,* 933 F.Supp. 954 (E.D. Cal. 1996) (explaining that the compensation of a Special Master is not prospective relief within the meaning of the PLRA because a Special Master is a means for achieving relief, not a form of relief itself); *Madrid v. Gomez,* 940 F.Supp. 247, 250 (N.D. Cal. 1996) (finding that neither the payment nor the appointment of a Special Master constitutes prospective relief for PLRA purposes because a Special Master "is simply a device utilized by the Court to assist in the formulation of appropriate relief or to monitor relief that is ordered"); *Williams v. Edwards,* 87 F.3d 126, 128, 133 (5th Cir.1996) (noting that the appointment of an expert to investigate and report to the court on the conditions and bed space problems in Louisiana prisons did not constitute prospective relief under the PLRA)).

Section 3626(a)(2) is unambiguous. "When the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *See Ahlman v. Barnes*, 20 F.4th 489, 493 (9th Cir. 2021) (quoting *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021)) (cleaned up and internal quotations omitted). "The statutory text of the PLRA unambiguously states that any preliminary injunction expires automatically after 90 days unless the district court makes subsequent required findings and makes the order final." *Id*. As argued in the motion to dismiss, this section "contemplates two separate proceedings. The district court must make the initial set of need-narrowness-intrusiveness findings [under § 3626(a)(2)] after a hearing to impose the preliminary injunction in the first instance."

---

Congress's power to "determine a lower federal court's subject-matter jurisdiction," *Bowles v. Russell*, 551 U.S. 205, 211 (2007), and therefore cannot be waived.

*Georgia Advoc. Off. v. Jackson*, 4 F.4th 1200, 1213 (11th Cir. 2021), vacated, 33 F.4th 1325 (11th Cir. 2022).[2] "Then, under the 'unless clause,' the court must make a second set of findings [under § 3626(a)(1)(A)] before converting the preliminary injunction into a permanent injunction," which must happen within 90 days. *Id*. Here, the Court completed neither of these steps prior to the June 15 expiration of the preliminary injunction.

As the Eleventh Circuit recognized, "'making' a preliminary injunction order final is not the clearest way to speak of entering a permanent injunction," *id*. at 1214, but "[i]t is not unusual to speak of a preliminary injunction merging with, becoming, or being converted into a permanent injunction." *Id*. (collecting cases). The court also acknowledged "that 90 days is a short amount of time to reach a final decision on the merits of a complex civil case about prison conditions. Nonetheless, that is what the text of § 3626(a)(2) calls for." *Id*. at 1215. Because this Court did not make the required findings under § 3626(a)(1)(A) and enter a permanent injunction prior to June 15, 2024, the Order granting preliminary injunctive relief – including the appointment of the Special Master – has expired. (*See* dkt. 326 at 22.)

As argued in the motion to dismiss, there is no mechanism to "extend" an order granting preliminary injunctive relief under the PLRA. (Dkt. 326 at 23.) Congressional alterations to the traditional "landscape of injunctive relief in prison cases further the PLRA's twin aims of expediting prison litigation and ending judicial micromanagement of prison systems." *Georgia Advoc. Off.*, 4 F.4th at 1211. This "model avoids unnecessary judicial oversight by incentivizing prisons to redress violations on their own. A prison that wishes to avoid being subject to a permanent injunction and the attendant judicial oversight will have good reason to reform its policies during the 90-day period in which the preliminary injunction is in place." *Id*. "Because circumstances may change during the 90-day period in which the preliminary injunction is in place, this requirement furthers the PLRA's goal of eliminating unnecessary and overbroad prison injunctions." *Id*. at 1214.

Importantly, where a defendant "reforms its practices to comply with the terms of [an injunction issued pursuant to the PLRA] within the 90 days," and "the district court is satisfied that the defendant's

---

[2] Because the parties settled and mooted this case before the mandate issued, the published opinion was vacated, and the appeal dismissed as moot. *Georgia Advoc. Off. v. Jackson*, 33 F.4th 1325, 1326 (11th Cir. 2022). The opinion is cited for persuasive value.

reforms are in earnest and sufficiently enduring, it should ordinarily let the preliminary injunction expire on the 90th day and dismiss the case, since a permanent injunction would no longer be 'necessary to correct the violation of the Federal right.'" *Georgia Advoc. Off.*, 4 F.4th at 1210 (citing § 3626(a)(1)(A), and *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530–31 (11th Cir. 2013) (recognizing that a defendant's voluntary cessation of challenged conduct can sometimes moot a suit for injunctive relief)). BOP's closure of FCI Dublin represents exactly the type of change in circumstances rendering a permanent injunction unnecessary.

### D. The orders purporting to extend relief beyond the expiration of the preliminary injunction are subject to immediate termination under 18 U.S.C. § 3626(b)(2).

To the extent the court has issued orders that purport to extend beyond the expiration of the preliminary injunction, they fail to satisfy either the judicial standards for a preliminary injunction or the specific requirements of the PLRA.

Neither Dkt. 300 nor Dkt. 336 purport to be new preliminary injunctions that independently meet the standards of 18 U.S.C. § 3626(a)(2). Nor could they be so considered. As an initial matter they fail to comply with Rule 65(a)(1), which guarantees an opportunity to be heard prior issuance of a preliminary injunction. *See* 18 U.S.C. § 3626(a)(2) (allowing preliminary injunctions only "to the extent otherwise authorized by law"). This failure has practical consequences: in Dkt. 336 the Court made its "narrowly tailored" finding based in part upon the statement that "the Court has not heard from the government that the relief ordered is adversely impacting BOP's ability to operate," *id.* at 7, but without providing the government the opportunity to address the factors prior to the issuance of the order.

Nor do either of the orders hold Plaintiffs to their burden of making a "clear showing" of meeting the four factors required for the "extraordinary remedy" of injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In particular, neither order addresses likelihood of success on the merits under the standard of *Farmer v. Brennan*, which requires a showing that there is "a contemporary violation of a nature likely to continue." 511 U.S. 825, 845 (1994). Indeed, Plaintiffs cannot be said to have made a clear showing on any factor, because Plaintiffs never moved for a new preliminary injunction.

Again, this procedural failure leads to factual and legal errors. Because the "findings" made in Dkts. 300 and 308 were not tested through the adversarial process, they are not based on evidence in the record which can be subject to independent review. As the government previously noted, the PLRA precludes *ex parte* findings by a special master and proposed findings of fact "shall be made on the record." 18 U.S.C. § 3626(f)(6)(B). Yet in Dkt. 300, the Court's factual findings expressly rely on observations and interviews nowhere included in the record, *id.* at 5-6 (recounting "observ[ations]" of special master; deferring to Special Master's conclusions "based on extensive interviews and review of documents"). The fact that these statements are not supported by facts in the record undermine the ability of the parties to contest them when given an opportunity to be heard and limit the ability of a higher court to review for error. *See* Fed. R. Civ. P. Rule 52(a)(2) ("In granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions that support its actions.").

Finally, the orders fail to meet the particular requirements of 18 U.S.C. § 3626(a)(1) and are thus subject to termination under § 3626(b)(2). As discussed above, while § 3626(a)(2) requires a showing that the order is necessary to correct the harm the court finds requires preliminary relief, § 3626(a)(1) requires the finding of a constitutional violation. To the extent that the post-closure orders rely on pre-closure findings, they fail to support a "contemporary," i.e., post-closure, finding of a constitutional violation. *See Farmer*, 511 U.S. at 845.

These orders are subject to immediate termination and no further preliminary or injunctive relief is appropriate without an opportunity to be heard, fact finding based on evidence in the record, and injunctive and PLRA findings based on contemporary conditions of confinement at all destination facilities.

### E. Discovery should be stayed pending resolution of Defendants' motion.

In taking a preliminary peek at Defendants' motion to dismiss and taking the factual allegations in the FAC as true, it is clear that Plaintiffs have not adequately pled – nor could they prove – subject matter jurisdiction in light of changed circumstances. They have not alleged Eighth, First, or Fifth Amendment claims related to conditions of confinement at any facility other than FCI Dublin. And Plaintiffs' opposition to the motion to dismiss does not suggest that they could amend the amended complaint to allege additional jurisdictional facts if given the chance. Nor do Plaintiffs seek leave to

amend in the event the court determines their jurisdictional allegations are deficient. In short, discovery is clearly contraindicated based on the mootness of this controversy following the closure of FCI Dublin.

If this Court declines to issue an order staying discovery pending resolution of the motion to dismiss, any discovery should be limited to current conditions of confinement at receiving facilities within the narrowly defined categories reflected in Dkts. 300 and 308.

Dated this 9th day of July, 2024.

                JESSE A. LASLOVICH
                United States Attorney

                /s/ *Madison L. Mattioli*
                MADISON L. MATTIOLI
                ABBIE J.N. CZIOK
                MARK STEGER SMITH
                TIMOTHY A. TATARKA
                Assistant U.S. Attorneys
                Attorneys for Federal Defendants