| | |
|---|---|
| ERNEST GALVAN – 196065<br>KARA J. JANSSEN – 274762<br>ADRIENNE SPIEGEL – 330482<br>LUMA KHABBAZ – 351492<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830<br>Email: egalvan@rbgg.com<br>kjanssen@rbgg.com<br>aspiegel@rbgg.com<br>lkhabbaz@rbgg.com<br><br>SUSAN M. BEATY – 324048<br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>1999 Harrison Street, Suite 1800<br>Oakland, California 94612-4700<br>Telephone: (510) 679-3674<br>Email: susan@ccijustice.org | OREN NIMNI[*]<br>Mass. Bar No. 691821<br>AMARIS MONTES[*]<br>Md. Bar No. 2112150205<br>RIGHTS BEHIND BARS<br>416 Florida Avenue N.W. #26152<br>Washington, D.C. 20001-0506<br>Telephone: (202) 455-4399<br>Email: oren@rightsbehindbars.org<br>amaris@rightsbehindbars.org<br><br>STEPHEN S. CHA-KIM[*]<br>N.Y. Bar No. 4979357<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York 10019-9710<br>Telephone: (212) 836-8000<br>Email: stephen.cha-kim@arnoldporter.com<br><br>CARSON D. ANDERSON – 317308<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>3000 El Camino Real<br>Five Palo Alto Square, Suite 500<br>Palo Alto, California 94306-3807<br>Telephone: (650) 319-4500<br>Email: carson.anderson@arnoldporter.com<br><br>[*] Admitted *pro hac vice* |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al.,<br><br>Defendants. | Case No. 4:23-cv-04155-YGR<br><br>**PLAINTIFFS' RESPONSE TO UNITED STATES' NOTICE OF OBJECTIONS TO SPECIAL MASTER REPORT**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Trial Date: None Set |

# INTRODUCTION

Defendants' objections to the Special Master's Report fail for three independent reasons. First, their arguments that the Special Master's Report is invalid under Rule 53 and the PLRA overread the applicable law and misconstrue the history of this case. Second, the evidence submitted by Defendants in support of their factual challenges is invalid and self-serving; it must be struck from the record. Third, even if Defendants' evidentiary submissions were proper, they would still be incorrect or irrelevant to the Special Master's actual findings, and they should not sway this Court from adopting the Report properly produced by a well-appointed neutral. For these reasons, and because the Special Master's Report is vital well-informed evidence of the conditions facing the certified class members, this Court should overrule Defendants objection and adopt the Special Master's Report. Alternatively, the Court can address Defendants' objections at the upcoming evidentiary hearings which the Court has tentatively scheduled for September 2024.

## I. DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT ARE UNAVAILING.

Defendants launch a confused series of procedural and substantive assaults on the validity of Special Master Still's Report. None are availing. Defendants assert that the Special Master had no authority to issue her report under Rule 53 and that the Report does not comport with the requirements of the PLRA.

Special Masters, once duly appointed, have broad and flexible powers unless they are limited by the appointing Court's orders. *See* Fed. R. Civ. P. 53(c) (stating that unless directed otherwise by the court an appointed master has the authority to regulate all proceedings, take all appropriate measures to perform assigned duties fairly and effectively, and compel, take and record evidence if conducting hearings). In appointing Special Master Still this Court ordered that "Ms. Still and her team shall have full access to FCI Dublin, all its records, and all physical facilities as necessary to provide the Court with the information necessary to address the issues raised in the Order, both in terms of assessment and implementation." ECF 248 at 2 (only placing a limit on her ability to engage in *ex parte* communications with the attorneys of the parties and to conduct hearings herself, noting that as of April 5 there was not yet "a need to make findings of

fact"). The Order also explicitly allowed the parties to object within five business days of the order, and Defendants did not object. 248 at 2:14-15.

Despite this, Defendants argue that Special Master Still's powers are so constrained that she is not even allowed to issue a report. This argument fails on the facts and the law. The Report is nothing if not "information necessary to address the issues raised in the Order" and includes both assessment and implementation recommendations as contemplated by the Court. The Court's Order, and the Report, therefore comply with the scope limitations of Rule 53(b). Fed. R. Civ. P. 53(b). Rule 53(e) further provides that "[a] master must report to the court as required by the appointing order. The master must file the report and promptly serve a copy on each party, unless the court orders otherwise." *Id.* 53(e). That is, again, exactly what Special Master Still's Report does: it reports to the Court as guided by the appointing order and was served on the parties.

To the extent further guidance was necessary as to the form of that information, the Court provided it. The Court repeatedly discussed the activities of the Special Master, including that the Special Master would be drafting a report in the frequent hearings conducted in the weeks following the announced closure of Dublin. *See e.g.* ECF 260. Those hearings also provided ample opportunities for the parties to be heard, as they often were, on a range of subjects.

Instead of focusing on the Order appointing Special Master Still, Defendants focus on this Court's May 20, 2024 Order, ECF 308, and challenge its propriety. *See* Def. Obj. at 3. But this is a red herring. The May 20 Order simply stated what the parties had well understood: that a report was being prepared. ECF 308 at 2. There is no need to analyze this Order under Rule 53(b) as Defendants suggest because this was not an order appointing the Special Master in the first instance and did not otherwise modify the duties of the Special Master beyond permitting the parties to depose her in regard to her report, which did not modify her duties. This Court's order appointing the Special Master, ECF 248, allowed for the production of a report well before that, and the court affirmed that authority in subsequent hearings. Beyond that, the May 20 Order outlined the new role the Special Master would take on *following* the issuance of the report. It appointed her as Court Monitor, which is not subject to the PLRA, because the PLRA does not govern the appointment of Court Monitors as they do not conduct quasi-judicial functions. *See*

1 | Dkt. 338 at 16:4-27.

2 |     Regardless, to the extent the May 20 Order is subject to analysis under Rule 53, it is 53(f) not (b) that applies. 53(f)(1) provides, "[i]n acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). The Court's orders regarding the report comply with Rule 53(f). Notice of the Report was amply given, both parties were provided with the Report, Defendants had the opportunity to object, and the Court has scheduled evidentiary hearings regarding the content of the Report.

    Even if Defendants were correct in their characterization of this Court's Orders regarding the Special Master, nothing in Rule 53 or any of the case law cited by Defendants states that a failure to identify certain categories of material for record preservation invalidates the entirety of a Special Masters Report. Defendants cite to the advisory committee notes to Rule 53 and two cases in support of their position regarding the special master's record. None of these even support Defendants' claim that a special master must file a complete record in all cases. The advisory committee's notes to Rule 53 expressly contemplate circumstances where the master need not file materials publicly and can instead provide the relevant materials only to the court, noting "[c]onfidentiality is important with respect to many materials that may properly be considered by a master." Fed. R. Civ. P. 53 advisory committee notes. Defendants next cite *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014), Defs' Obj. at 3, but that case has no bearing on special masters, as no special master was contemplated or appointed. The quoted sentence in Defendants' brief concerned the Ninth Circuit's standard of review when considering a *district court*'s factual findings. *See La Quinta*, 762 F.3d at 879 (trademark infringement action involving appeal of a permanent injunction). The Court has the authority to determine preservation of materials, Fed. R. Civ. P. 53(b), and, as a practical matter the Special Master's Report is clear as to what evidence it based its findings upon. Defendants have even been granted the opportunity to depose Special Master Still regarding the production of the report, and the Court has now set evidentiary hearings on the matter a well. Dkt 308 (allowing for deposition); Dkt. 336 (setting

evidentiary hearings).  Defendants' citation to *Sukumar v. Direct Focus, Inc*., is premature, as the Court here has set evidentiary hearings, so Defendants will have an opportunity to be heard.  *See* Defs' Obj. at 4; *Sukumar v. Direct Focus, Inc*, 349 F. App'x 163, 165 (9th Cir. 2009) (affirming district court's appointment and findings of the special master). Defendants' objections regarding record materials are even less effective because it is *Defendants* who provided the vast majority of documentary evidence to the Special Master.  Defendants are aware of precisely what they provided to her and what her activities were within a facility that Defendants manage.  The radical remedy proposed by Defendants, wholesale rejection of the Report, is simply not justified by the applicable rules.

Turning to the PLRA, Defendants only cursorily reference the requirements of the PLRA and entirely misunderstand the operative requirements.  Defendants cite provisions of the PLRA various times in the main body of their brief but provide no analysis for why these citations are relevant.  For example, Defendants cite 18 U.S.C. § 3626(f)(1)(A) which "provides for a 'disinterested and objective' special master to hold hearings and prepare proposed findings of fact…" Defs Obj. at 2, 3.  But that provision is irrelevant to their objections.  No hearings were conducted by the Special Master.  To the extent Defendants are arguing that the Special Master is *required* to conduct hearings pursuant to the PLRA, that argument is belied by the clear text which states: "the court may appoint a special master who shall be disinterested and objective and who will give due regard to the public safety, to conduct hearings on the record and prepare proposed findings of fact." 18 U.S.C.A. § 3626. The "may" in this section indicates that a Court is not bound to appoint a special master to conduct all such tasks.

To the extent Defendants are arguing that Special Master Still is not "disinterested and objective," that contention falls flat.  Defendants suggest that "rather than making objective findings, the special master was given '[t]he principle goal' of 'captur[ing] and document[ing] evidence of constitutionally inadequate conditions.'" Def. Obj. at 3-4 (citing Dkt. 308 at 2). Their assertion is contradicted by the chronology of this case and by the complete sentence Defendants' selectively quoted.  In its May 20 Order, the Court stated, "The principal goal of [Special Master Still's] efforts is to capture and document evidence of the constitutionally inadequate conditions at

FCI Dublin *identified by the Court in its preliminary injunction order*. (Dkt. No. 222.) As such, the Court confirms that Still's work towards these goals is encompassed with her appointment as Special Master and is subject to 18 U.S.C. § 3626(f)." Dkt. 308 at 2 (emphasis added). The Court has already found constitutionally inadequate conditions. That the Special Master was appointed "to provide the Court with the information necessary to address the issues raised in the Order" so finding does not make the Special Master unobjective. The only case Defendants cite regarding an objective special master is distinct, as it involved the appointment of a special master authorized to conduct hearings. *See* Defs' Obj. at 3-4; *Alberti v. Klevenhagen*, 660 F.Supp. 605, 611 (S.D. Tex. 1987). Here, by contrast, the Court will be conducting the evidentiary hearing regarding the Special Master's Report. Special Master Still, moreover, was appointed after this Court conducted a review of candidates from each side, with counsel for each side present, as required by the PLRA. That process revealed Wendy Still to be the most qualified candidate of those available, and Defendants did not object to her appointment on any basis. Defendants' other citation to the PLRA appears when they attempt to relitigate the issues presented in their motion to dismiss, Def. Obj, at 6., but this too is irrelevant to their objection. The status of the Special Master's Report is entirely independent of whether the ongoing injunctive relief in this matter is void or moot.

## II. BOP'S FACTUAL OBJECTIONS TO THE SPECIAL MASTER REPORT SHOULD BE STRICKEN OR AFFORDED LITTLE WEIGHT.

Defendants rely entirely on unsworn narrative objections from lay declarants to refute the factual allegations in the Special Master's Report and introduce voluminous documents without including declarations from the relevant individuals authenticating or establishing personal knowledge of the procedures or documents referenced in the objections. The narratives contained in Exhibit 1 and documents attached in support are inadmissible and should either be excluded or afforded little weight in analyzing the Special Master's report. The Court has now set evidentiary hearings and ordered pre-hearing discovery as to Defendants' objections and Defendants' evidence can be properly presented and considered as part of that process. ECF 336 at 8:3-12.

All of the objections contained in Exhibit 1 are based on narrative by lay witnesses. Rule 602 requires that a "witness may testify to a matter only if evidence is introduced sufficient to

support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge is defined as "knowledge produced by the direct involvement of the senses." *United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014); *see also Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (holding that witness lacked personal knowledge of "events that she did not in fact witness or was not in a position to perceive on the night in question"). This requirement is met when a "witness can demonstrate firsthand knowledge or observation." *Id*. at 864; *see also Flintkote Co. v. Gen. Acc. Assur. Co.*, 410 F. Supp. 2d 875, 884 (N.D. Cal. 2006); *Anhing Corp. v. Thuan Phong Co.*, No. 13-CV-05167, 2014 WL 11456533, at *4 (C.D. Cal. Oct. 24, 2014). When testimony includes an out of court statement made by another person, personal knowledge requires that "first, the witness who testifies must have personal knowledge of the making of the out-of-court statement, and second, the person who made the out-of-court statement must have had personal knowledge of the events on which he based his statement." *United States v. Owens-El*, 889 F.2d 913, 915 (9th Cir. 1989). While the burden on a witness is "minimal," district courts have used this standard to exclude testimony as to events where "reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotations omitted). Personal knowledge can be "acquired through [a person's] position[] and performance of [his] job duties," *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006), but courts give reduced weight to a declarant's statement where the court has "serious[] doubt" that a person in the declarant's position within the defendant company would have sufficient knowledge of the matters to which he attested. *Carol Cable Co. v. Grand Auto, Inc.*, No. 87-CV-1036, 1987 WL 14544, at *4 (N.D. Cal. Apr. 24, 1987). That serious doubt exists here.

None of the testifying witnesses provide declarations establishing personal knowledge of their statements in Exhibit 1 or of the documents attached as Exhibits 3 (Mulcahey), 4 (Lamirand), 5 (Graham), 6 (Cleland), or 7 (Gilliam). While the Sutton Declaration claims that the documents are "█████████████████████████████████████," the documents themselves do not reflect that. Dkt 332-3, Ex. 2 at 3. Exhibit 3 shows that it was generated by Dr. Mulcahey, but

this establishes nothing more than that she printed the document. *See e.g.* ECF 332-3, Ex. 3, Attachments 9-14 at 140-254.  There is no evidence or sworn declaration to establish that she inputted the information or interacted with it beyond opening it to print.  Other attachments in Exhibit 3 do not reference Dr. Mulcahey at all.  Dkt 332-3, Ex. 3, Attachments 2-8 at 87-137.  In Exhibit 4, most documents do not reference Lamirand at all.  *See e.g.* ECF 332-3, Ex. 4, Attachments 1-4 at 1-51.  No evidence or sworn declaration has been submitted to establish that he contributed to preparing, writing, or distributing the documents, save for one email sent from his address.  ECF 332-3, Ex. 4, Attachment 12 at 88.  Exhibit 5 does not reference Graham beyond listing her as a member of the HR team.  ECF 332-3, Ex. 5 at 7.  Many documents in Exhibit 6 do not reference Cleland and are clearly written and signed by other individuals.  *See e.g.* ECF 332-3, Ex. 6, Attachment 2 at 99, Attachments 13-14 at 249-257, Attachment 18 at 402.  Some documents in Exhibit 6 even show that they were printed by other individuals, F. Assadi and Monte Wilson. *See e.g.* ECF 332-3, Ex. 6, Attachment 1 at 12-13.  Most documents in Exhibit 7 do not reference Gilliam and state that they were approved of by other people.  *See e.g.* ECF 332-3, Ex. 7, Attachment 1 at 1, Attachment 2 at 22.

   Additionally, under Rule 603, "witnesses must give an oath or affirmation to testify truthfully." Fed. R. Evid. 603.  "Any statement indicating that the deponent is impressed with the duty to tell the truth and understands that he or she can be prosecuted for perjury for failure to do so satisfies the requirement for an oath or affirmation." *Gordon v. State of Idaho*, 778 F.2d 1397, 1400 (9th Cir. 1985).  A written statement signed "under penalty of perjury satisfies the standard for an oath or affirmation, as it is a signal that the declarant understands the legal significance of the declarant's statements and the potential for punishment if the declarant lies." *United States v. Bueno-Vargas*, 383 F.3d 1104, 1111 (9th Cir. 2004).  While Defendants include a declaration from counsel purporting to authenticate the record as business records that is not sufficient as Defendants have failed to provide any declarations from the testifying witnesses themselves establishing personal knowledge of the documents or with a statement that they are testifying truthfully as to the documents contents and purported relevance. *See Latman v. Burdette*, 366 F.3d 774, 786-87 (9th Cir. 2004) (declining to admit business records on the basis of an attorney

declaration as the attorney had no personal knowledge as to the authenticity of the documents and relied on third party information), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014).

Finally, many of the narratives in Exhibit 1, and documents attached in Exhibits 3-7 contain hearsay in violation of the Federal Rule of Evidence 802 which provides that "'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted' is not admissible absent an applicable exception." *United States v. Sine*, 493 F.3d 1021, 1035 (9th Cir. 2007). This is intended to "preclude all parties from introducing unreliable, out-of-court statements for the truth of the matter asserted." *Hemphill v. New York*, 595 U.S. 140, 155 (2022). No exceptions to the hearsay rule apply to Defendants' Exhibits. In Graham's section of Exhibit 1, she relays the explanations of three different housing unit counselors. ECF 332-3, Ex. 1 at 30. Exhibit 3 contains emails written by individuals other than Dr. Mulcahey. ECF 332-3, Ex. 3, Attachment 16 at 285. Exhibit 4 includes emails written by individuals other than Lamirand. ECF 332-3, Ex. 3, Attachment 12 at 87-89. Exhibit 6 contains requests written by inmates and responses and emails written and signed by staff other than Cleland. See e.g. Dkt 332-3, Ex. 6, Attachment 2 at 99, Attachments 13-14 at 249-257, Attachment 18 at 402. Absent a showing that these documents meet an applicable exception, which Defendants have not shown, they should be stricken or afforded little weight.

To the extent the Court considers BOP's evidence its objections should fail as they are frequently unsupported by the evidence, unresponsive to the Special Master's findings, are self-contradictory and unsupported. Attached to this brief, as Appendix A, is a chart walking through each one of Defendants substantive objections and describing why those objections are invalid. Declaration of Kara Janssen (Janssen Decl) ¶ 3, Appendix A. █████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ But on its face that is not credible. It is unlikely ███

1 ████████████████████████████████████████████
2 ████████████████████████████████████████████
3 ████████████████████████████████████████████
4 ██████████████████████ Objections such as these do not withstand even the barest scrutiny.
5 To the extent the Court evaluates such objections, they should be overruled.

## CONCLUSION

For the foregoing, reasons Defendants' objections to the Special Master's report should be rejected and, in the alternative, can be addressed at the upcoming evidentiary hearings.

DATED:  July 12, 2024                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ *Kara Janssen*
     Kara J. Janssen

Attorneys for Plaintiffs