IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>Defendants. | CASE NO. 4:23-CV-04155-YGR<br><br>DECLARATION OF PATRICK DEVENEY |

I, Patrick Deveney, hereby declare as follows:

1. I am currently the Associate Warden and Prison Rape Elimination Act (PREA) Compliance Manager for the United States Department of Justice (USDOJ) Federal Bureau of Prisons (BOP), Federal Correctional Institution (FCI) at Dublin, CA. I assumed these positions in July 2022. Prior to assuming these positions, I served as Associate Warden, Federal Detention Center, SeaTac, WA; Program Review Management Analyst, Central Office, Washington D.C.; Acting Chief, American Correctional Association (ACA)/PREA Audit Section, External Auditing Branch, Program Review Division, Central Office, Washington, D.C.; Unit Manager, Federal Medical Center, Devens, MA; Case Manager, FCI Berlin, NH; Acting Camp Administrator, FCI Berlin, NH; and Correctional Officer, FCI Fort Dix, NJ. I started my career in the BOP in 2011.

2. As PREA Compliance Manager, I maintain responsibility for the Sexually Abusive Behavior Prevention and Intervention Program. I provide supervisory oversight to ensure the coordination of institution departments in prevention, detection, intervention, and response, as specified in this Program Statement. I work with Supervisory staff that serve as PREA points of contact in key departments including Correctional Services, Psychology Services, and Health Services, to assist me with the implementation of PREA policy.

3. As Associate Warden, I also supervise Computer Service, Employee Development, Facilities, Financial Management, Food Service, Health Services, Human Resources, Labor Management Relations, Safety, and Trust Fund. I routinely interact with both staff and inmates daily, and personally monitor various areas and operations throughout FCI Dublin. I serve on the Executive Team and provide input to the Warden on various institutional matters. I also serve as the Acting Warden when the Warden is on leave.

4. On January 31, 2024, in my capacity as PREA Compliance Manager, I received notification of a new PREA allegation against staff from inmate B█████, C███, Reg. No. ████████. I initiated PREA protocols. While protocols were ongoing, I received verbal notification that inmate Backman may have been coached into filing a false PREA allegation against staff by inmate F████, R████, Reg. No. ████████, to help secure Compassionate Release from BOP.

5. Backman's request for release stated, among other things, "1) I am a victim of sexual abuse by an officer that has been indicted, 2) I am suffering with breathing problems due to the mold/asbestos in the housing units, [and] 3) several laws have changed that I believe would allow me to have a reduced sentence."

6. On January 31, 2024, I read a BOP memorandum from staff psychology, indicating that R.F. told C.B. that she had a PREA allegation to report that C.B. "did not know" was PREA. Since B█████'s statement included verbatim recollection of a PREA allegation with nearly identical English language employed by R.F. from three years prior, I questioned the validity of the PREA allegation.

7. I knew that C.B. was familiar with what might constitute a sexual allegation because she was convicted of sex trafficking by force, fraud, or coercion. Additionally, C.B. speaks and writes in

broken English, which I knew from having communicated with and received prior emails from her.

8. I knew that R.F. previously received $1,000 on at least one occasion from an inmate to assist her with legal paperwork.

9. I had previously received unconfirmed reports that inmate R.F. has filed mold/asbestos claims at every facility for which BOP designated her during her term of incarceration.

10. BOP received additional documentation that inmate R.F. had intimidated/harassed other inmates that testified on behalf of FCI Dublin in the January 2024 Evidentiary Hearing.

11. This information, coupled with inmate R.F.'s underlying thirty-year criminal conviction for Conspiracy to Commit Healthcare Fraud; Wire Fraud; & Heath Care Fraud Aiding and Abetting, led me to recommend an SIS investigation.

12. SIS staff are trained in conducting investigations to obtain facts and annotate recommendations for management of individuals in BOP Custody. SHU placement is recommended until SIS staff determine how best to manage individuals under SIS investigation who threaten the orderly running of an institution. The SIS investigation into R.F. would inform whether R.F. had coached this inmate into filing a false allegation against staff and the agency or, conversely, that she did not assist this individual in filing a false allegation, and how best to manage her at FCI Dublin.

13. As a result of the report that inmate R.F. had possibly coached this inmate to file a false PREA allegation against staff, I notified the Warden on January 31, 2024, of events concerning this PREA allegation.

14. In a meeting between the Warden, Acting Associate Warden of Programs, Legal and myself, staff collectively determined an investigation into inmate R.F.'s involvement in assisting inmates to file false PREA allegations was warranted to ensure the safety, security, and orderly running of the institution. Pending the outcome of an SIS investigation, BOP staff placed inmate R.F. into SHU. R.F.'s placement in SHU was not directed by Lt. Baudizzon nor anyone in the SIS department.

15. When BOP staff placed inmate R.F. in SHU on January 31, 2024, she immediately announced a Hunger Strike and elected to act uncooperatively toward staff that attempted to meet her needs. Within 48 hours of inmate R.F.'s placement in SHU, nine other inmates followed R.F.'s lead and elected to begin Hunger Strikes creating greater concerns for the wellbeing of the individuals in our custody and care.

16. Based on the number of inmates on hunger strike in SHU, BOP staff determined to open an additional investigation to uncover whether inmate R.F. had started to orchestrate a Group Demonstration with other inmates in SHU to remain on Hunger Strike. The SIS investigation would assist us in obtaining the facts to determine what was occurring with the inmates on Hunger Strike. Based on the safety, security, and orderly running of the facility, the Western Regional Office was notified, and it concurred that inmate R.F. should be transitioned to temporary segregation (Tran-seg) to Metropolitan Detention Center, Los Angelos on February 6, 2024, where she would remain pending the outcome of this investigation.

17. The hunger strike officially concluded by the afternoon of February 6, 2024, as all nine inmates had resumed eating again. The SIS investigation concluded that there was no common purpose among the inmates who participated in the hunger strikes.

18. BOP staff did not initially place R.F. in SHU for her possession of two-inch screws. BOP never communicated with R.F. that her SHU placement had anything to do with possessing two-inch screws.

19. On February 14, 2024, FCI Dublin received an unannounced judicial visit from Judge Yvonne Gonzalez-Rogers. Upon conclusion of the visit, Judge Gonzalez-Rogers notified BOP of violating the Court Order not to transfer any inmates involved in the Evidentiary Hearing. Within 48 hours of Judge Gonzalez-Rogers' visit, BOP had returned inmate R.F. to FCI Dublin. As R.F. returned to FCI Dublin, I was awaiting additional facts from the SIS investigation to determine whether inmate R.F. had assisted other inmates to file false PREA claims and how to move forward with inmate R.F.'s placement recommendation.

[REDACTED]

22. On February 16, 2024, FCI Dublin psychology staff treated inmate C.B. in response to her request for follow-up services since her initial PREA allegation. Her encounter notes discussed how other inmates referred inmate C.B. to inmate R.F. for assistance with C.B.'s compassionate release. C.B. admitted that inmate R.F. signed onto C.B.'s account in the Education Department and typed an email on inmate C.B.'s behalf with the subject "Compassionate Release," dated January 27, 2024, addressed to the Warden. Inmate C.B. stated Ms. R.F. submitted the email, without inmate C.B.'s knowledge of all its contents. Inmate C.B. claimed inmate R.F. pressured her and rushed her through the drafting process. Inmate C.B. also reported inmate R.F. demanded $1,500 in payment to complete her paperwork. R.F. instructed C.B. to contact a friend in the community to send the money through a friend in the community who would then send it to R.F.

23. On the evening of February 16, 2024, inmate R.F. returned to FCI Dublin and to General Population. Health Services reported to me that inmate R.F. acted uncooperatively during the intake screening process and refused to be medically assessed.

24. On February 21, 2024, while standing mainline during the afternoon meal, I observed inmate R.F. attempt to cut in front of approximately 40 other inmates waiting in line to eat. R.F. confidently walked past staff and other inmates waiting in line. I gave R.F. a direct order to go to the end of the line and not cut in front of others. R.F. then exclaimed, "they called me in there!" I advised R.F. that no one advised no one called her into Food Service and go to the back of the line. R.F. began to yell into the crowd of inmates waiting in front of her, "Look how he just singled me out, this is what I'm talking about!" Since inmate R.F. obeyed my instruction so no further explanation was necessary.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 23rd day of February 2024 at Dublin, California.

_____
PATRICK DEVENEY
Associate Warden/ PREA Compliance Manager
Federal Correctional Institution, Dublin, CA