IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity,<br><br>Defendants. | CASE NO. 4:23-CV-04155-YGR<br><br>**DECLARATION OF S█████ HOSSEINI**<br><br>**FILED UNDER SEAL** |

I, Dr. S███ Hosseini, hereby declare as follows:

1. I am a Western Regional physician, who is currently the Acting Clinical Director at the Federal Correctional Institution ("FCI") at Dublin, California, which is part of the Federal Bureau of Prisons ("BOP"), United States Department of Justice. I have served in this position since approximately March 2023. I also serve as the Acting Clinical Director at the Federal Detention Center at Honolulu, HI. While my office is at FCI Terminal Island, CA, I work out of a number of institutions as a temporary duty medical officer, depending on the needs.

2. I attended Medical School of the University of the Gabriele D'Annunzio in Italy and received my Medical Degree in 1986. In 1991, completed my residency program in General Surgery at the same University. I also did a fellowship in Pediatric Surgery and a residency in Pathology at Tulane University Medical School in New Orleans, Louisiana. I worked as a Clinical Director for the State of Florida, Department of Correction for many years. I have been employed by the BOP since November 2018.

3. In my current position, I am responsible for overseeing delivery of medical care in the Region and advising other BOP physicians in the management of especially difficult or complicated cases. I am thoroughly familiar with the health care and treatment available throughout BOP institutions and, more specifically, with the care and treatment that is available for inmates with different types of chronic medical conditions. I have significant experience treating inmates with a variety of medical conditions, including cysts and alopecia.

4. I have prepared this declaration in response to a request by the United States Attorney's Office for the District of Montana, regarding the medical care of two inmates and an issue concerning "red bumps."

5. The Bureau of Prisons is committed to providing inmates in its custody with quality medical care that is consistent with community standards. Every institution maintains a Health Services Unit to provide medical, dental, and mental health care. BOP policy regarding medical care and procedures for caring for inmates with medical needs is set forth in federal regulations at 28 C.F.R. §549 and applicable Bureau policy, such as BOP Program Statement (PS) 6031.04,

Patient Care, which describes BOP's policy to effectively deliver medically necessary health care to inmates.

6. Every institution is required to have an established Utilization Review Committee (URC), ordinarily chaired by the Clinical Director. The URC reviews requests for specialist evaluations, such as CT scans, otolaryngology, hematology and dermatology. The policy allows the following: (1) the inmate to be referred for further evaluation to a specialty consultant; (2) determination from staff that the procedure sought is contraindicated due to unacceptable risk to the inmate if it is to be performed; (3) denial of the request for the procedure; and (4) approval of the request without modification. The Clinical Director is the final authority for all URC decisions. A true and correct copy of Chapter 8 of PS 6031.04 is attached hereto as Exhibit 1. The entire policy is publicly available at www.bop.gov.

7. Services are provided by a variety of health care professionals, including psychiatrists, physicians, nurses, physician assistants, dieticians, dentists, and pharmacists. Community medical professionals are consulted as needed, and inmates are sent to outside providers should medically necessary care be unavailable at the institution.

8. On August 22, 2023, Nurse Practitioner Assadi made an off-site consultation request for a CT scan with and without contrast to rule out malignancy in a mass found on inmate M█████ G████████, Register Number ████████ ("G████████"). G████████ presented with a non-erythematous soft bulging mass localized on the left post-auricular region (approximately 7x5 cm) non-tender palpation. While the onset was five years, the inmate notes that the mass had increased in size over the last year. A true and correct copy of the reason for the Consultation Request is attached hereto as Exhibit 2.

9. On August 25, 2023, I referred the Consultation Request to the URC. On August 29, 2023, Health Services Administrator, M████ Wilson, approved the request in his role as URC Committee chairperson. Exhibit 2.

10. Based on PS 5031.04, BOP Health Services determined this consultation request to be medically necessary, but non-emergent, meaning that it was not life threatening but still required care. Nurse Practitioner Assadi scheduled a target date of September 14, 2023, for the CT scan

request. BOP's third-party scheduler arranged for a CT Head and Temporal Bones Scan without IV Contrast for November 1, 2023.

11. On November 1, 2023, Stanford Health Care's Department of Radiology conducted G███████'s CT scan. Stanford's radiology doctor noted that there was a "well-circumscribed…fat density mass in the left postauricular subcutaneous soft tissues with a small soft tissue component along the posterior superior margin of the mass." The report further indicated that the mass is likely a "lipomatous tumor." The doctor recommended that BOP consider a targeted biopsy of the soft tissue component. A true and correct copy of the November 1, 2023, radiology consult is attached as Exhibit 3.

12. Based on the findings, BOP recommended a specialist referral after completion of the head CT scan. On January 10, 2024, BOP received confirmation that its third-party scheduler had calendared a biopsy on March 12, 2024, at the Bay Area Surgical Specialists at Walnut Creek, California. A true and correct copy of the March 12, 2024, scheduled referral is attached as Exhibit 4.

13. FCI Dublin has requested that the third-party scheduler attempt to accelerate the upcoming March specialist evaluation.

14. On November 15, 2021, FCI Dublin Clinical Director D████ Duncan made an endocrinology consultation request for inmate L████ S████████, Register Number ████████ ("S████████"). Duncan requested this consultation given S████████'s severe and progressive alopecia that had developed the previous year. Though her white blood cell count was mildly low in November 2021, the opinion of the Stanford hematology and oncology team was that her extensive blood work did not demonstrate cancer. The endocrinologist consultation was canceled. A true and correct copy of the Stanford Hematology and Oncology November 24, 2021, report is attached as Exhibit 5.

15. S████████ has had exhaustive lab evaluations without significant abnormalities other than mild leukopenia without neutropenia at the time of the diagnosis.

16. On February 8, 2024, S████████ had a clinical encounter at Health Services. Due to her diagnosis of chronic varicose veins and fatigue with increased sweating, the doctor changed her

hypertension medication from Losartan to Amlodipine to address these symptoms. The doctor also expressed some concern that the hair loss might be a side effect of Losartan. A true and correct copy of the February 8, 2024, Health Services Clinical Encounter is attached as Exhibit 6.

17. Based on her February 15, 2024, lab results, S████████'s white blood cells are within normal limits and do not demonstrate cancer. A true and correct copy of the February 15, 2024, lab work, is attached as Exhibit 7.

18. Despite her normal blood work, I initiated a new consultation request for S██████ to see an endocrinologist. As of the date of this declaration, the request is approved, and pending scheduling through the BOP's third-party scheduler.

19. As to any complaints of "red bumps," I am generally aware that HSA Wilson received three separate sick call requests with some complaint of "red bumps" on bodies of three inmates at the Satellite Camp Prison (SCP) at Dublin, CA. I am told that HSA Wilson and a local registered nurse visually inspected these bumps to preliminarily rule out any infectious processes.

20. A BOP Western Regional Quality Improvement and Infection Prevention Coordinator is scheduled to visit FCI and SCP Dublin tomorrow, Wednesday, February 21, 2024. This Board-Certified Nurse Practitioner will conduct skin checks on all inmates at the SCP tomorrow and will assist with any other patient care and/or infectious disease concerns throughout the week.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 20th day of February 2024 at Terminal Island, California.

_____
Dr. S█████ Hosseini
Acting Clinical Director
FCI & SCP Dublin