ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL - 330482
LUMA KHABBAZ - 351492
ROSEN BIEN GALVAN &
  GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Email: egalvan@rbgg.com
       kjanssen@rbgg.com
       aspiegel@rbgg.com
       lkhabbaz@rbgg.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 679-3674
Email: susan@ccijustice.org

STEPHEN CHA-KIM*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Email: stephen.cha-kim@arnoldporter.com

CARSON ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: 650.319.4500
Email: carson.anderson@arnoldporter.com

OREN NIMNI* Mass. Bar No. 691821
AMARIS MONTES* Md. Bar No. 2112150205
D. DANGARAN *Mass. Bar No. 708195
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C. 20001-0506
Telephone: (202) 455-4399
Email: oren@rightsbehindbars.org
       amaris@rightsbehindbars.org
       d@rightsbehindbars.org

Attorneys for Plaintiffs                              *Admitted pro hac vice

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al.,<br><br>Defendants. | Case No. 4:23-CV-04155-YGR<br><br>**JOINT DISCOVERY DISPUTE LETTER BRIEF REGARDING DEFENDANTS' RESPONSES TO PLAINTIFFS' RFP NOS. 1-13** |

Joint Letter Brief re Plaintiffs' RFP Nos. 1-13                              Case No. 4:23-CV-04155-YGR

Dear Judge Tse:

**JOINT STATEMENT REGARDING DISPUTE**

**I.      PLAINTIFFS' POSITION**

Defendants are helping themselves to a non-existent stay of discovery in disregard of the Court's express instructions.  Specifically, Defendants contend that they may refuse to respond to certain of the Plaintiffs' Requests for Production ("RFP") because "[t]here is a stay in place."  The Court has entered no such stay. Meanwhile, the close of discovery, an evidentiary hearing, and trial are approaching, and Plaintiffs respectfully request that the Court order Defendants to comply with their discovery obligations.

**Factual Background**:  On August 16, 2023, Plaintiffs filed this class action, alleging that policies and practices in the Bureau of Prisons ("BOP") and at FCI Dublin put Adults-in-Custody ("AICs") at a substantial risk of sexual assault, harassment, and retaliation by staff.  *See* ECF No. 1. Plaintiffs requested, among other relief, an order requiring Defendants to improve employee training, the BOP-wide sexual assault reporting processes, medical care, and other living conditions.  *Id.*  In early January 2024, the Court held a five-day evidentiary hearing, including testimony from nine FCI Dublin/BOP officials and fourteen AICs.  On March 15, the Court certified the class and granted Plaintiffs' preliminary injunction, including appointment of a special master to ensure Defendants' compliance with the injunction.  ECF No. 222 at 1, 42 ("Dublin is a dysfunctional mess.  The situation can no longer be tolerated. … plaintiffs are likely to succeed in their Eighth Amendment claims for the risk of sexual abuse and serious medical neglect, along with their First Amendment claim that they face an ongoing risk of retaliation.").  On April 5, the Court appointed Special Master Wendy Still, giving her full access to FCI Dublin.  ECF No. 248.

On April 15, BOP announced its plan to close FCI Dublin and transfer all AICs to other facilities.  ECF No. 300.  All 600 AICs were transferred by May 1.  *See id.* at 2.  By May 20, Special Master Still completed her on-site work, and the Court appointed her as Monitor of BOP's compliance with Court orders, including specifically to ensure AICs receive proper care at their new facilities. ECF No. 308 at 2.  On June 18, Defendants moved to dismiss, alleging mootness, and moved to stay discovery.  *See* ECF No. 326.  On July 1, the Court extended the preliminary injunction until October 2.  ECF No. 336.  Defendants' motion remains pending, and was argued on August 2.  Following argument the Court issued an order on August 13 setting deadlines for compliance with the Court's prior orders regarding an upcoming evidentiary hearing, including discovery thereon, and setting a case management conference for September 9, 2024.  ECF No. 372.

Plaintiffs served the instant RFPs on April 16, 19, and 30.  The parties have corresponded thereon and met and conferred via Zoom on May 21, June 6, and August 13.  *See* Ex. 4.

**Defendants Must Comply With Discovery Obligations Absent Entry Of A Stay**:  Discovery has not been stayed, and the close of fact discovery on October 31 is rapidly approaching.  ECF No. 310.  Plaintiffs have done their part to move this case forward by propounding discovery.  In response, Defendants have only produced *eleven documents* beyond those used at the evidentiary hearing.

Defendants refuse to produce documents, asserting that that their pending motions to dismiss and stay discovery relieve them of their discovery obligations. *See* Ex. 4 at 1.  But a stay has not been issued, and Defendants may not simply help themselves to one.  *See Toro v. Centene Corp.*, 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020) ("[A] motion to dismiss does not automatically stay

discovery."); *see also HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1643786, at *2 (N.D. Cal. Apr. 2, 2020) ("The filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations."). Defendants' position is particularly disingenuous here where the Court entered a preliminary injunction, has set an expedited case management and discovery schedule, and given every express indication that it expects the parties to advance the case promptly towards trial. *See, e.g.*, Aug. 2 Hrg. Tr. at 72:7-10 ("[D]o you wish to advance the schedule so I can get to a decision on a permanent injunction [at trial] or not?"); *see also* ECF No. 372 at 4 (August 13 Order requiring the parties to meet and confer regarding pre-hearing discovery ahead of early September status conference).

Defendants also argue that they need not conduct discovery on "mooted claims." Ex. 4 at 1. But the Court has not mooted any claims. In fact, at the August 2 hearing the Court bluntly told Defendants' that "it strains credulity for this motion [to dismiss] to have been filed given everything that is outstanding. It strains credulity." Aug. 2 Hrg. Tr. at 18:22-24. Later, the Court said, "[w]hat I don't agree with is how you can stand there and tell me that it is all resolved such that it is legally moot." *Id.* at 26:10-11; *see also id.* at 28:3-5 (reiterating a third time that "to claim at this [] juncture . . . that you've mooted everything? Like I said, it strains credulity"); *see also*, *id.* at 39:8-12 ("But my goal is to make sure that what we started is finished and is finished properly. And I am not about to find that it is over and done without full accountability with respect to the issues that we started here. So that's my position.").

Finally, the Government's puzzling contention that it may ignore discovery in this case because of a stay entered in related but distinct individual damages is groundless. The Court expressly held that the stay in the damages cases "does not apply to claims for injunctive relief." *See* Case No. 4:22-cv-05137-YGR, ECF No. 228-3 (August 12 Joint Stipulation) at n.2.

**Plaintiffs' Requested Discovery Is Relevant And Is Not Unduly Burdensome**: **RFP Nos. 1, 3, 4, and 9** relate to the closure of FCI Dublin and transfer of AICs, *i.e.* the Plaintiff Class, to other institutions. *See* Ex. 1 at RFP No. 1 (docs re closure of FCI Dublin), No. 3 (docs re AIC transfers during closure), No. 4 (docs re reassignment of staff); Ex. 2 at RFP No. 9 (docs re AIC transfers since March 15). Defendants refuse alleging that the closure and transfer of AICs is outside the scope of the First Amended Complaint ("FAC"). Not so.

First, the Court has made clear that the treatment of AICs during FCI Dublin's hasty closure is well within the purview of this case. *See* ECF No. 300 at 13 ("[T]he Court's guidance to the BOP regarding closure of the facility represents a logical extension of the commands of preliminary injunction order."). Simply put, this case is about the constitutional treatment of the AIC class, including during the "ill-conceived" "chaos" that they endured during closure. *Id.* at 1, 4; *see also id*. at 13 ("The BOP cannot hide from or escape its obligations by merely closing FCI Dublin. The class members have been denied medical and mental health treatment for years in some cases, and months in others. **The Court will not tolerate continued delay**.") (emphasis added). While Defendants allege that these RFPs go to damages only—they do not. To the contrary, BOP's treatment of AIC's during closure goes to BOP's grossly deficient system and evidences whether permanent injunctive relief is necessary to protect to Plaintiff class going forward.

Next, the FAC specifically alleges that class member transfer decisions are retaliatory, done to silence reporting, and unconstitutional; thus, evidence regarding where class members were transferred and why is squarely within the FAC. *See* ECF No. 152 at, *e.g.*, ¶¶3, 8, 105, 150, 161, 164-165, 172, 532. Similarly, the FAC alleges that staff perpetrators are often transferred to other

2

BOP facilities in lieu of proper investigations, so any staff transfers to new facilities where the Plaintiff Class is now housed is also squarely within the FAC. *Id.*, ¶¶63, 104.

**RFP No. 2** relates to future plans for FCI Dublin. Ex. 1 at 2. This topic is plainly relevant, as probed by the Court during the recent hearing. *See also* ECF No. 222 at 14 (the certified class is "[a]ll people who are now, or *will be in the future* incarcerated at FCI Dublin") (emphasis added).

**RFP Nos. 10-13** relate to the conditions of confinement at the other institutions that the AIC class has been transferred to, and related rosters. This is plainly relevant. The Court is receiving weekly reports regarding AIC treatment at other institutions and the FAC goes to BOP policies at large which impact the AIC class wherever housed. *See, e.g.*, ECF No. 300 at 14-15 (requiring BOP to update the Court on treatment of AIC class at other institutions), Aug. 2 Hrg. Tr. at 24:24-25:16 ("I'm looking at the monthly staffing reports in these other facilities. He tells me he's got one person doing some of these things for the entire country. That's not moot. … It's not moot if its ongoing and outstanding…."); ECF No. 152 at, *e.g.*, ¶¶8, 60-70, 93-105, 258-262, 263-267.

While Defendants agreed to narrowly produce certain documents during this dispute letter writing process (*see* below), these concessions are inadequate and withholding relevant discovery: RFP No. 1 (BOP excludes documents and emails during and after closure), RFP No. 2 (BOP has only agreed to provide 2 documents), RFP Nos. 3 and 9 (no narrowing is necessary), RFP 4 (no commitment if they are later created), RFP Nos. 10-13 (BOP's agreements are too narrow).

## II. DEFENDANTS' POSITION

**There is a stay in place.** On August 12, 2024, Plaintiffs' counsel signed onto a stipulated request to extend the stay of "all FCI-Dublin related cases," through October 31, 2024, which was granted by Judge Gonzalez Rogers on August 13, 2024. (Case No. 4:22-cv-05137-YGR, Dkt. 229.) The purpose of this stay is to facilitate global resolution of all civil cases seeking money damages for injuries arising from incarceration at FCI Dublin. This stay necessarily includes the documents and evidence the Special Master and her team relied on in compiling their Report, as the substance of that report relates solely to past conditions of confinement at the now-shuttered facility. All evidence of past conduct is subject to this explicit stay of discovery, as evidence to support injunctive claims only concerns *current conditions*. In seeking to expand the universe of permissible discovery in the injunctive case, Plaintiffs seek to circumvent this explicit stay and obtain documents and evidence to which they are not otherwise legally entitled at this juncture. There are more than a dozen United States Attorney's Offices handling the more than one hundred damages cases related to FCI Dublin. Coordinating the flow of information to ensure the District of Montana does not violate the express stay and/or jeopardize ongoing settlement efforts would be oppressive, unduly burdensome, and not proportional to the needs of the sole injunctive case.

**Defendants have also explicitly moved for a stay of discovery related to Plaintiffs' claims for injunctive relief until the Court rules on their motion to dismiss for lack of subject matter jurisdiction.** Defendants are not relying on an "automatic" or "blanket" stay of discovery while a potentially dispositive motion is pending. Rather, they have explicitly moved for a stay of discovery pending resolution of a wholly dispositive motion for lack of subject matter jurisdiction. If the Court lacks subject matter jurisdiction, it similarly lacks jurisdiction to enter an order compelling participation in discovery. *See Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (citation omitted). As "[s]ubject matter jurisdiction must exist as of the time the action is commenced," even permitting Plaintiffs to

3

engage in discovery to establish jurisdiction is inappropriate. *See Morongo*, 858 F.2d at 1380 (citations omitted).

Here, the applicable test favors a stay: Because the Court lacks subject matter jurisdiction, the motion to dismiss (1) disposes of the entire case, and (2) no discovery is needed to establish the Court's lack of subject matter jurisdiction. (*See* Ex. 4, additional argument.) The District Court here is somewhere in the midst of its assessment of the two-pronged test. Thus, the parties are not arguing about Defendants' mere bid for a "blanket stay" due to their motion to dismiss – but a targeted motion to stay based on the absence of subject matter jurisdiction. Such a motion for stay is the typical response to a motion to compel while a dispositive motion is pending. *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1093 (D. Nev. 2022). If a court receives such a motion to stay, and holds off ruling on it until after the dispositive motion, the interim pause in discovery is not censurable. *Craig v. Brigadier*, 2007 WL 3101389, at *8 (e.g., holding stay motion moot after ruling on motion for summary judgment).

Even if the Court does not dismiss the case for lack of subject matter jurisdiction, the forthcoming order on Defendants' motion should substantially constrain the locus of the litigation (and discovery). Indeed, the Court has repeatedly emphasized the increasingly narrow scope of the issues in dispute post-closure. (*See* Dkt 336 at 7.) Thus, even accepting (for argument) the premise that this Court retains subject matter jurisdiction to address these issues, Plaintiffs' requests for discovery that go outside this narrow scope are irrelevant, not likely to lead to the discovery of relevant evidence, overly broad, and unduly burdensome on the agency.

The goalposts for relevance have also been significantly narrowed by closure of the facility – and the pending resolution of the damages cases. Because Dublin is closed, no AICs are housed there, and none have been housed there since May 1, 2024. In the context of an injunctive, "current conditions" lawsuit, all evidence regarding the past operation of Dublin is irrelevant, and unlikely to lead to the discovery of relevant evidence. Similarly, all evidence of past constitutional violations at Dublin pertains to conditions of confinement that no longer exist. This includes the transfers whereby Dublin AICs were sent to new BOP facilities. Such claims are neither "ongoing" nor susceptible to resolution through injunctive relief. Instead, such claims are compensable through money damages – which are stayed and moot by virtue of impending resolution.

The cases have now entered a phase where discovery in the one injunctive case could endanger settlement in the >100 damages cases. It is highly unlikely the Court had this situation in mind when it entered the order – in March – allowing discovery in the injunctive cases despite the stay in the damages cases. (Dkt. 228.) That order also predates closure, the mooting of the injunctive claims writ large, and the motion to dismiss. According to the Court's orders, only discrete categories of "current conditions" remain justiciable. (*See e.g.*, Dkt. 300 at 10 and 15.) By extension, discovery (even if were not stayed) is limited to those categories. As noted below BOP is willing to engage in limited discovery within those categories.

Nonetheless, and without waiving the foregoing arguments and previously asserted objections, and pending expiration of the stay, Defendants have produced and are willing to produce the following:

**RFP 1:** Defendants previously provided a March 1, 2022, email. Defendants agree to provide additional emails dated before the closure. The emails, redacted on the grounds of privileged communication and privacy, reflect communications relating to, *inter alia*, staffing, property, and transportation.

**RFP 2:** Defendants previously provided numerous documents reflecting ongoing operations at FCI Dublin, including considerations and plans of a mission change. Defendants agree to provide an additional email dated June 4, 2024, informing FCI Dublin staff of planned correctional and infrastructural assessments.

**RFPs 3 and 9:** On June 7, 2024, Defendants asked Plaintiffs to narrow their request and inform Defendants what category of documents they may be looking for. Such narrowing is essential because without refinement the requests seek discovery that is irrelevant, unduly burdensome, and disproportional to the needs of the pending litigation as framed by the amended complaint and in light of changing factual circumstances. No response has yet been received. Nonetheless, Defendants agree to provide additional emails dated during and after the temporary closure. The emails, redacted on the grounds of privileged communication and privacy, reflect communications relating to, *inter alia*, transportation and programming.

**RFP 4:** Defendants do not possess any documents responsive to this request.

**RFP 5:** Defendants previously provided an attachment showing FCI Dublin's current staffing and a second attachment showing an updated Organization Chart for FCI Dublin. BOP has confirmed that FCI Dublin does not maintain an organizational chart which organizes all FCI Dublin staff by name in their respective departments. Defendants agree to provide the two most recent FCI Dublin staffing reports.

**RFPs 7 and 8**: On June 7, 2024, Defendants asked Plaintiffs when a certain incident occurred so Defendants could ascertain whether video footage of the incident exists. No response has yet been received. The total data volume of the cameras is 254,298 GB/254 TB. While Defendants are still exploring options as to how best to provide footage, if Plaintiffs' counsel provides specific timeframes (such as "AIC x said she was yelled at by Officer y in front of recreation on Tuesday, April 16, around 10 am"), Defendants can pull that footage and provide counsel with reviewable copies. In the alternative, Defendants are also open to negotiating dates and times for Plaintiffs' counsel comes to FCI Dublin and reviews specific footage on-site.

**RFP 10:** As Plaintiffs state above, RFPs 10-13 relate to the conditions of confinement at BOP facilities other than Dublin. Defendants previously provided correspondence reflecting bed capacity of other facilities. Defendants agree to provide additional emails dated during and after the closure. The emails, redacted on the grounds of privileged communication, reflect communications relating to, *inter alia*, bed space and programming.

**RFP 11:** This list was included with Defendants' previous production. Defendants agree to supplement that list with supporting emails, which have been redacted for privacy.

**RFP 13**: Defendants ask Plaintiffs to provide greater specificity as to which roster spreadsheet to which they are referring. There have been numerous spreadsheets made since the closure of FCI Dublin. To confirm what Plaintiffs are requesting, Defendants require more detailed information.

Dated: August 16, 2024					Respectfully submitted,

									**ARNOLD & PORTER KAYE SCHOLER LLP**

									By:  /s/ *Carson D. Anderson*
									        Carson D. Anderson

									*Attorneys for Plaintiffs*


Dated: August 16, 2024					Respectfully submitted,

									**U.S. ATTORNEYS OFFICE**
									**DISTRICT OF MONTANA**

									By:  /s/ *Madison L. Mattioli*
									        Madison L. Mattioli, Assistant U.S. Attorney

									*Attorneys for Federal Defendants*


Meet and confer attestation:  On August 13, 2024, the parties met and conferred in good faith via Zoom videoconference but were not able to resolve this dispute.

									By:  /s/ *Carson D. Anderson*
									        Carson D. Anderson


									By:  /s/ *Madison L. Mattioli*
									        Madison L. Mattioli


Signature attestation:  Pursuant to Civil L.R. 5-1(i), I hereby attest that all other signatories listed concur in this document's content and have authorized the filing of this document with the use of their electronic signature.

									By:  /s/ *Carson D. Anderson*
									        Carson D. Anderson