Jaqueline Aranda Osorno (SBN 308084)
   jaosorno@publicjustice.net
Alexandra Z. Brodsky*
   abrodsky@publicjustice.net
Sarah Ortlip-Sommers*
   sortlip-sommers@publicjustice.net
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
*Admitted Pro Hac Vice

Angelica Salceda (SBN 296152)
   asalceda@aclunc.org
Chessie Thacher (SBN 296767)
   cthacher@aclunc.org
Shaila Nathu (SBN 314203)
   snathu@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

Attorneys for Intervenors

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al.,<br><br>Defendants. | Case No. 4:23-cv-04155<br><br>**INTERVENORS' SECOND REPLY REGARDING MOTION TO UNSEAL** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 3

PROCEDURAL HISTORY............................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

   I.   Defendants Have Failed to Establish a Compelling Interest in Sealing the Names and Information Relating to Investigations of Former FCI Dublin Staff ............................. 5

       A. Documents Related to Ongoing Administrative or Criminal Investigations ........................... 6

       B. Documents Related to New FBI Investigation............................................................... 8

   II.   The Public Has a Significant Interest in Information Related to Ongoing Investigations That Is Not Outweighed by Any Compelling Reasons for Secrecy............................................... 9

CONCLUSION................................................................................................................ 10

**INTRODUCTION**

For years, FCI Dublin staff perpetrated grievous and systemic sexual violence against incarcerated women with impunity. This pattern of violence is both the grounds for this lawsuit and the subject of dozens of administrative and criminal investigations by multiple law enforcement agencies. Intervenors, whose efforts have resulted in the unsealing of hundreds of pages of records documenting FCI Dublin's pervasive culture of abuse, continue to challenge Defendants' efforts to keep information hidden from the public, including information related to some of the many ongoing administrative and criminal investigations. *See generally* Dkt. No. 358.[1] Defendants argue that the remaining redactions are warranted to protect the reputational and privacy interests of former FCI Dublin staff, as well as to avoid compromising ongoing administrative and criminal investigations. *Id.* at 1-2. As explained below, however, these arguments rely on broad, unsupported assertions about what could arise if information is disclosed. Because these generalized assertions alone are insufficient to outweigh the public's right of access, this Court should fully unseal the remaining documents and order that they be re-filed without redactions.

**PROCEDURAL HISTORY**

The Appeal, Inc., reporter Victoria Law, the ACLU of Northern California, and the First Amendment Coalition (collectively, "Intervenors") sought to intervene for the limited purpose of moving to unseal court records and preserving the public's right of access to presumptively public court proceedings. Dkt. No. 316 at 5.[2] Intervenors challenged the sealing of over sixty court records, including the nine documents presently at issue. Dkt. No. 317 at 7, n.1. In response to Intervenors' Motion to Unseal, Defendants conceded that the recent closure of FCI Dublin had rendered certain sealing arguments moot but maintained that many documents still should remain sealed to protect "significant law enforcement safety and security concerns" and individual privacy interests. Dkt. No. 329 at 1-2. After consideration of Intervenors' arguments on reply (Dkt. No. 340), Defendants requested the opportunity to meet and confer with Intervenors to further narrow the sealing disputes. *See* Dkt. No. 346.

Following a meet-and-confer, Defendants agreed to unseal additional documents. Dkt. No. 351 at

---

[1] The documents that remain in dispute are Dkt. Nos. 175, 175-2, 178-3, 363-1, 363-2, 363-3, 363-4, 363-5, and 363-6. A chart describing these documents, with accompanying docket numbers, is appended hereto as Exhibit 1.

[2] The Court granted the Motion to Intervene on July 26, 2024. Dkt. No. 354.

2. However, they also asserted a new ground for sealing some of the documents: that the documents "contain[ed] information relating to ongoing criminal investigations." Dkt. No. 351-1 at 4, 5, 7, 8. The Court thereafter ordered Defendants to "provide the Court with more specificity." Dkt. No. 354 at 3. It observed that Defendants had made only "vague references" about needing to safeguard information relevant to ongoing criminal investigations and institutional security. *Id.* The Court concluded that such "[g]eneric references" are "insufficient." *Id.* It then ordered the U.S. Attorney's Office to respond to the sealing arguments raised by Defendants because "Defendants are not the prosecuting agency." *Id.* Defendants subsequently filed a three-page notice clarifying their and the U.S. Attorney's position. Dkt. Nos. 358, 358-1, 358-2.

The Court heard argument on the remaining sealing disputes on August 2, 2024. At the hearing, Federal Defendants conceded that additional information could be unsealed, further narrowing the disputes. *See* Dkt. No. 373. Pursuant to the Court's order, Defendants refiled new, redacted versions of the disputed documents.[3] Intervenors requested, and the Court granted, an opportunity to challenge the remaining redactions. Dkt. No. 369. This brief follows.

## ARGUMENT

A party seeking to seal a court record must overcome a "strong presumption in favor of access." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)). To justify secrecy, a party must demonstrate "compelling reasons and specific factual findings." *See San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999). A court may recognize compelling interests in sealing where information relates to the substance of ongoing administrative or criminal investigations, or to the identities of those being investigated. *See, e.g.*, *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1262 (S.D. Fla. 2022). But the mere possibility that disclosure of information may cause "embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

---

[3] Federal Defendants re-filed new versions of Dkt. Nos. 46, 46-1, 175-1, 197-3, 197-6, and 206-3. They also filed a new version of Dkt. 332-3, which is not part of the group of documents Intervenors moved to unseal and is not in dispute. *See* Dkt. No. 363-7. In addition to the six newly-filed documents, three additional documents remain in dispute. *See* Dkt. Nos. 175, 175-2, 178-2.

After balancing the interests of the public against those of the party seeking to seal records, a court must "'base its decision [to seal] on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Id*. at 1178–79 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

### I. Defendants Have Failed to Establish a Compelling Interest in Sealing the Names and Information Relating to Investigations of Former FCI Dublin Staff

Defendants offer two justifications for continuing to withhold information from the public. First, they argue that disclosing the currently redacted information "could jeopardize" ongoing administrative or criminal investigations. Dkt. No. 358 at 3 (citing Dkt. No. 358-1 at ¶¶ 8-12). Second, Defendants argue that information must remain sealed to safeguard the reputational and privacy interests of those being investigated. Dkt. No. 358 at 3.

Although sparse, case law on unsealing court records related to ongoing investigations and related privacy interests does exist. And yet, Defendants have cited none. *See, e.g.*, *In re Press Appl. for Access to Jud. Recs. in Case No. 23-SC-31*, No. MC 23-84 (JEB), 2023 WL 8254630, at *1 (D.D.C. Nov. 29, 2023) (considering motion to unseal search warrant for Twitter records associated with the @realDonaldTrump account in the course of an investigation into election interference); *In re Matter of Appl. of the Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d 11, 16-17 (D.D.C. 2022) (considering motion to unseal exhibits to a motion to exclude drug analysis evidence that discussed misconduct of two chemists who were arrested for stealing drugs from the DEA laboratory); *United States v. Gonzalez*, 927 F. Supp. 768, 770 (D. Del. 1996) (considering motion to unseal documents containing information relating to misconduct investigation of government employee who testified as expert). These cases illustrate the rigor a court must apply when balancing the government's interest in maintaining secrecy over information relating to a criminal investigation and protecting privacy interests against the strong presumption of access to court documents.

A recent case considering a request to unseal a search warrant of Donald Trump's Mar-a-Lago residence affidavit and related documents provides a helpful analytical framework. *See In re Sealed Search Warrant*, 622 F. Supp. 3d at 1262. There, the court recognized that, "[i]n the context of an ongoing criminal investigation, [] legitimate governmental concerns include whether: (1) witnesses will

be unwilling to cooperate and provide truthful information if their identities might be publicly disclosed; (2) law enforcement's ability to use certain investigative techniques in the future may be compromised if these techniques become known to the public; (3) there will be an increased risk of obstruction of justice or subornation of perjury if subjects of investigation[s] know the investigative sources and methods; and (4) if no charges are ultimately brought, subjects of the investigation will suffer reputational damage." *Id.* (citations omitted). The court found that there was "a significant likelihood that unsealing the [search warrant] Affidavit would harm legitimate privacy interests by directly disclosing the identity of the affiant as well as providing evidence that could be used to identify witnesses" and that the affidavit "disclose[d] the sources and methods used by the Government in its ongoing investigation," both weighing against disclosure. *Id.* at 1263. On the other hand, the court also found that the warrant involved "matters of significant concern" and unsealing "would promote public understanding of historically significant events." *Id.* at 1264. After carefully weighing these factors, the court found that the government's interests outweighed the public's right of access, though it ordered the government to narrowly tailor its sealing. *Id.* at 1265.

Other courts that have sealed information related to ongoing investigations have considered similar factors, as well as whether an investigation was "in its nascent stage, where the risk of disclosing information might affect its viability," *Gonzalez*, 927 F. Supp. at 779, and whether the information would reveal the "the scope or direction of the continuing investigation," *In re Press Appl. for Access to Jud. Recs.*, 2023 WL 8254630, at *6 (citation omitted).

As explained below, consideration of these factors demonstrates that Defendants have not presented sufficient facts to establish that disclosure would impair any ongoing investigations or significantly harm any staff's privacy interests.

### A. Documents Related to Ongoing Administrative or Criminal Investigations

Dkt. Nos. 363-1 and 363-2 contain the names of individuals on administrative leave pending the results of sexual abuse investigations and the employment status of other officers referenced in Plaintiffs complaint. Dkt. Nos. 363-4, 363-5, and 363-6 contain information relating to an individual officer's administrative investigation that is "pending deferral by OIG." Dkt. No. 358-1 at ¶ 6. Defendants' privacy argument as to these five documents lacks merit. Allegations of individual officers' misconduct,

and many of their names, are already public in court filings, media reports, and congressional records. *See, e.g.*, Dkt. No. 363-2 at ¶ 38 (redacting information relating to officers referenced in Plaintiffs' complaint); Dkt. No. 363-1 at 15 (redacting information seemingly tied directly to allegations of misconduct detailed in preceding sentences); Dkt. No. 317 at 8-12 (citing publicly available information about individual officers). This, together with the fact that those being investigated are government employees, significantly diminishes their privacy interests.[4] *See In re Matter of Appl. of the Pub. Def. Serv.*, 607 F. Supp. 3d at 25 (considering unsealing records that contained disciplinary documents and noting the public interest "may be slightly higher because . . . there is a public interest in ascertaining how the [government] disciplines its employees" (citation omitted)); *Gonzalez*, 927 F. Supp. at 777 (unsealing records relating to past misconduct of a government employee who had testified against defendant in a case with significant media attention and noting that "one's privacy interests are diminished where the matter at issue has already been made public"); *In re Press Appl. for Access to Jud. Recs.*, 2023 WL 8254630, at *6 (recognizing that privacy interests may be attenuated where "the very subject of the investigation has acknowledged it" or "the investigation involved actions taken by a public official in his public capacity") (citation omitted); *Doe 1 v. Nielsen*, No. 18-CV-02349-BLF(VKD), 2019 WL 2266622, at *2 (N.D. Cal. May 28, 2019) (rejecting argument that documents produced in discovery in a case alleging discriminatory action by the federal government should be marked confidential solely because they included the names of government employees where government had failed to establish that invasion of privacy would result in harm to employees and government had already disclosed the names of some of the employees).

Further, Defendants conclusion that disclosure of this information "could jeopardize the ongoing investigations" is completely unsupported by specific facts. Dkt. No. 358 at 3. Defendants note that there is a compelling interest in "maintain[ing] the integrity of any ongoing investigations – for example, [by] prevent[ing] witness and evidence tampering or destruction" but do not explain how that might happen in this case. *Id.* Neither do they claim that any of the information could reveal sources or

---

[4] Federal Defendants invoke the reputational and privacy interests of FCI Dublin staff who are under investigation, but Intervenors are unaware of any of those objecting to disclosure. In such cases "[w]here the individuals whose privacy interests are in question have interposed no objections, [a] defendant's institutional challenge is not persuasive." *In re Matter of Appl. of the Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d at 26–27 (quoting *Cobell v. Norton*, 157 F. Supp. 2d 82, 91 (D.D.C. 2001)).

investigative methods, *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1262, or the "scope or direction" of the investigation, *In re Press Appl. for Access to Jud. Recs.*, 2023 WL 8254630, at *6. What is more, none of these investigations appear to be so early in their stages that disclosing information might "affect [the] viability" of the investigation. *See Gonzalez*, 927 F. Supp. at 779. The administrative investigations into the sexual misconduct of certain officers are at least nine months old and many are likely much older. *See* Dkt. No. 46-1 at ¶ 38 (containing individual officers' employment status as of November 13, 2023).

In sum, Defendants have not established that disclosure of the information found in Dkt. Nos. 363-1, 363-2, 363-4, 363-6, and 363-6 would significantly harm any individual's privacy interests or impair any ongoing investigations.

### B. Documents Related to New FBI Investigation

Dkt. Nos. 175, 175-2, 178-2, and 363-3 contain information relating to a new criminal investigation of FCI Dublin executive staff. Dkt. No. 358-1 at ¶¶ 8-10. The investigation arises from the transfer of R.F. out of FCI Dublin following her testimony at the preliminary injunction evidentiary hearing. *Id.* at ¶ 9; *see* Dkt. No. 155.

Defendants have not established compelling reasons for sealing the information contained in these documents. Former Acting Warden Dulgov and other executive staff have diminished privacy interests where allegations of their wrongdoing are public. *See* Dkt. No. 211 at 2 (informing the court that "the Bureau of Prisons replaced executive employees (the Acting Warden, an Associate Warden, the Executive Assistant/Satellite Camp Administrator, and the Acting Captain) . . . in response to recent developments");[5] Richard Winton, *Warden Is Ousted As FBI Raids California Women's Prison Known As The 'Rape Club'*, Los Angeles Times, Mar. 12, 2024, *available at* https://tinyurl.com/4uy23sh9. Defendants have also failed to establish how disclosure of any of the information contained in these documents "could jeopardize the ongoing criminal investigation." Dkt. 358-1 at ¶ 11. Indeed, they would be hard pressed to provide any additional details as they have admitted that "[t]he full parameters

---

[5] Although not explicitly named in the notice to the Court, the names of several executive staff are reflected in the record, including Morgan Agostini (Executive Assistant/Satellite Camp Administrator), Patrick Devaney (Associate Warden), and Erika Quezada (Correctional Captain). *See* Dkt. No. 158 at 8-9) (describing 2022 restructuring of the executive team).

of any investigation are unknown to both [the declarant and counsel for Defendants], as neither office is the investigating office." Dkt. No. 358 at 3.

As with the documents discussed in the preceding section, Defendants have not established that disclosure of the information found in Dkt. Nos. 175, 175-2, 178-2, and 363-3 would significantly harm individuals' privacy interests or impair the ongoing FBI investigation.

## II. The Public Has a Significant Interest in Information Related to Ongoing Investigations That Is Not Outweighed by Any Compelling Reasons for Secrecy

In determining whether there are compelling reasons to seal, a court must "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret." *The Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). The public's interest in this case is significant. *See* Dkt. No. 317 at 19-22 (describing public interest in this case). The suffering endured by those incarcerated at FCI Dublin is both well-documented and widely known. The pervasive pattern of misconduct and culture of sexual abuse have been exposed through audits, congressional investigations, advocacy efforts, media reports, and public access to court records in this case. Accordingly, the public has a vested interest in learning the identities of federal employees and possible grounds for any investigations presented to the Court, an interest that is particularly heightened given the egregious abuses suffered by those incarcerated at FCI Dublin.

Moreover, there is a significant public interest in knowing whether staff under investigation—whose names remain redacted—have been placed on administrative leave or transferred to other facilities. *See, e.g.*, Dkt. No. 263-3 at 13 (noting that "at least some accused staff members have been transferred to other BOP facilities" and "and no BOP staff will lose their job, despite contemporaneous reports of sexual abuse by officers"). The public's right to know the full extent of BOP's response to these allegations is crucial, as it reveals how BOP handles serious misconduct and seeks to prevent those in its custody from being retaliated against.

Weighing against this significant public interest are individual staff's privacy concerns and the need to protect the integrity of ongoing investigations. As discussed above, *supra* Section 1, staff already publicly accused of misconduct, including those named in the complaint, have diminished

privacy concerns. *See Gonzalez*, 927 F. Supp. at 777 ("[O]ne's privacy interests are diminished where the matter at issue has already been made public."). Even though disclosure of names and further details may result in some degree of embarrassment or reputational harm to FCI Dublin staff under investigation, the risk is not sufficient to warrant withholding the information from the public. Public's interest in transparency and accountability, particularly in the context of such serious misconduct, outweighs these concerns.

The FCI Dublin staff in question hold positions of public trust, funded by taxpayers. These positions demand scrutiny, and these court records "must be exposed to the light of human conscience and the air of natural opinion." *Doe v. Marsalis*, 202 F.R.D. 233, 239 (N.D. Ill. 2001) (citation omitted) (finding that the public's need to review police misconduct files, including documents containing allegations of sexual assault, outweighed defendant's privacy interests). Even if some investigations do not lead to indictments or administrative consequences, public access to names and details of these investigations is essential for maintaining public confidence in a system that has already failed so many.

## CONCLUSION

Because Defendants have failed to establish compelling interests in secrecy that outweigh the public's right of access, Intervenors respectfully request that this Court lift the redactions contained in Dkt. Nos. 175, 175-2, 178-2, 363-1, 363-2, 363-3, 363-4, 363-5, and 363-6.

Dated: August 20, 2024        Respectfully submitted,

PUBLIC JUSTICE


*/s/ Jaqueline Aranda Osorno*
Jaqueline Aranda Osorno (SBN 308084)
Alexandra Z. Brodsky
Sarah Ortlip-Sommers


AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA, INC.
Angelica Salceda (SBN 296152)
Chessie Thacher (SBN 296767)
Shaila Nathu (SBN 314203)

*Attorneys for Intervenors*