**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CALIFORNIA COALITION FOR WOMEN PRISONERS, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA BUREAU OF PRISONS, ET AL.,**<br><br>Defendants. | Case No.: 4:23-cv-4155-YGR<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 326 |

According to defendant the United States of America Bureau of Prisons ("BOP"), the closure of Federal Correctional Institution Dublin and its satellite camp (collectively, "FCI Dublin") resolved this lawsuit. The BOP asserts, in a cursory, one-page declaration, both that it does not intend to re-open FCI Dublin, at least in the short-term, and that its other facilities are now providing the FCI Dublin adults in custody ("AICs") with adequate care. In other words, the BOP's position is that all is now well, and continued intervention is unnecessary.

The Court is not so easily persuaded. The notion that the constitutional injuries alleged by FCI Dublin's AICs were comprehensively remedied by the facility's closure strains credulity. Redressable injuries stemming from the AICs' experiences at FCI Dublin remain to be addressed, and the BOP is well aware of this fact.

It is against this backdrop that the Court considers, and rejects, the BOP's attempts to dismiss this case on jurisdictional and other grounds. As repeatedly stated on the record, this Court has previously taken and continues to take steps to safeguard class members by requiring the BOP to address medical, mental health, programmatic, administrative, and other failures arising out of class members' experiences at FCI Dublin. These efforts are measured, tie directly back to the allegations in the complaint, and proper under the law. Thus, having carefully considered the briefing, pleadings, and oral argument at the hearing on August 2, 2024, and for the reasons set forth below, the BOP's motion to dismiss and request for a stay of discovery are **DENIED**.

## I. BACKGROUND

To expedite issuance of this Order, the Court assumes the parties' familiarity with the underlying facts, which the Court has recounted elsewhere. (*See, e.g.*, Dkt. Nos. 222 & 300.)

## II. LEGAL FRAMEWORK

The standard on a motion to dismiss is well-known and need not be reproduced here.

## III. ANALYSIS

The government makes four primary arguments in its motion to dismiss: (i) this Court lost subject matter jurisdiction in this matter when the BOP closed FCI Dublin and sent the AICs located there to other facilities; (ii) the preliminary injunctive relief entered by this Court is void; (iii) Wendy Still's appointment as Monitor is invalid; and (iv) a stay of discovery is warranted during the pendency of this motion. The Court addresses each argument in turn.

### A. Subject Matter Jurisdiction

The Court begins by assessing the parties' arguments concerning its subject matter jurisdiction over this litigation. Briefly, defendants argue dismissal is required because the closure of FCI Dublin moots this case. Plaintiffs respond that (i) the BOP has not met their burden to show mootness, and (ii) plaintiffs' factual allegations concerning BOP policy failures as well as the BOP's continued presence in this litigation are sufficient bases upon which to find subject matter jurisdiction.[1]

"The Supreme Court has long held that 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'" *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "Voluntary cessation of a challenged practice" is one exception to this rule. Where a defendant can show, having ceased the challenged conduct, that "the practice [at issue] *cannot reasonably be expected to recur*," then the case is moot. *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (cleaned up) (emphasis supplied). This is a

---

[1] Parties' arguments concerning the timeliness of defendants' motion are irrelevant. The Court has an ongoing duty to assure itself that subject matter jurisdiction exists. *See, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Plaintiffs do not meaningfully dispute this, nor do they disagree that the Court may consider challenges to its subject matter jurisdiction at any time.

"formidable burden," and rightly so. *Id.* (cleaned up). "Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off . . . ." *Id.*

Here, defendants challenge this Court's subject matter jurisdiction in a Rule 12(b)(1) motion. They submit a declaration from the Deputy Director of the BOP, William Lothrop, in support of their assertion that all class member AICs have been transferred from FCI Dublin to other facilities; will not return; are being cared for appropriately in their new locations; and, thus, this case is moot. In doing so, they launch a factual attack on this Court's subject matter jurisdiction to hear the instant case while at the same time invoking the voluntary cessation of challenged activity exception.[2]

The Ninth Circuit set forth the procedure for considering such factual attacks:

> In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (cleaned up). Thus, resolving the instant motion requires the Court to assess whether, in light of the defendants' proffer of evidence, they qualify for the voluntary cessation of a challenged practice exception to the mootness doctrine.

Defendants argue the declaration from Deputy Director Lothrop more than satisfies their burden. The declaration states that, "BOP has no immediate plans to re-open FCI Dublin, absent first addressing factors that have caused previous issues . . . . Nevertheless, should the BOP decide

---

[2] "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Meyer*, 373 F.3d at 1039. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Because defendants append Lothrop's declaration to their motion, they have launched a factual attack. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (finding that a Rule 12(b)(1) motion constitutes a factual attack where the motion "relie[s] on extrinsic evidence and d[oes] not assert lack of subject matter jurisdiction solely on the basis of the pleadings").

3

1  to re-open FCI Dublin at a future date, it would not be as any type of BOP facility that would house
2  female [AICs]." (Dkt. No. 326-1, Defendants' Motion to Dismiss, Decl. of W. Lothrop ("Lothrop
3  Decl.") at 2.) Further, Lothrop attests that all female AICs in BOP custody are receiving the care
4  they need. (*See id.* ("The BOP is able to presently care for its female AIC population and
5  anticipates the ability to meet their future needs without requiring the use of the FCI Dublin
6  facility.").)

7        Plaintiffs provide three responses. First, they attack the premise that the BOP's allegedly
8  wrongful behavior ceased when FCI Dublin closed. Plaintiffs contend that class member AICs
9  continue to suffer constitutional injuries arising out of their experiences at FCI Dublin. Second,
10 they argue that, because class members "seek relief from long-standing [BOP] policy failures" and
11 BOP, a named defendant, can remedy those failures, the case is not moot. (Dkt. No. 338, Plaintiffs'
12 Opposition to Defendants' Motion to Dismiss ("Opp.") at 10:19.)[3] Third, plaintiffs insist that
13 Lothrop's declaration falls short. A reasonable expectation that the challenged conduct could recur
14 persists because Lothrop's declaration contains equivocal language and does not make it absolutely
15 clear that the behavior will never happen again.

16       The Court agrees with plaintiffs. Defendants have not shown that the BOP's closure of FCI
17 Dublin moots the instant case. Two main considerations drive this conclusion. First, and primarily,
18 Lothrop's one-page declaration is insufficient to assure the Court that the wrongdoing alleged by
19 plaintiffs cannot reasonably be expected to recur.

20       After conducting an initial review of the declaration, the Court determined additional
21 testimony by Lothrop was necessary to contextualize the conclusory assertions made therein. Thus,
22 Lothrop was ordered to and did appear personally at the August 2, 2024 hearing, where he was
23 examined by defendants, plaintiffs, and the Court. That examination revealed three additional
24 considerations: One, Lothrop did not know about the details of this case when he signed the
25 declaration. He was not aware, for instance, of the many outstanding issues on which the Monitor,

---

[3] The pagination referenced herein refers to the ECF-generated headers of documents filed on the docket.

4

counsel for both parties, and the BOP are currently working.[4] These include but are not limited to: (i) 126 medical alerts; (ii) 63 Medication Assisted Treatment ("MAT") alerts; (iii) 30 mental health alerts; and (iv) 137 unprocessed property claims.[5] This lack of awareness directly undermines his statement that "[t]he BOP is able to presently care for its female AIC population and anticipates the ability to meet their future needs without requiring the use of the FCI Dublin facility." (Lothrop Decl. at 2:22–24.)

Two, the BOP has not memorialized its alleged decision not to re-open FCI Dublin to house women AICs anywhere outside of Lothrop's declaration. As Lothrop admitted, the BOP has not bound itself to this decision in any meaningful or formal sense, such as by releasing a policy statement or circulating an internal memorandum. Thus nothing stops BOP from reversing course in the future, should this case be dismissed as moot. *See West Virginia v. EPA*, 597 U.S. 697, 720 (2022) (declining to dismiss a case as moot where a federal agency notified the court it voluntarily stopped certain conduct but where it "nowhere suggests that if th[e] litigation is resolved in its favor it will not" change course) (cleaned up). This added context raises the specter of convenience and undermines Lothrop's assertion that BOP will never use FCI Dublin to "house female Adults-in-Custody." (Lothrop Decl. at 2:14.)

Three, Lothrop admitted that all other BOP facilities are understaffed, yet the decision was made not to increase staffing prior to the transfer of the FCI Dublin AICs. As above, this directly undermines Lothrop's statement that "[t]he BOP is able to presently care for its female AIC population and anticipates the ability to meet their future needs without requiring the use of the FCI Dublin facility." (*Id*. at 2:22–24.) It cannot simultaneously be true that (i) no BOP facility is fully

---

[4] To the extent Lothrop testified that he had reviewed some medical and mental health documentation prior to signing the declaration, the Court discounts this testimony because he was unable, on the stand, to identify the types of records or even characterize, generally, their contents.

[5] These figures are offered as an illustrative example and were accurate as of the August 2, 2024 hearing. Other issues also remain, including: Prison Rape Elimination Act ("PREA") complaints and investigations, outstanding compassionate release applications, disciplinary records which remain to be reviewed in light of rampant due process violations, as well as unaddressed complaints regarding AICs' transportation from FCI Dublin to other BOP facilities.

staffed, and (ii) the BOP is aware of no barriers to providing the IACs in their custody with appropriate care.

In light of the above, the Court cannot conclude that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be excepted to recur." *West Virginia*, 597 U.S. at 720 (cleaned up) (emphasis supplied).

Second, plaintiffs' complaint pleads adequate facts to support subject matter jurisdiction, and the injuries alleged therein persist. Preliminarily, class members' alleged constitutional injuries "stem[] from a system-wide policy" or policies of the BOP and therefore the AICs' "transfer[s] do[] not defeat jurisdiction." *See Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008 (9th Cir. 2023). Put differently, plaintiffs' allegations of wrongdoing arise from "long-standing [BOP] policy failures that resulted in" myriad injuries.[6] (Opp. at 10:19–22.) Defendants read the amended complaint too narrowly insofar as they contend otherwise. This distinguishes this case from those in which such injuries arise *only* from treatment locally at a specific facility.

Relatedly, because such policy failures implicate the BOP, a named defendant in this litigation, and the agency remains capable of redressing class members' injuries, the case is not moot. *See Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) (rejecting the argument that a prison transfer mooted plaintiff's claims against a state prison official who "set policy for the whole California prison system" and the at-issue "policy appear[ed] to be system wide"); *Rupe v. Cate*,

---

[6] Plaintiffs argued at the hearing that their complaint is replete with examples of factual allegations that support this summation. The Court agrees. *See, e.g.*, Dkt. No. 152, First Amended Complaint ¶ 8 (detailing twelve ways "[d]efendants," which include BOP, "have failed to take critically needed action"); ¶¶ 60–69 (outlining ways "BOP" is required by federal law "to take action to prevent and appropriately respond to reports of staff sexual misconduct" and outlining that, among others, "BOP has failed to adhere to PREA regulations"); ¶ 71 ("Sexual assault and harassment have been serious, systemic problems in BOP facilities generally—and at FCI Dublin in particular—for decades. Defendants BOP and FCI Dublin officials have been aware of these problems and have failed to take action."); ¶¶ 93–98 (describing the formation of a working group created by the Deputy Attorney General "to review the Department's approach to rooting out and preventing sexual misconduct by BOP employees," which found rampant issues around sexual abuse, among others); ¶ 259 ("Defendants," including BOP, "have a non-delegable duty to ensure that the conditions of confinement in facilities operated by BOP employees and contractors are constitutionally adequate."). Thus, while plaintiffs' amended complaint focused on failures by BOP at FCI Dublin, the complaint contains allegations which envisage broader policy failures by the agency.

688 F.Supp.2d 1035, 1043 (E.D. Cal. 2010) (holding that a case was not moot where a Department of Corrections "policy forms the basis of [plaintiff's] claim" and plaintiff was "still incarcerated in a prison run by the [Department]").

Defendants' two primary counterarguments do not compel a different result. One, their argument that there is no evidence in the record to suggest "the rights of class members are currently being violated at any BOP facility" strains credulity. Defendants' counsel have been actively engaged in ongoing coordination between the parties, Court, and Still to address issues arising out of AICs' experiences at FCI Dublin. Tellingly, when given the opportunity at the hearing to deny that many outstanding issues remain to be addressed, defendants' counsel declined to do so. Counsel therefore test the bounds of their Rule 11 obligations to this Court by arguing that no redressable constitutional injuries persist.[7]

Two, defendants' argument that the Lothrop declaration is entitled to a presumption of good faith does not change the Court's analysis. While it is certainly true that government entities such as the BOP are entitled to a presumption of good faith, this is not, in the words of the Ninth Circuit, "bare deference." *Brach*, 38 F.4th at 13. Instead, the district court must "probe the record to determine whether the government has met its burden . . . ." *Id.* Here, defendants' declaration was undermined by the declarant's own words, which speak for themselves.

For the foregoing reasons, the Court determines it retains subject matter jurisdiction over this action. Defendants have not met their burden to show that the voluntary cessation exception to the mootness doctrine is applicable here. Accordingly, the motion is **DENIED**.

B. Preliminary Injunctive Relief

Next, the Court considers defendants' argument that the Court's preliminary injunctive relief is void under the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. 3626, *et seq*.

Defendants contend the PLRA contains no mechanism for "extending" preliminary injunctive relief and that any preliminary injunctive relief issued pursuant to the statute

---

[7] To the extent defendants take the position that such facts are not in the record because the Special Master Report has not been finalized, the Court views this as an insufficient basis on which to assert ignorance of the realities faced by FCI Dublin AICs in their respective new facilities.

7

automatically expires after 90 days unless it is converted into a permanent injunction. Plaintiffs generally defend the Court's preliminary injunctive relief and offer various theories for its validity.

The PLRA governs injunctive relief with respect to prison conditions and states:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter . . . an order for preliminary injunctive relief . . . . Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2). Subsection 3626(a)(1), in turn, concerns "prospective relief" relative to prison conditions, which includes preliminary injunctive relief. It bars courts from approving such relief "unless [they] find[] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* at § 3626(a)(1)(A). Courts must, in assessing such an assessment, "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id*.

The Court begins its analysis by recounting the relevant procedural history and only then turns to defendants' arguments concerning the relief's validity under the PLRA.[8]

On March 15, 2024, the Court granted in part and denied in part plaintiffs' motion for a preliminary injunction to safeguard the FCI Dublin AICs' constitutional rights. (Dkt. No. 222.) The Court did not, at that time, appoint a Special Master, although it indicated its intention to do so. (*Id.* at 1.) Later, following a further status conference to discuss the matter of appointment, and as required by the PLRA, the Court provided the parties the opportunity to propose individuals who they recommended for the role and to strike suggestions by the other side. *See generally* 18 U.S.C. § 3626(f)(2)(A)–(C) (setting forth the process for the appointment of a Special Master in prison conditions cases governed by the PRLA). The Court then asked them to complete a brief initial assessment and interviewed the remaining candidates. (Dkt. No. 232 at 2.) The selection process concluded when, on April 5, 2024, the Court appointed Wendy Still as Special Master. (Dkt. No.

---

[8] Although the Court summarizes this background herein, it is more completely described in the Court's order dated July 1, 2024. *See* Dkt. No. 336 at 1–3.

248 at 1:17–18.) The appointment order closed by stating, "For the purposes of Title 18 U.S.C. § 3626(a)(2), the 90-day time period shall be deemed to begin as of the date of this order." (*Id.* at 2:16–17.) Thus, the preliminary injunctive relief was set to automatically expire on July 4, 2024, 90 days later.[9]

On July 1, 2024, several days before expiry, the Court issued an order extending the relief by another 90 days, to October 2, 2024. (Dkt. No. 336 at 7.) There, the Court made the required findings under Subsection 3626(a)(1)(A) concerning the nature of the relief and in doing so heeded the statute's command to afford substantial weight to the impact of the relief on the operation of the criminal justice system. The Court determined "the preliminary injunctive relief previously ordered, and since clarified by the Court, [was] sufficiently tailored and [was] the least intrusive means necessary to correct" the constitutional violations alleged in this case. (*Id.* at 7:7–9.) "Further," the Court wrote, "the need for such relief is not outweighed by an adverse impact on public safety or the operation of the BOP." (*Id.* at 7:9–10.)

Thus, the record reflects the Court's view that the PLRA permits district courts to extend preliminary injunctive relief beyond the initial 90 days so long as (i) "the court makes the findings required under subsection (a)(1) for the entry of prospective relief," and (ii) "makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626)(a)(2). The first of these requirements was satisfied by the factual analyses in the Court's July 1, 2024 order. (*See* Dkt. No. 336 at 4–7.) The second of these requirements was satisfied by the fact that Court did not issue a provisional or temporary order but specified that the injunctive relief previously ordered, and as clarified by the Court in subsequent directions to the BOP, continued to govern.

Having set forth the above background, the Court turns to the key issue raised by defendants: whether the Court correctly interpreted Subsection 3626(a)(2) in its prior orders. In short, it did. The Court's interpretation is consistent with the plain text of the statute. Three

---

[9] Defendants have recently taken the position that the 90-day clock started running earlier. This argument was not raised contemporaneously with the Court's April 5, 2024 order. Thus, to the extent defendants now challenge when the initial preliminary injunctive relief period began and stopped, they have waived that argument.

9

considerations drive this analysis. One, nothing in the statute contravenes the Court's interpretation, which is based on the two-part test for when preliminary junctive relief shall not automatically expire. *See* 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.").

Two, the statute does not state that preliminary injunctive relief must be converted into a permanent injunction in order to survive automatic expiry on the 91st day. Indeed, the statute nowhere uses the phrase "permanent injunction." This is particularly notable given Congress and the Federal Rules of Civil Procedure have drawn a distinction between preliminary and permanent injunctions in other contexts.

Three, practical and policy considerations support the Court's interpretation. Were the Court to credit defendants' arguments, this would mean that preliminary injunctions in the prison context are limited, in all cases, to 90 days. Further protection for AICs implicated by the litigation would therefore only come in the form of a permanent injunction. This strains credulity. Permanent injunctions are typically the result of lengthy civil proceedings, often including trials. Ninety days is an exceedingly short window in which to definitively adjudicate the issue of equitable relief. Given this, the Court is not persuaded that Congress's intent in drafting Subsection 3626(a)(2) was to require that any preliminary injunctive relief be converted into permanent injunctive relief in order to remain in effect longer than 90 days.[10]

The caselaw cited by the parties and identified by the Court[11] does not compel a different result. The Court's evaluation of these cases is consistent with its finding. It notes herein the three cases that appear to deal with Subsection 3626(a)(2) in the greatest detail: (i) *Ahlman v. Barnes*, (ii)

---

[10] Further, despite repeated offers by the Court to advance the trial schedule in this matter, the defendants have declined. Defendants' refusal to submit to an expedited schedule cannot be used as both a sword and a shield.

[11] The Court conducted an expansive review of cases that cite to Subsection 3626(a)(2). The cases discussed herein reflect those that the parties invoke in their briefs as well as those identified by the Court.

*Mayweathers v. Newland*, and (iii) *Georgia Advocacy Office v. Jackson*. Again, none change the outcome of this order.

### i.  *Ahlman v. Barnes*

There, the district court issued a PLRA preliminary injunction in connection with claims involving Orange County jails' COVID-19 measures. *Ahlman v. Barnes*, 20 F.4th 489, 491 (9th Cir. 2021). The district court denied a stay pending appeal, and so did the Ninth Circuit. *Id.* at 492. The Court of Appeals remanded the case for additional determinations related to the injunction. *Id.* On remand, the district court left the preliminary injunction in place but granted plaintiffs' motion for expedited discovery. *Id.* Defendants proceeded to file a new "appeal of the district court's orders on remand." *Id.* "In the meantime, however, the United States Supreme Court granted the [defendants'] emergency application, staying the preliminary injunction pending disposition of the appeal in the Ninth Circuit and, as appropriate, at the Supreme Court." *Id.* at 492–93. "Plaintiffs then moved to dismiss [defendants'] appeal as moot. They argue[d] that the preliminary injunction automatically expired 90 days after its issuance under the PLRA." *Id.* at 493. Defendants responded that "the appeal is not moot because the Supreme Court stay 'suspend[s] in place' the injunction, thus keeping it alive beyond its expiration . . . ." *Id.*

Given this, the Ninth Circuit's analysis proceeded in two steps: (i) first, it applied the text of Subsection 3626(a)(2) to the facts of the case; and (ii) second, it considered the status of the Supreme Court's emergency stay.

With respect to the first step, the Ninth Circuit found the language of the PLRA straightforward, writing, "The statutory text of the PLRA unambiguously states that any preliminary injunction expires automatically after 90 days unless the district court makes subsequent required findings and makes the order final." *Id.* Because "[t]he district court *did not* make [the required] findings under [Subsection] 3626(a)(1)(A)," the Court of Appeals had "little pause in holding that the preliminary injunction ha[d] expired." *Id.* (emphasis supplied).

With respect to the second step, the Ninth Circuit considered a separate question: whether the Supreme Court's emergency stay tolled the 90-day limit set forth in the PLRA. *Id.* at 494. The Court of Appeals concluded that Subsection 3626(a)(2) "displace[d] the courts' traditional

11

1  equitable power, which includes the power for a stay of the injunction to extend it beyond 90 days."
2  *Id.* This is because, "[u]nder the statute, a preliminary injunction shall automatically expire 90 days
3  after entry 'unless the court makes the findings required under subsection (a)(1) for the entry of
4  prospective relief and makes the order final before the expiration of the 90-day period.'" *Id.*
5  (quoting 18 U.S.C. § 3626(a)(2)).

6  In sum, the Ninth Circuit rested its decision in large part on the fact that the district court
7  had not made the findings required under the PLRA for the issuance of prospective relief. It did not
8  opine on or clarify the meaning of "makes the order final" in the context of Subsection 3626(a)(2).
9  Where, as here, the required findings have been made (*see* Dkt. No. 336), *Ahlman* is of little import
10 and certainly does not foreclose the interpretation taken by this Court. Further, the phrasing of the
11 Court of Appeals' opinion in fact suggests an openness to the notion of *extending* injunctive relief,
12 as this Court has done. *See Ahlman*, 20 F.4th at 494 ("Section 3626(a)(2) details the only way to
13 *extend* an injunction issued under the PLRA beyond 90 days.") (emphasis supplied). *Ahlman* is
14 therefore consistent with the Court's approach.

15  *ii.   Mayweathers v. Newland*

16  There, the district court issued a preliminary injunction "forbad[ing] prison administrators"
17 at California State Prison Solano, "from disciplining inmates for missing work to attend hour-long
18 Friday Sabbath services . . . ." *Mayweathers v. Newland*, 258 F.3d 930, 933 (9th Cir. 2001).
19 Defendants timely filed an interlocutory appeal of the injunction. *Id.* at 934. The preliminary
20 injunction remained in place for 90 days until, and at which point, the district court "entered an
21 identical preliminary injunction." *Id.* Defendants filed an interlocutory appeal of that new
22 injunction. *Id.* The Ninth Circuit consolidated the appeals and took argument on, among others,
23 whether or not the district court complied with the PLRA by re-issuing an existing preliminary
24 injunction to effectively ensure injunctive relief remained in force. *Id.* at 934, 936.

25  The Ninth Circuit's analysis as to Subsection 3626(a)(2) was brief:

26  Because the district court in the present case did not make either of the preliminary
    injunctions at issue final within 90 days, both injunctions expired pursuant to this provision.
27
28  The district court did not, however, violate the terms of the statute by entering the second
    injunction after the first one expired. Nothing in the statute limits the number of times a

court may enter preliminary relief. If anything, the provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted. The imposition of this burden conforms with how the PLRA governs the termination of final prospective relief. *See* 18 U.S.C. § 3626(b) (providing for the termination of final injunctions by motion of a party unless 'the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation'). Therefore, the district court's entry of the second preliminary injunction did not violate the PLRA.

*Id.* at 936.

This analysis effectively stands for two propositions: One, preliminary injunctions entered under the PLRA automatically expire after 90 days if they are not made final. Two, district courts may re-issue identical preliminary injunctions. As to the former, this is simply a rearticulation of the statutory text. The Ninth Circuit did not clarify the meaning of "final" in this circuit. As to the latter, it is notable that the Court of Appeals' chief concern appears to have been ensuring that the previously entered preliminary injunctive relief remained necessary.

Given these, there is no tension between the Court's interpretation of the statutory text as set forth herein and that of the Ninth Circuit's. Both the Court of Appeals and this Court are guided by the first principle that preliminary injunctive relief shall not be entered where unwarranted but may be necessary for more than 90 days.[12] Plus, to the extent the court in *Mayweathers* discussed the meaning of a "final" order, it did so in passing. Accordingly, *Mayweather* is not inapposite.

### iii. *Georgia Advocacy Office v. Jackson*

Before examining the last of these three cases, the Court notes that its procedural history is unique. Shortly after the Eleventh Circuit decided *Georgia Advocacy Office,* but before the mandate issued, the parties settled. The Court of Appeals vacated its opinion shortly thereafter. *Georgia*

---

[12] Further, *Mayweathers* is not the only Ninth Circuit case to reflect this awareness. *See also Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 926 (9th Cir. 2021) (suggesting preliminary injunctive relief under the PLRA can be extended by writing, "There is no indication that plaintiffs moved the district court to *extend* its injunction past the 90-day period. The district court explained that its preliminary injunction had expired automatically under the PLRA because the court had not made the preliminary injunction a final injunction, nor had the court *renewed* it.") (emphasis supplied).

13

*Advocacy Office v. Jackson*, 4 F.4th 1200 (11th Cir. 2021), *vacated* 33 F.4th 1325 (11th Cir. 2022). The BOP cites to this case without grappling with the fact that, given this background, it is not only non-precedential out-of-circuit authority, but the Eleventh Circuit effectively struck the opinion in its totality. Even were the Court to consider the merits of the opinion, however, *Georgia Advocacy Office* is distinguishable and wrongly decided.

There, the district court "entered a preliminary injunction requiring Fulton County Jail officials to provide regular out-of-cell time to female inmates with psychiatric disabilities and to improve sanitary conditions in their cells." *Georgia Advocacy Office v. Jackson*, 4 F.4th at 1203. The district court, when issuing the injunction, noted that "the PLRA require[s] additional 'particularized findings,' and indicated that it would make those findings in a 'forthcoming opinion.'" *Id.* at 1205. That order, styled as an "addendum order," came 62 days later. *Id.*

Defendants took an interlocutory appeal from the district court's orders and argued to the Eleventh Circuit that: (i) the injunction was invalid because it did not comply with the PLRA's requirements for prospective relief under Subsection 3626(a)(1), and (ii) the injunction had expired by operation of law after 90 days. *Id.* at 1205–07. As to the latter, defendants asserted that "making the order 'final' [under the PLRA] means converting the preliminary injunction into a permanent injunction." *Id.* at 1207. Because this did not happen, they claimed the automatic expiration provision of Subsection 3626(a)(2) controls. Plaintiffs responded that the injunction had not expired because Subsection 3626(a)(2) simply requires that a district court "finalize a preliminary injunction's terms to ensure that they comply with . . . [the] need-narrowness-intrusiveness criteria" in order for the 90-day clock to be reset. *Id.*

The Court of Appeals sided with the defendants, reasoning based on a dictionary definition that, "an order is not 'final' . . . unless it ends a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's finding but not precluding an appeal." *Id.* at 1211 (cleaned up). In doing so, the court acknowledged two important countervailing considerations: First, it conceded that Congress's use of the phrase "making' a preliminary injunction order final is not the clearest way to speak of entering a permanent injunction." *Id.* at 1214. Second, the Court of Appeals wrote, "[w]e

14

acknowledge that 90 days is a short amount of time to reach a final decision on the merits of a complex civil case about prison conditions. Nonetheless, that is what the text of [Subsection] 3626(a)(2) calls for." *Id.* at 1215.

Two things stand out about the Eleventh Circuit's opinion: First, the history of that case is distinct. There, the district court issued a preliminary injunction shortly after a three-day evidentiary hearing but did not provide the "particularized findings" required under the PLRA until about two months later. Given the point at which the 90-day clock begins to run is relevant to an assessment of injunctive relief under the PLRA, this procedural posture arguably distinguishes the instant case from *Georgia Advocacy Office*, even though the Eleventh Circuit did not focus on this point. Second, the Eleventh Circuit read "final" as synonymous with "permanent," even though the statutory text does not support such an inference.[13] Further, practical and policy considerations weigh against that interpretation, as the Court of Appeals actually acknowledged. Given this, and in light of both the analysis above and the non-precedential nature of the opinion, the Court declines to treat the Eleventh Circuit's opinion as persuasive.

For the foregoing reasons, the Court maintains its interpretation of Subsection 3626(a)(2) based on the plain text of the statute. The BOP fails to persuade otherwise. Accordingly, defendants' motion is **DENIED** insofar as its seeks the invalidation of the Court's prior orders on the preliminary injunctive relief.

---

[13] It is also worth noting that that Eleventh Circuit Judge Charles R. Wilson dissented on this point:

> I agree with the Plaintiffs that the more natural interpretation of 'final' here is 'not to be processed further' and 'utilized as is.' *Final*, Webster's Third New International Dictionary 851 (1993). In the context of § 3626(a)(2), a preliminary injunction is finalized, and does not expire, if within 90 days of issuance the district court makes all required findings and issues a complete and final preliminary injunction order.
>
> The majority concedes that this interpretation 'has some merit.' Maj. Op. at 1212. This is not only because Congress could have imposed a firm 90-day limit on preliminary injunctions in a much clearer and simpler way (by simply removing the 'unless' clause altogether) but also because 'making an order final' is an odd way to talk about entering a permanent injunction (which is ordinarily entered after a full trial on the merits).

*Georgia Advocacy Office*, 4 F.4th at 1217 (Wilson, J., dissenting).

### C. Appointment of Monitor

Lastly, the Court examines defendants' argument that Still's appointment as Monitor is invalid insofar as it "was issued without notice and an opportunity to be heard." (Dkt. No. 326, Defendants' Motion to Dismiss ("Mot.") at 24:3–5.)

This argument relies on Federal Rule of Civil Procedure 53, read in conjunction with the PLRA. Rule 53 governs the appointment of Special Masters and provides, in relevant part, that, "Before appointing a master, the court must give the parties notice and an opportunity to be heard." The PLRA in turn provides that "the term 'special master' means any person appointed by a Federal court pursuant to Rule 53 of the Federal Rules of Civil Procedure or pursuant to any inherent power of the court to exercise the powers of a master, regardless of the title or description given by the court . . . ." 18 U.S.C. § 3626(g)(8).

Here, the Court appointed Still as Monitor following the completion of "her work on-site at FCI Dublin." (Dkt. No. 308 at 1:20.) The Court found "that the monitoring of the adults in custody . . . who left the facility for other institutions is now required." (*Id.* at 1:21–22.) Based thereon, the Court "exercise[d] its inherent authority" to name Still "Monitor of BOP's compliance with court orders and to ensure that FCI Dublin AICs receive appropriate follow up care and support in their new facilities." (*Id.* at 1:22–24.) In doing so, the Court emphasized that the role of Monitor was "distinct from that of a Special Master," in which capacity Still was tasked with "preparing a comprehensive report" concerning conditions at the facility. (*Id.* at 1:24–2:2.) Thus, whereas Still's role as a Special Master explicitly contemplated a fact-finding function and therefore triggered an obligation to provide the parties notice and an opportunity to be heard, her role as Monitor did not. *See generally* Fed. R. Civ. P. 53 (describing Special Masters' fact-finding roles, including with respect to hearings on factual disputes).

Defendants' three primary arguments to the contrary do not compel a different result. One, defendants assert that another judge in this district, in a separate proceeding, conflated appointments of Special Masters and Monitors. *See, e.g.*, *Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*, 112 F.R.D. 120, 122 (N.D. Cal. 1986). This argument fails to persuade insofar as this Court explicitly noted the distinction between Still's roles as Special Master and Monitor.

Thus, there is no blurring of lines. Two, defendants cite authority for the proposition that appointments made pursuant to Rule 53 require that the Court provide both parties an opportunity to be heard. However, this argument, again, is premised on a conflation of the Monitor and Special Master roles, only the latter of which is governed by Rule 53. Three, defendants contend that Still's appointment as Monitor is illegitimate insofar as it represents a form of "prospective relief" under the PLRA and is not accompanied by certain factual findings required under the statute. This argument fails to persuade. Appointing a Monitor to ensure compliance with court orders is not a form of relief. It is a means of achieving the goals of previously ordered relief.

Accordingly, defendants' objections to Still's appointment are **OVERRULED**.

D. Stay of Discovery

Lastly, defendants request a stay of discovery pending resolution of their motion. In short, they contend plaintiffs: (i) have not adequately pled subject matter jurisdiction, (ii) could not further amend their complaint to do so, and (iii) for that reason, defendants are entitled to relief from their discovery obligations. Plaintiffs respond that defendants' motion lacks merit and, thus, no stay is necessary.

District courts have "wide discretion in controlling discovery," *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and may choose to stay discovery where good cause exists for doing so. Fed. R. Civ. P. 26(c)(1)(A). Courts in this district have resorted to a two-pronged test to determine whether to exercise their discretion and stay discovery pending resolution of a substantive motion. *Tavantzis v. Am. Airlines, Inc.*, No. 23-cv-05607-BLF, 2024 WL 812012, at *1 (N.D. Cal. Feb. 23, 2024) (collecting cases employing such an approach). First, they consider whether the motion "is potentially dispositive of the entire case." *Optronic Tech., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, No. 5:16-cv-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018). Second, they assess whether the pending motion can be decided without additional discovery.[14] *Id.* If either of these prerequisites is not met, courts permit discovery to proceed.

---

[14] "Although not one of the two factors, courts in this circuit sometimes also consider whether a stay of discovery will promote efficiency or conserve the parties' resources, recognizing that engaging in discovery prior to adjudication of a strong motion to dismiss would represent a potential waste of resources." *Tavantzis*, 2024 WL 812012, at *1 (cleaned up). While the Court

*Tavantzis*, 2024 WL 812012, at *1. Given the nature of the test, courts "must take a 'preliminary peek' at the merits of the pending motion to assess whether a stay is warranted." *Id.* (citation omitted).

Prior to adjudicating the instant motion, the Court took the required "preliminary peek" at the merits of the motion to determine whether a stay of discovery was warranted. It concluded that, because of the deficiencies identified herein, the motion was not potentially dispositive of this case. As such, it failed this district's two-part test. Thus, as telegraphed at oral argument, a stay of discovery would be inappropriate. The request is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the BOP's motion to dismiss is **DENIED**. The Court retains jurisdiction over these proceedings; the preliminary injunctive relief remains in force; Still's appointment as Monitor is valid; and no stay of discovery is warranted.

This terminates Dkt. No. 326.

**IT IS SO ORDERED**.

Date: September 5, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

does not consider this factor in the above analysis, it would not change the outcome since the Court does not consider the instant motion "strong" in the first instance.