**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CALIFORNIA COALITION FOR WOMEN PRISONERS, ET AL.,**<br><br>　　Plaintiffs,<br><br>　　v.<br><br>**UNITED STATES OF AMERICA BUREAU OF PRISONS, ET AL.,**<br><br>　　Defendants. | Case No.: 4:23-cv-4155-YGR<br><br>**ORDER RE OUTSTANDING SEALING DISPUTES**<br><br>Re: Dkt. No. 236, 239, 242, 244, 247, 317 & 339. |

Before the Court are numerous sealing and unsealing requests, including from the intervenors. This Order resolves most of the requests currently pending.

## MOTION TO UNSEAL DOCUMENTS (DKT. NO. 317)

### I. BACKGROUND

On June 11, 2024, The Appeal, Inc., reporter Victoria Law, the American Civil Liberties Union of Northern California, and the First Amendment Coalition (collectively, "Intervenors") moved to intervene in this action for the limited purposes of unsealing documents and protecting the public's access to court proceedings. (Dkt. No. 316.) Intervenors also filed a motion to unseal court documents on the same day. (Dkt. No. 317.)

On July 26, 2024, the Court granted their unopposed request to intervene and granted in part their unsealing motion as to those documents that both Intervenors and defendants agreed should be made public. (Dkt. Nos. 354 & 355.) The Court ordered additional briefing as to the balance of the documents sought to be unsealed by Intervenors. (Dkt. No. 354 at 3.)

On August 2, 2024, the Court held a hearing on several pending motions, including Intervenors' outstanding unsealing requests. The parties came to additional agreements at the hearing as to documents and/or portions thereof that should be made public. The Court ordered that

1 unsealed versions of those documents be filed on the docket, and the defendants timely complied.
2 (*See* Dkt. Nos. 360, 363 & 368.)
3 Following the hearing, the Court allowed further briefing if unsealing disputes remained.
4 The parties' recent filings underscore the limited nature of the outstanding unsealing disputes. (*See*
5 Dkt. Nos. 378 & 380.) In short, Intervenors and defendants disagree as to whether excerpts of nine
6 documents should be unsealed and/or unredacted, namely: Dkts. 175, 175-2, 178-2, 363-1, 363-2,
7 363-3, 363-4, 363-5 & 363-6.

**II.    LEGAL FRAMEWORK**

The Ninth Circuit addressed the public's right of access to judicial records in civil cases in *San Jose Mercury News*. There, the court wrote:

> In *Nixon v. Warner Communications*, the Supreme Court recognized a federal common law right to inspect and copy public records and documents . . . . We have expressly recognized that the federal common law right of access extends to pretrial documents filed in civil cases and that the right of access applies prior to judgment in the criminal context . . . .
>
> That such a federal common law right exists, however, does not mandate disclosure in all cases. The federal common law right of access is not absolute, and is not entitled to the same level of protection accorded a constitutional right. Thus, although the common law right creates a strong presumption in favor of access, the presumption can be overcome by sufficiently important countervailing interests. Where the district court conscientiously undertakes this balancing test, basing its decision on compelling reasons and specific factual findings, its determination will be reviewed only for abuse of discretion.

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1102 (9th Cir. 1999) (cleaned up).

Thus, as set forth above, when, as here, Intervenors seek to vindicate the presumptive public right of access to civil proceedings, the party seeking to overcome such a presumption must identify "compelling reasons" supporting sealing.[1] When considering whether compelling reasons

---

[1] Intervenors acknowledge that caselaw supporting the presumptive public right of access is grounded in common law, the First Amendment, and/or both. They also acknowledge that the Ninth Circuit recognized this in *Forbes Media LLC v. United States*, writing, "Our cases have not been precise in detailing how the First Amendment and common law rights may differ in scope once the rights attach, although we have observed that '[t]he First Amendment is generally understood to provide a stronger right of access than the common law.'" 61 F.4th 1072, 1081 (9th Cir. 2023) (quoting *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1197 n.7 (9th Cir. 2011)). In the First Amendment context, for example, the presumption can be "overcome by a

have been offered, courts must "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quotation and citation omitted) (alteration in original). While district courts retain discretion to determine "[w]hat constitutes a 'compelling reason,'" *id.*, should it elect to seal the at-issue records, the court must "'base its decision [to seal] on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Courts have found such compelling reasons for sealing where the documents at issue contain information pertaining to the substance of a government investigation or those under investigation. *See, e.g.*, *In re Sealed Search Warrant*, 622 F.Supp.3d 1257, 1262 (S.D. Fla. 2022) ("Protecting the integrity and secrecy of an ongoing criminal investigation is a well-recognized compelling governmental interest.") (collecting cases).

### III.   ANALYSIS

As set forth above, Intervenors and defendants dispute whether excerpts of nine documents should remain under seal and/or redacted. These documents fall into two broad categories, documents pertaining to (i) ongoing administrative or criminal investigations, generally; and (ii) Federal Correctional Institution Dublin and its satellite camp (collectively, "FCI Dublin") staff's actions surrounding the transfer of adult in custody ("AIC") R.F. after she testified at the preliminary injunction evidentiary hearing.[2] The Court examines each in turn.

///

---

compelling governmental interest." *In re Copley Press, Inc.*, 518 F.3d 1022, 1026–27 (9th Cir. 2008). In the common law context, "the party seeking to overcome" the presumption must similarly "point to 'compelling reasons' supporting sealing, supported by specific factual findings." *Forbes Media*, 61 F.4th at 1081. Because the Court agrees with Intervenors that any distinction between these tests is immaterial, it simply considers whether the defendants have set forth compelling reasons justifying sealing.

[2] The division of the remaining unsealing disputes into these two categories was first made in Intervenors' second reply. *See* Dkt. No. 378. Defendants did not organize their response accordingly, although they also did not dispute Intervenors' categorization. For efficiency and the convenience of the reader, the Court follows the Intervenors' organizational approach.

**A. Documents Related to Ongoing Administrative or Criminal Investigations**

In this category, Intervenors dispute the redactions defendants applied to five documents pertaining to ongoing administrative or criminal investigations: Dkt. Nos. 363-1, 363-2, 363-4, 363-5 & 363-6.[3]

Intervenors make four primary arguments for unsealing in their recent filings: First, the officials' privacy interests are diminished because allegations of misconduct and many of their names are already public. Second, their privacy interests are diminished as government employees. Third, the defendants do not explain, specifically, why disclosure of the sealed information could jeopardize the investigations. Fourth, the public has a significant interest in information relating to ongoing investigations involving FCI Dublin and this interest is not outweighed by any compelling reason for secrecy.

Defendants counter with three arguments: First, they refer to an additional declaration from Beth Reese, Chief of the Bureau of Prisons' ("BOP") Office of Internal Affairs ("OIA"). Reese reviewed the relevant documents and concluded that the information that is sealed and/or redacted may not be shared publicly at this time "[d]ue to the sensitivity and privacy implications inherent in all matters referred to OIA, regardless of whether they are ultimately investigated by OIA or [Department of Justice ("DOJ") Office of Inspector General ("OIG")]." (Dkt. No. 358-1 ¶ 4.) Second, defendants cite to a DOJ policy manual for support. It states, in relevant part:

> Much of DOJ's work involves non-public, sensitive matters. Disseminating non-public, sensitive information about DOJ matters could violate federal laws, employee nondisclosure agreements, and individual privacy rights; put a witness or law enforcement officer in danger; jeopardize an investigation or case; prejudice the rights of a defendant; or unfairly damage the reputation of a person.

---

[3] The unredacted versions are listed herein. However, with respect to each document, the government failed to comply with this district's Civil Local Rules and highlight the redacted portions. This required the cumbersome process of reviewing the redacted versus unredacted versions side-by-side to determine which portion was at issue:
The unredacted version of Dkt. No. 363-1 is Dkt. No. 45-5 filed November 13, 2023.
The unredacted version of Dkt. No. 363-2 is Dkt. No. 45-4 filed November 13, 2023.
The unredacted version of Dkt. No. 363-4 is Dkt. No. 197-3 filed March 4, 2024.
The unredacted version of Dkt. No. 363-5 is Dkt. No. 197-6 filed March 4, 2024.
The unredacted version of Dkt. No. 363-6 is Dkt. No. 206-3 filed March 7, 2024.

(Dkt. No. 380 at 3:4–6 (quoting Justice Manual, 1-7.000).) Third, defendants contend sealing protects the reputational and privacy interests of the BOP employees mentioned in the documents.[4] In the alternative, defendants ask that, "[r]ather than ordering unsealing *en masse* now," or waiting several years after the case is closed to unseal, "the Court could order updates on the status of these investigations and excerpts can be unsealed as the investigations conclude." (*Id.* at 4:18–20.)

Preliminarily, the Court has reviewed the at-issue documents and confirms the categories of sealing mentioned above. The Court agrees that an ongoing investigation could be compromised if the government's own information is disclosed and that government employees do have privacy and reputational rights during internal or criminal investigations. Further, some of the information which defendants seeks to seal concerns (i) persons represented by counsel and from whom the Court has not heard and (ii) information for which defendants are not the source. Thus, the Court provides a document-by-document analysis.

**Dkt. Nos. 363-1 (Memorandum) & 363-2 (Declaration).** Here, the defendants redacted information pertaining to the employment status of FCI Dublin officers accused of staff sexual abuse, such as whether they are on administrative leave, are no longer employed by the Bureau of Prisons, and/or are being investigated. That the surrounding text may provide context does not control. Confirmation of information differs from assumptions.

**By Monday, September 30, 2024,** defendants shall provide an update of all individuals referenced in paragraph 36 and 38 of Docket No. 363-2 upon which redactions in Docket No. 363-1 are based. The information shall not only include when the investigation began but the anticipated resolution. The Court is considering whether it will have a deadline by which the government can complete its investigation before the balance yields to disclosure.

**By September 26, 2024,** as the following subparagraphs do not relate to any ongoing investigation, they shall be filed publicly: Docket No. 363-2 paragraph 38.ii; 38.vi; 38.vii; 38.viii; 38.ix; 38.xii; and 38.xiv as well as all related portions on Docket No. 363-1.

Intervenors' motion to unseal is therefore **GRANTED IN PART** as to Dkt. Nos. 363-1 and 363-2.

---

[4] Defendants' reference to the Privacy Act does not provide blanket protection. The Act permits disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).

**Dkt. Nos. 363-4 & 363-5:** Dkt. Nos. 363-4 and 363-5 refer to an AIC but not to an identifiable BOP employee. Other than the AIC's full name and register number, the Court is inclined to unseal the documents. By **Tuesday, September 24, 2024**, plaintiffs' counsel shall confirm that there is no objection to unsealing. The Court will reserve pending any comments from the plaintiffs' counsel.

**Dkt. No. 363-6** does concern an ongoing investigation of staff sexual abuse. **By Monday, September 30, 2024,** defendant shall provide an update on the individual referenced. The information shall not only include when the investigation began but the anticipated resolution. Defendant shall immediately provide an unredacted copy to plaintiffs' counsel under the protective order.

Accordingly, the Court **DEFERS** ruling as to Dkt. Nos. 363-4, 363-5 & 363-6. Intervenors' unsealing motion is **GRANTED IN PART** as to Dkt. Nos. 363-1 & 363-2.

### B. Documents Related to the Transfer of a Specific AIC

Intervenors also seek to unseal documents relating to FCI Dublin staff's actions surrounding the transfer of R.F. after she testified at the preliminary injunction evidentiary hearing. The relevant documents are Dkt. Nos. 175 (Memorandum), 175-2 (Declaration of Dennis M. Wong), 178-3[5] (Memorandum), & 363-3 (Declaration of Patrick Deveney).

Intervenors make similar arguments here: First, FCI Dublin executive staff "have diminished privacy interests where allegations of their wrongdoing are public." (Dkt. No. 378 at 8:17–18.) Second, defendants have not explained why release of the information contained in these documents/redactions could jeopardize the investigation. Third, the public has a significant interest in information relating to ongoing investigations involving FCI Dublin and this interest is not outweighed by any compelling reason for secrecy. Defendants made the same counterarguments as those discussed above.

---

[5] Defendants make reference to Dkt. No. 178-2 but that document is already unsealed. Intervenors correctly note that Dkt. No. 178-3, which is currently sealed, is the document in dispute.

**Dkt. No. 175 & 175-2:** The Court reviewed the documents at issue and compared the redacted and unredacted versions.[6] Preliminarily, Wong's declaration provides information relevant to events in this Court and actions he took when investigating the events leading to the transfer of a specific AIC away from FCI Dublin. This information is then summarized, and his declaration cited, in the memorandum filed at Dkt. No. 175.

In summary, the sealed content is minimal and pertains to steps taken by Wong to better understand why R.F. was transferred so that he could assist in responding to a Court request. Three things are noteworthy about the currently sealed content: One, Wong himself is not under any sort of investigation and therefore has no privacy interests in the disclosure of this information. Two, no sensitive personal details as to R.F are included. Three, the Reese declarations to which the defendants refer do not explicitly address R.F.'s transfer, aside from indicating that Reese is generally aware of those circumstances. (*See* Dkt. Nos. 206-3 & 358-1.) Thus, defendants overreach in terms of their justifications for sealing. They have not demonstrated compelling reasons that outweigh the public's interest in the operation of this nation's prisons.

Accordingly, the motion to unseal is **GRANTED IN PART** as to Dkt. Nos. 175 & 175-2. Defendants **SHALL** file unredacted versions of Dkt. Nos. 175 & 175-2 except that R.F.'s full name and register number shall remain redacted.

**Dkt. No. 363-3:** Dkt. No. 176-5, the unredacted version of Dkt. No. 363-3, refers not to BOP employees but to multiple AICs, including their alleged experiences of staff sexual abuse, own purported misconduct, and convictions. By **Tuesday, September 24, 2024**, plaintiffs' counsel shall confirm that there is no objection to unsealing. The Court will defer ruling pending receipt of that notice and any comments from the plaintiffs' counsel. That said, given the information already unsealed and disclosed during the evidentiary hearings, the following paragraphs **SHALL** be

---

[6] The unredacted version of Dkt. No. 175 is Dkt. No. 176-3. The unredacted version of Dkt. No. 175-2 is Dkt. No. 176-4. The unredacted version of Dkt. No. 363-3 is Dkt. No. 176-5. The unredacted version of Dkt. No. 178-2 is Dkt. No. 178-3. Here, the government properly highlighted the redacted portions of the documents in the unredacted versions.

unsealed: paragraphs 8, 11, 21, and 22 (sentence beginning at 13 through 16). The motion is therefore **GRANTED IN PART**, pending a response from plaintiffs' counsel.

**Dkt. No. 178-3:** Given the Court's prior rulings, the motion is **GRANTED**, and this document **SHALL** be unsealed.

Accordingly, Intervenors' motion is **GRANTED IN PART** as to Dkt. Nos. 175, 175-2 & 363-3. The motion is **GRANTED** as to Dkt. No. 178-3. As stated herein, the filing party **SHALL** file the documents at those docket entries with versions that redact only the AIC's full name and register number.[7]

\*   \*   \*

In addition, the Court notes that Intervenors' original motion also requests that the Court "enter minute orders for the closed proceedings held between April 15, 2024, and May 8, 2024." (Dkt. No. 317 at 2.) Despite this, neither Intervenors nor defendants address the topic in their post-hearing filings. The Court in fact posted sealed minute entries following each status conference held during the relevant period. (*See* Dkt. Nos. 253, 261, 265–66, 288–89, 291, 293–94.) The Court reviewed those minute entries and discerns no ground for keeping them under seal given FCI Dublin has now closed. Further, the Court construes defendants' silence on this topic as a concession that unsealing is appropriate.

Thus, Intervenors' motion is **GRANTED** as to these minute entries, which shall be **UNSEALED**. The clerk of the court is ordered to unseal the minute entries.

///
///
///
///

---

[7] Defendants request that the Court consider permitting them to withdraw certain of the documents sought to be unsealed by Intervenors if the Court is inclined to grant Intervenors' requests. The Court declines to do so. The parties have offered significant argument in writing and at the August 2, 2024 hearing on the topics of sealing and unsealing of documents. A definitive ruling is therefore appropriate. To the extent the defendants wished to withdraw certain documents, they should have raised such a request with the Court affirmatively and earlier. Moreover, the Court adjudicated an order to show cause based thereon.

8

**REMAINING OUTSTANDING SEALING DISPUTES**

Next, the Court addresses other outstanding sealing requests (Dkt. Nos. 236, 239, 242, 244, 247 & 339.)[8] Each are considered under the above referenced legal framework.

A. Dkt. No. 236

On March 27, 2024, defendants filed an administrative motion for *in camera* review and to file a document under seal. (Dkt. No. 236.) The at-issue document is an exhibit to a notice of *ex parte* communication lodged by the defendants.

Defendants later conceded that such document, filed at Dkt. No. 236-4, should be unsealed. (Dkt. No. 351-1 at 9.) It appears Dkt. No. 236-4 was subsequently unsealed based on defendants' concession, although the motion was not terminated. Given the request is unopposed, the Court **TERMINATES AS MOOT** Dkt. No. 236.

B. Dkt. Nos. 239, 242 & 244

On April 1, 2, and 5 of 2024, respectively, defendants filed three administrative motions seeking *in camera* review and sealing of certain documents. (*See* Dkt. Nos. 239, 242 & 244.) The documents sought to be sealed were Dkt. Nos. 239-3, 239-4, 242-3, 242-4, 244-3, 244-4, 244-5, and 244-6.

On August 16, 2024, defendants filed a notice that they had filed unsealed and redacted versions of certain documents, including Dkt. Nos. 239-3, 239-4, 242-3, 242-4, 244-4, 244-5, and 244-6. (Dkt. No. 374.) The Court reviewed the redactions. They align with defendants' representations at the August 2, 2024 hearing that AICs will be referred to using their initials, not full names or register numbers.

Finding the above referenced redactions appropriate given the privacy interests of the FCI Dublin AICs and consistent with the Court's practices with respect to AIC anonymity, the Court views the lion's share of these disputes as resolved. However, defendants' request that Dkt. No.

---

[8] The Court is aware that two sealing requests (Dkt. Nos. 332 & 348) will remain outstanding after the issuance of this Order. Those requests pertain to defendants' objections to the Special Master's Report and exhibits submitted in relation thereto. The Court defers ruling on such requests until it considers the merits of the objections.

244-3 remain sealed is still live. Defendants have not filed a new unsealed and redacted version of this document.

The document filed at Dkt. No. 244-3 concerns the BOP's processing of an AIC request for furlough transfer. It identifies the AIC by her full name. The other information contained in the two-page document essentially summarizes the information contained at Dkt. Nos. 244-4, 244-5, and 244-6. Defendants redacted those documents to obscure the AIC's full name and register number and then filed them publicly on the docket. (*See* Dkt. Nos. 374-29, 374-30 & 374-31.) Since Dkt. No. 244-3 appears to summarize information that is already public, the Court sees no reason it should remain under seal. Indeed, the fact that defendants did not file an unsealed, redacted copy of Dkt. No. 244-3 may have been an oversight, given its treatment of similar documents. Thus, defendants' request to seal Dkt. No. 244-3 is **DENIED IN PART** as to all information except the AIC's full name, as is consistent with the Court's practice in this case. Defendants shall file an unsealed, redacted version of Dkt. No. 244-3 on the docket.

Accordingly, the Court **TERMINATES AS MOOT** Dkt. Nos. 239 and 242. Dkt. No. 244 is **TERMINATED AS MOOT** as to Dkt. Nos. 244-4, 244-5, and 244-6. Dkt. No. 244 is **DENIED IN PART** as to Dkt. No. 244-3 as set forth herein.[9]

C. Dkt. No. 247

On April 5, 2024, defendants filed an administrative motion to file under seal maps contained within asbestos and mold reports conducted by a third-party of the facilities at FCI Dublin. (Dkt. No. 247.) Defendants argue public disclosure of the maps would harm institutional security, even though the facility has now closed. (*See, e.g.*, Dkt. No. 340-1 at 7.) Intervenors respond that maps of the facility were already made available to the public in an earlier filing. (*Id.*)

The Court reviewed the earlier filing to which Intervenors refer, Dkt. No. 198-2. It contains fourteen pages of maps of the facility dating to 1998. The maps are difficult to read and only

---

[9] The Clerk's Office is instructed that Dkt. Nos. 239-3, 239-4, 242-3, 242-4, 244-4, 244-5, and 244-6 shall remain under seal, as the unsealed, redacted versions were separately filed. *See* Dkt. No. 374-25, 374-26, 374-27, 374-28, 374-29, 374-30 & 374-31. Similarly, Dkt. No. 244-3 shall remain under seal as defendants will file a new unsealed, redacted version.

1  partially labeled. By contrast, the maps the government seeks to seal (Dkt. Nos. 247-2 at 41–45 &
2  247-3 at Attachment II) are current and considerably more detailed. For instance, they identify each
3  room by number and/or purpose. The new maps are also substantially easier to read. These
4  distinctions are meaningful. Since the BOP has indicated that it may reopen the facility, even if the
5  nature and timing of any potential re-opening remains unclear, institutional security is a valid
6  consideration. Here, the Court finds release of the maps at Dkt. Nos. 247-2 and 247-3 could result
7  in unintended security consequences, especially given the detail depicted therein. Given that, and in
8  the absence of any discernable particularized public need for such a detailed view into the layout of
9  the facility, the motion to seal is **GRANTED**.

   D. Dkt. No. 339

   On July 2, 2024, plaintiffs filed an administrative motion to consider whether another party's materials should be sealed. (Dkt. No. 339.) There, plaintiffs argue (i) the Special Master's Report should not be sealed; and (ii) they should be permitted to excerpt the Report without applying redactions.

   The Court asked defendants for their position on unsealing the Report at the August 2, 2024 hearing. In response, counsel for defendants stated they had "[n]o objection" to it being unsealed. (*See* Dkt. No. 373, Aug. 2, 2024 Hrg. Tr. at 106:3–13.) The Court then ordered the Report unsealed on the record. (*Id.* at 106:14.) Thus, the motion is **DENIED**. Dkt. Nos. 339-3 and 339-4 shall be **UNSEALED**.

## CONCLUSION

In summary, the Court makes the following rulings:

1. Intervenors' unsealing motion is **GRANTED** as to Dkt. Nos. 178-3;
2. The unsealing motion is **GRANTED IN PART** as to Dkt. Nos. 175, 175-2, 363-1, 363-2 & 363-3, subject to the further instructions set forth herein;
3. The sealed minute entries for the sealed status conferences held between April 15, 2024 and May 8, 2024 (Dkt. Nos. 253, 261, 265–66, 288–89, 291, 293–94) are **UNSEALED**;
4. The pending sealing disputes at Dkt. Nos. 236, 239 & 242 are **TERMINATED AS MOOT**;
5. The pending sealing dispute at Dkt. No. 244 is **TERMINATED AS MOOT** as to Dkt. Nos. 244-4, 244-5, and 244-6, and is **DENIED IN PART** as to Dkt. No. 244-3, as set forth herein;

11

6. The sealing motion at Dkt. No. 247 is **GRANTED**; and

7. The sealing request at Dkt. No. 339 is **DENIED**. Dkt. Nos. 339-3 and 339-4 are therefore **UNSEALED**.

This terminates Dkt. Nos. 236, 239, 242, 244, 247 & 339.

**IT IS SO ORDERED**.

Date: September 20, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**