**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CALIFORNIA COALITION FOR WOMEN PRISONERS, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA BUREAU OF PRISONS, ET AL.,**<br><br>Defendants. | Case No.: 4:23-cv-4155-YGR<br><br>**ORDER EXTENDING PRELIMINARY INJUNCTIVE RELIEF** |

About six months ago and following both an evidentiary hearing and personal site visit, the Court ordered preliminary injunctive relief designed to safeguard the constitutional rights of the adults in custody ("AICs") at the Bureau of Prisons ("BOP")'s Federal Correctional Institution Dublin and its satellite camp (collectively, "FCI Dublin").

FCI Dublin closed on May 1, 2024. However, FCI Dublin's AICs continued to experience constitutional violations arising out of their time at the facility, even after transfer to other institutions. Among these were medical, mental health, and other concerns. The Court previously found that BOP was not relieved of its obligation to address such issues by virtue of having wound down operations at FCI Dublin. Based thereon, the Court extended the preliminary injunctive relief by ninety days. Such injunctive relief will expire, by operation of statute, on Wednesday, October 2, 2024.

As set forth in more detail below, the Court finds the need for court intervention to safeguard AICs' constitutional rights persists and will not be addressed by next Wednesday. The BOP is making progress towards correcting constitutional violations that tie back to the AICs' experiences at FCI Dublin but a significant amount of follow up remains outstanding. Accordingly, the Court **ORDERS** that the preliminary injunctive relief shall be extended beyond October 2, 2024. The new statutory expiration date is **Tuesday, December 31, 2024.**

## I. BACKGROUND

On March 15, 2024, the Court granted in part and denied in part plaintiffs' motion for a preliminary injunction to safeguard the FCI Dublin AICs' constitutional rights.[1] Shortly thereafter, the Court appointed corrections expert Wendy Still and her team as Special Master. (Dkt. No. 248.) Still subsequently (i) provided the Court on-the-ground visibility into the conditions at FCI Dublin, including as the Court provided guidance to the BOP during the facility's closure, and (ii) compiled a report setting out her observations.

On May 20, 2024, the Court found Still had "completed her work on-site at FCI Dublin" and that "the monitoring of the [AICs] who left the facility for other institutions" was therefore required. (Dkt. No. 308 at 1.) The Court then "exercise[d] its inherent authority to appoint Still and a subset of her team as Monitor of BOP's compliance with court orders and to ensure that FCI Dublin AICs receive appropriate follow up care and support in their new facilities." (*Id.*) The Court emphasized at the time that Still's Special Master and Monitor roles were distinct. (*Id.* at 2.) The Court expanded upon such distinctions in a later order. (Dkt. No. 385 at 16–17.)

As Monitor, Still has assisted and continues to assist the Court in overseeing the BOP's compliance with the corrective measures ordered by the Court. (*See, e.g.*, Dkt. No. 300 at 14 (identifying eight categories of additional steps BOP must take to ensure FCI Dublin AICs' constitutional rights are protected).) By way of example, the Court created a mechanism, prior to closure of FCI Dublin, for setting medical, mental health, medically assisted treatment ("MAT"),[2] and other "alerts" for individual AICs who required follow up.[3] The Court also required BOP to review

---

[1] Dkt. No. 222, Order Granting the Motion for Class Certification; Granting in Part and Denying in Part the Motion for Preliminary Injunction; Granting the Related Sealing Motions.

[2] MAT is a modality for treating substance use disorders.

[3] As the parties are aware, medical and mental health alerts have also been set for issues raised post-closure but which present a "nexus" to FCI Dublin. The Court has advised as follows: "[T]he Court clarifies that a medical or mental health issue has a 'nexus' to FCI Dublin where the issue (i) was first raised, identified, or documented at FCI Dublin (whether by the AIC themselves, the then-Special Master, and/or a member of her team); or (ii) where, based on a review of a more recently filed grievance or complaint, the Monitor and/or a member of her team determine the issue is directly tied to the AIC's experiences at FCI Dublin." Dkt. No. 372 at 2. The Court allowed that,

2

FCI Dublin AICs' disciplinary infractions for, among others, due process and other deficiencies. As initial reviews yielded a significant number of expungements, BOP was also required, again with assistance from the Monitor, to conduct casework audits for impacted AICs. The processes of clearing such alerts and reviewing expunged disciplinary infractions remains ongoing.

## II.     LEGAL FRAMEWORK

Section 3626 of Title 18 of the United States Code governs injunctive relief with respect to prison conditions cases. It provides the following with respect to preliminary injunctive relief:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter . . . an order for preliminary injunctive relief . . . . Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).[4]

Subsection 3626(a)(1), in turn, concerns "prospective relief" relative to prison conditions, which includes preliminary injunctive relief. It bars courts from approving such relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Courts must, in conducting such an assessment, "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

## III.    ANALYSIS

The Court begins by assessing whether, under the above framework, injunctive relief remains necessary to correct the constitutional violations identified in the preliminary injunction order and which have formed the basis of the Court's ongoing guidance to the BOP in the months since.

---

"[i]f there is disagreement as to whether a particular grievance or complaint constitutes a 'nexus' case, the BOP may bring a motion to have the matter excluded from the list of nexus cases." *Id.* No such motions have been received.

[4] The Court explained its understanding of this framework at length in other orders. *See* Dkt. No. 336 at 3–7; Dkt. No. 385 at 7–15. The Court incorporates by reference that legal analysis herein as to the framework's requirements.

Preliminarily, the Court reiterates what it has advised the parties repeatedly over recent months, namely, the closure of FCI Dublin does not mean this case is moot or that the FCI Dublin AICs have lost the protection of the previously entered preliminary injunctive relief. The BOP's decision to transfer the AICs previously located at FCI Dublin to facilities across the country simply adds a layer of complexity to the process of correcting the previously identified constitutional violations. Given past history and the record in this case, the Court is not inclined to merely trust BOP to act on its own.

That said, the Court recounts the outstanding matters requiring BOP action. These include but are not limited to: (i) Prison Rape Elimination Act ("PREA") follow up case conferences; (ii) AICs' claims for property lost or damaged during transfers; and (iii) pending compassionate release requests. (Dkt. No. 372 at 1, 2–3.) These concerns are directly related to FCI Dublin AICs' well-being and the accurate computation of their terms of imprisonment.

While critical, these follow up items are less immediately pressing than two other categories of tasks on which the Court and Monitor remain engaged, alongside counsel for both parties and the BOP. These are: (i) clearing outstanding medical, mental health, and MAT alerts, as well as related nexus matters; and (ii) addressing FCI Dublin's woefully inaccurate record of disciplinary infractions. The Court addresses each of these in turn below.

First, the Court reiterates the importance of tracking and clearing alerts. As of September 20, 2024, there are six outstanding medical alerts and nine outstanding MAT alerts. Further, there are nine nexus cases requiring BOP follow up. These are not just data points. Each represents a discrete and tangible need on the part of an AIC, and each is directly tied to that AIC's experiences at FCI Dublin. Of these, the alerts were placed prior to closure of the facility as part of the court-ordered medical reviews to prepare AICs for transit. The nexus matters arose later but were determined to tie back to experiences at FCI Dublin. The AICs' needs have therefore been outstanding for months. Thus, prompt resolution of the remaining alerts and nexus matters is a critical and ongoing concern of constitutional import.

Second, the Court underscores the ongoing constitutional violations tied to FCI Dublin's disciplinary records. Put simply, the BOP Western Regional Hearing Administrator has completed

a review of disciplinary infractions issued to FCI Dublin AICs in recent years. The results are shocking. Of 824 infractions reviewed, 373 were expunged for due process or other deficiencies. Said differently, 45 percent of the infractions reviewed were declared void due to BOP's own errors. Such deficiencies are having a domino effect. Insofar as disciplinary infractions are expunged, the impacted AIC's case file must be reviewed and, in some cases, projected release dates must be recalculated. The impact can be meaningful. The Monitor reports the expungements already identified have resulted in over one hundred instances of credit restoration that have impacted release dates. Given the inherent liberty interests involved, the constitutional dimensions of the disciplinary errors made and necessity of timely reviews to remediate such issues are stark.

Notably, the task of clearing alerts and the need for proper disciplinary reviews were both discussed at length at the last in-person hearing in this matter, which was held on August 2, 2024. There, the Court had an extended colloquy with counsel for the BOP about the status of such reviews. The Court walked through the alerts and disciplinary reviews to be addressed, and counsel for defendants acknowledged that such items remained outstanding but would be addressed. Similarly, the parties and the Court questioned BOP Deputy Director William W. Lothrop, who appeared at the hearing as a declarant. In light of these conversations, the Court is satisfied both that the BOP understands the necessity of addressing the outstanding items addressed herein and that progress will continue to be made thereon.

While the Court is encouraged by the BOP's engagement on these areas of concern as well as their stated commitment to addressing the matters discussed herein in a prompt manner, the Court cannot conclude on the record before it that continued court intervention is unnecessary. Instead, the Court finds that constitutional violations tied to AICs' experiences are FCI Dublin remain outstanding and involvement by this Court in managing the preliminary injunctive relief remains essential to correcting the violations of constitutional rights identified at FCI Dublin and that persist. The Court further concludes the current preliminary injunctive relief is the least intrusive possible to correct the constitutional violations identified. The targeted guidance provided by the Court, informed by the Monitor's active communication with the parties, is as granular and limited as possible.

The BOP's interests in the seamless operation of this nation's federal prisons do not compel a different result. The Court, as required, "give[s] substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A). However, any such potentially adverse impact arising out of this preliminary injunctive relief is mitigated in at least two ways: One, the Court has not and does not seek to micromanage this country's carceral system. The relief is targeted to the AICs who were previously located at FCI Dublin and constitutional injuries arising out of their experiences at that facility. The scope of the preliminary injunctive relief ordered has not been expanded to include, for instance, AICs located at receiving institutions who were not transferred from FCI Dublin or to former FCI Dublin AICs who experience new issues at their receiving institutions where such issues do not tie back to their time at FCI Dublin. Two, the record does not reflect a meaningfully adverse impact on the BOP. Certainly, the relief requires BOP to make adjustments as to the timing of certain processes as well as the staffing of particular teams. This is a far cry, however, from an "adverse impact on public safety or the operation of a criminal justice system."

## IV.   CONCLUSION

For the foregoing reasons, the Court determines the injunctive relief previously authorized **SHALL** be extended by 90 days, to expire on **Tuesday, December 31, 2024**.

In closing, the Court reiterates its desire that this litigation continue apace. The BOP complains, yet has declined the Court's previous (and repeated) offer to set an early trial date. In light of this, the Court reminds that the preliminary injunctive relief is intended as a temporary measure to address the extraordinary circumstances existing at FCI Dublin prior to its closure and which continue to impact the AICs previously located there. Additional extensions of such relief will not be granted absent sufficient justification.

**IT IS SO ORDERED**.

Date: September 27, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**