JESSE LASLOVICH
United States Attorney
  MADISON L. MATTIOLI
    MT Bar No. 36411284
  ABBIE J.N. CZIOK
    MT Bar No. 55781377
Assistant U.S. Attorneys
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5269 – Madison
         (406) 457-5268 – Abbie
Email: madison.mattioli@usdoj.gov
        abbie.cziok@usdoj.gov

MARK STEGER SMITH
  MT Bar No. 4160
TIMOTHY A. TATARKA
  CA Bar No. 277219
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin Federal Courthouse
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667 – Mark
         (406) 247-4642 – Tim
Email: mark.smith3@usdoj.gov
        timothy.tatarka@usdoj.gov

Attorneys for Federal Defendants and
Defendant United States of America.

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS; R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T., individuals on behalf of themselves and all others similarly situated, <br><br> Plaintiffs <br> v. <br><br> UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; BUREAU OF PRISONS DIRECTOR COLETTE PETERS, in her official capacity; FCI DUBLIN WARDEN THAHESHA JUSINO, in her official capacity; OFFICER BELLHOUSE, in his individual capacity; OFFICER GACAD, in his individual capacity; OFFICER JONES, in his individual capacity; LIEUTENANT JONES, in her individual capacity; OFFICER LEWIS, in his individual capacity; OFFICER NUNLEY, in his individual capacity, OFFICER POOL, in his individual capacity, LIEUTENANT PUTNAM, in his individual capacity; OFFICER SERRANO, in his individual capacity; OFFICER SHIRLEY, in his individual capacity; OFFICER SMITH, in his individual capacity; and OFFICER VASQUEZ, in her individual capacity, <br><br> Defendants. | CASE NO. 4:23-CV-04155-YGR <br><br> **DECLARATION OF BETH REESE** <br><br> <u>**FILED UNDER SEAL**</u> |

I, Beth Reese, declare as follows:

1. I have personal knowledge of the facts set forth herein and if called as a witness I could competently so testify.

2. I am the Chief of the Office of Internal Affairs (OIA) for the federal Bureau of Prisons (BOP). I have held this role since May of 2018. I oversee the work of approximately 145 staff throughout the United States.

3. OIA an independent component of the Director's Office and is responsible for classifying all allegations of BOP employee misconduct it receives and investigating serious but non-criminal employee misconduct.

4. OIA can receive allegations from any number of sources to include inmates, inmates' families, advocacy organizations, the press, Congress, prison staff, or a facility's Warden.

5. When OIA receives an allegation, it must determine whether it alleges staff misconduct and whether there is sufficient information to undertake a meaningful investigation.

6. If the answer to both of those questions is yes, OIA moves forward with classifying the allegations in one of three categories. Classification One cases are defined as allegations which, if substantiated, would constitute a prosecutable offense (except for Classification Three cases such as traffic violations, DUI, DWI, etc.) and any allegation of serious misconduct, such as unauthorized disclosure of sensitive information. Classification Two cases are defined as allegations of serious misconduct, but if substantiated would not likely result in criminal prosecution. Classification Three cases are defined as allegations of misconduct which ordinarily have less impact on institutional operations.

7. The Office of the Inspector General (OIG) for the U.S. Department of Justice (DOJ) is a statutorily created independent entity whose mission is to detect and deter waste, fraud, abuse, and misconduct in the Department of Justice.

8. OIG has jurisdiction over the criminal and administrative misconduct of all DOJ staff.

9. OIG can review all allegations sent to OIA and has the right of first refusal on all OIA cases.

10. Since late 2021 at FCI Dublin, allegations of sexual misconduct (i.e., that if true would be criminal) have been investigated by OIG or the FBI and have not been handled by the local institution. Only if OIG declines to retain a case is it sent back to OIA.

11. Since late 2022, and to ensure that appropriate protocols are followed with regard to staff on inmate sexual misconduct allegations, OIA has sent a weekly list to each of the six Regional Directors notifying them of all of the sexual misconduct cases that were opened out of their region each week. This feedback loop allows the region to review each of the allegations and follow up with staff at the institution to ensure that staff are reassigned as appropriate, and that appropriate protocols are provided to victims even in situations where the allegation was submitted directly to OIA and not through local reporting mechanisms.

12. Because there are times that allegations will be presented directly to OIG, OIA has worked to ensure open communication with OIG regarding their investigation of potential sexual misconduct allegations that may arise. Since 2021, the Los Angeles field office of OIG has adopted a practice of notifying OIA of the identity of subjects of their investigations at such time as it is apparent that there are meritorious allegations of inappropriate touching so the BOP can take appropriate action with regard to the status of the subject(s).

13. Communication between OIA and OIG has also allowed the BOP an enhanced ability to identify and address allegations of retaliation against victims for reporting staff. Actions taken in connection with retaliation have included relocation of the incarcerated person (in an instance of non-specific discomfort) and misconduct cases being opened to address the allegations (where there appear to be policy violations or unequal treatment).

14. OIA first received allegations from AIC A▮▮▮▮ Y▮▮▮▮▮▮▮, Reg. No. ▮▮▮▮▮▮▮▮ in October, 2022. The allegations, opened under OIA case number 2023-00250, included a generic allegation of sexual assault and did not name the employee. The matter was sent to OIG, where it has remained.

15. Since that time, we have received information from a tort claim (October, 2023), and an emergency request for administrative remedy (January, 2024). Each has contained additional allegations, to include excessive force and unprofessional conduct, as well as some additional detail regarding the

1  sexual abuse allegations. These additional allegations have similarly been submitted to OIG under the
2  same case number.

3      16.    The first time a name was attached to the sexual abuse allegations was in October, 2023,
4  and the name ("Alline") was not one that we could connect with any Dublin employee. The emergency
5  request for administrative remedy similarly mentioned an Officer Alline, and general sexual assault
6  allegations.

7      17.    OIA has not been contacted by OIG in connection with any additional information that
8  may lead to the placement of an employee on administrative leave in connection with these allegations.

9      I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and
10  correct. Executed this 4th day of March, 2024, at Aurora, Colorado.

By: 
Beth Reese