ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL – 330482
LUMA KHABBAZ – 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:      (415) 433-6830
Email:            egalvan@rbgg.com
                     kjanssen@rbgg.com
                     aspiegel@rbgg.com
                     lkhabbaz@rbgg.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:      (510) 679-3674
Email:            susan@ccijustice.org

AMARIS MONTES*
  Md. Bar No. 2112150205
MIRIAM R. NEMETH*
  D.C. Bar No. 2112150205
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone:      (202) 455-4399
Email:            amaris@rightsbehindbars.org
                     miriam@rightsbehindbars.org

* Admitted *pro hac vice*

Attorneys for Plaintiffs

STEPHEN S. CHA-KIM*
  N.Y. Bar No. 4979357
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York  10019-9710
Telephone:  (212) 836-8000
Email:        stephen.cha-kim@arnoldporter.com

CARSON D. ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California  94306-3807
Telephone:  (650) 319-4500
Email:        carson.anderson@arnoldporter.com

NATALIE STEIERT*
  D.C. Bar No. 90010655
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20001-3743
Telephone:  (202) 942-5000
Email:        natalie.steiert@arnoldporter.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al.,<br><br>　　　　　Defendants. | Case No. 4:23-cv-04155-YGR<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CONSENT DECREE**<br><br>Date:      December 17, 2024<br>Time:     2:00 p.m.<br>Crtrm.:   1, 4th Floor<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:      June 23, 2025 |

[4614139.6]

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 3

I.     INTRODUCTION .................................................................................... 3

II.    CASE BACKGROUND ........................................................................... 3

       A.    The Court Enters A Preliminary Injunction And Certifies The Class............. 3

       B.    The Litigation Continues Following FCI Dublin's Closure And Class
             Members' Transfer To BOP Facilities Nationwide. ....................................... 5

III.   SUMMARY OF THE PROPOSED SETTLEMENT ................................................. 7

IV.    ARGUMENT ............................................................................................ 14

       A.    The Class Certification Requirements Of Rule 23 Continue To Be
             Satisfied. ...................................................................................................... 14

       B.    The Proposed Consent Decree Is Fair, Reasonable, And Should Be
             Granted Preliminary Approval. ................................................................... 15

       C.    The Consent Decree Does Not Provide for Any Particular Amount of
             Attorneys' Fees, But Provides for Litigation of any Claim for
             Attorneys' Fees and Expenses .................................................................... 17

       D.    The Proposed Notice Satisfies Due Process And Should Be Approved. ...... 18

       E.    The Court Should Approve The Proposed Scheduling Order,
             Including Setting A Date For The Fairness Hearing. .................................. 18

CONCLUSION .............................................................................................. 19

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ................................................................. 16

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................. 15

*Frank v. Gaos*,
    586 U.S. 485 (2019) ................................................................................ 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 15

*In re Celera Corp. Sec. Litig.*,
    No. 5:10-cv-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ............... 15

*In re Google Referrer Header Privacy Litig.*,
    No. 5:10-CV-04809 EJD, 2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) .............. 16

*In re Hyundai & Kia Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ................................................... 15, 16, 18

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................... 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................... 19

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 18

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ............................................................. 19

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr*,
    No. 15–cv–0224–YGR, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016) .................. 16

*Toolajian v. Air Methods Corp.*,
    No. 18-cv-06722-AGT, 2020 WL 8674094 (N.D. Cal. Apr. 24, 2020) ................. 16

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................... 15

## RULES

Fed. R. Civ. P. 23 ........................................................................ 1, 3, 14, 15

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 17, 2024 or as soon thereafter as the matter may be heard, Plaintiffs CALIFORNIA COALITION FOR WOMEN PRISONERS ("CCWP"); R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T. ("Named Plaintiffs") (together, the "Plaintiffs"), by and through Class Counsel (as defined in the Proposed Consent Decree) will and hereby do move the Court for entry of an Order:  (1) granting preliminary approval of the proposed class settlement agreement (the "Proposed Consent Decree") submitted herewith as Exhibit 1 to the Declaration of Kara J. Janssen in support of this Motion;[1] (2) approving the manner and form of giving notice of the Proposed Consent Decree to the Class Members;[2] (3) scheduling deadlines for objections; and (4) scheduling a fairness hearing regarding final approval of the Proposed Consent Decree.

In support of this Motion, Plaintiffs state that the Proposed Consent Decree: (1) represents a comprehensive settlement of the issues raised in this case; (2) offers a fair and equitable result to those affected by it; and (3) will result in significant long-term benefits for both the Class Members as well as for Defendants United States of America, United States of America Federal Bureau of Prisons ("BOP"), BOP Director Colette Peters, in her official capacity, and FCI Dublin Acting Warden Charles Hubbard, in his official capacity (collectively "Defendants").

The Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the attached Declaration of Kara J. Janssen and the exhibits attached thereto; all pleadings and papers on file in this action; and any oral argument this Court permits.

Rule 23 of the Federal Rules of Civil Procedure does not require a hearing on a motion seeking preliminary approval of a class action settlement.  Plaintiffs and

---

[1] All "Ex." references herein are to the Declaration of Kara Janssen.

[2] As used herein, "Class Members" refers to all people who were incarcerated at FCI Dublin between March 15, 2024 and May 1, 2024, and all named Plaintiffs.  Ex. 1, ¶ 11.

1  Defendants (collectively the "Parties") agree to forego a hearing unless the Court

2  concludes that a hearing is necessary.

3  / / /

4  / / /

5  / / /

6  / / /

7  / / /

8  / / /

9  / / /

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Proposed Consent Decree provides injunctive relief to the certified class of individuals who were formerly incarcerated at FCI Dublin and subject to FCI Dublin's and Defendant Bureau of Prisons' uniform policies, customs, and practices.  The Proposed Consent Decree requires the BOP to implement certain measures to safeguard the rights of Class Members incarcerated at BOP facilities nationwide for a term of two years following the Court's final approval.  The Proposed Consent Decree is fair, adequate, and reasonable, and is the product of serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel, Class Representatives, and BOP officials.  It satisfies all criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure.  Additionally, the Parties' Proposed Notice and schedule for a fairness hearing will allow Class Members an adequate opportunity to review and comment on the Proposed Consent Decree and is consistent with the Parties' desire for prompt implementation of the Proposed Consent Decree.

Accordingly,  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Proposed Consent Decree; (2) approve and direct the distribution of the Proposed Notice; and (3) adopt the schedule proposed herein for Class Member objections, filing of Motions for Attorneys' Fees and Costs and for Final Approval, and for hearing the motions and addressing objections detailed herein.

## II.    CASE BACKGROUND

### A.    The Court Enters A Preliminary Injunction And Certifies The Class.

The disturbing history of sexual assault, retaliation, and unconstitutional conditions at FCI Dublin has been well documented, including by this Court.[3]  In August 2023, the

---

[3] *See, e.g.*, ECF No. 222 (order on preliminary injunction); *United States v. Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.); *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D. Cal.); *United States v. Bellhouse*, No. 4:22-cr-00066-YGR (N.D. Cal.); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges

1   California Coalition for Women Prisoners ("CCWP") and eight individual incarcerated

2   people brought this action and simultaneously moved for class certification and a

3   preliminary injunction to remedy these unconstitutional conditions.  ECF Nos. 1, 10, 11.

4           The Court held an evidentiary hearing on the motions from January 3-9, 2024 and

5   heard extensive testimony regarding the ongoing risks and occurrences of sexual assault,

6   retaliation, and lack of access to basic human needs at FCI Dublin, such as medical care,

7   mental health care, and sanitation.

8           On January 24, 2024, five FCI Dublin officials were placed on administrative leave,

9   including a captain who testified on behalf of BOP at the evidentiary hearing weeks

10  earlier.  On February 14, 2024, Judge Gonzales Rogers toured FCI Dublin and the adjacent

11  satellite camp and spoke to staff and incarcerated individuals.  On March 11, 2024, the FBI

12  executed a search warrant at FCI Dublin and walked off members of the new leadership

13  team, including the latest Warden, the Assistant Warden, and the Executive Assistant who

14  testified before the Court during the January evidentiary hearing.  ECF No. 222 at 14.

15          On March 15, 2024, this Court issued an Order Granting the Motion for Class

16  Certification and Granting and Denying in Part the Motion for Preliminary Injunction.

17  ECF No. 222.  The Court found that "because of its inability to promptly investigate the

18  allegations that remain, and the ongoing retaliation against incarcerated persons who report

19  misconduct, BOP has lost the ability to manage with integrity and trust."  *Id.* at 7.  The

20  Court further found that even under the "new leadership," incarcerated people faced staff

21  retaliation "for making any kind of report, whether for malfeasance like sexual abuse or

22  the enforcement of their rights, such as filing a medical complaint."  *Id.* at 9.  "[T]he Court

23  f[ound] that BOP's response to the crisis unfolding at FCI Dublin demonstrates that it has

24  been, and is, deliberately indifferent to plaintiffs' risk of abuse."  *Id.* at 26.  The Court

25  based this finding on repeated failures to appoint leadership "capable of understanding and

26  responding to the gravity of the situation," failure to reform the investigative process for

27  _____

28  pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.); *United States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal.).

sexual assault allegations to ensure independent investigations, and failure to institute zero tolerance of staff abuse by allowing abusive officers to remain on the job.  *Id.* at 26-28.

The Court also found that medical and mental health services were inadequate to address the serious needs of a population with a history of trauma and that BOP was deliberately indifferent to the resulting risks of serious harm.  *Id.* at 29-35.

The Court found that incarcerated persons faced retaliation for reporting sexual abuse or even for complaining about things that staff interpreted as a sexual abuse complaint.  The evidence provided by Plaintiffs demonstrated that one common form of retaliation was placement in the Special Housing Unit (SHU).  Defendant officials contended that they were simply applying BOP nationwide policies on SHU placement neutrally and that they needed to use the SHU to deter false allegations against staff.  The Court rejected these contentions.  *Id.* at 36-42.

The Court further certified a class of "all people who are now, or will be in the future, incarcerated at FCI Dublin and subject to FCI Dublin's uniform policies, customs, and practices concerning sexual assault, including those policies, customs, and practices related to care in the aftermath of an assault and protection from retaliation for reporting an assault."  *Id.* at 14, 20.

The Court announced that it would appoint a Special Master to be onsite at FCI Dublin.  *Id.* at 44.  After a several-week process of party-nominations and Court interviews, the Court selected a longtime former correctional official, Wendy Still, as Special Master.  ECF No. 248.

### B.    The Litigation Continues Following FCI Dublin's Closure And Class Members' Transfer To BOP Facilities Nationwide.

Ms. Still began her on-site presence at FCI Dublin on Monday, April 8, 2024.  Four days later, on April 12, 2024, the BOP informed the Court in a sealed filing that it would close FCI Dublin.  ECF No. 251.  As BOP rushed to close the facility and move Class Members to other facilities nationwide, Class Members reported horrific conditions of their transfer including physical and psychological abuse, medical neglect, rampant loss of

property, and denial of basic necessities for hours and days during transport.

On May 8, 2024, the Court issued an Order re Closure of FCI Dublin & Preliminary Injunction (ECF No. 300) detailing the impacts of the "ill-conceived" closure on the Class Members' welfare, the steps taken to attempt to mitigate those impacts by the Court and Special Master, and additional steps necessary to further protect the class members in the months leading up to trial. As the Court's May 8 Order noted, "the BOP cannot hide from or escape its obligations merely by closing FCI Dublin." ECF No. 300 at 13.

On June 18, 2024, Defendants moved to dismiss this case, arguing that it "recognized that FCI Dublin was in 'dire need of immediate change,'" "determined that it needed to close FCI Dublin and transfer all female adults in custody (AICs) to other facilities," and that FCI Dublin's closure mooted the case. ECF No. 326 at 2. The Court denied Defendants' motion to dismiss, holding that "[t]he notion that the constitutional injuries alleged by FCI Dublin's AICs were comprehensively remedied by the facility's closure strains credulity. Redressable injuries stemming from the AICs' experiences at FCI Dublin remain to be addressed, and the BOP is well aware of this fact." ECF No. 385 at 1.

In the months since the closure and mass transfers, Ms. Still has continued to monitor Class Members' treatment and wellbeing, providing regular updates to the Court and Parties. Ms. Still works with BOP and Class Counsel to track Class Members' concerns, including medical and mental health needs, early release credits and designations, compassionate release requests, and PREA reports and advocacy services. Class Members and Class Counsel have continued to report concerns about staff abuse and retaliation, unmet medical needs, case work, and other critical areas to Ms. Still and her team.

Ms. Still also authored a Special Master Report, issued on June 5, 2024, detailing her findings and recommendations after her time at FCI Dublin. ECF No. 339-3 (Wendy Still, First Report of the Special Master Pursuant to the Court's Order of March 26, 2024 (2024)). The Report "found numerous operational, policy and constitutional violations,"

1  including "the failure of Central Office and Regional Office management to correct

2  significant and longstanding deficiencies that had previously been identified in multiple

3  audits and investigations," which "put the health, safety and liberty of AICs at great risk

4  for many years." Still concluded that "[i]t is unconscionable that any correctional agency

5  could allow incarcerated individuals under their control and responsibility to be subject to

6  the conditions that existed at FCI-Dublin for such an extended period of time without

7  correction," and noted "concerns that the mistreatment, neglect and abuse the AICs

8  received at FCI-Dublin not be repeated at the facilities where these individuals are being

9  transferred to as many of the conditions that existed at this facility appear to be

10  longstanding and systemic in nature." *Id.* at 13.

11       On May 24, 2024, the Court referred the parties to Magistrate Judge Joseph C.

12  Spero for settlement discussions (ECF No. 310).  Following an exchange of initial

13  proposals in August 2024, the Parties began regularly meeting with Magistrate Judge

14  Spero to negotiate a potential settlement of this matter.  After dozens of hours with

15  Magistrate Judge Spero, spanning seven settlement conferences including two sessions

16  with representatives from CCWP and almost all of the Named Plaintiffs, plus dozens of

17  hours of private negotiations between the Parties, the Parties have agreed to the Proposed

18  Consent Decree (Ex. 1).

19  **III.    SUMMARY OF THE PROPOSED SETTLEMENT**

20       The Proposed Consent Decree is attached hereto as Exhibit 1 to the Declaration of

21  Kara Janssen.  The Proposed Consent Decree will not affect any other pending cases

22  because it resolves only claims for injunctive relief, none of which are raised in the other

23  related cases.

24       The Proposed Consent Decree details measures that Defendants have agreed to

25  implement to resolve claims for injunctive relief raised in this action and does not address

26  or otherwise resolve any individual claims for monetary relief.  The Proposed Consent

27  Decree does not affect any Class Members' right or ability to seek money damages

28  through other means.  Janssen Decl., Ex. 1, ¶ 3.

The Proposed Consent Decree requires the Defendants to implement the following measures for Class Members for a term of two years, unless the BOP moves for and the Court grants termination based on substantial compliance no earlier than 18 months following final approval by the Court (Ex. 1, ¶ 32):[4]

### Public Acknowledgment of Abuse

a)    The BOP Director will issue a formal, public acknowledgement to victims of staff sexual abuse at FCI Dublin.  Ex. 1, ¶ 88.

### Appointment of Monitor and BOP Liaison

b)    The Court will appoint Wendy Still as a "Monitor" to implement the Proposed Consent Decree. If Ms. Still is not available, the Proposed Consent Decree provides procedures for the selection of another Monitor.  The Monitor will be permitted a reasonable number of staff to assist the Monitor, and the BOP shall pay the fees and costs incurred by the Monitor and staff.

c)    The Monitor will have access to Class Members, including the ability to schedule confidential phone calls and conduct in-person interviews.  Class Members will be able to communicate confidentially with the Monitor. The BOP will provide Class Members with access to confidential two-way email communication with the Monitor, and BOP staff will not open outgoing mail from Class Members to the Monitor.  *Id.* Ex. 1, ¶¶ 78-79. The Monitor will also have access to BOP facilities and BOP documents related to Class Members and the terms of the Proposed Consent Decree and the ability to inspect BOP facilities and interview BOP staff.  Class Counsel and BOP Counsel will be permitted to communicate *ex parte* with the Monitor.  Ex. 1, ¶¶ 90-92, 94-97.

d)    The BOP will establish a "BOP Liaison" who is "an employee from BOP's

---

[4] This summary of the Proposed Consent Decree is intended only as a summary of key terms of the Proposed Consent Decree and does not amend or alter the terms, provisions, and obligations of the Proposed Consent Decree.  This summary does not detail every individual term, provision, or obligation of the Proposed Consent Decree.  In the event of any inconsistencies between the terms, provisions, and obligations of the Proposed Consent Decree and the summary set forth herein, the Proposed Consent Decree shall govern.

Central Office who is a direct report to the BOP's Deputy Director who is designated to and whose sole duties are to facilitate BOP's compliance with the terms of this Consent Decree." Jennifer Knox, Women and Special Populations National Policy and Program Coordinator, will be appointed as the BOP Liaison. Ex. 1, ¶¶ 10, 114.

### Monitor's Public Reports

e)      The Monitor will issue public monthly and quarterly reports on the treatment and conditions of Class Members. Ex. 1, ¶¶ 98-100.

f)      The Monitor will review and report on concerns related to Class Member's treatment and conditions at FCI Dublin, including: outstanding medical and/or mental healthcare needs, PREA reports and advocacy services, compassionate release requests, release dates and application of Federal Time Credits (FTCs), FCI Dublin disciplinary incidents and impacts on early release credits and security and recidivism classifications and property claims and reports of mistreatment during transport from FCI Dublin. Ex. 1, ¶¶ 8, 42-43

g)      The Monitor will review and report on the capacity of all facilities where class members are designated, including the medical and mental healthcare staffing levels and wait times for outside provider care. Ex. 1, ¶¶ 37, 36.

h)      The Monitor will review and report on all reports of staff abuse or retaliation against all Class Members. The Monitor will also review and report on all SHU placements of all Class Members. Ex. 1, ¶ 50.

i)      The Monitor will review and report on Class Members' designations, including whether Class Members are designated to facilities with adequate programming and educational and vocational opportunities. The Monitor will also review and report on Class Members' release dates, Federal Time Credits ("FTCs"), and eligibility for release to community placements (*i.e.* home confinement or Residential Reentry Centers), and any issues receiving or applying credits, or being released when eligible. Ex. 1, ¶¶ 68, 71. The Monitor will review and report on compassionate release requests submitted by Class Members. Ex. 1, ¶ 77.

j)      The Monitor will also review and report on the protections afforded by the Proposed Consent Decree, including access to confidential communication between Class Members and the Monitor and Class Counsel, access to medical care in Class Members' primary language, access to Rape Crises Centers.  Ex. 1, ¶¶ 38, ¶ 39, 83.

***BOP's Obligations as to Class Member Case Work, Access to Care and Services, and SHU Placements***

k)      **Class Member Designations**: BOP will (subject to bed availability, designation, and individual Class Member needs) house each Class Member "in a facility as close as practicable to the Class Member's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence" and  "in the lowest security level facility possible."  No Class Member with longer than nine months remaining on their sentence will be housed in an Administrative Detention Facility (pretrial detention center) for any period longer than six  months or at a Federal Transfer Center for any period longer than one month.  Time housed at FCI Dublin or at Administrative Detention Facilities following transfer from FCI Dublin will count towards the 18-month waiting period to apply for transfer to a new facility.

l)      **Release to Community Placement (Halfway House or Home Confinement)**: BOP will release to community placement any Class Member eligible for community placement under the First Step Act or the Second Chance Act "as soon as practicable after the Class Member becomes eligible." BOP will not deny FTCs or release to community placement under the FSA to any Class Member on the basis of immigration status or the existence of a detainer alone.  Ex. 1, ¶¶ 69-70, 72.

m)      **FCI Dublin Disciplinary Review**: The BOP will review all disciplinary incident reports issued to Class Members at FCI Dublin between January 1, 2020, and May 1, 2024, and will expunge all disciplinary reports that are found to contain due process, evidentiary, or other procedural violations and adjust Class Members' security and recidivism classifications, FTCs, and release dates accordingly.  The Monitor will review and report on this process, including the reclassification of Class Members'

security and recidivism designations and release dates.  Ex. 1, ¶¶ 75-76.

n)  **Credit Loss from Dublin Transfers**: The BOP will ensure that no Class Member lost FTCs or was placed in a "non-earning status" of FTCs due to transfer from FCI Dublin, including in transit, while housed at a Federal Transfer Center, or while designated to an Administrative Detention Center after the Dublin closure. Ex. 1, ¶¶ 73-74. The Monitor will review reports of lost credits due to transfer and recommend corrective action.

o)  **Property Claims from Dublin Transfers**: Class Members may file claims for monetary damages for property lost or damaged as a result of the Dublin transfers. The BOP shall provide, by July 1, 2025, a final decision on all claims for money damages due to property loss related to the closure of FCI Dublin that were submitted by December 1, 2024.  The Proposed Consent Decree provides procedures for Class Members to submit reconsideration requests related to these claims.  Ex. 1, ¶¶ 84-86. The Monitor will review and report on such property claims.

p)  **Medical and Mental Healthcare:** Upon request, BOP will (consistent with security) communicate with Class Members regarding the status of the request or referral for outside medical care, including the estimated wait time.  BOP will provide medical and mental health care to Class Members in their primary language to the extent feasible, including through confidential interpretation, and incarcerated persons will not be used as translators for Spanish except in emergency situations.

q)  **Crisis Counseling:** BOP will provide access to Rape Crisis Centers to all Class Members who request it, including, at a minimum, access to confidential unmonitored calls that will not count against the Class Member's phone minutes and confidential in-person visits in the Class Member's primary language.

r)  **SHU Placements**: The Proposed Consent Decree includes restrictions and guidelines for placements of Class Member in SHU (segregated housing):

- Within 24 hours of a Class Member's placement in SHU, the Class Member and Monitor will be provided with a copy of the Administrative Detention

1   Order, including an articulated specific reason for placement in SHU.  Ex. 1,

2   ¶ 44.

3   • All Class Members in SHU shall be provided with administrative remedy

4   forms,  confidential two-way communication with the Monitor, and

5   confidential legal calls with Class Counsel,.  Ex. 1, ¶¶ 45, 47-48.

6   • Class Members placed in SHU on Administrative Detention Status (non-

7   punitive status) will be provided: additional phone calls to be presumptively

8   approved up to 1.5 hours per week in one session plus one additional phone

9   call per week; access to open general correspondence and visitation in

10  accordance with the same rules and regulations that apply to general

11  population; opportunity to exercise outside their quarters at least 7 hours per

12  week; access to programming activities; reasonable amount of personal

13  property; and the ability to purchase and receive items from the commissary

14  with the same frequency as the general population. Ex. 1, ¶ 46. The Proposed

15  Consent Decree outlines specific processes for Class Members to submit

16  complaints related to the denial of these SHU privileges, and for the Monitor

17  to review and make recommendations on BOP's compliance.  Ex. 1, ¶ 51.

18  • Class Members shall not be placed in SHU pending disciplinary review

19  solely for Low (400 series) or Moderate (300 series) Severity Levels

20  disciplinary shots.

21  • When a Class Member is placed in SHU for alleged disciplinary violations,

22  BOP will provide the Class Member, Class Counsel, and the Monitor a copy

23  of the underlying incident report within 24 hours. The Class Member will be

24  provided a Unit Disciplinary Committee (UDC) hearing within 5 workdays,

25  and if referred, a Disciplinary Hearing Officer (DHO) hearing within 10

26  workdays. BOP will provide the Class Member, Class Counsel, and the

27  Monitor with all documentation related to the UDC and DHO hearings

28  within 24 hours.

- The Proposed Consent Decree outlines specific processes for review of SHU placements, including the involvement of the Monitor and Class Counsel. Ex. 1, ¶¶ 52-57.

***Processes For Reporting Retaliation and Abuse***

s)     Class Members may report allegations of staff physical or sexual abuse to the Monitor, to DOJ OIG, or to BOP OIA.  The Monitor will review and report on allegations of staff physical and sexual abuse of Class Members, including "an assessment of BOP's responses to reports of staff physical and sexual abuse towards Class Members and recommendations for corrective action, including changes to designations, changes to housing and job placements, provision of medical and/or mental health treatment, and other measures necessary to protect Class Members."  The Monitor will report on the status of PREA reports made by Class members regarding abuse that took place at FCI Dublin and reports on injuries and mistreatment suffered by Class Members during transport between BOP facilities.  Ex. 1, ¶¶ 62-63, 65-67.

t)     Class Members may report allegations of staff retaliation directly to the Monitor, to DOJ OIG, or to BOP OIA.  The Monitor will review and report on allegations of retaliation, including any disciplinary action imposed on Class Members after reporting staff misconduct, and recommend that BOP take corrective action.  Ex. 1, ¶¶ 58-61.

u)     "Upon request, BOP shall provide Class Members who report staff abuse with documentation of their report and a written final determination.  BOP shall also inform the Class Member whenever:  the staff member is no longer posted within the Class Member's unit; the staff member is no longer employed at the facility; the agency learns that the staff member has been indicted on a charge related to sexual abuse at a BOP facility; or the agency learns that the staff member has been convicted on a charge related to sexual abuse at a BOP facility.  Following the filing of a PREA report, BOP shall provide the Class Member with requisite follow up medical and psychological evaluations and care, and information about how to contact a Rape Crisis Center."  Ex. 1, ¶ 63.

1    *Access to Counsel*

2        v)        The BOP shall provide Class Members with confidential access to Class

3   Counsel.  Ex. 1, ¶¶ 80-82, 101-105. Class Members will have the opportunity to make a

4   free, confidential legal call to Class Counsel at least once per week. In addition, a phone

5   number for Class Counsel will be added to all Class Members' Trust Fund accounts, and

6   Class Members will be able to make collect calls to Class Counsel regardless of

7   restrictions on phone access. BOP will provide Class Counsel with ongoing and timely

8   access to Class Members, including confidential legal calls within 72 hours' notice and

9   confidential legal visits within 10 days' notice.

10                                    *    *    *    *    *

11        The Proposed Consent Decree also provides that the "BOP shall pay Class

12   Counsels' reasonable attorneys' fees and costs, subject to applicable limitations in terms of

13   eligibility and amount" and that "BOP shall also pay Class Counsel 'Monitoring fees' for

14   their reasonable time and reasonable expenses related to monitoring this Consent Decree."

15   Ex. 1, ¶ 110.  The Proposed Consent decree does not provide for any specific fees and

16   costs award, but rather sets forth an adversarial process for negotiating and, if necessary,

17   litigating fees and costs.

18   **IV.    ARGUMENT**

19        **A.    The Class Certification Requirements Of Rule 23 Continue To Be
             Satisfied.**

20

21        On March 15, 2024, the Court found that the requirements of Fed. R. Civ. P.

22   23(b)(2) had been satisfied and certified a class of "all people who are now, or will be in

23   the future, incarcerated at FCI Dublin and subject to FCI Dublin's uniform policies,

24   customs, and practices concerning sexual assault, including those policies, customs, and

25   practices related to care in the aftermath of an assault and protection from retaliation for

26   reporting an assault."  ECF No. 222 at 14, 20.

27        Because FCI Dublin has been closed, the Parties have agreed to modify the class

28   definition as follows:  "all people who were incarcerated at FCI Dublin between March 15,

2024 and May 1, 2024, and all named Plaintiffs." This class definition is more appropriate because it is these individuals who were transferred away from FCI Dublin as part of the closure and to whom the Court and Ms. Still's work has been directed following FCI Dublin's closure. The members of this class continue to meet the requirements of numerosity, commonality, typicality, and adequacy of representation pursuant to Fed. R. Civ. P. 23(a), as previously found by the Court. The Parties request that the Court approve the revised class definition.

**B.    The Proposed Consent Decree Is Fair, Reasonable, And Should Be Granted Preliminary Approval.**

Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on court approval. *Frank v. Gaos*, 586 U.S. 485, 492 (2019). The Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation … particularly … in class action suits …." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); s*ee also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *In re Hyundai & Kia Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (same). A court may probe the parties' consensual agreement only "to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)); *see* Fed. R. Civ. P. 23(e)(2) (the court may approve settlement "only after a hearing and on finding that it is fair, reasonable, and adequate"). District courts have "broad discretion" over settlement approval. *See Lane*, 696 F.3d at 818.

At the preliminary approval stage, the Court need only find that the proposed settlement is within the range of reasonableness such that it is appropriate to disseminate notice to the class and schedule a fairness hearing. *See In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015); *see also* William B. Rubenstein, Newberg on Class Actions, § 13.15 (5th ed. 2016) ("Newberg"). "At this point, the court's role is to determine whether the settlement terms fall within a reasonable

range of possible settlements, with 'proper deference to the private consensual decision of the parties' to reach an agreement rather than to continue litigating." *Toolajian v. Air Methods Corp.*, No. 18-cv-06722-AGT, 2020 WL 8674094, at *7 (N.D. Cal. Apr. 24, 2020) (quoting *In re Google Referrer Header Privacy Litig.*, No. 5:10-CV-04809 EJD, 2014 WL 1266091, at *6 (N.D. Cal. Mar. 26, 2014)).

To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). Courts have found an absence of collusion when settlement negotiations are conducted by a third-party mediator. *See In re Hyundai & Kia Econ. Litig.*, 926 F.3d at 569; *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr*, No. 15–cv–0224–YGR, 2016 WL 314400, at *11 (N.D. Cal. Jan. 25, 2016).

Thus, at this stage, so long as the settlement falls into the range of possible approval—giving deference to the result of the parties' arms-length negotiations and the judgment of experienced counsel following sufficient investigation—the settlement should be preliminarily approved.

Here, the Proposed Consent Decree is fundamentally fair, adequate, and reasonable. The Plaintiffs reached the Proposed Consent Decree with the Defendants following seven settlement conferences amounting to dozens of hours of formal mediation with Magistrate Judge Joseph C. Spero in addition to dozens of hours of private negotiations between counsel. Representatives from CCWP and a majority of Named Plaintiffs also participated in two full days of formal mediation, provided input throughout, and ultimately approved the Proposed Consent Decree. As the Court has already found, Class Counsel collectively

have extensive expertise in complex civil litigation, in class action cases, and in litigation regarding the rights of incarcerated persons.  *See* ECF No. 222 at 18.  They have investigated the factual and legal issues raised in this action, vigorously litigated the matter, including obtaining a preliminary injunction, and diligently negotiated the Proposed Consent Decree.  Class Counsel have considered the complexity of this action, the length of time until trial, and the risks inherent in litigation and believe that the Proposed Consent Decree is an acceptable alternative to trial.  Janssen Decl., ¶ 4.  Counsel on both sides view this agreement as a successful compromise that will afford significant benefits to the Class Members.  Thus, the fact that qualified, well-informed counsel endorse the Proposed Consent Decree as being fair, reasonable, and adequate weighs in favor of preliminary approval.  That the Parties negotiated the Proposed Consent Decree for the benefit of the Class Members, while leaving determination of claims for attorney's fees and costs for later negotiation, further demonstrates the absence of any collusion.

### C.    The Consent Decree Does Not Provide for Any Particular Amount of Attorneys' Fees, But Provides for Litigation of any Claim for Attorneys' Fees and Expenses

It is the practice of class counsel in injunctive cases such as this one to defer any specific discussion of attorneys' fees and expenses until after prospective relief has been secured for the class.  The Parties have therefore reached no agreement regarding any specific amount of attorneys' fees and expenses to be recovered.  Class counsel has agreed to bear the risk of litigating the amount of fees and expenses recoverable, with no guarantee of receiving any specific amount.  Instead, fees and costs are to be addressed through an adversarial process.

The Proposed Consent Decree instead provides the following process for resolving attorneys' fees and costs:

> The Parties agree that the entry of this Consent Decree is a court-ordered change in the legal relationship between the Parties for purposes of determining eligibility for attorneys' fees and costs. BOP shall pay Class Counsels' reasonable attorneys' fees and costs, subject to applicable limitations in terms of eligibility and amount. The Parties shall engage in good faith efforts to resolve Class Counsels' claim for reasonable attorneys' fees and costs, including production of billing records, before resorting to the

Dispute Resolution Process. BOP shall also pay Class Counsel "Monitoring fees" for their reasonable time and reasonable expenses related to monitoring this Consent Decree, subject to applicable limitations in terms of eligibility and amount.

Janssen Decl., Ex. 1, Consent Decree at ¶ 110.  The schedule at the end of this motion provides a deadline to move for attorney's fees or to move for approval of any fees agreement.

### D.    The Proposed Notice Satisfies Due Process And Should Be Approved.

Notice provided under Fed. R. Civ. P. 23(e) must "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Hyundai & Kia Econ. Litig.*, 926 F.3d at 567 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

The notice standard is satisfied here.  First, the proposed notice informs the Class Members of the relevant aspects of the litigation and the settlement, including:  (i) a brief statement of this action, the settlement embodied, and the claims released by the class; (ii) the date and time of the hearing on final approval; (iii) the deadline and process for submitting objections to the Proposed Consent Decree; and (iv) a copy of the Proposed Consent Decree.  *See* Janssen Decl.¶¶ 2-3, Ex. 1 (Proposed Consent Decree), Ex. 2 (Proposed Notice).

Additionally, the Parties have agreed to the following distribution plan:  Within two (2) business days following the Court's grant of Preliminary Approval, the BOP will deliver the Proposed Notice and a copy of the Proposed Consent Decree to every Class Member, including in English, Spanish, or other languages required by Class Members.

The proposed form of notice and the proposed distribution plan will fairly apprise Class Members of the settlement and their options with respect thereto.  The Court should approve the proposed notice and direct that it be distributed.

### E.    The Court Should Approve The Proposed Scheduling Order, Including Setting A Date For The Fairness Hearing.

Once a court grants preliminary approval and notice is provided, the court conducts

a "fairness hearing" at which all interested parties have an opportunity to be heard.  At such a hearing, the court conducts a substantive evaluation of the proposed settlement to determine whether it is "fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

The Parties propose the following schedule:

| Event | Date |
|---|---|
| Defendants to provide notice to the appropriate officials as required by the Class Action Fairness Act (CAFA) 28 U.S.C. § 1715(b) | Within 10 days of the filing of Preliminary Approval. |
| BOP to distribute the Proposed Notice and Consent Decree to all Class Members | Within two (2) business days after entry of order granting  Preliminary Approval. |
| Deadline for objections by Class Members | January 31, 2025 |
| Deadline for filing of Motion for Final Approval, Plaintiffs Motion for Attorneys' Fees and Costs and for filing of responses to any timely-filed Class Member Objections | February 7, 2025 |
| Hearing on Motion for Final Approval | February 25, 2025 |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court:  (1) grant preliminary approval of the Proposed Consent Decree; (2) approve and direct the distribution of the Proposed Notice; and (3) adopt the schedule proposed herein for Class Member objections, filing of the Motion for Final Approval, and for hearing the motions and addressing objections.  Defendants have reviewed this motion and do not oppose Plaintiffs' requests.

Pursuant to Local Rule 5-1(i)(3) concurrence in the filing of this document has been obtained from each of the signatories below.

1

Respectfully submitted,

2    DATED:  December 6, 2024              ROSEN BIEN GALVAN & GRUNFELD LLP

3                                          By:  */s/ Kara J. Janssen*
4                                               Kara J. Janssen
                                                Ernest Galvan
5                                               Adrienne Spiegel
6                                               Luma Khabbaz

7    DATED:  December 6, 2024              CALIFORNIA COLLABORATIVE FOR
                                          IMMIGRANT JUSTICE
8

9                                          By:  */s/ Susan M. Beaty*
                                                Mx. Susan M. Beaty (they/them)
10

11   DATED:  December 6, 2024              RIGHTS BEHIND BARS
12

13                                         By:  */s/ Amaris Montes*
                                                Amaris Montes
14                                              Miriam R. Nemeth

15   DATED:  December 6, 2024              ARNOLD & PORTER KAYE SCHOLER LLP
16

17                                         By:  */s/ Stephen Cha-Kim*
                                                Stephen Cha-Kim
18                                              Carson D. Anderson
                                                Natalie Steiert
19

20                                         Attorneys for Plaintiffs

21

22

23

24

25

26

27

28