E X H I B I T   1

1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

10

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al., | Case No. 4:23-cv-04155-YGR |
| Plaintiffs, | **CONSENT DECREE** |
| v. | Judge:    Hon. Yvonne Gonzalez Rogers |
| UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al., | |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

# TABLE OF CONTENTS

**Page**

I.     RECITALS ............................................................................................................1

II.    DEFINITIONS ......................................................................................................1

III.   INJUNCTIVE RELIEF ........................................................................................6

       A.    Medical and Mental Health Care .............................................................6

             1.    Review of Medical and Mental Healthcare Alerts ...............6

             2.    Monitoring of Staffing Capacity .........................................7

             3.    Third Party Care ...................................................................7

             4.    Provision of Care in Primary Language ...............................7

             5.    Access to Rape Crisis Centers ..............................................8

             6.    Credentialing ........................................................................8

       B.    Alerts and Reporting ................................................................................8

       C.    Staff Abuse and Retaliation .....................................................................9

             1.    Placement in Special Housing Units.....................................9

                   (a)    Procedure upon Placement in SHU in Administrative
                          Detention ...................................................................9

                   (b)    Privileges in SHU in Administrative Detention Status ..............9

                   (c)    Review of Placement in SHU ...................................11

                   (d)    Remedy under this Consent Decree...........................11

                   (e)    Disciplinary Segregation...........................................12

             2.    Reports of Staff Retaliation.................................................13

             3.    Reports of Staff Physical or Sexual Abuse .........................14

       D.    Designation and Release ........................................................................16

             1.    Designations .......................................................................16

             2.    Credit Loss Due to Transfer ...............................................17

             3.    Disciplinary Review ...........................................................17

             4.    Compassionate Release .......................................................18

|     |       |                                                                              |      |
|-----|-------|------------------------------------------------------------------------------|------|
|     | E.    | Class Member Access to Counsel and the Monitor                               | 18   |
|     | F.    | Processing of Damages Related to Closure due to Property Loss                 | 19   |
|     | G.    | Special Master Report                                                        | 20   |
|     | H.    | Additional Relief                                                            | 20   |
| IV. |       | MONITORING & IMPLEMENTATION                                                   | 20   |
|     | A.    | Appointment of the Monitor                                                   | 20   |
|     | B.    | Protective Order                                                             | 21   |
|     | C.    | Monitor Access                                                               | 21   |
|     | D.    | Monitor Reports and Responsibilities                                         | 22   |
|     | E.    | Class Counsel Access                                                         | 23   |
| V.  |       | DISPUTE RESOLUTION                                                           | 24   |
| VI. |       | SETTLEMENT APPROVAL PROCESS                                                   | 25   |
| VII.|       | ATTORNEYS' FEES AND COSTS                                                     | 25   |
| VIII.|      | RESERVATION OF JURISDICTION AND ENFORCEMENT                                   | 26   |
| IX. |       | MISCELLANEOUS                                                                 | 27   |

CONSENT DECREE

1.     This Consent Decree is made and entered into by and through Plaintiffs California Coalition for Women Prisoners ("CCWP"); R.B., A.H.R., S.L, J.M, G.M, A.S, and L.T and on behalf of the certified Class ("Plaintiffs") and Defendant United States of America, United States of America Federal Bureau of Prisons ("BOP"), BOP Director Colette Peters, in her official capacity, and FCI Dublin Acting Warden Charles Hubbard, in his official capacity ("Defendants"). Plaintiffs and Defendants are Collectively referred to herein as the Parties.

## I.    RECITALS

2.     Through this Consent Decree, Defendants agree to implement the measures set forth herein, subject to monitoring and, if necessary, enforcement by this Court. By entry into this Consent Decree the Parties intend to, and hereby do, resolve all claims raised in this Action. The Parties believe this Consent Decree is fair, reasonable, and adequate to protect the interests of all Parties, and each Party to this Consent Decree was represented by counsel during its negotiation and execution. The Parties further stipulate that this Consent Decree complies in all respects with the provisions of 18 U.S.C. § 3626(a) and that the prospective relief in this Consent Decree is narrowly drawn, extends no further than necessary to correct the violations of federal rights agreed to by the Parties, is the least intrusive means necessary to correct those violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.

3.     Nothing in this Consent Decree supersedes or replaces the BOP's Administrative Remedy Program or the exhaustion requirement under the Prison Litigation Reform Act for a Class Member to pursue an independent cause of action, even if the conduct is related to an issue the Class Member or Class Counsel raises with the Monitor or the BOP Liaison. The Consent Decree does not create additional administrative remedy procedures for Class Members for purposes of the Prison Litigation Reform Act's administrative exhaustion requirements.

## II.    DEFINITIONS

4.     The following definitions apply to the terms of this Consent Decree. All

other terms shall be interpreted according to their plain and ordinary meaning.

5. **"AIC" or "Adult in Custody"** refers to any person in BOP custody who is designated at a penal or correctional institution, or in a halfway house, contract facility, or in limited cases, on supervision on home confinement, or designated to some other setting outside a BOP penal or correctional facility. BOP states that it is not responsible for care for persons held in a halfway house, contract facility, or, in limited cases, on supervision on home confinement, or designated to some other setting outside a BOP penal or correctional facility.

6. **"Administrative Detention"** refers to an administrative status which removes an AIC from the general population. Administrative detention status is non-punitive, and can occur for a variety of reasons. 28 C.F.R. § 541.22(a).

7. "**Administrative Detention Facility**" for the purposes of this agreement refers to BOP institutions that house people in pretrial detention, including Metropolitan Correctional Centers (MCCs), Metropolitan Detention Centers (MDCs), and Federal Detention Centers (FDCs).

8. **"Alert[s]"** refers to instances where the prior Special Master in the instant case, or the current Monitor, identified a concern arising from a Class Member's treatment or lack thereof at FCI Dublin or during transfer from FCI Dublin, including concerns related to: medical and/or mental healthcare (including Medication Assisted Treatment and Medical and/or Mental Health Nexus Cases, as defined below), PREA reports and advocacy services, compassionate release requests, release dates and application of Federal Time Credits, disciplinary incidents and impacts on security and recidivism classifications (including Good Credit Time, Forfeited Non-Vested Good Time Credit, Administrative Detention Time and Disciplinary Segregation Time), property claims, and transport issues. The Monitor's decision to clear or place an Alert shall be final subject to reconsideration by the Monitor at the Monitor's discretion. Alerts closed prior to the Effective Date may be reopened if the AIC provides proof that the Monitor deems sufficient that the alert should not have been closed. Such requests shall be submitted to the Monitor no later than

December 1, 2024, unless the AIC shows by clear and convincing evidence that the evidence submitted in support of reopening could not have been submitted before December 1, 2024. This provision does not limit the ability of the Monitor to reopen an alert closed prior to the Effective Date if the Monitor determines, based on sufficient proof, that the alert should not have been closed.

9. **"BOP Counsel"** means both BOP in-house counsel and litigation counsel assigned by the Department of Justice ("DOJ"). In the event that any individual BOP Counsel separates from his or her employment or if the case is reassigned to different counsel, BOP Counsel will designate successor counsel and notify the Monitor and Class Counsel of the change.

10. **"BOP Liaison"** means an employee from BOP's Central Office who is a direct report to the BOP's Deputy Director who is designated to and whose sole duties are to facilitate BOP's compliance with the terms of this Consent Decree. The BOP Liaison will have access to BOP subject matter experts at the regional and Central Office level, and should assist the Monitor to gather information, help track alerts, and if necessary, should raise concerns with the Deputy Director directly. The BOP Liaison will share only minimal information with other BOP employees, and will share such information only to the extent necessary to enable the Liaison to access necessary records and other information. The BOP Liaison shall not share any information related to a class member complaint with any official who is the subject of that complaint. The BOP Liaison does not have independent authority to direct any BOP employee to take a particular action but should make recommendations after consulting with BOP's Deputy Director, subject matter experts, or the Monitor.

11. **"Class Member"** refers to all people who were incarcerated at FCI Dublin between March 15, 2024 and May 1, 2024, and all named Plaintiffs.

12. **"Class Counsel"** refers to Arnold & Porter, California Collaborative for Immigrant Justice, Rights Behind Bars, Rosen Bien Galvan & Grunfeld including Ernest Galvan, Kara Janssen, Luma Khabbaz, Adrienne Spiegel, Susan Beaty, and Amaris

Montes. In the event that any individual Class Counsel separates from his or her employment, Class Counsel will designate successor counsel and notify the Monitor and BOP Counsel of the change.

13.    **"Complaint"** refers to any notification to the Monitor in any form by a Class Member or Plaintiffs' counsel.

14.    **"Consistent with Security"** means subject to exceptions including, but not limited to, major disturbances that require staffing to be re-directed to other areas of the facility on an emergency and temporary basis or natural disasters, and similar other emergencies that restrict movement to preserve safety.

15.    **"Daylight Provision"** means no attendant obligation shall be imposed upon the BOP other than the collection and provision of data.

16.    **"Designation" or "designated"** refers to an order from the BOP's Designation and Sentence Computation Center indicating the facility of confinement for an AIC.

17.    **"Disciplinary Segregation"** refers to a punitive status wherein an AIC is placed in SHU, only as a sanction imposed by a Discipline Hearing Officer (DHO) for committing a prohibited act(s). 28 C.F.R. §§ 541.22(b), 541.24.

18.    **"Effective Date"** refers to the date on which this Consent Decree is approved by the Court.

19.    **"FCI Dublin"** refers to both the low security Federal Correctional Institution located in Dublin, California and the adjacent satellite Camp.

20.    **"First Step Act" or "FSA"** refers to the First Step Act (FSA) of 2018 (P.L. 115- 391) and any subsequent amendments to the law.

21.    **"Federal Time Credit" or "FTC"** refers to time credits towards prerelease custody or early transfer to supervised relief, authorized by procedures for earning and application of time credits that are outlined within the FSA.

22.    **"Grievance"** refers to any BOP cop-out, administrative remedy, or similar written form.

23.    **"Medical and/or Mental Health Nexus Case"** refers to a medical or mental health issue that (i) was first raised, identified, or documented at FCI Dublin (whether by the Class Member themselves, BOP staff or contractors, the then-Special Master, and/or a member of her team, or the Court); or (ii) the Monitor and/or a member of her team, based on a review of a more recently filed grievance or complaint or other communication, determines is directly tied to the Class Member's experiences at FCI Dublin. For the (ii) category, this definition is limited to Grievances or Complaints submitted to the Monitor no later than December 1, 2024, unless the Monitor determines there is clear and convincing evidence establishing that the grievance or complaint could not have been submitted by December 1, 2024. In making this determination, the Monitor shall review any relevant information available to the Monitor, including any information provided by the Class Member, BOP personnel or third-party contractors, Class Counsel or BOP Counsel.

24.    **"Monitor"** refers to Wendy Still while serving under the order of May 20, 2024, ECF No. 308 in the instant action, or any successor Monitor appointed in this action.

25.    "**Protective Status**" refers to an administrative status wherein an AIC is placed in SHU for their own protection. 28 C.F.R. § 541.23(c)(3). For any AIC who is placed in SHU as a protection case, whether requested by the AIC or staff, an investigation occurs to verify the reasons for placement. 28 C.F.R. § 541.28.

26.    **"Rape Crisis Centers"** refers to community-based organizations that help survivors of rape, sexual abuse, and sexual violence who have an active Memorandum of Understanding (MOU) with BOP.

27.    **"Second Chance Act" or "SCA"** refers to the Second Chance Act of 2007 (P.L. 110-199) or any subsequent amendments to the law.

28.    **"Security Sensitive Information**" refers to information whose disclosure without the benefit of a protective order would jeopardize the safety and security of any person, or would jeopardize an ongoing investigation of crime or misconduct.

29.    **"Special Housing Unit(s)" or "SHU(s)"** refers to housing units in BOP

institutions where AICs are separated from the general population, and may be housed either alone or with another AIC. When placed in the SHU, an AIC is either in disciplinary segregation status or administrative detention status. 28 C.F.R. § 541.22.

30.    **"Special Master"** refers to Wendy Still during the period between April 4, 2024, and May 20, 2024, when she served as the Special Master in the instant action.

31.    **"Third Party Care" or "Outside Provider Care"** refers to medical, mental health, or dental care that the BOP provides to AICs using non-BOP employees.

32.    "**Term of the Consent Decree**" runs two years from the Effective Date, unless terminated pursuant to § VIII.

## III.    INJUNCTIVE RELIEF

33.    Any limits on the privileges outlined in this section that are imposed on the basis of being "Consistent with Security" shall be documented, to include the reason for and anticipated length of the limitation and will last only as long as necessary to address the underlying reason for the limitation. This documentation shall be reviewed and approved by the designated Facility's Associate Warden of Operations, and reported to the BOP Liaison, the Monitor, and Class Counsel.

### A.    Medical and Mental Health Care

#### 1.    Review of Medical and Mental Healthcare Alerts

34.    The Monitor shall review, and include in monthly reports, the medical and mental health care status of each individual who is the subject of a Medical and/or Mental Health Alert or Nexus Alert that was not cleared as of the date of the previous monthly report, including but not limited to ongoing provision of care. For any Alert cleared as of the date of the previous monthly report, the Monitor will provide an explanation as to why the Alert was cleared.

35.    At least 90 days prior to the termination of this Consent Decree, the Monitor shall prepare a report regarding the status of any remaining Alerts including what actions, if any, need to be taken to address the Alerts and any timelines or other recommendations regarding addressing the underlying issues that caused the Alerts to remain open.

1

### 2.    Monitoring of Staffing Capacity

2    36.    As a daylight provision only, BOP shall provide the Monitor and Class

3  Counsel with monthly reports on the medical and mental health care staffing levels at all

4  BOP facilities where Class Members are designated. The Monitor shall review this

5  information and make quarterly reports on the subject of medical and mental health care

6  staffing levels at all BOP facilities where class members are designated. If requested by

7  BOP, the report will include recommendations for addressing low staffing levels.

8

### 3.    Third Party Care

9    37.    As a daylight provision only, BOP shall provide the Monitor with monthly

10  reports about the wait times for outside provider care for Class Members after May 1,

11  2024. The Monitor shall review this information and make quarterly reports on wait times

12  for care. The Monitor may comment regarding whether BOP is managing Outside Provider

13  relationships to promote timeliness of care for Class Members after May 1, 2024. The

14  Monitor shall review BOP's notice posted in English and Spanish regarding the process for

15  securing Outside Provider care. At a Class Member's or at Class Counsel's written request,

16  BOP shall, Consistent with Security, communicate with Class Members regarding the

17  status of their request or referral for Outside Provider Care, including the estimated wait

18  time.

19

### 4.    Provision of Care in Primary Language

20    38.    To the extent feasible, BOP shall provide medical and mental health care to

21  Class Members in their primary language at all medical and mental health encounters. This

22  may be accomplished using Language Line Services (LLS) for on-demand, over-the-phone

23  language interpretation services. To the maximum extent feasible, the use of interpreters

24  shall comply with confidentiality requirements, including minimizing the use of AICs as

25  translators and AICs shall only be used as translators for Spanish in emergency situations.

26  The Monitor shall review, and include in quarterly reports, any reports of Class Members

27  being denied access to care in their primary language.

28

### 5. Access to Rape Crisis Centers

39. BOP shall supplement facility mental health care by providing all Class Members who request it with access Rape Crisis Centers. Such access shall not replace ongoing mental health care but shall be an additional resource provided to all Class Members free of cost. This additional access to Rape Crisis Centers shall include at a minimum, (i) access to confidential unmonitored calls (in a confidential setting) that will not count against the Class Member's phone minutes, or (ii) confidential in-person visits, in the Class Member's primary language and with a consistent provider to the extent feasible. Each Rape Crisis Center shall be completely run by a third party provider, and shall have no mandatory reporting or sharing of information to BOP absent client consent.

40. The Monitor shall review, and include in quarterly reports, any reports of Class Members being unable to access services from Rape Crisis Centers.

### 6. Credentialing

41. BOP shall provide reports to the Monitor regarding its policies, practices, and implementation of credentialing for medical and mental health providers and clinicians at all facilities where Class Members are designated, consistent with the frequency with which BOP updates its own monitoring of credentialing, provided that the BOP shall provide at least one complete report, and that report shall be provided at least three (3) months prior to the termination of the Consent Decree.

### B. Alerts and Reporting

42. The Monitor shall review, and include in monthly reports, the status of Class Member issues and Alerts described in subsections below. BOP will provide any records, documentation, communication, or information the Monitor deems necessary for such assessment and reporting. The Monitor will add, resolve, and update Alerts accordingly.

43. At least ninety (90) days prior to the termination of this Consent Decree, the Monitor shall prepare a report regarding the status of any remaining Alerts including what actions, if any, need to be taken to clear the Alerts, and any other recommendations regarding addressing the underlying issues that caused the Alerts to remain open.

### C.      Staff Abuse and Retaliation

#### 1.      Placement in Special Housing Units

##### (a)      Procedure upon Placement in SHU in Administrative Detention Status

44.      To the extent feasible, within twenty-four (24) hours of a Class Member's placement in Administrative Detention Status, the Class Member and the Monitor shall be provided a copy of the Administrative Detention Order (ADO), which shall articulate the specific reason for placement in SHU, supported by objective evidence. Also, within twenty-four (24) hours of such placement, a supervisor not involved in the initial placement shall review and make a determination regarding the placement decision and forward to the BOP Liaison for review. Within two (2) workdays following the supervisor's review of the placement, the BOP Liaison shall review and make a recommendation regarding the placement. In the event the BOP Liaison disagrees with the receiving facility's determination of placement, the Regional Director shall review and make a determination on the placement decision.

45.      Class Members shall be provided with one set of administrative remedy forms upon placement in the SHU and, per existing policy, Class Members shall also be provided such forms whenever they request them and such forms shall be maintained in sufficient supplies in the SHU to allow for staff to promptly provide them to Class Members upon request and maintained in areas Class Members can access when out-of-cell.

##### (b)      Privileges in SHU in Administrative Detention Status

46.      In support of ongoing mental health care of Class Members, and consistent with existing BOP Policy, which allows discretion based on safety, security, the orderly operation of the facility, and public safety, Class Members placed in SHU in Administrative Detention status will be provided:

- In addition to one social phone call per month provided under existing policy, Class Members can request additional phone calls, with such requests presumptively approved at up to 1.5 hours per week in one session plus one additional phone call

per week, unless the Warden concludes that such additional calls would present a specific risk to the safety and security of the facility or the Class Member, in which case the Warden shall articulate in writing the specific reason for the denial and provide the Class Member with a written denial of their request. Class Members may request that a call session is offered during a particular time or day. Class Members may also choose to call Class Counsel during these times.

- Access to open general **correspondence** in accordance with the same rules and regulations that apply to general population. Class Members' phone and email contacts shall not be deleted. Indigent Class Members shall have access to postage to mail legal mail or Administrative Remedy forms, pursuant to existing BOP policy.

- **Visitation** in accordance with the same rules and regulations that apply to general population.

- Opportunity to **exercise** outside their quarters to the extent feasible at least seven hours per week, and staff shall make best efforts to offer individuals exercise outside their quarters one hour per day.

- Access to **programming** activities. Class Members in Administrative Detention shall not be placed in non-earning status, and, if they meet other eligibility requirements consistent with BOP policy, will continue earning FTCs.

- Reasonable amount of **Personal Property** (as defined below).

- The ability to purchase and receive items from the commissary with the same frequency as the general population. Class Members who believe their funds have been improperly encumbered may raise the issue with the BOP Liaison at any time. The Facility will provide an explanation for the encumbrance in writing. If the Class Member is not satisfied with the explanation, they can raise the issue with the Monitor and the Monitor may make a recommendation regarding the encumbrance.

47.    Consistent with Security, Class Members shall be provided access to two-way confidential communication with the Monitor. Access, for purposes of this term, shall mean that the Class Member can engage in confidential two-way communication with the Monitor whenever the Class Member is using the BOP's electronic mail system. Class Members shall be provided with access to BOP's electronic mail system upon their request and at least once per day on weekdays. Class Members shall also be provided access to confidential calls, legal mail, and legal visitation with Class Counsel.

48.    Class Members shall be provided all medication devices and prescription medications within twenty-four (24) hours of placement in SHU.

49.    A "reasonable amount of Personal Property" for purposes of this agreement includes, at a minimum:

- Bible, Quran, or other religious scriptures (1)
- books, paperback (5)
- eyeglasses, prescription (2)
- legal material (see the Program Statement Legal Activities, Inmate)
- magazines (3)
- mail (10)
- newspaper (1)
- personal hygiene items (1 of each type) (no dental floss or razors)
- photographs (25)
- authorized religious medals/headgear (e.g., kufi)
- shoes, shower (1)
- shoes, other (1)
- snack foods without aluminum foil wrappers (5 individual packs)
- powdered soft drinks (1 container)
- stationery and stamps (20 each)
- wedding band (1)
- radio with ear plugs (1)
- watch (must not have metal backing) (1)
- over-the-counter (OTC) medications (2, unless more are medically necessary).
- female AICs will be allowed a choice of a sufficient number (at minimum 4 per day) of menstrual products to include: tampons, regular and super-size; maxi pads with wings, regular and super-size; and panty liners (regular)
- transgender AICs will be allowed to retain gender-affirming clothing and other accommodations (e.g. boxers, binders, and other undergarments; stand-to-pee cups).

### (c)    Review of Placement in SHU

50.    The Monitor shall review, and include in monthly reports, information about SHU placements of all Class Members, including information on the reason for and duration of the SHU placement.

### (d)    Remedy under this Consent Decree

51.    BOP shall notify all Class Members of the following process for complaints of denial of the access to privileges outlined here:

- To best ensure a prompt resolution, Class Members should submit their complaint to the Receiving Facility's SHU Lieutenant or the Captain using the electronic Request to Staff Service. In exceptional circumstances where there is an emergent issue that directly impacts the health and safety of the Class Member, the Class Member may also raise the issue directly with the Monitor.

- If the SHU Lieutenant or Captain does not provide a written response within forty-eight (48) hours or by the following day if the end of the 48-hour period falls on a weekend or holiday, or if the Class Member is unsatisfied with BOP's response, the Class Member shall submit their Complaint to the BOP Liaison who shall respond within forty eight (48) hours, or the next workday if the forty eight (48) hours covers a weekend or holiday.

- In situations where the Class Member faces obstacles to initiating the Complaint with staff, such Complaints may be raised through Class Counsel to BOP Counsel. If BOP Counsel does not respond within forty-eight (48) hours or the next workday if the forty eight (48) hours covers a weekend or holiday, or the Class Member or Class Counsel are not satisfied with BOP's Counsel's response, the Complaint may then be raised with the Monitor.

- The Monitor shall review these Complaints, including BOP's response, and shall assess whether BOP is in compliance with the Consent Decree. If the Monitor determines that BOP is not in compliance, they shall make recommendations for corrective action, and allow BOP five (5) workdays to respond or undertake corrective action. At that point, if the Monitor determines the issue is still not resolved, Parties can engage in the Dispute Resolution Process outlined below.

### (e)    Disciplinary Segregation

52.    Review of SHU placement for disciplinary segregation follows the same three-, seven-, and thirty-day review process outlined in 28 C.F.R. § 541.26.

53.    Consistent with Security, if a Class Member is placed in SHU pending a Unit Disciplinary Committee (UDC) or Discipline Hearing before the Disciplinary Hearing Officer (DHO), BOP shall provide the Class Member, Class Counsel, and the Monitor a copy of the underlying incident report "within 24 hours of staff becoming aware of [the Class Member's] involvement in the incident," as required by Program Statement 5270.09 at page 18 and 28 C.F.R. § 541.5. If BOP does not provide the incident report "within 24 hours of staff becoming aware of [the Class Member's] involvement in the incident," the BOP Liaison shall inform the Monitor and Class Counsel of the reason for the delay in writing.

54.    Class Members shall be provided with a UDC hearing within five (5) workdays of placement of SHU. This provision replaces the UDC timeframe of "ordinarily" within "five workdays" set forth in Program Statement 5270.09 at page 24. BOP shall provide the Class Member, Class Counsel, and Monitor all documentation

related to the UDC hearing within twenty-four (24) hours of the conclusion of the hearing.

55.    If the UDC refers the Class Member to a DHO hearing, that hearing shall be held within ten (10) workdays of referral, absent exceptional circumstances and unless the DHO certifies that additional time is needed and what exceptional circumstances necessitate additional time, and provides that written notice to the Class Member, Class Counsel, and the Monitor. This provision sets out a time frame not provided for in Program Statement 5270.09. BOP shall provide the Class Member, Class Counsel, and the Monitor all documentation related to the DHO hearing within twenty-four (24) hours of the conclusion of the hearing.

56.    Class Members and Class Counsel may raise issues regarding due process and ultimate decision for disciplinary segregation with the Monitor at any time through confidential reporting mechanisms outlined above. The Monitor shall have access to the necessary disciplinary documents or other related documentation to investigate Class Members' placement and disciplinary process. If the Monitor determines this placement or process was incorrect, the Monitor may provide a recommendation that BOP take corrective action.

57.    Consistent with Security, Class Members shall not be placed in SHU in administrative detention status pending UDC or DHO hearing solely for a violation of any alleged prohibited acts in the Low (400 series) or Moderate (300 series) Severity Levels. To place a Class Member in SHU in Administrative Detention status under these circumstances, BOP must provide a written explanation of why this placement is necessary for security reasons to the Class Member, Class Counsel, and the Monitor.

### 2.    Reports of Staff Retaliation

58.    BOP staff shall not retaliate against Class Members for reporting staff misconduct or other similar acts.

59.    Class Members or Class Counsel may submit any Complaint of staff retaliation, which shall include a description of what happened and how it may be retaliatory, to the BOP Liaison or to the Monitor directly. The BOP Liaison shall report

any allegations of staff misconduct to the BOP's Office of Internal Affairs (OIA), the DOJ's Office of the Inspector General (OIG), and, to the extent the Monitor and/or Class Counsel did not make the report to the BOP Liaison in the first instance, to the Monitor and/or Class Counsel within forty-eight (48) hours unless the forty-eight (48) hours covers a weekend or holiday, in which case the report shall be made on the next workday. To the extent the Class Member reports to the Monitor directly, the Monitor shall report to the BOP Liaison within forty-eight (48) hours unless the forty-eight (48) hours covers a weekend or holiday, in which case the report shall be made on the next workday. The Monitor may limit such reports to the DOJ OIG alone if the Monitor determines that extraordinary circumstances justify such a limitation.

60.     The BOP Liaison will also report to the Monitor any disciplinary action imposed on Class Members after reporting staff misconduct. The Monitor will be provided with and review these reports and any disciplinary actions taken against Class Members. The Monitor will provide monthly reports regarding staff retaliation toward Class Members.

61.     The Monitor may recommend that the appropriate Regional Discipline Hearing Administrator reconsider any disciplinary action taken against Class Members after reporting staff misconduct. In instances of retaliation outside the disciplinary process and/or retaliation based on immigration status, the Monitor may recommend that BOP take corrective action to address the retaliation.

### 3.     Reports of Staff Physical or Sexual Abuse

62.     To report allegations of staff physical or sexual abuse, Class Members can send confidential internal electronic messages to DOJ OIG. These confidential messages to DOJ OIG will not be read, viewed, or monitored in any way by any BOP staff. Class Members can also write to the BOP OIA, DOJ OIG, or the Monitor using post mail, which shall be marked "special mail" and will not be read by any BOP staff.

63.     If a Class Member reports an allegation of staff physical or sexual abuse to the Monitor, the Monitor shall report the allegation(s) to the BOP Liaison and DOJ OIG

within forty-eight (48) hours unless the forty-eight (48) hours covers a weekend or holiday, in which case the report shall be made on the next workday. The Monitor may limit such reports to DOJ OIG alone if the Monitor determines that extraordinary circumstances justify such a limitation. If a report of staff physical or sexual abuse against a Class Member is reported to BOP, the BOP Liaison shall alert the Monitor within forty-eight (48) hours of becoming aware of the report unless the forty-eight (48) hours covers a weekend or holiday, in which case the report shall be made on the next workday. Sexual abuse includes sexual abuse, harassment, and voyeurism as defined by 28 C.F.R. § 115.6.

64.     Upon request, BOP shall provide Class Members who report staff abuse with documentation of their report and a written final determination. BOP shall also inform the Class Member whenever: the staff member is no longer posted within the Class Member's unit; the staff member is no longer employed at the facility; the agency learns that the staff member has been indicted on a charge related to sexual abuse at a BOP facility; or the agency learns that the staff member has been convicted on a charge related to sexual abuse at a BOP facility. Following the filing of a PREA report, BOP shall provide the Class Member with requisite follow up medical and psychological evaluations and care, and information about how to contact a Rape Crisis Center.

65.     The Monitor will review, and provide in monthly reports, all reports of staff physical or sexual abuse toward Class Members. The Monitor shall include in quarterly reports an assessment of BOP's responses to reports of staff physical and sexual abuse towards Class Members and recommendations for corrective action, including changes to designations, changes to housing and job placements, provision of medical and/or mental health treatment, and other measures necessary to protect Class Members. The Monitor may make these recommendations prior to issuing a quarterly report on an emergency basis.

66.     The Monitor shall also review and include in quarterly reports the status of PREA reports made by Class Members regarding abuse that took place at FCI Dublin.

67.     The Monitor shall also review and include in quarterly reports reported

1  injuries and mistreatment suffered by Class Members during transport between BOP

2  facilities, including the status of investigation into transport issues.

3  **D.    Designation and Release**

4  **1.    Designations**

5  68.    The Monitor shall review and report on Class Member designations.

6  Monthly reports will include information about where Class Members are designated, and

7  quarterly reports will include whether Class Members are designated to facilities with

8  adequate programming, and educational, and vocational opportunities.

9  69.    BOP shall designate the place of the Class Member's imprisonment, and

10  shall, subject to bed availability, the Class Member's security designation, the Class

11  Member's programmatic needs, the Class Member's mental and medical health needs, any

12  request made by the Class Member related to faith-based needs, recommendations of the

13  sentencing court, and other security concerns of the BOP, place the Class Member in a

14  facility as close as practicable to the Class Member's primary residence, and to the extent

15  practicable, in a facility within 500 driving miles of that residence. BOP shall also

16  endeavor to designate Class Members in the lowest security level facility possible.

17  70.    No Class Member with longer than nine (9) months remaining on their

18  sentence shall be housed in an Administrative Detention Facility for any period longer than

19  six (6) months, or at a Federal Transfer Center for any period longer than one month. Time

20  housed at FCI Dublin or at Administrative Detention Facilities following transfer from FCI

21  Dublin shall count towards the 18-month waiting period to apply for transfer to a new

22  facility.

23  71.    The Monitor shall review and provide in monthly reports Class Members'

24  release dates, FTCs, and eligibility for release to community placements (i.e. home

25  confinement or Residential Reentry Centers). Reports will include any changes to Class

26  Members' eligibility for FTCs or release to community placements, and any issues

27  receiving or applying credits, or being released when eligible.

28  72.    BOP shall release to community placement any Class Member eligible for

community placement under the FSA or the SCA as soon as practicable after the Class Member becomes eligible. When consistent with the FSA and 18 U.S.C. § 3621(b), BOP will not deny FTCs or release to community placement under the FSA to any Class Member on the basis of immigration status or the existence of a detainer alone.

### 2.    Credit Loss Due to Transfer

73.    BOP shall ensure that no Class Member lost FTCs or was in a non-earning status of FTCs due to transfer from FCI Dublin. This includes transfers directly from FCI Dublin and transfers following subsequent redesignations through December 31, 2024, and applies to time in transit, time at Federal Transfer Centers, and time in Administrative Detention Facilities. This also includes any credits lost due to changes in available programming or job placements at new facilities.

74.    Following a report by a Class Member that they lost FTCs or were placed in non-earning status due to the FCI Dublin's closure, including transfers directly from FCI Dublin and transfers following subsequent redesignations through December 31, 2024, the BOP and the Monitor shall conduct a review of the Class Member's FTCs. The Monitor shall review the BOP's FSA Time Credit Assessment Worksheet and any other necessary documentation to make this assessment. If the BOP concludes that the Class Member lost FTCs or was placed in non-earning status improperly, BOP shall take corrective action to ensure that the credits are restored. If the Monitor concludes the Class Member lost FTCs or was placed in non-earning status improperly, the Monitor may recommend that BOP take corrective action.

### 3.    Disciplinary Review

75.    BOP will continue to review all disciplinary incident reports issued to Class Members at FCI Dublin between January 1, 2020, and May 1, 2024, as described in the Court's Orders at ECF 300 and 372. BOP will expunge all disciplinary reports that are found to contain due process, evidentiary, or other procedural violations, and adjust Class Members' security and recidivism classifications, FTCs, and release dates accordingly. The Monitor shall review and report on this process, including the reclassification of Class

Member's security and recidivism designations and release dates. The Monitor may also provide recommendations on expungements and related reclassifications.

76.      The Monitor shall review and report on BOP's review of FCI Dublin disciplinary reports and resulting expungements and reclassifications of the security and recidivism designations, as described above. Reports will be monthly and include information about the nature of the underlying disciplinary report and the reason for expungement.

### 4.      Compassionate Release

77.      The Monitor shall review and report on all compassionate release requests submitted by Class Members. Reports will be quarterly and include an update on the status of the request.

### E.      Class Member Access to Counsel and the Monitor

78.      BOP shall provide all Class Members with access to confidential two-way email communication with the Monitor for the Term of the Consent Decree. No BOP staff will be able to read or view the content of the messages.

79.      Consistent with Security, all outgoing mail from Class Members to the Monitor shall be marked "special mail" and shall not be opened or read by BOP staff.

80.      Class Counsel shall submit a designated phone number for Class Counsel to BOP, which BOP shall add to the Trust Fund accounts for all Class Members. This number will be in addition to Class Members' currently allotted Trust Fund contacts. Class Members will be able to make calls to Class Counsel from Trust Fund phones regardless of other restrictions on phone access. Such calls may, at the option of the Class Member, be charged collect to Class Counsel.

81.      BOP shall ensure that every Class Member has the opportunity to initiate a confidential legal call with Class Counsel at least once per week. Calls will generally take place during pre-scheduled, weekly blocks of time that are at least three (3) hours long and scheduled Monday through Friday between 8am and 5pm Pacific Time. To the extent feasible, BOP shall work with facilities to stagger blocks of time such that facilities'

blocks of time do not overlap. If there is insufficient time for all Class Members who requested a call to speak to Class Counsel during the allotted block of time, BOP shall facilitate a confidential legal call with Class Counsel within two (2) workdays. These calls shall be provided absent exceptional circumstances. A Class Member's placement in SHU, individual restrictions on phone access, or staffing considerations alone (including lockdowns or restrictions on movement due to understaffing) do not constitute exceptional circumstances. If BOP is unable to facilitate calls on a given week due to exceptional circumstances, they shall notify the Monitor and Class Counsel and provide an explanation in writing. BOP Staff shall not prevent calls as a form of retaliation, and any allegations of retaliation may be reported to the Monitor and Class Counsel as provided in § III.C.2. Class Members in SHU shall receive at least one legal call per week if requested.

82.    Class Counsel shall submit a list of attorney names and phone numbers to be approved for the pre-scheduled blocks of time referenced in ¶ 81. These confidential legal calls will not count against Class Members' minutes and will be at no cost to the Class Member. At least monthly, BOP Counsel will provide Class Counsel and the Monitor with each respective designated facility's availability and will amend the list as needed to accommodate the facility's ongoing operations.

83.    The Monitor will review, and include in quarterly reports, complaints from Class Members regarding confidential communication with the Monitor or Class Counsel and may provide recommendations for improved confidential communication.

**F.    Processing of Damages Related to Closure due to Property Loss**

84.    The Monitor shall also review and report on loss and damage to Class Member property as a result of transfer from FCI Dublin, including the status of Class Members' claims for compensation. Nothing in this provision shall prejudice the right of Class Members to make unreleased claims within the normal one-year time frame from the incident.

85.    For Class Members who have submitted a claim for money damages due to property loss related to the closure of FCI Dublin and initial transfer by December 1, 2024,

CONSENT DECREE

1 BOP will provide a final decision letter on or before July 1, 2025.

2     86.    Following a final decision, a Class Member may request in writing that BOP

3 reconsider their claim. Their request for reconsideration must be submitted within three (3)

4 months of the Effective Date or within three (3) months of the date of the denial letter,

5 whichever is later. They must include a reason for reconsideration, which may include

6 additional evidence of the damage or loss to support their request for reconsideration. To

7 the extent a Class Member's property claim was denied for lack of available commissary

8 receipts, the Class Member must provide a signed self-affidavit indicating that the Class

9 Member attempted to obtain the receipts, was unsuccessful, and that the amount requested

10 would otherwise be supported by those receipts if they were available.

11     **G.**    **Special Master Report**

12     87.    The Parties agree that the Special Master Report does not, in itself, create

13 any cause of action or right to relief.

14     **H.**    **Additional Relief**

15     88.    BOP Director will issue a formal, public acknowledgement to victims of

16 staff sexual abuse at FCI Dublin.

17     89.    Following any BOP final decision regarding the lease, sale, or reopening of

18 the FCI Dublin property, BOP will notify the Monitor and Class Counsel of such decision.

19 **IV.    MONITORING & IMPLEMENTATION**

20     **A.**    **Appointment of the Monitor**

21     90.    The Parties shall jointly request that the Court appoint Wendy Still as

22 Monitor. If Ms. Still is not available, and if the Parties are unable to agree on a

23 replacement, the Parties shall meet and confer and propose a replacement to the Court. If

24 the Parties are unable to agree on a proposed replacement, each Party shall provide up to

25 five names to the Court for consideration, and either Party may then strike up to three

26 names and the Court shall appoint a replacement Monitor from the remaining candidates.

27     91.    The Monitor shall be permitted to hire a reasonable number of staff to assist

28 the Monitor in performing the duties outlined in this Agreement. In hiring assistants to

carry out the terms of the Consent Decree, the Monitor must stay within the budgeted amount for the entire term of the Consent Decree, the budget to be set by the following process. The Monitor will propose in writing to both Parties the position or positions for which they would like to hire, including a description of their duties, their hourly rate, their projected number of hours worked per week, and the term of their employment not to exceed the end date of the Consent Decree. Within seven (7) days of receipt, the Parties may submit any objections or questions. The Monitor must respond in writing within five (5) days. The Parties shall then work cooperatively to accept or reject the proposal or prescribe an alternate budget. If the Parties are unable to resolve the dispute, either Party may seek to mediate the dispute with the assistance of Magistrate Judge Spero, or if he is unavailable, another magistrate judge or mediator. If the issue is not resolved via mediation, either Party may apply to the Court for relief.

92.    The BOP shall pay the fees and costs incurred by the Monitor and staff. Invoices will be provided to all Parties for their review before payment.

**B.    Protective Order**

93.    The Parties agree to negotiate and enter an appropriate Protective Order ("the Protective Order"), which shall be signed by the monitor and counsel for all Parties. The protective order shall set forth the procedure for and limitations on disclosure of protected documents and information. Such protected documents and information may include protected health information, law enforcement sensitive information, security sensitive information, and employment information.

**C.    Monitor Access**

94.    Consistent with Security, the Monitor shall have access to BOP facilities and the ability to inspect BOP facilities upon reasonable notice, which need not exceed five (5) days. The Monitor shall have reasonable access to interview BOP Staff and AICs during such inspections. The Monitor may schedule other interviews with BOP Staff through the BOP Liaison. The Monitor shall document all interviews, including the name of the individual interviewed, the date and time of the interview, and the subject of such

1   interview.

2       95.    Consistent with Security, the Monitor shall also have access to Class
3   Members, including the ability to schedule confidential phone calls and conduct
4   confidential in-person interviews with reasonable notice to BOP, which shall be deemed to
5   mean two business days' notice, absent exigent circumstances requiring faster access. In
6   exigent circumstances, the Monitor shall contact the BOP Liaison to arrange such
7   interviews, copying Class Counsel and BOP Counsel.

8       96.    The Monitor shall be provided with access to BOP documents related to
9   Class Members and the terms of the Consent Decree upon request. To the extent such
10  requests rise to the level of an undue burden on staff, the Parties shall meet and confer to
11  attempt to address the issue and, if necessary, shall utilize the Dispute Resolution Process
12  outlined herein. The Monitor shall have reasonable access to Class Member health records,
13  under the Protective Order .

14      97.    The Monitor may communicate *ex parte* with Class Counsel and BOP
15  Counsel.

16      **D.    Monitor Reports and Responsibilities**

17      98.    The Monitor shall produce monthly and quarterly reports as required under
18  the Consent Decree. The Monitor shall provide BOP Counsel and Class Counsel with
19  quarterly reports in draft form. The Monitor shall identify all sources of information relied
20  upon in the report, except where such identifying would jeopardize the safety and security
21  of any person. The Monitor's reports shall contain the Monitor's assessment of whether
22  Defendants are complying with this Consent Decree and provide recommendations for
23  compliance where the Monitor deems necessary. The draft reports will identify with
24  highlighting material that the Monitor intends to redact subject to the Protective Order. The
25  Parties shall have fourteen (14) days to make written comments on the Reports including
26  regarding redactions. The Monitor will then have fourteen (14) days to make any revisions
27  based on the Parties' comments. Any disputes regarding redactions shall be addressed
28  through the Dispute Resolution Process.

99.     As used in the Monitor's reports, the terms "findings," "assess," "assessment," and "evaluation" shall refer to the Monitor's conclusions regarding the state of compliance with specific terms of this Consent Decree. Such conclusions may be used by either Party to support positions taken in the Dispute Resolution Process, without prejudice to either Party's assertions of evidentiary objections. As used in the Monitor's reports or other communications, the term "recommendation" shall refer to a course of action that the Monitor believes would assist the BOP in complying with this Consent Decree. The Monitor's final reports shall be submitted to the Court and made publicly available to Class Members with the redactions described above.

100.     Where the Monitor learns of urgent problems, the Monitor shall alert the Parties to the problems without waiting for a quarterly report, and shall include any recommendations to address the problems. The Monitor shall have the ability to take certain corrective action referenced in provisions above. The Monitor shall notify Counsel for both Parties prior to taking such action. To the extent that there is disagreement over such action(s), the Parties shall meet and confer according to the Dispute Resolution Process outlined herein. If an agreement cannot be reached, the Parties may raise outstanding issues with the Court.

**E.     Class Counsel Access**

101.     Defendants shall permit Class Counsel with ongoing and timely access to Class Members, including through confidential legal visits and calls. For purposes of this provision, "ongoing" means during the term of this Consent Decree, and "timely" means with reasonable notice, which means seventy two (72) hours for a confidential call, and ten (10) days for in-person visits, with some flexibility for emergencies.

102.     For purposes of this provision "confidential" means that the call or visit takes place in a space where the conversation cannot be overheard by BOP Counsel or BOP Staff, and generally in a room without BOP Counsel or BOP Staff present. Counsel for the Parties shall address, on a case-by-case basis, situations where facility operations require use of a non-private room with all necessary measures taken to ensure auditory privacy.

103.    Every quarter, BOP will provide Class Counsel an updated list detailing points of contact responsible for arranging legal calls and visits at all facilities where Class Members are housed.

104.    BOP Counsel shall provide Class Counsel with copies of all documents that BOP Counsel provides to the Monitor. Class Counsel shall submit a written request to the BOP Liaison for health records of Class Members, and, Consistent with Security, may request other records from the Class Member's central file related to an issue within the scope of this Consent Decree. Class Counsel shall receive such records, subject to the Protective Order. BOP shall bear any copying costs and shall provide such records within fourteen (14) days of request unless the Parties agree to a different timeframe for a particular request. Disputes regarding this provision shall be resolved in the Dispute Resolution Process.

105.    Where Class Counsel has a good faith basis for doing so, and where the Class Member cannot use internal channels with reasonable safety or promptness, Class Counsel may bring individual Class Member concerns on topics covered by this Consent Decree to the attention of BOP Counsel in writing. Defendants shall respond in writing within ten (10) business days, unless otherwise agreed to by the Parties. Disputes about volume or good faith of such requests shall be addressed in the Dispute Resolution Process.

## V.    DISPUTE RESOLUTION

106.    In the event of a dispute concerning the interpretation of this Consent Decree during the Term of the Consent Decree, the Parties agree to meet and confer within fourteen (14) days of either Party providing notice in an attempt to resolve the dispute. If the Parties are unable to resolve the dispute, either Party may seek to mediate the dispute with the assistance of Magistrate Judge Spero, or if he is unavailable, another magistrate judge or mediator. If the issue is not resolved via mediation, either Party may apply to the Court for relief.

## VI.     SETTLEMENT APPROVAL PROCESS

107.    The Parties shall jointly move the Court within thirty (30) days of execution of this Consent Decree for an Order granting Preliminary Approval of this Consent Decree and setting a hearing for Final Approval of this Consent Decree.

108.    The Parties shall negotiate and draft a proposed notice to the Class, which shall include the terms of this Consent Decree and their right to object. The Parties shall also develop a plan for distributing the notice to Class Members. Notice shall be distributed by the Parties within twenty-one (21) days of the date of the Court's Order granting Preliminary Approval, and shall remain available to Class Members so long as the Consent Decree is in effect, absent further order of the Court. The Parties shall submit declarations to the Court as part of the motion for final approval confirming that notice has been issued according to this paragraph.

109.    The Parties shall take all procedural steps regarding the fairness hearings as may be requested by the Court and shall otherwise use their respective best efforts to consummate the agreement set forth in this Consent Decree, and to obtain final Court approval of this Consent Decree and entry of Judgment. If, for any reason, the Court does not approve this Consent Decree, the executed Consent Decree shall be null and void and cannot be viewed as a concession of any kind. Upon final approval by the Court, this Consent Decree shall be binding upon the Defendants, Plaintiffs, and all Class Members and shall constitute the final and complete resolution of all issues addressed herein.

## VII.    ATTORNEYS' FEES AND COSTS

110.    The Parties agree that the entry of this Consent Decree is a court-ordered change in the legal relationship between the Parties for purposes of determining eligibility for attorneys' fees and costs. BOP shall pay Class Counsels' reasonable attorneys' fees and costs, subject to applicable limitations in terms of eligibility and amount. The Parties shall engage in good faith efforts to resolve Class Counsels' claim for reasonable attorneys' fees and costs, including production of billing records, before resorting to the Dispute Resolution Process. BOP shall also pay Class Counsel "Monitoring fees" for their

1  reasonable time and reasonable expenses related to monitoring this Consent Decree,
2  subject to applicable limitations in terms of eligibility and amount.

3  **VIII.  RESERVATION OF JURISDICTION AND ENFORCEMENT**

4      111.    The District Court of the Northern District of California shall retain
5  jurisdiction solely to enforce performance as specified in this Consent Decree.

6      112.    By entering into this consent decree, Defendants do not admit any liability
7  on the part of the United States and/or its employees, agents, and former employees and
8  agents, or any other persons.

9      113.    This Consent Decree will be filed in the United States District Court as part
10 of an unopposed motion by Plaintiffs pursuant to Federal Rule of Civil Procedure 23(e)
11 and 4l(a)(2) to approve this Consent Decree and to dismiss the Amended Complaint
12 subject to the Parties' compliance with the terms of this Consent Decree, as contemplated
13 by *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994). This case
14 will remain on the Court's inactive docket for the Compliance Period.

15     114.    The Parties agree to continue to work collaboratively and in good faith to
16 avoid enforcement actions. The BOP agrees that Jennifer Knox, Women and Special
17 Populations National Policy and Program Coordinator, has been designated as the BOP
18 Liaison, and will remain the principal point of contact for any enforcement related issues,
19 regardless of whether she later holds a different position within the BOP. If Ms. Knox is no
20 longer employed by BOP, a designee assigned by BOP will undertake her role.

21     115.    The Parties agree that temporary or isolated incidents of non-compliance, or
22 failure to comply with technicalities, shall not constitute substantial non-compliance. The
23 Parties agree that intermittent compliance during a period of sustained non-compliance
24 shall not constitute substantial compliance. BOP may move the Court to terminate the
25 Consent Decree based on substantial compliance no earlier than 18 months after the
26 Effective Date.

27     116.    Claims for money damages and/or judicial determinations concerning a
28 Class Member's personal medical and mental health diagnoses are beyond the scope of

1    enforcement.

2    **IX.    MISCELLANEOUS**

3       117.    The Parties each acknowledge that they are entering into this Consent Decree

4    freely, knowingly, voluntarily, and with a full understanding of its terms. The Parties

5    acknowledge that they have consulted with counsel of their own choosing concerning this

6    Consent Decree and that they were given reasonable time to review and consider the terms

7    of this Consent Decree. This Consent Decree shall be binding on all successors, assignees,

8    employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

9    The terms of this Consent Decree shall be governed by and construed in accordance with

10   the laws of the State of California.

11      118.    The language of this Consent Decree shall be construed as a whole according

12   to its fair meaning, and not strictly for or against any of the Parties. The terms of this

13   Consent Decree are the product of joint negotiations and shall not be construed as having

14   been authored by one Party rather than another. Any ambiguity shall not be construed

15   against any Party. Where required by context, the plural includes the singular and the

16   singular includes the plural. The headings in this Consent Decree are solely for

17   convenience and shall not be considered in its interpretation.

18      119.    If any provision or provisions of this Consent Decree is held invalid, illegal,

19   or unenforceable, the validity, legality, and/or enforceability of the remaining provisions

20   shall not in any way be affected or impaired thereby.

21      120.    This Consent Decree may be executed in counterparts, each of which shall

22   be considered an original, but all of which, when taken together, shall constitute one and

23   the same instrument. To the extent any documents are required to be executed by any of

24   the Parties to effectuate this Consent Decree, each Party hereto agrees to execute and

25   deliver such and further documents as may be required to carry out the terms of this

26   Consent Decree. Each signatory to this Consent Decree certifies that they are fully

27   authorized by the Party they represent to enter into the Consent Decree, to execute it on

28   behalf of the Party represented, and to legally bind that Party thereto.

121.    Unless otherwise indicated in the Consent Decree, all notices or communications required by this Consent Decree shall be in writing by email addressed as stated below. Should any Party's contact information change from what is listed below, that Party shall promptly provide written notice of the updated contact information to the other Parties.

**To Named Plaintiffs, Class Counsel, or the Settlement Class:**

Ernest Galvan
Kara Janssen
Rosen Bien Galvan & Grunfeld LLP
101 Mission Street 6th Floor Suite #101
San Francisco, CA 94501
egalvan@rbgg.com
kjanssen@rbgg.com

Susan Beaty
California Collaborative for Immigrant Justice
1999 Harrison St, Suite 1800
Oakland, CA 94612
susan@ccijustice.org

Amaris Montes
Rights Behind Bars
416 Florida Avenue N.W. #26152
Washington, D.C. 20001-0506
amaris@rightsbehindbars.org

Stephen Cha-Kim
Carson Anderson
Natalie Steiert
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
Stephen.Cha-Kim@arnoldporter.com
Carson.Anderson@arnoldporter.com
Natalie.Steiert@arnoldporter.com

**To Named Defendants or Defense Counsel:**

Jesse A. Laslovich
Madison L. Mattioli
Mark Steger Smith
Timothy A. Tatarka
Abbie J.N. Cziok
U.S. Attorney's Office for the District of Montana
901 Front Street, Ste. 1100
Helena, MT 59601

1  madison.mattioli@usdoj.gov
2  mark.smith3@usdoj.gov
   timothy.tatarka@usdoj.gov
3  abbie.cziok@usdoj.gov

4  Dominic Ayotte
5  Robert J. France
   Kristi Sutton
6  Federal Bureau of Prisons
   Western Regional Office
7  7338 Shoreline Drive
8  Stockton, CA 95219
   cayotte@bop.gov
9  rfrance@bop.gov
   ksutton1@bop.gov
10 / / /
11 / / /
12 / / /
13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28

1  DATED: November 2, 2024          Respectfully submitted,

2                                   By: _____

3                                   R.B.
                                     Named Plaintiff
4

5  DATED: November __, 2024

6                                   By: _____

7                                   S.L.
                                     Named Plaintiff
8  DATED: November __, 2024

9                                   By: _____

10                                  A.H.R.
                                     Named Plaintiff
11 DATED: December __, 2024

12                                  By: _____

13                                  A.S.
                                     Named Plaintiff
14 DATED: December __, 2024

15                                  By: _____

16                                  G.M
                                     Named Plaintiff
17 DATED: December __, 2024

18                                  By: _____

19                                  J.L.
                                     Named Plaintiff
20 DATED: December __, 2024

21                                  By: _____

22                                  L.T.
                                     Named Plaintiff
23 DATED: December__, 2024

24                                  By: _____

25                                  California Coalition for Women Prisoners
                                     Named Plaintiff
26

27

28

DATED: November___, 2024

Respectfully submitted,

By: _____
    R.B.
    Named Plaintiff

DATED: ~~November~~ December 2, 2024

By: _____
    S.L.
    Named Plaintiff

DATED: November ___, 2024

By: _____
    A.H.R.
    Named Plaintiff

DATED: December___, 2024

By: _____
    A.S.
    Named Plaintiff

DATED: December ___, 2024

By: _____
    G.M
    Named Plaintiff

DATED: December ___, 2024

By: _____
    J.L.
    Named Plaintiff

DATED: December ___, 2024

By: _____
    L.T.
    Named Plaintiff

DATED: December___, 2024

By: _____
    California Coalition for Women Prisoners
    Named Plaintiff

1  DATED: November___, 2024                Respectfully submitted,

2                                          By: _____

3                                               R.B.
                                                Named Plaintiff
4
   DATED: November ___, 2024
5
6                                          By: _____

7  AHR  December                               S.L.
                                                Named Plaintiff
8  DATED: ~~November~~ 2, 2024

9                                          By: ████████████_____

10                                              A.H.R.
                                                Named Plaintiff
11 DATED: December___, 2024

12                                         By: _____

13                                              A.S.
                                                Named Plaintiff
14 DATED: December ___, 2024

15                                         By: _____

16                                              G.M
                                                Named Plaintiff
17 DATED: December ___, 2024

18                                         By: _____

19                                              J.L.
                                                Named Plaintiff
20 DATED: December ___, 2024

21                                         By: _____

22                                              L.T.
                                                Named Plaintiff
23 DATED: December___, 2024

24                                         By: _____

25                                              California Coalition for Women Prisoners
                                                Named Plaintiff
26

27

28

DATED: November___, 2024                Respectfully submitted,

By: _____
R.B.
Named Plaintiff

DATED: November ___, 2024

By: _____
S.L.
Named Plaintiff

DATED: November ___, 2024

By: _____
A.H.R.
Named Plaintiff

DATED: December 5, 2024

By: ████████████████_____
A.S.
Named Plaintiff

DATED: December ___, 2024

By: _____
G.M
Named Plaintiff

DATED: December ___, 2024

By: _____
J.L.
Named Plaintiff

DATED: December ___, 2024

By: _____
L.T.
Named Plaintiff

DATED: December___, 2024

By: _____
California Coalition for Women Prisoners
Named Plaintiff

1    DATED: November ___, 2024          Respectfully submitted,

2                                        By: _____

3                                             R.B.
                                              Named Plaintiff
4
5    DATED: November ___, 2024

6                                        By: _____

7                                             S.L.
                                              Named Plaintiff
8    DATED: November ___, 2024

9                                        By: _____

10                                            A.H.R.
                                              Named Plaintiff
11   DATED: December ___, 2024

12                                       By: _____

13                                            A.S.
                                              Named Plaintiff
14   DATED: December 4, 2024

15                                       By: _____

16                                            G.M
                                              Named Plaintiff
17   DATED: December 5, 2024

18                                       By: _____

19                                            J.L.              Kara Janson
                                              Named Plaintiff   on behalf of J.L. as
20   DATED: December ___, 2024                                  Counsel

21                                       By: _____

22                                            L.T.
                                              Named Plaintiff
23   DATED: December ___, 2024

24                                       By: _____

25                                            California Coalition for Women Prisoners
                                              Named Plaintiff
26

27

28

DATED: November ___, 2024

By: _____
S.L.
Named Plaintiff

DATED: November ___, 2024

By: _____
A.H.R.
Named Plaintiff

DATED: December___, 2024

By: _____
A.S.
Named Plaintiff

DATED: December ___, 2024

By: _____
G.M
Named Plaintiff

DATED: December ___, 2024

By: _____
J.L.
Named Plaintiff

DATED: December ___, 2024

By: _____
L.T.
Named Plaintiff

DATED: December___, 2024

By: _____
California Coalition for Women Prisoners
Named Plaintiff

1  DATED: November__, 2024

2                                   Respectfully submitted,

By: _____
R.B.
Named Plaintiff

DATED: November __, 2024

By: _____
S.L.
Named Plaintiff

DATED: November __, 2024

By: _____
A.H.R.
Named Plaintiff

DATED: December__, 2024

By: _____
A.S.
Named Plaintiff

DATED: December __, 2024

By: _____
G.M
Named Plaintiff

DATED: December __, 2024

By: _____
J.L.
Named Plaintiff

DATED: December __, 2024

By: _____
L.T.
Named Plaintiff

DATED: December 2, 2024

By: _____
California Coalition for Women Prisoners
Named Plaintiff

1 │ DATED: December 7, 2024

2 │

3 │                          By: _____

                                 J.M.
                                 Named Plaintiff

4 │

5 │

6 │

7 │

8 │

9 │

10 │

11 │

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │



1   DATED:  December 5, 2024          Respectfully submitted,

2                                     ROSEN BIEN GALVAN & GRUNFELD LLP

3

4                                     By:  _____

5                                          Kara Janssen
                                           Ernest Galvan
6                                          Adrienne Spiegel
                                           Luma Khabbaz
7                                          Attorneys for Plaintiffs

8

9   DATED:  December 5, 2024          CALIFORNIA COLLABORATIVE FOR
                                      IMMIGRANT JUSTICE
10

11                                    By:  _____

12                                         Susan Beaty
                                           Attorney for Plaintiffs
13

14

15  DATED: December 5, 2024           RIGHTS BEHIND BARS

16

17                                    By:  _____

18                                         Amaris Montes
                                           Miriam Nemeth
19                                         Attorneys for Plaintiffs

20  DATED:  December 5, 2024          ARNOLD & PORTER

21

22                                    By:  _____

23                                         Stephen Cha-Kim
                                           Carson Anderson
24                                         Natalie Steiert
                                           Attorneys for Plaintiffs

25

26

27

28

[4610183.4]                          32                  Case No. 4:23-cv-04155-YGR
                                CONSENT DECREE

1  DATED: December  2 , 2024          UNITED STATES FEDERAL BUREAU OF PRISONS

2

3                                     By:  _____

4                                          WILLIAM W. LOTHROP
                                           DEPUTY DIRECTOR FBOP
5

6  DATED: December  5 , 2024          UNITED STATES ATTORNEY'S OFFICE FOR THE
                                      DISTRICT OF MONTANA
7

8

9                                     By:  _____ for

10                                         JESSE A. LASLOVICH
                                           Madison L. Mattioli
11                                         Mark Steger Smith
                                           Timothy A. Tatarka
12                                         Abbie J.N. Cziok

13                                         Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         33                    Case No. 4:23-cv-04155-YGR