United States District Court

Office of the Clerk

1301 Clay Street, Suite 400S

Oakland, CA 94612-5217

UNITED STATES DISTRICT COURT

NOTHERN DISTRICT OF CALIFORNIA

**FILED**

DEC 30 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA COALITION FOR WOMEN PRISONERS

v.                                                    No. 4:23-cv-04155-YGR

UNITED STATES OF AMERICA, et al.

CLASS MEMBER RHONDA FLEMING OBJECTIONS TO THE PROPOSED CONSENT DECREE

The Parties have submitted a Proposed Consent Decree which allows for objections. Class Member Fleming files the following objections:

PARAGRAPHS 44-56, SPECIAL HOUSING UNIT PLACEMENTS

This Section must include a clear directive to enforce the Consent Decree at all FBOP facilities where Class Members may be held, to include the Federal Transfer Center-Oklahoma. Today, at the FTC, women are being held in the SHU for communicating with male AICs in the same facility. The male offenders were not placed in the SHU. The FBOP has a common practice of punishing women, but not male AICs.

One female officer at the FTC-OKC described male AICs exposing themselves and other obscene acts with no consequences taken by the supervisors or the warden, who happens to be a woman.

Women in the SHU at this facility have no access to report sexual abuse electronically. In fact, although there are several substantiated cases of sexual abuse of women at the FTC-OKC, there is no signage in the general population housing unit or in the SHU, on how to report sexual abuse.

Women are placed in these dirty cells, without any reading material or ability correspond with family.

Special care with enforcement of the Consent Decree is necessary at FTC-OKC.

PARAGRAPH 57, PLACEMENT IN SHU FOR NON-VIOLENT 200 SERIES VIOLATIONS

No Class Member should be placed in the SHU for a non-violent alleged violation of a 200 Series incident report. Codes involving 297 or 298 involve the mail, email, or telephones. These are minor infractions, routinely lowered to 300 Series violations, yet placement in the SHU is alleged to be mandatory by Unit Disciplinary Committees.

PARAGRAPH 72, DESIGNATION/TRANSFER TO COMMUNITY PLACEMENT

Paragraph 72 states:

"BOP shall release to community placement any class member eligible for community placement under the FSA or the SCA as soon as practicable after the Class Member becomes eligible."

There are several problems with this Paragraph.

First, the word "after" should be replaced with "when." The FBOP has proven to be an unfair, callous slave master over women. The attorneys for the FBOP will use that word "after" in a harmful manner to the Class Members.

Second, when the FBOP agrees to send an AIC to community placement, it is a designation "transfer," not "release." The AIC/Class Member remains in FBOP custody, in the care of a contract facility, and required to follow all of the same rules as in prison. The distinction between a "transfer" and a "release" is very important in this Section.

The more complex word for the Court and the Parties to consider and clearly define in the Consent Decree is "eligible."

Who will be responsible to define "eligibility" for community placement for the Class Members, when the FBOP is involved in ongoing retaliation against women who actively participated in this litigation?

For example, in 2023, Class Member Fleming was eligible for transfer to home confinement under the CARES Act, but was denied the transfer. The Defendants alleged the denial was based on a keep-separate or CIM classification between the Class Member and another inmate already on home confinement in Houston. But, as a case management coordinator from another prison stated, "all Dublin had to do was allow Fleming to report to another halfway house about 50 miles away and send her to home confinement." If the former wardens had been fair and followed the rules, Class Member Fleming would not have been in custody to retaliate against, thus leading in some respects to the closure of the prison.

At this time, at least 70% of the Class Members are "eligible" for community placement, in accordance with federal law, to include the filer of these Objections. In Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008), the appellate court ruled in favor of the inmate-petitioner, where evidence proved the FBOP does not provide inmates individualized review, which is mandatory, pursuant to the factors in Section 3621(b), when considering an inmate's request for transfer to a halfway house. For the Class Members, it is unlikely reasonable transfer requests to community placement will be equitable and fairly approved by various FBOP wardens.

18 USC Section 3621(b) and the FBOP Program Statement No. 7310.04 allows the FBOP to designate and transfer the Class Members to community placement, such as a halfway house, at any time. A halfway house is considered a penal or correctional facility by the FBOP, as stated in PS No. 7310.04. Therefore, to place women as close to home as practicable, in compliance with the Proposed Consent Decree, due to the limited number of women's federal prisons, community placement should be considered.

At this time, there are hundreds of cases disputing the eligibility of AIC transfers to halfway house pursuant to the First Step Act credits AICs earn for programming. The American Civil Liberties Union filed a complaint, Crowe v. BOP, No. 1:24-cv-03582 (District of Columbia, December 20, 2024), challenging the BOP's practice of denying AICs transfer to a prerelease center aka halfway house, when their flat time, regular goodtime, and FSA credits equal the total sentence, instead leaving the AIC in prison. A district court in Kansas has held it is mandatory that the BOP transfer the AIC to a halfway house after they earn FSA credits equaling their prison sentence. See, Woodley v. Warden, No. 24-3053-JWL (D. Kansas, May 15, 2024)(writ granted, BOP ordered to transfer petitioner to a halfway house). The FBOP did not appeal this decision.

The Defendants' employees cannot be trusted to fairly determine eligibility for transfer to community placement, therefore, the issue of "eligibility" for community placement must be resolved by the Parties in an approved Consent Decree or by an agreement similar to that in Ruiz v. Estelle, 503 F. Supp 1265, FN-4 (S.D. Tex. 1980), stating, "On the final day of trial on merits, an order was entered (the terms of which had been agreed to by all parties) providing all inmates of the Texas Department of Corrections who had testified during the trial, the opportunity to transfer to federal custody. Eighty-one inmate subsequently elected to transfer.

In the Ruiz case, there were numerous inmate witnesses. Similarly to this case, there were verified incidents of retaliation with disciplinary reports against witnesses, placement in segregation, denial of access to counsel, and physical violence. To protect the witnesses, the parties agreed to transfer them to federal custody.

In the present case, the witnesses for the evidentiary hearing in January 2024 and the lead Plaintiffs should be transferred to community placement for the same reasons the parties in Ruiz agreed to do so, unless the Defendants can prove specific AICs are a threat to the community.

The witnesses and lead Plaintiffs that are still in custody have suffered immensely. The Court is aware that two investigators employed at FCI-Dublin have cooperated with the FBI and U.S. Attorney's Office regarding these investigators being ordered to "set up" Class Member Fleming. These BOP investigators were threatened by both wardens. This lead to an FBI raid of the prison, subsequently tipping the scales in favor of appointing a Special Master to monitor the prison.

Class Member Fleming, many other witnesses, Class Member AICs, and lead plaintiffs have been written incident reports, placed in the SHU repeatedly, transferred several times since the closing of the Dublin prison, and others suffered daily retaliatory actions by BOP employees blaming former Dublin inmates for the closing of the prison. These are AICs who normally do not receive incident reports for years.

To reduce future litigation, the Parties should resolve the issue of designating certain lead Plaintiffs, witnesses, and other AICs with substantiated cases of targeted retaliation, to community placement. This will achieve two goals: Providing a fair, individualized review for community placement and reduce litigation.

Other Class Members currently eligible for community placement should receive an individualized review, in accordance with Section 3621(b).

CONCLUSION

The Proposed Consent Decree is good. Many of the AICs that have read this document have expressed their appreciation of both Parties working together to achieve meaningful changes.

The Objections in this document address problems the Class Members are currently facing. We hope the Parties will work together to consider the Objections raised and resolve these issues.

Respectfully Submitted,

Rhonda Fleming, Class Member

/s/Rhonda Fleming

December 26, 2024

#20446-009

FTC-Oklahoma

PO Box 898801

Oklahoma City, OK 73189-8901

SERVICE ON ALL PARTIES IS PERFORMED BY THE ELECTRONIC FILING OF THIS DOCUMENT BY THE UNITED STATES DISTRICT CLERK.

Rhonda Fleming #20446-009
FTC-Oklahoma
P.O. Box 898801
Oklahoma City, OK 73189-8901

HOUSTON TX RPDC 773

26 DEC 2024 PM 2 L

United States District Court
Office of the Clerk
1301 Clay Street, Suite 400S
Oakland, CA 94612-5217