TRULINCS 96841298 - CHAMPION-CAIN, GINA - Unit: PEK-F-A

**FILED**

JAN 02 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

FROM: 96841298
TO:
SUBJECT: OBJECTION TO PROPOSED SETTLEMENT
DATE: 12/27/2024 02:11:51 PM

MOTION OF OBJECTION TO PROPOSED CONSENT DECREE/CLASS ACTION SETTLEMENT
California Coalition For Women Prisoners et al., Plaintiff, v.
United States of America Federal Bureau of Prisons et al., Defendant
Case No: 4:23-cv-04155-YGR (N.D. Cal. 2023)
By: Gina Champion-Cain, Fed. ID# 96841-298
    Federal Prison Camp
    P.O. Box 5000
    Pekin, Illinois m 61555-5000

I. INTRODUCTION

Comes now Class Member in the above referenced case, Gina Champion-Cain ("Member"), with this Motion of Objection to Proposed Consent Decree/Class Action Settlement ("Decree") due to the Decree's exclusion of the remedy of relief for the Department of Justice ("DOJ") and the Bureau of Prisons ("BOP") to release minimum to low recidivism and security risk rated sexual abuse survivors from Dublin's "Rape Club" to immediate home confinement detention.

II. DISCUSSION

The basis for Member's objection is that Plaintiff's legal team should have negotiated, as part of the Decree, for the immediate release to home confinement for the sexual abuse survivors from Dublin who are minimum to low recidivism and community risk rated, due to the fact that the BOP has not followed through, to date, on any of the requirements of the Honorable Judge Gonzalez Rogers' orders from March 15, 2024 and April 15, 2024, as well as the BOP's continued (1) lack of medical and mental health care, and (2) retaliation of sexual assault victims, such as Member, while incarcerated in BOP facilities.

A. Court Order:

Judge Gonzalez Rogers' Order dated April 15, 2024 stipulated that the BOP was to update all casework for all the former Dublin inmates to ensure they were transferred to "the correct location," including "whether an inmate should be released to a BOP facility, HOME CONFINEMENT, or halfway house, or granted compassionate release." (emphasis added)  Furthermore, "[t]he result of these case reviews and transfer designations SHALL be reviewed with the Special Master PRIOR to transfer." (emphasis added)  This, unfortunately, never occurred, at least for the first set of women, including Member, who were abruptly transported immediately after the announcement of Dublin's closure.

B. Special Master Report:

On June 5, 2024, Special Master, Wendy Still ("SP") submitted a 101-page Report and Recommendations ("Report") which found an "unconscionable" pattern of derelict care and oversight at the now-closed Dublin facility and "raised the alarm that similar problems may be plaguing other federal prisons across the nation."  Member understands that this Court can adopt the SM's Report as the opinion of the Court at any time in its orders as per Fed. R. Civ. P. 53(F)(1) (courts have the broad discretion to "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.").

The SM continues on page 13 of her Report "...to have concerns that the mistreatment, neglect and abuse the women received at Dublin not be repeated at the facilities where these individuals are being transferred to..." (without the benefit of the exercise of analysis referenced in the aforementioned Court Order of April 15th), "...as many of the conditions that existed at Dublin appear to be longstanding and systemic in nature."  It is critical to note here that some of the deficiencies and issues exposed within the Report are likely an indication of systemwide issues within the BOP rather than simply within FCI Dublin.

On page 5 of the Report, the SM states that the court had ordered BOP to create a Master Tracking Roster for each inmate to ensure issues were tracked and resolution subsequently would occur; these tracking categories included destination facility and date of arrival, COMPASSIONATE RELEASE, medical and mental health alerts and VICTIM ADVOCACY SERVICES RELATED TO PREA, Medication Assisted Treatment alerts, transportation issues, property issues, and disciplinary and related credit issues.  In reference to Member's situation, none of this has occurred, especially the fact that there has never been victim advocacy services offered to Member nor any mental health care for her PTSD.

TRULINCS 96841298 - CHAMPION-CAIN, GINA - Unit: PEK-F-A

------------------------------------------------------------------------------

C. Alternative Forms of Incarceration Wholly in the Power of the BOP:

Incarceration in a prison environment is not the only kind of sentence available for the few remaining camp-status victims of Dublin's heinous sexual abuse. A non-custodial sentence, such as home confinement detention under the Federal Location Monitoring System ("FLM"), for example, will still limit these inmates' liberty interest and there will be harsh consequences if any of them violate the conditions activated upon their release from BOP custody. As such, these conditions promote respect for the law, protect the public and do not constitute approval of these inmates' past criminal conduct. Because of this, the Plaintiff's legal team could and should have negotiated for non-custodial activation for the minimum to low risk rated sexual abuse survivors from Dublin's camp as part of the settlement proceedings of the class action litigation. The legal team could have pointed to the success rate of the CARES Act which sent thousands of inmates, who were not deemed to be a public safety concern, out on home confinement detention and placed on monitoring devices. The BOP cannot continue to use the excuse of "lack of bed space" in halfway houses for not allowing this very small portion of Dublin sex abuse survivors to be sent on home confinement detention, especially in Member's case since her San Diego, California home has been security-approved by the U.S. Probation office (Officer Ahlan Garcia), so she could be monitored under the Federal Location Monitoring Program. {Also please see Woodley v. Warden, case no: 24-3053-JWL, May 15, 2024 where the 10th Circuit court found that the BOP's inability to find a halfway house placement necessitated Mr. Woodley's immediate transfer to home confinement}.

Additionally, a BOP internal memorandum ("Memo") dated May 24, 2013 by Blake R. Davis, former Assistant Director of the Correctional Programs Division of the BOP, "Guidance For Home Confinement and Residential Reentry Center Placements," states that the BOP staff MUST conduct individualized federal halfway house placement decisions and, more importantly, allowing the wardens to approve modifications to the length or type of placement. As the Memo also states on pages 6-7 "[i]f the RRM determines a modification to a referral is needed or that other placement options are available (such as direct home confinement for an inmate with low needs/risk or placement in a work release program for a higher security inmate), the change must be approved by the Warden."

Continuing on page 2 of the Memo, Mr. Davis writes "for low need/low risk inmates, HOME CONFINEMENT is the preferred pre-release option. This option is currently under-utilized. Program Statement 7320.01, Home Confinement, states supervision under home confinement may be provided by contract halfway house services, U.S. Probation, or other government agencies." On page 3 of the Memo, Mr. Davis continues "[t]his is normally accomplished via two home confinement options -- placement under the supervision of a RRC or placement in the Federal Location Monitoring Program operated by U.S. Probation, where available. We must make a concerted effort to utilize these effective community placement options for appropriate inmates. In addition to reintegrating inmates more quickly into their communities, maximizing the use of home confinement for appropriate inmates will help mitigate our critical population/capacity issues."

Finally, on page 7 of the Memo, Mr. Davis states "[c]ommunity placements should be driven by the results of an inmate's individual assessment[,]" and "[a]ll inmates are eligible for home confinement. Direct placement on home confinement should be considered for low and minimum security inmates. In judicial districts where FLM is available, RRM staff should consider this option for appropriate inmates to the maximum extent possible." "RRMs will continue to be required to review home confinement eligible inmates in RRCs on a regular basis as set forth above. In locations where RRC bed space is limited, ensuring an inmate's timely placement on home confinement will help address capacity issues and also ensure more inmates are afforded RRC services."

Even the former General Counsel for the BOP, Kathleen Kenney, in a memorandum dated November 14, 2008 entitled "Inmate Requests for Transfer to Residential Reentry Centers," wrote that "inmates are legally eligible to be placed in a RRC at ANY TIME during their prison sentence" and that "Federal courts have made clear that RRCs are penal or correctional institutions within the meaning of applicable statutes. Staff cannot, therefore, automatically deny an inmate's request for transfer to a RRC. Rather, inmate requests for RRC placement must receive individualized consideration." This memorandum goes on to instruct BOP staff to consider requests for transfer to a RRC outside the "normal" pre-release time period and that low risk prisoners with a job and a home to go to should be sent to HOME CONFINEMENT in lieu of federal halfway house placement; this would be 100% applicable to Member Champion-Cain.

Going back to the CARES Act success rate, even for those inmates who had 5, 10, 15 years left on their sentences, there should be absolutely no issue with the BOP/DOJ sending Member Champion-Cain home immediately on home confinement detention under the FLM. In fact, 18 U.S.C. Section 3624(g)(10) stipulates that the BOP is allowed to lengthen the amount of time that a prisoner can be placed on home confinement. Therefore, the Plaintiff's legal team could have negotiated for home confinement detention for the small number of the Dublin sexual abuse survivors who are still incarcerated and are camp and community-release rated inmates (those who have recidivism ratings of minimum or low, like Member who is a negative 21 recidivism rated inmate). Member is NOT asking this Court or these negotiations to MODIFY her sentence -- she is not asking for a reduction in her sentence from this Court -- she is simply asking for home confinement detention under the FLM.

TRULINCS 96841298 - CHAMPION-CAIN, GINA - Unit: PEK-F-A

--------------------------------------------------------------------------------

III. RELEVANT CASE LAW: Torres v. Misusnic (Case No: cv-20-4450-CBN-PVC-July 14, 2020, C.D. Cal.): This was a class action filed by the men of LOMPOC's FCI and USP seeking habeas and injunctive relief for unconstitutional conditions of confinement in violation of their Eighth Amendment rights. Petitioners had applied for a preliminary injunction requesting the court to require, inter alia, that Respondents (BOP) expedite review and determination of eligibility of LOMPOC inmates for home confinement and/or compassionate release. This case was an important and long overdue outlier on the issue of whether certain claims challenging prison conditions are cognizable on habeas review where remedy sought is release. Judge Marshall in this case reasoned that the inmate class seeking release raised a cognizable habeas claim because they challenged the "fact and duration of confinement on the basis that no set of conditions of confinement under present circumstances could be constitutional." Torres, 472 F. Supp. 3d @724-26.

IV. CONCLUSION

All of these salient points of discussion should have been used in settlement negotiations by Plaintiff's legal team with the BOP/DOJ as the same reasonable deductions can be made in this class action case as were made in the LOMPOC class action due to the horrific and insidious treatment of the Dublin women including sexual abuse, medical and mental health care neglect and negligence, as well as other "unconscionable" conditions as outlined by the Honorable Judge Gonzalez Rogers and the Special Master in their respective Orders and Reports. Member Champion-Cain is not asking for modification of her sentence as she understands that cannot be granted by this Court or by the BOP; instead, she is asking for this Court and the Honorable Judge Gonzalez Rogers to DENY the Proposed Consent Decree/Class Action Settlement so that the Plaintiffs, especially those Class Members who are sexual assault survivors, minimum to low recidivism and security risk rated, and are still incarcerated in BOP facilities, can be given the opportunity to continue to fight for their immediate release to home confinement detention through the FLM and their respective U.S. Probation offices. If such an important settlement point of immediate release to home confinement cannot be reached by the parties, then the Plaintiff class should be able to effectively argue their position in front of a jury of their peers in June of 2025.

Respectfully submitted this 30 day of December, 2024.

_____
Gina Champion-Cain, Fed ID#96841-298
Class Member