ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL – 330482
LUMA KHABBAZ – 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Email:        egalvan@rbgg.com
              kjanssen@rbgg.com
              aspiegel@rbgg.com
              lkhabbaz@rbgg.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:    (510) 679-3674
Email:        susan@ccijustice.org

AMARIS MONTES*
  Md. Bar No. 2112150205
MIRIAM R. NEMETH*
  D.C. Bar No. 1028529
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, D.C.  20033
Telephone:    (202) 455-4399
Email:        amaris@rightsbehindbars.org
              miriam@rightsbehindbars.org

* Admitted *pro hac vice*

Attorneys for Plaintiffs

STEPHEN S. CHA-KIM*
  N.Y. Bar No. 4979357
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, New York  10019-9710
Telephone: (212) 836-8000
Email:    stephen.cha-kim@arnoldporter.com

CARSON D. ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER
LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California  94306-3807
Telephone: (650) 319-4500
Email:  carson.anderson@arnoldporter.com

NATALIE STEIERT*
  D.C. Bar No. 90010655
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20001-3743
Telephone: (202) 942-5000
Email:    natalie.steiert@arnoldporter.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al.,<br><br>      Defendants. | Case No. 4:23-cv-04155-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CONSENT DECREE**<br><br>Date:    February 25, 2025<br>Time:    1:00 pm<br><br>Judge:   Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

I.    INTRODUCTION AND SUMMARY ....................................................... 2

II.   LEGAL STANDARD FOR FINAL APPROVAL ..................................... 3

III.  THE CONSENT DECREE IS FAIR, ADEQUATE, AND REASONABLE
      AND SHOULD BE GRANTED FINAL APPROVAL ............................. 4

      A.   The Class Representatives and Class Counsel Have Adequately
           Represented the Class and The Proposal was Negotiated at Arm's
           Length ........................................................................................... 4

      B.   The Consent Decree Provides Comprehensive Relief to the Class
           Members and Treats Class Members Equitably Relative to Each Other ....... 5

           1.   Summary of Key Provisions that Will Benefit Class Members ........... 5

                (a)   Access to the Monitor and Class Counsel ............................... 5

                (b)   Class Member Case Work Requirements ................................. 5

                (c)   Access to Medical and Mental Health Care ............................ 6

                (d)   SHU Placements ................................................................. 7

                (e)   Sexual Abuse and Staff Retaliation ....................................... 7

           2.   The Consent Decree is Reasonable In Light of the Costs, Risks
                and Delay of Trial and Appeal. ................................................ 9

           3.   The Terms Regarding Attorneys' Fees and Timing of Payment
                Prioritize Relief for the Class Over Prompt Payment of
                Attorney Fees. ..................................................................... 9

IV.   NONE OF THE OBJECTIONS REFUTE THE PRESUMPTION THAT
      THE CONSENT DECREE IS FAIR, ADEQUATE, AND REASONABLE
      AND INSTEAD POINT TO THE IMPORTANCE OF ENTERING THE
      DECREE ......................................................................................... 10

      A.   Releases to Community Placement ............................................. 10

      B.   Monetary Relief ...................................................................... 12

      C.   Scope of Consent Decree .......................................................... 13

      D.   Use of Special Housing Unit ..................................................... 14

      E.   Other Filings From Class Members ............................................ 15

F.     Filing by Organizational Plaintiff ........................................................... 17

G.     Filings From Non-Class Members .......................................................... 18

V.     CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................. 3

*Hiser v. Franklin*,
94 F.3d 1287 (9th Cir. 1996) ................................................................. 12

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .............................................................. 9

*In re Jackson Lockdown/MCO Cases*,
568 F. Supp. 869 (E.D. Mich. 1983) ........................................................ 12

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 4

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ................................................................. 4

*L.H. v. Schwarzenegger*,
645 F. Supp. 2d 888 (E.D. Cal. 2009) ..................................................... 10

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .............................................................. 3, 15

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)............................................................... 4

*Officers for Just. v. Civ. Serv. Comm'n of S.F.*,
688 F.2d 615 (9th Cir. 1982) ................................................................. 4

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................. 4

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ................................................................. 4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................. 3

## STATUTES

18 U.S.C. § 3626(a)(3) ............................................................................. 12

**OTHER AUTHORITIES**

*Crowe v. BOP*,
        Case No. 1:24-cv-03582-APM (D.D.C.) ................................................................ 10

**RULES**

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 12

Fed. R. Civ. P. 23(e) ................................................................................................ 3

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on February 25, 2025 at 1:00 pm or as soon thereafter as the matter may be heard, Plaintiffs CALIFORNIA COALITION FOR WOMEN PRISONERS ("CCWP"); R.B., J.L., S.L., G.M., J.M., A.H.R., A.S., and L.T. ("Named Plaintiffs") (together, the "Plaintiffs"), by and through Class Counsel will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order: granting final approval of the proposed Consent Decree and finding its terms to be fair, adequate, and reasonable.

The motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the attached Declaration of Luma Khabbaz; all pleadings and papers on file in this action; and any oral argument this Court permits.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION AND SUMMARY

The Court should grant final approval of the parties' agreed-upon Consent Decree because it provides much needed and hard-won injunctive relief to the certified class of individuals who were formerly incarcerated at FCI Dublin.  As the Court recognized in its order granting preliminary approval, "The Proposed Consent Decree is the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Dkt. 442 at 2.[1]

In November 2024, after years of factual investigation, visits with incarcerated people, an unannounced FCI Dublin visit from Judge Gonzalez Rogers, a week-long evidentiary hearing, appointment of a Special Master, a preliminary injunction and multiple extensions thereof, seven settlement conferences, and several private negotiations by the Parties, the Parties reached an agreement to resolve all class claims for injunctive relief raised in this case.  Dkt. 438 at 6-10.

The Proposed Consent Decree provides relief to class members including, *inter alia*, a public acknowledgement of abuse by the BOP; appointment of a Monitor to implement requirements and issue reports; mechanisms to ensure proper designation and credit-earning for class members and release to community placement as soon as practicable; provision of medical and mental health care to class members in their primary language; restrictions on the use of the Special Housing Unit ("SHU") and expanded privileges for those housed in the SHU; improved processes to report staff abuse and retaliation; and improved access to Class Counsel.  *See generally* Dkt. 442-2.

The Court granted preliminary approval of the Proposed Consent Decree on December 20, 2024.  Dkt. 442.  Plaintiffs, by and through Class Counsel, respond herein to class member comments and objections regarding the Proposed Consent Decree and

---

[1] Page numbers refer to ECF numbering.

1  request final approval so the reforms contained therein can be fully implemented

2  expeditiously.

3        The Court has received 15 filings with comments or objections to the Consent

4  Decree.  Eleven are from class members, including the Organizational Plaintiff.  Of those

5  eleven, four exclusively describe problems with conditions of confinement, which align

6  with terms in the Consent Decree and support the urgent need for such relief.   None of

7  the objections rebut the presumption that the Consent Decree is fair, reasonable, and

8  adequate.

9  **II.     LEGAL STANDARD FOR FINAL APPROVAL**

10        Federal Rule of Civil Procedure 23(e) requires the Court to hold a hearing to

11  determine whether the proposed Consent Decree is "fair, reasonable, and adequate" after

12  considering, as relevant here, whether: "the class representatives and class counsel have

13  adequately represented the class"; "the proposal was negotiated at arm's length"; "the

14  relief provided for the class is adequate" based on "the costs, risks, and delay of trial and

15  appeal," "the effectiveness of any proposed method of distributing relief," "the terms of

16  any proposed award of attorney's fees," and, "the proposal treats class members equitably

17  relative to each other."  Fed. R. Civ. P. 23(e).

18        To determine whether a settlement meets these standards, courts must balance

19  several factors, including:

20        the strength of the plaintiffs' case; the risk, expense, complexity, and likely
          duration of further litigation; the risk of maintaining class action status
21        throughout the trial; the amount offered in settlement; the extent of
          discovery completed and the stage of the proceedings; the experience and
22        views of counsel; the presence of a governmental participant; and the
          reaction of the class members to the proposed settlement.
23

24  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other*

25  *grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

26        The Court must "evaluate the fairness of a settlement as a whole, rather than

27  assessing its individual components."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th

28  Cir. 2012) (citing *Hanlon*, 150 F.3d at 1026).  Although the Court must "explore[ ]

comprehensively all factors," it is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). Additionally, "[n]ot all of these factors will apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). And the Court "must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526.

## III.   THE CONSENT DECREE IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE GRANTED FINAL APPROVAL

### A.   The Class Representatives and Class Counsel Have Adequately Represented the Class and The Proposal was Negotiated at Arm's Length

This Court has already found that the Consent Decree is "the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Dkt. 442 at 2. Class Counsel has also adequately represented the class. As this Court has already found, Class Counsel collectively have extensive experience in complex civil litigation, in class action cases, and in litigation regarding the rights of incarcerated persons. *See* Dkt. 222 at 18. Class Counsel has vigorously litigated the matter, obtaining

1 a preliminary injunction appointing a Special Master, and diligently negotiated the

2 Consent Decree over the course of seven settlement conferences and several more private

3 conferences between the parties.

**B.      The Consent Decree Provides Comprehensive Relief to the Class Members and Treats Class Members Equitably Relative to Each Other**

6 The Consent Decree provides broad and meaningful injunctive relief to the

7 certified class balancing the costs, risks, and delay of litigation and the effectiveness of

8 providing relief to class members.  The Consent Decree requires substantial changes to

9 BOP policies and procedures and provides for a Monitor that will ensure implementation

10 of the terms in the Consent Decree.  Not all class members will encounter the issues

11 addressed by the Consent Decree, but all class members will be treated equitably under

12 the Consent Decree in the event they do encounter an issue covered by the Consent

13 Decree.

**1.      Summary of Key Provisions that Will Benefit Class Members**

**(a)      Access to the Monitor and Class Counsel**

16 Regarding access to Counsel, the Complaint sought relief that required BOP to

17 "provide timely and consistent access to confidential attorney calls and visits.  Dkt. 152 at

18 ¶ 532.

19 The Consent Decree requires that class members have confidential two-way

20 communication with the Monitor as well as be able to send "special mail" to the Monitor

21 that must not be opened by staff.  Dkt. 442-2 at ¶¶ 78-79.  Class members will be able to

22 call Class Counsel regardless of phone restrictions.  *Id.* at ¶ 80.  Class members will be

23 able to have weekly confidential legal calls with Class Counsel in pre-scheduled blocks

24 of time at no cost to the class members.  *Id.* at ¶ 81.  The Monitor will report on issues

25 regarding confidential communication with Class Counsel and the Monitor and provide

26 recommendations on the resolution of those issues.  *Id.* at ¶ 83.

**(b)      Class Member Case Work Requirements**

28 Class members must be housed according to BOP policy, and the Monitor shall

1  review and report on designations. *Id.* at ¶¶ 68-69. Class members with more than 9

2  months remaining on their sentence may not be at administrative detention facilities for

3  more than 6 months or at Federal Transfer Centers ("FTCs") for more than 1 month. *Id.*

4  at ¶ 70. The BOP must also review all disciplinary reports from January 1, 2020 to

5  May 1, 2024 at FCI Dublin, expunge reports with deficiencies, and update class

6  members' case work accordingly. *Id.* at ¶ 75. The Monitor also will report on class

7  member release dates, credit, and eligibility for community release. *Id.* at ¶ 71. The BOP

8  shall release anyone eligible for community placement as soon as practicable. *Id.* at ¶ 72.

9  BOP cannot deny FTCs or community placement based on immigration status or

10  detainer. *Id.* The BOP must also ensure no class members lost credits due to transfer

11  from FCI Dublin, including for time spent in Administrative Detention Facilities

12  following transfer. *Id.* at ¶ 73. The Monitor will also review and report on the status of

13  class member compassionate release requests quarterly (*Id.* at ¶ 77), a process which

14  class members previously had little information about.

### (c)    Access to Medical and Mental Health Care

16       Plaintiffs, in their First Amended Complaint, sought relief to "provide

17  constitutionally adequate medical and mental health care to survivors of sexual abuse."

18  Dkt. 152 at ¶ 532.

19       The Consent Decree requires the Monitor to continue creating, assessing, and

20  clearing alerts related to unresolved medical and mental health care concerns. Dkt. 442-2

21  at ¶ 42. The Monitor will provide monthly reports on clinical staffing levels and wait

22  times for outside providers. *Id.* at ¶¶ 36-37. The BOP must provide a class member

23  information about the status of their outside provider medical care if a class member asks

24  for it. *Id.* at ¶ 37. The BOP must provide class members with care in their primary

25  language, leaving as a last resort the use of other Adults-In-Custody (AICs) to provide

26  translation. *Id.* at ¶ 38. The BOP must provide class members free and confidential

27  access to Rape Crisis Centers when requested. *Id.* at ¶ 39. Such access supplements, but

28  does not replace, mental health care BOP provides class members. *Id.*

**(d)    SHU Placements**

Plaintiffs' requested relief regarding the SHU was for BOP to "immediately cease the practice of placing individuals who report sexual abuse into solitary confinement in the SHU."  Dkt. 152 at ¶ 532.

This Consent Decree introduces a number of procedures to govern placement of class members in the SHU, including those placed in the SHU prior to or without any incident report.  For Administrative Detention, or non-disciplinary status, BOP must provide an administrative detention order within 24 hours and then conduct further review including by the BOP Liaison.  Dkt. 442-2  at ¶ 44.  If the BOP Liaison disagrees with placement, the Regional Director must review it.  *Id.*  Class members in administrative detention must receive access to a number of privileges set out by BOP policy, including social and legal calls, visitation, exercise, programming, personal property, and commissary access.  *Id.* at ¶ 46.  When class members are placed in SHU for alleged disciplinary violations, the Consent Decree requires that BOP provide the class member, Class Counsel, and the Monitor the incident report within 24 hours; a hearing within 5 workdays; and if referred, a DHO hearing within 10 work days.  *Id.* at ¶¶ 53-55.  All documentation must be provided within 24 hours of the hearing.  *Id.* at ¶ 55.  There is also a process set out for class members to grieve any violations of the SHU provisions.  *Id.* at ¶¶ 51, 56.  The Monitor shall also report on SHU placements.  Per the Consent Decree, class members may not be placed in SHU for administrative detention status pending UDC or DHO hearing for a 300 or 400 level violation, absent written explanation detailing why it is necessary for security reasons.  *Id.* at ¶ 57.

**(e)    Sexual Abuse and Staff Retaliation**

The First Amended Complaint sought relief in a number of ways to address rampant staff sexual abuse and retaliation.  Specifically, it sought to require BOP to "adequately, hire, train and supervise its employees to prevent their ongoing sexual misconduct and abuse of power"; "implement a confidential and reliably available method for individuals to report abuse to fully independent outside authorities who are

not employed by the BOP"; "properly investigate claims of abuse"; "address rampant retaliation against survivors, including but not limited to placement in solitary confinement, punitive cell and strip searches, and punitive transfers, which harm survivors and deter others from reporting"; "ensure that officers who have substantiated claims of sexual abuse and harassment against them are promptly fired and not permitted to return to BOP employment"; "install fixed cameras in areas where abuse is known to occur and properly monitor and maintain the fixed cameras that do exist"; and "address increasingly dire living conditions that contribute to the ongoing sexual exploitation of incarcerated persons."  Dkt. 152 at ¶ 532.

The Consent Decree provides class members with various confidential options to report staff abuse, including to the Monitor, BOP Office of Internal Affairs ("OIA"), and DOJ Office of Inspector General ("OIG").  Dkt. 442-2 at ¶ 62.  The Monitor must report allegations of abuse to the BOP Liaison and DOJ OIG.  *Id.* at ¶ 63.  If an allegation is made to BOP, the Liaison must alert the Monitor within 48 hours.  *Id.*  BOP must provide, upon request, documentation of staff abuse reports and written determinations, as well as other updates about the staff member's employment status.  *Id.* at ¶ 64.  The Monitor will also report on staff physical and sexual abuse toward class members and BOP's responses.  *Id.* at ¶ 65.  The Monitor can also recommend corrective action in cases of abuse.  *Id.*  The Monitor will further report on reports made pursuant to the Prison Rape Elimination Act ("PREA") relating to Dublin and reports related to staff misconduct on transports between BOP facilities.  *Id.* at ¶¶ 66-67.

The Consent Decree also addresses class member concerns of retaliation.  The following procedures are available to Class Members under the Consent Decree.  Class members or Class Counsel may submit complaints of retaliation to the Liaison or Monitor.  If the complaints are reported only to the Monitor, the Monitor must then report the allegations to the Liaison who informs BOP OIA and DOJ OIG for further investigation.  If a class member reports directly to the Liaison, the Liaison must also inform the Monitor and Class Counsel.  The Liaison must also report to the Monitor any

1   discipline imposed on class members after reporting staff misconduct, which the Monitor

2   will review and report on.  The Monitor may recommend reconsideration of discipline or

3   corrective action to address retaliation.  *Id.* at ¶¶ 58-61.

### 2.   The Consent Decree is Reasonable In Light of the Costs, Risks and Delay of Trial and Appeal.

6       The significant benefits that the Class will enjoy under the Consent Decree,

7   considered in light of the risks of litigation, support final approval.  *See In re Anthem,*

8   *Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (finding final approval

9   appropriate where litigation "would have been costly and uncertain and would have

10  detrimentally delayed any potential relief for the Class" and where relief is "timely,

11  certain, and meaningful . . . ").

12      It is uncertain whether pursuing additional litigation would result in greater relief,

13  and additional litigation would involve uncertainty and delay for all parties.  Declaration

14  of Kara J. Janssen in Support of Preliminary Approval, Dkt. 438-1 at ¶ 4.  Here,

15  proceeding to trial, along with possible appeals, could delay resolution of this matter by

16  several years.  Moreover, the extensive factual issues and novel legal issues in the case

17  would involve extensive resources at trial, including the use of experts.  Given the

18  importance and urgency of the issues alleged in this matter involving sexual assault,

19  retaliation, and the provision of critical medical and mental health services, the difference

20  between the possibly long delay involved in continued litigation and the immediate

21  improvements promised by the Consent Decree is an important consideration.  The risks

22  of continued litigation therefore weigh in favor of final approval.

### 3.   The Terms Regarding Attorneys' Fees and Timing of Payment Prioritize Relief for the Class Over Prompt Payment of Attorney Fees.

25      To ensure the parties' ability to reach agreement on substantive relief for the class,

26  Class Counsel have prioritized those discussions over attorneys' fees rather than delay

27  resolution of the matter.  Accordingly, Class Counsel have deferred finalization of

28  attorneys' fees and expenses until after the class begins receiving relief under the Consent

Decree. The Consent Decree does not guarantee Class Counsel any set amount of fees, but instead provides process for Class Counsel to make a fees demand, attempt to resolve it informally with Defendants, and if it cannot be resolved, submit it to dispute resolution through mediation with Judge Spero. *See* Dkt. 442-2 at ¶ 110. Any agreement reached on fees and expenses will be submitted to the Court for approval to ensure that the hours and rates are reasonable. If the fees cannot be resolved through negotiation or mediation, the Plaintiffs will file an application for fees and expenses pursuant to Paragraph 106 of the Consent Decree.

The process described above will delay any award of attorneys' fees to Class Counsel for the years of work performed thus far, and does not guarantee Class Counsel any particular amount of compensation for fees and expenses. Courts have utilized this type of fees process in other consent decrees involving purely injunctive relief. *See generally L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888 (E.D. Cal. 2009) (resolving disputes over fees approximately seven months after approval of settlement).

## IV. NONE OF THE OBJECTIONS REFUTE THE PRESUMPTION THAT THE CONSENT DECREE IS FAIR, ADEQUATE, AND REASONABLE AND INSTEAD POINT TO THE IMPORTANCE OF ENTERING THE DECREE

### A. Releases to Community Placement

Three objectors discussed the Consent Decree's terms related to release to community placement. Class Counsel supports immediate release of all eligible class members to community placements, and appreciates class members' concerns regarding BOP's practices related to halfway house and home confinement, including implementation of the First Step Act (FSA).[2] The Consent Decree provides meaningful class-wide relief related to community placements, including ongoing monitoring of eligibility and release, and requires BOP to release eligible class members to community placement as soon as practicable. Dkt. 442-2 at ¶¶ 71-72.

---

[2] Accurate implementation of the FSA is the subject of a separate suit pending in the District of Columbia. *See Crowe v. BOP*, Case No. 1:24-cv-03582-APM (D.D.C.).

1        Two of the objections argue that Class Counsel should have negotiated through the

2  Consent Decree the release of low security, low recidivism Dublin sexual abuse survivors

3  to home confinement.  Dkts. 444, 450.  Class Counsel appreciates the importance of

4  release, including for survivors of prison staff abuse who are retraumatized by continued

5  incarceration.  The Consent Decree provides pathways to community placements for

6  eligible class members, and Class Counsel continue to advocate for the release of FCI

7  Dublin survivors whenever possible.  Both objectors also assert that the BOP has not

8  complied with this Court's previous orders following the closure of FCI Dublin.  *Id.*

9  While Class Counsel understands these concerns, to the extent that the objectors in

10  Dkts. 444 and 450 are concerned that BOP will not comply with the Consent Decree, the

11  Consent Decree is Court-enforceable and includes provisions to ensure compliance.

12  Dkt. 442-2 at ¶¶ 111, 113-14.

13        Another filing objects to the phrasing of the term related to release to community

14  placement and argues that certain class members should be released to home

15  confinement.  Dkt. 443.  The objector suggests replacing "after" with "when" regarding

16  BOP's requirement to release eligible class members to home confinement.  *Id.* at 2.  She

17  also suggests changing "release" to "transfer" because of the legal distinction between a

18  release and a transfer remaining in BOP custody.  *Id.*  She raises concerns with who will

19  define "eligibility" due to BOP's questionable interpretation of eligibility.  *Id.* at 3.

20  Lastly, she argues that BOP should designate lead plaintiffs, witnesses, and other AICs

21  with substantiated retaliation to home confinement and other class members should have

22  individualized review according to Section 3621(b).  *Id.* at 4.  Class Counsel appreciate

23  the distinctions provided by the objector in Dkt. 443, but none of these phrasing concerns

24  should prevent final approval of the Consent Decree.  The Consent Decree requires BOP

25  to release anyone eligible for community placement as *soon as practicable*, rendering the

26  distinction between "after" and "when" insignificant.  Dkt. 442-2 at ¶ 72.  As to the

27  question of eligibility, the Consent Decree also requires the Monitor to report on

28  eligibility of class members for community release.  *Id.* at 71.  In response to requests in

1  Dkts. 443, 444, and 450 for releases for specific individuals, the Consent Decree provides

2  class-wide relief related to release to community placement.  To the extent that class

3  members are not eligible for release to community placement and request release based

4  on extenuating circumstances, there are other avenues for such relief, including filing for

5  compassionate release.  To the extent that objectors request a prisoner release order, that

6  requires that other options be exhausted first, requires a three-judge panel, and

7  overcrowding must be at issue.  *See* 18 U.S.C. § 3626(a)(3).  The Consent Decree is a

8  step toward remedying the deprivation of rights that must be exhausted before any

9  prisoner release order.

10         **B.      Monetary Relief**

11         One class member objected on the basis that she has not received monetary

12  compensation for the retaliation she experienced at FCI Dublin and during the subsequent

13  closure.  *See* Dkt. 454.  She writes that she was reassigned from her coveted job to a low

14  paying one at FCI Dublin and was unable to attend classes.  *Id.* at 1.  She subsequently

15  was transferred twice before she arrived to her current institution, where she awaits

16  starting a drug treatment program.  *Id.* at 2.  As a result, she objects that this Consent

17  Decree is unfair because she did not receive monetary compensation or early release to

18  home confinement.

19         Class Counsel appreciates this objector's concerns and desire for accountability,

20  however the lack of monetary compensation should not preclude final approval of this

21  Consent Decree.  The class claims in this case are for injunctive relief; there are no class

22  damages claims.  Approval of this Consent Decree creates no bar to damages claims, and

23  class members are able to pursue monetary relief under the law.  The Court granted class

24  certification for injunctive relief and was warranted in doing so based on Rule 23(b)(2).

25  Dkt. 222 at 19-20.  "[E]very federal court of appeals that has considered the question has

26  held that a class action seeking only declaratory or injunctive relief does not bar subsequent

27  individual suits for damages."  *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996)

28  (quoting *In re Jackson Lockdown/MCO Cases*, 568 F. Supp. 869, 892 (E.D. Mich. 1983)).

1    This objector's experience at FCI Dublin and subsequent transfers are issues that

2 form the basis for many of the terms in the Consent Decree.  For example, the Consent

3 Decree lays out a procedure for class members to report suspected retaliation, which

4 requires BOP to report the allegation up the chain of command and to Class Counsel.

5 Dkt. 442-2 at ¶¶ 62-64.  It also allows the Monitor to recommend corrective action to

6 address retaliation.  *Id.* at ¶ 65.  The Monitor shall also report on eligibility of class

7 members for community release, and BOP shall release anyone eligible for community

8 placement as soon as practicable.  *Id.* at ¶ 72.

9    **C.    Scope of Consent Decree**

10    Three of the filings include objections related to the scope of the Consent Decree

11 insofar as it relates to conditions at various institutions and the duration of monitoring.

12    In Dkt. 449, the class member acknowledges that the Consent Decree covers

13 conduct in FCI Dublin and during transfer, and describes abuse and retaliation the class

14 member has experienced in their current facility.  *Id.* at 1-2.  The Consent Decree applies

15 to all class members who were formerly incarcerated at FCI Dublin, and its staff abuse,

16 retaliation, and SHU terms apply to all facilities where class members are incarcerated

17 during the term of the Consent Decree.  The Consent Decree is agnostic to where any

18 class member is currently housed, and the objection therefore should not prevent

19 approval.

20    Another objection details conditions at FTC Oklahoma City, including sexual

21 abuse, retaliation, and conditions of confinement.  Dkt. 443 at 1-2.  She writes that at the

22 transfer center, female AICs are punished disproportionately to male AICs.  *Id.* at 1.  She

23 also writes that AICs who are placed in the SHU at the transfer center have no avenue to

24 report sexual abuse electronically, and no signage generally on how to report sexual

25 abuse despite "several substantiated cases of sexual abuse of women at the FTC-OKC."

26 *Id.* at 2.  The class member argues for "[s]pecial care with enforcement of the Consent

27 Decree" at this facility.  *Id.* at 2.  The Consent Decree applies only to class members, but

28 it attaches wherever class members are housed in BOP custody.  *See, e.g.*, Dkt. 442-2,

¶ 36 ("BOP shall provide the Monitor and Class Counsel with monthly reports on the medical and mental health care staffing levels at all BOP facilities where Class Members are designated."). To the extent class members are at FTC Oklahoma City at any given time, there will be monitoring and other protections inherent in the Consent Decree including review of disciplinary actions, SHU placements, the ability to report abuse electronically, and information for class members regarding their rights under the Consent Decree.

The objector in Dkt. 459 describes ongoing retaliation due to being previously housed at FCI Dublin. She writes that the settlement focuses on a specific time period, and it is important to recognize the problem as a whole. *Id.* at 2. Class Counsel of course shares class members' concerns about ongoing retaliation, and the Consent Decree provides for monitoring and corrective action for retaliation of class members at their new facilities. It is possible the objector is arguing the terms of the Consent Decree should extend past the agreed-upon duration. The term of the Consent Decree runs for two years from the date of court approval, with the option for BOP to move to terminate it no earlier than 18 months only if BOP reaches substantial compliance. Dkt. 442-2, ¶¶ 18, 32, 115. Class Counsel understands this concern, particularly for class members with years or decades left on their sentences, and agrees that the Consent Decree must include a substantial monitoring period. In negotiating the Consent Decree, Class Counsel weighed the potential outcome and risk of future litigation against the comprehensive, immediate, and certain relief provided by the Consent Decree during this time period. *See, supra*, Section III.B.2. This objection should not be a basis to prevent approval given the broad benefits inherent in this Consent Decree.

## D.    Use of Special Housing Unit

One objector requested that the Consent Decree be modified to prevent placement in the SHU based on alleged violations of Codes 297 and 298, which she reports are "non-violent," "minor infractions, routinely lowered to 300 Series violations." Dkt. 443 at 2.

1    While Class Counsel welcome any changes to the SHU policy that protect class
2    members from retaliation and mistreatment, this objection should not bar final approval
3    of the Consent Decree.  The Consent Decree requires that BOP improve the protections
4    for class members who are placed in the SHU, including a requirement that the Monitor
5    review and report on class member placements in the SHU.  Dkt. 442-2, ¶ 50.  Class
6    Counsel and class members may raise issues regarding due process and any decision for
7    disciplinary segregation with the Monitor, who may recommend that BOP take corrective
8    action regarding SHU placement.  *Id.* at ¶ 56.  The Court must consider the Consent
9    Decree as a whole, rather than individual components.  *Lane*, 696 F.3d at 818-19.
10   Despite the request that a few of the terms be amended, the objector in Dkt. 443 closes
11   with:  "The Proposed Consent Decree is good.  Many of the AICs that have read this
12   document have expressed their appreciation of both Parties working together to achieve
13   meaningful changes."  Dkt. 443 at 5.

14         **E.    Other Filings From Class Members**

15         Other filed objections do not explicitly address the terms of the Consent Decree,
16   but instead discuss issues that the Consent Decree is designed to ameliorate.

17         One class member discusses her untreated medical issues while at FCI Dublin that
18   persist untreated at FMC Carswell including that she has suffered multiple injuries to her
19   feet and legs that cause her serious pain, impact her ability to walk, was further injured by
20   lack of medical treatment at FCI Dublin, and is not receiving proper medications at FMC
21   Carswell.  Dkt. 447 at 1-2.  She also writes about the effect of her medical issues on her
22   transfer experience.  *Id.*  Class Counsel appreciates and shares class members' concerns
23   about ongoing and unmet medical needs, which form the basis for many of the terms in
24   the Consent Decree.  Class Counsel previously raised concerns related to this class
25   member in Class Counsel's May 2025 memo to the Special Master and the current roster
26   reflects a cleared medical alert, but pursuant to Paragraph 8 of the Consent Decree, the
27   Monitor may reopen an alert if, based on sufficient proof, the alert should not have been
28   closed.  Dkt. 442-2 at ¶ 8.

1    The filing ends with a request from the Court to obtain a visa to stay in the United

2  States because of what she has endured at FCI Dublin.  Dkt. 447 at 3.  Class Counsel

3  understands the concerns of many noncitizen class members, including survivors of FCI

4  Dublin staff abuse, who are vulnerable to deportation.  However, neither BOP nor the

5  Court has the authority to grant an immigration visa.[3]

6    Another class member writes about a humiliating and difficult search she

7  experienced before leaving FCI Dublin where she was strip-searched multiple times

8  while she was being transferred from Dublin during the closure process by four different

9  officers.  Dkt. 448 at 1-4.  The class member also writes about her experience reporting

10  this incident and the institutions' insufficient responses.  *Id.* at 4-5.  She describes

11  harassment and retaliation at her current institution, alleging her restitution payment has

12  been increased in retaliation.  *Id.* at 5-6.  The class member also writes about her

13  experience with the FIT program and includes a request to be transferred to FCI Waseca

14  and a request for a lower, more reasonable restitution payment.  *Id.* at 6.  Class Counsel

15  appreciates these serious concerns, and the Consent Decree aims to address these very

16  issues.  Class Counsel has also been in contact with this class member and has repeatedly

17  raised these issues to BOP Counsel and the Monitor.  *See* Khabbaz Decl. ¶ 10.

18    Another class member pleads for her time credits back so she can be released and

19  deported.  Dkt. 457.  She raises a concern shared by many noncitizen class members,

20  related to a carveout in the First Step Act which states that noncitizens with final orders

21  of removal are not eligible for FTCs or release to community placement, which has

22  resulted in many immigrant class members losing up to a year of early release credits and

23  community replacement referrals upon transfer to new facilities where staff more closely

24  collaborate with the Department of Homeland Security (DHS).  The filing also describes

25  the trauma from FCI Dublin due to officers entering their quarters while sleeping.  *Id.* at

26  1.  It describes the transfer experience, losing property, and fearing for their lives during a

27

28  _____
[3] Both the BOP and the Court have the authority to sign U visa certifications.

1   reckless bus ride.  *Id.*  It then goes on to detail the retaliation she faced at her subsequent

2   institutions.  *Id.* at 1-2.  The objector also believes she is missing credits that would allow

3   her to be released this year.  *Id.*  She filed for compassionate release with her sentencing

4   judge, but due to mail issues at FCI Waseca, she is unsure if it was properly received.  *Id.*

5   at 2.  This filing provides very real examples of the problems the Consent Decree aims to

6   address.  The Consent Decree provides a reporting process for staff abuse and retaliation,

7   including retaliation based on immigration status.  Dkt. 442-2, ¶¶ 58-67.  The Monitor

8   will review and report on class members' release dates, FTCs, eligibility for community

9   placement, and any issues with receiving or applying credits.  *Id.* at ¶ 71.

10          Yet another class member's filing details her experiences at BOP, including

11  experiencing and reporting a PREA incident, medical neglect at FCI Dublin, a difficult

12  transfer, and treatment at receiving institutions related to being a Dublin AIC.  Dkt. 461

13  at 1.  She also writes that she elected to do the FIT program in Spanish only to later learn

14  that she was ineligible to receive time off for it.  *Id.* at 1-2.  She thanks Class Counsel, the

15  Monitor, and Judge Gonzalez Rogers for their work on this case.  *Id.* at 2.  She requests to

16  be able to stay in the country and work after her release.  *Id.*  She also describes BOP's

17  recent shift requiring AICs to pay for phone minutes.  *Id.* at 3.  She does not object to the

18  Consent Decree.

19          **F.      Filing by Organizational Plaintiff**

20          Organizational Plaintiff California Coalition for Women Prisoners ("CCWP")

21  filed a letter to the Court signaling their support for the Consent Decree and urging the

22  Court to "approve—and just as importantly, enforce" the agreement.  Dkt. 463 at 1.

23  CCWP also notes "alarming reports of ongoing abuse, retaliation, and medical neglect

24  against people transferred from Dublin," and raises a number of ongoing concerns from

25  their members regarding the scope of the Consent Decree, the ability to enforce terms,

26  releases for survivors, and updates on BOP staff who engage in misconduct.  *Id.* at 1-4.

27  Class Counsel share many of CCWP's concerns, and like CCWP believe that the Consent

28  Decree is a crucial step toward protecting class members' constitutional rights.

The Consent Decree applies to all class members and attaches at any institution the class member is housed at during the monitoring term.  The class definition is currently based on the date of class certification, but Class Counsel has previously indicated support for expanding the definition to include those who were at FCI Dublin when the Complaint was filed, as well as victims of FCI Dublin staff sexual and physical abuse.  The Consent Decree is court-enforceable and includes a dispute resolution process in the event differences in interpretation arise.  Dkt. 442-2 at ¶¶ 111, 113, 114, 106.  The Consent Decree requires the Monitor to report on the eligibility of class members for community placement and requires the BOP to release those eligible as soon as practicable.  *Id.* at ¶¶ 71-72.  It also requires the Monitor to report on the status of compassionate release requests, which CCWP notes BOP previously failed to respond to. *Id.* at ¶ 77; Dkt. 463 at 2.  The Consent Decree further requires BOP to inform the reporting class member, upon request, when the staff member is no longer working in their unit, no longer employed at the facility, or if the staff member has been indicted or convicted of sexual abuse at a BOP facility.  Dkt. 442-2 at ¶ 64.

Class Counsel is in ongoing contact with CCWP regarding the Consent Decree including implementation and enforcement and CCWP is "grateful for the steps that the Court and the Special Master/Monitor have taken to safeguard the rights of people formerly incarcerated at Dublin and to hold the [BOP] accountable," and supports and urges approval of the Consent Decree.

## G.    Filings From Non-Class Members

A number of individuals who are not class members filed responses to the Consent Decree.  Only one mentions specific concerns with the Consent Decree.  Regardless, Class Counsel summarize their filings below and are reaching out to the below individuals and organization.

In Dkt. 451, the author details her personal experiences at FCI Dublin in February 2024 prior to her transfer, and notes that while she is changing her life for the better she is still experiencing trauma from her time at FCI Dublin.  She does not reference the

1  Consent Decree or any concerns with it.[4]  Class Counsel appreciates this objector's

2  comments, and recognize the ongoing trauma that many people formerly incarcerated at

3  FCI Dublin continue to endure.

4        Similarly, another person describes sexual harassment she experienced at FCI

5  Dublin before she was transferred to FPC Phoenix and that she has submitted all the

6  appropriate remedies but has not received any responses.  Dkt. 458.  She does not

7  reference the Consent Decree or any concerns with it.  Class Counsel appreciates this

8  objector's comments and shares concerns about BOP's administrative remedy process.

9  Class Counsel has reached out to this individual to get more details and offer resources if

10  possible but she does not appear on any BOP-produced roster and does not appear to

11  have been housed at FCI Dublin at the time this case was filed or after that point.  *See*

12  Khabbaz Decl. ¶ 6-7.

13        Dkt. 456 does not raise concerns with the Consent Decree, but rather seeks to

14  enforce Court orders against the BOP.  It alleges previous retaliatory transfers, issues

15  with mail, loss of credits, and retaliation after reporting abuse by BOP staff.  Dkt. 456 at

16  1.  It also raises concerns with the individual's current designation at an FTC and reports

17  missing time credits.  *Id.*  To the extent that any class members face such issues in the

18  future, the Consent Decree provides prospective relief.  Class Counsel has mailed her a

19  letter informing her that she is not a class member and have reached out to her personal

20  attorney.  *See* Khabbaz Decl. ¶ 4-5.

21        Family Violence Law Center ("FVLC"), a nonprofit organization that has

22  provided services to survivors of FCI Dublin staff abuse through a partnership with the

23  U.S. Attorney's Office, filed an objection outlining concerns about the Consent Decree,

24  emphasizing the barriers they have faced in providing critical services to class members

25  following their transfers.  Dkt. 460.  Class Counsel reviewed and has discussed FVLC's

26

---

27  [4] Because this person was at FCI Dublin post-filing but was transferred prior to class
   certification, she is not a class member under the  class definition in the Consent Decree.
28  *See* Khabbaz Decl. ¶ 8.

comments with FVLC leadership, and appreciates their concerns and expertise.  *See* Khabbaz Decl. ¶ 11-12.  That said, FVLC is also not a class member in this litigation, and as such, the objection should not be considered in the Court's evaluation of fairness to the class.

As to the concern in defining "Rape Crisis Centers" as only organizations with active Memorandums of Understanding (MOUs) with BOP, the Consent Decree does not prevent BOP from entering into additional MOUs with organizations like FVLC.  If this becomes an issue, it can be raised with BOP without any amendment to the Consent Decree.  As to the request for funding through the Consent Decree, Class Counsel recognizes the value of the important work FVLC does with survivors and agree they should be fairly compensated.  However, the relief which FVLC seeks regarding payment from the BOP cannot be achieved through a Consent Decree the provides relief to class members based on the constitutional violations alleged in this Complaint.  Further, the claims in this case are for injunctive relief; there are no damages for the class-wide claims.  *See*, *supra*, Section IV.B.

## V.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court enter an order granting final approval of the Consent Decree pursuant to Federal Rule of Civil Procedure 23(e).


DATED:  February 14, 2025                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By:  */s/ Luma Khabbaz*
        Luma Khabbaz

Attorneys for Plaintiffs