ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL – 330482
LUMA KHABBAZ – 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Email:          egalvan@rbgg.com
                kjanssen@rbgg.com
                aspiegel@rbgg.com
                lkhabbaz@rbgg.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:     (510) 679-3674
Email:          susan@ccijustice.org

AMARIS MONTES*
  Md. Bar No. 2112150205
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, D.C.  20033
Telephone:     (202) 455-4399
Email:          amaris@rightsbehindbars.org

STEPHEN S. CHA-KIM*
  N.Y. Bar No. 4979357
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York  10019-9710
Telephone:   (212) 836-8000
Email:          stephen.cha-kim@arnoldporter.com

CARSON D. ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California  94306-3807
Telephone:   (650) 319-4500
Email:          carson.anderson@arnoldporter.com

NATALIE STEIERT*
  D.C. Bar No. 90010655
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20001-3743
Telephone:   (202) 942-5000
Email:          natalie.steiert@arnoldporter.com

* Admitted *pro hac vice*

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, et al., <br><br> Defendants. | Case No. 4:23-CV-04155-YGR <br><br> **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES** <br><br> Date:      March 17, 2026 <br> Time:      2:00 p.m. <br> Crtrm.: 1, 4th Floor <br><br> Judge Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................3

I.    INTRODUCTION...............................................................................................3

II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND....................4

    A.   Conditions at FCI Dublin ........................................................................4

    B.   Filing of the Complaint and January 2024 Evidentiary Hearing on Plaintiffs' Preliminary Injunction.............................................................5

    C.   The Special Master Is Appointed and the Closure of FCI Dublin ...........5

    D.   The Consent Decree ..................................................................................6

    E.   Notice to Class Regarding Attorney's Fees .............................................7

    F.   The Parties Negotiate an Award of Reasonable Attorneys' Fees and Costs..............8

III.  ARGUMENT ......................................................................................................8

    A.   Plaintiffs Are Entitled to Attorneys' Fees and Costs Under Federal Law and Pursuant to The Consent Decree .................................................8

    B.   The Requested Award Is Warranted by Class Counsel's Effort and The Results Embodied in the Consent Decree ..........................................9

        1.   Hours Expended ..........................................................................10

        2.   Hourly Rates................................................................................11

        3.   *Kerr* Factors for Reasonableness...............................................11

    C.   Costs and Expenses ................................................................................12

    D.   Compliance with Rule 23(h) of the Federal Rules of Civil Procedure. ...................13

    E.   Plaintiffs Continue to Accrue Fees and Expenses Related to Monitoring Compliance with the Consent Decree, For Which Class Counsel Will Seek Fees at a Later Date ...........................................................................13

IV.   CONCLUSION .................................................................................................14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Balla v. Idaho*,
677 F.3d 910 (9th Cir. 2012) ............................................................................... 14

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ............................................................................................. 9

*Cal. Coal. for Women Prisoners v. United States*,
723 F. Supp. 3d 712 (N.D. Cal. 2024) ............................................................... 6

*Carbonell v. INS*,
429 F.3d 894 (9th Cir. 2005) ............................................................................... 9

*Cunningham v. County of Los Angeles*,
879 F.2d 481 (9th Cir. 1988) ............................................................................. 12

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) ........................................................................... 10

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ................................................................................. 13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................... 10

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
912 F.3d 1147 (9th Cir. 2019) ............................................................................. 9

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................................................................. 14

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds*, *City of Burlington v. Dague*, 505 U.S. 557 (1992) ....................................................................... 12

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) ............................................................................... 12

*Pierce v. Underwood*,
487 U.S. 552 (1988) ........................................................................................... 10

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010) ............................................................................. 14

*S.F. N.A.A.C.P. v. S.F. Unified Sch. Dist.*,
284 F.3d 1163 (9th Cir. 2002) ........................................................................... 14

*Thangaraja v. Gonzales*,
428 F.3d 870 (9th Cir. 2005) ....................................................................... 10, 11

2

Case No. 4:23-CV-04155-YGR

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED  MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES

*Wood v. Burwell*,
  837 F.3d 969 (9th Cir. 2016) ................................................................................ 9

*Woods v. Carey*,
  722 F.3d 1177 (9th Cir. 2013) .............................................................................. 13

## STATUTES

28 U.S.C. § 1920 ............................................................................................................ 12

28 U.S.C. § 2412 .............................................................................................................. 9

## RULES

Fed. R. Civ. P. 23 ....................................................................................................... 1, 13

Fed. R. Civ. P. 54 .......................................................................................................... 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on March 17, 2026 or as soon thereafter as the matter may be heard, Plaintiffs CALIFORNIA COALITION FOR WOMEN PRISONERS ("CCWP"); R.B.; A.H.R.; S.L.; J.L.; J.M.; G.M.; A.S.; and L.T. ("Named Plaintiffs") (together, the "Plaintiffs") move the Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) for an award of Plaintiffs' reasonable attorneys' fees and costs as negotiated and agreed between Plaintiffs and Defendants United States of America Federal Bureau of Prisons ("BOP"), BOP Director Colette Peters, in her official capacity, and FCI Dublin Acting Warden Charles Hubbard, in his official capacity ("Defendants")[1] (with the Plaintiffs, the "Parties") pursuant to the terms of the Consent Decree, ECF No. 473-1.[2]

Concurrent with the filing of this motion, the parties have lodged a Stipulation and Proposed Order for Class Notice of Motion to Approve Attorneys' Fees and Expenses Settlement, which provides for notice to the class under Rule 23(h) of the Federal Rules of Civil Procedure by February 10, 2026, one month in advance of the hearing.

Pursuant to the Consent Decree, the Parties met and conferred, including through mediation with Magistrate Judge Spero, and have agreed to an award of $3 million dollars in full satisfaction of Defendants' agreement to pay Class Counsel's "reasonable attorneys' fees and costs," for the time period through March 31, 2025.  ECF No. 473-1, ¶ 110.  The agreed amount of $3 million dollars represents a more than 40% reduction from the $4,959,196 in fees and $197,293 in costs (totaling $5,156,489) in attorneys' fees and costs that Plaintiffs incurred for work performed on the merits of this case up until the Effective Date of the Consent Decree on March 31, 2025 (which amount was already reduced through significant billing judgments, as explained herein), and is undoubtedly reasonable.

Defendants do not oppose this motion and have received final approval from the Department

---

[1] William Marshall III is the current BOP Director; Jason Buckle is now Acting Warden at FCI Dublin.

[2] To the extent the Court wishes to hold a hearing, the parties jointly request that the hearing be held remotely.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES

of Justice to issue payment for the agreed-upon amount.

The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the attached Declarations of Ernest Galvan, Amaris Montes, Susan Beaty, Stephen Cha-Kim, and Richard M. Pearl, and the exhibits attached thereto, all pleadings and papers on file in this action, and any oral argument this Court permits.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This matter was highly complex, requiring extensive litigation, advocacy, and negotiation, and culminating in historic results.  These efforts resulted in the first instance of a Special Master being appointed to monitor a BOP facility, a Consent Decree that allows for monitoring of BOP's compliance with the enumerated terms of the agreement, and public reporting by an independent team.   To accomplish these unprecedented results, counsel spent more than 12,300 hours investigating, advocating for, and litigating on behalf of hundreds of individuals who lived at FCI Dublin when the Warden and other BOP employees engaged in sexual abuse leading to prosecution of the Warden and several others.   Plaintiffs' efforts were ultimately successful and led to a settlement covering hundreds of Class Members (the "Plaintiff Class").

As the Order granting Final Approval to the Consent Decree reflects, "***BOP has agreed to pay class counsel's reasonable attorneys' fees and costs***."  ECF No. 473 at 6 (emphasis added); *see also* ECF No. 473-1 (Consent Decree) at ¶ 110 ("The Parties agree that the entry of this Consent Decree is a court-ordered change in the legal relationship between the Parties for purposes of determining eligibility for attorneys' fees and costs … subject to applicable limitations in terms of eligibility and amount.").[3]  Pursuant to this Order and the language in the Consent Decree, the Parties exchanged settlement offers, met and conferred several times, and mediated before Magistrate Judge Spero on July 29, 2025 during which the parties agreed to an award of $3 million dollars in full satisfaction of Defendants' agreement to pay Class Counsel's reasonable attorneys' fees and costs.  ECF No. 473-1 at ¶ 110; Declaration of Ernest Galvan ("Galvan Decl."), ¶ 9.

The agreed award of $3 million dollars is manifestly reasonable given the significant effort and extraordinary results that Class Counsel achieved.  In total, after applying billing judgments—which reduced the claim from more than 12,300 hours worked to 9,700 hours claimed, Plaintiffs

---

[3] Paragraph 110 of the Consent Decree also provides for the payment of monitoring fees for reasonable time and expenses related to monitoring the Consent Decree, subject to applicable limitations in terms of eligibility and amount.  This motion does not include monitoring fees which are being negotiated separately by the parties.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED  MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES

incurred $4,959,196 in fees, calculated using market rates for seven timekeepers that brought distinctive knowledge and specialized skills to Class Counsel's team, and the 2024 Equal Access to Justice Act ("EAJA") rates for the other timekeepers, plus $197,293 in costs. Galvan Decl., ¶¶ 4-8. Accordingly, $3 million represents a more than 40% reduction from the $5.2 million in attorneys' fees and costs that Plaintiffs incurred to achieve the Consent Decree, underscoring the reasonableness of the agreed-upon award.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    Conditions at FCI Dublin

The constitutional concerns that are the subject of this case were first raised to counsel Mx. Beaty in 2021, who at the time facilitated an immigration clinic at FCI Dublin. Declaration of Susan Beaty ("Beaty Decl."), ¶ 17. Many of the individuals who attended the clinic began disclosing to Mx. Beaty and their colleagues horrific stories of abuse and retaliation by the Warden, the Chaplain, and other staff. *Id.* During this time, Mx. Beaty met with individuals impacted by staff sexual abuse and retaliation at FCI Dublin, collecting their stories and reporting as needed to necessary authorities and worked with legal partners while advocating for BOP to fix issues at the prison. *Id.*

Beginning in 2021, Mx. Beaty reached out to multiple law firms to assist in litigation. Mx. Beaty contacted Rosen Bien Galvan & Grunfeld (RBGG) and Rights Behind Bars (RBB). *Id.* In April 2022, RBB began working with Mx. Beaty and the California Coalition for Women Prisoners (CCWP) to investigate sexual abuse at FCI Dublin. In May 2022, RBGG started hearing directly from victims at FCI Dublin and began working with RBB and Mx. Beaty to investigate further. Galvan Decl., ¶ 44. From May 2022 until February 23, 2023, Mx. Beaty, RBB, and RBGG met with individuals currently and previously incarcerated at FCI Dublin regarding staff sexual abuse. *Id.* ¶¶ 44-46. Mx. Beaty, RBB, and RBGG raised issues on their behalf and researched avenues for relief. *Id.* ¶ 46. On February 23, 2023, counsel sent a demand letter to BOP outlining concerns regarding conditions of confinement and ongoing abuse. *Id.* ¶ 57. Over the next five months, counsel spent significant time visiting the prison; conferring with clients; investigating conditions; conducting legal research; and drafting the complaint, class certification motions, a

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES

preliminary injunction motion, and over forty declarations in support. *Id.* ¶ 46.

**B.     Filing of the Complaint and January 2024 Evidentiary Hearing on Plaintiffs' Preliminary Injunction**

The complaint was filed on August 16, 2023, and Plaintiffs' motions for class certification and for a preliminary injunction were filed the following day. ECF Nos. 1, 10, 11. After Plaintiffs filed, BOP consistently maintained that FCI Dublin needed no outside oversight, arguing that "[b]ad actors have been removed, and conditions at FCI Dublin have improved significantly in recent years. Under new leadership, previous depredations will not recur, and conditions and services will continue to improve." ECF No. 46 at 6:17-19. In December, the Court set evidentiary hearings to begin weeks later, immediately after the holidays. ECF No. 64. Mx. Beaty, RBB, and RBGG brought in additional co-counsel at Arnold & Porter Kaye Scholer LLP to assist in December 2023. Declaration of Stephen Cha-Kim ("Cha-Kim Decl." ¶ 18.) From mid-December 2023 through January 2, 2024, Class Counsel spent significant time preparing for the hearings including visiting putative class members, on the five days of hearings themselves, and on extensive post-hearing briefing ordered by the Court and review of voluminous documents produced by BOP during and after the hearings. Galvan Decl. ¶ 48.

Following the evidentiary hearings, Class Counsel attended a full day tour of the facility with the Court. *See* ECF No. 157. Class Counsel also attended multiple conferences with the Court regarding various developments, such as BOP's placement of multiple FCI Dublin officials on leave in January 2024, an FBI raid on the facility, and removal of almost the entire new leadership team in March 2024. *See* ECF No. 222 at 14. Throughout, Defendants continued to argue that "BOP's accountability systems haven't failed; meaningful changes in institution culture have taken place over the last two years without Court oversight" and that "conditions at Dublin have continued to improve over the last two years rather than deteriorate." ECF No. 158 at 27:12-14, 28:1-2.

**C.     The Special Master Is Appointed and the Closure of FCI Dublin**

On March 15, 2024, the Court held a hearing and issued an order granting Plaintiffs' pending motions. In its Order the Court found:

[FCI] Dublin is a dysfunctional mess. The situation can no longer be tolerated. The

facility is in dire need of immediate change.  Given the record presented and the Court's personal observations, further magnified by recent events, the Court finds the Bureau of Prison[s] ("BOP") has proceeded sluggishly with intentional disregard of the inmates' constitutional rights despite being fully apprised of the situation for years.  The repeated installation of BOP leadership who fail to grasp and address the situation strains credulity.  The Court is compelled to intercede.

*Cal. Coal. for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 719 (N.D. Cal. 2024).

The Court went on to grant class certification and ordered appointment of the first Special Master in BOP history.  ECF No. 222.  After a several-week process of party-nominations and Court interviews, the Court selected a longtime former correctional official, Wendy Still, as Special Master.  ECF No. 248.  The Special Master began working on-site on April 8, 2024.

In response to various issues, including intractable staffing problems, infrastructure issues, and challenges in accessing community care services, BOP closed FCI Dublin on May 1, 2024. *See* ECF Nos. 300, 326.  Class Members were relocated to different BOP facilities, Class Members complained about various transfer conditions including physical and psychological abuse, medical neglect, loss of property, and denial of basic necessities for hours and days during transport.  ECF No. 300 at 5-9.  Class Counsel spent many hours meeting with Class Members, attending emergency status conferences with the Court, BOP, and the Special Master, and handling a high volume of calls and messages from Class Members.  *See id.* at 3.  After multiple emergency hearings, the Court determined that "[a]lthough it had as much time as needed to prepare, BOP's operational plan for closure of FCI Dublin was ill-conceived, and like Swiss cheese, full of holes." *Id.* at 1.

BOP thereafter moved to dismiss based on the argument that the closure of FCI Dublin mooted the controversy.  *See* ECF No. 385.  Opposing these motions took significant time.  In addition to written oppositions, the Court ordered an evidentiary hearing where the Deputy Director of BOP, William Lothrop, was ordered to testify regarding the closure.  The Court denied BOP's motion to dismiss in September 2024.  *Id.*

**D.     The Consent Decree**

The Parties began regularly meeting with Magistrate Judge Joseph C. Spero, including seven settlement conferences, to negotiate the Consent Decree, while simultaneously pursuing document discovery, depositions, and preparing for trial, which the Court had set for summer 2025.  Galvan

Decl. ¶¶ 53-57.  After dozens of hours with Magistrate Judge Spero, including sessions that included CCWP and incarcerated Named Plaintiffs who participated remotely, plus dozens of hours of private negotiations between the Parties, on November 21, 2024, the Parties agreed to the Proposed Consent Decree, completing its execution on December 2, 2024.  *Id.* ¶ 57.

From December 2, 2024, until the Effective Date of the Consent Decree, March 31, 2025, Class Counsel spent additional time preparing and filing briefing in support of preliminary and final approval, addressing Class Member questions and objections, attending hearings, and in conferences with counsel for BOP and with the Monitor to address issues related to implementation of the Consent Decree.  *Id.* ¶ 58.

The Consent Decree was approved on February 27, 2025, and requires Defendants to implement numerous measures for the Plaintiff Class for a term of two years (unless the BOP shows substantial compliance after 18 months).  ECF No. 473.  In broad strokes, the Consent Decree affords the Plaintiff Class "injunctive relief across eight categories," including medical and mental health care, alerts and reporting for concerns raised by the Plaintiff Class, procedural protections against staff physical and sexual abuse and retaliation, reporting and verification of the release and security designation classification, access to the Monitor and Class Counsel, review of damage claims for property loss related to the closure of FCI Dublin, as well as numerous other miscellaneous categories of relief.  ECF No. 473 at 2-5.  "The [C]onsent [D]ecree also contains provisions for ongoing monitoring and implementation of the relief provided, dispute resolution procedures, and for attorney's fees and costs."  *Id.* at 2.

**E.     Notice to Class Regarding Attorney's Fees**

The December 20, 2024 Order Granting Motion for Preliminary Approval of Proposed Consent Decree directed notice to the class and set an objection period, with deadlines for a motion for final approval, and a final approval hearing.  ECF No. 442.  The Notice of Class Action Settlement included a statement that "The Proposed Consent Decree also provides that the 'BOP shall pay Class Counsels' reasonable attorneys' fees and costs, subject to applicable limitations in terms of eligibility and amount' and that 'BOP shall also pay Class Counsel 'Monitoring fees' for their reasonable time and reasonable expenses related to monitoring this Consent Decree.'"  ECF

No. 442-1 at 9:8-11. Concurrent with the filing of this motion, the parties have lodged a Stipulation and Proposed Order for Class Notice of Motion to Approve Attorneys' Fees and Expenses Settlement, which provides for notice to the class under Rule 23(h) of the Federal Rules of Civil Procedure by February 10, 2026, one month in advance of the hearing.

### F.     The Parties Negotiate an Award of Reasonable Attorneys' Fees and Costs

Regarding attorneys' fees and costs, the Consent Decree states that "BOP shall pay Class Counsels' reasonable attorneys' fees and costs, subject to applicable limitations in terms of eligibility and amount. The Parties shall engage in good faith efforts to resolve Class Counsels' claim for reasonable attorneys' fees and costs, including production of billing records, before resorting to the Dispute Resolution Process." ECF No. 473-1, ¶ 110.

Following the final approval hearing, the Court "order[ed] the parties to meet and confer regarding outstanding document and attorney fee issues." ECF No. 475 at 1. The Parties exchanged settlement letters and met and conferred, culminating in a July 29, 2025 mediation with Magistrate Judge Spero. ECF No. 497. At that mediation the Parties agreed to an award of "$3 million in full satisfaction of [Plaintiffs'] claim for attorneys' fees, costs, and expenses through the March 31, 2025 Effective Date of the Consent Decree, as well as fees on fees accrued between the Effective Date and this settlement, but excluding the monitoring fees referenced in the last sentence of paragraph 110." Galvan Decl. Exh. L. Defendants' agreement was subject to "formal approval and memorialization through the Department of Justice's and the BOP's approval processes," *id.*, which Defendants have now obtained. Galvan Decl. ¶ 9.

## III.     ARGUMENT

### A.     Plaintiffs Are Entitled to Attorneys' Fees and Costs Under Federal Law and Pursuant to The Consent Decree

The Equal Access to Justice Act ("EAJA") provides that the Court "shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action … against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28

U.S.C. § 2412(d)(1)(A); *see also, e.g.*, *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc).

For purposes of resolving Plaintiffs' motion for fees, the United States has agreed that Plaintiffs are the prevailing party. ECF No. 473-1, ¶ 110. To be a prevailing party, Plaintiffs must show that "(1) there has been a material alteration in the legal relationship of the parties and (2) it was judicially sanctioned." *Wood v. Burwell*, 837 F.3d 969, 973 (9th Cir. 2016) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604-05 (2001)). The Consent Decree was entered by this Court, and was thus judicially sanctioned, and specifically provides that the "Parties agree that the entry of this Consent Decree is a court-ordered change in the legal relationship between the Parties for purposes of determining eligibility for attorneys' fees and costs." ECF No. 473-1, ¶ 110. Indeed, as explained above, the Consent Decree requires Defendants "to do something directly benefitting the plaintiff[] that they otherwise would not have had to do." *Wood*, 837 F.3d at 974 (quoting *Carbonell v. INS*, 429 F.3d 894, 900 (9th Cir. 2005)). Defendants have also agreed to pay Plaintiffs reasonable attorneys' fees and costs (ECF No. 473-1, ¶ 110), have agreed to the $3 million award, and are not opposing this motion. Finally, Plaintiffs are unaware of any "special circumstances" that would make this award unjust, and Defendants have not alleged any.

**B.      The Requested Award Is Warranted by Class Counsel's Effort and The Results Embodied in the Consent Decree**

EAJA fees are calculated according to the lodestar method of multiplying the number of hours counsel reasonably dedicated by the inflation-adjusted EAJA hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Additionally, EAJA authorizes the Court to award attorneys' fees at market rates where there is a "limited availability of qualified attorneys for the proceedings involved" or where plaintiffs' counsel possesses "distinctive knowledge" and "specialized skill" that was "needful for the litigation in question" and not available elsewhere at the statutory rate. *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005); *see also Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES

### 1.    Hours Expended

Class Counsel documented the time expended in this matter in detail, and presented the full time records to the United States as part of settlement negotiations. With this motion, Class Counsel provides detailed summaries showing the time expended by each timekeeper, and the time expended for each phase of the litigation  *See* Galvan Decl. ¶ 6-8, 40-61, Exs. A, B.  *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (approving use of "summary of the time spent on a broad category of tasks" in lieu of full time records).  The settlement does not seek compensation for all hours expended.  First, even before presenting the claim to the United States, Class Counsel cut the hours from approximately 12,000 to 9,700 hours.  Second, the settlement itself reduces the fees claim from over $4.9 million to under $3 million, in light of the fact that the overall $3 million settlement also covers litigation expenses.

With this motion, Class Counsel provides declaration testimony regarding the work performed at each stage of the litigation, the steps taken to avoid duplication of effort, and the hours written off the claim in reasonable billing judgments.  This written down time included, *inter alia*, time spent on criminal investigations of class members' perpetrators, the related damages claims separate from the injunctive relief sought here, other work on behalf of Class Members that was only tangential to the injunctive relief sought in the Complaint, as well as tasks that were clerical in nature, deemed excessive, or unnecessarily duplicative for a given task.  *See* Galvan Decl. ¶¶ 4, 42-61; Declaration of Amaris Montes ("Montes Decl."), ¶¶ 3, 16-17; Beaty Decl., ¶¶ 18-22; Cha-Kim Decl., ¶¶ 11, 14.  Richard M. Pearl, a preeminent expert on attorneys' fees in California, has opined that "the net number of hours for which Plaintiffs' Counsel request compensation appears to be consistent with the range of hours I would expect to have been spent in litigating claims in a case of this duration, intensity, complexity, and results."  Pearl Decl., ¶ 58; *see also, id.*, ¶¶ 59-66.

Counsel for the United States did not concede that the total hours were reasonably incurred, and Class Counsel took into account the litigation risk arising from the United States' position in reducing the amount to reach this settlement.  Class Counsel believes that the Court would be justified in approving the full amount if it were disputed, and certainly the reduced amount reflected in the settlement.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED  MOTION FOR APPROVAL OF SETTLEMENT OF ATTORNEYS' FEES AND EXPENSES

## 2. Hourly Rates

In making their fee claim to the United States, Class Counsel used the 2024 EAJA inflation adjusted rate of $251.84 per hour for the majority of timekeepers, and market rates for seven timekeepers who brought distinctive knowledge and specialized skills not available elsewhere (Susan Beaty, Michael Bien, Ernest Galvan, Kara Janssen, Amaris Montes, Oren Nimni, and Stephen Cha-Kim), as authorized by EAJA. *Id.*; *see Thangaraja*, 428 F.3d at 876. The basis for enhanced rates for each of these timekeepers is provided in the declarations filed with this motion. *See* Galvan Decl. ¶¶ 13-18, 30-34; Montes Decl. ¶¶ 4-8, 10, 21-23; Beaty Decl. ¶¶ 3-8, 12-17; Cha-Kim Decl. ¶¶ 4, 27-28. The United States did not concede that these EAJA rate departures were justified, and was prepared to litigate the issue. Class Counsel took into account the litigation risk in regarding the rates in reaching the settlement amount presented here.

## 3. *Kerr* Factors for Reasonableness

After making the lodestar computation, courts assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of factors[4] announced in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds*, *City of Burlington v. Dague*, 505 U.S. 557 (1992). However, as the Ninth Circuit has noted, many of the *Kerr* factors are subsumed as a matter of law under the lodestar approach's analysis of reasonableness. *See Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988); *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

Class Counsel asserts that evaluation of the *Kerr* factors confirms and demonstrates the reasonableness of the lodestar of $4,978,694, as well as the agreed award of $3 million. As discussed throughout, Class Counsel secured for the Plaintiff Class the first-ever appointment of a Special Master to oversee operations within a single federal prison, and a Consent Decree providing

---

[4] The *Kerr* Factors are "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70.

valuable protections for the Class after FCI Dublin's closure. The matter presented novel and difficult problems regarding the necessity of injunctive relief even after criminal prosecutions of FCI Dublin staff, and the impact of the closure on the certified class. Class Counsel assumed significant risk of nonpayment by taking on such a challenging matter involving novel questions, and were precluded from accepting as many other engagements as they may otherwise have during the pendency of this case due to limited resources and the significant time commitment this matter required. Regarding limitations imposed by the clients or circumstances in this matter, as this Court has observed (*e.g.* ECF Nos. 88 and 95), communicating with incarcerated clients is logistically challenging (*e.g.* ECF No. 152, ¶¶ 181-84). Nonetheless, Class Counsel has maintained significant relationships with the Named Plaintiffs and numerous members of the Plaintiff Class for years, and regularly communicates with Class Members through continued in-person visits to institutions housing members of the class, Corrlinks messaging, weekly Class Counsel call-blocks pursuant to the Consent Decree, etc. Furthermore, litigation on behalf of incarcerated individuals regarding correctional conditions is often unattractive to the bar given the logistical hurdles and low likelihood of success. Finally, the agreed award here of $3 million is well within the range of similar cases.

### C.    Costs and Expenses

Prevailing civil rights litigants are entitled to recovery statutory costs under 28 U.S.C. § 1920, in addition to "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation and citations omitted); *Woods v. Carey*, 722 F.3d 1177, 1179 n.1 (9th Cir. 2013) (awarding "[e]xpenses normally charged to fee-paying clients" outside of those authorized by 28 U.S.C. § 1920 in § 1983 PLRA action for eighth amendment violation in California state prison).

In addition to their fees, the Plaintiff class has incurred costs and expenses of $197,292.56, which include legal research, copying and duplication, court reporters, e-discovery hosting and support, filing fees, service of process, translation, travel, lodging, and meals, etc. Galvan Decl., ¶¶ 8, 62-63. Class Counsel asserts these costs are reasonable and compensable and are included in the agreed $3 million award.

**D.      Compliance with Rule 23(h) of the Federal Rules of Civil Procedure.**

Rule 23(h) states that the claim for award must be made by motion, with notice to the parties, and "directed to class members in a reasonable manner."  The Rule further provides that class members may object to the motion.  The Ninth Circuit has approved a 15-day objection period.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015).

The Notice of Class Settlement informed the class that the "BOP shall pay Class Counsels' reasonable attorneys' fees and costs, subject to applicable limitations in terms of eligibility and amount."  ECF No. 442-1 at 9:8-10.  Concurrent with the filing of this motion, the parties have lodged a Stipulation and Proposed Order for Class Notice of Motion to Approve Attorney's Fees and Expenses Settlement, which provides for notice to the class under Rule 23(h) of the Federal Rules of Civil Procedure by February 10, 2026, one month in advance of the hearing.

**E.      Plaintiffs Continue to Accrue Fees and Expenses Related to Monitoring Compliance with the Consent Decree, For Which Class Counsel Will Seek Fees at a Later Date**

In the Ninth Circuit and beyond, attorneys are entitled to recover fees for time spent monitoring and enforcing compliance with settlement agreements in civil rights lawsuits.  *See, e.g.*, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 452 (9th Cir. 2010) (plaintiffs' counsel entitled to fees "for monitoring the [defendants'] compliance with the parties' settlement agreement"); *Balla v. Idaho*, 677 F.3d 910, 920-21 (9th Cir. 2012) (affirming fee award for time spent "bringing about … conformity with the injunction"); *S.F. N.A.A.C.P. v. S.F. Unified Sch. Dist.*, 284 F.3d 1163, 1166 (9th Cir. 2002) ("It is settled law in this circuit that a district court has discretion to award fees to a prevailing party in consent decree litigation for work reasonably spent to monitor and enforce compliance with the decree, even as to matters in which it did not prevail.").

The Consent Decree provides that "BOP shall also pay Class Counsel 'Monitoring fees' for their reasonable time and reasonable expenses related to monitoring this Consent Decree, subject to applicable limitations in terms of eligibility and amount."  ECF No. 473-1, ¶ 110.  The Parties have agreed to negotiate awards for recovery of fees for monitoring and enforcing compliance on a regular basis during the pendency of the Consent Decree and propose submitting such agreed awards to the Court on a quarterly basis going forward.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award the fees and expenses sought in the amount of $3 million pursuant to the parties' settlement of fees and expenses.

Respectfully submitted,

DATED:  February 2, 2026

ARNOLD & PORTER KAYE SCHOLER LLP
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
RIGHTS BEHIND BARS
ROSEN BIEN GALVAN & GRUNFELD LLP

By:   */s/ Ernest Galvan*
      Ernest Galvan

Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED  MOTION FOR APPROVAL OF SETTLEMENT OF
ATTORNEYS' FEES AND EXPENSES