ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ADRIENNE SPIEGEL – 330482
LUMA KHABBAZ – 351492
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Email:        egalvan@rbgg.com
              kjanssen@rbgg.com
              aspiegel@rbgg.com
              lkhabbaz@rbgg.com

SUSAN M. BEATY – 324048
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:    (510) 679-3674
Email:        susan@ccijustice.org

AMARIS MONTES*
  Md. Bar No. 2112150205
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, D.C.  20033
Telephone:    (202) 455-4399
Email:        amaris@rightsbehindbars.org
* Admitted *pro hac vice*

Attorneys for Plaintiffs

STEPHEN S. CHA-KIM*
  N.Y. Bar No. 4979357
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York  10019-9710
Telephone:   (212) 836-8000
Email:        stephen.cha-kim@arnoldporter.com

CARSON D. ANDERSON – 317308
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California  94306-3807
Telephone:   (650) 319-4500
Email:        carson.anderson@arnoldporter.com

NATALIE STEIERT*
  D.C. Bar No. 90010655
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20001-3743
Telephone:   (202) 942-5000
Email:        natalie.steiert@arnoldporter.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA COALITION FOR WOMEN PRISONERS et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS et al., <br><br> Defendants. | Case No. 4:23-cv-04155-YGR <br><br> **DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES** <br><br> Judge:    Hon. Yvonne Gonzalez Rogers |

[4813125.3]

Case No. 4:23-cv-04155-YGR

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

I, Richard M. Pearl, declare:

1. I am a member in good standing of the California State Bar. I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California. I specialize in issues related to reasonable attorneys' fees, including serving as an expert witness regarding attorneys' fees, representing parties and attorneys in attorney fee litigation and appeals, and serving as a mediator and arbitrator in disputes concerning attorneys' fees and related issues. I make this declaration based in support of Plaintiffs' Motion for Attorney's Fees and Expense.

2. I make this declaration in my capacity as an expert witness on reasonable attorneys' fees in support of Plaintiffs' Motion for Attorneys' Fees. Specifically, Rosen Bien Galvan & Grunfeld LLP ("RBGG"), Arnold & Porter ("A&P"), California Collaborative for Immigrant Justice ("CCIJ"), and Rights Behind Bars ("RBB"), who I will describe collectively as "Plaintiffs' Counsel" or "Counsel," have asked me to provide my expert opinion regarding current market rates for comparable attorney services in this area and the reasonableness of the hourly rates Plaintiffs' Counsel are requesting in this case. They have also asked me to opine on the reasonableness of the number of hours they are claiming for work on the merits in this. Finally, Plaintiffs' Counsel have asked me to provide my expert opinion on whether some of their timekeepers should compensated with enhanced rates under the Equal Access to Justice Act ("EAJA").

**MY BACKGROUND AND EXPERIENCE**

3. My resume, which sets forth my experience and qualifications as an attorneys' fees expert, is attached hereto as **Exhibit A**. Briefly summarized, my background is as follows:

4. I am a 1969 graduate of UC Berkeley Law (then Boalt Hall). I took the California Bar Examination in August 1969 and learned that I had passed it in November of that year, but because I was working as an attorney in Atlanta, Georgia for the Legal Aid Society of Atlanta ("LASA"), I was not formally admitted to the California Bar until February 1970. (I also was admitted to the Georgia Bar in early 1970.) I worked for

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEY'S FEES AND EXPENSES

LASA until the summer of 1971, then went to work in California's Central Valley for California Rural Legal Assistance, Inc. ("CRLA"), a statewide legal services program. From mid-1971 until mid-1974, I was staff attorney, then Directing Attorney, of CRLA's four-attorney office in McFarland, Kern County. From 1974 to 1977, I was the Directing Attorney of CRLA's Statewide "Backup Center" in San Francisco, a four-attorney program tasked with assisting other legal services programs with their impact litigation. From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than fifty attorneys as well as handling my own impact litigation caseload. In 1982-1983, I transitioned into private practice, first in a small Oakland law firm formed by myself and three other ex-CRLA attorneys, then as a sole practitioner.

5.     Martindale Hubbell rates my law firm "AV," which it assigns to attorneys with "the highest level of professional, peer-reviewed excellence." I also have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005–2008 and 2010–2025, a distinction reserved for only 5% of Northern California attorneys.

6.     Since 1982, the focus of my legal work has been in general civil litigation and appellate practice, with an emphasis on class actions and attorneys' fees issues. More recently my focus has been almost exclusively on matters involving attorneys' fees issues. I have lectured and written extensively on attorney fee issues, both in terms of the applicable law and sound practices. I have been a member of the California State Bar's Attorneys' Fees Task Force and have testified before the State Bar Board of Governors and the California Legislature on attorneys' fee issues.

7.     I am the author of *California Attorney Fee Awards* (3d ed., Cal. CEB 2010) ("Cal. Fee Awards") and its cumulative annual Supplements and Updates between 2011 and April 2025. I also was the author of *California Attorney Fee Awards* (2d ed., Cal. CEB 1994), and its 1995 through 2008 annual Supplements. Several courts have referred to this treatise as "[t]he leading California attorney fee treatise." *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 621 (2015); *see also, e.g.*, *Int'l Billing Servs., Inc. v. Emigh*, 84 Cal. App. 4th 1175, 1193 (2000) ("the leading treatise"); *Stratton v. Beck*, 30

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

Cal. App. 5th 901, 911 (2019) ("a leading treatise"); *Orozco v. WPV San Jose, LLC*, 36 Cal. App. 5th 375, 409 (2019) ("a leading treatise on California attorney's fees"); *Pelayo v. Utility Partners of America, LLC,* 2025 WL 2263943*,* 2025 Cal. App. Unpub. LEXIS 4880 *2 (2025) ("a leading practice guide on California attorney fees").  It also has been cited by the California Supreme Court and Court of Appeal on many occasions.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 576, 584 (2004); *Lolley v. Campbell*, 28 Cal. 4th 367, 373 (2002); *In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214–15, 1217 (2010); *Sonoma Land Trust v. Thompson*, 63 Cal. App. 5th 978, 986 (2021); *Yost v. Forestiere*, 51 Cal. App. 5th 509, 530 n.8 (2020); *Highland Springs Conference & Training Ctr. v. City of Banning*, 42 Cal. App. 5th 416, 428 n.11 (2019); *Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 36 Cal. App. 5th 970, 988 (2019); *Hardie v. Nationstar Mortg. LLC*, 32 Cal. App. 5th 714, 720 (2019); *Syers Props III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698, 700 (2014).  California Superior Courts also cite the treatise with approval.  *See, e.g.*, *Davis v. St. Jude Hosp.*, No. 30201200602596CUOECX, 2018 WL 7286170, at *4 (Orange Cty. Super. Ct. Aug. 31, 2018); *Hartshorne v. Metlife, Inc.*, No. BC576608, 2017 WL 1836635, at *10 (Los Angeles Super. Ct. May 2, 2017).  Federal courts also have cited it.  *See In re Hurtado*, Case No. 09-16160-A-13, 2015 WL 6941127 (E.D. Cal. Nov. 6, 2015); *TruGreen Companies LLC v. Mower Brothers, Inc.,* 953 F. Supp. 2d 1223, 1236 nn.50, 51 (D. Utah 2013).  I also authored the 1984 through 1993 annual Supplements to the predecessor treatise, *CEB's California Attorney's Fees Award Practice*, which itself was based on a manual we produced at CRLA.  In addition, I authored a federal manual on attorneys' fees entitled "Attorneys' Fees: A Legal Services Practice Manual," published by the Legal Services Corporation.  I also co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's *Wrongful Employment Termination Practice*, (2d ed., 1997).

8.      More than 98% of my practice is devoted to issues involving court-awarded attorneys' fees.  I have appeared as an attorney of record in over two hundred attorneys' fee applications in state and federal courts, both trial and appellate, primarily representing other attorneys.  I have briefed and argued more than 40 appeals, at least 30 of which have

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEY'S FEES AND EXPENSES

involved attorneys' fees issues. I have won five cases in the California Supreme Court involving court-awarded attorneys' fees: (1) *Maria P. v. Riles*, 43 Cal. 3d 1281 (1987), which upheld a Code Civ. Proc. § 1021.5 fee award based on a preliminary injunction obtained against the State Superintendent of Education, despite the fact that the case ultimately was dismissed under Code Civ. Proc. § 583; (2) *Delaney v. Baker*, 20 Cal. 4th 23 (1999), which held that heightened remedies, including attorneys' fees, are available in suits against nursing homes under California's Elder Abuse Act; (3) *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), which reaffirmed that contingent risk multipliers are an essential consideration under California attorneys' fees law (note that in *Ketchum*, I was primary appellate counsel in the Court of Appeal and "second chair" in the California Supreme Court); (4) *Flannery v. Prentice*, 26 Cal. 4th 572 (2001), which held that under California law, in the absence of an agreement to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon; and (5) *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004), which held, *inter alia*, that the "catalyst" theory of fee recovery remained viable under California law and that lodestar multipliers could be applied to fee motion work. In that case, I represented trial counsel in both the Court of Appeal (twice) and California Supreme Court, as well as on remand in the trial court. I also represented and argued on behalf of *amicus curiae* in *Conservatorship of McQueen*, 59 Cal. 4th 602 (2014), which held that attorneys' fees incurred for appellate work were not "enforcement fees" subject to California's Enforcement of Judgments law; I presented the argument relied upon by the Court. Along with Richard Rothschild of the Western Center on Law and Poverty, I also prepared and filed an *amicus curiae* brief in *Vasquez v. State of California,* 45 Ca1. 4th 243 (2009), which held that pre-filing settlement demands were not required to obtain fees under Code of Civil Procedure section 1021.5 in non-catalyst cases.

9.    I also have handled numerous other appeals involving attorneys' fees issues, including: *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992); *Mangold v.* CPUC, 67 F.3d 1470 (9th Cir. 1995); *Velez v. Wynne,* 2007 U.S. App. LEXIS

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEY'S FEES AND EXPENSES

2194 (9th Cir. 2007); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008); *Orr v. Brame*, 793 F.Appx. 485(9th Cir. 2019); *Center for Biological Diversity v. County of San Bernardino*, 185 Cal.App.4th 866 (2010); *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection et al.*, 190 Cal.App.4th 217 (2010); *Heron Bay Home Owners Association v. City of San Leandro*, 19 Cal.App.5th 376 (2018); and *Robles v. Emp. Dev. Dept.,* 38 Cal.App.5th 191 (2019).  An expanded list of reported decisions in cases I have handled is set out in pages 4–8 of my Resume (**Exhibit A**).

10.    More frequently now, I testify as an expert witness on attorneys' fees, primarily.  I estimate that I have testified, by declaration or in person, in more than 250 cases, and numerous state and federal courts have expressly relied on my testimony on attorneys' fees issues.

11.    Many California courts have referenced my testimony favorably.  For example, in *Sonoma Land Trust v. Thompson*, 63 Cal .App. 5th 978, 986 (2021), the Court of Appeal expressly held that my expert declaration provided evidentiary support for the trial court's fee determination.  My declarations were also cited favorably by the Second District of the Court of Appeal in *Wood v. Los Angeles County Waterworks Dist. No. 40 (Antelope Valley Groundwater Cases)*, 2021 Cal. App. Unpub. LEXIS 5506 (2nd Dist., Div. 2021) and by the Sixth District in *Kerkeles v. City of San Jose*, 243 Cal .App. 4th 88, 96, 105 (2015).  The following is a sample of the reported California state court attorneys' fees decisions referencing my testimony:

- *Bronshteyn v. Dept. of Consumer Affairs*, 114 Cal.App.5th 537, 546 (2025), affirming *Bronshteyn v. State*, 2023 Cal.Super.LEXIS 109804, at **4-11, 15-16 (Los Angeles County Sup. Ct. No. 19SMCV00057, filed March 10, 2023).

- *Gajanan v. City & County of San Francisco* (Cal. Ct. App. Apr. 10, 2025) No. A168328, 2025 WL 1076796, at *3, *17.

- *Kaku v. City of Santa Clara* (Santa Clara Cty. Super. Ct. Jan. 22, 2019)

No. 17CV319862, 2019 WL 331053, at *3.

- *Davis v. St. Jude Hosp.* (Orange Cty. Super. Ct. Aug. 31, 2018) No. 30201200602596CUOECX, 2018 WL 7286170, at *4.

- *Hartshorne v. Metlife, Inc.* (Los Angeles Super. Ct. May 2, 2017) No. BC576608, 2017 WL 1836635, at *10.

- *Habitat and Watershed Caretakers v. City of Santa Cruz,* 2015 Cal.App. Unpub. LEXIS 7156 (2015).

- *Laffitte v. Robert Half Int'l Inc.*, 231 Cal.App.4th 860 (2014), *aff'd* 1 Cal.5th 480 (2016).

- *In re Tobacco Cases I,* 216 Cal.App.4th 570 (2013).

- *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal.App.4th 972, 1009 (2013).

- *Wilkinson v. South City Ford*, 2010 Cal.App. Unpub. LEXIS 8680 (2010).

- *Children's Hospital & Medical Center v. Bonta*, 97 Cal.App.4th 740 (2002).

- *Church of Scientology v. Wollersheim,* 42 Cal.App.4th 628 (1996).

12. These are just reported examples. Many other California trial courts have relied on my testimony in unreported fee awards. *See, e.g.*, *Sutter's Place, Inc. dba Bay 101 v. S.J. Bayshore Development, Inc.*, Santa Clara Superior Ct. No. 22CV397119, Order After Hearing on Plaintiff/Cross-Defendants' Motion for Attorney Fees, filed Dec. 23, 2024, a business contract dispute in which the fee award was based on a contractual fee clause, and hourly rates of up to $1,400 per hour were found to be reasonable; *Toscano v. City of Oakland*, Alameda County Superior Ct. No. RG21094864, Fee Order filed August 22, 2024, an individual employment discrimination and retaliation case, in which the court found, citing my declaration, that rates of up to $1,100 per hour l were reasonable (before applying a 1.4 lodestar multiplier) *Moen v. the Regents of the University of California*, Alameda County Superior Court No. RG10-530493, Order (1) Granting Final Approval of Class Settlement and (2) Granting Motion for Award of Fees and Costs, filed April 10, 2020.

13. Many federal courts have referenced my expert testimony favorably. For example, in *Human Rights Defense Center v. County of Napa*, 20-cv-01296-JCS, Doc. 50 (March 28, 2021), the court stated that it had "place[d] significant weight on the opinion of Mr. Pearl that the rates charged by all of the timekeepers listed above are reasonable and in line with the rates charged by law firms that engage in federal civil litigation in the San Francisco Bay Area. Mr. Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California [] in determining reasonable billing rates." *Id.* at 18–19. That same view of my testimony was subsequently repeated and applied in *Wit v. United Behavioral Health*, 578 F.Supp.3d 1060, 1079 (N.D. Cal. Jan. 5, 2022), *vacated and remanded on the merits*, 2023 U.S. App. LEXIS 33343 (9th Cir. 2023), and *Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 807 (N.D. Cal. 2021) (quoting the above language from *Human Rights Defense Center* and concluding: "This Court similarly finds Pearl's opinions well supported and persuasive."). The following federal decisions also have referenced my testimony favorably (this is a selection of a much longer list of cases):

- *Food & Water Watch v. United States Environmental Protection Agency,* No. 17-CV-02162-EMC, 2026 WL 26125, at *3 (N.D. Cal. Jan. 5, 2026);

- *C.B. v. Moreno Valley Unified Sch. Dist.,* No. EDCV 21-0194 JGB (SPX), 2025 WL 3040876, at *9 (C.D. Cal. Oct. 3, 2025);

- *Prison Legal News v. Ryan*, No. 19-17449, 2023 WL 9190364, at *1-2 (9th Cir. Mar. 21, 2023);

- *Roe v. SFBSC Mgmt., LLC*, 2022 U.S. Dist. LEXIS 215122 (N. D. Cal. Nov. 29, 2022);

- *Independent Living Center of S. Cal. v. Kent*, 2020 U.S. Dist. LEXIS 13019 (C.D. Cal. 2020);

- *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017), *aff'd* 269 F.3d 1066 (9th Cir. 2020);

- *Beaver v. Tarsadia Hotels*, 2017 U.S. Dist. LEXIS 160214 (S.D. Cal. 2017);

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

- *Notter v. City of Pleasant Hill*, 2017 U.S. Dist. LEXIS 197404, 2017 WL 5972698 (N.D. Cal. 2017);

- *Villalpondo v. Exel Direct, Inc.*, 2016 WL 1598663 (N.D. Cal. 2016);

- *State Compensation Insurance Fund v. Khan et al.*, Case No. SACV 12-01072- CJC(JCGx) (C.D. Cal.), Order Granting in Part and Denying in Part the Zaks Defendants' Motion for Attorneys' Fees, filed July 6, 2016 (Dkt. No. 408);

- *In re Cathode Ray Tube Antitrust Litig.*, Master File No. 3:07-cv-5944 JST, MDL No. 1917 2016 U.S. Dist. LEXIS 24951 (N.D. Cal. 2016) (Report And Recommendation Of Special Master Re Motions (1) To Approve Indirect Purchaser Plaintiffs' Settlements With the Phillips, Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, And Technologies Displays Americas Defendants, and (2) For Award Of Attorneys' Fees, Reimbursement Of Litigation Expenses, And Incentive Awards To Plaintiffs' Representative), Dkt. 4351, dated January 28, 2016, *adopted in relevant part*, 2016 U.S. Dist. LEXIS 88665;

- *Gutierrez v. Wells Fargo Bank*, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. 2015);

- *Holman v. Experian Information Solutions, Inc.*, 2014 U.S. Dist. LEXIS 173698 (N.D. Cal. 2014).

14. I have been retained by various governmental entities, including the California Attorney General's office, to consult with them and serve as their expert regarding the State's affirmative attorneys' fees claims. *See, e.g.*, *In re Tobacco Cases I*, 216 Cal.App.4th 570, 584 (2013); *Dep. of Fair Employ. and Hous. v. Law Sch. Admission Council, Inc.*, No. 12-cv-08130, 2018 WL 5791869 (N.D. Cal. Nov. 5, 2018).

### SUMMARY OF MY OPINION

15. In my opinion, Plaintiffs' Counsel's hourly rates and their claimed number of hours, are well within the range of how the Bay Area legal marketplace would compensate

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

them for similar services accomplishing similar results. To form my opinions in this case, I have familiarized myself generally with the history of the litigation, the nature of the legal work it required, the results achieved, and the attorneys' fees that Plaintiffs' Counsel request. To this end, I reviewed the operative complaint, the Courts' Order Granting the Preliminary Injunction and Class Certification, the Consent Decree, and a meaningful sample of Plaintiffs' Counsel's time records. I have also consulted with RBGG lawyers about this motion and the underlying facts and procedural history of the case. Further, I familiarized myself with the experience, credentials, and qualifications of the attorneys involved.

16. The FCI Dublin litigation required specialized knowledge and skills that could not be obtained at the EAJA-capped rate. There are very few attorneys in the United States with the necessary experience, knowledge and skills to put together a systemic injunctive relief case against the federal Bureau of Prisons. This is not something that can be found by turning to the Criminal Justice Act panel, or by a district court pro bono panel. The attorneys on this case are among the very few lawyers in the country who do this work. In addition, because many of the persons targeted by staff predators at FCI Dublin were immigrants, who could be threatened with deportation and other immigration consequences, the case also required specialized knowledge and skill in immigration law and its intersection with federal sentencing laws. This attorney team included an attorney with this specialized set of knowledge and skills. It is my opinion that the timekeepers for whom enhanced rates are sought should receive them.

17. For this subset of attorneys, the enhanced hourly rates requested by Plaintiffs' Counsel are within the range of hourly rates charged by and awarded to comparably qualified Bay Area attorneys for comparable services. My opinion is based upon: (1) Plaintiffs' Counsel's very impressive credentials and experience, all of which appear to have come to bear in achieving outstanding injunctive relief; (2) my experience with attorneys' hourly rates in the Bay Area; (3) prior fee awards to Plaintiffs' Counsel and to other Bay Area attorneys; and (4) the rates stated in credible sources by law firms that

practice in the Bay Area.

## ENHANCED RATES ABOVE THE EAJA CAP ARE NECESSARY

18.     Cases like this one are rare.  The Preliminary Injunction in this case was the first instance of a Special Master being appointed to monitor a facility of the federal Bureau of Prisons.  There are already very few attorneys in the United States who can put together a successful systemic injunctive case against a state prison system.  There are almost none who are willing to litigate such a case against the federal Bureau of Prisons.  This case fits very well with the purpose of the EAJA enhanced rates provision, which is to ensure that plaintiffs with meritorious civil actions are not prevented from bringing them due to the EAJA rates cap.  I will review the circumstances of each of the timekeepers here for whom enhanced rates is sought.

19.     **Michael Bien** has a unique place in the recent history of prison litigation.  I have known Mr. Bien for over 40 years, since he began working on prisoner cases while a partner of Brobeck Phleger and Harrison.  Since he left Brobeck, he has pioneered systemic injunctive reform cases to force prison and jail authorities recognize the basic human needs of vulnerable populations, such as persons with mental illness, disabilities, and victims of sexual assault.  Over 25 years ago, a judge of this court found that "Michael Bien is a genuine expert in the area of complex, institutional prison reform litigation." *Lucas v. White*, 63 F. Supp. 2d 1046, 1061 (N.D. Cal. 1999).  Mr. Bien's specialized experience and skill  have increased since then, as exemplified by the result he obtained in the California prison overcrowding case.  *See Brown v. Plata,* 563 U.S. 493 (2011).  Although Mr. Bien worked relatively few hours in this case, in my opinion his specialized experience and skills were necessary, particularly in light of his previous experience litigating against the BOP regarding sexual assaults at FCI Dublin.

20.     **Ernest Galvan** is well known to me as a practitioner in the specialized area of prison class actions for injunctive relief over the past 27 years.  Mr. Galvan has litigated numerous injunctive class actions in California.  He litigated major parts of *Armstrong v. Newsom*, No. 4:94-cv-2307 CW (N.D. Cal.), securing and enforcing statewide relief

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

requiring the California state prison system provide prisoners with disabilities with equal access to programs, services and activities. He also litigated major parts of *Coleman v. Newsom,* No. 2:90-cv-00520-KJM-SCR (E.D. Cal.) securing and enforcing class-wide relief for California prisoners with mental illness. Mr. Galvan litigated the California statewide parole reform case, *Valdivia v. Schwarzenegger,* No. 2:94-cv-00671-LKK-GGH (E.D. Cal.) that established the right to counsel in all state parole revocation proceedings. Mr. Galvan litigated a challenge to a California initiative that prevented parolees with sex-related convictions from living in most parts of California's populous counties. *See In re E.J.,* 47 Cal.4th 1256 (2010). Mr. Galvan also litigated a class action for systemic relief regarding medical, mental health care, disability access at the Monterey County Jail. *Hernandez v. County of Monterey,* No. 5:13-cv-2354 BLF (N.D. Cal.). Mr. Galvan's specialized knowledge and skills were necessary to develop and present evidence showing that the abuse at Dublin was systemic, and not just the result of a few bad apples.

21. **Kara Janssen,** a Senior Associate at the Rosen Bien Galvan & Grunfeld firm during the relevant period, and now a Partner, brought specialized knowledge and skills in representing incarcerated individuals. She developed these specialized knowledge and skills in over a decade of representing persons with disabilities in some of California's largest jails, including those in Alameda, Contra Costa and Santa Clara counties. Ms. Janssen's specialized knowledge and skill in working with vulnerable incarcerated persons was necessary here to develop and present the facts regarding the sexual assault survivors at FCI Dublin, and to develop and present the legal theories for systemic relief.

22. **Susan Beaty** of the California Collaborative for Immigrant Justice was the sole attorney on this matter for its first several years. Mx. Beaty brings specialized knowledge and skills on the intersection between immigration law and the law of federal incarceration. Over 20% of the people held at FCI Dublin were noncitizens, and one of the allegations at issue was that the sexual predators on staff threatened immigration sanctions to anyone who spoke out. Ms. Beaty has practiced immigration and immigration detention law since 2018. She has launched cross-disciplinary programs in immigration

law and post-conviction relief to assist persons like the 20% of the FCI Dublin class who are noncitizens with criminal histories. Mx. Beaty's specialized immigration knowledge and skills were thus necessary for successful representation of the class.

23.    **Oren Nimni,** the former Legal Director of Rights Behind Bars, a D.C. non-profit law firm is a well-known prisoner's rights litigator. He is a lecturer at Harvard Law School on the rights of incarcerated persons, and a member of the American Law Institute specializing in Civil Rights and Criminal Procedure. He litigated a wide range of prisoners' and immigrants' rights cases both at Rights Behind Bars, and as Supervising Attorney at the Lawyers Committee for Civil Rights in Massachusetts. In 2023, he received the American Constitution Society's 2023 David Carliner Award as recognition for his innovative litigation tactics. He brought specialized knowledge and skills in systemic prison litigation that were necessary to develop and litigate this case.

24.    **Amaris Montes** is the Director of West Coast Litigation and Advocacy at Rights Behind Bars. She brought specialized knowledge and skills stemming from her extensive prisoners' rights litigation around the United States, including in *Voices of the Experience, et al. v. LeBlanc, et al.*, No. 3:23-cv-01304 (M.D. La.), a putative class action on behalf of incarcerated people in Louisiana State Penitentiary challenging the prison's use of forced labor in the Farm Line especially in the summer months; *Jones, et al. v. City of St. Louis, Missouri, et al.*, No. 4:21-cv-00600 (E.D. Mo.), a class action filed on behalf of incarcerated people held in the St. Louis City Justice Center challenging excessive macing and putative water shut off practices in the jail. She has also served as counsel on cases involving individual clients or a group of individual clients including *Washington v. Mass. Dep't of Correction*, No. 3:20-cv-11261 (D. Ma.), representing an incarcerated person challenging prison officials' use of excessive force and retaliatory abuse; *Pillco Morocho, et al. v. Bristol County Sheriff's Office, et al.*, No. 1:22-cv-10652 (D. Ma), representing over a dozen individual plaintiffs challenging excessive force and COVID conditions for individuals in immigration detention; and *Ahn v. GEO Group, Inc. et al.*, No. 1:22-cv-00586 (E.D. Ca), a wrongful death action on behalf of an individual held in

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

immigration detention.   Ms. Montes is also a native speaker of Spanish, which was vital for communicating with the large portion of the FCI Dublin class that is monolingual in Spanish.

25.    **Stephen Cha-Kim**, a partner at Arnold & Porter in New York, served for over seven years as an Assistant United States Attorney in the Civil Division of the Southern District of New York.  He handled civil rights investigations and constitutional litigation regarding the civil rights of incarcerated persons.  Mr. Cha-Kim also served as Associate Counsel to the President in the White House Counsel's Office.  As I noted above, systemic injunctive litigation against the federal Bureau of Prisons is highly unusual.  Civil rights lawyers largely avoid litigating against the BOP because of the extensive immunities that the agency enjoys, the Supreme Court's recent disapproval of *Bivens* actions, and the BOP's reputation as a recalcitrant defendant.  Mr. Cha-Kim's recent experience as a federal government lawyer represents a specialized set of knowledge and skills that we necessary to succeed in this case.

## COUNSEL'S HOURLY RATES ARE REASONABLE

26.    It is my understanding that for the above-timekeepers, Plaintiffs' fee request here is based on the following 2025 hourly rates, while all others are governed by the EAJA rates cap.

| Timekeeper | Position | Law School Class | 2025 Rate |
|---|---|---|---|
| **RBGG** | | | |
| Michael Bien | Partner | 1981 | $1,675 |
| Ernest Galvan | Partner | 1997 | $1,150 |
| Kara Janssen | Senior Associate | 2010 | $875 |
| **CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE** | | | |
| Susan Beaty | Staff Counsel | 2018 | $575 |
| **RIGHTS BEHIND BARS** | | | |
| Oren Nimni | Legal Director | 2015 | $700 |
| Amaris Montes | West Coast Legal Director | 2021 | $500 |

| Timekeeper | Position | Law School Class | 2025 Rate |
|---|---|---|---|
| **ARNOLD & PORTER** | | | |
| Stephen Cha-Kim | Partner | 2011 | $850 |

27.   It is my opinion that the hourly rates Counsel request are well within the range of the non-contingent market rates charged by similarly qualified Bay Area attorneys who regularly engage in civil litigation of comparable complexity.  The following factors support my opinion.

28.   **Factor One: My Experience and Expertise.**  Initially, my opinion is based on my long experience and expertise regarding attorneys' fees, both as an advocate and as a recognized fee expert.  *See, e.g.*, *Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1079 (N.D. Cal. 2022), *vacated and remand by unopposed request in Wit v. United Behav. Health*, No. 22-15184, 2023 WL 8723695, at *1 (9th Cir. Dec. 15, 2023) ("the Court places significant weight on Pearl's opinion"); *Human Rights Defense Center v. County of Napa*, 2021 U.S. Dist. LEXIS 59778, *32, 2021 WL 1176640, 20-cv-01296-JCS (N.D. Cal. March 28, 2021) ("Mr. Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts").  Through my writing and practice, I have become familiar with the non-contingent market rates charged by attorneys in California and elsewhere.  This familiarity has been obtained in several ways:  (a) by handling attorneys' fees litigation; (b) by discussing fees with other attorneys; (c) by obtaining declarations regarding prevailing market rates in cases in which I represent attorneys seeking fees; and (d) by reviewing attorneys' fees applications and awards in other cases, as well as surveys and articles on attorneys' fees in the legal newspapers and treatises.  As I explained above, I have testified before trial courts and arbitrators on numerous occasions, and I have submitted expert testimony by declaration on hundreds of occasions.  Each of those efforts require me to be aware of the hourly rates being charged in the relevant community, especially those charged in the San Francisco Bay Area.  My expert opinions on hourly rates have been cited repeatedly by courts in the

Bay Area.

29. **Factor Two: Counsel's Stellar Credentials, Experience, and Performance**. My opinion is also based on my assessment of Plaintiffs' Counsel's exceptional levels of skill and experience and their reputations, all of which would justify their rates as being well within the range of reasonable rates charged by (and judicially awarded to) comparable attorneys for comparably complex civil litigation. I have reviewed Plaintiffs' Counsel's qualifications, backgrounds, experience, and work product, and the results they have achieved.

30. RBGG possesses an excellent and well-deserved reputation for high-quality representation. It is a nationally recognized leader in civil rights, employment, consumer, and antitrust class action litigation and appeals. Best Lawyers in America places the firm in the first tier nationally in Appellate Practice, and locally in Commercial Litigation, Employment Law-Individuals, and Civil Rights for 2025 and for many prior years. All of the firm's partners are AV-rated by Martindale Hubbell, and all are recognized as SuperLawyers and have been for many years.

31. In addition, I personally have been familiar with RBGG's work for many decades. Its lawyers and I have on occasion worked on the same side of matters, and on other occasions on opposite sides. I know that the firm and its lawyers have well-deserved reputations for excellence and for getting outstanding results for their clients, as this case demonstrates. RBGG regularly litigates complex civil matters in state and federal court, and obtains excellent results for their individual and class action clients. Based on the information I reviewed and my own experience, it is my opinion that a high level of skill and experience was necessary to secure the injunction here, based on several years of investigation of the experiences of sexual assault survivors at FCI Dublin, who suffered not only from the assaults themselves but from retaliation if they dared report what happened to them. This case was, to my knowledge, the first of its kind in the nation— resulting in the first appointment ever of a Special Master to supervise a federal BOP facility.

32.     **Factor Three: Counsel's San Francisco Bay Area Billing Rates**.  It also is significant to me that the rates upon which RBGG's rates are based are the rates they actually bill to and are paid by fee-paying clients.  The courts agree that this factor is significant.  *See Metavante Corp. v Emigrant Sav. Bank* 619 F.3d 748, 774 (7th Cir. 2010); *Carson v Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("that a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market").  Under these cases, the fact that consumers of the attorneys' services choose to pay their hourly rates is prima facie proof that Counsel's services were worth that much in the legal marketplace.

33.     Here, the rates that the two non-profits seek are consistent with RBGG's rates (and by extension the San Francisco Bay Area legal market), reflecting the attorneys' unique expertise in prisoner's rights generally and in litigating against the BOP in particular.  The rate sought for Mr. Cha-Kim is also consistent with RBGG's rates for partners with his level of experience in the San Francisco Bay Area.

34.     **Factor Four: Counsel's Prior Fee Awards.**  The hourly rates found reasonable for RBGG in prior cases also support its current request.  These prior awards are strong evidence that Counsel's current rates are reasonable.  *See, e.g.*, *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Margolin v. Regional Planning Comm'n*, 134 Cal. App. 3d 999, 1005 (1982).

35.     Courts have found RBGG's rates to be reasonable many times over the past several years.  *See, e.g.*, *United States ex rel. Thrower v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2024 WL 4194800, at *4 (N.D. Cal. Sept. 13, 2024) (awarding RBGG's requested 2023 rates for its fees work, including Sanford Rosen's rate (*see* No. 16-CV-02120-EMC, Dkt. 400)); *United States ex rel. Thrower v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2024 WL 5424428, at *17-21 (N.D. Cal. May 31, 2024) (same, for earlier award of fees for fees); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2024 WL 1195548, at *2 (D. Ariz. Mar. 20, 2024) (awarding RBGG's requested 2023 rates, including Jenny Yelin's 2023 rate of $825 and the 2023 rates of Sanford Rosen and Lisa

Ells (No. 2:15-cv-02245-ROS, Dkt. 365-1 at 209)); *Prison Legal News v. Ryan*, No. 19-17449, 2023 WL 9190364, at *1 (9th Cir. Mar. 21, 2023) (Ninth Circuit Order awarding RBGG's full 2022 billing rates for appellate work performed from 2019 to 2022, including those of Sanford Rosen and Lisa Ells); *Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 806 (N.D. Cal. 2021) (awarding RBGG's requested 2021 rates, including Ms. Yelin's 2021 rate of $600 and the 2021 rate of Sanford Rosen); *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640, at *11-12 (N.D. Cal. Mar. 28, 2021) (awarding RBGG's requested 2020 rates, including that of Sanford Rosen).

36.     RBGG's current 2025 rates reflect only very modest increases over those determinations and are firmly justified by rate increases in the legal marketplace.  In fact, listed billing rates, court awards, and published articles show that attorney rates continue to grow rapidly.  Reputable authorities and those I consider reliable in this area are reporting an expected rate increase for 2025 of at least 7 to 9%.  *See, e.g.*, Andrew Maloney, "Healthy Billing Rate Hikes Aren't Just for the Am Law 50," Law.com, May 7, 2025, available at https://www.law.com/americanlawyer/2025/05/08/healthy-billing-rate-hikes-arent-just-for-the-am-law-50/ (more than half of surveyed firms increased rates on average by 7%); Debra Cassens Weiss, "Some top partners in BigLaw will bill nearly $3,000 per hour next year, data says," ABA Journal, Sept. 26, 2024, available at https://www.abajournal.com/news/article/some-top-partners-in-biglaw-will-bill-nearly-3000-an-hour-next-year-report-says (listing BigLaw 2024 rates for partners that range up to $2,720 per hour); Dan Roe, "Top Big Law Partners Are Earning More Than $2,400 Now, As Rates Continue to Climb," Law.com, Jan. 18, 2024, available at https://www.law.com/americanlawyer/2024/01/10/top-restructuring-partners-are-earning-more-than-2400-per-hour-as-rates-continue-to-climb/ (listing numerous firm rates, some approaching $2,600 per hour); Debra Cassens Weiss, "This BigLaw firm charges nearly $2,500 per hour for top billers' bankruptcy work," ABA Journal, Dec. 19, 2023, available at https://www.abajournal.com/news/article/this-biglaw-firm-charges-nearly-2500-an-hour-for-top-billers-bankruptcy-work (referring to Kirkland & Ellis's rates); Vaidehi

Mehta, "Billing Rates Surge Past $2k in the World of High-Stakes Litigation," FindLaw, Sept. 27, 2023, available at https://www.findlaw.com/legalblogs/practice-of-law/billing-rates-surge-past-2k-in-the-world-of-high-stakes-litigation/; Roy Strom, "Rising Rates Are Law Firms' Salve as Layoffs and Pay Cuts Surge," Bureau of National Affairs, Inc., Jan. 19, 2023, available at https://news.bloomberglaw.com/business-and-practice/rising-rates-are-law-firms-salve-as-layoffs-and-pay-cuts-surge (rates for commercial firms who submitted new 2023 hourly rates reflected increases over 2022 rates of nearly 10% on average for top partners and 9% for top associates).

37.     In light of Plaintiffs' Counsel's years of increased skill, experience, and reputations, as well as significant rate increases in the legal marketplace generally, it is my opinion that their current 2025 rates are reasonable.

38.     **Factor Five: Recent Hourly Rate Determinations by San Francisco Bay Area Courts**.  My opinion also is based on numerous hourly rate determinations made by Bay Area state and federal trial courts, which demonstrate that Plaintiffs' Counsel's rates here are well within the applicable range of rates approved by local courts.  These findings are entitled to significant weight.  Some examples of recent awards are provided below.

- In *Pacific Steel Group v. Commercial Metals Co.*, N.D. Cal. Case No.4:20-cv-07683-HSG, Order Denying Defendants' Motion for Judgment as a Matter of Law and for New Trial, Granting Plaintiff's Motion for Attorneys' Fees and Granting in Part and Denying in Part Defendants' Motions to Seal (Doc 562), filed Sept. 29, 2025, an antitrust action, the Court found, inter alia, that the following rates charged by Quinn Emanuel Urquhart & Sullivan LLP, which represented a 10% discount from their standard rates, were reasonable.

| Firm | Role | Year | Rate |
|---|---|---|---|
| **Quinn Emanuel Urquhart & Sullivan LLP** | Partners/Of Counsel | 2024 | $1,422 - $2,169 |
| | | 2025 | $1,561.50 - $2,169 |
| | Associates | 2024 | $544.50 - $1,278 |
| | | 2025 | $954 - $1,278 |

[4813125.3]

18

Case No. 4:23-cv-04155-YGR

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

| Firm | Role | Year | Rate |
|---|---|---|---|
| | Other Professionals | 2024 | $157.50 - $688.50 |
| | | 2025 | $535.50 |

- In *Sutter's Place, Inc. dba Bay 101 v. S.J. Bayshore Development, Inc.*, Santa Clara Superior Ct. No. 22CV397119, Order After Hearing on Plaintiff/Cross-Defendants' Motion for Attorney Fees, filed Dec. 23, 2024, a business contract dispute in which the fee award was based on a contractual fee clause, the following hourly rates were determined to be reasonable:

| Firm | Role | Law School Grad. Year | Rate |
|---|---|---|---|
| **Coblentz, Patch Duffy & Bass LLP** | Overall lead attorney and lead for trial | 1979 | $1,225 (2022) $1,310 (2023) $1,450 (2024) |
| | Partner and second chair | 1994 | $990 (2022) $1090 (2023) $1200 (2024) |
| | Partner | 2011 | $775 (2023) $870 (2024) |
| | | 2013 | $680 (2022) $775 (2023) $870 (2024) |
| | Associate and Partner | 2015 | $565 (2022) $650 (2023) $770 (2024) |
| | Associate | 2017 | $535 (2022) $600 (2023) $680 (2024) |
| | Senior associate | 2018 | $550 (2023) $640 (2024) |
| | | 2018 | $465 (2022) $525 (2023) $630 (2024) |
| | Associate | 2020 | $600 (2024) |
| | Senior Paralegal | N/A | $340 (2022) $400 (2023) |

[4813125.3]

19

Case No. 4:23-cv-04155-YGR

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

| Firm | Role | Law School Grad. Year | Rate |
|---|---|---|---|
|  |  |  | $450 (2024) |
|  |  | N/A | $320 (2022)<br>$400 (2023)<br>$450 (2024) |
|  |  | N/A | $285 (2023)<br>$400 (2024) |
|  | Trial Technician | N/A | $270 (2023)<br>$300 (2024) |

- In *Toscano v. City of Oakland*, Alameda County Superior Ct. No. RG21094864, Fee Order filed August 22, 2024, an individual employment discrimination and retaliation case, the court found, citing my declaration, that the following rates for plaintiff's counsel were reasonable (before applying a 1.4 lodestar multiplier):

| Firm | Role | Law School Grad. Year | Rate |
|---|---|---|---|
| **Vinick Hyams LLP** | Attorney | 1982 | $1,100 |
|  | Attorney and Co-lead at trial | 1987 | $1,100 |
|  | Law Clerk | N/A | $250 |
|  | Paralegal/Legal Assistant | N/A | $225 |
| **Law Offices of Wendy Musell** | Partner | 1999 | $1,000 |
|  |  | 2000 | $950 |
|  | Senior Counsel and Co-lead at trial | 2021 | $875 |
|  | Law Clerks | N/A | $250 |
|  | Paralegal | N/A | $225 |

39. Plaintiffs' paralegal rates ($245 for a paralegal and $445 for a Senior Paralegal) are also in line with these court awards. For example, in the *Sutter's Place (Bay 101)* case, cited above, the trial court found that $450 per hour was reasonable for the winning party's senior paralegal.

40. **Factor Six: Hourly Rates Stated by Bay Area Firms.** Counsel's hourly rates also are well within the range of the stated non-contingent hourly rates charged by

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

numerous Bay Area law firms that regularly engage in civil litigation of comparable complexity. For example:

41.    In 2025, Schneider Wallace billed a partner who was admitted in 1995 at $1,350 per hour, an associate who was admitted in 2015 at $900 per hour, an associate who was admitted in 2016 graduate at $850 per hour, an associate who was admitted in 2020 at $650 per hour, and a Junior Paralegal at $350.

42.    Altshuler Berzon LLP, a prominent public interest trial and appellate firm, billed its 2024 work at $1,325 for a 1983 graduate, $1,150 for a 1998 graduate, $1,000 for a 2008 graduate, $750 for a 2016 graduate, $675 for a 2019 graduate, $625 for a 2021 graduate, and $325 for paralegals and litigation assistants.

43.    Feinberg, Jackson, Worthman & Wasow LLP, a prominent local firm, billed the following rates in 2023:

| Title | Year Admitted | Rate |
|---|---|---|
| Partner | 1988 | $1050 |
| Partner | 2004 | $1050 |
| Partner | 2006 | $900 |
| Partner | 2010 | $800 |
| Fellow | 2020 | $350 |

44.    Dardarian Ho Kan & Lee (formerly Goldstein Borgen Dardarian and Ho LLP), a prominent local firm, charges the following 2025 rates for its work:

| Years of Experience | 2025 Rates |
|---|---|
| PARTNERS | |
| More than 20 | $1,275 |
| 19020 | $1,125 |
| 10 | $900 |
| ASSOCIATES | |
| 10 | $850 |
| 4 | $700 |
| 1-2 | $550-$600 |
| Law Clerks | $475 |
| Paralegals | $425-$475 |

45.    Sanford Heisler Sharp McKnight, LLP, charges the following 2025 rates:

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

| Years of Experience | Rate |
|---|---|
| More than 20 | $1,400 |
| Support Staff | $300-$325 |

46.    Keller, Rohrback, another comparable firm, charged the following rates in 2023:

| Years of Experience | Rate |
|---|---|
| 33+ | $1,200 |
| 27 | $1,100 |
| 22-23 | $1,045 |
| 27 | $1,100 |
| 18 | $1,010 |
| 14 | $815 |
| 13 | $795 |
| 11 | $725 |
| 9 | $700 |

47.    In 2023, Olivier & Schreiber LLP, a prominent local employment/appellate firm, billed its 25-year attorney at $925 per hour, its 16-year attorney at $825, its 14-year attorney at $800, and its paralegals at $200-250 per hour.

48.    In 2022, McGuinn, Hillsman & Palefsky charged and was awarded $1,100 per hour for its 45-year attorney.

49.    Likewise, the reasonableness of Plaintiffs' Counsel's rates is further confirmed by public information concerning the rates charged by and paid to attorneys representing PG&E in its Bankruptcy proceedings in July 2020 (**Exhibit B**).[1]  **Exhibit B**

---

[1] Bankruptcy rates are relevant here because the federal bankruptcy rules require that firms attest that the rates they are requesting do not exceed their rates for other types of work. *See, e.g.*, Guidelines for Compensation and Expense Reimbursement of Professionals and Plaintiff's Counselees for the Northern District of California, effective February 19, 2014, https://www.canb.uscourts.gov/procedure/guidelines-compensation-and-expense-reimbursement-professional-and-trustees at § 8 (requiring certification that, among other

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

shows that, in July 2020, PG&E's attorneys billed a 19-year attorney at $1,535 per hour, a 15-year attorney at $1,220 per hour, and a 7-year attorney at $1,095 per hour. Plaintiffs' Counsel's 2025 rates here are significantly lower.

50. **Factor Seven: Credible Rate Surveys.** Credible surveys of law firm rates show that Petitioner's Counsel's rates are well within the range of the local legal marketplace. I base this opinion on relevant excerpts from the 2023 and 2024 annual Real Rate Reports ("RRR") published by Wolters Kluwer, **Exhibits C** and **D.** The Real Rate Reports analyze legal invoices to determine the range of hourly rates actually charged in a particular locale. *See Vogel v. MS Food Servs.*, No. 16-cv-8433 DSF, 2018 WL 11027947, at *3 (C.D. Cal. Dec. 26, 2018) (Real Rate Report "is based on actual legal billing, matter information, and paid and processed invoices from more than 90 companies — not just on posted or advertised rates."); *RG Abrams Ins. v. Law Offices of C.R. Abrams,* 342 F.R.D. 461, 524 n.13 (C.D. Cal. 2022) (same).

51. These reports analyze legal invoices to determine the range of hourly rates actually charged in a particular locale, which they classify by "First Quartile," "Median," and "Third Quartile" rates. As such, they have been found to be a useful source for determining hourly rates in the cases cited above and others. *See, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.,* 2023 U.S.Dist. LEXIS 211875, at *69 (C.D. Cal. 2023) (citing to Report's Third Quartile rates); *French v. City of Los Angeles, supra,* 2022 U.S. Dist. LEXIS 111194, at *52 ("this Court has found that the [2021] Real Rate Report provides a helpful reference point and consults it here," citing Report's Third Quartile rates). These

things, "the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by the applicant and generally accepted by the applicant's clients"); Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, https://www.justice.gov/sites/default/files/ust/legacy/2012/11/02/AppendixB_Fee_Guidelines_Exhibits_Comments.pdf ; 78 Fed. Reg. 36248, 36250 (June 17, 2013) ("The United States Trustee will ordinarily object to fees that are above the market rate for comparable services."), at https://www.govinfo.gov/content/pkg/FR-2013-06-17/pdf/2013-14323.pdf.

[4813125.3]                                    23                         Case No. 4:23-cv-04155-YGR

Reports squarely confirm that Counsel's rates here are well "within the range" of rates charged in the Bay Area legal marketplace.

52.     Page 22 of the 2024 Report **Exhibit D** analyzes the rates charged by 166 San Francisco Area "Litigation" partners and 36 San Jose "Litigation" partners.  For this category, the Third Quartile San Francisco/San Jose Area hourly rate was **$1,208** and the Third Quartile San Jose Area partner rate was **$1,303**.  The Third Quartile San Francisco Area hourly rate among 120 Litigation Associates was $824 and the Third Quartile San Jose Area hourly rate among 29 Litigation Associates was $833.  Here, Counsel's skills, experience, and performance certainly qualify them for rates in the Third Quartile range – *i.e.*, the rate that 25% of San Francisco and San Jose area litigators charge at or higher. *See, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc., supra,* 2023 U.S.Dist. LEXIS 211875, at *69 (citing to Report's Third Quartile rates); *French v. City of Los Angeles, supra,* 2022 U.S. Dist. LEXIS 111194, at *52 (same).

53.     Page 21 of the 2023 Report **Exhibit C** analyzes the rates charged by 115 San Francisco Area "Litigation" partners and 76 Associates. For these categories, the Third Quartile San Francisco Area hourly rate for litigation partners was **$1,124.**  For associates, the Third Quartile San Francisco Area hourly rate was **$718.**

54.     As demonstrated by these surveys, and given Plaintiffs' Counsel's considerable reputation, experience, expertise, and skills, as demonstrated by this matter, as well as the significant increases in attorney rates over the past several years, Counsel's requested 2025 rates here are well within the range of rates charged in the Bay Area legal marketplace.

55.     I have also reviewed counsel's summaries of the paralegals' backgrounds and qualifications.  Plaintiffs' Counsel's paralegal rates ($310-$350 for paralegals and $445-$470 for a Senior Paralegal) and law clerk/summer associate rates ($300-$425) are also within the range of reasonable rates charged by similarly experienced paralegals and senior paralegals in the above-mentioned sources.  For example, Dardarian Ho Kan & Lee charges $425-$475 per hour for Paralegals.  Here, the paralegal hours are sought only at

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

the EAJA cap, $251.84, well below the market rates.

56.    The foregoing facts fully support my opinion that Plaintiffs' Counsel's hourly rates for their work in this litigation are readily in line with the range of rates charged by and awarded to comparably qualified attorneys and paralegals for comparable services in the Bay Area legal community.

## COUNSEL'S MERITS HOURS ARE WITHIN A REASONABLE RANGE

57.    It is my understanding that, after billing judgment reductions and across-the-board discounts totaling 21.2% of the hours spent on the merits, representing a discount of 18.2% of the lodestar value, Plaintiffs' Counsel calculated a merits lodestar of approximately $4.9 million for approximately 9,748 hours of work (compared to a total of approximately $6.1 million for approximately 12,370 hours before billing judgment deductions).

58.    As noted above, I have reviewed a meaningful sample of the documents filed in this action.  Also, as noted, I have had extensive experience litigating and serving as an expert witness in attorneys' fees motions in similarly complex actions, both in the trial courts and on appeal.  Based on my review of this material, as well as my extensive experience with comparable civil actions, it is my opinion that the net number of hours for which Plaintiffs' Counsel request compensation appears to be consistent with the range of hours I would expect to have been spent in litigating claims in a case of this duration, intensity, complexity, and results.  A number of factors support my opinion:

59.    **Factor One: Counsel's Complete Documentation**.  The time spent by Plaintiffs' Counsel on the merits of this action is fully documented in detailed time records.  *See Horsford v. Bd. of Trustees*, 132 Cal. App. 4th 359, 396 (2005) ("the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.").  Counsel's request is based on contemporaneous time records, set out in 0.1 hour intervals.  These time records readily satisfy the requirements of federal law.  *See, e.g., United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (holding

that billing records adequately supported trial court fee award and explaining that attorneys need only "keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed"). I have seen nothing in those time records to indicate that they are anything but highly credible. Accordingly, these time records constitute a prima facie showing that the time claimed is reasonable.

60. My opinion that counsel's time is well documented is also supported by the phase-by-phase breakdown of time spent on this case that counsel has prepared. This summary of the hours is an excellent practice for fee motions, as it helps the Court evaluate the reasonableness by phase.

61. **Factor Two: Counsel's Extensive Billing Judgment Reductions**. It also is highly significant to me that Plaintiffs' counsel has chosen not to request compensation for thousands of hours that would ordinarily be billed to a fee-paying client. These write-downs have resulted in approximately $1.1 million in discrete billing judgment reductions for their work.

62. **Factor Three: The Intensity and Demands of the Litigation**. The number of hours Plaintiffs' Counsel expended appears quite reasonable to me in light of the novel and difficult questions presented, the federal government's decisions to litigate the case aggressively, and the results achieved. In my view, cases like this one are difficult because of the presumptions favoring government entities, and the heavy burden that plaintiffs have to establish that their injuries were caused in part by systemic failures, and not just a few bad apples, and that they are still at risk of harm justifying injunctive relief.

63. In the face of these burdens, Plaintiffs' Counsel presented excellent work. Such work requires a substantial time investment. I reviewed a sample of counsel's work produce. I found that work product detailed, thorough, and persuasive. I am aware that Plaintiff's counsel brought more than the usual number of attorneys to counsel table for the evidentiary hearing in the first week of January 2024. While a private client might in some cases question the presence of so many attorneys, the context matters here. Given the high

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

stakes of the evidentiary hearing, and that it was set with three weeks notice, the only way to prepare witnesses and evidence is to split the work up, so that no one lawyer is tasked with more trial preparation than can be performed effectively in one day.  Private clients do not expect small teams to work 20 hours a day; instead, they recognize that they get better work from a large team working 8-12 hours a day.

64.    Also, the fact that Counsel was not being regularly paid for their work constitutes a disincentive to do unnecessary work, *i.e.*, work that is not designed to advance the client's case: "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.  It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Moreno v. City of Sacramento* 534 F.3d 1106, 1112 (9th Cir. 2008).

65.    **Factor Four: Hard-Fought Litigation**.  The Court's orders after the evidentiary hearing show that the government fought at every step of this case, and even after the Court granted the preliminary injunction.  The Government chose to file several motions to dismiss and to vacate the Special Master appointment.  As courts have recognized, a vigorous opposition diminishes any argument that fee applicants spent too much time: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento* 534 F.3d 1106, 1112 (9th Cir. 2008).

66.    **Factor Five: The Results Achieved**.  The excellent results achieved justify the time expended to obtain those results.  The plaintiffs, victims of sexual  assault at the hands of the prison warden and other staff members, sought certification of a class of all women at FCI Dublin.  In the current legal environment, in which federal courts now often deny class certification where there is even slight variation in the experiences of the class members, getting such a class certified required extensive work to show that the women at FCI Dublin faced the same risks of harm due to the governments' defaults, despite the

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

highly individualized nature of the separate sexual assaults. The plaintiff class also secured the first-ever appointment of a Special Master to supervise a federal prison.  After the BOP closed that prison and claimed the case was moot, counsel was able to demonstrate that the women still faced unreasonable risks of harm and retaliation at their scattered prisons, kept the case alive, and secured a consent decree requiring continued protections for the class.

## CONCLUSION

67.    In my opinion, for the reasons stated above, Plaintiffs' Counsel's calculated merits lodestar is entirely consistent with the fees that would be reasonably charged in the local legal marketplace for comparable work and results.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Berkeley, California, this 28th day of January 2026.

_____
Richard M. Pearl

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES

# EXHIBIT A

# RESUME OF RICHARD M. PEARL

**RICHARD M. PEARL**
**LAW OFFICES OF RICHARD M. PEARL**
1816 Fifth Street
Berkeley, CA 94710
(510) 649-0810
(510) 548-3143 (facsimile)
rpearl@interx.net (e-mail)

## EDUCATION

University of California, Berkeley, B.A., Economics (June 1966)
Berkeley School of Law (formerly Boalt Hall), Berkeley, J.D. (June 1969)

## BAR MEMBERSHIP

Member, State Bar of California (admitted February 1970)
Member, State Bar of Georgia (admitted June 1970) (inactive)
Admitted to practice before all California State Courts; the United States Supreme Court; the United States Court of Appeals for the District of Columbia and Ninth Circuits; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, for the District of Arizona, and for the Northern District of Georgia; and the Georgia Civil and Superior Courts and Court of Appeals.

## EMPLOYMENT

LAW OFFICES OF RICHARD M. PEARL (April 1987 to Present): Civil litigation practice (AV rating), with emphasis on court-awarded attorney's fees, class actions, and appellate practice. Selected Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, and 2024.

QUALIFIED APPELLATE MEDIATOR, APPELLATE MEDIATION PROGRAM, California Court of Appeal, First Appellate District (October 2000 to 2013) (program terminated).

ADJUNCT PROFESSOR, HASTINGS COLLEGE OF THE LAW (January 1988 to 2014): Taught *Public Interest Law Practice*, a 2-unit course that focused on the history, strategies, and issues involved in the practice of public interest law.

PEARL, McNEILL & GILLESPIE, Partner (May 1982 to March 1987): General civil litigation practice, as described above.

CALIFORNIA RURAL LEGAL ASSISTANCE, INC. (July 1971 to September 1983) (part-time May 1982 to September 1983):

> Director of Litigation (July 1977 to July 1982)
> Responsibilities: Oversaw and supervised litigation of more than 50 attorneys in CRLA's 15 field offices; administered and supervised staff of 4-6 Regional Counsel; promulgated litigation policies and procedures for program; participated in complex civil litigation.
>
> Regional Counsel (July 1982 to September 1983 part-time)
> Responsibilities: Served as co-counsel to CRLA field attorneys on complex projects; provided technical assistance and training to CRLA field offices; oversaw CRLA attorney's fee cases; served as counsel on major litigation.
>
> Directing Attorney, Cooperative Legal Services Center (February 1974 to July 1977) (Staff Attorney February 1974 to October 1975)
> Responsibilities: Served as co-counsel on major litigation with legal services attorneys in small legal services offices throughout California; supervised and administered staff of four senior legal services attorneys and support staff.
>
> Directing Attorney, CRLA McFarland Office (July 1971 to February 1974) (Staff Attorney July 1971 to February 1972)
> Responsibilities: Provided legal representation to low income persons and groups in Kern, King, and Tulare Counties; supervised all litigation and administered staff of ten.

HASTINGS COLLEGE OF THE LAW, Instructor, Legal Writing and Research Program (August 1974 to June 1978)
Responsibilities: Instructed 20 to 25 first year students in legal writing and research.

CALIFORNIA AGRICULTURAL LABOR RELATIONS BOARD, Staff Attorney, General Counsel's Office (November 1975 to January 1976, while on leave from CRLA)
Responsibilities: Prosecuted unfair labor practice charges before Administrative Law Judges and the A.L.R.B. and represented the A.L.R.B. in state court proceedings.

ATLANTA LEGAL AID SOCIETY, Staff Attorney (October 1969 to June 1971)
Responsibilities: Represented low-income persons and groups as part of 36-lawyer legal services program located in Atlanta, Georgia.

**PUBLICATIONS**

Pearl, *California Attorney Fee Awards, Third Edition* (Cal. Cont. Ed. Bar 2010) and February 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, and March 2024 Supplements

Pearl, *California Attorney Fee Awards, Second Edition* (Cal. Cont. Ed. Bar 1994), and 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements

*Best Practices for Litigating a Civil Code Section 1717 Motion for Attorney Fees,* with the Hon. Elizabeth R. Feffer (Ret.), California Litigation (The Journal of the Litigation Section of the California Lawyers Association, Vol. 35, No. 1, 2022)

*Graham v. DaimlerChrysler Corp.* and *Tipton-Whittingham v. City of Los Angeles*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Feb. 2005)

*Current Issues in Attorneys' Fee Litigation*, California Labor and Employment Law Quarterly (September 2002 and November 2002)

*Flannery v. Prentice: Shifting Attitudes Toward Fee Agreements and Fee-Shifting Statutes*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Nov. 2001)

*A Practical Introduction to Attorney's Fees*, Environmental Law News (Summer 1995)

*Wrongful Employment Termination Practice, Second Edition* (Cal. Cont. Ed. Bar 1997) (co-authored chapter on "Attorney Fees")

*California Attorney's Fees Award Practice* (Cal. Cont. Ed. Bar 1982) (edited), and 1984 through 1993 Supplements

Program materials on attorney fees for numerous trainings, including for California Continuing Education of the Bar, the California Employment Lawyers Association, the California Lawyers Association, the California Department of Fair Housing and Employment, the Environmental Law, Labor Law, and Appellate Sections of the California State Bar, the California Academy of Appellate Lawyers, and many others.

*Settlors Beware/The Dangers of Negotiating Statutory Fee Cases* (September 1985) Los Angeles Lawyer

Program Materials on Remedies Training (Class Actions), sponsored by Legal Services Section, California State Bar, San Francisco (May 1983)

Attorneys' Fees: A Legal Services Practice Manual (Legal Services Corporation 1981)

**PUBLIC SERVICE**

Member, Attorneys' Fee Task Force, California State Bar

Member, Board of Directors, California Rural Legal Assistance Foundation

Former Member, Border of Directors, Meals on Wheels of San Francisco (former)

**RECOGNITION**

"AV" Rating -- Martindale Hubbell

Northern California "Super Lawyer" in Appellate Law: 2005 – 2008; 2010 -2024.

**REPRESENTATIVE CASES**

*ACLU of N. Cal. v. DEA*
        (N.D. Cal. 2012) 2012 U.S.Dist.LEXIS 190389

*Alcoser v. Thomas*
        (2011) 2011 Cal.App.Unpub.LEXIS 1180

*Arias v. Raimondo*
        (2018) 2018 U.S.App.LEXIS 7484

*Boren v. California Department of Employment*
        (1976) 59 Cal.App.3d 250

*Cabrera v. Martin*
        (9th Cir. 1992) 973 F.2d 735

*Camacho v. Bridgeport Financial, Inc.*
        (9th Cir. 2008) 523 F.3d 973

*Campos v. E.D.D.*
        (1982) 132 Cal.App.3d 961

*Center for Biological Diversity v. County of San Bernardino*
        (2010) 185 Cal.App.4th 866

*Children & Families Commission of Fresno v. Brown*
        (2014) 228 Cal.App.4th 45

*Committee to Defend Reproductive Rights v. A Free Pregnancy Center*
        (1991) 229 Cal.App.3d 633

**REPRESENTATIVE CASES (cont.)**

*David C. v. Leavitt*
    (D. Utah 1995) 900 F.Supp. 1547

*Delaney v. Baker*
    (1999) 10 Cal.4th 23

*Dixon v. City of Oakland*
    (2014) 2014 U.S.Dist.LEXIS 169688

*Employment Development Dept. v. Superior Court (Boren)*
    (1981) 30 Cal.3d 256

*Environmental Protection Info. Ctr. v Department of Forestry & Fire Protection*
    (2010) 190 Cal.App.4th 217

*Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*
    (N.D. Cal. 2002) 229 F. Supp.2d 993, *aff'd* (9th Cir. 2004) 103 Fed. Appx. 627

*Flannery v Prentice*
    (2001) 26 Cal. 4th 572

*Graham v. DaimlerChrysler Corp.*
    (2004) 34 Cal. 4th 553

*Guerrero v. Cal. Dept. of Corrections etc.*
    (2016) 2016 U.S.Dist.LEXIS 78796, *aff'd in relevant part,* (9th Cir. 2017) 701
    Fed.Appx. 613

*Heron Bay Home Owners Assn. v. City of San Leandro*
    (2018) 19 Cal.App.5th 376

*Horsford v. Board of Trustees of Univ. of Calif.*
    (2005) 132 Cal.App.4th 359

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122

*Kievlan v. Dahlberg Electronics*
    (1978) 78 Cal.App.3d 951, *cert. denied* (1979)
    440 U.S. 951

*Lealao v. Beneficial  California, Inc.*
    (2000) 82 Cal.App.4th 19

5

**REPRESENTATIVE CASES (cont.)**

*Lewis v. California Unemployment Insurance Appeals Board*
       (1976) 56 Cal.App.3d 729

*Local 3-98 etc. v. Donovan*
       (N.D. Cal. 1984) 580 F.Supp. 714,
       *aff'd* (9th Cir. 1986) 792 F.2d 762

*Mangold v. California Public Utilities Commission*
       (9th Cir. 1995) 67 F.3d 1470

*Maria P. v. Riles*
       (1987) 43 Cal.3d 1281

*Martinez v. Dunlop*
       (N.D. Cal. 1976) 411 F.Supp. 5,
       *aff'd* (9th Cir. 1977) 573 F.2d 555

*McQueen, Conservatorship of*
       (2014) 59 Cal.4th 602 (argued for *amici curiae*)

*McSomebodies v. Burlingame Elementary School Dist.*
       (9th Cir. 1990) 897 F.2d 974

*McSomebodies v. San Mateo City School Dist.*
       (9th Cir. 1990) 897 F.2d 975

*Molina v. Lexmark International*
       (2013) 2013 Cal.App. Unpub. LEXIS 6684

*Moore v. Bank of America*
       (9th Cir. 2007) 2007 U.S. App. LEXIS 19597

*Moore v. Bank of America*
       (S.D. Cal. 2008) 2008 U.S. Dist. LEXIS 904

*Mora v. Chem-Tronics, Inc.*
       (S.D. Cal. 1999) 1999 U.S. Dist. LEXIS 10752,
       5 Wage & Hour Cas. 2d (BNA) 1122

*Nadaf-Rahrov v. Nieman Marcus Group*
       (2014) 2014 Cal.App. Unpub. LEXIS 6975

**REPRESENTATIVE CASES (cont.)**

*Orr v. Brame*
(9th Cir. 2018) 727 Fed.Appx. 265, 2018 U.S.App.LEXIS 6094

*Orr v. Brame*
(9th Cir. 2019) 793 Fed.Appx. 485

*Pena v. Superior Court of Kern County*
(1975) 50 Cal.App.3d 694

*Ponce v. Tulare County Housing Authority*
(E.D. Cal 1975) 389 F.Supp. 635

*Ramirez v. Runyon*
(N.D. Cal. 1999) 1999 U.S. Dist. LEXIS 20544

*Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017), *aff'd on merits (fees not appealed)* 269 F.3d 1066 (9th Cir. 2020)

*Robles v. Employment Dev. Dept.*
(2019) 38 Cal.App.5th 191

*Rubio v. Superior Court*
(1979) 24 Cal.3d 93 (amicus)

*Ruelas v. Harper*
(2015) 2015 Cal.App. Unpub.LEXIS 7922

*Sokolow v. County of San Mateo*
(1989) 213 Cal. App. 3d. 231

*S.P. Growers v. Rodriguez*
(1976) 17 Cal.3d 719 (amicus)

*Swan v. Tesconi*
(2015) 2015 Cal.App. Unpub. LEXIS 3891

*Tongol v. Usery*
(9th Cir. 1979) 601 F.2d 1091,
*on remand* (N.D. Cal. 1983) 575 F.Supp. 409,
*revs'd* (9th Cir. 1985) 762 F.2d 727

**REPRESENTATIVE CASES (cont.)**

*Tripp v. Swoap*
(1976) 17 Cal.3d 671 (amicus)

*United States (Davis) v. City and County of San Francisco*
(N.D. Cal. 1990) 748 F.Supp. 1416, *aff'd in part
and revs'd in part sub nom Davis v. City and County
of San Francisco* (9th Cir. 1992) 976 F.2d 1536,
*modified on rehearing* (9th Cir. 1993) 984 F.2d 345

*United States v. City of San Diego*
(S.D.Cal. 1998) 18 F.Supp.2d 1090

*Vasquez v. State of California*
(2008) 45 Cal.4th 243 (*amicus*)

*Velez v. Wynne*
(9th Cir. 2007) 2007 U.S. App. LEXIS 2194

**SEPTEMBER 2024**

# EXHIBIT B

Jonathan C. Sanders (No. #228785)
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5000
Facsimile: (650) 252-5002

Nicholas Goldin
Kathrine A. McLendon
Jamie J. Fell
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for the Board of Each of PG&E Corporation
and Pacific Gas and Electric Company and for
Certain Current and Former Independent Directors*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>        **- and –**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**SUMMARY SHEET TO FOURTH INTERIM AND FINAL APPLICATION OF SIMPSON THACHER & BARTLETT LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FOURTH INTERIM PERIOD OF JANUARY 1, 2020 THROUGH JULY 1, 2020 AND THE FINAL PERIOD FROM JANUARY 29, 2019 THROUGH JULY 1, 2020**<br><br>**Hearing Date to be Set**<br><br>Place:  United States Bankruptcy Court<br>          Courtroom 17, 16th Floor |

*Simpson Thacher & Bartlett LLP*
*425 Lexington Ave*
*New York, NY 10017*

San Francisco, CA 94102

**Objection Deadline:** September 17, 2020 at 4:00 p.m. (Pacific Time)

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

2

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

| *General Information* | |
|---|---|
| Name of Applicant | Simpson Thacher & Bartlett LLP |
| Name of Client | Board of Each of PG&E Corporation and Pacific Gas and Electric Company and Certain Current and Former Independent Directors |
| Petition Date | January 29, 2019 |
| Retention Date | May 10, 2019 *nunc pro tunc* to January 29, 2019 |
| *Summary of Fees and Expenses Sought in the Fourth Interim Application* | |
| Time Period Covered by Application | January 1, 2020 – July 1, 2020 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary | $4,856,392.50 |
| Amount of Compensation Sought Pursuant to Section 327(e) | $2,108,488.00 |
| Amount of Compensation Sought Pursuant to Section 363 | $2,747,904.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary  Pursuant to Section 327(e) | $5,535.63 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary  Pursuant to Section 363 | $37,156.64 |
| *Total Fees and Expenses in Fourth Interim Application Paid But Not Yet Allowed* | |
| Total Compensation Paid But Not Yet Allowed | $1,845,634.80 |
| Total Expenses Paid But Not Yet Allowed | $21,490.38 |
| *Summary of Rates and Related Information for Fourth Interim Application* | |
| Number of Timekeepers in Fourth Interim Application | 37 (29 attorneys, 8 paraprofessionals) |
| Hours Billed by Timekeepers in Fourth Interim Compensation Period | 3,944.00 |
| Blended Rate for Attorneys | $1,251.74 |
| Blended Rate for all Professionals | $1,231.34 |

This is a(n) __X__ Interim _____Final Application

3

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

| | |
|---|---|
| *Summary of Fees and Expenses Sought in the Final Application* | |
| Time Period Covered by Application | January 29, 2019 – July 1, 2020 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary | $12,071,175.50 |
| Amount of Compensation Sought Pursuant to Section 327(e) | $5,066,244.50 |
| Amount of Compensation Sought Pursuant to Section 363 | $7,004,931.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary Pursuant to Section 327(e) | $45,680.93 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary Pursuant to Section 363 | $117,225.79 |
| *Total Fees and Expenses in Final Application Paid But Not Yet Allowed* | |
| Total Compensation Paid But Not Yet Allowed (*i.e.,* compensation paid for Fourth Interim Compensation Period) | $1,845,634.80 |
| Total Expenses Paid But Not Yet Allowed (*i.e.,* costs paid for Fourth Interim Compensation Period) | $21,490.38 |
| *Total Fees and Expenses Allowed Under First, Second and Third Interim Applications* | |
| Total Compensation Allowed on Interim Basis (*i.e.,* compensation allowed under First-Third Interim Applications) | $7,214,783.00[1] |
| Total Expenses Allowed on Interim Basis (*i.e.,* costs allowed under First-Third Interim Applications) | $120,214.45[2] |
| *Summary of Rates and Related Information* | |
| Number of Timekeepers in Final Application | 67 (47 attorneys and 20 paraprofessionals) |
| Hours Billed by Timekeepers for Total Compensation Period | 10,568.40 |
| Blended Rate for Attorneys | $1,188.47 |
| Blended Rate for all Professionals | $1,166.80 |

This is a(n) _____ Interim ___X___ Final Application

---

[1] This amount reflects the reduction of $260,000 pursuant to the compromises between Simpson Thacher and the Fee Examiner regarding the First Interim Application and the Second and Third Interim Applications.

[2] Simpson Thacher was paid an additional $22,000 in expenses that were ultimately not "allowed" because Simpson Thacher agreed, pursuant to its compromise with the Fee Examiner, to reduce the expenses requested under the First, Second and Third Interim Applications by $22,000 ($2,000 under the First Interim Application and $20,000 under the Second and Third Interim Applications). This $22,000 reduction has been accounted for by subtracting it from the total outstanding amount requested to be paid pursuant to this Fourth Interim and Final Application.

4

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

## SUMMARY OF FOURTH INTERIM AND FINAL APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses Incurred for Period Covered | | Total Amount Originally Requested for Compensation Period | | Total Amount Paid to Date | | Amounts Unpaid and Outstanding[3] |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | 80% of Undisputed Fees | Expenses (@ 100%) | Fees | Expenses | |
| First Interim (7/23/19) | 01/29/19 – 04/30/19 | $1,931,632.00 | $16,579.35 | $1,545,305.60 | $16,579.35 | $1,851,632.00 | $14,579.35 | N/A |
| Second Interim (11/15/19) | 05/1/19 – 08/31/19 | $2,837,908.50 | $51,945.60 | $2,243,331.60 | $51,945.60 | $2,243,331.60 | $51,945.60 | $494,576.90 |
| Third Interim (3/16/20) | 09/1/19 – 12/31/19 | $2,705,242.50 | $73,689.50 | $1,770,766.00 | $73,689.50 | $1,770,766.00 | $73,689.50 | $834,476.50 |
| Fourth Interim | 01/1/20 – 07/1/20 | $4,856,392.50 | $42,692.27 | $3,885,114.00 | $42,692.27 | $1,845,634.80 | $21,490.38 | $3,031,959.59 |
| Total | | $12,331,175.50 | $184,906.72 | $9,444,517.20 | $184,906.72 | $7,711,364.40 | $161,704.83 | $4,361,012.99 |

[3] The amounts unpaid and outstanding include: (1) $494,576.90 outstanding under the Second Interim Application, which (x) includes $33,744 in fees objected to by PERA (defined below) and $560,832.90 as the Holdback Amount, (y) reflects Simpson Thacher's compromise with the Fee Examiner to reduce fees by $90,000 and expenses by $10,000, and (z) was approved in full by this Court on an interim basis; (2) $834,476.50 outstanding under the Third Interim Application, which (x) includes $491,785 objected to by PERA and $442,691.50 as the Holdback Amount, (y) reflects Simpson Thacher's compromise with the Fee Examiner to reduce fees by $90,000 and expenses by $10,000, and (z) was approved in full by this Court on an interim basis; (3) $3,031,959.59 outstanding under the Fourth Interim Application, which includes $971,278.50 as the Holdback Amount, $2,039,479.20 in currently unpaid fees under the Thirteenth-Sixteenth Monthly Fee Statements and $21,201.89 in currently unpaid expenses under the Thirteenth-Sixteenth Monthly Fee Statements.

The Public Employees Retirement Association of New Mexico ("**PERA**") objected to fees (collectively, the "**Objection Amount**") in Simpson Thacher's Fourth through Seventh Monthly Fee Statements, which are contained within the Second and Third Interim Applications. PERA did not continue to object beyond the Seventh Monthly Fee Statement and did not pursue its prior objections in connection with Simpson Thacher's request for approval of the Second and Third Interim Applications. Pursuant to the *Docket Text Order* dated August 3, 2020, Simpson Thacher's Second and Third Interim Applications, as amended by Simpson Thacher's compromise with the Fee Examiner, were allowed on an interim basis, which such allowance will be formally ordered in the *Order Granting Second Interim Application of Simpson Thacher & Bartlett LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period May 1, 2019 Through August 31, 2019* [Dkt. __] (the "**Second Interim Approval Order**") and the *Order Granting Third Interim Application of Simpson Thacher & Bartlett LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period September 1, 2019 Through December 31, 2019* [Dkt. __] (the "**Third Interim Approval Order**") to be entered by this Court.

Simpson Thacher expects that it will be paid (1) the remaining allowed amounts under the Second and Third Interim Applications pursuant to the Second and Third Interim Approval Orders (totaling $1,329.053.40) and (2) the remaining 80% of the fees and 100% of the expenses requested under the Fourth Interim Application (totaling $2,060,681.09 not inclusive of the $971,278.50 Holdback Amount) prior to the hearing on this Fourth Interim and Final Application.

5

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

# SUMMARY OF COMPENSATION FOR
## JANUARY 29, 2019 THROUGH JULY 1, 2020

The attorneys and professionals who rendered professional services in these Chapter 11

Cases during the Total Compensation Period are:

| NAME OF PARTNERS AND COUNSEL | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Blake, Stephen | Litigation | 2008 | $1,325 | 141.70 | $187,752.50 |
| Brentani, William B. | Corporate | 1990 | $1,535 | 5.10 | $7,828.50 |
| Coll-Very, Alexis | Litigation | 1997 | $1,480 | 0.30 | $444.00 |
| Curnin, Paul C. | Litigation | 1988 | $1,640 | 723.90 | $1,187,196.00 |
| Frahn, Harrison J. | Litigation | 1997 | $1,535 | 0.50 | $767.50 |
| Frankel, Andrew T. | Litigation | 1990 | $1,535 | 26.80 | $41,138.00 |
| Goldin, Nicholas | Litigation | 2000 | $1,480 | 853.90 | $1,263,772.00 |
| Goldin, Nicholas | Litigation | 2000 | $740 | 17.70 | $13,098.00 |
| Grogan, Gregory T. | ECEB | 2001 | $1,535 | 151.20 | $232,092.00 |
| Kelley, Karen H. | Corporate | 2003 | $1,425 | 12.70 | $18,097.50 |
| Kreissman, James G. | Litigation | 1989 | $1,640 | 3.50 | $5,740.00 |
| Lesser, Lori E. | Litigation | 1994 | $1,535 | 0.30 | $460.50 |
| Ponce, Mario A. | Corporate | 1989 | $1,640 | 1,284.20 | $2,106,088.00 |
| Purcell, Andrew B. | Tax | 2009 | $1,325 | 2.40 | $3,180.00 |
| Purushotham, Ravi | Corporate | 2010 | $1,325 | 489.60 | $648,720.00 |
| Qusba, Sandy | Corporate | 1994 | $1,535 | 839.00 | $1,287,865.00 |
| Steinhardt, Brian M. | Corporate | 1999 | $1,640 | 4.50 | $7,380.00 |
| Torkin, Michael H. | Corporate | 1999 | $1,535 | 233.90 | $359,036.50 |
| Webb, Daniel N. | Corporate | 2002 | $1,480 | 0.80 | $1,184.00 |
| Alcabes, Elisa | Litigation | 1989 | $1,220 | 313.40 | $382,348.00 |
| DeLott, Steven R. | Corporate | 1988 | $1,220 | 18.40 | $22,448.00 |
| Koslowe, Jamin R. | ECEB | 1996 | $1,220 | 2.50 | $3,050.00 |
| McLendon, Kathrine | Corporate | 1985 | $1,220 | 301.10 | $367,342.00 |
| Nadborny, Jennifer L. | Corporate | 2005 | $1,220 | 0.70 | $854.00 |
| Brunner, Janice G. | Corporate | 2001 | $1,190 | 4.00 | $4,760.00 |
| Kofsky, Andrew M. | ECEB | 2000 | $1,190 | 11.90 | $14,161.00 |
| Rapp, James I. | Corporate | 1999 | $1,190 | 0.20 | $238.00 |
| Ricciardi, Sara A. | Litigation | 2003 | $1,190 | 639.70 | $761,243.00 |
| Wiseman, Stephen M. | Corporate | 1986 | $1,190 | 33.60 | $39,984.00 |
| **Total Partners and Counsel:** | | | | **6,117.50** | **$8,968,268.00** |

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

| NAME OF PROFESSIONAL ASSOCIATES | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Calderon, Justin | Litigation | 2018 | $700 | 157.20 | $110,040.00 |
| Campbell, Eamonn W. | Litigation | 2016 | $915 | 217.40 | $198,921.00 |
| Duran, Raul G. | Litigation | 2018 | $590 | 78.30 | $46,197.00 |
| Duran, Raul G. | Litigation | 2018 | $295 | 0.50 | $147.50 |
| Egenes, Erica M. | Corporate | 2018 | $840 | 324.60 | $272,664.00 |
| Fell, Jamie | Corporate | 2015 | $995 | 306.90 | $305,365.50 |
| Hay, Jasmine N. | Tax | 2016 | $915 | 3.80 | $3,477.00 |
| Hinckson, Shanice D. | Litigation | 2019 | $590 | 13.40 | $7,906.00 |
| Isaacman, Jennifer | Litigation | 2019 | $590 | 561.30 | $331,167.00 |
| Kinsel, Kourtney J. | Litigation | 2018 | $590 | 519.80 | $306,682.00 |
| Levine, Jeff P. | Corporate | 2016 | $915 | 180.70 | $165,340.50 |
| Lundqvist, Jacob | Litigation | 2019 | $590 | 195.50 | $115,345.00 |
| Mahboubi, Aria | Corporate | 2018 | $700 | 4.30 | $3,010.00 |
| Phillips, Jacob M. | ECEB | 2017 | $840 | 149.60 | $125,664.00 |
| Phillips, Jacob M.[4] | ECEB | 2017 | $700 | 16.00 | 11,200.00 |
| Sparks Bradley, Rachel | Litigation | 2013 | $1,095 | 497.50 | $544,762.50 |
| Sussman, Rebecca A. | Litigation | 2017 | $840 | 578.60 | $486,024.00 |
| Sussman, Rebecca A. | Litigation | 2017 | $420 | 3.00 | $1,260.00 |
| Vallejo, Melissa A. | Litigation | 2019 | $590 | 297.80 | $175,702.00 |
| Yeagley, Alexander | Corporate | 2018 | $700 | 58.50 | $40,950.00 |
| **Total Associates:** | | | | **4,164.70** | **$3,251,825.00** |

| NAME OF PROFESSIONAL STAFF ATTORNEYS | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Penfold, John | Litigation | | $375 | 19.10 | $7,162.50 |
| Rossi, Adrian D. | Litigation | | $375 | 38.40 | $14,400.00 |
| **Total Staff Attorneys:** | | | | **57.50** | **$21,562.50** |

| NAME OF PARAPROFESSIONAL | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| DeVellis, Mary | Resource Center | | $265 | 1.00 | $265.00 |
| Franklin, Janie Marie | Paralegal – Litigation | | $455 | 44.10 | $20,065.50 |
| Fuller, Devin | Resource Center | | $265 | 0.70 | $185.50 |

[4] *Jacob M. Phillips was mistakenly billed at the hourly rate of $700 for the month of February rather than his typical hourly rate of $840.

2

| Gampper, Krista | Paralegal | | $265 | 0.50 | $132.50 |
|---|---|---|---|---|---|
| Gedrich, Evan | Resource Center | | $265 | 1.50 | $397.50 |
| Henderson, Douglas | Paralegal - Litigation | | $375 | 2.50 | $937.50 |
| Jacovatos, Nicholas | Resource Center | | $265 | 1.00 | $265.00 |
| Kortright, Magallie | Paralegal – Litigation | | $400 | 23.60 | $9,440.00 |
| Laspisa, Rosemarie | Paralegal – Litigation | | $400 | 56.50 | $22,600.00 |
| Magsino, Luke | Resource Center | | $265 | 1.00 | $265.00 |
| Mierski, Nathan | Resource Center | | $265 | 2.60 | $689.00 |
| O'Connor, Elizabeth | Paralegal - Litigation | | $265 | 10.60 | $2,809.00 |
| Scott, Eric Dean | Resource Center | | $265 | 4.30 | $1,139.50 |
| Terricone, Cyrena | Paralegal - Litigation | | $400 | 7.50 | $3,000.00 |
| Welman, Timothy | Resource Center | | $265 | 12.30 | $3,259.50 |
| Azoulai, Moshe | Knowledge Management | | $455 | 7.40 | $3,367.00 |
| Carney, Michael | Knowledge Management | | $420 | 0.90 | $378.00 |
| Kovoor, Thomas G. | Knowledge Management | | $420 | 44.30 | $18,606.00 |
| Rovner, Grace | Paralegal - Corporate | | $265 | 5.90 | $1,563.50 |
| Tripodi, Lou | Library | | $310 | 0.50 | $155.00 |
| **Total Paraprofessionals:** | | | | **228.70** | **$89,520.00** |

| PROFESSIONALS | BLENDED HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $1,466.00 | 6,117.50 | $8,968,268.00 |
| Associates | $780.81 | 4,164.70 | $3,251,825.00 |
| Staff Attorneys | $375.00 | 57.50 | $21,562.50 |
| Paraprofessionals | $391.43 | 228.70 | $89,520.00 |
| Blended Attorney Rate | $1,188.47 | | |
| **Total Fees Incurred** | | **10,568.40** | **$12,331,175.50** |

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

3

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

**SUMMARY OF COMPENSATION BY WORK TASK CODE FOR THE PERIOD JANUARY 29, 2019 THROUGH JULY 1, 2020**

| Task Code | Description | Hours | Amount |
|---|---|---|---|
| AA | Asset Analysis and Recovery | | |
| AD | Asset Disposition | | |
| BO | Business Operations | | |
| BU | Budgeting (Case) | | |
| CA | Case Administration | 13.20 | $13,046.00 |
| CC | Creditor Communications | | |
| CG | Corporate Governance and Board Matters | 5,482.70 | $6,802,970.00 |
| CH | Court Hearings | 99.50 | $118,468.00 |
| CM | Claims Administration and Objections | 88.70 | $79,286.00 |
| EC | Executory Leases and Contracts | | |
| EE | Employee Benefits/Pensions | 16.00 | $24,560.00 |
| ES | Equityholder Communications | | |
| FA | Fee/Employment Applications | 611.10 | $665,866.00 |
| FI | Financings/Cash Collateral | | |
| FO | Fee/Employment Application Objections | 25.30 | $27,134.50 |
| FR | Fact Analysis and Related Advice | 1.90 | $1,800.00 |
| IC | Intercompany Issues | | |
| IP | Intellectual Property Issues | | |
| LI | Litigation: Contested Matters and Adversary Proceedings | 72.40 | $75,725.50 |
| LS | Relief From Stay Proceedings | | |
| PL | Plan/Disclosure Statement | 1,518.80 | $2,219,067.50 |
| RE | Reporting | 0.20 | $238.00 |
| TV[5] | Non-Working Travel Time | 41.20 | $44,235.50 |
| TX | Tax Issues | | |
| VA | Valuation | | |
| L110 | Fact Investigation/Development | 1,565.30 | $1,235,737.50 |
| L120 | Analysis/Strategy | 102.90 | $106,368.50 |

---

[5] Time billed to this task code is billed in accordance with the Fee Guidelines and the Second Amended Fee Procedures Order as of October 24, 2019.

4

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

| Task Code | Description | Hours | Amount |
|---|---|---|---|
| L130 | Experts/Consultants | | |
| L143 | Discovery - Identification and Preservation | | |
| L160 | Settlement/Non-Binding ADR | | |
| L200 | Pre-Trial Pleadings and Motions | 890.60 | $898,472.50 |
| L241 | Motion to Dismiss: Preemption | | |
| L242 | Motion to Dismiss: Lack of Subject Matter Jurisdiction | | |
| L243 | Motion for Summary Judgment: Kongros | | |
| L244 | Motion for Summary Judgment: Causation | | |
| L245 | Motion for Summary Judgment: Employment | | |
| L246 | Motion for Summary Judgment: Recreational Use Immunity | | |
| L310 | Written Discovery | | |
| L330 | Depositions | | |
| L350 | Discovery Motions | | |
| L400 | Trial Preparation and Trial | | |
| L500 | Appeal | | |
| L600 | eDiscovery - Identification | | |
| L610 | eDiscovery - Preservation | | |
| L620 | eDiscovery - Collection | 3.50 | $1,332.50 |
| L630 | eDiscovery - Processing | 21.60 | $9,027.00 |
| L650 | eDiscovery - Review | 0.20 | $91.00 |
| L653 | eDiscovery - First Pass Document Review | 13.00 | $7,670.00 |
| L654 | eDiscovery - Second Pass Document Review | | |
| L655 | eDiscovery - Privilege Review | | |
| L656 | eDiscovery - Redaction | | |
| L670 | eDiscovery - Production | 0.30 | $79.50 |
| L671 | eDiscovery - Conversion of ESI to Production | | |
| L680 | eDiscovery - Presentation | | |
| L800 | Experts/Consultants | | |
| L900 | Settlement Process | | |
| **TOTAL** | | **10,568.40** | **$12,331,175.50** |

5

Jonathan C. Sanders (No. #228785)
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5000
Facsimile: (650) 252-5002

Nicholas Goldin
Kathrine A. McLendon
Jamie J. Fell
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for the Board of Each of PG&E Corporation
and Pacific Gas and Electric Company and for
Certain Current and Former Independent Directors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
|    **- and –** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
|               **Debtors.** | **FOURTH INTERIM AND FINAL APPLICATION OF SIMPSON THACHER & BARTLETT LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE FOURTH INTERIM PERIOD OF JANUARY 1, 2020 THROUGH JULY 1, 2020 AND THE FINAL PERIOD FROM JANUARY 29, 2019 THROUGH JULY 1, 2020** |
| ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> *\* All papers shall be filed in the Lead Case No. 19-30088 (DM).* | **Hearing Date: To Be Set** <br> **Place**:  United States Bankruptcy Court <br>               Courtroom 17, 16th Floor |

6

*Simpson Thacher & Bartlett LLP*
*425 Lexington Ave*
*New York, NY 10017*

San Francisco, CA 94102

**Objection Deadline:** September 17, 2020 at 4:00 p.m. (Pacific Time)

Simpson Thacher & Bartlett LLP ("**Simpson Thacher**"), as counsel for (i) the Board of Directors (the "**Board**") of each of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**"), as the Board may be constituted from time to time, and for the members of the Board from time to time in their capacities as members of the Board, and (ii) certain current and former independent directors in their individual capacities who serve or served as independent directors prior to and/or as of the Petition Date (as defined below) (each an "**Independent Director**" and collectively, the "**Independent Directors**"), pursuant to sections 330(a), 331 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), hereby submits this combined fourth interim application and final application (this "**Fourth Interim and Final Application**") for (I) the allowance and payment of compensation for professional services performed in the amount of $4,856,392.50 and for reimbursement of actual and necessary expenses incurred in the amount of $42,692.27 for the period commencing January 1, 2020 through and including July 1, 2020 (the "**Fourth Interim Compensation Period**") and (II) the allowance and payment on a final basis of compensation for professional services performed in the amount of $12,071,175.50 and for reimbursement of actual and necessary expenses incurred in the amount of $162,906.72 for the period commencing January 29, 2019 through and including July 1, 2020 (the "**Total Compensation Period**"), and in support thereof, respectfully states as follows:

**Preliminary Statement**

1.    Since January 29, 2019, and throughout the Total Compensation Period, Simpson Thacher has served as counsel for and has provided important and necessary legal advice to the Board and Independent Directors.  Specifically, during the Total Compensation Period, Simpson Thacher has, among other things, provided representation and legal advice in connection with (i) these chapter 11 cases (the "**Chapter 11 Cases**") and material aspects of the

7

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

bankruptcy process, including the negotiation of various settlements underlying the Debtors' proposed plan of reorganization (the "**Plan**") and financing commitments for implementation of the Plan; (ii) regulatory, judicial and other proceedings concerning the conduct of the Debtors, the Board or the Independent Directors; (iii) derivative shareholder and securities litigation and related issues; (iv) the exercise of the Board's fiduciary duties, including with respect to maximizing the value of the Debtors' estates for all stakeholders; (v) director liability insurance and indemnification matters; (vi) the review of disclosures to be made with the Securities and Exchange Commission (the "**SEC**"); (vii) director and officer compensation matters; and (viii) general corporate governance matters.

2.    Simpson Thacher's advice to the Board and the Independent Directors and representation of them in connection with the aforementioned matters during the Total Compensation Period were of substantial benefit to the Board and the Independent Directors, and the professional services performed and expenses incurred in connection therewith were actual and necessary.  Importantly, the Board is entitled to engage and retain advisors and experts it determines are necessary and appropriate to properly discharge its fiduciary duties to the Debtors, and the Independent Directors were entitled to maintain the representation of independent counsel in order to continue providing advice on the number of ongoing related matters that were not stayed during the pendency of these Chapter 11 Cases.  Moreover, Simpson Thacher has worked closely with the Debtors' legal and financial advisors to ensure there has been no duplication of efforts with respect to legal matters affecting the Debtors.  In light of the size and complexity of these Chapter 11 Cases, Simpson Thacher's fees for services rendered and incurred expenses are reasonable under the applicable standards as set forth in more detail herein.  Simpson Thacher therefore respectfully requests that the Court grant this Fourth Interim Application and allow interim compensation for professional services performed and reimbursement for expenses as requested herein for the Fourth Interim Compensation Period and grant this Final Application and finally allow compensation for professional services performed and reimbursement for expenses as requested herein for the Total Compensation Period.

8

3.    This Fourth Interim and Final Application has been prepared in accordance with and submitted pursuant to the sections 105, 330(a), 331 and 363 of title 11 of the Bankruptcy Code, Bankruptcy Rule 2016, the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules**"), the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals,* dated February 27, 2019 [Docket No. 701] (the "**Interim Compensation Order**"), the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California,* effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases,* effective November 1, 2013 (the "**UST Guidelines**") and the *Revised Fee Examiner Protocol,* dated October 24, 2019 [Docket No. 4473] (as approved and modified by the *Second Amended Order Granting Fee Examiner's Motion to Approve Fee Procedures*, dated January 30, 2020 [Docket No. 5572] (the "**Second Amended Fee Procedures Order**") (the "**Fee Examiner Protocol**," and, together with the Local Guidelines, collectively, the "**Fee Guidelines**").

4.    The Interim Compensation Order provides that professionals may file a Monthly Fee Statement or a Consolidated Monthly Fee Statement (each as defined in the Interim Compensation Order) and serve it upon certain designated notice parties.  If there is no objection within twenty-one (21) days after service of the Monthly Fee Statement or Consolidated Monthly Fee Statement, the Debtor is authorized to pay 80% of the fees (with the remaining 20% of the fees requested referred to herein as the "**Holdback Amount**") and 100% of the expenses requested.  If there is an objection to the Monthly Fee Statement or Consolidated Monthly Fee Statement, the Debtor is authorized to pay 80% of the fees and 100% of the expenses that are not subject to an objection.

5.    On March 30, 2020, April 30, 2020, May 29, 2020, June 30, 2020, July 23, 2020 and July 28, 2020, Simpson Thacher filed and served, respectively, a Tenth Monthly

9

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Fee Statement covering the period from January 1, 2020 through and including January 31, 2020 [Docket No. 6533] (the "**Tenth Monthly Fee Statement**"), an Eleventh Monthly Fee Statement covering the period from February 1, 2020 through and including February 29, 2020 [Docket No. 7012] (the "**Eleventh Monthly Fee Statement**"), a Twelfth Monthly Fee Statement covering the period from March 1, 2020 through and including March 31, 2020 [Docket No. 7655] (the "**Twelfth Monthly Fee Statement**"), a Thirteenth Monthly Fee Statement covering the period from April 1, 2020 through and including April 30, 2020 [Docket No. 8217] (the "**Thirteenth Monthly Fee Statement**"), a Fourteenth Monthly Fee Statement covering the period from May 1, 2020 through and including May 31, 2020 [Docket No. 8504] (the "**Fourteenth Monthly Fee Statement**"), a Fifteenth Monthly Fee Statement covering the period from June 1, 2020 through and including June 30, 2020 [Docket No. 8553] (the "**Fifteenth Monthly Fee Statement**"), and a Sixteenth Monthly Fee Statement covering July 1, 2020 [Docket No. 8554] (the "**Sixteenth Monthly Fee Statement**" and collectively, the "**Monthly Fee Statements**").

6.     In these Monthly Fee Statements with respect to the Fourth Interim Compensation Period, Simpson Thacher requested payment of $3,885,114.00 (80% of total fees, of which $1,686,790.40 was in respect of representation of the Board under section 327(e) and $2,198,323.60 was in respect of representation of the Independent Directors under section 363) as compensation for professional services and $42,692.27 (100% of expenses, of which of which $5,535.63 was in respect of representation of the Board under section 327(e) and $37,156.64 was in respect of representation of the Independent Directors under section 363) as reimbursement for actual and necessary expenses.  The total Holdback Amount for the Fourth Interim Compensation Period is $971,278.50 (20% of undisputed fees).  To date, Simpson Thacher has received payment of $1,845,634.80 in fees for professional services rendered and $21,490.38 for expenses incurred during the Fourth Interim Compensation Period.

7.     The deadlines for any objections to the Tenth through Sixteenth Monthly Fee Statements have passed, and no objections were filed.  Consistent with the Interim Compensation Order, Simpson Thacher seeks approval for the allowance and payment (to the

10

extent not paid prior to the hearing on this Application) of all outstanding amounts requested under the Monthly Fee Statements, including the Holdback Amount.  This request is consolidated with Simpson Thacher's concurrent request for final review and approval of all compensation and expenses in these Chapter 11 Cases.

8.    In addition, with respect to the remainder of the Total Compensation Period, Simpson Thacher previously filed its First Consolidated Monthly Fee Statement covering the period from January 29, 2019 through and including April 30, 2019 (the "**First Interim Compensation Period**"), which is reflected in the First Interim Application [Docket No. 3157]; its Second Monthly Fee Statement through Fifth Monthly Statement collectively covering the period from May 1, 2019 through and including August 31, 2019 (the "**Second Interim Compensation Period**"), which is reflected in the Second Interim Application [Docket No. 4767]; and its Sixth Monthly Fee Statement through Ninth Monthly Fee Statement collectively covering the period from September 1, 2019 through and including December 31, 2019 (the "**Third Interim Compensation Period**"), which is reflected in the Third Interim Application [Docket No. 6331].

9.    Under the First Interim Application, Simpson Thacher requested payment of $1,931,632.00 in fees for professional services rendered (including both the initial 80% requested under the First Consolidated Monthly Fee Statement and the 20% Holdback Amount) and $16,579.35 for expenses incurred during the First Interim Compensation Period.  Simpson Thacher reached a compromise with the Fee Examiner to reduce the outstanding fees sought by $80,000 and the expenses by $2,000.  This Court approved the First Interim Application as amended by the compromise pursuant to the *Order Granting Amended First Interim Fee Application of Simpson Thacher & Bartlett LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period of January 29 2019 Through April 30, 2019* [Docket No. 6446].  Accordingly, Simpson Thacher has been paid a total of $1,851,632.00 in allowed fees and $14,579.35 for allowed expenses on account of the First Interim Compensation Period.

11

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

10.     Under the Second Interim Application, Simpson Thacher requested payment of $2,837,908.50 in fees for professional services rendered (including both the initial 80% requested under the Second, Third, Fourth and Fifth Monthly Fee Statements plus the applicable portion of the Objection Amount and the 20% Holdback Amount) and $51,945.60 for expenses incurred during the Second Interim Compensation Period.  Under the Third Interim Application, Simpson Thacher requested $2,705,242.50 in fees for professional services rendered (including both the initial 80% requested under the Sixth, Seventh, Eighth and Ninth Monthly Statements plus the applicable portion of the Objection Amount and the 20% Holdback Amount) and $73,689.50 for expenses incurred during the Third Interim Compensation Period.  Simpson Thacher reached a consolidated compromise with the Fee Examiner to reduce the outstanding fees requested under the Second and Third Interim Applications by $180,000 and the expenses by $20,000.  The Court approved  the Second Interim Application and Third Interim Application, each as amended, by amended docket text order [Docket No. 6331], and the Second Interim Approval Order and the Third Interim Approval Order have been submitted and are awaiting entry by the Court. The total outstanding amount to be paid to Simpson Thacher under the Second Interim Application and the Third Interim Application, each as amended, is $1,329,053.40.  As of the date of filing of this Fourth Interim and Final Application, Simpson Thacher has not yet received payment of this amount.

## Jurisdiction

11.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

12.     On January 29, 2019 (the "**Petition Date**"), each of the Debtors filed a petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and

12

1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015.

13. On February 12, 2019, the Acting United States Trustee for Region 3 (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors [Docket No. 409], which was amended on March 20, 2019 [Docket No. 962]. On February 15, 2019, the U.S. Trustee appointed the Official Committee of Tort Claimants [Docket No. 453], which was amended on February 21, 2019 [Docket No. 530].

14. Additional information regarding the events leading to these chapter 11 cases is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263].

15. On June 19, 2020, this Court confirmed the Debtors' Plan. The Plan provides that any final fee applications must be filed within sixty (60) days of the Effective Date (as defined therein). The Effective Date of the Plan occurred on July 1, 2020 [Docket No. 8252].

16. Simpson Thacher was first engaged to represent the Independent Directors in December 2017 to (i) provide legal advice regarding legislation concerning dividends and related issues, (ii) represent the Independent Directors regarding alleged breaches of fiduciary duties and other claims arising out of the 2017 and 2018 wildfires and (iii) advise the Independent Directors in connection with a number of ongoing litigations and inquiries.

17. On April 2, 2019, the Debtors filed an application to retain Simpson Thacher as counsel for the Independent Directors under section 363 of the Bankruptcy Code (the "**Retention Application**"). After the filing of the Retention Application, Simpson Thacher was also asked to represent the Board and the members of the Board from time to time in their capacities as members of the Board. The U.S. Trustee then requested that the retention of Simpson Thacher to represent the Board be approved under section 327(e) of the Bankruptcy Code. *See Supplemental Declaration of Michael H. Torkin in Support of the Motion Pursuant to 11 U.S.C. §363 Authorizing Debtors to Pay the Fees and Expenses of Simpson Thacher & Bartlett LLP as Counsel to the Independent Directors of PG&E Corp. (as Modified as Described*

13

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

*Herein)* [Docket No. 1802] (as amended from time to time, the "**STB Retention Declaration**"). The Retention Application, as modified, was approved by this Court on May 10, 2019 [Docket No. 1979] (the "**Retention Order**").  The Retention Order is attached hereto as **Exhibit A**.

18.     The Retention Order authorizes the Debtors to employ and retain Simpson Thacher *nunc pro tunc* to January 29, 2019 as attorneys for the Board and Independent Directors in accordance with Simpson Thacher's normal hourly rates and disbursement policies, as described in the Retention Application.  Further, the Retention Order authorizes the Debtors (i) pursuant to section 327(e) of the Bankruptcy Code, to pay the reasonable fees of, and reimburse the reasonable and necessary expenses incurred by, Simpson Thacher in connection with the Board Representation (as defined in the Retention Order), including with respect to "all matters related to corporate governance" and "other related matters"; and (ii) pursuant to section 363, to pay the reasonable fees of, and reimburse the reasonable and necessary expenses incurred by, Simpson Thacher in connection the Independent Director Representation (as defined in the Retention Order), including with respect to "representation in ongoing litigation and regulatory inquiries," "fact-gathering," and "related matters."

### Summary of Professional Compensation  and Reimbursement of Expenses Requested Under Fourth Interim Application

19.   Simpson Thacher seeks the interim allowance and payment of (i) compensation for professional services performed during the Fourth Interim Compensation Period in the amount of $4,856,392.50, of which $971,278.50 has been held back as the Holdback Amount; and (ii) $42,692.27 as reimbursement for actual and necessary expenses incurred for the months covered by the Fourth Interim Compensation Period.  As of the date of this Fourth Interim and Final Application, $1,845,634.80 in fees and $21,490.38 in expenses have been paid to Simpson Thacher in respect of the Fourth Interim Compensation Period.

20. There is no agreement or understanding between Simpson Thacher and any other person, other than members of the firm, for the sharing of compensation to be received for

14

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

services rendered in these Chapter 11 Cases.  Except as otherwise described herein, no payments have heretofore been made or promised to Simpson Thacher for services rendered or to be rendered in any capacity whatsoever in connection with these Chapter 11 Cases.

21. The fees charged by Simpson Thacher in these cases are billed in accordance with Simpson Thacher's normal and existing billing rates and procedures in effect during the Compensation Period.  The rates charged by Simpson Thacher for professional and paraprofessional services in these Chapter 11 Cases are the same rates that Simpson Thacher charges for comparable bankruptcy and non-bankruptcy representations.[6]  Such fees are reasonable based on the customary compensation by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

22. Attached hereto as **Exhibit B** is a certification regarding Simpson Thacher's compliance with the Fee Guidelines.

23. Attached hereto as **Exhibit C** is a summary and comparison of the aggregate blended hourly rates billed by Simpson Thacher's timekeepers in all domestic offices to non-bankruptcy matters during the prior twelve (12) month rolling period and the blended hourly rates billed to the Debtors during the Compensation Period.

24. With respect to the Independent Director Representation, Simpson Thacher discussed its rates, fees and staffing with the Independent Directors and Debtors at the outset of these Chapter 11 Cases.  A summary of Simpson Thacher's budget is attached hereto as **Exhibit D.**  Simpson Thacher estimated its fees for the Fourth Interim Compensation Period in

---

[6] By agreement with the Debtors, Simpson Thacher deferred implementation of normal step rate increases for attorneys advancing in seniority, which increases customarily would have taken effect in September, and normal rate increases for all professionals, which increases customarily would have taken effect on January 1.

15

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

connection with the Independent Director Representation would be approximately $3,076,630, and the fees sought for the Fourth Interim Compensation Period are lower than that estimate.

25. With respect to the Board Representation, professional services were or are being provided on the basis of specific assignments, and accordingly no budget was prepared. However, as set forth in the Retention Motion and the STB Retention Declaration, Simpson Thacher's rates, fees and staffing for the Board Representation are the same as those used in connection with the Independent Director Representation.  The Board did not request that Simpson  Thacher prepare a budget.

26. The attorneys and paraprofessionals assigned to this matter were necessary to assist with the Board's and Independent Directors' exercise of their fiduciary duties to the Debtors, the preservation of the Debtors' estates, and the other matters described herein.  The Debtors are aware of the complexities of these cases, the number of issues to be addressed, the various disciplines and specialties involved in Simpson Thacher's representation, and the number of factors arising in these cases impacting staffing needs.  Simpson Thacher has coordinated closely with the Debtors' professionals to ensure there has been no duplication of efforts with respect to any legal matters impacting the Debtors in or outside of these Chapter 11 Cases.

27. The compensation and fees sought for the Fourth Interim Compensation Period are reflected in the Monthly Fee Statements and are set forth therein and in **Exhibits E, F** and **H**. **Exhibit E** attached hereto sets forth: (a) the name of each professional and paraprofessional who rendered services and his or her area of practice; (b) whether each professional is a partner, counsel, associate or paraprofessional in the firm; (c) the year that each professional was licensed to practice law; (d) the practice group or specialty of the professional; (e) the number of hours of services rendered by each professional and paraprofessional; and (f) the hourly rate charged by

16

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

Simpson Thacher for the services of each professional and paraprofessional. **Exhibit F** contains a summary of Simpson Thacher's hours billed using project categories (or "task codes") described therein. **Exhibit H** sets forth the detailed time entries by Simpson Thacher partners, counsel, associates and paraprofessionals, contemporaneously recorded in increments of one-tenth of an hour. Simpson Thacher also maintains computerized records of the time spent by all Simpson Thacher attorneys and paraprofessionals in connection with these Chapter 11 Cases. Copies of these computerized records in LEDES format have been furnished to the Debtors, the U.S. Trustee and the Fee Examiner in the format specified in the Fee Guidelines.

28. Simpson Thacher also hereby requests reimbursement of $42,692.27 for actual and necessary costs and expenses incurred in rendering services to the Board and Independent Directors. Of the total amount of costs and expenses sought, $37,156.64 is being requested for reimbursement in connection with Simpson Thacher's Independent Director Representation pursuant to section 363 of the Bankruptcy Code, and $5,535.63 is being requested for reimbursement in connection with Simpson Thacher's Board Representation pursuant to section 327(e) of the Bankruptcy Code. The costs and expenses sought are described in the Tenth through Sixteenth Monthly Fee Statements and are set forth therein and in **Exhibit G**, which sets forth a summary of costs and expenses incurred during the Fourth Interim Compensation Period, and **Exhibit I**, which sets forth an itemized schedule of all such costs and expenses.

### Summary of Services Performed by Simpson Thacher
### During the Fourth Interim Compensation Period

29. As described above, during the Fourth Interim Compensation Period, Simpson Thacher rendered substantial professional services to the Board and Independent Directors in connection with ongoing litigation, the exercise of their fiduciary duties to the Debtors and their stakeholders, the protection of the Board's and Independent Directors' interests and other matters

17

relating to these Chapter 11 Cases. The following is a summary of the professional services rendered by Simpson Thacher during the Fourth Interim Compensation Period,[7] organized in accordance with Simpson Thacher's internal system of task codes.[8]

a. Corporate Governance and Board Matters (Task Code: BCG)
Fees: $3,393,018.50; Total Hours: 2,843.00

    i. Attended and provided legal advice during in-person and telephonic Board, committee and sub-committee meetings, and prepared presentations and reviewed and provided comments with respect to Board and committee materials;

    ii. Advised in connection with Directors & Officers insurance ("**D&O Insurance**") issues, including reviewing current policies and preparing overviews and analyses, engaging in discussions with insurance providers and risk management personnel regarding policy terms and conditions;

    iii. Advised in connection with resignation of existing board members and selection of new board members, including participation in onboarding sessions with new directors and review and preparation of Board materials in connection therewith;

    iv. Engaged in discussions, advised on strategy and process, conducted diligence, conducted legal and factual research, prepared presentations and other written materials, and participated in calls and meetings regarding numerous issues including Director compensation, fiduciary duties, insurance coverage, and the bankruptcy process, including settlements with key parties, the Debtors' Plan, exit financing and confirmation;

    v. Advised on strategy, process and substance with respect to strategic alternatives and financing commitments;

    vi. Advised with respect to certain management personnel issues;

---

[7] The summary of professional services rendered during the First Interim Compensation Period, the Second Interim Compensation Period and the Third Interim Compensation Period are provided in the First Interim Application, Second Interim Application and Third Interim Application, respectively, which are fully incorporated herein by reference.

[8] Certain services rendered may overlap between more than one task code. If a task code does not appear below, then Simpson Thacher did not bill significant, if any, time to that task code during the Compensation Period.

18

Case: 19-30088     Doc# 8901     Filed: 08/28/20     Entered: 08/28/20 18:14:47     Page 23 of 34

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

vii. Engaged in discussions, advised on strategy and process, prepared presentations and other written materials, and participated in numerus calls and meetings regarding various modifications to Backstop Commitment Letter

viii. Reviewed and commented on various SEC filings.

b. Court Hearings  (Task Code: BCH)
Fees: $36,514.00; Total Hours: 36.20

i. Prepared for and attended hearings regarding case status, estimation,  approval of settlements, and confirmation.

c. Fee/Employment Applications  (Task Code: BFA)
Fees: $190,654.50; Total Hours: 170.20

i. Reviewed billing records and prepared required monthly fee statements and interim fee applications.

ii. Reviewed all applicable fee guidelines and updated internal systems and coding as necessary for developments regarding retention and billing matters in connection with these Chapter 11 Cases.

d. Fee/Employment Objections (Task Code: BFO)
Fees: $10,390.50; Total Hours: 10.20

i. Reviewed reports from Fee Examiner and provided outlines and responses for discussions with Fee Examiner; drafted notices of amendment and compromise and proposed orders.

e. Plan/Disclosure Statement (Task Code: BPL)
Fees: $888,376.50; Total Hours: 599.60

i. Reviewed and researched, conducted diligence and provided analysis and advice regarding exclusivity and termination thereof, chapter 11 plan proposals, proposed settlement term sheets, equity commitments and funding alternatives, and plan confirmation, and reviewed and commented on drafts of Plan and Plan documentation.

ii. Attended and provided legal advice during in-person and telephonic Board, committee and sub-committee meetings regarding chapter 11 plan proposals, restructuring support agreements, equity commitments, other funding alternatives and related matters.

19

Case: 19-30088    Doc# 8901    Filed: 08/28/20    Entered: 08/28/20 18:14:47    Page 24 of 34

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

    f.    Pre-Trial Pleadings and Motions  (Task Code: L200)
        Fees: $323,860.50; Total Hours: 274.40

        i.    Reviewed case dockets and filings and engaged in general coordination and case administration.

        ii.    Conducted research, conducted fact diligence and legal analysis, engaged in various meetings and communications in connection with securities and derivative claims, and drafted reply papers on motion to dismiss and related court submissions in connection with securities litigation.

30. The foregoing is merely a summary of the professional services rendered by Simpson Thacher during the Fourth Interim Compensation Period.  The professional services performed by Simpson Thacher were necessary and appropriate to the representation of the Board and Independent Directors, including in connection with these Chapter 11 Cases, and were in the best interests of the Board, the Independent Directors and the Debtors and their estates. The services provided by Simpson Thacher to the Board and Independent Directors were separate from and not duplicative of any of the services provided to the Debtors by their professionals.  The compensation requested for Simpson Thacher's services is commensurate with the complexity, importance and nature of the issues and tasks involved.

31. The professional services rendered by partners, counsel and associates of Simpson Thacher were rendered primarily by the Litigation, Corporate, Executive Compensation and Executive Benefits, and Bankruptcy and Restructuring Departments.  Simpson Thacher has an esteemed and nationally recognized reputation for its expertise in these fields, particularly in connection with the representation of boards of directors in challenging and complex matters.

32. During the Fourth Interim Compensation Period, a total of 3,944 hours were expended by attorneys and paraprofessionals at Simpson Thacher in connection with the aforementioned services performed.  2,411.5 hours were spent on the Independent Director

20

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Representation pursuant to section 363 of the Bankruptcy Code, and 1,532.5 hours were spent on the Board Representation pursuant to section 327(e) of the Bankruptcy Code.  In the aggregate, the partners and counsel of Simpson Thacher accounted for 2,820.10 hours (approximately 71.5% of time), associates accounted for 1,031.90 hours (approximately 26.2% of time), and staff attorneys and paraprofessionals accounted for 92 hours (approximately 2.3% of time).

33. During the Fourth Interim Compensation Period, Simpson Thacher billed for time expended by attorneys based on hourly rates ranging from $590 to $1,640 per hour for attorneys. Allowance of compensation in the amount requested herein would result in a blended hourly rate for attorneys of approximately $1,251.74, and a blended rate for all professionals and paraprofessionals of approximately $1,231.34.

34. Consistent with the Second Amended Fee Procedures Order, Simpson Thacher capped Non-Working Travel Time (with respect to airplane travel only) at two hours per airplane trip for billing purposes as of October 1, 2019.  Prior to the approval of the Fee Examiner Protocol, Simpson Thacher had discounted Non-Working Travel Time by 50%, which is reflected in Monthly Fee Statements prior to the Seventh Monthly Fee Statement.  This prior billing approach has been explained to and resolved with the Fee Examiner pursuant to the compromise reached in connection with the Second Interim Application and Third Interim Application.

**Actual and Necessary Disbursements of Simpson Thacher**

35. Simpson Thacher has disbursed $42,692.27 as expenses incurred in providing professional services during the Fourth Interim Compensation Period.  These expenses were reasonable and necessary and were essential to, among other things, participate in necessary meetings or hearings, timely respond to client or counsel inquiries and provide effective

21

representation in ongoing regulatory and litigation-related matters.  The costs and expenses are not incorporated into Simpson Thacher's hourly billing rates because it is Simpson Thacher's policy to charge such costs and expenses to those clients requiring such expenditures in connection with the services rendered to them.

36. Simpson Thacher began applying the rates and guidelines as set forth in the Fee Examiner Protocol as of October 24, 2019.  The amounts for which Simpson Thacher is seeking reimbursement for reasonable meal and transportation costs are thus consistent with the Fee Guidelines.  Additionally, as of October 24, 2019, Simpson Thacher charged for disbursements in accordance with the Fee Guidelines.  With respect to photocopying and duplicating expenses, reimbursement for costs is at an average rate of $.20 per page.  Computer-assisted legal research, court conferencing participation and mail services are charged at actual cost.  Only clients who use services of the types set forth in **Exhibits G** and **I** are separately charged for such services.

37. Simpson Thacher has made every effort to minimize its disbursements in these Chapter 11 Cases.  The actual expenses incurred in providing professional services were reasonable, necessary and justified under the circumstances.

### Basis for Allowance of Requested Compensation and Reimbursement for Fourth Interim Compensation Period and Total Compensation Period

38. With respect to the Board Representation, section 331 of the Bankruptcy Code provides for the interim compensation of professionals pursuant to the standards set forth in section 330 governing the Court's award of any such compensation.  11 U.S.C. § 331.  Section 330 provides that a professional employed under section 327 of the Bankruptcy Code may be awarded "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).

22

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

39. Section 330 further provides that, "[i]n determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent and the value of such services, taking into account" the following factors:

g.  Time spent on the services performed;

h.  Rates charged for the services performed;

i.  Whether the services performed were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of the applicable chapter 11 case;

j.  Whether the services were performed in a reasonable amount of time "commensurate with the complexity, importance, and nature of the problem, issue, or task addressed";

k.  Whether the professional is board certified or otherwise has demonstrated skill and experience in bankruptcy; and

l.  Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than chapter 11 cases.

40. With respect to the Independent Director Representation, section 363 of the Bankruptcy Code applies.  Section 363(b) of the Bankruptcy Code provides that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363.  In considering whether to approve use of estate property under section 363(b), the bankruptcy judge examines whether there is a sound business purpose for the proposed use and in doing so, "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."  *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19 (9th Cir. BAP 1988).  Courts have found business justification for and approved the payment of fees and expenses of counsel for a debtor's independent directors pursuant to section 363.  *See, e.g.,*

23

*In re SunEdison, Inc.,* No. 16-10992 (SMB) (Bankr. S.D.N.Y. July 13, 2016) [ECF No. 764]; *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Nov. 5, 2015) [ECF No. 485]. The Debtors explained in the Retention Motion that (i) the Debtors' Articles of Incorporation and board resolutions authorize the payment of the fees and expenses of professionals for the Independent Directors, and (ii) it is common for a company the size of the Debtors to engage and pay for separate counsel to provide independent advice to its directors, and asserted that the retention of Simpson Thacher by the Board and the payment of its reasonable fees and expenses were an exercise of the Debtor's sound business judgment.

41. Simpson Thacher submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Fourth Interim and Final Application were necessary for and beneficial to, among other things, the Board's and the Independent Directors' exercise of their fiduciary duties, the need for the Board and Independent Directors to continue receiving objective and independent legal advice, and the protection of their interests in these unique and challenging circumstances. Specifically, during the Fourth Interim Compensation Period and the Total Compensation Period, Simpson Thacher has represented and advised the Board and Independent Directors in connection with (i) these Chapter 11 Cases and key aspects of the bankruptcy process, including the estimation of wildfire-related claims, the restructuring settlements with subrogation claimholders and tort claimants, the obtaining of backstop commitments and exit financing, discussions with the Governor's Office and the analysis of various chapter 11 plan proposals; (ii) regulatory, judicial and other proceedings concerning the conduct of the Debtors, the Board or the Independent Directors; (iii) derivative shareholder and securities litigation and related issues; (iv) the exercise of the Board's and the Independent Directors' fiduciary duties to the Debtors and their stakeholders; (v) director

24

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

liability and indemnification matters; (vi) director and officer compensation matters; and (vii) general corporate governance matters applicable to the board of directors and management. Additionally, during the Fourth Interim Compensation Period and the Total Compensation Period, Simpson Thacher reviewed and advised on SEC disclosures; attended and provided legal advice during in-person and telephonic board and committee meetings; reviewed and commented on various pleadings and motions filed in connection with, among other things, the categories listed in this paragraph 41, and advised the Board and Independent Directors on appropriate courses of action; and drafted or participated in the drafting of all necessary motions, applications, stipulations, orders, responses and other papers in support of the positions or interests of the Board and Independent Directors.

42. Simpson Thacher not only has extensive experience in representing directors in such complex situations, but it also had an established history with the Independent Directors prior to the Petition Date regarding many of the matters referenced herein.  The compensation and reimbursement requested herein are reasonable in light of the nature, extent and value of such services to the Board and Independent Directors, and accordingly, should be approved and allowed both for the Fourth Interim Compensation Period and for all fees and disbursements requested in the First, Second, Third and Fourth Interim Applications (as reduced, as applicable in the First, Second and Third Interim Approval Orders) for the Total Compensation Period on a final basis.

**The PERA Fee Objections Should be Overruled on a Final Basis**

43. PERA objected to $525,529 in fees reported in the Fourth, Fifth, Sixth and Seventh Monthly Fee Statements primarily on the grounds that the disputed fees are for services rendered to the Independent Directors in connection with the Securities Litigation and that the

25

Debtors are not authorized to pay such fees under the Retention Order. As a threshold matter, PERA is incorrect regarding the Retention Order, which expressly authorizes the Debtors to pay Simpson Thacher's fees for services rendered in connection with its representation of the Independent Directors in "ongoing litigation," which includes the Securities Litigation. Moreover, the PERA Fee Objections incorrectly classified many Simpson Thacher time entries as relating directly to the Securities Litigation. Such fees were not Securities Litigation fees but rather fees for legal advice and analysis provided to the Board and Independent Directors regarding matters related to D&O Insurance and/or these Chapter 11 Cases. Finally, Simpson Thacher addressed the prior PERA objections and requested that they be overruled on an interim basis in the Second and Third Interim Applications, which this Court approved on an interim basis on August 3, 2020 (via docket text order), which Simpson Thacher expects will be reflected in the Second and Third Interim Approval Orders that have been submitted to the Court but not yet entered as of the date hereof. PERA did not respond to Simpson Thacher nor did it pursue its objections in connection with Simpson Thacher's request for interim approval of the fees and expenses set forth in the Fourth, Fifth, Sixth and Seventh Monthly Fee Statements. For these reasons, Simpson Thacher requests that the PERA Fee Objections be overruled on a final basis. If necessary, Simpson Thacher will file separate papers further responding to the PERA Fee Objections prior to any hearing on this Fourth Interim and Final Application and reserves all rights with respect thereto.

## Notice and Objections

44. Notice of this Application has been provided to parties in interest (the "**Notice Parties**") in accordance with the Interim Compensation Order, and a joint notice of hearing on this Application and other interim/final compensation applications will be filed as determined by

26

the Fee Examiner with this Court and served upon all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  Such notice is sufficient and no other or further notice need be provided.

45. In accordance with the Interim Compensation Order, responses and objections (by any party other than the Fee Examiner) to this Fourth Interim and Final Application, if any, must be filed and served on Simpson Thacher and the Notice Parties on or before 4:00 pm on the 20th day (or the next business day if such day is not a business day) following the date this Fourth Interim and Final Application is served.

## **Conclusion**

46. Simpson Thacher respectfully requests that the Court enter an Order (i) allowing on a final basis Simpson Thacher's (A) compensation for professional services rendered during the Total Compensation Period in the amount of $12,071,175.50, consisting of (x) $7,214,783.00 previously allowed on an interim basis and (y) $4,856,392.50 in undisputed fees requested in the Fourth Interim Application; and (B) reimbursement for actual and necessary costs and expenses incurred during the Total Compensation Period in the amount of $162,906.72, consisting of (x) $120,214.45 previously allowed on an interim basis and (y) $42,692.27 in expenses requested in the Fourth Interim Application; and (ii) granting such other and further relief and this Court deems just.

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

27

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

Dated: August 28, 2020

Respectfully submitted,

/s/ Jonathan C. Sanders

Nicholas Goldin
Kathrine A. McLendon
Jamie J. Fell

SIMPSON THACHER & BARTLETT LLP

*Counsel for the Board of Each of PG&E Corporation and Pacific Gas and Electric Company and for Certain Current and Former Independent Directors*

28

**Simpson Thacher & Bartlett LLP**
425 Lexington Ave
New York, NY 10017

<u>**NOTICE PARTIES**</u>

PG&E Corporation
c/o Pacific Gas & Electric Company
77 Beale Street
San Francisco, CA 94105
Attn: Janet Loduca, Esq.

Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153-0119
Attn: Stephen Karotkin, Esq.,
Rachael Foust, Esq.

Keller & Benvenutti LLP
650 California Street, Suite 1900
San Francisco, CA 94108
Attn: Tobias S. Keller, Esq.,
Jane Kim, Esq.

The Office of the United States Trustee for Region 17
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
Attn: James L. Snyder, Esq.,
Timothy Laffredi, Esq.

Milbank LLP
55 Hudson Yards
New York, NY 10001-2163
Attn: Dennis F. Dunne, Esq.,
Sam A. Khalil, Esq.

Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Attn: Paul S. Aronzon, Esq.,
Gregory A. Bray, Esq.,
Thomas R. Kreller, Esq.

Baker & Hostetler LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Attn: Eric Sagerman, Esq.,
Cecily Dumas, Esq.

Bruce A. Markell
541 N. Fairbanks Court, Suite 2200
Chicago, IL 60611-3710
bamexampge@gmail.com
pge@legaldecoder.com
traceygallegos@gmail.com

# EXHIBIT C

*ELM Solutions*

# 2023 Real Rate Report®

The industry's leading analysis of law firm rates, trends, and practices



Wolters Kluwer

 Wolters Kluwer

## Report Editor

**Jeffrey Solomon**
Vice President, Segment Leader
LegalVIEW® BillAnalyzer
Wolters Kluwer ELM Solutions

## Lead Data Analysts

**Carol Au**
Business Systems Quantitative Analyst
Wolters Kluwer ELM Solutions

**Anand Kumar Pathinettam Padian**
Software and Data Engineer
Wolters Kluwer ELM Solutions

## ELM Solutions Creative

**David Andrews**
Senior Graphic Designer
Wolters Kluwer ELM Solutions

## Contributing Analysts and Authors

**Jason Bender**
Legal Analytics Product Manager
Wolters Kluwer ELM Solutions

**Haemi Jung**
Strategic Business Intelligence Manager
Wolters Kluwer ELM Solutions

**Margie Sleboda**
Lead Technology Product Manager
Wolters Kluwer ELM Solutions

## Executive Sponsor

**Barry Ader**
Vice President, Product Management and
Marketing
Wolters Kluwer ELM Solutions

© 2004 - 2023 Wolters Kluwer ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

ELM Solutions, a Wolters Kluwer business
3009 Post Oak Blvd, Suite 1000
Houston, TX 77056 United States
ATTN: Marketing
ELMSolutionsSales@wolterskluwer.com

**LEGAL CAVEAT**

Wolters Kluwer ELM Solutions has worked to ensure the accuracy of the information in this report; however, Wolters Kluwer ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. Wolters Kluwer ELM Solutions is not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Wolters Kluwer ELM Solutions is not responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

# Table of Contents – 2023 Real Rate Report

**A Letter to Our Readers • 4**

**Report Use Considerations • 5**

**Section I: High-Level Data Cuts • 8**
- Partners, Associates, and Paralegals
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by City
- Partners and Associates by City and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience
- Partners and Associates by Firm Size and Matter Type

**Section II: Industry Analysis • 62**
- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Insurance
- Technology and Telecommunications

**Section III: Practice Area Analysis • 82**
- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Other
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities • 164**
- Boston, MA
- Chicago, IL
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- Washington, DC

**Section V: International Analysis • 181**

**Section VI: Matter Staffing Analysis • 211**

# A Letter to Our Readers

**Welcome to the latest edition of Wolters Kluwer ELM Solutions Real Rate Report®, the industry's leading data-driven benchmark report for lawyer and paralegal rates.**

Our Real Rate Report has been a relied upon data analytics resource to the legal industry since its inception in 2010 and continues to evolve, providing you with the most comprehensive rate benchmarking insights, trends, and practices. The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW® data warehouse, which has grown to include $160B+ in anonymized legal data.

The depth and granularity of the data within the Real Rate Report empowers users to benchmark and negotiate effectively and make well-informed investment and resourcing decisions for the organization.

As with previous Real Rate Reports, our data is sourced from corporations' and law firms' e-billing and time management solutions. We have included lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters. This level of detail gives legal departments and law firms the precision they need to identify areas of opportunity. We strive to make the Real Rate Report a valuable and actionable reference tool for legal departments and law firms.

As always, we welcome your comments and suggestions on what information would make this publication more valuable to you. We thank our data contributors for participating in this program. And we thank you for making Wolters Kluwer ELM Solutions your trusted partner for legal industry domain expertise, data, and analytics and look forward to continuing to provide market-leading, expert solutions that deliver the best business outcomes for collaboration among legal departments and law firms.

Sincerely,

**Barry Ader**
Vice President, Product Management and Marketing
Wolters Kluwer ELM Solutions

# Report Use Considerations

**2023 Real Rate Report**
- Examines law firm rates over time
- Identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)
- Itemizes variables that drive rates up or down

All the analyses included in the report derive from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information, along with the ranges of those rates and their changes over time, highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals.

Clients might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether to modify their pricing approach.

**Some key factors[1] that drive rates[2]:**

**Attorney location** - Lawyers in urban and major metropolitan areas tend to charge more when compared with lawyers in rural areas or small towns.

**Litigation complexity** - The cost of representation will be higher if the case is particularly complex or time-consuming; for example, if there are a large number of documents to review, many witnesses to depose, and numerous procedural steps, the case is likely to cost more (regardless of other factors like the lawyer's level of experience).

**Years of experience and reputation** - A more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues.

**Overhead** - The costs associated with the firm's support network (paralegals, clerks, and assistants), document preparation, consultants, research, and other expenses.

**Firm size** – The rates can increase if the firm is large and has various timekeeper roles at the firm. For example, the cost to work with an associate or partner at a larger firm will be higher compared to a firm that has one to two associates and a paralegal.

---

1 **David Goguen, J.D., University of San Francisco School of Law (2020) Guide to Legal Services Billing Retrieved from:**
  https://www.lawyers.com/legal-info/research/guide-to-legal-services-billing-rates.html
2 **Source: 2018 RRR.** Factor order validated in multiple analyses since 2010

Partner with the leader in AI-powered bill review

# LegalVIEW® BillAnalyzer

Many vendors claim to have an advanced and innovative AI model; however, only BillAnalyzer leverages the most extensive industry database, expertise, and AI models to provide the best outcomes for your spend management program.

LegalVIEW BillAnalyzer can offer more than other legal bill review providers:

- Builds a custom AI model based on your guidelines
- Over 100 data scientists, 400 compliance experts and 50 process experts support the BillAnalyzer AI model
- Industry and peer guideline benchmarking
- Leverages industry-leading $160B+ in legal performance data
- Uses your actual historical data to train and optimize your custom AI model
- Surveys past billing in review to evaluate historical patterns

The benefits you can expect to realize from LegalVIEW BillAnalyzer include:



Control legal spend with up to 10% cost savings



Deliver up to 20% increase in billing guideline compliance



Optimize resources so attorneys can focus on higher value work

elmsolutionssales@wolterskluwer.com
1 800 780 3681 (Toll-free)

www.wolterskluwer.com

Wolters Kluwer

When you have to be right

# Mastering spend. Totally.







## Supercharged cost management

Maximize compliance, minimize spend leakage

## Better analytics, smarter decisions

Act on insights from advanced analytics

## Complete visibility

Visibility and management of all vendor invoices

Wolters Kluwer ELM Solutions redefines spend management and takes it to the next level with total spend management. By incorporating our artificial intelligence and advanced analytics solutions into your spend management program, you can push the very boundaries of cost savings, billing compliance, engagement with outside counsel, and the value of what your legal department delivers to your organization.

elmsolutionssales@wolterskluwer.com
1 800 780 3681 (Toll-free)

www.wolterskluwer.com

 Wolters Kluwer

When you have to be right

# Section I: High-Level Data Cuts

All data and analysis based on data collected thru Q2 2023

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2023 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Richmond VA** | Non-Litigation | Associate | 41 | $382 | $539 | $689 | $557 | $505 | $474 |
| **Rochester NY** | Non-Litigation | Partner | 10 | $414 | $453 | $530 | $477 | $461 | $341 |
| **Sacramento CA** | Non-Litigation | Partner | 13 | $425 | $527 | $632 | $554 | $534 | $559 |
| | | Associate | 11 | $286 | $353 | $425 | $355 | $341 | $321 |
| **Salt Lake City UT** | Litigation | Partner | 11 | $348 | $398 | $481 | $398 | $372 | $333 |
| | Non-Litigation | Partner | 43 | $338 | $376 | $471 | $413 | $390 | $363 |
| | | Associate | 12 | $240 | $290 | $300 | $294 | $252 | $247 |
| **San Diego CA** | Litigation | Partner | 42 | $278 | $438 | $551 | $533 | $533 | $572 |
| | | Associate | 28 | $170 | $240 | $302 | $298 | $271 | $258 |
| | Non-Litigation | Partner | 75 | $385 | $495 | $944 | $655 | $703 | $672 |
| | | Associate | 54 | $226 | $336 | $420 | $359 | $375 | $378 |
| **San Francisco CA** | Litigation | Partner | 115 | $436 | $750 | $1,124 | $801 | $744 | $712 |
| | | Associate | 76 | $341 | $450 | $718 | $537 | $523 | $517 |
| | Non-Litigation | Partner | 173 | $563 | $796 | $1,035 | $812 | $769 | $755 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2023 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **San Francisco CA** | Non-Litigation | Associate | 127 | $348 | $495 | $665 | $544 | $552 | $574 |
| **San Jose CA** | Litigation | Partner | 29 | $650 | $810 | $1,083 | $941 | $903 | $907 |
| | | Associate | 18 | $527 | $600 | $775 | $622 | $625 | $593 |
| | Non-Litigation | Partner | 46 | $700 | $909 | $1,386 | $1,064 | $1,025 | $986 |
| **Seattle WA** | Litigation | Partner | 53 | $455 | $641 | $835 | $639 | $633 | $567 |
| | | Associate | 49 | $405 | $511 | $530 | $475 | $442 | $453 |
| | Non-Litigation | Partner | 137 | $449 | $585 | $835 | $640 | $571 | $547 |
| | | Associate | 81 | $359 | $446 | $607 | $486 | $421 | $401 |
| **St. Louis MO** | Litigation | Partner | 38 | $268 | $342 | $457 | $399 | $388 | $373 |
| | | Associate | 12 | $198 | $200 | $250 | $221 | $228 | $237 |
| | Non-Litigation | Partner | 44 | $343 | $481 | $595 | $485 | $450 | $446 |
| **Tampa FL** | Litigation | Partner | 27 | $356 | $458 | $609 | $503 | $482 | $471 |
| | | Associate | 12 | $292 | $300 | $325 | $314 | $316 | $302 |
| | Non-Litigation | Partner | 45 | $345 | $400 | $572 | $486 | $457 | $479 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2023 - Real Rates for Partner**　　　　　　　　　　　　　　　　　　**Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|---|---|---|
| Sacramento CA | 21 or More Years | 11 | $456 | $524 | $632 | $562 | $563 | $508 |
| Salt Lake City UT | Fewer Than 21 Years | 17 | $365 | $375 | $412 | $375 | $368 | $334 |
| | 21 or More Years | 22 | $353 | $475 | $533 | $473 | $425 | $392 |
| San Diego CA | Fewer Than 21 Years | 21 | $429 | $477 | $845 | $628 | $603 | $612 |
| San Francisco CA | Fewer Than 21 Years | 69 | $588 | $798 | $1,067 | $830 | $754 | $706 |
| | 21 or More Years | 114 | $580 | $889 | $1,059 | $854 | $803 | $772 |
| San Jose CA | Fewer Than 21 Years | 17 | $736 | $987 | $1,504 | $1,068 | $1,025 | $934 |
| | 21 or More Years | 43 | $688 | $846 | $1,315 | $1,037 | $997 | $991 |
| Seattle WA | Fewer Than 21 Years | 45 | $325 | $543 | $715 | $601 | $530 | $451 |
| | 21 or More Years | 82 | $495 | $616 | $798 | $650 | $629 | $578 |
| St. Louis MO | Fewer Than 21 Years | 22 | $350 | $436 | $498 | $435 | $415 | $424 |
| | 21 or More Years | 46 | $324 | $460 | $583 | $466 | $450 | $434 |
| Tampa FL | Fewer Than 21 Years | 21 | $315 | $348 | $595 | $439 | $428 | $394 |
| | 21 or More Years | 29 | $350 | $540 | $590 | $519 | $485 | $508 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

### 2023 - Real Rates for Associate and Partner

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|------|------|---|----------------|--------|----------------|------|------|------|
| Salt Lake City UT | Associate | 17 | $222 | $277 | $300 | $279 | $255 | $244 |
| San Diego CA | Partner | 97 | $325 | $475 | $885 | $610 | $651 | $640 |
| | Associate | 75 | $224 | $285 | $410 | $336 | $345 | $342 |
| San Francisco CA | Partner | 261 | $500 | $783 | $1,045 | $808 | $760 | $738 |
| | Associate | 189 | $345 | $470 | $691 | $542 | $541 | $552 |
| San Jose CA | Partner | 67 | $684 | $861 | $1,301 | $1,020 | $977 | $957 |
| Seattle WA | Partner | 167 | $455 | $585 | $835 | $640 | $592 | $554 |
| | Associate | 119 | $367 | $457 | $573 | $482 | $429 | $422 |
| St. Louis MO | Partner | 73 | $315 | $436 | $546 | $447 | $425 | $419 |
| | Associate | 17 | $198 | $238 | $250 | $260 | $262 | $253 |
| Syracuse NY | Partner | 10 | $253 | $295 | $350 | $308 | $291 | $239 |
| Tampa FL | Partner | 61 | $345 | $442 | $595 | $493 | $465 | $475 |
| | Associate | 21 | $276 | $300 | $317 | $303 | $302 | $299 |
| Trenton NJ | Partner | 28 | $425 | $545 | $776 | $612 | $556 | $599 |

# EXHIBIT D

*ELM Solutions*

# 2024 Real Rate Report®

The industry's leading analysis of law firm rates, trends, and practices





**Report Editor**

**Jennifer McIver**
Director, Legal Operations and Industry Insights
Wolters Kluwer ELM Solutions

**Lead Data Analysts**

**Carol Au**
Business Systems Quantitative Analyst
Wolters Kluwer ELM Solutions

**Aaryak Shandilya**
Data Scientist
Wolters Kluwer ELM Solutions

**ELM Solutions Creative**

**David Andrews**
Senior Graphic Designer
Wolters Kluwer ELM Solutions

**Contributing Analysts and Authors**

**Jason Bender**
Legal Analytics Product Manager
Wolters Kluwer ELM Solutions

**Haemi Jung**
Strategic Business Intelligence Manager
Wolters Kluwer ELM Solutions

**Margie Sleboda**
Lead Technology Product Manager
Wolters Kluwer ELM Solutions

**Executive Sponsor**

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

© 2004 – 2024 Wolters Kluwer ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

ELM Solutions, a Wolters Kluwer business
2929 Allen Pkwy Ste 3300
Houston, TX 77019 United States
ATTN: Marketing
ELMSolutionsSales@wolterskluwer.com

**LEGAL CAVEAT**

Wolters Kluwer ELM Solutions has worked to ensure the accuracy of the information in this report; however, Wolters Kluwer ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. Wolters Kluwer ELM Solutions is not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Wolters Kluwer ELM Solutions is not responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

# Table of Contents - 2024 Real Rate Report

**A Letter to Our Readers • 4**

**Report Use Considerations • 5**

**Section I: High-Level Data Cuts • 8**
- Partners, Associates, and Paralegals
- Partners and Associates by City and Matter Type
- Partners and Associates by City
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by Firm Size and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience

**Section II: Industry Analysis • 65**
- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Insurance
- Technology and Telecommunications

**Section III: Practice Area Analysis • 88**
- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Other
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities • 175**
- Boston, MA
- Chicago, IL
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- Washington, DC

**Section V: International Analysis • 195**

**Section VI: Matter Staffing Analysis • 220**

**Appendix: Data Methodology • 225**

# A Letter to Our Readers

**Welcome to the latest edition of Wolters Kluwer ELM Solutions Real Rate Report®, the industry's leading data-driven benchmark report for lawyer and paralegal rates.**

Our Real Rate Report has been a relied upon data analytics resource to the legal industry since its inception in 2010 and continues to evolve, providing you with the most comprehensive rate benchmarking insights, trends, and practices. The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW® data warehouse, which has grown to include $180B+ in anonymized legal data.

The depth and granularity of the data within the Real Rate Report empowers users to benchmark and negotiate effectively and make well-informed investment and resourcing decisions for the organization.

As with previous Real Rate Reports, our data is sourced from corporations' and law firms' e-billing and time management solutions. We have included lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters. This level of detail gives legal departments and law firms the precision they need to identify areas of opportunity. We strive to make the Real Rate Report a valuable and actionable reference tool for legal departments and law firms.

As always, we welcome your comments and suggestions on what information would make this publication more valuable to you. We thank our data contributors for participating in this program. And we thank you for making Wolters Kluwer ELM Solutions your trusted partner for legal industry domain expertise, data, and analytics and look forward to continuing to provide market-leading, expert solutions that deliver the best business outcomes for collaboration among legal departments and law firms.

Sincerely,

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

# Report Use Considerations

**2024 Real Rate Report**

- Examines law firm rates over time
- Identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)
- Itemizes variables that drive rates up or down

All the analyses included in the report derive from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information, along with the ranges of those rates and their changes over time, highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals.

Legal departments might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether to modify their pricing approach.

**Some key factors[1] that drive rates[2]:**

**Attorney location** - Lawyers in urban and major metropolitan areas tend to charge more when compared with lawyers in rural areas or small towns.

**Litigation complexity** - The cost of representation will be higher if the case is particularly complex or time-consuming; for example, if there are a large number of documents to review, many witnesses to depose, and numerous procedural steps, the case is likely to cost more (regardless of other factors like the lawyer's level of experience).

**Years of experience and reputation** - A more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues.

**Overhead** - The costs associated with the firm's support network (paralegals, clerks, and assistants), document preparation, consultants, research, and other expenses.

**Firm size** – The rates can increase if the firm is large and has various timekeeper roles at the firm. For example, the cost to work with an associate or partner at a larger firm will be higher compared to a firm that has one to two associates and a paralegal.

1 David Goguen, J.D., University of San Francisco School of Law (2020) Guide to Legal Services Billing Retrieved from: https://www.lawyers.com/legal-info/research/guide-to-legal-services-billing-rates.html
2 **Source: 2018 RRR.** Factor order validated in multiple analyses since 2010



# Section I: High-Level Data Cuts

All data and analysis based on data collected thru Q2 2024

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2024 - Real Rates for Associate and Partner**     **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|---|---|---|---|---|---|---|---|---|---|
| San Diego CA | Litigation | Partner | 43 | $252 | $400 | $907 | $568 | $539 | $550 |
| | | Associate | 44 | $195 | $250 | $343 | $315 | $303 | $303 |
| | Non-Litigation | Partner | 75 | $401 | $523 | $889 | $678 | $676 | $717 |
| | | Associate | 57 | $250 | $374 | $458 | $412 | $393 | $378 |
| San Francisco CA | Litigation | Partner | 166 | $420 | $825 | $1,208 | $856 | $821 | $760 |
| | | Associate | 120 | $431 | $614 | $824 | $659 | $606 | $534 |
| | Non-Litigation | Partner | 220 | $460 | $770 | $1,172 | $838 | $832 | $790 |
| | | Associate | 167 | $342 | $575 | $860 | $625 | $578 | $566 |
| San Jose CA | Litigation | Partner | 36 | $650 | $830 | $1,303 | $996 | $990 | $899 |
| | | Associate | 29 | $497 | $640 | $833 | $682 | $678 | $674 |
| | Non-Litigation | Partner | 57 | $703 | $931 | $1,350 | $1,069 | $1,097 | $1,046 |
| | | Associate | 46 | $474 | $600 | $1,055 | $752 | $759 | $637 |

# Section I: High-Level Data Cuts

**Cities**
By Role

**2024 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Richmond VA** | Partner | 81 | $424 | $665 | $878 | $656 | $666 | $640 |
| | Associate | 56 | $320 | $406 | $553 | $457 | $485 | $395 |
| **Rochester NY** | Partner | 19 | $354 | $440 | $583 | $466 | $426 | $517 |
| **Sacramento CA** | Partner | 19 | $430 | $556 | $718 | $600 | $531 | $503 |
| | Associate | 14 | $318 | $397 | $431 | $374 | $344 | $316 |
| **Salt Lake City UT** | Partner | 59 | $291 | $395 | $458 | $404 | $396 | $390 |
| | Associate | 21 | $236 | $315 | $367 | $319 | $292 | $247 |
| **San Diego CA** | Partner | 102 | $316 | $491 | $904 | $637 | $625 | $661 |
| | Associate | 94 | $225 | $295 | $435 | $365 | $359 | $353 |
| **San Francisco CA** | Partner | 338 | $430 | $788 | $1,188 | $846 | $828 | $778 |
| | Associate | 265 | $395 | $595 | $849 | $639 | $591 | $553 |
| **San Jose CA** | Partner | 82 | $693 | $864 | $1,335 | $1,043 | $1,058 | $994 |
| | Associate | 70 | $495 | $600 | $921 | $729 | $735 | $647 |
| **San Juan PR** | Partner | 12 | $240 | $255 | $385 | $315 | $313 | $248 |

wolterskluwer.com